UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:23-CV-00041

-------------------------------------------------------------------X

JACOB DOE

                      **Plaintiff,**

   -against-

THE UNIVERSITY OF NORTH CAROLINA
SYSTEM, et al.

                      **Defendants.**

-------------------------------------------------------------------X

## DECLARATION OF ROBERT C. EKSTRAND, ESQ.
## IN SUPPORT OF PLAINTIFF'S MOTION
## TO PROCEED ANONYMOUSLY

ROBERT C. EKSTRAND, ESQ., hereby declares subject to the penalties of perjury pursuant to 28 U.S.C. § 1746:

1.    I am co-founder of Ekstrand & Ekstrand, LLP and am co-counsel to the Plaintiff in this matter.

2.    I served as Plaintiff's Attorney and Advisor from the commencement of the administrative procedures through and including the investigations, hearings and final appeals and in such capacity, I have personal knowledge of the entirety of the University of North Carolina's administrative proceedings against Plaintiff.

3.    I submit this declaration in support of Plaintiff's *Ex Parte* motion to proceed under the pseudonym "Jacob Doe" and to identify his female accusers, all University of

1

North Carolina at Chapel Hill students, as "Jane Roe 1, Jane Roe 2, Jane Roe 3, Jane Roe 4" in this action.

4. In the instant action, Plaintiff seeks redress due to the actions, inaction, omissions, errors, biases, flawed procedures and overall failure of Defendants the University of North Carolina System, the University of North Carolina at Chapel Hill, the University of North Carolina Board of Trustees, the Board of Governors of the University of North Carolina at Chapel Hill (all entities hereinafter referred to collectively as "UNC"), Kevin Guskiewicz, Elizabeth Hall, Jeremy Enlow, Beth Froehling, Rebecca Gibson, Jaclyn Feeney, David Elrod, and Desirée Rieckenberg (collectively, the "Individual Defendants") to investigate and adjudicate allegations of sexual misconduct against Plaintiff in a fair and impartial manner or to afford Plaintiff the requisite protections of Title IX, due process and UNC's policies.

5. The wrongdoing by UNC and the Individual Defendants are abundant and are well defined in the Verified Complaint. UNC allowed and participated in a targeted campaign designed by four female UNC students to destroy Doe's reputation, his education, and his connections to the UNC community, and his future prospects. Below are just a few examples of the pervasive and egregious violations of Title IX, due process and UNC's policies which support the relief sought in this case as well as pseudonym protection.

6. In April 2021, four female UNC students collectively initiated false complaints of sexual misconduct against Plaintiff, arising from interactions spanning from

2

March 2020 through January 2021, wherein they claimed that Plaintiff engaged in non-consensual sexual acts.

7. UNC, before investigating the source of the complaints or the veracity of the allegations, immediately suspended Plaintiff, a male student nearing completion of his sophomore year. The decision to impose the suspension was based simply on the fact that four female students had made complaints, notwithstanding that this was not an instance of four unconnected and random individuals, but rather a coordinated campaign of female students who were part of a common friend group. In fact, one of the women admitted that her actions in organizing the complaints against Plaintiff were intended to ostracize him from his friends and to have him excluded from his fraternity.

8. Throughout the investigation of the four complaints, UNC refused to provide Plaintiff with critical information at the time when he could have used such information in his defense.

9. By way of example but not limitation, UNC withheld from Plaintiff communications that it received from two of the female accusers in July of 2021, falsely claiming that Plaintiff bragged about having a gun, stating that they believed Plaintiff had broken into his room at the fraternity house, and that he was threatening some of his fraternity brothers with some outrageous emails to the point that some of the members were afraid Plaintiff would come after them.

10. The foregoing claims were demonstrably false: Plaintiff has never owned a gun, he was working at a camp in New Hampshire over the summer where he could not

3

leave the camp because of Covid-19 restrictions, and he had copies of the emails he sent to his, then, fall semester roommates and others that were anything but threatening.

11. Yet, without disclosing these false allegations to Plaintiff, UNC relied upon them in denying Plaintiff's request to remove the interim suspension for the fall of 2021.

12. Importantly, I had requested this evidence before the hearing regarding Plaintiff's interim suspension in August 2021, before the hearings on the merits began in January 2022, throughout the four months in which the hearings were conducted, and even after the hearings concluded in May 2022.

13. However, UNC never provided the emails or the information regarding the false complaints to Plaintiff until nearly nine months later, after the four hearings had all concluded and after Plaintiff's written appeals were submitted, in June 2022, thereby preventing him from presenting a defense to this false and defamatory claim and utilizing the false claims to refute the testimony of two of the accusers.

14. UNC also did not disclose to Plaintiff that two of the female students requested a withdrawal of their complaints shortly after Plaintiff was placed on interim suspension and more than six months before their respective hearings, until after the hearings were concluded. Despite their requests to withdraw their complaints, UNC only allowed a partial withdrawal, permitting UNC to continue their flawed investigations in a calculated effort to ensure their predetermined conclusions regarding responsibility were reached. It was clear throughout the administrative process that UNC was acting on behalf of the four female accusers and against Plaintiff, rather than as a neutral arbiter.

15. The text messages and documentary evidence, along with witness testimony, refuted the allegations that Plaintiff's sexual relations with three of the female accusers was non-consensual, and proved that he had no sexual contact at all with the fourth female accuser. Moreover, Plaintiff's polygraph test results concerning the allegations made by all four female accusers further corroborated his account of the events. UNC utterly ignored Plaintiff's evidence, sought to suppress it from being presented in the hearings, and continuously skewed the investigations and hearings to assist the female accusers and obtain findings of responsibility.

16. At the first hearing, which resulted in a finding of responsibility against Plaintiff (the Roe 1 matter), the Hearing Panel allowed the female accuser's attorney to answer questions on her behalf after she inexplicably walked out during my cross-examination of her midway through the hearing, depriving Plaintiff of the ability to confront her with her own contemporaneous communications, documentary and digital evidence that unequivocally showed the falsity of her statements.

17. Also at the hearing in the Roe 1 matter, and without any prior notice to Plaintiff, the Hearing Panel permitted a change in the date of alleged incident from November 19, 2020 to November 12-13, 2020, after Roe 1 admitted that no sexual contact occurred with Plaintiff on November 19, 2020.

18. Rather than dismissing the complaint, the University chose to proceed with the hearing on the new charges against Plaintiff, despite the lack of notice and in disregard of the fact that he had spent the prior ten months obtaining evidence and establishing a defense to refute Roe 1's claims regarding the events of November 19.

19. The Hearing Panel was provided an investigation file that included references to the false accusations brought by the other accusers, despite a prior agreement between Plaintiff and Defendant Hall that all such references would be redacted from the materials provided to the Hearing Panel.

20. The Hearing Panel chose to find Plaintiff responsible despite the accuser's disappearance during cross-examination, the demonstrated false statements she made to the investigators about Plaintiff and the alleged incident, contradictory testimony from her witness, among other glaring defects in her claim. In its written decision, the Hearing Panel inexplicably relied on the conflicting testimony because the contradictions made it "more credible." The Hearing Panel failed to consider Plaintiff's evidence refuting the accusations.

21. As to the second hearing in which Plaintiff was ultimately found responsible (the Roe 4 matter), Plaintiff denied any sexual contact with the fourth female and there was no evidence presented throughout the investigation or hearing establishing any sexual contact between Plaintiff and this accuser ever occurred. In fact, after obtaining continuances of the hearing, the accuser never showed up at the hearing and the only witness who testified, the Plaintiff, categorically denied ever touching her or attempting to have sexual relations with her.

22. Prior to the hearing, the Hearing Officer, who was, without explanation from the University, brought in from another institution, and admitted to being unfamiliar with UNC's policies, issued an initial ruling before the hearing began that categorically barred Plaintiff from presenting factual and documentary evidence that was relevant to, and

6

directly discredited, the female accuser's credibility, a significant error that contributed to the erroneous outcome.

23. In this particular case, there was voluminous evidence of the accuser's propensity to lie. One of her own witnesses described her as "the most unreliable narrator that I've ever met" and "a very big gaslighter", which the witness backed up with several detailed illustrative examples of the accuser's habit of evading responsibility for her own wrongdoing, "twisting the truth towards her favor," and fabricating false claims about the individuals who are harmed by her conduct.

24. In reaching its determination of responsibility, the Hearing Panel improperly relied upon what they claimed was a contemporaneous disclosure, which was never provided to the Investigators or the Hearing Panel, to another individual who did not appear or testify at the Hearing. Notably, the Hearing Panel did not specify what the precise contemporaneous disclosure was, nor was there any evidence admitted or presented corroborating the existence of a contemporaneous disclosure. Thus, the Hearing Panel improperly relied on non-existent and manufactured evidence in finding Plaintiff responsible for sexual misconduct. Moreover, UNC ignored the results of Plaintiff's polygraph test, which corroborated his denials of the false accusations in detail.

25. Despite there being no evidence of wrongdoing and the failure of the accusers to participate in the process or present reliable evidence supporting their allegations, Plaintiff was ultimately found responsible in two hearings for violating Title IX and UNC's policy on prohibited discrimination, harassment and related misconduct. Consequently, he was permanently expelled from the UNC system.

26. Plaintiff appealed the findings of the two hearings from which he was found "responsible," and his appeals were denied on August 3, 2022 and August 17, 2022 respectively. Plaintiff thereafter exercised his right to a second appeal, to the University of North Carolina Board of Trustees, on September 14, 2022. Those appeals were denied on February 14, 2023, and the denials are a final determination of the University's proceedings in these matters.

27. Plaintiff has now exhausted the administrative process and is seeking relief through this federal litigation.

28. Throughout the investigation, adjudication and appeal of the allegations against Plaintiff, Defendants failed to abide by the guidelines set by UNC's Policy and acted in violation of federal and state law. The brief summaries provided above only scratch the surface of the Title IX, due process and policy violations exhibited and employed by UNC throughout the entire administrative process. A comprehensive factual summary supporting Plaintiff's request for relief is provided in the Verified Complaint.

29. Plaintiff has been damaged by the Defendants' actions as his education and future have been severely compromised due to the flawed and unjust procedures that resulted in Plaintiff's expulsion. Plaintiff has also suffered severe physical, psychological and emotional distress and irreparable harm to his reputation.

30. Plaintiff therefore brings this action to obtain relief based on claims for violations of Title IX of the Education Amendments of 1972, violation of Fourteenth Amendment Procedural Due Process, breach of contract, and other state law claims.

31. Plaintiff should be permitted to protect his identity through the use of a pseudonym in public filings with the Court because the circumstances detailed in the Verified Complaint, giving rise to Plaintiff's claims, involve facts and allegations of a highly intimate nature. The disclosure of Plaintiff's identity will result in significant harm to him, as well as possible retaliation and harassment. The disclosure of the four female students' identities will likewise result in embarrassment and potential harassment. Moreover, Defendants—who are aware of Plaintiff's identity, and the identities of the four accusers—will not be prejudiced by Plaintiff's use of a pseudonym.

I declare under the penalty of perjury that the foregoing is true and correct, pursuant to Title 28, United States Code, Section 1746.

Executed on the 14th day of February, 2023.

                                                     /s/ Robert C. Ekstrand
                                                     Robert C. Ekstrand