# EXHIBIT 5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | |
|---|---|
| JACOB DOE<br><br>Plaintiff,<br><br>v.<br><br>THE UNIVERSITY OF NORTH CAROLINA SYSTEM, et al.<br><br>Defendants. | No. 1:23-cv-00041 |

**MEMORANDUM IN SUPPORT OF INTERVENORS
ACLU OF NORTH CAROLINA LEGAL FOUNDATION,
FREEDOM OF THE PRESS FOUNDATION
AND PROFESSOR EUGENE VOLOKH'S
<u>JOINT MOTION TO UNSEAL</u>**

In the American judicial system, civil proceedings are "traditionally open." *Virginia Dep't of State Police v. Washington Post*, 386 F.3d 567, 580 (4th Cir. 2004). "[I]n some civil cases the public interest in access, and the salutary effects of publicity, may be as strong as, or stronger than, in most criminal cases." *Gannett Co. v. DePasquale*, 443 U.S. 368, 386 n.15 (1979). Transparency is the general rule: the public's right of

1

access "may be abrogated only in unusual circumstances." *Stone v. Univ. of Maryland Med. Sys. Corp.*, 855 F.2d 178, 182 (4th Cir. 1988).

In this case, records that this Court relied upon to fix the substantive rights of the parties—and of non-parties whose constitutional rights are burdened by the temporary restraining order (TRO)—remain secret. If "unusual circumstances" exist to justify this deviation from the norm of transparency, these circumstances have not been disclosed to the public. There is no publicly available order explaining why certain judicial records are currently under seal. Accordingly, Intervenors respectfully move to unseal the following judicial records:

- Plaintiff's "Motion for a Temporary Restraining Order and Motion for a Preliminary Injunction" (ECF 4);
- Plaintiff's "Memorandum in Support [of] Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction" (ECF 5);
- Any orders issued by this Court allowing plaintiff to proceed under seal; and
- Any motions and supporting materials relating to sealing.

2

Unsealing is necessary to protect Intervenors', and the public's, right to "judge the product of the courts in [this] case." *Columbus–America Discovery Group v. Atlantic Mut. Ins. Co.*, 203 F.3d 291, 303 (4th Cir. 2000).

## BACKGROUND

This action was filed on February 15th, 2023. (ECF No. 1). In his complaint, plaintiff Jacob Doe alleges that various defendants involved in administering the University of North Carolina's student disciplinary process violated his constitutional, statutory, and common law rights in connection with his expulsion from the university following allegations that he committed multiple sexual assaults. (ECF No. 1, ¶¶ 562-828).

On February 22nd, 2023, this Court issued a TRO enjoining all defendants "from releasing or disclosing any information concerning the disciplinary proceedings that are the subject of this lawsuit;" requiring defendants "to direct all individuals . . . over whom they exercise control to refrain from publishing or disclosing any information concerning the Plaintiff, the disciplinary proceedings, or the outcomes of such proceedings;" and requiring defendants "to inform any media outlet, or any other third party, that receives information concerning the Plaintiff's

3

disciplinary outcome about the filing of this motion for a temporary restraining order and preliminary injunction, and notifying such media outlets or other third party, that they are prohibited from publishing any information concerning the Plaintiff, the disciplinary proceedings, or the outcomes of such proceedings." (ECF No. 14).

At the time this Court issued the TRO—and as of the filing of this motion—plaintiff's motion for a TRO and supporting memorandum were not available on the public docket. Graunke Decl. ¶ 8 (Ex. 2 to Mot. to Intervene). Nor is there an order on the docket reflecting why these records are sealed. Volokh Decl. ¶ 7 (Ex. 1 to Mot. to Intervene). Accordingly, Intervenors moved to intervene to unseal these records and, if it is not dissolved in accordance with the parties' joint motion (ECF No. 15), to challenge the broad scope of the TRO in this action, which they contend violates the First Amendment.

## ARGUMENT

I. **Intervenors have common law and First Amendment rights to access the orders and filings in this case.**

"The right of public access to documents or materials filed in a district court derives from two independent sources: the common law and the First Amendment." *Virginia Dep't of State Police*, 386 F.3d at 575.

4

Each source provides a different level of "substantive protection." *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir.1988). Under existing Fourth Circuit precedent, Intervenors have common law and First Amendment rights to access the requested records.

**A. Intervenors' common law right of access.**

"The common law presumes a right of the public to inspect and copy all judicial records and documents." *Virginia Dep't of State Police*, 386 F.3d at 575 (cleaned up). "[I]t is commonsensical that judicially authored or created documents are judicial records." *In re U.S. for an Ord. Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 290 (4th Cir. 2013).

So too are "documents filed with the court . . . if they play a role in the adjudicative process, or adjudicate substantive rights." *Id.* Plaintiff's motion for sealing, motion for a TRO and preliminary injunction, and any supporting materials "play[ed] a role in the adjudicative process" because they "were filed with the objective of obtaining judicial action or relief." *Id.* at 291. Accordingly, "the common law presumption of access attaches" to all judicial records sought by Intervenors. *Id.* at 292.[1]

---

[1] *See also Smartsky Networks, LLC v. Wireless Sys. Sols. LLC*, No. 1:20-CV-834, 2021 WL 929729, at *5 (M.D.N.C. Mar. 11, 2021) (concluding that "the common law right of access applies to" motion for

5

"To substantively overcome the common law presumption of access . . . a court must find that there is a 'significant countervailing interest' in support of sealing that outweighs the public's interest in openness." *In re U.S. for an Ord. Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d at 293 (quoting *Under Seal v. Under Seal*, 326 F.3d 479, 486 (4th Cir.2003)). In performing this "common law balancing test," courts consider "whether the records are sought for improper purposes . . . whether release would enhance the public's understanding of an important historical event; and whether the public has already had access to the information contained in the records." *In re Knight Publ. Co.*, 743 F.2d 231, 235 (4th Cir.1984). "The party seeking to overcome the presumption bears the burden of showing some significant interest that outweighs the presumption." *Rushford*, 846 F.2d at 253.

Here, Intervenors seek access to the requested motions and orders to assess this Court's rationale for issuing the TRO and the arguments presented in support of a preliminary injunction. This information would

---

preliminary injunction and supporting documents); *JAK Prods., Inc. v. Bayer*, No. 2:15-CV-00361, 2015 WL 13021743, at *2 (S.D.W. Va. Apr. 24, 2015) (denying motion to seal exhibits filed in support of motion for temporary restraining order because "the public's right of access [is not] outweighed" by the party's interest in confidentiality).

6

be used for legitimate purposes relating to each intervenor's respective professional missions, as a First Amendment scholar who publicly reports on issues relating to judicial transparency, a non-profit organization that regularly writes about and participates in legal proceedings involving press freedoms, and a non-profit organization that advocates for the constitutional rights of all North Carolinians. *See* Volokh Decl. ¶¶ 3-5 (Ex. 1 to Mot. to Intervene); Stern Decl. ¶¶ 2-3 (Ex. 3 to Mot. to Intervene); Graunke Decl. ¶¶ 6-11 (Ex. 2 to Mot. to Intervene). Release of these records would help the public understand why this Court issued a gag order which, under the First Amendment, "warrant[s] a most rigorous form of review because [it] rest[s] at the intersection of two disfavored forms of expressive limitations: prior restraints and content-based restrictions." *In re Murphy-Brown, LLC*, 907 F.3d 788, 796–97 (4th Cir. 2018). Absent action to unseal these records, the public will lack access to this information.

Given that plaintiff is already proceeding under pseudonym, his interest in maintaining privacy cannot be a "significant countervailing interest" justifying sealing. Plaintiff has asserted that providing the public with access to "the underlying facts and legal claims" of this case

7

will further the "public['s] interest in state activity, including activity that violates constitutional principles." (ECF No. 3, pp 9-10). Plaintiff's privacy interest may justify redacting portion of any records that may reveal personally identifying information about the parties. It cannot justify actions that "would conceal the basis for the court's decision, which . . . is not permissible in light of the public's . . . right of access to documents relied upon in support of" a decision, *Wiwel v. IBM Med. & Dental Benefit Plans for Regular Full-Time & Part-Time Emps.*, No. 5:15-CV-504-FL, 2018 WL 1146771, at *5 (E.D.N.C. Feb. 5, 2018), especially one implicating fundamental constitutional rights.

**B. Intervenors' First Amendment right of access.**

This Court need not address Intervenors' First Amendment rights to access the requested judicial records because plaintiff cannot meet his burden under the common law balancing test, and, as set forth *infra*, the local rules governing sealing have not been complied with in this case. However, should this Court disagree, Intervenors also have a First Amendment right to access the records.

While the common law right of access presumptively applies to all judicial records, "the First Amendment guarantee of access has been

8

extended only to particular judicial records and documents." *Stone*, 855 F.2d at 180. The question of what records are covered not been conclusively resolved in the Fourth Circuit. *See Dynatemp Int'l, Inc. v. R421A, LLC*, No. 5:20-CV-142-FL, 2021 WL 3284799, at *12 (E.D.N.C. July 30, 2021). But a document becomes a judicial record when it is used to "adjudicate substantive rights." *In re U.S. for an Ord. Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d at 290. Moreover, there is a long history of allowing members of the press and the public to access substantive motions in civil proceedings, *see, e.g.*, *Stone*, 855 F.2d at 182, and transparency at this stage "plays a significant positive role in the functioning of" the judicial system. *Press-Enter. Co. v. Superior Ct. of California for Riverside Cnty.*, 478 U.S. 1, 8 (1986).

"[S]everal circuits, as well as district courts within the Fourth Circuit, have held" that the First Amendment right applies to "documents filed in conjunction with a motion for preliminary injunction." *Dynatemp*, 2021 WL 3284799, at *12.[2] Courts have held the

---

[2] *See, e.g.*, *Baxley v. Jividen*, No. CV 3:18-1436, 2020 WL 1958632, at *3 (S.D.W. Va. Apr. 23, 2020) ("The extraordinary nature of a preliminary injunction, together with the corresponding public interest, is enough to persuade the Court that the First Amendment's right of access to judicial records must govern its analysis."); *Bayer Cropscience*

9

same with respect to documents filed in conjunction with a motion for a TRO.³ Because the Court relied upon plaintiff's TRO and preliminary injunction in issuing an order fixing the parties' substantive rights, the First Amendment right of access is implicated.

---

*Inc. v. Syngenta Crop Prot.*, LLC, 979 F. Supp. 2d 653, 656 (M.D.N.C. 2013) ("[B]riefing and exhibits filed in connection with motions seeking injunctive relief are subject to the public's First Amendment right of access."); *RLI Ins. Co. v. Nexus Servs., Inc.*, No. 5:18-CV-00066, 2018 WL 10602398, at *1 (W.D. Va. Oct. 30, 2018) ("[T]he more stringent First Amendment right of public access applies" to "a motion for preliminary injunction and its supporting memorandum, declarations, and exhibits"); *Ctr. for Auto Safety v. Chrysler Grp.*, LLC, 809 F.3d 1092, 1103 (9th Cir. 2016) ("Due to the strong presumption for public access and the nature of the instant motion for a preliminary injunction, Chrysler must demonstrate compelling reasons to keep the documents under seal."); *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1070 (3d Cir.1984) (applying the First Amendment standard to motion for a preliminary injunction).

³ *See, e.g.*, *Advanced Instructional Sys., Inc. v. Competentum* USA, Ltd., No. 1:15CV858, 2016 WL 7638141, at *2 (M.D.N.C. Feb. 18, 2016) ("The materials sought to be sealed here were filed in conjunction with Plaintiff's motion for a temporary restraining order, which was filed with the objective of obtaining judicial action. . . . As such, this court concludes that the briefing and exhibits filed in connection with the motion seeking injunctive relief are 'judicial records' that are subject to both the public's common-law and First Amendment right of access."); *Bayer CropScience Inc. v. Syngenta Crop Prot., LLC*, No. 1:13-CV-316, 2014 WL 12595225, at *1 (M.D.N.C. Jan. 6, 2014) ("[B]ecause the motions [for a TRO and preliminary injunction] were filed with the objective of obtaining judicial action . . . the materials are subject to the public's First Amendment right of access.").

10

At a minimum, the First Amendment right of access applies when a litigant's invocation of judicial authority may result in a substantial burden on another person's constitutional rights. "[P]reliminary injunctions are extraordinary remedies involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances." *MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001). And "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Legend Night Club v. Miller*, 637 F.3d 291, 302 (4th Cir. 2011) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion)). When a litigant invites a court to exercise an extraordinary judicial power in a manner that may work an irreparable injury, those who would be burdened—and all members of the public—have a right to know why such sweeping restrictions are justified.

Records implicating the First Amendment right of access must be made publicly accessible "unless there is a compelling . . . interest" in abrogating the right and "the denial of the right of access is narrowly tailored to serve that interest." *Franklin v. City of Charlotte*, No. 3:20-CV-00330-GCM, 2021 WL 5443566, at *2 (W.D.N.C. Nov. 19, 2021)

11

(citing *Rushford*, 846 F.2d at 253). There is no compelling interest in denying access to the requested records here and, even if there were, wholesale sealing is not "narrowly tailored" in light of other mechanisms available to protect plaintiff's privacy, including allowing him to proceed under pseudonym and redacting personally identifiable information.

II. **Intervenors did not receive the notice and opportunity to object to sealing required under Fourth Circuit precedent and this Court's local rules.**

Before shutting their doors to the public, courts must adhere to a set of procedural safeguards designed to give members of the public a chance to vindicate their access rights. Such safeguards were not applied in this case.

In the Fourth Circuit, courts must

> (1) provide public notice of the request to seal and allow interested parties a reasonable opportunity to object, (2) consider less drastic alternatives to sealing the documents, and (3) provide specific reasons and factual findings supporting its decision to seal the documents and for rejecting the alternatives.

*Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 302 (4th Cir. 2000). Similarly, LCvR 6.1 requires parties to support a motion to seal with "[a] non-confidential description of the material sought to be sealed" and "[a]

12

statement indicating why sealing is necessary and why there are no alternatives to filing under seal," LCvR 6.1(c)(1)-(2), and a court must "state its reasons with findings supporting its decision [to seal]" and "specify whether the sealing is temporary or permanent," LCvR 6.1(f).

In this case, these procedures were not followed. On 22 February 2023, this Court issued a TRO, which it granted "on the Plaintiff's <u>Ex Parte</u> Motion for a Temporary Restraining Order and Motion for a Preliminary Injunction. [Doc 4]." (ECF No. 14). Plaintiff's motion and "Memorandum in Support [of] Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction (ECF 5)," which are referenced in plaintiff's certification of notice (ECF No. 6), are not available on the public docket as of the filing of this motion. Nor is there a publicly available motion to seal or an order from this Court allowing sealing.

The public docket does contain plaintiff's complaint and "Motion for Leave to Proceed Under Pseudonym," along with a proposed order, a supporting memorandum, and a declaration of counsel. (ECF Nos. 1, 2, 2-1, 3, 3-1). These materials solely address plaintiff's desire to proceed pseudonymously, and to allow his accusers to proceed in the same

13

fashion. Nevertheless, plaintiff appears to have proceeded in secret to obtain an order substantially burdening the constitutional rights of Intervenors and other members of the public.

In his request to proceed as Jacob Doe, plaintiff argued it would be "sufficient that the underlying facts and legal claims are public." (ECF No. 3, p. 10). Indeed, plaintiff's complaint provides his version of the "underlying facts and legal claims" at great and often explicit length. (ECF No. 1). By plaintiff's own terms, there is no apparent justification for allowing the "facts and legal claims" supporting his request for a TRO and preliminary injunction to remain secret. At a minimum, this Court should provide Intervenors and other members of the public notice and an opportunity to be heard, as required under Fourth Circuit precedent and this Court's own rules.

## CONCLUSION

"Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like a fiat and requires rigorous justification." *Doe v. Pub. Citizen*, 749 F.3d 246, 266 (4th Cir. 2014) (quoting *Hicklin Eng'g, L.C. v. Bartell*, 439 F.3d 346, 348 (7th Cir.

14

2006)). Intervenors, and the public, are entitled to a justification for this Court's TRO or, at a minimum, an explanation for why it is permissible to deny them one. Accordingly, Intervenors respectfully request that this Court unseal the requested judicial records.

Respectfully submitted this 28th day of February 2023 by:

| **MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC** | **ACLU OF NORTH CAROLINA LEGAL FOUNDATION** |
|---|---|
| Mark R. Sigmon<br>N.C. State Bar No. 37762<br>5 W. Hargett Street<br>Suite 1001<br>Raleigh, NC 27601<br>Tel: (919) 461-6311<br>msigmon@milberg.com | /s/ Kristi L. Graunke*<br>Kristi L. Graunke<br>N.C. State Bar No. 51216<br>Samuel J. Davis**<br>N.C. State Bar. No. 57289<br>P.O. Box 28004<br>Raleigh, NC 27611<br>Tel. (Davis): (919) 354-5071<br>Tel. (Graunke): (919) 354-5066<br>sdavis@acluofnc.org<br>kgraunke@acluofnc.org |
| *Counsel for Intervenor Professor Eugene Volokh* | *Counsel for Intervenors ACLU-NCLF and Freedom of the Press Foundation*<br><br>*\*Counsel of record*<br><br>*\*\*Application for admission forthcoming* |