# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### CIVIL ACTION NO: 1:23-CV-00041

JACOB DOE,

        Plaintiff,

    v.

THE UNIVERSITY OF NORTH
CAROLINA SYSTEM, et al.

        Defendants.

**INDIVIDUAL DEFENDANTS' BRIEF
IN SUPPORT OF MOTION TO
DISMISS**

i

# TABLE OF CONTENTS

INTRODUCTION ......................................................................................... 1

STATEMENT OF THE FACTS........................................................................ 2

I.   Plaintiff Attends UNC-CH ................................................................. 2

A. Plaintiff's Freshman Year .......................................................... 2

B. Summer 2020........................................................................... 3

C. Plaintiff's Sophomore Year ....................................................... 3

II.  Plaintiff's Interim Suspension .......................................................... 5

III. EOC Investigates Plaintiffs' Sexual Misconduct Complaints ................... 5

IV. Plaintiff Appeals and Participates in a Hearing for Each Matter.............. 6

V.  Plaintiff Appeals To the BOT ........................................................... 7

LEGAL STANDARD ................................................................................... 7

ARGUMENT............................................................................................. 8

I.   Plaintiff filed his Complaint in an improper venue.................................. 9

II.  Plaintiff fails to state a §1983 claim..................................................... 10

A. Plaintiff is not entitled to an *Ex parte Young* injunction....................11

B. Plaintiff fails to state a §1983 individual capacity claim and, even if he has stated such a claim, it would be barred by qualified immunity....18

III. Plaintiff's state law claims should be dismissed. ....................................20

A. Plaintiff fails to state a tortious interference with contract claim........20

B.  Plaintiff fails to state a negligent hiring claim. .....................................21

C.  Plaintiff fails to state an NIED claim. .................................................23

D.  Plaintiff fails to state an IIED claim. ..................................................24

CONCLUSION ....................................................................................................25

## INTRODUCTION

Plaintiff's nearly 200-page Complaint attempts to state claims against seven University of North Carolina at Chapel Hill ("UNC-CH") employees and one North Carolina State University employee (collectively, the "Individual Defendants"), along with UNC-CH, its Board of Trustees ("BOT"), the University of North Carolina System ("UNC System") and the Board of Governors of the University of North Carolina (collectively, the "UNC Defendants").

The claims are based on the process that Plaintiff was provided after four female classmates accused him of sexual misconduct. This process is prescribed by federal law and implemented through UNC-CH's policies. Under these policies, Plaintiff was provided notice of the complaints against him. And, each complaint was investigated. Additionally, Plaintiff participated in hearings related to each complaint and he exercised his appeal rights—to an Appeals Officer and then to the BOT—in the two matters in which he was found responsible.

Plaintiff claims that the process he was afforded was biased against him because he was male. However, the ultimate outcome of the four cases against Plaintiff should silence that refrain—he was vindicated in two of the four cases.

A meaningful analysis of the Complaint's allegations demonstrates Plaintiff's claims against the Individual Defendants should be dismissed. **First,** Plaintiff has not met his burden of showing venue is proper. **Second,** any §1983 official capacity claim is barred because Plaintiff is not entitled to prospective injunctive relief under *Ex parte Young*. And, any §1983 individual capacity claim is legally deficient and is barred by qualified immunity. **Third,** Plaintiff has not sufficiently alleged facts or a legal duty to support his state law tort claims.

1

The sheer length of the Complaint cannot make up for the lack of a factual or legal basis for Plaintiff's claims. Accordingly, the Individual Defendants respectfully request that the Court dismiss the claims against them.

## STATEMENT OF THE FACTS[1]

### I. Plaintiff Attends UNC-CH

#### A. Plaintiff's Freshman Year

In Fall 2019, Plaintiff Jacob Doe enrolled at UNC-CH with a full scholarship from the Morehead-Cain Foundation ("MCF"). Compl. ¶¶27, 29. On Plaintiff's first night at UNC-CH, he met Jane Roe 4 and they became fast friends. *Id.* ¶150. At some point, Roe 4 started dating Plaintiff's fraternity brother, John Coe. *Id.* ¶¶154, 220.

In March 2020, Plaintiff, Coe, Roe 4, and other friends took a Spring Break trip to Alabama. *Id.* ¶155. The first allegations of misconduct relate to this trip. Roe 4 claims that Plaintiff "grabbed [her] vagina and attempted to penetrate her vagina with [his] finger(s) without her consent." *Id.* ¶272. Sara Poe witnessed the assault and saw Roe 4's eyes and facial expression change when it occurred. *Id.* ¶510. Plaintiff contends he "approached [Roe 4] from behind, put his arms around her and inadvertently placed his hand in her lap." *Id.* ¶158.

Following Spring Break, UNC-CH closed its campus due to COVID. *Id.* ¶¶155, 161. Plaintiff and Roe 4 continued to spend time together at his condominium. *Id.*

---

[1]    For their Rule 12(b)(6) Motion, the Individual Defendants assume the facts alleged in the Complaint are true, but otherwise dispute the truth of Plaintiff's allegations.

## B. Summer 2020

Plaintiff and Roe 4's relationship continued through the summer. *See, e.g., id.* ¶162. During one of Roe 4's visits to Plaintiff's condo, she claims that she was assaulted a second time. Roe 4 reported that Plaintiff touched her "breast, pressed his penis into her back, and attempted to engage in sexual intercourse with her without her consent." *Id* ¶¶162, 272. Roe 4 immediately told Poe about this encounter. *See id.* ¶513. Roe 4 also told Coe, and Coe confronted Plaintiff the next day. *Id.* ¶163. In response, Plaintiff texted Roe 4 saying he was sorry if he made her feel uncomfortable. *Id.* ¶165. Roe 4 replied that she was "a little uncomfortable w some of the touchiness." *Id.* Plaintiff accuses Roe 4 of "manufactur[ing]" her claims to make Coe jealous. *Id.* ¶167.

## C. Plaintiff's Sophomore Year

In Fall 2020, UNC-CH reopened its campus and Plaintiff returned to Chapel Hill. *Id.* ¶¶171-72. In October 2020, Plaintiff matched with Jane Roe 2 on a "hook-up" app. *Id.* ¶172. They engaged in sexual activities in his bedroom at the fraternity house on October 22, 2020. *Id.* ¶¶172, 177.

Plaintiff was also in a "non-exclusive romantic relationship" with Jane Roe 1. *Id.* ¶¶184, 198. Roe 1 was best friends with Roe 2. *Id.* ¶184. On November 1, 2020, Plaintiff and Roe 1 had sex for the first time. *Id.* ¶¶199-200. Later that month, after a party at Plaintiff's fraternity house, Roe 1 claims that Plaintiff had sex with her—without her consent—while she was unconscious. *Id.* ¶414. Roe 1 reported waking up in pain, checking to see if she had started her menstrual cycle, and returning to bed after confirming she was not bleeding. *Id.* ¶¶414, 437, 439. Kate Joe, Roe 1's friend and roommate, noticed bruising on Roe 1's neck. *See id.* ¶¶226, 446-47.

3

Just a few months later, in January 2021, Plaintiff and Jane Roe 3 went on a ski trip. *Id.* ¶213. To split up the drive, they stayed at Plaintiff's family home on the way to the mountains. *Id.* ¶214. Plaintiff and Roe 3 had sex at his house that night. *Id.* ¶215. Shortly after returning from the ski trip with Roe 3, Plaintiff and Roe 1 continued engaging in sexual interactions, including during a weekend stay at the Carolina Inn from January 18 to January 20, 2021. *Id.* ¶202.

Days later, on January 23, 2021, Roe 4 told Roe 1 and Roe 2 about her experience with Plaintiff. *Id.* ¶205. At the same time, Roe 2 disclosed that she had sex with Plaintiff. *Id.* Roe 1 was devastated and ended her relationship with Plaintiff two days later. *Id.* ¶206. When texting Plaintiff that day, Roe 1 wrote "you tend to pressure girls and become manipulative when trying to get a girl to have sex with you." *Id.*

In March 2021, Roe 2, who was dating Coe, told Coe that Plaintiff had forced her to have nonconsensual sex. *Id.* ¶220. Roe 4, who was now dating Joseph Boe, another fraternity brother, told Boe about how Plaintiff had assaulted her. *Id.* This information was "disseminated throughout the fraternity, tarnishing Plaintiff's name and reputation prior to any formal complaint being filed or investigated." *Id.* Thereafter, Plaintiff was kicked out of his fraternity. *Id.* ¶¶220-21, 227. Later that month, Roe 2 met Roe 3 and they learned that they had similar sexual experiences with Plaintiff. *See id.* ¶218.

On March 26, 2021, Roe 2 disclosed to two MCF scholars that Plaintiff had "sexually assaulted multiple women who 'wish to remain anonymous.'" *Id.* ¶224. The two MCF scholars conveyed these reports to their MCF advisor. *Id.* ¶225. Two days later, Joe helped the four Roes compile their allegations and prepare a summary report about Plaintiff's sexual misconduct. *Id.* ¶226.

4

On March 29, 2021, Roe 2 shared the joint report with MCF. *Id.* ¶226-27. Three days later, on April 1, 2021, MCF provided this report to UNC-CH's Equal Opportunity and Compliance Office ("EOC"). *Id.* ¶229. That same day, the Roes' joint report was submitted to EOC. *Id.* ¶230.

Plaintiff continued feeling the effects of the Roes' disclosures through April. *Id.* ¶¶220, 231.

On May 10, 2021, MCF suspended Plaintiff's scholarship. *Id.* ¶242.

## II. Plaintiff's Interim Suspension

On May 4, 2021, Plaintiff was placed on interim suspension by UNC-CH's Emergency Evaluation and Action Committee ("EEAC"). *Id.* ¶232. Plaintiff was permitted on campus to attend required in-person classes and to finish his final exams for the Spring 2021 semester. *Id.* ¶232-36.

On May 11, 2021, Plaintiff requested a hearing on his interim suspension. *Id.* ¶243. Plaintiff submitted a memorandum to support his position and participated in the EEAC hearing. *Id.* ¶¶244, 252. EEAC denied Plaintiff's request to remove the interim suspension. *Id.* ¶¶244, 254. The Hearing Panel reasoned that four separate students complained of non-consensual sexual activity and some instances included allegations of bruising and physical pain to the reporting party. *Id.* ¶255.

## III. EOC Investigates Plaintiffs' Sexual Misconduct Complaints

Four Individual Defendants work in UNC-CH's EOC. Defendant Elizabeth Hall is EOC's Associate Vice Chancellor and Title IX Coordinator. *Id.* ¶16. Defendant Rebecca Gibson is EOC's Director of Report and Response. *Id.* ¶19. And Defendants Jeremy Enlow and Beth Froehling are EOC investigators. *Id.* ¶¶17-19.

On June 30, 2021, EOC notified Plaintiffs of the four complaints against him. *Id.* ¶266. Each Notice of Investigation included details about the complaints against Plaintiff. *Id.* ¶¶267-68, 271-73. For example, the Notice of Investigation regarding Roe 4's report stated:

> 1. During spring break in March 2020, in Alabama, you grabbed the reporting party's vagina and attempted to penetrate her vagina with your finger(s) without her consent; 2. On or about June 2020, in your off-campus residence, you touched the reporting party's breasts, pressed your penis into her back, and attempted to engage in sexual intercourse with her without her consent.

*Id.* ¶272 (quoting Notice).

After providing notice to Plaintiff, EOC investigated. EOC investigated the Roe 1 and Roe 2 complaints under UNC-CH's Policy on Prohibited Sexual Harassment Under Title IX. *Id.* ¶274. And, EOC investigated the Roe 3 and Roe 4 complaints under UNC-CH's Policy on Prohibited Discrimination, Harassment, and Related Misconduct ("PPDHRM"). *Id.* Plaintiff was represented by counsel during the investigations. *Id.* ¶¶301, 324, 345, 356, 367, 371. As part of the investigations, Plaintiff, Roe 1, Roe 2, Roe 3, Roe 4, and other witnesses were interviewed. *Id.* ¶¶281, 346-48.

EOC then prepared draft reports for each Roe matter. *Id.* ¶¶358-61. Plaintiff received the draft reports and was given the opportunity to respond to them, which he did. *Id.* ¶¶359-61. After receiving Plaintiff's responses, EOC issued its Final Report for each of the Roe matters. *Id.* ¶¶362, 364, 373, 408.

## IV.    Plaintiff Appeals and Participates in a Hearing for Each Matter

Plaintiff exercised his appeal rights in the Roe 3 and 4 matters under the PPDHRM. *Id.* ¶366. Separate hearings related to the allegations by each Roe were held. The Roe 1 hearing was in January 2022. *Id.* ¶385. The Roe 2 hearing was in February

2022. *Id.* ¶474. The Roe 3 hearing was in March 2022. *Id.* ¶484. The Roe 4 hearing was in April 2022. *Id.* ¶491. Defendant Jaclyn Feeney chaired the Hearing Panels for the Roe 1, 2, and 3 matters. *Id.* ¶¶20, 386, 493. Defendant David Elrod, North Carolina State University's Associate Vice Provost of the Office for Institutional Equity and Diversity, chaired the Hearing Panel for the Roe 4 matter. *Id.* ¶¶492, 494, 495-500. Plaintiff attended each of the Roe hearings. *Id.* ¶¶385, 404, 407, 474, 484, 491, 507-08.

Ultimately, Plaintiff was found not responsible in the Roe 2 and 3 matters. *Id.* ¶¶475, 486, 527. Plaintiff was found responsible in the Roe 1 and 4 matters. *Id.* ¶¶509, 524, 527, 542.

Plaintiff was suspended until May 2023 for his assault of Roe 1. *See id.* ¶¶523, 526. Plaintiff was expelled for his assault of Roe 4. *Id.* ¶522.

## V.    Plaintiff Appeals To the BOT

On June 6, 2022, Plaintiff appealed the outcome of the Roe 1 and 4 hearings. *Id.* ¶¶528, 530. On August 3, 2022, an Appeals Officer affirmed the decision of the Roe 4 Hearing Panel. *Id.* ¶533. On August 17, 2022, an Appeal Officers affirmed the decision of the Roe 1 Hearing Panel. *Id.* ¶535. Plaintiff appealed both decisions to the BOT. *Id.* ¶542. The BOT likewise affirmed the Roe 1 and Roe 4 decisions, finding no clear and material error. *Id.* ¶¶549-52. Plaintiff filed the Complaint the next day.

## LEGAL STANDARD

Under Rule 12(b)(1), the plaintiff must show that the court has subject matter jurisdiction. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). The plaintiff likewise bears the burden of showing personal jurisdiction under Rule 12(b)(2), *Mylan Lab'ys, Inc. v. Akzo*, 2 F.3d 56, 59-60 (4th Cir. 1993), and proper venue under Rule 12(b)(3), *Perkins v. Town of Princeville*, 340 F. Supp. 2d 624, 626 (M.D.N.C. 2004).

7

Under Rule 12(b)(6), a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim is plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). The Court does not, however, accept legal conclusions as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## ARGUMENT

Plaintiff's Complaint includes (1) a §1983 claim against the Individual Defendants, (2) a tortious interference with contract claim against the Individual Defendants, (3) a negligent hiring claim against Hall, (4) a negligent infliction of emotional distress ("NIED") claim against the Individual Defendants, and (5) an intentional infliction of emotional distress ("IIED") claim against the Individual Defendants. Compl. at 120, 178, 181, 183-84. Plaintiff names UNC-CH's Chancellor, Kevin Guskiewicz, only in his official capacity. *Id.* at 1. However, nowhere in Plaintiff's voluminous Complaint does he indicate whether he seeks relief from the other Individual Defendants in their individual or official capacities.

Plaintiff's lack of specificity is of no consequence. Plaintiff's claims against the Individual Defendants should be dismissed. **First,** Plaintiff's Complaint should be dismissed under Rule 12(b)(3) because he filed this action in an improper venue. **Second,** Plaintiff's §1983 claim fails under Rules 12(b)(1), (2) and (6) because he is not entitled to injunctive relief under the *Ex parte Young* exception. Further, Plaintiff fails to state sufficient facts to support a §1983 individual capacity claim and it is barred by the Individual Defendants' qualified immunity. **Third,** Plaintiff's state law claims fail under

8

Rule 12(b)(6). They are insufficiently and implausibly pled for the reasons described below.[2]

## I. Plaintiff filed his Complaint in an improper venue.

Plaintiff cites 28 U.S.C. §1391(b)(2) to establish that the Western District is a proper venue. Compl. ¶26. As stated in the UNC Defendants' Motion to Dismiss Brief ("UNC Brief"), the substantial events of this case occurred in the Middle District, not this District. *See* ECF 35 at 10-11. Thus, venue is improper under §1391(b)(2).

Though Plaintiff does not explicitly rely on §1391(b)(1), Plaintiff claims that venue is proper because there are UNC System constituent institutions located in the Western District. Compl. ¶26. Plaintiff's reliance is unfounded. All Defendants reside in North Carolina, but no Defendant resides in this District. The UNC Defendants do not reside in this District. *See* ECF 35 at 9-10. And, no Individual Defendant resides in this District.[3] *See* ECF 32 at Exs 1 to 7. Thus, venue is also improper under §1391(b)(1).

For these reasons, the Western District is not the proper venue for this lawsuit.

---

[2]     To the extent Plaintiff's claims are based on a conspiracy, they fail too. There is no standalone conspiracy claim in North Carolina. *Piraino Bros., LLC v. Atl. Fin. Group,* 211 N.C. App. 343, 350, 712 S.E.2d 328, 333 (2011). And the intracorporate conspiracy doctrine would bar a claim based on an alleged conspiracy among UNC-CH and its officers, employees or agents. *Buschi v. Kirven*, 775 F.2d 1240, 1251-53 (4th Cir. 1985).

[3]     Guskiewicz is named only in his official capacity. For venue purposes, he is considered to "reside in the judicial district where he maintains his official residence, that is, where he performs his official duties." *Oates v. N. Carolina State Treasurer*, No. 3:15-CV-541-GCM, 2016 WL 3226012, at *2 (W.D.N.C. June 7, 2016) (citing *Republican Party of N.C. v. Martin*, 682 F. Supp. 834, 836 (M.D.N.C. 1988)). Guskiewicz, as Chancellor of UNC-CH, performs his official duties in Chapel Hill and therefore would reside for the purposes of venue in this matter in the Middle District.

## II. Plaintiff fails to state a §1983 claim.

Plaintiff's §1983 due process claim rests on conclusory allegations that Defendants violated the Fourteenth Amendment by depriving him of his property interest in continued enrollment and his liberty interest in his reputation. *See* Compl. ¶¶569-70, 572-73.

However, to state a procedural due process claim under §1983, Plaintiff must do more. Plaintiff must show (1) a constitutionally protected interest, (2) that he was deprived of that interest by state action, and (3) that the procedures employed were inadequate. *Sansotta v. Town of Nags Head*, 724 F.3d 533, 540 (4th Cir. 2013). Plaintiff cannot meet his burden.

As a preliminary matter, if Plaintiff intended to make a §1983 claim seeking monetary damages from the Individual Defendants in their official capacities, that claim is barred by the Eleventh Amendment as explained in the UNC Brief. *See* ECF 35; *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 67 (1989); *Kentucky v. Graham*, 473 U.S. 159, 167 (1985).

Plaintiff may attempt to seek relief under the *Ex parte Young* exception. But that exception cannot salvage his claims against any Defendant, with the possible exception of an official capacity claim against Chancellor Guskiewicz. And, even that claim fails because (1) Plaintiff has not identified Guskiewicz's connection to the case, (2) Plaintiff has not been deprived of a constitutionally protected interest, and (3) Plaintiff received sufficient due process.

Finally, to the extent Plaintiff intended to make a §1983 individual capacity claim against the other Individual Defendants, that claim is barred because, again: (1) Plaintiff has not been deprived of a constitutionally protected interest and (2) Plaintiff received

sufficient due process. And, even if Plaintiff could overcome these legal deficiencies, the Individual Defendants' qualified immunity bars these claims. Plaintiff does not have a clearly established right in either his (1) university enrollment, or (2) reputation.

### A. Plaintiff is not entitled to an *Ex parte Young* injunction.

Eleventh Amendment immunity bars §1983 official capacity claims. *Fauconier v. Clarke*, 966 F.3d 265, 279-80 (4th Cir. 2020) (citing *Will*, 491 U.S. at 71). Here, Plaintiff attempts to evade Eleventh Amendment immunity by seeking an *Ex parte Young* injunction against Guskiewicz in his official capacity that would undo Plaintiff's sanctions and permit reenrollment at UNC-CH. Compl. ¶615. The *Ex parte Young* exception only permits prospective injunction relief. *Allen v. Cooper*, 895 F.3d 337, 354 (4th Cir. 2018). This is a narrow exception to Eleventh Amendment immunity that applies only to "an ongoing violation of federal law." *Id.* The plaintiff bears the burden of showing an ongoing violation. *Id.*

Plaintiff's Roe 1 suspension will expire before this Motion is decided. *See* Compl. ¶¶523, 526. Thus, the only sanction from which Plaintiff could seek prospective injunctive relief is his Roe 4 expulsion. But Plaintiff is not entitled to that relief for the three reasons described below—any of which is independently sufficient to bar his claim.

### 1. Plaintiff has not identified Guskiewicz's connection to the relief he seeks.

When seeking an *Ex parte Young* injunction, a plaintiff must identify an official capacity defendant that has "some connection" to the challenged conduct. *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 550 (4th Cir. 2014) (quoting *Ex parte Young*, 209 U.S. 123, 157 (1908)). Requiring this "special relation" ensures that the official sued has some

"*proximity to* and *responsibility for* the challenged state action." *McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010) (quotations omitted).

In *Hutto*, the Court found that the *Ex parte Young* exception did not apply where the officials sued played no role in the challenged employee contributions to the state retirement plan. 773 F.3d at 550-51. Similarly, in *McBurney*, the Court found that the attorney general played no role in enforcing the law being challenged. 616 F.3d at 400-01.

Here, the Complaint lacks fact allegations showing that Guskiewicz played a role in Plaintiff's Roe 4 expulsion. The Complaint, likewise, lacks allegations showing that Guskiewicz has the authority to undo the expulsion. Thus, Plaintiff has not met his burden of identifying an official that can provide the relief he seeks under the *Ex parte Young* exception.

### 2. Plaintiff was not deprived of a constitutionally protected interest.

Alternatively, if Plaintiff has alleged sufficient facts showing Guskiewicz is a proper official for an *Ex parte Young* injunction, then his claim still fails because he has not been deprived of a constitutionally protected interest. Plaintiff conclusorily alleges that he has a (1) property interest in continued enrollment, and (2) a liberty interest in his good name and reputation, and that he has been deprived of those interests without due process. Compl. ¶¶569-72. But Plaintiff has not shown either interest is entitled to Fourteenth Amendment due process protections.

**First,** "the Supreme Court has only assumed, without actually deciding, that university students possess a constitutionally protectible property right in their continued enrollment in a university." *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 239 (4th Cir. 2021) (cleaned up) (quoting *Tigrett v. Rector & Visitors of Univ. of*

*Va.*, 290 F.3d 620, 627 (4th Cir. 2002)). Plaintiff recognizes that this is the state of the law, compl. ¶571, while simultaneously alleging that it is "well established that a person has a protected property interest in pursuing and continuing his education," *id.* ¶570. To be clear, no such right is well established, as stated in *Sheppard*.

For a property interest to be subject to procedural due process protections, it must be "created and defined by a source independent of the Constitution, such as state law." *Huang v. Bd. of Governors of Univ. of N.C.*, 902 F.2d 1134, 1141 (4th Cir. 1990) (citing *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)). Plaintiff identifies no North Carolina law that gives him a property interest in his UNC-CH enrollment. *Cf. Goss v. Lopez*, 419 U.S. 565, 573 (1975) (relying on Ohio statute to find that suspended high school students had a constitutional interest in their education). Instead, Plaintiff claims §700.4.1 of the UNC System Policy Manual gives him a property right in his enrollment. Compl. ¶¶575-78. Plaintiff reliance is misplaced.

In *Sheppard*, the plaintiff argued that his university's policies and procedures created a protected property interest. 993 F.3d at 239. The Fourth Circuit disagreed: "we have held that mere violations of school procedures are insufficient by themselves to implicate the interests that trigger a federal due process claim." *Id.* (cleaned up); *see also Cash v. Lees-McRae Coll., Inc.*, No. 1:18CV52, 2018 WL 7297876, at *11-12 (W.D.N.C. Aug. 13, 2018) (finding student code of conduct did create a contract right*), report and recommendation adopted*, No. 1:18-CV-00052-MR-WCM, 2019 WL 276842 (W.D.N.C. Jan. 22, 2019), *aff'd,* 811 F. App'x 190 (4th Cir. 2020).

Moreover, the title of §700.4.1 precludes a finding that it creates a property right. Section 700.4.1 sets forth certain minimum standards for procedural due process that constituent institutions, like UNC-CH, must provide in student conduct disciplinary

proceedings. *See* Compl. ¶¶83, 142, 147. These minimum procedural standards are then effectuated through constituent institution policies, like UNC-CH's PPDHRM. The creation of such procedures, however, does not create a property interest in enrollment. "[P]rocedural rights in themselves do not create substantive property rights protected by the Fourteenth Amendment." *Jackson v. Long*, 102 F.3d 722, 729 (4th Cir. 1996) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985)).

Accordingly, Plaintiff does not have a property interest in his enrollment.

**Second,** Plaintiff claims he has a constitutionally protected liberty interest in his good name and reputation. The Fourth Circuit "has plainly and repeatedly recognized that an injury to reputation alone does not deprive an individual of a constitutionally protected liberty interest." *Tigrett*, 290 F.3d at 628. Whether such an interest exists is decided based on the stigma-plus test. *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 309 n.16 (4th Cir. 2006); *see also Paul v. Davis*, 424 U.S. 693, 709 (1976). To satisfy this test, a stigmatizing statement must be made public such that it damages the plaintiff's reputation. *Sciolino v. City of Newport News*, 480 F.3d 642, 646 (4th Cir. 2007). And the reputational injury must be "accompanied by a state action that 'distinctly altered or extinguished' [the plaintiff's] legal status." *Shirvinski v. U.S. Coast Guard*, 673 F.3d 308, 315 (4th Cir. 2012) (quoting *Paul*, 424 U.S. at 711).

Plaintiff's Complaint fails this test. To begin, Plaintiff's alleged reputational injury occurred long before UNC-CH imposed sanctions. Indeed, Plaintiff states in the Complaint that allegations of nonconsensual sex against Plaintiff were "disseminated through [his] fraternity, tarnishing Plaintiff's name and reputation prior to any formal complaint being filed or investigated." Compl. ¶220. Further, Plaintiff's allegations show that he was kicked out of his fraternity, ostracized by his friends, and feeling the effects

14

of the Roes' claims against him in March and April 2021, more than a year before his sanctions were imposed. Compl. ¶¶219-21, 227, 231. None of this had anything to do with Defendants.

Further, Plaintiff does not identify any statement that Defendants made about him, let alone a public statement, that caused reputational injury.

In any event, even if an Individual Defendant somehow caused Plaintiff to suffer a public, reputational injury, he has not identified any change in his legal status that accompanied that injury. Plaintiff's former status as a UNC-CH student is not a legal status subject to constitutional protections. Courts facing claims from similarly situated plaintiffs have dismissed them under Rule 12(b)(6). *See, e.g.*, *Doe v. Va. Polytechnic Inst. & State Univ.*, 617 F. Supp. 3d 412, 429 (W.D. Va. 2022) ("Without a statutory right to be a public college or university student, Doe cannot show that his status under state law was altered or extinguished."); *Doe v. Univ. of Va.*, No. 3:22-CV-00064, 2023 WL 2873379, at *6 (W.D. Va. Apr. 10, 2023). The same result is warranted here.

In sum, Plaintiff is not entitled to an *Ex parte Young* injunction because he has not been deprived of any constitutionally protected interest.

### 3. Plaintiff received sufficient due process.

Alternatively, if Plaintiff has sufficiently alleged constitutionally protected interests, then his claim fails nonetheless because he received sufficient due process before the alleged deprivation of those interests.

Plaintiff claims that he did not receive sufficient process because (1) he did not get to cross examine Roe 4, and (2) the Hearing Chair, Defendant Elrod, excluded certain evidence about Roe 4. Compl. ¶¶597-98. But neither is required to provide Plaintiff with

sufficient due process. *See Doe v. Loh*, No. CV PX-16-3314, 2018 WL 1535495, at *7 (D. Md. Mar. 29, 2018), *aff'd*, 767 F. App'x 489 (4th Cir. 2019) (collecting cases).

Due process requires notice and the opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976). This standard is flexible depending on the particular circumstances of the case. *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). However, it is clear that an "evidentiary hearing is neither a required, nor even the most effective, method of decisionmaking [sic] in all circumstances," and thus "the Supreme Court has recognized that the requirements of due process may be satisfied by something less than a trial-like proceeding." *Henson v. Honor Comm. of U. Va.*, 719 F.2d 69, 73-74 (4th Cir. 1983). In the context of student disciplinary proceedings, the Fourth Circuit has found that a trial-like proceeding with cross examination is not required. *Butler v. Rector & Bd. of Visitors of Coll. of William & Mary*, 121 F. App'x 515, 520 (4th Cir. 2005).[4] "A school is an academic institution, not a courtroom or administrative hearing room." *Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 88 (1978).

---

[4]     This is supported by recent guidance from the Department of Education, which accompanied changes to Title IX's regulations, stating:

> In these final regulations, the Department deliberately declines to adopt wholesale the procedural rules that govern, for example, Federal civil lawsuits, Federal criminal proceedings, or proceedings before administrative law judges. Understanding that schools, colleges, and universities exist first and foremost to provide educational services to students, are not courts of law, and are not staffed with judges and attorneys or vested with subpoena powers.

Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 85 Fed. Reg. 30026, 30051 (May 19, 2020)(codified at 34 C.F.R. 106), https://www.govinfo.gov/content/pkg/FR-2020-05-19/pdf/2020-10512.pdf.

Consist with federal law and UNC-CH policy, Plaintiff was notified of the investigation and underlying reported conduct on June 30, 2021. Compl. ¶266. The notice told Plaintiff that EOC was investigating his reported grabbing of Roe 4's vagina in Alabama in March 2020, and his reported touching of Roe 4's breast, pushing his penis into her back and trying to engage in nonconsensual sex with her at his condo in June 2020. *Id.* ¶272.

During the investigation, Plaintiff was represented by counsel. *Id.* ¶301. He was interviewed and submitted evidence in his defense to the investigators. *Id.* ¶¶346, 349, 354. When the investigation was complete, Plaintiff had an opportunity to review the Draft Report and provided comment. *Id.* ¶361. On December 9, 2021, EOC issued its Final Report. *Id.* ¶364. The Final Report found Plaintiff responsible for sexually assaulting Roe 4 during the Spring Break trip and at his condo, *see id.* ¶¶272, 364, and recommended the sanction of expulsion, *id.* ¶364.

Plaintiff appealed on December 23, 2021. *Id.* ¶366. And, a hearing was held on April 7, 2022. *Id.* ¶491. UNC-CH retained Defendant Elrod, a neutral Hearing Chair from another university, to oversee the hearing. *Id.* ¶492. Plaintiff was represented by counsel at the hearing. *Id.* ¶502.

On April 14, 2022, the Panel issued a written decision. *Id.* ¶509. Plaintiff then had the opportunity, and did, appeal the decision to an Appeals Officer, *id.* ¶533, and BOT, *id.* ¶¶542.

This shows Plaintiff received notice and several opportunities to be heard.

\*   \*   \*

The narrow *Ex parte Young* exception does not apply here. As a result, any §1983 official capacity claim must be dismissed.

## B. Plaintiff fails to state a §1983 individual capacity claim and, even if he has stated such a claim, it would be barred by qualified immunity.

To the extent Plaintiff attempts to state a §1983 individual capacity claim seeking monetary damages from the Individual Defendants, this procedural due process claim also fails. As discussed above, Plaintiff cannot show that he is entitled to Fourteenth Amendment due process protections in continued enrollment, or in his good name and reputation. Further, Plaintiff cannot demonstrate that even if he has a constitutionally protected interest that he was deprived of those interests without due process.[5] These deficiencies are fatal to any §1983 individual capacity claim for the same reasons they are fatal to the §1983 official capacity claim against Guskiewicz.

However, even if Plaintiff has sufficiently stated a §1983 individual capacity claim, the Individual Defendants are entitled to qualified immunity.

Questions concerning qualified immunity should be decided "at the earliest possible stage." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). This immunity protects government officials "from liability for civil damages insofar as their conduct does not

---

[5] Plaintiff was provided similar process in the Roe 1, Roe 2, and Roe 3 matters that he was provided in the Roe 4 matter. Plaintiff was provided notice of the complaints against him. Compl. ¶266. He participated in the investigations of each of the matters. *Id.* ¶¶346, 349-54. And, he was represented by counsel. *Id.* ¶¶209 fn. 9, 301, 324, 345, 356, 367, 371, 404, 407, 426, 539. He had the opportunity and, in fact, did provide a response to the draft reports. *Id.* ¶¶358-61. He was provided a separate hearing for each matter. *Id.* ¶¶385, 474, 484. He attended each hearing. ¶¶385, 474, 484, 507-08. He was offered and exercised appeal rights in the Roe 1 matter. *Id.* ¶528.

This process was consistent with UNC-CH's policies. And, it was informed by the Department of Education ("ED") 2020 Title IX regulations. Compl. ¶645-47; *see also id.* ¶695 (alleging that UNC-CH, along with schools across the county, updated their policies to align them with the ED's new regulations).

18

violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Qualified immunity applies unless: (1) "the facts that a plaintiff has alleged . . . make out a violation of a constitutional right," *and* (2) "the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). If the plaintiff fails to establish either factor, qualified immunity applies and the claim fails. *See Est. of Armstrong ex rel. Armstrong v. Vill. of Pinehurst*, 810 F.3d 892, 898 (4th Cir. 2016). Stated another way, the defendant prevails if the plaintiff fails to establish either factor.

"For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quotation omitted). While a case does not need to be directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Whether a right is clearly established is a legal question. *See Siegert v. Gilley*, 500 U.S. 226, 233 (1991).

Here, Plaintiff's §1983 claim is barred because he had (1) no clearly established right to his university enrollment, and (2) no clearly established right in his reputation.

**First,** regarding continued enrollment, the Fourth Circuit has recognized that "the Supreme Court has only assumed, without actually deciding, that university students possess a constitutionally protectible property right in their continued enrollment in a university." *Sheppard*, 993 F.3d at 239 (cleaned up). Thus, there is no clearly established right. *See Garrett v. Tomas*, No. 1:21-CV-00110-MR-WCM, 2021 WL 5100964, at *8 (W.D.N.C. Oct. 14, 2021), *report and recommendation adopted,* No.

19

1:21-CV-00110-MR-WCM, 2021 WL 5099598 (W.D.N.C. Nov. 2, 2021); *see also Doe v. Va. Polytechnic Inst. & State Univ.*, No. 7:21-CV-00378, 2023 WL 2188737, at *10 (W.D. Va. Feb. 23, 2023).

**Second,** regarding Plaintiff's reputation, there is no clearly established right to reputational interests alone. *Tigrett*, 290 F.3d at 628. Rather, a reputational injury may provide a basis for a constitutional claim when there has been a public stigmatizing statement, and that statement was accompanied by a change in legal status. *See Jensen v. W. Carolina Univ.*, No. 2:11CV33, 2012 WL 6728360, at *13 (W.D.N.C. Dec. 28, 2012), aff'd, 538 F. App'x 359 (4th Cir. 2013). Here, Plaintiff fails to allege any public statement by any Individual Defendant, and there was no change to his legal status.

Accordingly, because there was no violation of a clearly established right, Plaintiff's §1983 claim for damages is barred by the Individual Defendants' qualified immunity.

### III. Plaintiff's state law claims should be dismissed.

Plaintiff asserts four state law claims: (1) a tortious interference with contract claim against all the Individual Defendants, (2) a negligent hiring, supervision, and retention claim against Hall only, (3) a NIED claim against all the Individual Defendants, and (4) an IIED claim against all the Individual Defendants.

To the extent Plaintiff's state law claims are alleged against the Individual Defendants in their official capacities, they fail on the immunity grounds described in the UNC Brief. *See* ECF 35; *see also Graham*, 473 U.S. at 165. To the extent Plaintiff's state law claims are individual capacity claims, they fail for the reasons described below.

#### A. Plaintiff fails to state a tortious interference with contract claim.

Plaintiff claims the Individual Defendants interfered with his MCF scholarship

20

contract. Compl. ¶¶184-86. But Plaintiff's fact allegations contradict his legal theories, and otherwise are too conclusory and implausible to state a tortious interference claim.

To state a tortious interference with contract claim, a plaintiff must allege "(1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff." *United Labs., Inc. v. Kuykendall*, 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988).

Plaintiff alleges that "UNC intentionally induced [MCF] to cease carrying out the contract with Plaintiff, when they notified [MCF] of the alleged misconduct complaints filed against Plaintiff." Compl. ¶819. But his factual allegations contradict this assertion. Plaintiff alleges that MCF learned of his assault allegations before UNC-CH did, and neither entity learned them from any Individual Defendant. Two MCF scholars and Roe 2 allegedly reported Plaintiff's misconduct to MCF, which relayed the reports to UNC-CH. *Id.* ¶¶226-27, 229. These allegations belie the claim that an Individual Defendant induced MCF's decision to suspend Plaintiff's scholarship.

## B. Plaintiff fails to state a negligent hiring claim.

Plaintiff claims Hall was negligent in her hiring, supervision, and retention of Enlow, one of the two EOC investigators who investigated the Roes' allegations of misconduct. *See* Compl. ¶¶790-91. This claim fails for at least three reasons. First, Plaintiff has not established that Hall owed him a legal duty. Second, even if a duty was owed, North Carolina only recognizes negligent hiring claims against employers—not fellow employees. Third, Plaintiff does not allege that Enlow was incompetent to perform his job or that Hall knew or had reason to know of any purported unfitness.

21

To state a negligence-based claim, there first must be "a legal duty owed by the defendant to the plaintiff." *Keith v. Health-Pro Home Care Servs., Inc.*, 381 N.C. 442, 450, 873 S.E.2d 567, 574 (2022). Plaintiff identifies no legal grounds for such a duty.

Plaintiff may seek to rely on Title IX to create that duty. For example, Plaintiff points to conduct by Enlow throughout the investigations and hearings process and claims Enlow was negligent. Compl. ¶788. But this is the very same conduct Plaintiff identifies as showing intentional discrimination against men under Title IX. Plaintiff cannot use Title IX to create a duty here. Title IX does not apply to individuals like Hall. *See Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009) (noting that Title IX has "consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals"). Further, Title IX cannot provide the basis for state law tort claims like negligent hiring against Hall. *See Cash*, 2018 WL 7297876, at *14; *see also Riepe v. Sarstedt, Inc.*, No. 5:09-CV-00104, 2010 WL 3326691, at *4 (W.D.N.C. Aug. 23, 2010).

Further, in North Carolina a negligent hiring claim is a claim against employers— not employees. *See Braswell v. Braswell*, 330 N.C. 363, 373, 410 S.E.2d 897, 903 (1991); *see* also *Keith*, 381 N.C. at 451, 873 S.E.2d at 575. Like Enlow, Hall is a UNC-CH employee. Because Hall did not employ Enlow—UNC-CH did—Hall cannot be liable for a negligent hiring claim.

Finally, Plaintiff has not alleged that Enlow was incompetent to perform his job or that that Hall knew or had reason to know of any purported unfitness. *See Austin v. Regal Inv. Advisors, LLC*, No. 17 CVS 309, 2018 WL 324710, at *12 (N.C. Super. Jan. 8, 2018).

Plaintiff's negligent hiring claim is triply deficient and warrants dismissal.

### C. Plaintiff fails to state an NIED claim.

Plaintiff claims the Individual Defendants negligently inflicted emotional distress in how they investigated and conducted the hearings arising from the sexual misconduct claims against him. Compl. ¶¶800-01.

To state an NIED claim, a plaintiff must allege "that (1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress . . . , and (3) the conduct did in fact cause the plaintiff severe emotional distress." *Johnson v. Ruark Obstetrics & Gynecology Assocs.*, P.A., 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990). Severe emotional distress means an "emotional or mental disorder . . . which may be generally recognized and diagnosed by professionals trained to do so." *Id.* And that distress must be the foreseeable proximate result of the defendant's negligence. *Id.*

As with Plaintiff's negligent hiring claim, there is no special duty of care between the Individual Defendants and Plaintiff. *See supra* Section III.B. And Plaintiff cannot rely on Title IX to establish that duty. *Id.*

Further, Plaintiff's allegations of severe emotional distress are conclusory. Compl. ¶¶803, 806. He simply states he has severe emotional distress without stating whether that means depression, anxiety, or any other diagnosable condition. *See id.* Moreover, there are no allegations that Plaintiff has in fact been diagnosed with such a condition.

Finally, even if Plaintiff sufficiently alleged that he suffered severe emotional distress, his allegations do not show that the Individual Defendants were the proximate cause of that distress. Before any misconduct was reported to UNC-CH, Plaintiff's name and reputation was tarnished, he was kicked out of his fraternity and he ostracized by his friends, among other things. Compl. ¶¶220-21, 227, 231. The Individual Defendants

played no role in how others treated Plaintiff once they came to believe that Plaintiff had sexually assaulted multiple students.

Accordingly, Plaintiff's NIED claim should be dismissed. The Individual Defendants did not owe Plaintiff a duty, and Plaintiff has not sufficiently alleged severe emotional distress or that the Individual Defendants caused that distress.

### D. Plaintiff fails to state an IIED claim.

It should suffice to say that Plaintiff's failure to state a NIED claim shows he cannot meet the higher IIED standard on nearly identical facts. *Compare* Compl. ¶¶800-01 *with*, *id.* ¶¶809-10.

To state an IIED claim, a plaintiff must allege "(1) extreme and outrageous conduct [by the defendant], (2) which is intended to cause and does cause (3) severe emotional distress to another." *Turner v. Thomas*, 369 N.C. 419, 427, 794 S.E.2d 439, 446 (2016). Conduct is extreme and outrageous when it "exceeds all bounds of decency tolerated by society." *West v. King's Dep't Store, Inc.*, 321 N.C. 698, 704, 365 S.E.2d 621, 625 (1988). There is a "high threshold" to meet this standard. *Turner*, 369 N.C. at 427, 794 S.E.2d at 446. And whether conduct is extreme and outrageous is a question of law. *Johnson v. Bollinger*, 86 N.C. App. 1, 6, 356 S.E.2d 378, 381 (1987).

As with his NIED claim, there are only conclusory allegations of severe emotional distress, and there are no allegations of diagnosable emotional distress. *See supra* Section III.C. Plaintiff also has not sufficiently alleged extreme and outrageous conduct. *See, e.g.*, *Turner*, 369 N.C. at 428, 794 S.E.2d at 446 (finding extreme and outrageous conduct when the defendants decided "to conduct and repeat experiments until they achieved a bloodstain pattern that supported their theory"); *Howard v. City of Durham*, 487 F. Supp. 3d 377, 429 (M.D.N.C. 2020) (noting that if the defendant fabricated

evidence then a jury might find that conduct extreme and outrageous).

Therefore, Plaintiff's IIED claim should be dismissed.

## CONCLUSION

For all these reasons, Plaintiff's claims against the Individual Defendants should be dismissed with prejudice.

This the 8th day of May, 2023.

JOSHUA H. STEIN
Attorney General

/s/ Jeremy D. Lindsley
Jeremy D. Lindsley
Assistant Attorney General
NC State Bar No. 26235
jlindsley@ncdoj.gov

/s/ Kimberly D. Potter
Kimberly D. Potter
Special Deputy Attorney General
NC State Bar No. 24314
kpotter@ncdoj.gov

North Carolina Department of Justice
PO Box 629
Raleigh, NC 27602
Tel: 919-716-6920
Fax: 919-716-6764

*Attorneys for Defendants*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing **INDIVIDUAL DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all registered CM/ECF users.

This 8th day of May, 2023.

JOSHUA H. STEIN
Attorney General

/s/ Jeremy D. Lindsley
*Attorney for Defendants*