IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL ACTION NO: 1:23-CV-00041

JACOB DOE,

       Plaintiff,

    v.

THE UNIVERSITY OF NORTH
CAROLINA SYSTEM, et al.

      Defendants.

**UNC DEFENDANTS'
BRIEF IN SUPPORT OF
MOTION TO DISMISS**

i

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

STATEMENT OF FACTS .................................................................................. 2

    I.    Plaintiff Is Reported to UNC-CH for Sexually Assaulting
        Multiple Students ................................................................................ 2

    II.   Plaintiff Is Suspended for Sexually Assaulting Roe 1 ...................................... 4

    III.  Plaintiff Is Expelled for Sexually Assaulting Roe 4. .......................................... 6

STANDARD OF REVIEW .............................................................................. 8

ARGUMENT ...................................................................................................... 9

    I.    Plaintiff's Complaint Should Be Dismissed for Improper Venue ..................... 9

    II.   Plaintiff Has Failed to State a Title IX Claim. ................................................. 11

        A.   Plaintiff Has Not Shown That Gender Discrimination
            Caused His Injury ..................................................................................... 11

           1.   Plaintiff's Conclusory Allegations Do Not Show Gender Bias ................. 12

           2.   Plaintiff's Allegations About Outside Pressures Do Not Show
              Gender Bias. ........................................................................................ 14

           3.   Plaintiff's Allegations Show UNC-CH Followed the Law,
              Not Gender Bias. ................................................................................. 15

           4.   Plaintiff's Allegations Show UNC-CH Followed Its Policies,
              Not Gender Bias. ................................................................................. 17

        B.   Plaintiff Cannot Recover Monetary Damages Under Title IX ..................... 20

    III.  Plaintiff Cannot Maintain §1983 Claims Against the UNC Defendants .......... 23

    IV.  UNC-CH Is Immune from Plaintiff's State Law Claims. ............................... 24

CONCLUSION .................................................................................................. 25

Case 1:23-cv-00041-MR-WCM   Document 35   Filed 05/08/23   Page 2 of 29

## INTRODUCTION

As a recipient of federal funds, The University of North Carolina at Chapel Hill ("UNC-CH") must comply with Title IX, which requires formal procedures to investigate and adjudicate complaints of sexual misconduct. *See* 34 C.F.R. §106.45. UNC-CH's Policy on Prohibited Sexual Harassment Under Title IX ("Title IX Policy") and Policy on Prohibited Discrimination, Harassment, and Related Misconduct ("PPDHRM") reflect its legal obligations to protect and sustain the university's educational environment.

When four students reported Plaintiff Jacob Doe for sexual misconduct, these policies, as mandated by federal law, controlled the process Plaintiff received. In accordance with these policies, and with representation from counsel, Plaintiff submitted evidence, participated in hearings, testified in his own defense, and contested findings through several appeals.

Plaintiff was found not responsible in the matters reported by Janes Roes 2 and 3. And Plaintiff was found responsible in the matters reported by Janes Roes 1 and 4. He was suspended for his assault of Roe 1 and expelled for his assaults of Roe 4.

Plaintiff claims his sanctions in the Roe 1 and 4 matters resulted not from his own actions, but instead from UNC-CH's bias against men. He claims that UNC-CH's process, which twice produced results in his favor, was systemically biased against men when it produced results not in his favor.

Based on this theory of bias, Plaintiff has sued UNC-CH, UNC-CH's Board of Trustees ("BOT"), the University of North Carolina System ("UNC System"), the Board

1

of Governors of the University of North Carolina ("BOG") (collectively, the "UNC Defendants"), and eight Individual Defendants who serve those institutions.[1]

Plaintiff alleges a claim against UNC-CH for violation of 20 U.S.C. §1681 *et seq*. ("Title IX"). He alleges claims against the UNC Defendants for violation of 42 U.S.C. §1983. And he alleges claims against UNC-CH for breach of contract, negligent hiring, tortious interference with contract, and violation of North Carolina's Constitution.

All of these claims are legally defective and warrant dismissal. **First**, Plaintiff filed his Complaint in an improper venue. **Second**, Plaintiff failed to state a Title IX claim. His allegations that gender bias caused his injury fail the legal standard, and he seeks remedies that are unavailable under Title IX. **Third**, Plaintiff's §1983 claims are barred by the Eleventh Amendment and because no UNC Defendant is a "person." **Fourth**, the UNC Defendants are immune from Plaintiff's state law claims.

## STATEMENT OF FACTS[2]

### I. Plaintiff Is Reported to UNC-CH for Sexually Assaulting Multiple Students.

In the Spring 2021 semester, Plaintiff was a sophomore at UNC-CH with a full-tuition scholarship from the Morehead-Cain Foundation ("MCF"). ECF 1 ¶¶1, 29. MCF is a third-party entity separate and distinct from UNC-CH. *Id.* ¶817.

---

[1] The Individual Defendants have also moved to dismiss. The official capacity claims against them should be dismissed for the same reasons the claims against the UNC Defendants should be dismissed. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).

[2] The UNC Defendants dispute many of Plaintiff's allegations, but assume as true the Complaint's well-pleaded, non-conclusory fact allegations for their 12(b)(6) motion. Because Plaintiff relies upon and quotes UNC-CH's policies, ECF 1 ¶¶37-149, he has made those documents integral and appropriate to consider. *Am. Chiropractic Ass'n v. Trigon Healthcare*, Inc., 367 F.3d 212, 234 (4th Cir. 2004). UNC-CH's Title IX Policy and Procedures, and PPDHRM and Procedures, are attached as Exs. 1, 2, 3, and 4, respectively. *See Kerr v. Marshall Univ. Bd. of Govs.*, 824 F.3d 62, 68 & n.1 (4th Cir. 2016) (relying on student handbook attached by university when affirming dismissal).

On March 27, 2021, two fellow MCF scholars reported Plaintiff to MCF for sexually assaulting multiple women. *Id.* ¶225. The next day, four students—Jane Roes 1, 2, 3 and 4—contacted MCF claiming Plaintiff had assaulted them. *Id.* ¶226.

On April 1, 2021, MCF informed UNC-CH's Equal Opportunity and Compliance Office ("EOC") of the reports. *Id.* ¶229. That same day, the Roes' joint complaint was submitted to EOC. *Id.* ¶230.

UNC-CH's response to these reports reflected its policies and federal law. Title IX permits removing a student from the educational environment on an emergency basis if they present "an immediate threat to the physical health or safety of any student or other individual arising from the allegations of sexual harassment." 34 C.F.R. §106.44(c). UNC-CH's Title IX Policy and PPDHRM thus call for EOC to refer such matters to the Emergency Evaluation and Action Committee ("EEAC") to assess whether a reported student "poses a danger . . . to other members of the University community" or "a serious threat of disruption to the academic process." Ex. 2 at 3; Ex. 4 at 7.

EEAC evaluated the Roes' reports and determined that Plaintiff posed such a threat. ECF 1 ¶¶234-36. EEAC placed Plaintiff on interim suspension but permitted him to finish his final exams. *Id.*

Thereafter, MCF suspended Plaintiff's scholarship. *Id.* ¶242.

EOC gave Plaintiff notice that it was investigating the Roes' reports. *Id.* ¶266. The Roe 1 and 2 reports were investigated under the Title IX Policy because they occurred in Plaintiff's fraternity house, a building owned or controlled by a student organization. *Id.* ¶¶172-77, 268, 271, 274; *see* Ex. 1 at 1. The Roe 3 and 4 reports were investigated under the PPDHRM because they occurred off campus and were "reasonably likely to have continuing adverse effects" on campus. ECF 1 ¶¶272-744; *see* Ex. 3. at 10.

3

Because Plaintiff was found not responsible in the Roe 2 and 3 matters, and thus did not face sanctions or exhaust his administrative remedies, ECF 1 ¶¶475, 486, 551-52, the following summary primarily concerns Roes 1 and 4.

## II. Plaintiff Is Suspended for Sexually Assaulting Roe 1.

Plaintiff's assault of Roe 1 was investigated under UNC-CH's Title IX Policy. ECF 1 ¶274. The Title IX Policy applies "to locations, events, or circumstances for which the University exercised substantial control over both the Responding Party and the context in which the Title IX Sexual Harassment occurred," including in "any building owned or controlled by a student organization that is officially recognized by the University." Ex. 1 at 1. Under the Title IX Policy, Sexual Harassment includes "Sexual Assault." *Id.* at 3-4 And "Rape" is defined as Sexual Assault involving "[p]enetration, no matter how slight, of the vagina . . . with any body part . . . without the consent of that person." *Id.* at 3.

Roe 1 reported that (1) "From November 2020 to January 2021, [Plaintiff] pressured [Roe 1] into having sexual intercourse that at times resulted in bruises on her collarbone and wrists"; (2) "from November 2020 to January 2021, [Plaintiff] ignored [Roe 1]'s verbal requests to stop during consensual sexual intercourse with her"; and (3) On or about November 19, 2020, in the Kappa Sigma house, [Plaintiff] engaged in sexual intercourse with [Roe 1] without her consent." ECF 1 ¶¶267-68.

On June 15, 2021, Roe 1 contacted EOC about withdrawing her complaint, hoping to move on and focus on her schoolwork. *Id.* ¶258. Utilizing the discretion provided in the Title IX Policy, Ex. 2 at 3, UNC-CH's Title IX Coordinator, Defendant Elizabeth Hall, determined that the first two parts of the complaint would be dismissed because Roe 1's withdrawal prevented EOC from gathering evidence, ECF 1 ¶269.

4

Thus, EOC investigated the third part of the complaint—that Plaintiff raped Roe 1 at his fraternity house after a party *on or about* November 19, 2020. *Id.* ¶¶ 268, 270. As part of the investigation, EOC interviewed Plaintiff, Roe 1, and nine other witnesses. *Id.* ¶¶346-47. Plaintiff also submitted "extensive" evidence in his defense. *Id.* ¶349.

On October 29, 2021, EOC issued a draft report, summarizing the relevant evidence gathered. *See id.* ¶358. Plaintiff had an opportunity to review and respond to the draft report. *Id.* ¶359. On December 22, 2021, EOC notified Plaintiff that the Roe 1 hearing would occur on January 27, 2022. *Id.* ¶365. On January 12, 2022, EOC provided Plaintiff with its final report. *Id.* ¶373. This gave Plaintiff more than two weeks to prepare for the hearing based on the final report's findings.

The Roe 1 hearing took place January 27-28, 2022. *Id.* ¶385. Both parties were represented by counsel. *See id.* ¶404. During the hearing, it became clear that the party that proceeded Roe 1's assault took place on November 12, not November 19. *See id.* ¶393. During Roe 1's cross examination, she requested a break and then left the hearing. *Id.* ¶404. After that, Roe 1's counsel answered questions on her behalf. *Id.*

On February 16, 2022, the Hearing Panel issued a Notice of Hearing Outcome, finding that "[Plaintiff] penetrated the Reporting Party's vagina with his penis without [Roe 1]'s consent." *Id.* ¶413. Specifically, the Panel found that Roe 1 attended a November 12, 2020 holiday party at Plaintiff's fraternity house where she drank peppermint Schnapps and fell asleep in Plaintiff's bed, incapacitated from alcohol consumption. *Id.* ¶416. Early that morning, Plaintiff engaged in rough sexual intercourse with Roe 1 while she was unconscious. *Id.* Around 3 AM, Roe 1 awoke in pain, checked to see if she had begun her menstrual cycle, and fell back asleep. *Id.* ¶¶436-37. Later that

morning, "she had bruising on her upper chest, neck, and wrists, which was consistent with being forcibly restrained while unconscious." *Id.* ¶416.

These findings were supported by Roe 1's testimony, a photograph showing Roe 1 in Plaintiff's fraternity house the morning of November 13, and testimony from a witness that she saw Roe 1 leaving the hallway where Plaintiff's bedroom was located that same morning. *See id.* ¶¶414, 416, 457, 459. Plaintiff's evidence that he was texting a friend to find marijuana at 2:34 AM that night did not exclude the possibility that he could have assaulted Roe 1. *See id.* ¶¶416, 451-52.

On May 16, 2022, the Panel issued its Amended Notice of Hearing Outcome, imposing the sanction of a one-year suspension for Plaintiff's assault of Roe 1. *Id.* ¶¶523-24, 526. Plaintiff appealed the Roe 1 decision. *Id.* ¶528. The Appeals Officer affirmed the Panel's findings and sanction, and Plaintiff further appealed to UNC-CH's BOT. *Id.* ¶¶535, 542-43. On February 14, 2023, the BOT unanimously upheld the decision. *Id.* ¶¶549-51. The next day, Plaintiff filed this lawsuit.

## III. Plaintiff Is Expelled for Sexually Assaulting Roe 4.

Plaintiff's assault of Roe 4 was investigated under the PPDHRM. ECF 1 ¶274. The PPDHRM applies to "to all Prohibited Conduct that occurs on and off campus . . . if: the conduct . . . had continuing adverse effects on campus." Ex. 3. at 10. In determining whether off-campus Prohibited Conduct "is reasonably likely to have continuing adverse effects" EOC considers "the seriousness of the alleged conduct, the risk of harm involved, whether both parties are members of the campus community, and whether the off-campus conduct is part of a series of actions that occurred both on and off campus." *Id.*

Prohibited Conduct under the PPDHRM includes "Sexual Assault," which is defined as "having or attempting to have Sexual Contact with another individual without

Consent." *Id.* at 15. Sexual Contact "is any intentional touching or penetration of another person's clothed or unclothed intimate body parts, including but not limited to the . . . groin, genitalia, or breast, by another with any part of the body." *Id.* at 16.

Roe 4 reported that (1) "During spring break in March 2020, in Alabama, [Plaintiff] grabbed [Roe 4]'s vagina and attempted to penetrate her vagina with [his] finger(s) without her consent"; and (2) "On or about June 2020, in [Plaintiff's] off-campus residence, [he] touched [Roe 4]'s breasts, pressed [his] penis into her back, and attempted to engage in sexual intercourse with her without her consent." ECF 1 ¶272. Applying the PPDHRM, EOC determined that the off-campus assaults were reasonably likely to have continuing adverse effects on campus. *See id.* ¶266.

Plaintiff and Roe 4 were interviewed as part of EOC's investigation. *Id.* ¶¶281, 346. Following the investigation, Plaintiff had an opportunity to review and respond to EOC's draft report. *See id.* ¶361.

On December 9, 2021, EOC issued its final report. *Id.* ¶364. EOC found Plaintiff responsible for both reported assaults of Roe 4 and recommended that he be expelled. *Id.* Plaintiff appealed EOC's findings and recommended sanction. *Id.* ¶366.

The Roe 4 hearing was held on April 7, 2022. *Id.* ¶491. Plaintiff was represented by counsel and testified in his own defense. *Id.* ¶¶502, 507. Roe 4 did not attend. *Id.* ¶¶507-08. Defendant David Elrod served as Hearing Chair. Elrod did not permit Plaintiff to admit certain evidence about Roe 4. *See id.* ¶¶495-500. Section IV.C.7 of the PPDHRM describes the types of evidence, such as character evidence, that are not relevant in an EOC investigation. Ex. 4 at 17.

On April 14, 2022, the Hearing Panel issued its Notice of Hearing Outcome, finding that Plaintiff sexually assaulted Roe 4. ECF 1 ¶509. Specifically, the Panel relied

7

on testimony from Roe 4, witness testimony about Roe 4's facial expression when Plaintiff grabbed her vagina, and witness testimony about Roe 4's contemporaneous disclosures and behavior after Plaintiff assaulted her in his condominium. *Id.* ¶¶510-13. Though the Panel found that Plaintiff engaged in nonconsensual Sexual Contact, the Panel did not find that Plaintiff tried to have nonconsensual sex with Roe 4. *See id.* ¶527.

On May 11, 2022, the Panel issued its Amended Notice of Hearing Outcome, imposing the sanction of expulsion for Plaintiff's assaults of Roe 4. *Id.* ¶¶521-22. The Appeals Officer affirmed the Panel's findings and sanction. *Id.* ¶¶530, 533-34. On February 14, 2023, UNC-CH's BOT unanimously upheld the decision. *Id.* ¶¶549-51. The next day, Plaintiff filed this lawsuit.

*     *     *

Plaintiff's suspension for his assault on Roe 1 ends this month, making his expulsion for assaulting Roe 4 the primary sanction that remains in effect.

## STANDARD OF REVIEW

Under Rule 12(b)(1), the plaintiff must show that the court has subject matter jurisdiction. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). The plaintiff likewise bears the burden of showing personal jurisdiction under Rule 12(b)(2), *Mylan Lab'ys, Inc. v. Akzo*, 2 F.3d 56, 60 (4th Cir. 1993), and proper venue under Rule 12(b)(3), *Perkins v. Town of Princeville*, 340 F. Supp. 2d 624, 626 (M.D.N.C. 2004).

Under Rule 12(b)(6), it matters not whether there are detailed fact allegations but whether the allegations are "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements . . . supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009). For a discrimination claim to survive, there must be something to nudge a claim "across the line from conceivable to plausible." *Id.* at 680.

ARGUMENT

Plaintiff's Complaint should be dismissed. **First**, under Rule 12(b)(3), venue is improper. **Second**, under Rule 12(b)(6), Plaintiff has failed to state a Title IX claim. Plaintiff has not sufficiently or plausibly alleged that gender discrimination caused his injury. And the remedies Plaintiff seeks are largely unavailable under Title IX. **Third**, under Rules 12(b)(1), (2), and (6), Plaintiff's §1983 claims are barred by the Eleventh Amendment and because the UNC Defendants are not a "person." **Fourth**, under Rules 12(b)(1), (2), and (6), Plaintiff's state law claims are barred by UNC-CH's immunity. [3]

## I. Plaintiff's Complaint Should Be Dismissed for Improper Venue.

Under 28 U.S.C. §1391(b), venue is proper in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . .

Plaintiff alleges venue is proper under §1391(b)(2) but appears to be relying on §1391(b)(2). *See* ECF 1 ¶26 & n.2. Venue, however, is improper under both provisions.

**First**, under §1391(b)(1), though all Defendants are residents of North Carolina, no Defendant resides in this District. The Individual Defendants reside in the Middle and Eastern Districts. ECF 32-1 to 32-7.

---

[3] Plaintiff's nearly 200-page Complaint containing more than 800 allegations does not comport with Rule 8(a)'s requirement of a "short and plain statement of the claim." This also supports dismissal. *See Abraham v. Thomas Jefferson Univ.*, No. CV 20-2967, 2021 WL 982722, at *1 (E.D. Pa. Mar. 15, 2021) (dismissing similar complaint).

9

The UNC Defendants' residency is controlled by §1391(c)(2), which states that "an entity . . . shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction *with respect to the civil action in question*." (emphasis added). "Courts have interpreted this as only authorizing venue where there is specific jurisdiction over the defendant." *Cunningham v. Daybreak Solar Power, LLC*, No. 3:22-CV-9-MOC-DCK, 2022 WL 2759074, at *2 (W.D.N.C. July 14, 2022).

Thus, for the UNC Defendants to reside in this District, Plaintiff's claims must arise out of the UNC Defendants' contact directed toward this District. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, (1984). But Plaintiff has not alleged that UNC-CH or its BOT had any contact with this District related to Plaintiff's claims. Instead, his allegations arise from UNC-CH's conduct in Chapel Hill.

Similarly, neither the UNC System nor the BOG directed conduct toward this District with respect to Plaintiff's claims. While Plaintiff alleges that there are other UNC System schools in this District, ECF 1 ¶26 & n.2, that mere presence is no basis for venue. The UNC System and BOG could not reasonably foresee being hailed into this District based on claims arising from UNC-CH's conduct in the Middle District. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). Accordingly, there has been no purposeful availment and venue is improper under §1391(b)(1).

**Second**, under §1391(b)(2), the substantial events of this case did not occur in this District, they occurred in the Middle District.

Plaintiff does not identify any substantial event that occurred in this District. *See* ECF 1 ¶26 & n.2. Though Plaintiff notes that he has been expelled from all UNC System schools and that some of those schools are in this District, that has nothing to do with

10

the events "giving rise" to his claims—all of which occurred in Chapel Hill. That is where Plaintiff was reported for misconduct and where the investigations, hearings, sanctions, and appeals occurred. *See Doe v. Bd. of Visitors of Va. Mil. Inst.*, No. 7:20CV00058, 2020 WL 2563289, at *2 (W.D. Va. May 20, 2020) (finding venue proper where investigation and proceedings took place, not where the plaintiff now attended school).

Accordingly, there is no basis for venue under §1391(b)(2).

## II. Plaintiff Has Failed to State a Title IX Claim.

Title IX prohibits "any education program or activity receiving Federal financial assistance" from discriminating "on the basis of sex." 20 U.S.C. §1681.

Recently, in *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 235-37 (4th Cir. 2021), the Fourth Circuit made clear that to state a Title IX claim, a party must show that gender discrimination was the *but-for* cause of their injury. Even more recently, in *Cummings v. Premier Rehab Keller*, 142 S. Ct. 1562, 1576 (2022), the Supreme Court clarified the remedies available for Spending Clause legislation, like Title IX.

Under this controlling precedent, Plaintiff's Title IX claim should be dismissed. **First**, Plaintiff has not plausibly alleged that gender discrimination was the but-for cause of his injury. **Second**, much of the relief Plaintiff seeks is unavailable under Title IX.

### A. Plaintiff Has Not Shown That Gender Discrimination Caused His Injury.

The controlling question when deciding a motion to dismiss a Title IX claim is: "do the alleged facts, if true, raise a plausible inference that the university discriminated . . . 'on the basis of sex'?" *Sheppard*, 993 F.3d at 235 (quoting *Doe v. Purdue Univ.*, 928

11

F.3d 652, 667-68 (7th Cir. 2019)).[4] Because Title IX prohibits discrimination "on the basis of sex" this standard "requires 'but-for' causation." *Id.* at 236-37 (citing *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1739 (2020)). Thus, to "adequately plead causation" a plaintiff must show a "causal link between the student's sex and the university's challenged disciplinary proceeding." *Id.*

Here, Plaintiff attempts to allege gender discrimination through (1) conclusory allegations; (2) allegations about external pressures; (3) allegations showing UNC-CH followed the law; and (4) allegations showing UNC-CH followed its policies. None of these methods plausibly shows that gender bias caused Plaintiff's claimed injury.

### 1. Plaintiff's Conclusory Allegations Do Not Show Gender Bias.

Plaintiff alleges that UNC-CH engaged in "gender-biased . . . conduct," ECF 1 ¶¶553-60, and that "institutional, systemic gender bias" affected UNC-CH's process, *id.* ¶¶708, 745-47. Conclusory allegations such as these, without facts to support them, are insufficient to state a Title IX claim. *See Dillow v. Va. Polytechnic Inst. & State Univ.*, No. 7:22CV00280, 2023 WL 2320765, at *13 (W.D. Va. Mar. 2, 2023) ("[Plaintiff] does not allege any facts—outside of conclusory allegations—that would support an inference that the decision to suspend him was motivated by sex or gender bias.").

Plaintiff attempts to support these conclusory allegations by suggesting that he was treated differently than Roes 1 and 4, and that the only explanation for this different treatment is that he is male and the Roes are female. But courts have repeatedly rejected

---

[4] Plaintiff relies on the erroneous outcome theory from *Yusuf v. Vassar Coll.*, 35 F.3d 709 (2d Cir. 1994), in his attempt to allege a Title IX claim. *See* ECF 1 at 134 & ¶¶701-02. In *Sheppard*, the Fourth Circuit adopted the more straightforward test from *Purdue*, stating it "more closely tracks the text of Title IX." *Sheppard*, 993 F.3d at 235.

this premise. Gender bias is not inferred simply because the accused party, who happens to be male, is treated differently than an accuser, who happens to be female. *See Doe v. Stonehill Coll.*, 55 F.4th 302, 334 (1st Cir. 2022) ("[D]eference to Roe, without more, does not show that her treatment – or Doe's – is attributable to sex rather than to some other reason, such as Roe's status as the complainant."); *Doe v. Univ. of Denver*, 952 F.3d 1182, 1196 (10th Cir. 2020) ("Most courts . . . have concluded that evidence of a school's anti-respondent bias does not create a reasonable inference of anti-male bias.").

In *Sheppard*, the plaintiff alleged that his university was biased against men because it treated him differently than his former girlfriend and her female friend, who were also subject to disciplinary proceedings. 993 F.3d at 237. The Court, however, concluded that the plaintiff was not similarly situated to the females at issue because he was accused of assault while they were accused of larceny. *Id.* Though the plaintiff "likened the situation to two teams playing basketball and the referees only making calls against one team," the Court noted that the plaintiff and his former girlfriend were both found responsible while the female friend was not, showing no preferential treatment of one gender over another. *Id.*; *see also Carter v. Bowie State Univ.*, No. GJH-20-2725, 2022 WL 717043, at *8 (D. Md. Mar. 9, 2022) (dismissing complaint with conclusory allegation that male was treated differently than similarly situated female).

Here, the facts are even more distinct than in *Sheppard* where all three students were responding parties. Plaintiff was a Responding Party. Roes 1 and 4 were Reporting Parties. To the extent Plaintiff's allegations show any difference in how he was treated as compared to the Roes, he has not shown that gender was the *but-for* cause of that difference. "[A] pro-complainant, anti-respondent bias. . . is not discrimination 'on the basis of sex.'" *Doe v. Samford Univ.*, 29 F.4th 675, 690 (11th Cir. 2022). Moreover, that

13

Plaintiff was found not responsible in two of the four reported matters shows that the "referees" were not only making calls that favored one gender, just like in *Sheppard*.

Accordingly, Plaintiff's conclusory allegations do not show gender discrimination.

### 2. Plaintiff's Allegations About Outside Pressures Do Not Show Gender Bias.

Plaintiff relies on news reports and a documentary to suggest that UNC-CH has been pressured to discriminate against men. ECF 1 ¶¶651-71, 682-84. But Plaintiff has not alleged that UNC-CH is familiar with these sources such that they could, in fact, influence its conduct. And even if UNC-CH had been influenced by these sources, they concern the protection of *all* students from sexual assault, not advocacy for gender bias.

For example, a 2013 article entitled "UNC-CH students rally against sexual assaults," *id.* ¶659, says nothing about discriminating against men. Likewise, offering resources to "survivors of sexual assault" is a gender-neutral commitment. *See id.* ¶661. Though Plaintiff attempts to portray such efforts as anti-male, he alleges that UNC-CH also investigates women for sexual harassment. *See id.* ¶¶682-84.

In *Samford University*, the Eleventh Circuit found that an initiative to reduce rape on campus did not demonstrate there was public pressure to discriminate against men. 29 F.4th at 691. Similarly, trainings are not anti-male when they involve examples of both genders being victims of sexual assault. *Doe v. Va. Polytechnic Inst.*, No. 7:19-CV-00249, 2022 WL 3334501, at *8 (W.D. Va. Aug. 11, 2022).

Plaintiff's reliance on *The Hunting Ground* documentary fares no better. ECF 1 ¶¶665-67. The documentary discusses assaults at universities nationwide. Thus, Plaintiff's allegations suggest that *all* universities are experiencing pressures to prevent campus assaults and *all*, instead, are responding by discriminating against men. This sweeping conclusion defies logic and is not plausible. *See Doe v. Columbia Coll. Chicago*,

14

933 F.3d 849, 855 (7th Cir. 2019) (finding that generalized allegations about *The Hunting Ground* documentary did not show gender discrimination).

In short, pressure to vigorously pursue sexual assault claims does not support an inference of gender bias. *See Stonehill Coll.*, 55 F.4th at 337.

### 3. Plaintiff's Allegations Show UNC-CH Followed the Law, Not Gender Bias.

Plaintiff also claims that the Department of Education's ("ED") 2011 Dear Colleague Letter ("DCL"), a 2018 Letter of Findings from ED's Office for Civil Rights ("OCR"), and UNC-CH's 2020 settlement with ED show that UNC-CH has been pressured to discriminate against men. ECF 1 ¶¶622-49, 660-61, 672-81, 685-96. This assertion is implausible, as it assumes ED's regulations compel gender bias.

While Plaintiff makes numerous allegations about the DCL, none of the letter's guidance called for universities to discriminate against men. *See id.* ¶¶622-35. In any event, Plaintiff's own allegations show that the DCL was *rescinded* in 2017. *Id.* ¶¶622, 639. Thus, whatever criticism Plaintiff may have of the DCL, even he concedes it was no longer in effect by the time he was reported for misconduct in 2021.

Moreover, after the DCL's recission, ED issued new Title IX regulations in 2020, which Plaintiff acknowledges gave greater rights to responding parties. *Id.* ¶¶645-47. UNC-CH revised its policies in accordance with these new regulations, and these revised policies applied to Plaintiff's proceedings. *Id.* ¶¶647, 695; *see* Ex. 1 at 1; Ex. 3 at 1.

It is not plausible that a rescinded letter, superseded by formal agency regulation, affected UNC-CH's process. Plaintiff's allegations recognize this reality. If the loss of federal funds is "the ultimate penalty," ECF 1 ¶¶636-37, then such pressures would cause universities to follow *existing* regulations, not superseded guidance. *See Samford Univ.*, 29 F.4th at 692 ("Doe's allegations about a government policy that has been

15

rescinded and replaced do not assist him in crossing 'the line between possibility and plausibility of entitlement to relief.'" (quoting *Twombly*, 550 U.S. at 557)).

When faced with similar allegations, courts in this Circuit have rejected Plaintiff's theory that the DCL pressured universities to implement gender-biased disciplinary processes. For example, just a year after the DCL's recission, in 2018, the District of Maryland found that "allegation[s] of general pressure that the Dear Colleague letter supposedly exerted on *all* universities does not allow the inference that [the defendant university] succumbed to such pressure, and that the pressure rendered a biased outcome." *Doe v. Loh*, No. CV PX-16-3314, 2018 WL 1535495, at *9 (D. Md. Mar. 29, 2018) *aff'd*, 767 F. App'x 489 (4th Cir. 2019); *Doe v. Citadel*, No. 2:21-CV-04198-DCN, 2022 WL 2806473, at *9-10 (D.S.C. July 18, 2022) (dismissing complaint that relied on the DCL as "backdrop" to show gender discrimination); *see also Doe v. Emory Univ.*, No. 1:21-CV-2763-MHC, 2022 WL 5241289, at *7 (N.D. Ga. Sept. 1, 2022) ("[A]llegations of pressure stemming from events such as the 'Dear Colleague' letter have been rejected by the Eleventh Circuit."). The same conclusion should be reached here.

Plaintiff also points to a 2018 Letter of Findings from OCR, ECF 1 ¶¶676-80, and UNC-CH's 2020 settlement with ED after a Clery Act program review, *id.* ¶¶672-73, 685, 688, and suggests that both of these events pressured UNC-CH to discriminate against men. Neither assertion is plausible.

OCR's 2018 Letter of Findings arose from student complaints in 2013, *id.* ¶¶660-61, which were based upon a former Title IX process governed by the DCL and outdated Title IX regulations. It is not plausible that such findings affected UNC-CH's overhauled process in 2021 under an entirely new regulatory regime. The 2020 Settlement with ED is even further removed from Plaintiff's circumstances. The

16

settlement concerned the Clery Act and campus crime in general, not Title IX. *Id.* ¶¶672-73, 688. Thus, Plaintiff's attempts to tie the 2020 Settlement specifically to Title IX and sexual assault, and his proceedings which occurred long after, are misplaced.

Moreover, nothing about either occurrence encouraged UNC-CH to discriminate against men. Plaintiff's allegations about anti-male pressures ignore the source of that supposed pressure—ED. ED is the very government entity charged with enforcing Title IX's prohibition of discrimination on the basis of sex. Thus, Plaintiff's theory rests on the premise that ED's enforcement of law itself is anti-male. This is implausible and similar allegations about pressures from ED and OCR investigations have been found insufficient to show gender discrimination. *See Stonehill Coll.*, 55 F.4th at 335-37; *Doe v. Oregon State Univ.*, 614 F. Supp. 3d 847, 856 (D. Or. 2022).

### 4. Plaintiff's Allegations Show UNC-CH Followed Its Policies, Not Gender Bias.

Plaintiff alleges that UNC-CH's decision making throughout the Roe 1 and 4 matters shows its anti-male bias. Each time Plaintiff disagrees with a decision made by UNC-CH, he claims (without support) that the decision did not go his way because of gender bias. But each decision is grounded in UNC-CH's policies as informed by Title IX. And there is no inherent gender bias in UNC-CH following its policies and the law.

To begin, UNC-CH's policies use gender-neutral language, like "persons," "individuals," "Reporting Party," and "Responding Party." *See* Exs. 1-4. Plaintiff does not allege that the policies themselves are written in a gender biased manner, and a plain reading shows they are not. *See id.* Moreover, Plaintiff points to no gendered statement made by any Defendant throughout the investigations and hearings.

In the Roe 1 matter, the Title IX Policy gave EOC discretion to determine whether to investigate Roe 1's complaint after she sought to withdraw it. *See* Ex. 2 at 3. EOC utilized that discretion to dismiss two of the three instances of sexual assault that Roe 1 reported, concluding it could not gather sufficient additional evidence. *See* ECF 1 ¶¶267-69. The one reported assault that EOC decided to investigate occurred after a party at Plaintiff's fraternity house, where other witnesses were nearby or present. EOC's use of the discretion that the Title IX Policy provides does not show gender bias. EOC merely applied the policy in an even-handed manner, reflecting UNC-CH's legal obligations under Title IX.

Further following the Title IX Policy, EOC gave Plaintiff the opportunity to review its draft report and shared the final report well in advance of his hearing. *Id.* ¶¶358, 365, 373. Thus, while Plaintiff makes much of the fact that the date of the assault turned out to be November 13 rather than 19, Plaintiff does not allege that he was unaware of the events surrounding the alleged assault, such as that it occurred after a holiday party where Roe 1 drank peppermint Schnapps. Notably, Title IX's regulations do not require that an exact date be given in a notice of investigation, 34 C.F.R. §106.45(b)(2)(i)(B), so it is not clear how the absence of such a date shows gender bias.

In the Roe 4 matter, Plaintiff asserts that UNC-CH's gender bias caused it to exercise jurisdiction over events that occurred during spring break and at his Charlotte condo. But the PPDHRM permits jurisdiction where off-campus Prohibited Conduct "is reasonably likely to have continuing adverse effects" on campus, such as when one student has assaulted another student. Ex. 3 at 10. There is no inherent bias in UNC-CH exercising jurisdiction in ways the policy permits.

18

Similarly, the PPDHRM provides that character evidence is not relevant. Ex. 4 at 17. As such, UNC-CH did not discriminate against Plaintiff by disallowing character evidence, even if Plaintiff intended to use that evidence to attack Roe 4's credibility.

Additionally, though Plaintiff claims the Roe 4 Hearing Panel was biased against him, he ignores the Panel's finding that he did not attempt to have nonconsensual intercourse with Roe 4. ECF 1 ¶¶508-09, 527. This finding in Plaintiff's favor contradicts his conclusory allegations of bias.

More generally, in both matters, Plaintiff points to events that supposedly show gender bias, but they all reflect UNC-CH's policies and federal law.

For example, Plaintiff claims UNC-CH's process was biased because his counsel did not get to fully cross examine Roes 1 or 4 at the hearings. But legal compliance is not gender bias. Neither the Title IX Policy nor the PPDHRM nor Title IX's regulations require cross examination. Ex. 2 at 9-10; Ex. 4 at 26; *see also Victim Rts. L. Ctr. v. Cardona*, 552 F. Supp. 3d 104, 132-34 (D. Mass. 2021). Indeed, neither Roe 1 nor Roe 4 nor Plaintiff were required to testify at the hearings. And UNC-CH could not compel them to testify.[5] After all, UNC-CH "is an academic institution, not a courtroom." *Bd. of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 88 (1978). That Plaintiff *chose* to testify, and the Roes did not, says nothing about whether UNC-CH's process was biased against men.

---

[5] Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 85 Fed. Reg. 30026, 30051 (May 19, 2020)(codified at 34 C.F.R. 106), https://www.govinfo.gov/content/pkg/FR-2020-05-19/pdf/2020-10512.pdf (showing universities lack subpoena power).

19

Likewise, EOC's refusal to consider Plaintiff's polygraph does not show gender bias. Gender has no bearing on the reliability of polygraphs. Courts, for example, are not inherently biased against men because they exclude polygraph evidence. *See also Oregon State*, 614 F. Supp. 3d at 857 (refusal to admit polygraph did not show bias because no gender was allowed to admit a polygraph).

In sum, allegations that UNC-CH made some decisions that were unfavorable to Plaintiff do not show gender was the *but-for* cause of his claimed injury. As in *Sheppard*, this is not an instance where "the referees [are] only making calls against one team." 993 F.3d at 237. Neither Plaintiff nor the Roes were compelled to attend the hearings nor testify; neither Plaintiff nor the Roes were permitted to admit character evidence; and neither Plaintiff nor the Roes were permitted to admit polygraph examinations.

Critically, Plaintiff's claim that UNC-CH's process was stacked against him is undone by the fact that he was found not responsible in the Roe 2 and 3 matters. ECF 1 ¶¶475, 484-86. That Plaintiff was found not responsible in two of the four reported matters would seem impossible in a world where UNC-CH was systemically motivated, to enter findings against men, as Plaintiff implausibly contends. UNC-CH's implementation of its policies, it appears, was not biased when Plaintiff prevailed.

Accordingly, Plaintiff's allegations fail to show that UNC-CH's process was biased against men or that such bias caused his claimed injury. As such, Plaintiff has failed to state a Title IX claim and this claim should be dismissed.

### B. Plaintiff Cannot Recover Monetary Damages Under Title IX.

Plaintiff seeks monetary damages for "emotional distress; psychological damages; loss of education; loss of future educational and career opportunities; reputational damages; economic injuries; and other direct and consequential damages," and an

injunction to undo his sanctions and permit reenrollment. ECF 1 ¶¶749-50. Though Plaintiff's Title IX claim should be dismissed for the reasons discussed above, if he has stated a claim, that claim should be dismissed to the extent he seeks monetary damages. Plaintiff's only possible available remedy is an injunction to undo his Roe 4 expulsion.

In *Barnes v. Gorman*, 536 U.S. 181 (2002), the Supreme Court explained that Spending Clause legislation, like Title IX, is viewed "much in the nature of a contract: in return for federal funds, the recipients agree to comply with federally imposed conditions." *Id.* at 186 (cleaned up). Thus, the Court concluded that funds recipients are subject to suit for compensatory damages and injunctive relief because those are the "forms of relief traditionally available in suits for breach of contract." *Id.* at 187. In contrast, punitive damages are not recoverable because they are not traditionally recoverable for a contract breach. *See id.* at 188-89.

In *Cummings*, the Court applied the same contract analogy to emotional distress damages. 142 S. Ct. at 1570. The Court reasoned that an entity receiving federal funds must be on notice of the liability it could face as a condition of accepting those funds. *Id.* The Court concluded that because emotional distress damages are not traditionally recoverable for a contract breach, fund recipients would not have notice that they could face such damages and implicitly consented to that risk by accepting funds. *Id.* at 1571-72. Thus, emotional distress damages are also not recoverable under Title IX.

As applied here, though Plaintiff requests emotional and psychological damages, they are precluded as a matter of law by *Cummings*. *See also Doe v. Purdue Univ.*, No. 2:17-CV-33-JPK, 2022 WL 3279234, at *13 (N.D. Ind. Aug. 11, 2022).

Likewise, Plaintiff's request for reputational damages and other types of incidental and consequential damages should be barred as they are not traditionally recoverable for

a contract breach. As the Fourth Circuit explained, "[c]ourts have universally rejected claims for damages to reputation in breach of contract actions reasoning that such damages are too speculative and could not reasonably be presumed to have been contemplated by the parties when they formed the contract." *Rice v. Cmty. Health Ass'n*, 203 F.3d 283, 288 (4th Cir. 2000). This reasoning is identical to the reasoning in *Cummings* as to why emotional distress damages are unavailable. *See also Party v. Ariz. Bd. of Regents*, No. CV-18-01623-PHX-DWL, 2022 WL 17459745, at *3-4 (D. Ariz. Dec. 6, 2022) (barring reputational damages and collecting cases); *Doe v. Fairfax Cnty. Sch. Bd.*, No. 1:18-CV-00614-MSN-IDD, 2023 WL 424265, at *6 (E.D. Va. Jan. 25, 2023) (barring damages for lost earning capacity and employment opportunities).

As for compensatory damages, while *Barnes* and *Cummings* recognize that they could be recovered under Title IX, they are unavailable based on the facts alleged here. Plaintiff has not alleged any compensatory damages to which he would be entitled. Plaintiff does not allege that he paid tuition to UNC-CH. He had a full scholarship from MCF. To the extent tuition was paid on his behalf for the Spring 2021 semester, Plaintiff finished his classes and final exams before his EEAC suspension took full effect. After that, Plaintiff paid no tuition. Thus, no compensatory damages could be owed.

Without a legal or factual basis for the monetary damages he seeks, Plaintiff is left only with the possibility of injunctive relief. Plaintiff seeks an injunction that would undo his sanctions and permit reenrollment for Fall 2023. ECF 1 ¶750. But Plaintiff's interim EEAC suspension has ended. And Plaintiff's one-year academic suspension in the Roe 1 matter, implemented on May 16, 2022, will end before this Motion is decided. *See id.* ¶¶523, 526. What remains then is Plaintiff's expulsion for his assault of Roe 4.

Thus, if Plaintiff's Title IX claim survives, that claim should be limited to the issue of injunctive relief in Roe 4 matter.

### III. Plaintiff Cannot Maintain §1983 Claims Against the UNC Defendants.

Plaintiff also seeks damages from the UNC Defendants under §1983. ECF 1 at 120. Section 1983 permits damages claims against a "person" who deprives another of their constitutional rights while acting under color of state law. 42 U.S.C. §1983. Plaintiff's §1983 claims fail because (1) they are barred by the Eleventh Amendment, and (2) the UNC Defendants are not a "person" under §1983.

**First**, the UNC Defendants are immune from §1983 claims. "[T]he ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court." *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001); *see also Passaro v. Virginia*, 935 F.3d 243, 247 (4th Cir. 2019). Thus, absent waiver or congressional abrogation, states enjoy immunity from suits for damages in federal court. *See Coleman v. Court of Appeals of Md.*, 566 U.S. 30, 35 (2012).

North Carolina has not waived its immunity from §1983 claims and Congress has not abrogated that immunity. *Quinn v. N.C. Dep't of Health & Hum. Servs.*, No. 3:19-cv-00391-FDW-DCK, 2020 WL 369290, at *4 (W.D.N.C. Jan. 22, 2020) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66-68 (1989)). This immunity extends to "state agents and state instrumentalities." *See Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997).

The UNC Defendants are state agents, N.C.G.S. §116-4; *Huang v. Bd. of Govs. of Univ. of N.C.*, 902 F.2d 1134, 1139 (4th Cir. 1990); *McAdoo v. Univ. of N.C.*, 248 F. Supp. 3d 705, 719 (M.D.N.C. 2017), and thus are immune from §1983 claims, *Jennings v. Univ. of N.C. at Chapel Hill*, 240 F. Supp. 2d 492, 498 (M.D.N.C. 2002).

**Second**, even if Plaintiff could overcome the UNC Defendants' immunity (which he cannot), his claim would still fail. To state a §1983 claim, Plaintiff "must aver that *a person* acting under color of state law deprived [him] of a constitutional right." *Wahi v. Charleston Area Med. Ctr., Inc.,* 562 F.3d 599, 615 (4th Cir. 2009) (emphasis added).

Plaintiff cannot do so. The UNC Defendants, as agents of the State, are not "persons" under §1983. *See Googerdy v. N.C. Agr. & Tech. State Univ.*, 386 F. Supp. 2d 618, 625 (M.D.N.C. 2005) (citing *Will*, 491 U.S. at 71); *Bartges v. Univ. of N.C. at Charlotte*, 908 F. Supp. 1312, 1332 (W.D.N.C. 1995) *aff'd* 94 F.3d 641 (4th Cir. 1996).

Accordingly, the Court should dismiss Plaintiff's §1983 claims.

## IV. UNC-CH Is Immune from Plaintiff's State Law Claims.

Plaintiff alleges claims against UNC-CH for (1) breach of contract, (2) negligent hiring, (3) tortious interference with contract, and (4) violation of North Carolina's Constitution. ECF 1 at 170, 178, 184, 186. The Eleventh Amendment bars all of these claims. And sovereign immunity bars the alleged tort claims.[6]

**First**, as discussed above, the State and its agencies, like UNC-CH, are generally immune from suit in federal court under the Eleventh Amendment, absent waiver or Congressional abrogation. *Va. Office for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253-54 (2011); *Regents of the Univ. of Cal.*, 519 U.S. at 429.

For Plaintiff's state law claims, there has been no waiver or abrogation. Thus, Plaintiff's state law claims are barred by the Eleventh Amendment. *See Maisha v. Univ. of N.C.*, No. 1:12-CV-371, 2013 WL 1232947, at *3, *5 (M.D.N.C. Mar. 27, 2013)

---

[6] The same immunities bar Plaintiff's NIED and IIED claims, which are alleged against the Individual Defendants in their official capacities, but not UNC-CH. *See Kentucky*, 473 U.S. at 165-66.

(dismissing contract claim), *aff'd*, 641 Fed. App'x. 246 (4th Cir. 2016); *Dove for Estate of Dove v. Stevens*, No. 5:05-CV-33-BO(1), 2006 WL 8438680, at *4 (E.D.N.C. Oct. 23, 2006) (dismissing tort and state constitution claims); *Hooper v. North Carolina*, 379 F. Supp. 2d 804, 812 (M.D.N.C. 2005) (dismissing contract and tort claims); *Peterson v. Davidson Cnty. Cmty. Coll.*, 367 F. Supp. 2d 890, 893 (M.D.N.C. 2005) (dismissing contract claim).

**Second**, Plaintiff's tort claims are also barred by UNC-CH's sovereign immunity.

Plaintiff's intentional tort claims, including his tortious interference with contract claim, are barred by the UNC-CH's sovereign immunity. *See Dickinson v. Univ. of N.C.*, 91 F. Supp. 3d 755, 761 (M.D.N.C. 2015); *Kawai America Corp. v. Univ. of N.C.*, 152 N.C. App. 163,166, 567 S.E.2d 215, 217-18 (2002).

Plaintiff's negligence claims are barred by UNC-CH's sovereign immunity as well. Under the North Carolina Tort Claims Act, only the Industrial Commission can hear negligence claims against State agencies. N.C. Gen. Stat. §143-291(a); *see Alston v. N.C. A & T State Univ.*, 304 F. Supp. 2d 774, 783 (M.D.N.C. 2004).

Accordingly, the Court lacks jurisdiction over Plaintiff's state law claims.

## CONCLUSION

For all these reasons, the UNC Defendants respectfully request that Plaintiff's claims against them be dismissed in their entirety, with prejudice.

This 8th day of May, 2023.

JOSHUA H. STEIN
Attorney General

/s/ Kimberly D. Potter
Kimberly D. Potter
Special Deputy Attorney General
NC State Bar No. 24314

25

kpotter@ncdoj.gov

/s/ Jeremy D. Lindsley
Jeremy D. Lindsley
Assistant Attorney General
NC State Bar No. 26235
jlindsley@ncdoj.gov

North Carolina Department of Justice
PO Box 629
Raleigh, NC 27602
Tel: 919-716-6920
Fax: 919-716-6764

*Attorneys for Defendants*

/s/ Marla S. Bowman
Marla S. Bowman
N.C. Bar No. 49097
marla_bowman@unc.edu
Office of University Counsel
University of North Carolina
at Chapel Hill
123 W. Franklin St., Suite 600A
Chapel Hill, NC 27599-9105
Tel: (919) 962-1219

*Attorney for Defendant the University
of North Carolina at Chapel Hill*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing **UNC DEFENDANTS'**
**BRIEF IN SUPPORT OF MOTION TO DISMISS** with the Clerk of Court using the
CM/ECF system, which will send notification of such filing to all registered CM/ECF
users.

This 8th day of May, 2023.

/s/ Marla S. Bowman
Marla S. Bowman
N.C. Bar No. 49097
marla_bowman@unc.edu
Office of University Counsel
University of North Carolina
at Chapel Hill
123 W. Franklin St., Suite 600A
Chapel Hill, NC 27599-9105
Tel: (919) 962-1219

*Attorney for Defendant the University*
*of North Carolina at Chapel Hill*

27