# Procedures for Addressing Prohibited Sexual Harassment Under Title IX

Tags [University-Procedure](#) [Harassment](#) [Title-IX](#)

## Title

University of North Carolina at Chapel Hill Procedures for Addressing Prohibited Sexual Harassment Under Title IX

## Introduction

### Purpose

The University is committed to providing an inclusive and welcoming environment for all members of our community. The University values safety, diversity, education, and equity and is firmly committed to maintaining a campus environment free from Sexual Harassment. The Policy on Prohibited Sexual Harassment under Title IX ("Title IX Sexual Harassment Policy") is grounded in Title IX of the Education Amendments Act of 1972 ("Title IX") and its implementing regulations.$^i$ Title IX governs the University's response to Sexual Harassment, including Sexual Assault, Dating Violence, Domestic Violence, and Stalking, as defined in the Title IX Sexual Harassment Policy. Such acts violate the essential dignity of our community members and are contrary to our institutional values. These Procedures set out the processes for addressing reports under the Title IX Sexual Harassment Policy.

Members of the campus community can find additional information about resources and confidential support options in the University's Policy on Prohibited Discrimination, Harassment and Related Misconduct (the "PPDHRM Policy") and on the [Safe at UNC website](#).

### Scope of Applicability

These Procedures provide for the prompt and equitable response to reports of Sexual Harassment, including Sexual Assault, Dating Violence, Domestic Violence, and Stalking, as defined in the Policy ("Title IX Sexual Harassment").

These Procedures protect University Students, Employees, and other persons in the United States from Title IX Sexual Harassment in an Education Program or Activity of the University. These Procedures apply to the conduct of University Students, Employees, and other persons reported to have engaged in conduct that could constitute Sexual Harassment under this Policy.

These Procedures apply to locations, events, or circumstances for which the University exercised substantial control over both the Responding Party and the context in which the Title IX Sexual Harassment occurred at the time of the alleged incident. This includes any building owned or

1

controlled by a student organization that is officially recognized by the University. These Procedures apply to conduct that occurs in the United States.

Sexual Assault, Dating Violence, Domestic Violence, Stalking, and Discrimination or Harassment based on Sex not meeting the definitions and/or jurisdictional requirements set out in these Procedures will be addressed under the University's Policy on Prohibited Discrimination, Harassment and Related Misconduct and accompanying Procedures.

# Procedures

## I. Title IX Coordinator

The University has designated and authorized a Title IX Coordinator to coordinate its efforts to comply with its responsibilities under 34 C.F.R. Part 106. The University will notify applicants for admission and employment, students, employees, contractors, and vendors of the name and title, office address, electronic mail address, and telephone number of the Title IX Coordinator.

The University's Title IX Coordinator is:

Elizabeth Hall (Interim)
Title IX Coordinator
214 W. Cameron Ave., 2nd Floor
Chapel Hill, NC 27599
elizabeth.hall@unc.edu
919-445-1297

Any person may report sex discrimination, including Sexual Harassment, to the Title IX Coordinator in person, by mail, by telephone, by electronic mail, or by any other means that results in the Title IX Coordinator receiving the person's verbal or written report. Such a report may be made whether or not the person reporting is the person alleged to be the victim of conduct that could constitute sex discrimination or Sexual Harassment. Reports may be made at any time, including during non-business hours, by using the contact information listed above.

## II. Response to a Report of Sexual Harassment

Upon receipt of a report of Sexual Harassment, the Title IX Coordinator or designee will promptly contact the Reporting Party to:

- Discuss the availability of Supportive Measures;
- Determine the Reporting Party's wishes with respect to Supportive Measures;
- Inform the Reporting Party of the availability of Supportive Measures regardless of whether a Formal Complaint is filed; and
- Explain to the Reporting Party the process for filing a Formal Complaint of Title IX Sexual Harassment, as defined in the Title IX Sexual Harassment Policy.

The Title IX Coordinator or designee will also, where appropriate, refer the matter to the Emergency Evaluation and Action Committee ("EEAC") or Employee Threat Assessment and Response Team ("ETART") to assess whether the Responding Party poses a danger to themselves, to other members of the University community, or to University property or poses a serious threat of disruption to the academic process or workplace environment. If the EEAC or ETART finds that any of these conditions exist, they may impose a number of measures, alone or in combination, pending the conclusion of the resolution process. The EEAC may impose on a student Responding Party an emergency removal, which may be referred to as a "summary suspension," if the EEAC finds an immediate threat to the physical health or safety of any individual arising from the allegations of Sexual Harassment that justifies removal. The ETART may impose on an employee Responding Party an administrative leave or other interim conditions pending the conclusion of the resolution process.

## III. Formal Complaint

The resolution process begins with the filing of a Formal Complaint with the Title IX Coordinator.

### A. Filing a Formal Complaint

A Reporting Party may file a Formal Complaint with the Title IX Coordinator in person, by mail, or by electronic mail using the contact information above. A Reporting Party is not required to file a Formal Complaint in order to access Supportive Measures. A Reporting Party may discuss Supportive Measures and the resolution process before deciding whether and how to file a Formal Complaint. A Formal Complaint must contain the Reporting Party's physical or digital signature or otherwise indicate that the Reporting Party is the person filing the Formal Complaint.

### B. Dismissal of a Formal Complaint

A Formal Complaint may be dismissed during the resolution process on certain grounds.

A Formal Complaint will be dismissed if the conduct reported in the Formal Complaint:

- Would not constitute Sexual Harassment under Title IX, even if proved;
- Did not occur in a University Educational Program or Activity; or
- Was not directed against a person located in the United States.

A Formal Complaint may be dismissed, in whole or in part, in the Title IX Coordinator's discretion, if:

- A Reporting Party notifies the Title IX Coordinator, in writing, that the Reporting Party would like to withdraw the Formal Complaint, in whole or in part;
- The Responding Party is no longer enrolled in or employed by the University; or
- Specific circumstances prevent the University from gathering evidence sufficient to reach a determination about the Formal Complaint.

After dismissing a Formal Complaint, the Title IX Coordinator or designee will send written notice of the dismissal and the reason(s) for dismissal simultaneously to the parties within five (5) business days.

The Title IX Coordinator or designee also will review the reported conduct to determine whether investigation or other resolution of the complaint should proceed under the PPDHRM Policy.

**C. Appeal from Dismissal of a Formal Complaint**

Either party may appeal from the dismissal, in whole or in part, of a Formal Complaint on the following bases:

- Procedural irregularity that affected the outcome of the matter;
- New evidence that was not reasonably available at the time of the determination regarding dismissal was made that could affect the outcome of the matter; and/or
- The Title IX Coordinator, investigator(s), or Hearing Panel had a conflict of interest or bias for or against Reporting Parties or Responding Parties generally or the individual Reporting Party or Responding Party that affected the outcome of the matter.

Appeals must be submitted in writing to a Report and Response Coordinator or other designated individual in the Equal Opportunity and Compliance Office within five (5) business days of the notice of dismissal of the Formal Complaint. The appeal must consist of a plain, concise, and complete written statement specifically identifying both the procedural irregularity, new evidence, and/or conflict of interest and the effect on the outcome of the matter. Receipt of the written appeal will be acknowledged in writing.

Upon receipt of the appeal, the Title IX Coordinator will forward the appeal to the Appeals Officer. The Appeals Officer is an impartial decision-maker drawn from a pool of qualified, trained individuals.

The Appeals Officer will assess the appeal to determine whether it is timely filed and, if so, whether the appeal satisfies one or more of the permitted bases for appeal. If the Appeals Officer determines that the appeal does not satisfy one or more of the permitted bases, the appeal will be denied. The Appeals Officer will render the decision regarding whether the appeal is properly filed within five (5) business days of receiving the appeal. The decision will be communicated to both parties simultaneously.

If the appeal is properly filed, the other party will be given the opportunity to review the written appeal and respond to it in writing to the Appeals Officer. Any response by the opposing party must be submitted to the Appeals Officer within five (5) business days from the date on which the appeal was transmitted. If both parties file an appeal, the appeal documents from each party will be considered together in one appeal review process.

In any request for an appeal, the burden of proof lies with the party requesting the appeal, because the determination regarding dismissal of all or part of a Formal Complaint will be presumed to have been decided reasonably and appropriately. Appeals are not a rehearing of the

Effective 09-14-2020 to 06-06-2022

Effective 09-14-2020 to 06-06-2022

matter. The scope of the appeal will be limited only to the stated permissible bases that have been accepted for review. In most cases, appeals are confined to a review of the written documentation or record of the original determination regarding dismissal and pertinent documentation regarding the grounds for appeal. The Appeals Officer may speak to the Title IX Coordinator, investigator(s), the Hearing Chair, or the parties, as appropriate. Each party will have an equal opportunity to speak with the Appeals Officer.

Depending on the basis of the requested appeal, the Appeals Officer may:

- Affirm the Outcome; or
- Return the matter to the Title IX Coordinator for resolution through the process detailed in Section 4 of these Procedures.

# IV. Resolution of a Formal Complaint

Following receipt of a Formal Complaint, the University will initiate a prompt, thorough, and impartial resolution process. Both forms of resolution – informal and formal – require submission of a Formal Complaint.

### A. Time Frames

The time frame for completion of required actions under this resolution process may be extended for good cause as necessary to ensure the integrity and completeness of the investigation, to comply with a request by law enforcement, to accommodate the availability of witnesses, to account for University breaks or pre-approved leave, to account for the complexities of an investigation (e.g., the number of witnesses and volume of information provided by the parties), or to address other legitimate reasons. Any extension of a time frame, and the reason for the extension, will be shared with the parties in writing. Best efforts will be made to complete the resolution process in a timely manner by balancing principles of thoroughness and fundamental fairness with promptness.

### B. Informal Resolution

Informal resolutions may be facilitated by the University to resolve a Formal Complaint at any time prior to reaching a determination regarding responsibility. Informal resolutions do not involve a full investigation and adjudication. Parties must voluntarily consent to the informal resolution process in writing before it can proceed. If an informal resolution is elected by the parties and is deemed appropriate by the University, the parties will be provided written notice of the informal resolution process, containing the following:

- The reported conduct;
- The requirements of the informal resolution process, including the circumstances under which it precludes the parties from resuming a Formal Complaint arising from the same allegations;

- A provision that any party has the right to withdraw from the informal resolution process and resume the formal resolution process of the Formal Complaint at any time prior to agreeing to a resolution; and
- Any consequences resulting from participating in the informal resolution process, including the records that will be maintained or could be shared.

Informal resolutions will be conducted consistent with the University's *Procedures for Reporting and Responding to Complaints of Discrimination, Harassment, and Related Misconduct Involving a University Student as the Responding Party* or *Procedures for Reporting and Responding to Complaints of Discrimination, Harassment, and Related Misconduct Involving a University Employee as the Responding Party*, as appropriate.

Information about forms of informal resolution and timelines may be found in those Procedures.

Informal resolution processes will not be used to resolve reports that an employee sexually harassed a student.

## C. Formal Resolution

The formal resolution process will consist of two phases: the investigation and the hearing.

In all phases of the formal resolution process, the parties will be provided an equal opportunity to present fact and expert witnesses and inculpatory and exculpatory evidence. The parties also will be provided an equal opportunity to have an Advocate of their choice in any meeting related to or portion of the formal resolution process. No party will be restricted from discussing the reported conduct under investigation or from gathering and presenting relevant evidence.

Any person whose participation is invited or expected in an investigative interview, hearing, or other meeting related to the formal resolution process will be provided written notice of the date, time, location, participants, and purpose of the meeting with sufficient time for the party to prepare to participate.

Throughout the formal resolution process, there is a presumption that the Responding Party is not responsible for the reported conduct until a determination regarding responsibility is made at the conclusion of the formal resolution process.

The burden of proof and the burden of gathering evidence sufficient to reach a determination of responsibility rest on the University and not on the parties. The University will not access, consider, disclose, or otherwise use a party's records that are made or maintained by a physician, psychiatrist, psychologist, or other recognized professional or paraprofessional acting in the professional or paraprofessional's capacity, or assisting in that capacity, and which are made and maintained in connection with the provision of treatment to the party, unless the University obtains the party's voluntary, written consent to do so. Similarly, no person will be required to provide, and the Hearing Panel will not allow, rely upon, or otherwise use questions or evidence that constitute, or seek disclosure of, information protected under a legally recognized privilege, unless the person holding such privilege has waived the privilege.

The formal resolution process will begin with written notice to the parties. The University will provide written notice of the investigation to parties who are known generally within five (5) business days of receipt and review of a Formal Complaint, confirmation from the Reporting Party of the intent to proceed with an investigation and/or sufficient information for the University to determine whether the complaint meets the jurisdictional requirements of this Policy.

The written notice of the investigation will include the following information:

- Notice of the University's process for resolving reports of Title IX Sexual Harassment, including any available informal resolution processes;
- Notice of the allegations of Sexual Harassment, including, if known, the following:
    - The identities of the parties involved in the incident;
    - A summary of the conduct reportedly constituting Sexual Harassment; and
    - The date and location of the reported incident;
- Information about the range of potential sanctions under the Title IX Sexual Harassment Policy, including, where appropriate, notification that expulsion is a possible sanction for a student Responding Party and that expulsion precludes matriculation at any University of North Carolina constituent institution;
- Information about the parties' rights and responsibilities, including the following:
    - That the Responding Party is presumed not responsible for the reported conduct and that a determination regarding responsibility is made at the conclusion of the resolution process;
    - That the parties may have an Advocate of their choice, who may be, but is not required to be, an attorney;
    - That the parties and their Advocate may inspect and review evidence obtained as part of the investigation that is directly related to the allegations contained in the Formal Complaint; and
    - That it is a violation of the University's PPDHRM Policy and Honor Code to knowingly make false statements or knowingly submit false information during the resolution process.

The written notice of investigation will be provided with sufficient time to prepare a response before any initial interview.

The written notice of investigation may be amended, with written notice to the parties.

**1. Investigation**

The Title IX Coordinator will assign investigator(s) who have appropriate training and experience investigating allegations of Sexual Harassment. The investigator(s) will gather information regarding the alleged conduct and will prepare an investigative report summarizing all evidence obtained as part of the investigation that is relevant to the allegations raised in the Formal Complaint. The investigator(s) will use best efforts to complete the investigation within sixty (60) business days from the issuance of the written notice. As with all time frames in this

resolution process, this time frame may be extended for good cause with notice to the parties in writing.

Prior to the completion of the investigative report, the parties will have an equal opportunity to inspect and review any evidence obtained as part of the investigation that is directly related to the allegations contained in the Formal Complaint. Such evidence includes the evidence upon which the University does not intend to rely in reaching a determination regarding responsibility and inculpatory or exculpatory evidence, regardless of the source, so that each party can meaningfully respond to the evidence prior to the conclusion of the investigation. The Title IX Coordinator or designee will send to each party and the party's Advocate, if any, the evidence subject to inspection and review in an electronic or hard copy format.

After receiving the parties' written responses or after the lapse of ten (10) business days without receipt of such responses, the investigator(s) will consider any written response(s) and create an investigative report, which will fairly summarize the relevant evidence.

The Title IX Coordinator or designee will send to each party and the party's Advocate, if any, the investigative report in an electronic or hard copy format for their review and written response. The investigative report will be sent at least ten (10) business days prior to a hearing.

## 2. Hearings

Decisions regarding responsibility will be made by a Hearing Panel after a live hearing. A Hearing Panel is comprised of three (3) individuals, selected from a pool of trained individuals. Any individual designated by the University to serve on a Hearing Panel must have sufficient training to serve in this capacity. A University student may not serve as a panelist. A Hearing Panel member may decline to participate on the basis of an actual conflict of interest, bias, or lack of impartiality. Both parties have the ability to challenge a Hearing Panel member on the basis of an actual conflict of interest, bias, or lack of impartiality. The request must be submitted in writing or raised no later than the date of the pre-hearing meeting and must clearly state the grounds to support a claim of bias, conflict of interest, or an inability to be fair and impartial.

Each hearing will be conducted by the Hearing Coordinator or designee. The Hearing Coordinator is available to provide consistency in process, informed understanding of Policy definitions and standards, and guidance as to available sanctions. Hearings will be conducted according to the procedures described in the sections below.

Hearings will generally be conducted within twenty-five (25) business days of the transmission of evidence to the parties for inspection and review. As with all time frames in this resolution process, this time frame may be extended for good cause with notice to the parties in writing.

### a. Advocates and Hearing Advisors

Each party may be accompanied to the hearing by an Advocate of their choice.

If a party does not have an Advocate at the hearing to conduct cross-examination, the University will provide a Hearing Advisor without fee. The Hearing Advisor may, but is not required to be, an attorney. The Hearing Advisor provided by the University will conduct cross-examination of the other party and witnesses on behalf of the party.

**b. Pre-Hearing Meeting**

The Hearing Coordinator will meet separately with each party and their Advocate to resolve pre-hearing concerns. At this pre-hearing meeting, the parties will each have the opportunity to raise any challenge to the composition of the Hearing Panel based on bias, conflict of interest, or lack of impartiality. The parties will also have the opportunity to address questions about the hearing process. At this meeting, the Hearing Coordinator will also review expectations for hearing participants, including the Advocate.

**c. Hearing Procedures**

Hearings will be conducted in closed session. Hearings must be conducted live, but at the request of either party or in the discretion of the University, hearings may be conducted with the parties located in separate locations with technology enabling the Hearing Panel and parties to simultaneously see and hear the party or witness answering questions. Hearings will be recorded by audio or audiovisual means, and the recording or transcript will be made available to the parties for review and inspection.

Both parties will have the opportunity to provide a statement of their account related to the alleged conduct, beginning with the Reporting Party and followed by the Responding Party. Each party will then have the opportunity to present any evidence, including witnesses, beginning with the Reporting Party and followed by the Responding Party. The Hearing Coordinator may, in their discretion, alter this order to accommodate availability of witnesses or to otherwise avoid undue delay in the hearing.

The Hearing Panel and the parties, through their Advocate or Hearing Advisor, may pose questions to any individual (including parties and witnesses) participating in the hearing. Each party's Advocate or Hearing Advisor will be permitted to ask the other party and any participating witnesses all relevant questions and follow-up questions, including those challenging credibility. This cross-examination will be conducted directly, orally, and in real time by the party's Advocate or Hearing Advisor and never by a party themselves.

Only relevant questions may be asked. Before a participant answers a question, the Hearing Panel must first determine whether the question is relevant and explain any decision to exclude a question as not relevant. Challenges to a relevance determination may not be raised during the hearing but may be raised on appeal if a party alleges that the failure to pose a question satisfies one of the bases for appealing a hearing outcome.

Questions and evidence about a Reporting Party's sexual predisposition or prior sexual behavior are not relevant, unless such questions and evidence:

1. are offered to prove that someone other than the Responding Party committed the conduct alleged, or
2. concern specific incidents of prior sexual behavior between the Reporting Party and the Responding Party and are offered to prove consent.

The Hearing Panel cannot draw an inference about the determination regarding responsibility based solely on a party or witness's absence from the live hearing or refusal to answer cross-examination or other questions.

### 3. Determination Regarding Responsibility

The determination regarding responsibility will be made by the Hearing Panel after the hearing and cannot be made by the Title IX Coordinator or the investigator(s). Within ten (10) business days of the conclusion of the Hearing, the Hearing Panel will make a determination of responsibility using the preponderance of the evidence standard and will issue a written determination regarding responsibility. The Hearing Panel's determination must be reached by a majority vote.

In reaching the determination regarding responsibility, the Hearing Panel will objectively evaluate all relevant evidence – both inculpatory and exculpatory. The Hearing Panel will not make credibility determinations that are based on a person's status as Reporting Party, Responding Party, or witness.

The written determination will include the following:

- Identification of the reported conduct potentially constituting Sexual Harassment;
- A description of the procedural steps taken from receipt of the Formal Complaint through the determination, including any notices to the parties, interviews with the parties and witnesses, site visits, methods used to gather other evidence, and hearing(s) held;
- Findings of fact supporting the determination;
- Conclusions regarding the application of the University's Title IX Sexual Harassment Policy to the facts;
- A statement of and rationale for the result as to each instance of reported conduct, including a determination regarding responsibility, any disciplinary sanctions imposed on the Responding Party;
- Whether remedies will be provided to the Reporting Party; and
- The University's procedures and permissible bases for the parties to appeal, including the time frame for submitting an appeal and the name of the Appeals Officer who will be assigned to review any appeal filed.

The written determination will be provided to the parties simultaneously.

## D. Appeals

Either party may appeal from the determination regarding responsibility and/or from the determination regarding sanction(s) on the following bases:

- Procedural irregularity that affected the outcome of the matter;
- New evidence that was not reasonably available at the time of the determination regarding responsibility or sanction(s) was made that could affect the outcome of the matter; and/or
- The Title IX Coordinator, investigator(s), or Hearing Panel had a conflict of interest or bias for or against Reporting Parties or Responding Parties generally or the individual Reporting Party or Responding Party that affected the outcome of the matter.

Appeals must be submitted in writing to a Report and Response Coordinator or other designated individual in the Equal Opportunity and Compliance Office within five (5) business days of the determination regarding responsibility. The appeal must consist of a plain, concise, and complete written statement specifically identifying both the procedural irregularity, new evidence, and/or conflict of interest and the effect on the outcome of the matter. Receipt of the written appeal will be acknowledged in writing.

Upon receipt of the appeal, the Title IX Coordinator will forward the appeal to the Appeals Officer. The Appeals Officer is an impartial decision-maker drawn from a pool of qualified, trained individuals.

The Appeals Officer will assess the appeal to determine whether it is timely filed and, if so, whether the appeal satisfies one or more of the permitted bases for appeal. If the Appeals Officer determines that the appeal does not satisfy one or more of the permitted bases, the appeal will be denied. The Appeals Officer will render the decision regarding whether the appeal is properly filed within five (5) business days of receiving the appeal. The decision will be communicated to both parties simultaneously.

If the appeal is properly filed, the other party will be given the opportunity to review the written appeal and respond to it in writing to the Appeals Officer. Any response by the opposing party must be submitted to the Appeals Officer within five (5) business days from the date on which the appeal was transmitted. If both parties file an appeal, the appeal documents from each party will be considered together in one appeal review process.

In any request for an appeal, the burden of proof lies with the party requesting the appeal, because the determination regarding responsibility will be presumed to have been decided reasonably and appropriately. Appeals are not a rehearing of the matter. The scope of the appeal will be limited only to the stated permissible bases that have been accepted for review. In most cases, appeals are confined to a review of the written documentation or record of the original hearing and pertinent documentation regarding the grounds for appeal. The Appeals Officer may speak to the Title IX Coordinator, investigator(s), the Hearing Chair, or the parties, as appropriate. Each party will have an equal opportunity to speak with the Appeals Officer.

Depending on the basis of the requested appeal, the Appeals Officer may:

- Affirm the Outcome;
- Return the matter to the Hearing Panel with instructions to reconvene to cure a procedural error or to assess the weight and impact of newly discovered evidence; or

- Where the procedural error cannot be cured by returning the matter to the original Hearing Panel, convene a hearing before a newly constituted Hearing Panel.

The Appeals Officer will render a written decision on the appeal within fifteen (15) business days from the date of the submission of all appeal documents. The decision will be communicated to both parties simultaneously. Appeal decisions by the Appeals Officer are final with the exception of cases involving suspension or expulsion of a student. Students may refer to Section IV of the Procedures for Reporting and Responding to Complaints of Discrimination, Harassment and Related Misconduct Involving a Student as the Responding Party for information about the specified grounds for appeal of these cases. Separate from this Title IX resolution process, employees may have grievance processes available to them in certain circumstances set forth in state and UNC System human resources policies for certain employee classifications[1].

As in all other stages, all designated time frames for appeals may be extended for good cause as necessary to ensure the integrity and completeness of the review. Such extension will be communicated concurrently to both parties in writing.

The determination regarding responsibility becomes final either on the date that the University provides the parties with the written determination of the result of the appeal, if an appeal is filed, or if an appeal is not filed, the date on which an appeal would no longer be considered timely.

## V. Sanctions

The Title IX Sexual Harassment Policy prohibits a range of behaviors that are serious in nature. In keeping with the University's commitment to foster an environment that is safe, inclusive, and free from Sexual Harassment, the Policy authorizes the Hearing Panel to impose sanctions, disciplinary actions, and corrective measures tailored to the circumstances of each report. Specifically, these sanctions, disciplinary actions, and corrective measures are designed to:

1. address the effects of the misconduct on the Reporting Party and the University community;
2. hold the Responding Party accountable for the conduct committed; and
3. eliminate Sexual Harassment, prevent its recurrence, and remedy its effects.

The sanctions, disciplinary actions, and corrective actions the University imposes may include educational, restorative, rehabilitative, and/or punitive components. Some behavior, however, is so harmful to the educational process and/or the work environment that it requires severe sanctions or disciplinary action, including temporary or permanent separation from the University or UNC System.

In determining the appropriate course of action, the Hearing Panel shall consider the following factors:

- the nature and violence of the conduct at issue;

- the effects of the conduct on the Reporting Party;
- the effects or implications of the conduct on the educational mission, work environment, the community, or the University;
- whether the conduct involved an abuse of power or authority;
- prior misconduct by the Responding Party, including the Responding Party's relevant prior discipline history, both at the University or elsewhere, including criminal convictions;
- whether the Responding Party has accepted responsibility for the conduct;
- maintenance of a safe and respectful environment conducive to learning and working;
- protection of the University community; and
- any other mitigating, aggravating, or compelling circumstances to reach a just and appropriate resolution in each case.

All Responding Parties must be treated equally when applying these factors, regardless of whether they are a student or an employee and regardless of their category of employment (i.e., faculty, EHRA-NF, SHRA).

## A. Sanctions for Students

Sanctions may be imposed on a student Responding Party, individually or in combination. Sanctions that affect a student's status with the University include the following:

- Expulsion, which must be approved by the Chancellor, means that a student is removed from the University and from the UNC System permanently and may not be re-admitted to any UNC System university unless and until the Chancellor who imposed or approved the sanction (or the Chancellor's successor) concludes on the basis of the former student's petition and any supportive documentation that the individual should be given a new opportunity to pursue higher education within the UNC System.
- Permanent Suspension, which must be approved by the Chancellor, means that the student is removed from good standing and must leave the University permanently without an expectation that the student may eventually return to the Chapel Hill campus. The student is not barred, however, from seeking admission to another UNC System university, if that university wishes to permit such application following disclosure of the student's disciplinary record at UNC-Chapel Hill. Permanent suspension from the University will remain in effect until the Chancellor who imposed or approved the sanction (or the Chancellor's successor) concludes on the basis of the former student's petition and any supportive documentation that the individual should be given a new opportunity to pursue higher education at the University.
- Suspension for a Definite or Indefinite Period means that the student is removed from good standing and must leave the University for a definite or indefinite period. This form of suspension anticipates that the student may eventually return if applicable conditions are satisfied. Academic work completed at another institution during a period in which a student is under suspension from the University may not be transferred toward the degree, but applicable health care or insurance benefits may be continued if the health insurance premium has already been paid.

- Probation for a Definite or Indefinite Period, including probation with associated conditions or requirements as set by the Hearing Panel, means that a student may remain at the University but may be required to satisfy specified conditions or requirements, report regularly to a designated administrator, and be barred from holding any office or participating in any activity in which the student represents the University, including athletics or other competitive teams, or from participating in any University-recognized student organizations either within or outside the University community. The sanction of probation prohibits graduation until the period of probation has ended and the student has complied with all requirements.

Expulsion, permanent suspension, suspension for a definite or indefinite period, and probation will be noted on a student's transcript while the sanction is in effect.

Where the Hearing Panel concludes that a sanction of suspension or expulsion is appropriate, and the Responding Party has not already been removed on an emergency basis, the Title IX Coordinator may submit information to the EEAC to assess whether emergency removal, which may be referred to as a "summary suspension," or other interim conditions are warranted pending the conclusion of any appeal. The determination regarding responsibility becomes final either on the date that the recipient provides the parties with the written determination of the result of the appeal, if an appeal is filed, or if an appeal is not filed, the date on which an appeal would no longer be considered timely. The imposition of a sanction will be deferred pending the conclusion of any appeal. If a determination is upheld upon appeal, the sanction is imposed as of the date the parties receive written determination of the result of the appeal. Supportive Measures in effect for the parties will continue pending the conclusion of any appeal, as appropriate

## B. Disciplinary Action for Employees

When the Hearing Panel determines that an employee Responding Party has violated the Title IX Sexual Harassment Policy, disciplinary action may be imposed individually or in combination with corrective measures. There are several types of disciplinary actions for employees, which may include the actions described below. The terminology, process, and requirements applicable to disciplinary actions may differ among the different categories of employees, and those details may be found in the disciplinary action policies specific to each category of employee.

- Dismissal/Discharge: Termination of employment with the University.
- Suspension without Pay for a specific period of time.
- Demotion of rank or position and/or reduction in compensation.
- Written Warning/Letter of Reprimand: An official reprimand letter placed in the employee's file giving the employee notice that any subsequent violation of University policies will carry more serious disciplinary actions and/or requiring the employee to participate in or adhere to other non-disciplinary corrective measures.

## C. Corrective Measures for Students and Employees

The Hearing Panel may also consider corrective measures that are not sanctions or disciplinary actions, but are designed to promote a safe and non-discriminatory educational and work

environment. Such measures may focus on educational and restorative principles that allow a Responding Party or other individuals to develop insight about the relationship between certain behaviors and the prohibitions set out in the Title IX Sexual Harassment Policy, learn about the effects of the behavior on the Reporting Party and the community, and identify how to prevent or change the behavior.

Such corrective measures that may be implemented include, but are not limited to:

- Educational Requirements: Completion of training, programs, or requirements designed to help the Responding Party manage behavior and understand why it was inappropriate.
- "No Contact" Orders: Compliance with orders of no contact that limit access to specific University areas or forms of contact with particular persons.
- Adjustment of Work Duties: Reassignment of job duties, responsibilities, supervision, schedule, or location that does not entail a demotion of rank or position and/or reduction in pay.
- Housing Restrictions: Exclusion from University housing or changes in housing assignment.

In some circumstances, even if the Hearing Panel has found that the Responding Party did not violate the Title IX Sexual Harassment Policy, the Equal Opportunity and Compliance Office may require training or education for the Responding Party, other individuals involved, or for an entire department or unit.

## VI. Remedies

When there has been a determination that the Responding Party has violated the Policy, the University will consider appropriate remedies, based upon the findings and unique circumstances of each report. Remedies are measures taken to restore and preserve the Reporting Party's equal access to the University's educational programs, employment opportunities, or activities by addressing the effects of the conduct on the Reporting Party. Remedies seek to restore to the Reporting Party, to the extent possible, all benefits and opportunities lost as a result of the Sexual Harassment. Remedies may include, but are not limited to, adjustment of work or class assignments, location, and/or schedule or recommending a review of a negative performance or grade decision that may have resulted from the conduct that violated the Policy. Remedies need not be non-disciplinary or non-punitive and need not avoid burdening the Responding Party.

The Title IX Coordinator will identify long-term or permanent remedies for the Reporting Party and address any effects of the conduct on the University community. The Title IX Coordinator will consider the appropriateness of remedies, including Supportive Measures, on an ongoing basis to assure the safety and well-being of the parties throughout the process. Long-term remedies may include extending or making permanent any Supportive Measures or implementing additional measures tailored to achieve the goals of the Title IX Sexual Harassment Policy. Many of the remedies and supports that a Reporting Party might need after a finding of responsibility will have already been provided during the resolution process, including but not limited to academic accommodations, short term counseling, and modifications to employment arrangements. The Title IX Coordinator will, in all cases, consider whether there is

a need for additional or extended remedies. The Title IX Coordinator is responsible for effective implementation of any remedies.

Report and Response Coordinators in the Equal Opportunity and Compliance Office will be available to all parties throughout the resolution process and after its conclusion to connect the parties with on and off campus resources and explore or continue any Supportive Measures that may be available and appropriate.

# VII. Retaliation

During the investigation and resolution of alleged violations of the Title IX Sexual Harassment Policy, reasonable steps will be taken to protect the Reporting Party, the Responding Party, and other participants in the reporting, investigation, and resolution process from Retaliation as defined in the PPDHRM Policy, subject to the following additional provisions:

- For purposes of the Title IX Sexual Harassment Policy, Protected Activity also includes refusing to participate in any manner in an investigation, proceeding, or hearing under these Procedures.
- Retaliation may include charges against an individual for code of conduct violations that do not involve sex discrimination or Title IX Sexual Harassment but arise out of the same facts or circumstances as a report or complaint of sex discrimination or a report or Formal Complaint of Sexual Harassment, for the purpose of interfering with any right or privilege secured by Title IX.
- Charging an individual with a code of conduct violation for making a materially false statement in bad faith in the course of the resolution process does not constitute Retaliation. However, a determination regarding responsibility, alone, is not sufficient to conclude that any party made a materially false statement in bad faith.

Any individual who engages in Retaliation or who authorizes, instructs, or permits others to engage in Retaliation on their behalf will be subject to prompt and appropriate disciplinary action.

Individuals who have a concern about potential or actual Retaliation should contact the Title IX Coordinator for assistance in addressing the concern. If the concern about Retaliation involves the Title IX Coordinator, an individual may contact the Vice Chancellor for Human Resources and Equal Opportunity and Compliance. Complaints alleging Retaliation related to reports of Title IX Sexual Harassment may be filed according to the resolution process set out in these Procedures.

# VIII. Confidentiality

The University must keep confidential the identity of any individual who has made a report or complaint of sex discrimination, including any individual who has made a report or filed a Formal Complaint of Sexual Harassment; any Reporting Party; any individual who has been reported to be the perpetrator of sex discrimination; any Responding Party; and any witness. This

obligation may be limited by applicable law, subpoena, or court order, or as required to carry out the conduct of any investigation or hearing under these Procedures.

# IX. Requirements for Resolution Process Participants

## A. University Participants

The Title IX Coordinator, investigator(s), and any individuals designated by the University as a decision-maker in the formal resolution process, including any appeals under this process, or facilitator of an informal resolution process, must not have a conflict of interest or bias for or against Reporting Parties or Responding Parties generally or an individual Reporting Party or Responding Party; must not rely on sex stereotypes; and must promote impartial investigations and adjudications of Formal Complaints of Sexual Harassment.

These individuals must also receive training on: the definition of Sexual Harassment; the scope of the University's Educational Program or Activities; how to conduct an investigation and grievance process including hearings, appeals, and informal resolution processes as applicable; and how to serve impartially, including avoiding prejudgment of the facts at issue, conflicts of interest, and bias. Hearing Panelists must also receive training on any technology to be used at a live hearing and issues of relevance of questions and evidence, including when questions and evidence about the Reporting Party's sexual predisposition or prior sexual behavior are not relevant. Investigators must also receive training on issues of relevance to create an investigative report that fairly summarizes relevant evidence.

## B. Advocates and Hearing Advisors

Attorney or Non-Attorney Advocate: At any meeting or hearing related to the resolution of a report under the Title IX Sexual Harassment Policy, the parties may be accompanied by an Advocate of their choice, who may be an attorney. The Advocate must meet with the Hearing Chair in advance of any participation in the proceedings to understand the expectations of the role, privacy, and appropriate decorum.

In order for an Advocate to participate in any meeting or hearing, the Reporting Party or Responding Party must complete and submit an informational form to the Title IX Coordinator no later than five (5) business days prior to the proceedings. The University, its officials, and the members of the Hearing Panel will communicate and correspond directly with the party. It is the party's responsibility to communicate and share information with the Advocate.

The University will prioritize the availability of the parties, witnesses, and Hearing Panel members assigned to the matter when determining the date and time for any meeting or hearing. Throughout the resolution process, the Advocate may fully participate in the proceeding to the same extent afforded to the party the Advocate represents.

Hearing Advisor: If a party does not have an Advocate at the hearing to conduct cross-examination, the University will provide a Hearing Advisor who may, but is not required to be, an attorney, to conduct cross-examination of the other party and witnesses on behalf of the party.

The Hearing Advisor must meet with the Hearing Chair in advance of any participation in the proceedings to understand the expectations of the role, privacy, and appropriate decorum.

All Advocates and Hearing Advisors participating in the resolution process must conduct themselves with appropriate decorum, respect the privacy of the parties and witnesses, and may not delay, disrupt, or otherwise interfere with any other portion of the resolution process. All Advocates and Hearing Advisors must also maintain confidentiality with respect to all information related to the resolution process.

# X. Public Notifications and Recordkeeping

The University will make publicly available on its website the following materials:

- Name and contact information of the Title IX Coordinator
- The Title IX Sexual Harassment Policy and these Procedures
- All materials used to train Title IX Coordinators, investigators, Hearing Panelists, Appeals Officers, other decision-makers under this resolution process, and facilitators of informal resolutions.

The University will maintain for a minimum period of seven (7) years records[2] of the following:

- Each Sexual Harassment investigation, including any determination regarding responsibility and any audio or audiovisual recording, any disciplinary sanctions imposed on the Responding Party, and any remedies provided to the Reporting Party;
- Any appeal and results of the appeal;
- Any informal resolution and results of that resolution; and
- All materials used to train Title IX Coordinators, investigators, Hearing Panelists, Appeals Officers, other decision-makers under this resolution process, and facilitators of informal resolutions.

# XI. Effective Date and Interpretation

The Title IX Sexual Harassment Policy and these Procedures will apply to reports of Title IX Sexual Harassment that reportedly occurred on or after August 14, 2020. This Policy and Procedures are intended to be coextensive with the May 19, 2020, Title IX Final Rule issued by the Department of Education. While the University will make good faith efforts to update this Policy and Procedures to reflect any legal changes to the final regulations, if any portion of those regulations are stayed, vacated, or otherwise determined to be invalid or unenforceable by a court of law or the Department of Education, the corresponding portion of these Procedures will be deemed revoked as of the date of publication of the opinion, order, or statement. In the event any provision of this Policy and Procedures conflicts with applicable law, the law will supersede such provision.

# XII. Endnotes

1. A Responding Party who is a Faculty member may have an option to appeal the outcome through the Faculty Hearings Committee. For information about these appeal processes, consult the applicable policies on the [UNC-Chapel Hill Faculty Handbook website](). A Responding Party who is an SHRA employee may have an option to appeal the through the SHRA Grievance Policy and Procedures. For more information about the SHRA grievance process, consult the applicable policy on the UNC HR "[Dispute Resolution & Grievances]()" website.
2. If the University's Policy on Records Management requires records to be kept longer, the longer period will control.

# Definitions

See Policy on Prohibited Sexual Harassment under Title IX

# Related Requirements

## External Regulations and Consequences

- Title IX of the Education Amendments Act of 1972 and accompanying regulations
- The Jeanne Clery Disclosure of Campus Security and Campus Crime Statistics Act, 20 U.S.C. section 1092(f) (Clery Act)
- Section 304 of the 2013 Amendments to the Violence Against Women Act (VAWA)

## University Policies, Standards, and Procedures

- [Policy on Prohibited Sexual Harassment under Title IX]()
- The University's [Policy on Prohibited Discrimination, Harassment and Related Misconduct]() and accompanying [Procedures]()
- [Policy on Records Management]()

# Contact Information

## Primary Contacts

Inquiries or concerns about this policy or Title IX may be referred to the University's Title IX Coordinator.

Elizabeth Hall (Interim)
Title IX Coordinator
Equal Opportunity and Compliance Office
elizabeth.hall@unc.edu
919-445-1297

Concerns about the University's application of laws covered by this Policy may be addressed to the United States Department of Education, Office for Civil Rights.

Office for Civil Rights
OCR@ed.gov
(800) 421-3481