

| | |
|---|---|
| **Current Status:** *Active* | **PolicyStat ID:** *9116519* |

|  |  |
|---|---|
| Origination: | *8/28/2014* |
| Effective: | *3/11/2021* |
| Last Approved: | *3/11/2021* |
| Last Revised: | *3/11/2021* |
| Next Review: | *3/11/2022* |
| Issuing University Officer: | *Elizabeth Hall: Assistant Director* |
| Responsible Unit: | *Human Resources and Equal Opp and Compliance - EOC* |
| Topic Tags: | *Applies to Faculty, Applies to Staff, Applies to Students, Campus Safety, Clery Act, Discrimination, Harassment, Misconduct, Retaliation, Title IX, University Policy* |

**THE UNIVERSITY of NORTH CAROLINA at CHAPEL HILL**

UNC-Chapel Hill Policies Have Moved to policies.unc.edu

# Policy on Prohibited Discrimination, Harassment and Related Misconduct Including Sexual and Gender-Based Harassment, Sexual Violence, Interpersonal Violence and Stalking

## Purpose

The University is committed to providing an inclusive and welcoming environment for all members of our community. The University values safety, diversity, education, and equity and is firmly committed to maintaining a campus environment free from Discrimination, Harassment, and related misconduct. In accordance with its Policy Statement on Non-Discrimination, the University does not unlawfully discriminate in offering equal access to its educational programs and activities or with respect to employment terms and conditions on the basis of an individual's age, color, disability, gender, gender expression, gender identity, genetic information, race, national origin, religion, sex, sexual orientation, or veteran status (collectively referred to as "Protected Status"). The University's protection of these statuses is grounded in federal and/or state law. Federal law also governs the University's response to Sexual Assault, Sexual Violence, Interpersonal Violence (including domestic and dating violence), and Stalking. Such conduct violates the essential dignity of our community members and are contrary to our institutional values.

## Definitions

Discrimination, Harassment (including Sexual or Gender-Based Harassment and Sexual Violence), Interpersonal Violence, Stalking, Complicity, and Retaliation (collectively hereafter referred to as "Prohibited Conduct") are defined in Section V of this Policy.



EXHIBIT 3

# Scope of Applicability

The Policy and associated procedures provide for the prompt and equitable resolution of reports of Discrimination, Harassment, and related misconduct. Reports of conduct that meet the definition of Sexual Harassment and the jurisdictional requirements in the University's Policy on Prohibited Sexual Harassment under Title IX ("Title IX Sexual Harassment Policy") will be addressed solely in accordance with the Title IX Sexual Harassment Policy and will not be addressed under this Policy.

# UNC Resource Page for Sexual Violence and Interpersonal Violence

## How to Get Help in the Event of an Emergency:

Anyone who has experienced Sexual Violence or Interpersonal Violence is urged to immediately seek help. Help includes seeking medical assistance, seeking confidential counseling or crisis response, filing a report with law enforcement, and making a report to the University. UNC Police will help any individual get to a safe place, provide transportation to the hospital, contact another law enforcement agency, and offer information about the University's resources and processes. Information about the difference between Reporting Options and Confidential Resources is listed on the next pages.

| Emergency Response 24 hour | Medical Treatment | Confidential Counseling & Crisis Response |
|---|---|---|
| **Emergency Law Enforcement:** **911** (from anywhere) | **UNC Campus Health Services** UNC Campus Health Services - Sexual Assault Response 919-966-3650 After hours: 919-966-2281 <br>• Confidential care for students <br>• Sexual assault exams/evidence collection <br>• Screening and treatment of sexually transmitted infections (STIs) <br>• Emergency contraceptives <br>• Pregnancy tests <br>• Survivor's Assistance Fund: Funds are available to offset medical expenses | **UNC Counseling and Psychological Services (CAPS)** CAPS website 919-966-3658 - 24/7 <br>• Confidential care for students <br>• Individual and group counseling and referral |
| **UNC Police** UNC Police website 919-962-8100 | **UNC Hospital Emergency Room** UNC Hospital Emergency Room website 919-966-4721 <br>• 24/7 medical care <br>• Confidential care for students <br>• Sexual assault exams/evidence collection <br>• Screening and treatment of STIs <br>• Emergency contraceptives | **UNC Employee Assistance Program (ComPsych)** UNC HR website for EAP 877-314-5841 <br>• Confidential care for University employees and their families <br>• Available 24 hours per |

Case 1:23-cv-00041-MR  Document 35-2  Filed 05/08/23  Page 2 of 29

| Emergency Response 24 hour | Medical Treatment | Confidential Counseling & Crisis Response |
|---|---|---|
| | • Pregnancy tests<br>• Survivor's Assistance Fund: Funds are available to offset medical expenses under the Survivor's Assistance Fund | day, 7 days per week |
| **Chapel Hill Police Department**<br>[Town of Chapel Hill Police website](#)<br>919-968-2760 | | **Compass Center for Women and Families**<br>[Compass Center for Women and Families website](#)<br>919-929-3872<br>919-929-7122 (Hotline)<br>• Confidential care for students<br>• Personal and court advocacy<br>• Emergency shelter placement |
| **Carrboro Police Department**<br>[Carrboro Police website](#)<br>919-918-7397 | | **Orange County Rape Crisis Center**<br>[Orange County Rape Crisis Center website](#)<br>919-968-4647; 1-866-WE-LISTEN (1-866-935-4783)<br>• Confidential care for students<br>• Personal and court advocacy<br>• Support during emergency room and police station visits |
| **Orange County Sheriff's Office**<br>[Orange County Sheriff's Office website](#)<br>919-245-2900 | | |

Title IX of the Education Amendments of 1972 prohibits *Discrimination* on the basis of sex in any federally funded education program or activity. *Sexual or Gender-Based Harassment, Sexual Violence, Interpersonal Violence,* and *Stalking* are prohibited by the University.

Policy on Prohibited Discrimination, Harassment and Related Misconduct Including Sexual and Gender-Based Harassment, Sexual Violence, Interpersonal Violence, and Stalking. Retrieved from https://policies.unc.edu/TDClient/2833/Portal/KB/ArticleDet?ID=9116519/. Copyright © 2021 The University of North Carolina at Chapel Hill

Case 1:23-cv-00041-MR Document 35-2 Filed 05/08/23 Page 3 of 29

# Reporting Options:

The University's Title IX Coordinator and the Director of Equal Opportunity and Compliance oversee the investigation and resolution of all misconduct covered by the Policy on Prohibited Discrimination, Harassment and Related Misconduct (the "Policy"). To discuss any aspect of the Policy, individuals are encouraged to contact:

## Director of Title IX Compliance / Title IX Coordinator

Adrienne Allison
214 W. Cameron Ave.
Chapel Hill, NC 27599
919-962-7177 | adrienne.allison@unc.edu

## Director of Equal Opportunity and Compliance

Elizabeth Hall (Interim)
214 W. Cameron Ave.
Chapel Hill, NC 27599
919-962-7185 | cehall@email.unc.edu

Any individual can make a report under this Policy to these individuals or to the individuals/departments designated below. The report may be made in person, by telephone, in writing, by e-mail, or online. Reports may be shared with the University's Non-Discrimination Response Team. Any report involving a minor will be shared with external child protective service and law enforcement agencies.

## Report and Response Coordinators

214 W. Cameron Ave.
919-966-3576 | reportandresponse@unc.edu
Report an Incident

## UNC Police

UNC Police website
919-962-8100

# Understanding the Difference between Making a Report to the University or Law Enforcement (Reporting Options) and Seeking Confidential Assistance (Confidential Resources)

There is a distinction between making a report to the University or law enforcement through designated **Reporting Options** (listed above) and seeking confidential assistance through **Confidential Resources** (listed below).

Policy on Prohibited Discrimination, Harassment and Related Misconduct Including Sexual and Gender-Based Harassment, Sexual Violence, Interpersonal Violence and Stalking, and Retaliation (Non-Discrimination Policy). https://policies.unc.edu/TDClient/2833/Portal/KB/ArticleDet?ID=9116519/. Copyright © 2021 The University of North Carolina at Chapel Hill

Page 4 of 29

# Reporting Options

**Reporting Options:** Making a report to the University by contacting a **Reporting Option** means that the report will be shared with the Title IX Coordinator or the Director of Equal Opportunity and Compliance, and a member of the University's Response Team will communicate with the Reporting Party to provide resources and support and to identify the appropriate action to respond to the report as outlined in this Policy. In addition, many University employees, designated as Responsible Employees, are required to share information with the University's **Title IX Coordinator or Director of Equal Opportunity and Compliance**. There are many options for resolution of a report, and a Reporting Party is encouraged to make a report even if that individual is not seeking disciplinary action against a Responding Party. The University will make every effort to respect a Reporting Party's preference in determining how to proceed. Support and resources are always available to a Reporting Party regardless of the chosen course of action.

## Confidential Resources

In contrast, information shared with a Confidential Resource will not be disclosed to anyone else, including the University, except under very limited circumstances. Any individual may choose to seek support from confidential professionals on and off campus, including counselors, medical health providers, clergy, rape crisis counselors, UNC's Gender Violence Services Coordinators, and the University Ombuds office.

# Confidential Resources:

The trained professionals designated below can provide counseling, information, and support in a confidential setting. These Confidential Resources will not share information about an individual (including whether that individual has received services) without the individual's express permission, unless there is a continuing threat of serious harm to the patient/client or to others or there is a specific legal obligation to reveal such information (*e.g.,* suspected abuse or neglect of a minor). These professionals are also available to help an individual make a report to the University.

# On Campus

## UNC Campus Health Services

UNC Campus Health Services - Sexual Assault Response

919-966-3650 / After hours: 919-966-2281

- Sexual assault exams/evidence collection
- Screening and treatment of sexually transmitted infections (STIs)
- Emergency contraceptives
- Pregnancy tests
- Treatment paid for by the Survivor's Assistance Fund

## Gender Violence Services Coordinator

gvsc@unc.edu

919-962-1343 or 919-962-7430

- Support for individuals experiencing interpersonal violence
- Assistance in understanding reporting options and navigating reporting process
- Link to University and community resources
- Walk-in hours and appointments available

COPY

- Confidential by University policy (protection may not extend beyond campus proceedings)

## Counseling and Psychological Services (CAPS)

CAPS website

919-966-3658 - 24/7

- Individual and group counseling and referral

## University Ombuds Office

UNC Ombuds website

919-843-8204

- Impartial, informal, and independent resource and referral
- Non-judgmental listening and discussion of options
- Available to anyone affected by the incident
- Confidential by University policy (protection may not extend beyond campus proceedings)

## Employee Assistance Program (EAP)

UNC HR website for EAP

877-314-5841

- Confidential care for University employees and their families
- Available 24 hours per day, 7 days per week

For a comprehensive list of available resources on campus and in the community, see the Resource Chart attached to this document.

# Mandatory Reporting of Child Abuse or Neglect:

Individuals who suspect that a child is being harmed or observe a child being harmed should contact law enforcement by calling 911. In addition, under North Carolina law, individuals who reasonably suspect that a child under the age of 18 has been abused or neglected by a parent, guardian, or caregiver have an obligation to report that suspicion to a county department of social services. The Orange County Department of Social Services may be reached at 919-245-2800 or at 919-968-2000

# THE UNIVERSITY OF NORTH CAROLINA AT CHAPEL HILL
# POLICY ON PROHIBITED DISCRIMINATION, HARASSMENT, AND RELATED MISCONDUCT
## Including Sexual and Gender-Based Harassment, Sexual Violence, Interpersonal Violence and Stalking

# TABLE OF CONTENTS

I. Policy Statement

    A. Notice of Non-Discrimination Based on Protected Status

    B. Sexual Assault, Sexual Violence, Interpersonal Violence, and Stalking Are Prohibited Forms of

Policy on Prohibited Discrimination, Harassment and Related Misconduct Including Sexual and Gender-Based Harassment, Sexual Violence, Interpersonal Violence and Stalking (adopted by the Board of Trustees, effective August 28, 2018; Policy.UNC.edu/ 9116519/. Copyright © 2021 The University of North Carolina at Chapel Hill

Page 6 of 29

Case 1:23-cv-00041-MR Document 35-4 Filed 05/08/23 Page 6 of 29

Conduct

II. Scope and Applicability

   A. Individuals Covered by this Policy

   B. Jurisdiction

   C. Reports Involving Minors

III. Applicable Procedures

IV. Resources for Information and Assistance

   A. Equal Opportunity and Compliance Office

   B. Non-Discrimination Response Team

V. Prohibited Conduct

   A. Discrimination and Harassment Based on All Protected Statuses

      1. Discrimination

      2. Harassment

      3. Additional Guidance about Discrimination and Harassment

      4. Protected Status

   B. Sexual or Gender-Based Harassment, Sexual Assault, Sexual Violence, or Sexual Exploitation

      1. Prohibited Forms of Conduct

      2. Related Definitions: Sexual Contact, Consent, Coercion, Force, and Incapacitation

   C. Interpersonal Violence and Stalking

      1. Interpersonal Violence

      2. Stalking

   D. Complicity and Retaliation

      1. Complicity

      2. Retaliation

   E. Violation of Interim Measures, Interference with the Policy, and Failure to Comply with Sanctions

VI. Reporting Options

VII. Privacy and Confidentiality

   A. Privacy

   B. Confidentiality

   C. Records

   D. Release of Information

VIII. Reporting by University Employees

   A. Responsible Employees

   B. All Other Employees

   C. Confidential Resources

IX.  Interim Measures

X.  Academic Freedom and Integrity

XI.  Education and Prevention Programs

XII.  Policy Review

XIII.  Related University Policies

# I. Policy Statement

This Policy prohibits (i) all forms of Discrimination and Harassment based on Protected Status; (ii) Sexual Violence and Sexual Exploitation, (iii) Stalking and Interpersonal Violence, which need not be based on an individual's Protected Status; (iv) Complicity for knowingly assisting in an act that violates this Policy; and (iv) Retaliation against an individual because of their good faith participation in the reporting, investigation, or adjudication of violations of this Policy. University students and employees who violate this Policy may face discipline up to and including expulsion or termination against an individual because of their good faith participation in the reporting, investigation, or adjudication of violations of this Policy. University students and employees who violate this Policy may face discipline up to and including expulsion or termination.

Discrimination, Harassment (including Sexual or Gender-Based Harassment, Sexual Violence), Interpersonal Violence, Stalking, Complicity, and Retaliation (collectively hereafter referred to as "Prohibited Conduct") are defined in Section V of this Policy.

Reports of conduct that meet the definition of Sexual Harassment and the jurisdictional requirements in the University's Policy on Prohibited Sexual Harassment under Title IX ("Title IX Sexual Harassment Policy") will be addressed solely in accordance with the Title IX Sexual Harassment Policy and will not be addressed under this Policy.

## A. Notice of Non-Discrimination[1] Based on Protected Status

In accordance with its Policy Statement on Non-Discrimination, the University of North Carolina at Chapel Hill ("University" or "UNC-Chapel Hill") does not unlawfully discriminate in offering equal access to its educational programs and activities or with respect to employment terms and conditions on the basis of an individual's age, color, disability, gender, gender expression, gender identity, genetic information, race, national origin, religion, sex, sexual orientation, or veteran status (collectively referred to as "Protected Status"). The University's protection of these statuses is grounded in federal law.  For example, Title VII of the Civil Rights Act of 1964 prohibits discrimination in employment based on race, color, national origin, religion, sex, gender, and, by extension, sexual violence, as do the North Carolina General Statutes section 143-422.2 and other applicable laws. The Americans with Disabilities Act, the Rehabilitation Act of 1973, and section 143-422.2 prohibit discrimination in employment and education programs and activities based on disability. Title IX of the Education Amendments of 1972, prohibiting discrimination based on sex, also applies to employment and education programs and activities. Executive Order 13672 revised Executive Order 11246 (applicable to federal contractors, including the University) to prohibit discrimination based on race, color, national origin, religion, sex, sexual orientation, and gender identity.

The University recognizes the rights of all members of the University community to learn and work in an environment that is free from Discrimination and Harassment. The University prohibits Prohibited Conduct against and by University students and employees, including faculty, non-faculty employees who are exempt

Case 1:23-cv-00041-MR   Document 35-2   Filed 05/08/23   Page 8 of 29

from the State Human Resources Act ("EHRA non-faculty employees"), employees who are subject to the State Human Resources Act ("SHRA employees"), temporary employees, post-doctoral scholars, student employees, and third parties. All members of the community are responsible for conducting themselves in accordance with this Policy and other University policies and procedures.

The University encourages all community members to take reasonable and prudent actions to prevent or stop Prohibited Conduct. Taking action may include direct intervention when safe to do so, enlisting the assistance of friends, contacting law enforcement, or seeking assistance from a person in authority. Community members who choose to exercise this positive responsibility will be supported by the University and protected from Retaliation.

To foster a climate that encourages prevention and reporting of Prohibited Conduct, the University will actively promote prevention efforts, educate the community, respond to all reports promptly, provide Supportive Measures to address safety and emotional well-being, and act in a manner that recognizes the inherent dignity of the individuals involved.

## B. Sexual Assault, Sexual Violence, Interpersonal Violence, and Stalking Are Prohibited Forms of Conduct

Just as the University's prohibition of discrimination based on Protected Status is grounded in federal law, so is its prohibition against Sexual Assault, Interpersonal Violence and Stalking. The University's response to Sexual Assault, Sexual Violence, Interpersonal Violence (including domestic and dating violence), and Stalking is governed by the Jeanne Clery Disclosure of Campus Security and Campus Crime Statistics Act, 20 U.S.C. section 1092(f) ("the Clery Act") and section 304 of the 2013 Amendments to the Violence Against Women Act. Such conduct violates the essential dignity of our community members and is contrary to our institutional values.

The University is committed to taking all appropriate steps to eliminate Sexual Assault, Sexual Violence, Interpersonal Violence and Stalking; to prevent the recurrence of such acts; and to address their effects, both for the Reporting Party and for the broader community.

The University recognizes that Sexual Assault, Sexual Violence, Interpersonal Violence, and Stalking encompass a broad spectrum of conduct and will respond according to both the severity of the offense and the threat it poses to the campus community.

# II. Scope and Applicability

## A. Individuals Covered by this Policy

This Policy and associated procedures apply to the conduct of, and protect, University students, employees, visitors, program participants, contractors and other third parties under circumstances within the University's control.

When used in this Policy, Reporting Party refers to any individual who may have been the subject of any Prohibited Conduct by an individual or organization covered under the Policy regardless of whether the Reporting Party makes a report or seeks action under the Policy. Responding Party refers to any individual who has been accused of violating the Policy.

# B. Jurisdiction

This Policy applies to all Prohibited Conduct that occurs on and off campus, including on-line or electronic conduct, if: the conduct occurred in the context of an employment or education program or activity of the University, had continuing adverse effects on campus, or had continuing adverse effects in an off-campus employment or education program or activity of the University. Examples of covered off-campus conduct include University-sponsored study abroad, research, or internship programs.

In determining whether the University has jurisdiction over off-campus conduct that is not part of an educational program or activity of the University, the Director of Equal Opportunity and Compliance or the Title IX Coordinator will assess whether the alleged conduct has or is reasonably likely to have continuing adverse effects or to create a hostile environment for students, employees, or third parties while on campus or in any University employment or education program or activity. Factors to consider in that assessment are the seriousness of the alleged conduct, the risk of harm involved, whether both parties are members of the campus community, and whether the off-campus conduct is part of a series of actions that occurred both on and off campus.

Regardless of where the conduct occurred and with whom, the University will offer resources and assistance to community members who are subject to Prohibited Conduct. The University will also assist the Reporting Party in identifying and contacting external law enforcement agencies and community resources.

Reports of conduct that meet the definition of Sexual Harassment and the jurisdictional requirements in the University's Title IX Sexual Harassment Policy will be addressed solely in accordance with the Title IX Sexual Harassment Policy and will not be addressed under this Policy.

# C. Reports Involving Minors

Individuals who suspect that a child is being harmed or who observe a child being harmed must contact law enforcement by dialing 911.

In addition, under North Carolina law, any person who reasonably suspects that a child has been abused or neglected by a parent, guardian, or caregiver has an obligation to report that suspicion to a county department of social services. The Orange County Department of Social Services may be reached at 919-245-2800 or 919-968-2000.

Additional information regarding suspected child abuse or neglect may be found in the University's Policy on Protection of Minors.

# III. Applicable Procedures

For reports of Prohibited Conduct under this Policy, there are specific procedures that apply depending on the Responding Party's relationship to the University.[2] If the Responding Party's relationship to the University is unknown to the Reporting Party, the Equal Opportunity and Compliance Office will determine which procedures are applicable.

- Procedures for Reporting and Responding to Complaints of Discrimination, Harassment, and Related Misconduct Involving a **Student as the Responding Party** [3]
- Procedures for Reporting and Responding to Complaints of Discrimination, Harassment, and Related Misconduct Involving a **University Employee as the Responding Party** [4]
- Procedures for Reporting and Responding to Complaints of Discrimination, Harassment, and Related Misconduct Involving a **Visitor, Program Participant, Contractor or other Third Party as the**

# IV. Resources for Information and Assistance

## A. Equal Opportunity and Compliance Office

The Equal Opportunity and Compliance Office has primary responsibility for administering this Policy and oversees the investigation, response to, and resolution of all reports of Prohibited Conduct; however, questions, concerns, and/or reports may be addressed to any of the individuals or offices identified as Reporting Options on the Resource Page or in the applicable Procedures document.

The Director of Equal Opportunity and Compliance oversees the University's investigation, response to, and resolution of all reports of *Prohibited Conduct*, except those alleging Prohibited Conduct based on sex, Interpersonal Violence, or Stalking, as well as those alleging Complicity and Retaliation in relation to such a report. The Director of Title IX Compliance, the University's designated Title IX Coordinator, oversees the University's investigation, response to, and resolution of all reports of Prohibited Conduct based on sex (including Sexual or Gender-Based Harassment and Sexual Violence), Interpersonal Violence, and Stalking, and of related Complicity and Retaliation, involving students, faculty, and staff.

The Director of Equal Opportunity and Compliance and the Title IX Coordinator are:

- Knowledgeable and trained in University policies and procedures and relevant state and federal laws;
- Available to advise any individual, including a Reporting Party, a Responding Party, or a third party, about University and community resources and reporting options;
- Available to provide assistance to any University employee regarding how to respond appropriately to a report of Prohibited Conduct;
- Responsible for ensuring the effective implementation of this Policy, including monitoring compliance with all procedural requirements, record keeping, and timeframes; and
- Responsible for overseeing training, prevention, and education efforts and regular reviews of climate and culture.

Inquiries or concerns about Title IX may be referred to the University's Title IX Coordinator. Concerns about the University's application of laws covered by this Policy may be addressed to the United States Department of Education, Office for Civil Rights or the United States Equal Employment Opportunity Commission (EEOC):

## Title IX Coordinator

Adrienne Allison
919-962-7177 | adrienne.allison@unc.edu

## Director of Equal Opportunity and Compliance

Elizabeth Hall (Interim)
919-962-7185 | cehall@email.unc.edu

## Office for Civil Rights

OCR website
800-421-3481
OCR@ed.gov

**EEOC**

800-669-4000

[info@eeoc.gov](mailto:info@eeoc.gov)

# B. Non-Discrimination Response Team

A report of Prohibited Conduct may be made to any designated Reporting Option. The Director Equal Opportunity and Compliance or the Title IX Coordinator, with the assistance of the Response Team, will conduct an Initial Assessment to determine whether the alleged conduct presents a potential violation of the Policy and whether further action is warranted based on the alleged conduct. This use of a central integrated and coordinated approach allows the University to respond promptly and equitably to eliminate the conduct, to prevent its recurrence, and to address its effects.

Members of the Response Team can help any University community member understand the Policy and the options for resolving concerns raised under this Policy in academic or work settings at the University. The Response Team will attempt to protect and safeguard the privacy of all individuals involved in a manner consistent with the need for a careful assessment of and response to the report.

The Response Team will consist of a small "need to know" number of individuals. Depending on the roles (*e.g.*, student, faculty, staff) of the Reporting Party and the Responding Party, the Response Team may include:

- Report and Response Coordinators
- Title IX Coordinator
- Director of Equal Opportunity and Compliance
- Other members of the Equal Opportunity and Compliance Office
- UNC Police
- Office of the Dean of Students ("ODOS")
- The Office of the Executive Vice Chancellor and Provost
- Office of Human Resources ("OHR")
- Disability Coordinator
- Director of Accessibility Resources and Service
- Age Act Coordinator
- Office of Diversity and Inclusion
- Coordinator for the Protection of Minors

# V. Prohibited Conduct

# A. Discrimination and Harassment Based on All Protected Statuses

This Policy prohibits all forms of Discrimination and Harassment based on an individual's Protected *Status*.

## 1. Discrimination

This Policy prohibits Discrimination, meaning any unlawful distinction, preference, or detriment to an individual as compared to others that is based on an individual's Protected Status and that is sufficiently serious to unreasonably interfere with or limit:

- An employee's or applicant for employment's access to employment or conditions and benefits of employment (*e.g.,* hiring, advancement, assignment);
- A student's or applicant for admission's ability to participate in, access, or benefit from educational programs, services, or activities (e.g., admission, academic standing, grades, assignment, campus housing);
- An authorized volunteer's ability to participate in a volunteer activity; or
- A guest's or visitor's ability to participate in, access, or benefit from the University's programs.

Discrimination includes failing to provide reasonable accommodations, consistent with state and federal law, to a qualified person with a disability, for pregnancy or related medical conditions, and to a qualified person who has a sincerely held religious belief.

A reasonable accommodation is a necessary and appropriate modification or adjustment to the educational or work environment that enables a qualified individual to participate in the educational or application process or to perform essential job functions to the extent that the modification or adjustment does not result in a fundamental alteration of an academic program or of the essential functions of a job or impose an undue burden on the University.

## 2. Harassment

This Policy prohibits Harassment, which is a type of Discrimination that occurs when unwelcome verbal, physical, electronic, or other conduct based on an individual's Protected Status is severe, persistent, or pervasive enough to interfere with the *Reporting Party's* 's (a) educational environment (*e.g.*, admission, academic standing, grades, assignment); (b) work environment (*e.g.,* hiring, advancement, assignment); (c) participation in a University program or activity (*e.g.,* campus housing); or (d) receipt of legitimately-requested services (*e.g.*, disability, pregnancy, or religious accommodations), thereby creating Hostile Environment Harassment or Quid Pro Quo Harassment, as defined below.

### a. Hostile Environment Harassment

Unwelcome conduct based on Protected Status that is so severe, persistent, or pervasive that it alters the conditions of education, employment, or participation in a University program or activity, thereby creating an environment that a reasonable person in similar circumstances and with similar identities would find hostile, intimidating, or abusive. An isolated incident, unless sufficiently severe, does not amount to Hostile Environment Harassment.

### b. Quid Pro Quo Harassment

Unwelcome conduct based on Protected Status where submission to or rejection of such conduct is used, explicitly or implicitly, as the basis for decisions affecting an individual's education, employment, or participation in a University program or activity.

### Further Guidance about Discrimination and Harassment

Consistent with the definitions provided above, conduct that constitutes Discrimination and Harassment:

- May be blatant and involve an overt action, threat, or reprisal; or may be subtle and indirect, with a coercive aspect that is unstated but implied.
- May or may not include intent to harm.
- May not always be directed at a specific target.
- May be committed by anyone, regardless of Protected Status, position, or authority.  While there may be a power differential between the Reporting Party and the Responding Party - perhaps due to differences

in age or educational, employment, or social status – Discrimination and Harassment can occur in any context.
- May be committed by a stranger, an acquaintance, or someone with whom the Reporting Party has a current or previous relationship, including a romantic or sexual relationship.
- May be committed by or against an individual or by or against an organization or group.
- May occur in the classroom, in the workplace, in residential settings, or in any other setting.
- May be a pattern of behavior or, if sufficiently severe, a one-time event.
- May be committed in the presence of others, when the Reporting Party and Responding Party are alone, or through remote communications, including email, text messages, or social media.
- May take the form of threats, assault, property damage, economic abuse, and violence or threats of violence.
- May include harassing or retaliatory behavior directed to a sexual or romantic partner, family member, friend, or pet of the Reporting Party.

## 3. Protected Status

Consistent with federal and state law, the University prohibits Discrimination and Harassment based on age, color, disability, gender, gender expression, gender identity, genetic information, national origin, race, religion, sex, sexual orientation, or veteran status.

- **Age:** The number of years from the date of a person's birth. There is no age threshold for students or other participants in educational programs or activities.
- **Color:** An individual's skin pigmentation, complexion, shade, or tone.
- **Disability:** A person with a disability is any person who has a physical or mental impairment that substantially limits one or more major life activities; or has a record of such impairment; or is regarded as having such impairment. A qualified person with a disability must be able to perform the essential functions of the employment or volunteer position or the academic, athletic, or extra-curricular program, with or without reasonable accommodation.
- **Gender:** An individual's socially-constructed status based on the behavioral, cultural, or psychological traits typically associated with societal attribution of masculinity and femininity, typically related to one's assigned sex at birth.
- **Gender Expression:** How someone expresses gender through appearance, behavior, or mannerisms. A person's *Gender Expression* may or may not be the same as the *Gender Identity* or assigned sex at birth.
- **Gender Identity:** Any *Gender* with which an individual identifies, regardless of which *Gender* was assigned at birth.
- **Genetic Information:** Information about (i) an individual's genetic tests, (ii) the genetic tests of family members of such individual, and (iii) the manifestation of a disease or disorder in family members of such individual. *Genetic Information* includes, with respect to any individual, any request for, or receipt of, genetic services, or participation in clinical research that includes genetic services by such individual or any family member of such individual.
- **National Origin:** An individual's actual or perceived country or ethnicity of origin.
- **Race:** An individual's actual or perceived racial or ethnic ancestry or physical characteristics associated with a person's race, such as a person's color, hair, facial features, height, and weight.
- **Religion:** All aspects of religious observance and practice, as well as belief. Examples of religious discrimination or harassment may include, but are not limited to, anti-Semitic comments, denying opportunities or benefits based on one's head covering or other religious dress, and failure to provide reasonable accommodations for sincerely held religious beliefs and practices in accordance with the University's Policy on Religious Accommodation.  Conduct that may constitute religious discrimination or

harassment may also constitute discrimination or harassment based on an individual's National Origin.
- **Sex:** An individual's biological status of male or female, including pregnancy and related medical conditions. Conduct of a sexual nature is by definition based on *Sex* as a *Protected Status*.
- **Sexual Orientation:** The inclination or capacity to develop intimate, emotional, spiritual, physical, and/or sexual relationships with people of the same *Sex* or *Gender*, a different *Sex* or *Gender,* or irrespective of *Sex* or *Gender*.
- **Veteran Status:** Covered Veterans include Disabled Veterans, Special Disabled Veterans, Veterans of the Vietnam era, and other protected Veterans as defined by federal and state law.

# B. Sexual or Gender-Based Harassment, Sexual Assault, Sexual Violence, or Sexual Exploitation

Reports of conduct that meet the definition of Sexual Harassment and the jurisdictional requirements in the University's Title IX Sexual Harassment Policy will be addressed solely in accordance with the Title IX Sexual Harassment Policy and will not be addressed under this Policy. For reported conduct that does not meet the definition of Sexual Harassment and/or the jurisdictional requirements in the Title IX Sexual Harassment Policy, the following definitions will apply.

## 1. Prohibited Forms of Conduct[6]

### a. Sexual and Gender-Based Harassment

Sexual and Gender-Based Harassment are forms of Discrimination and Harassment prohibited by this Policy.

Sexual Harassment is any unwelcome sexual advance, request for sexual favors, or other unwanted verbal, physical, or electronic conduct of a sexual nature when one or more of the conditions outlined in (i) and/or (ii), below, are present:

Gender-Based Harassment includes verbal, physical, or electronic Harassment based on Sex, Gender, Sexual Orientation, or sex-stereotyping, even if those acts do not involve conduct of a sexual nature, when one or more of the following conditions outlined in (i) and/or (ii), below, are present. Gender-Based Harassment may include Harassment for exhibiting what is perceived as a stereotypical characteristic for one's Sex or for failing to conform to stereotypical notions of masculinity and femininity, regardless of the actual or perceived Sex, Gender, Sexual Orientation, Gender Identity, or Gender Expression of the individuals involved.

i. Where submission to or rejection of such conduct is used, explicitly or implicitly, as the basis for decisions affecting an individual's education, employment, or participation in a University program or activity (Quid Pro Quo Harassment); or

ii. Such conduct is so severe, persistent, or pervasive that it alters the conditions of education, employment, or participation in a University program or activity, thereby creating an environment that a reasonable person in similar circumstances and with similar identities would find hostile, intimidating, or abusive (Hostile Environment Harassment). A single incident of sexual assault is sufficiently severe to constitute Hostile Environment Harassment.

### b. Sexual Assault or Violence

Sexual Assault and Sexual Violence involve having or attempting to have Sexual Contact with another individual without Consent.

Additional guidance about Consent can be found in Section IV.B.2.b below.

Case 1:23-cv-00041-MR Document 35-4 Filed 05/08/23 Page 15 of 29

### c. Sexual Exploitation

Sexual Exploitation involves one or more of the following behaviors committed or attempted for any purpose, including sexual arousal or gratification, financial gain, or other personal benefit:

1. taking sexual advantage of another person without Consent;

2. taking advantage of another's sexuality; or

3. extending the bounds of consensual Sexual Contact without the knowledge of the other individual.

Examples of Sexual Exploitation include, but are not limited to: threatening to disclose an individual's Sexual Orientation, Gender Identity, or Gender Expression; observing another individual's nudity or Sexual Contact, or allowing another to observe the same, without the knowledge and Consent of all parties involved; non-consensual streaming of images, photography, video, or audio recording of Sexual Contact or nudity, or distribution of such without the knowledge and Consent of all parties involved; prostituting another individual; knowingly or recklessly exposing another individual to a sexually-transmitted infection, without the individual's knowledge; knowingly failing to use agreed-upon or requested method of contraception without the other party's knowledge; and inducing Incapacitation for the purpose of taking sexual advantage of another person.

## 2. Related Definitions: Sexual Contact, Consent, Coercion, Force, and Incapacitation

### a. Sexual Contact

Sexual Contact is any intentional touching or penetration of another person's clothed or unclothed intimate body parts, including but not limited to the buttocks, anus, groin, genitalia, or breast, by another with any part of the body or any object in a sexual manner. Sexual Contact also includes causing another person to touch their own or another's body in the manner described above.

### b. Consent

Consent is the communication of an affirmative, conscious and freely made decision by each participant to engage in agreed upon forms of Sexual Contact. Consent requires an outward demonstration, through understandable words or actions, that conveys a clear willingness to engage in Sexual Contact.

Lack of consent, refusal, or non-consent may be expressed in many ways, including verbally or physically. Consent is **not** to be inferred from silence, passivity, or a lack of resistance, and relying on non-verbal communication alone may result in a violation of this Policy. For example, a person who does not physically resist or verbally refuse Sexual Contact may **not** necessarily be giving Consent. There is no requirement that an individual verbally or physically resist unwelcome Sexual Contact for there to be a violation of this Policy.

Consent is **not** to be inferred from an existing or previous dating or sexual relationship. Even in the context of a relationship, there must be mutual Consent for every engagement in Sexual Contact.

Consent to one form of Sexual Contact does **not** constitute Consent to any other form of Sexual *Contact*, nor does Consent to Sexual Contact with one person constitute Consent to Sexual Contact with any other person. Additionally, Consent to Sexual Contact on one occasion is not Consent to engage in Sexual Contact on another occasion.

Consent **cannot** be obtained by Coercion or Force or by taking advantage of one's inability to give Consent because of Incapacitation or other circumstances. Coercion or Force and Incapacitation are described in more detail below.

A person who has given Consent to engage in Sexual Contact may withdraw Consent at any time. However, withdrawal of Consent requires an outward demonstration, through understandable words or actions, that clearly conveys that a party is no longer willing to engage in Sexual Contact. Once Consent is withdrawn, the Sexual Contact must cease immediately.

Individuals who initiate/escalate Sexual Contact assume responsibility for their behavior and must understand that the use of alcohol or other drugs does not reduce accountability for their actions or negate their responsibility to effectively seek Consent and to assure that Consent was freely given. The measure by which Consent will be evaluated is whether the person who initiated or escalated the Sexual Contact knew, or whether a sober and reasonable person in the same position should have known, if the other person gave Consent.

## Further Guidance about Consent

**Consent is**

- Informed
- Freely and actively given
- Mutually understandable words or actions indicating a willingness to participate in
- Mutually agreed upon Sexual Contact

**Consent is Not**

- Silence or passivity
- Obtained by intimidation, coercion, threats, force or violence
- Obtained from an individual who is incapable of giving Consent because the individual:
  ◦ has a mental, intellectual, or physical disability
  ◦ is under the legal age to give consent
  ◦ is asleep, unconscious, or physically helpless, or
  ◦ is incapacitated by alcohol or drugs

**Force or Coercion**

Force includes the use of physical violence, intimidation, or express or implied threats of physical or emotional harm that would cause a reasonable person in similar circumstances and with similar identities to fear immediate or future harm and that is employed to persuade or compel someone to engage in Sexual Contact. Physical violence entails exerting control over another person through the use of physical force, including hitting, punching, slapping, kicking, restraining, strangling, or brandishing a weapon.

Coercion is the use or attempted use of an unreasonable amount of pressure and/or oppressive behavior. Coercion includes express or implied threats and/or intimidation that wrongfully impair a person's ability to make a clear and willing choice to engage in Sexual Contact. Examples of Coercion include, but are not limited to, use of physical intimidation such as blocking access to an exit; causing the deliberate Incapacitation of another person; conditioning an academic benefit or employment advantage on submission to the Sexual Contact; threatening to harm oneself if the other party does not engage in Sexual Contact; or threatening to disclose an individual's Sexual Orientation, Gender Identity, Gender Expression, prior sexual history, or other personal sensitive information if the other party does not engage in the Sexual Contact.

**Incapacitation/Incapacitated**

An individual who is Incapacitated is unable to give Consent to Sexual Contact. An individual is considered to be Incapacitated if, by reason of mental or physical condition, the individual is unable to make a knowing or

Case 1:23-cv-00041-WR    Document 35-4    Filed 05/08/23    Page 17 of 29

deliberate choice to engage in Sexual Contact. States of Incapacitation include, but are not limited to, sleep, unconsciousness, intermittent consciousness, unresponsiveness, or any other state where a reasonable person under a similar circumstance would know that the individual is unaware that Sexual Contact is occurring. Incapacitation may also exist because of a mental or developmental disability that impairs the ability to Consent to Sexual Contact.

Alcohol or drug use is one of the primary causes of Incapacitation. Where alcohol or drug use is involved, being drunk or intoxicated can lead to Incapacitation; however, someone who is drunk or intoxicated is not necessarily Incapacitated because Incapacitation is a state beyond intoxication, impairment in judgment, or "drunkenness." Because the impact of alcohol or other drugs varies from person to person, evaluating whether an individual is Incapacitated, and therefore unable to give Consent, requires the individual initiating or escalating Sexual Contact to assess whether the consumption of alcohol or other drugs has rendered the other individual physically helpless or substantially incapable of:

- Making a knowing and deliberate choice to engage in Sexual Contact;
- Making decisions about the potential consequences of Sexual Contact;
- Appraising the nature of their own conduct;
- Communicating Consent to Sexual Contact; or
- Communicating unwillingness to engage in Sexual Contact.

Indicators that an individual may be Incapacitated include, but are not limited to, inability to communicate coherently, inability to dress or undress without assistance, inability to walk without assistance, slurred speech, loss of coordination, vomiting, or inability to perform other physical or cognitive tasks without assistance.

No matter the level of an individual's intoxication, if that individual has not affirmatively agreed to engage in Sexual Contact, there is no Consent. A Responding Party's intoxication is never an excuse for or a defense to committing Sexual or Gender-Based Harassment, Sexual Assault or Sexual Violence, or Interpersonal Violence, and it does not diminish one's responsibility to obtain Consent.

## Further Guidance about the Impact of Alcohol and Other Drugs

- Being impaired by alcohol or other drugs is no defense to any violation of this Policy.
- Be cautious before engaging in Sexual Contact when either party has been drinking alcohol or using other drugs. Alcohol or other drug use can lower inhibitions and create confusion about whether Consent has been effectively sought and freely given. An individual's intoxication may also impair their ability to indicate a clear willingness to engage in Sexual Contact.
- If there is any doubt as to the level or extent of one's own or the other individual's level of intoxication, the safe and appropriate thing to do is forego any Sexual Contact.
- Incapacitation is a state beyond intoxication. Intoxication may lead to Incapacitation.
- The impact of alcohol or other drugs varies from person to person and may change over a period of time based on a variety of subjective factors, including the amount of substance intake, speed of intake, body mass, and metabolism.
- You don't have to be a medical expert to assess Incapacitation. Look for common and obvious warning signs that a person may be incapacitated or approaching Incapacitation - slurred or incomprehensible speech, inability to walk without assistance, or vomiting.

# C. Interpersonal Violence and Stalking

Reports of Interpersonal Violence or Stalking that also meet the definition of Sexual Harassment and the

Policy on Prohibited Discrimination, Harassment and Related Misconduct Including Sexual and Gender-Based Harassment, Sexual Violence, Interpersonal Violence and Stalking. Reproduced from 2020 Official Federal Reporting Policy Statement policy/9116519/. Copyright © 2021 The University of North Carolina at Chapel Hill.

jurisdictional requirements in the University's Title IX Sexual Harassment Policy will be addressed solely in accordance with the Title IX Sexual Harassment Policy and will not be addressed under this Policy. For reports of interpersonal violence or stalking that do not meet the definition of Sexual Harassment and/or the jurisdictional requirements in the Title IX Sexual Harassment Policy, the following definitions will apply.

# 1. Interpersonal Violence

Interpersonal Violence (including intimate partner violence, dating violence, domestic violence, and relationship violence), can encompass a broad range of abusive behavior committed by a person who is or has been:

- In a romantic or intimate relationship with the Reporting Party (of the same or different sex);
- The Reporting Party's spouse or partner (of the same or different sex);
- The Reporting Party's family member; or
- The Reporting Party's cohabitant or household member, including a roommate.

Whether there was such a relationship will be gauged by its nature, length, type, and frequency of interaction. Reports of Interpersonal Violence that do not involve one of these specified relationships or that do not involve an individual's Protected Status will be resolved under the Honor Code, which is part of the Instrument of Student Judicial Governance.

Interpersonal Violence includes physical, sexual, emotional, economic, or psychological actions, attempted actions, or threats of actions that would cause a reasonable person in similar circumstances and with similar identities to fear for the person's safety or the safety of others or to experience substantial emotional distress. Such behaviors may include, but are not limited to, physical violence and threats of violence to one's self, one's family member, or one's pet. Interpersonal Violence may include any form of Prohibited Conduct under this Policy, including Sexual Assault and Stalking.

Substantial emotional distress means significant mental suffering or anguish that may, but does not necessarily, require medical or other professional treatment or counseling.

## Further Guidance about Allegations of Interpersonal Violence

When both parties in a romantic or intimate relationship report Interpersonal Violence, there will be an assessment to determine whether there is a predominant aggressor in the reported circumstances. Assessing for a predominant aggressor includes considering:

- Nature of the injuries, including the seriousness of injuries received by each party and the presence of offensive and defensive injuries;
- Threats made by one party against the other, another person, or a pet;
- Whether a party acted in self-defense or in the defense of another;
- The capacity of each party to injure the other;
- Any history of Interpersonal Violence between the parties;
- Prior findings of responsibility or convictions for acts of Interpersonal Violence;
- Orders for protection or no contact orders, current or past;
- Controlling behavior exhibited or reported by the parties or witnesses;
- Fearful behavior exhibited or reported by the parties or witnesses; and
- Witness statements.

Case 1:23-cv-00041-WRL Document 235-4 Filed 05/08/23 Page 19 of 29

## 2. Stalking

Stalking occurs when an individual engages in a course of conduct directed at a specific person under circumstances that would cause a reasonable person in similar circumstances and with similar identities to fear for the person's safety or the safety of others or to experience substantial emotional distress.

Course of conduct means two or more acts, including but not limited to acts in which a person directly, indirectly, or through other parties, by any action, method, device, or means, follows, monitors, observes, surveils, threatens, or communicates to or about another person, or interferes with another person's property.

Substantial emotional distress means significant mental suffering or anguish that may, but does not necessarily, require medical or other professional treatment or counseling.

Stalking may involve individuals who are known to one another or who have a current or previous relationship or may involve individuals who are strangers.

### Further Guidance about how Substantial Emotional Distress may Present Itself:

- Difficulty eating or sleeping;
- Anxiety or nervousness;
- Nightmares;
- Increased drug or alcohol use;
- Physical pain resulting from stress, including stomachaches or headaches;
- Decreased ability to perform at school or accomplish daily tasks;
- Frustration, irritability, anger, shock, or confusion;
- Feeling "on guard"/hypervigilance;
- Changing routines;
- Depression.

# D. Complicity and Retaliation

## 1. Complicity

Complicity is any act that knowingly aids, facilitates, promotes, or encourages the commission of prohibited conduct by another person.

## 2. Retaliation

Retaliation is any adverse action or attempted action that would discourage a reasonable person from engaging in protected activity.  Protected activity includes an individual's actual or perceived: (i) participation in the reporting, investigation, or resolution of an alleged violation of this Policy; (ii) opposition to policies, practices, or actions that the individual reasonably believes are in violation of the Policy; or (iii) requests for accommodations on the basis of religion, pregnancy or related medical conditions, or disability. Retaliation may include intimidation, threats, coercion, or adverse employment or educational actions. Retaliation includes maliciously and purposefully interfering with, threatening, or damaging the academic or professional career of another individual, before, during, or after the resolution of a report of misconduct under this Policy. Retaliation includes intimidating, threatening, or coercing any individual for the purpose of interfering with any right or privilege secured by Title IX of the Education Amendments Act of 1972 and its implementing regulations.

Retaliation may be found even when an investigation determines there is insufficient evidence to substantiate the original report.  Reports made in good faith, even if the allegations are ultimately determined to be

unsubstantiated, are not considered retaliation.  Reports found to have been made frivolously or in bad faith may constitute retaliation and/or may be considered in the sanctioning process if an individual is otherwise found responsible for a violation of the Policy. Retaliation may be committed by the Responding Party, the Reporting Party, or any other individual or group of individuals.

The exercise of rights protected under the First Amendment does not constitute Retaliation.

During the investigation and resolution of alleged violations of this Policy, reasonable steps will be taken to protect the Reporting Party, the Responding Party, and other participants in the reporting, investigation, and resolution process from Retaliation. Any individual who engages in Retaliation or authorizes, instructs, or permits others to engage in retaliation on their behalf will be subject to prompt and appropriate disciplinary action. Individuals who have a concern about potential or actual *Retaliation* should contact the Director of Equal Opportunity and Compliance or the Title IX Coordinator for assistance in addressing the concern. If the concern about Retaliation involves the Director of Equal Opportunity and Compliance or the Title IX Coordinator, an individual may contact the Vice Chancellor for Human Resources and Equal Opportunity and Compliance.

# E. Violation of Supportive Measures, Interference with the Policy, and Failure to Comply with Sanctions

The University expects individuals to comply with campus authorities in the course of enforcing the provisions of Equal Opportunity and Compliance Office policies through informal resolutions and formal investigations. Accordingly, it is a violation of this Policy to:

1. Violate restraining orders or no-contact orders imposed by government or campus authorities or any other Supportive Measures established by University personnel;

2. Violate the terms of disciplinary proceedings or of any sanction imposed pursuant to such proceedings;

3. Engage in acts of bad faith or dishonesty intended to interfere with the resolution process and the procedures established under Equal Opportunity and Compliance Office policies. Such acts include, but are not limited to, intentionally and unreasonably delaying the resolution process, deliberately furnishing false or misleading information to University personnel acting in the scope of their official duties, or authorizing or instructing others to engage in such acts on one's behalf.

# VI. Reporting Options

The University is committed to providing reporting options that are broadly accessible to all University community members.  Detailed information about Reporting Options for students, faculty, and staff is outlined in the Procedures that accompany this Policy.

Making a report to the University means telling a designated Reporting Option what happened, in person, by telephone, in writing, by e-mail, electronically, or anonymously. The University encourages a Reporting Party to make a report directly to one of these designated *Reporting Options*: the Director of Equal Opportunity and Compliance, the Title IX Coordinator, the Report and Response Coordinators,  or UNC Police.  When an individual chooses to share information with a University employee designated as a Responsible Employee, the report will be shared with the Director of Equal Opportunity and Compliance or the Title IX Coordinator.

Consistent with the procedures that accompany this Policy, upon receipt of a report, the Director of Equal

Policy on Prohibited Discrimination, Harassment and Related Misconduct Including Sexual and Gender-Based Harassment, Sexual Violence, Interpersonal Violence and Stalking. Retrieved from 2022 Official University Policies Document at https://policies.unc.edu/TDClient/2833/Portal/KB/ArticleDet?ID=132510 or policy/9116519/. Copyright © 2021 The University of North Carolina at Chapel Hill

Opportunity and Compliance or the Title IX Coordinator, in consultation with the Response Team, will conduct an Initial Assessment of: the incident or behavior at issue; any risk of harm to the parties, any other individuals, or the broader campus community; the Reporting Party's preferred course of action; and the necessity for any Supportive Measures for the parties, any other individuals, or the community. A member of the Response Team will offer appropriate resources to support the Reporting Party (*e.g.*, medical care, counseling resources, safe housing) and at the conclusion of the Initial Assessment, will determine the appropriate manner of resolution.

The University recognizes that deciding whether to make a report and choosing how to proceed are personal decisions. At the time a report is made, a Reporting Party does not have to decide whether to request any particular course of action. Choosing to make a report, and deciding how to proceed after making the report, is a process that may unfold over time. The University will make every effort to respect an individual's preference in making the determination as to how to proceed, consistent with its obligations under applicable law. Resources are always available to support a Reporting Party regardless of the course of action chosen.

All individuals are encouraged to make a report, regardless of when or where the incident occurred, and to seek any necessary help from campus or community resources.

# VII. Privacy and Confidentiality

For any report under this Policy, every effort will be made to respect and safeguard the privacy interests of all individuals involved in a manner consistent with the need for a careful assessment of the allegation and any necessary steps to eliminate the conduct, prevent its recurrence, and address its effects. Privacy and confidentiality have distinct meanings under this Policy.

## A. Privacy

Privacy means that information related to a report under this Policy will only be shared with those University employees who "need to know" in order to assist in the active review, investigation, or resolution of the report. While not bound by confidentiality, these individuals will be discreet and respect the privacy of all individuals involved in the process. If the decision is made to pursue disciplinary action against a Responding Party, information related to the report will be shared with the Responding Party. Information regarding a report will not be shared with either party's parents or guardians unless: the party is a minor (and sharing is permissible under the Family Education Rights and Privacy Act (FERPA)); the party has signed a waiver that is compliant with FERPA; or there is an articulable and significant threat to the health or safety of the party or other individuals.

## B. Confidentiality

Confidentiality means that information shared with designated campus or community professionals will only be disclosed with the individual's express permission, unless there is a continuing threat of serious harm to the individual or to others or there is a legal obligation to reveal such information (*e.g.,* where there is suspected abuse or neglect of a minor). An individual can seek confidential assistance and support by speaking with specially-designated Confidential Resources.

## C. Records

The Equal Opportunity and Compliance Office will maintain records of all reports under this Policy and their outcomes in order to track patterns and systemic behaviors.

Case 1:23-cv-00041-MR Document 35-4 Filed 05/08/23 Page 22 of 29

# D. Release of Information

If a report of Prohibited Conduct discloses a serious and immediate threat to the campus community, UNC Police will issue a timely notification to protect the health or safety of the community as required by the Clery Act. The notification will not include identifying information about a Reporting Party.

Pursuant to the Clery Act and the 2013 Amendments to the Violence Against Women Act, anonymous statistical information regarding reported criminal incidents must be shared with UNC Police for inclusion in the Daily Crime Log.  This information will also be included in the University's Annual Security Report. The University may also share aggregate and not personally-identifiable data about reports, outcomes, and sanctions.

All University proceedings are conducted in accordance with the requirements of Title IX, the Clery Act, the Violence Against Women Act, FERPA, state and local law, and University policy. No information, including the identity of the parties, will be released from such proceedings except as required or permitted by law or University policy**.**

# VIII. Reporting by University Employees

## A. Responsible Employees

Employees with administrative or supervisory responsibilities on campus or who have been designated as Campus Security Authorities,[5] are considered Responsible Employees. This includes, for example, members of the Board of Trustees, the Chancellor, Vice Chancellors, Deans, Directors, Department Chairs, Coaches, and Student Affairs professionals (including Resident Advisors). Sworn officers in UNC Police are also Responsible Employees. Confidential Resources are **not** considered to be Responsible Employees. A full list of Responsible Employees can be found on the Equal Opportunity and Compliance website.

Responsible Employees must safeguard an individual's privacy but are **required** by the University to immediately share all details about a report of Prohibited Conduct (including the known details of the incident (*e.g.*, date, time, location), the names of the parties involved, a brief description of the incident and if the incident has been previously reported) with the Equal Opportunity and Compliance Office in person, by telephone, electronically, or by email.  Such reporting ensures timely support for all parties and enables an effective and consistent institutional response.  Such reporting ensures timely support for all parties and enables an effective and consistent institutional response.

## B. All Other Employees

All other employees (who are not designated as Confidential Resources) must safeguard an individual's privacy, but **strongly encouraged** to share any information about such conduct with the Equal Opportunity and Compliance Office in recognition of the understanding that centralized reporting is an important tool to address, end, and prevent Prohibited Conduct.

Similarly, all **students** (who are not otherwise required to report as a Responsible Employee) are **strongly encouraged** to report any information, including reports or partial reports of Prohibited Conduct, to the Equal Opportunity and Compliance Office.

## C. Confidential Resources

Confidential Resources will **not share** information about an individual (including whether that individual has

Case 1:23-cv-00041-MR   Document 35-4   Filed 05/08/23   Page 23 of 29

received services) without the individual's express permission, unless there is a continuing threat of serious violence to the patient/client or to others or there is a legal obligation to reveal such information (*e.g.,* suspected abuse or neglect of a minor).

# IX. Supportive Measures

Supportive Measures are individualized services offered as appropriate to either or both the Reporting Party and Responding Party and any other involved individuals as appropriate to ensure their safety and well-being when a report is received.  When a report is received, the Director of Equal Opportunity and Compliance or the Title IX Coordinator, in consultation with other administrators, will impose reasonable and appropriate Supportive Measures when necessary to provide support and to protect the safety of the parties or the witnesses involved. Supportive Measures are temporary actions taken by the University to ensure equal access to its education programs and activities and to foster a more stable and safe environment before and during the process of reporting, investigation, and/or adjudication. Supportive Measures may be requested by the parties or instituted by the University at any time, regardless of whether any particular course of action is sought by the Reporting Party.

All individuals are encouraged to report concerns about the adequacy of the Supportive Measures or failure of another individual to abide by any Supportive Measure to the Director of Equal Opportunity and Compliance or to the Title IX Coordinator. Violations of Supportive Measures will be addressed under this Policy. The Equal Opportunity and Compliance Office or the Title IX Coordinator will take appropriate, responsive, and prompt action to enforce Supportive Measures and/or to respond to Retaliation by another party or witness.

The range of Supportive Measures includes:

- Access to counseling services and assistance in setting up initial appointments, both on and off campus
- Imposition of a campus "No-Contact Order"
- Rescheduling of exams and assignments
- Providing alternative course completion options
- Change in class schedule, including the ability to drop a course without penalty or to transfer sections
- Change in work schedule or job assignment
- Change in student's campus housing
- Assistance from University support staff in completing housing relocation
- Limiting access to certain University facilities or activities pending resolution of the matter
- Voluntary leave of absence
- Providing an escort to assure safe movement between classes and activities
- Arranging for medical services
- Providing academic support services, such as tutoring
- University-imposed leave, suspension, or separation for the *Responding Party*[6]
- Any other measure which can be tailored to the involved individuals to achieve the goals of this Policy.

# X. Academic Freedom and Integrity

The University is committed to the principles of free inquiry and expression. Vigorous discussion and debate are fundamental to this commitment, and this Policy is not intended to restrict teaching methods or freedom of expression, nor will it be permitted to do so. Offensiveness of conduct, standing alone, is not sufficient for the conduct to constitute prohibited Harassment. The conduct must be sufficiently serious to interfere with an individual's ability to participate in employment or educational program and activities from both a subjective and objective perspective.

Prohibited Conduct under this Policy is not a proper exercise of academic freedom and may not be legally protected expression. On the contrary, *Prohibited Conduct* compromises the University's integrity, as well as its tradition of intellectual freedom.

# XI. Education and Prevention Programs

The University is committed to offering educational programs to promote awareness and prevention of Prohibited Conduct. Educational programs include an overview of the University's policies and procedures; relevant definitions, including prohibited conduct; discussion of the impact of alcohol and illegal drug use; Consent; safe and positive options for bystander intervention; review of resources and reporting options available for students, faculty, and staff; and information about risk reduction. Incoming first year students and new employees will receive primary prevention and awareness programming as part of their orientation. Returning students and employees will also have ongoing opportunities for training and education. The University's Equal Opportunity and Compliance Office maintains an education and prevention calendar and can tailor programming to campus needs and climate. Information about on-line training programs can be accessed through the Equal Opportunity and Compliance Office's website. In addition, more information about education and prevention programs can be found on the Safe at UNC website.

As part of the University's commitment to provide an educational and work environment free from Prohibited Conduct, this Policy will be disseminated widely to the University community through e-mail communication, publications, websites, new employee orientations, student orientations, and other appropriate channels of communication.

# XII. Policy Review

This Policy is maintained by the Equal Opportunity and Compliance Office. The Equal Opportunity and Compliance Office will review this Policy on an ongoing basis for effectiveness, fairness, and legal compliance and will establish a standing advisory group consisting of student, faculty, and staff representatives selected by senior leadership of the Equal Opportunity and Compliance Office in consultation with campus partners to provide ongoing, time-sensitive feedback and guidance. This advisory group  will consider evolving legal requirements, evaluate the supports and resources available to the parties, and assess the effectiveness of the resolution process (including as to the fairness of the process, the time needed to complete the process, and the sanctions and remedies imposed). The Equal Opportunity and Compliance Office will provide opportunities for individuals affected by the Policy to offer feedback to assist in the advisory group's evaluation of the Policy and resolution process. With the assistance of the advisory group, the Equal Opportunity and Compliance Office will prepare an annual report, publicly available, which will include recommendations and steps taken to improve the delivery of services and the effectiveness of the Policy and procedures.

# XII. Related University Policies

## ADA Reasonable Accommodations in Employment

The Policy on ADA Reasonable Accommodations for Employees, Applicants and Visitors states that, upon the request of any University employee or applicant for employment, the University will provide reasonable accommodations for that individual's known disability.
Reasonable accommodations may include but are not limited to making facilities accessible, job restructuring, and modifying equipment or devices.

# EHRA Non-Faculty Grievance Policy

The EHRA Non-Faculty Grievance Policy provides a formal process by which EHRA non-faculty employees can seek prompt, orderly, and fair resolution of work-related disputes.

# Expedited Administrative Review by Disability Services Advisory Committee (for students denied an accommodation for a disability)

The Expedited Administrative Review by Disability Services Advisory Committee Policy offers an expedited administrative review process through which students may appeal a determination of their eligibility for and/or provision of disability-related services and accommodations.

# Faculty Grievance Procedures and Faculty Hearings Procedures

The Faculty Grievance Procedures and Faculty Hearings Procedures provide a formal process by which faculty employees can seek prompt, orderly, and fair resolution of work-related disputes.

# Family Educational Rights and Privacy Act (FERPA) Policy

The Policies and Procedures Under the Family Educational Rights and Privacy Act of 1974 ("FERPA") states that students who are or have been in attendance at UNC-Chapel Hill have the right to inspect and review their education records upon written request and identifies what student education records may be public and what information is protected from disclosure except under specified circumstances.

# Instrument on Student Judicial Governance

The Instrument on Student Judicial Governance applies to every student (including undergraduate, graduate, and professional students) and covers offenses other than those addressed by *The University of North Carolina at Chapel Hill Policy on Prohibited Discrimination, Harassment and Related Misconduct*. Offenses proscribed by the Honor Code include but are not limited to academic dishonesty, conduct adversely affecting members of the University Community or the University, conduct affecting persons or property, conduct affecting the integrity of the University, and group offenses.

# Policy on Protection of Minors

The Policy on Protection of Minors requires criminal background checks for all program staff (paid and volunteer) of any residential program serving minors.

Furthermore, any employee who reasonably suspects a child has been abused or neglected by a parent, guardian, or caregiver must report that suspicion to a county department of social services.

Policy on Prohibited Discrimination, Harassment and Related Misconduct Including Sexual and Gender-Based Harassment, Sexual Violence, Interpersonal Violence and Stalking. Retrieved from https://policies.unc.edu/TDClient/2833/Portal/KB/ArticleDet?ID=132569 and https://unc.policystat.com/policy/9116519/. Copyright © 2021 The University of North Carolina at Chapel Hill

# Official Recognition of Student Organizations Non-Discrimination Policy

The Official Recognition of Student Organizations Non-Discrimination Policy describes the conditions with which a student organization must abide by in order to be eligible for official recognition by the University.

# Policy on Improper Relationships Between Students and Employees

The Policy on Improper Relationships Between Students and Employees prohibits amorous or sexual relationships between faculty or staff employees and: (1) students they evaluate or supervise incident to any University employment responsibility or authority; or (2) students under the age of eighteen.

# Policy Statement on Non-Discrimination

The University's Policy on Non-Discrimination states that it is University policy not to discriminate in offering access to its educational programs and activities or with respect to employment terms and conditions on the basis of race, color, gender, national origin, age, religion, genetic information, disability, veteran's status, sexual orientation, gender identity, or gender expression.

# Policy on Pregnant and Parenting Students and Applicants

This Policy on Pregnant and Parenting Students and Applicants[1] prohibits discrimination and harassment against a Student or Applicant[1] based on Pregnancy and Related Medical Conditions and discrimination or harassment based on sex or gender related to a Student or Applicant's actual or potential parental status

# Policy on Prohibited Sexual Harassment under Title IX

The Policy on Prohibited Sexual Harassment under Title IX prohibits specific forms of Sexual Harassment.

# Policy on Religious Accommodation

The Policy on Religious Accommodation requires all units in the University to provide reasonable accommodations for the sincerely held Religious Beliefs and Practices of employees, students, and other covered individuals unless providing such accommodations would result in Undue Hardship to the University.

# Post-Doctoral Scholars Grievance Policy

The Post-Doctoral Scholars Grievance Policy provides a formal process by which postdoctoral scholars can seek prompt, orderly, and fair resolution of work-related disputes.

# Procedure for Student Requests for Accommodations

The Procedure for Student Requests for Accommodations provides a formal process for students registered with Accessibility Resources & Services to request accommodations. Students can register by completing the Self Identification Form online. If a student has any questions or needs help with the process, the student can contact the Office of Accessibility Resources & Service at 919-962-8300 or at ars@unc.edu.

# Whistleblower Policy

The Whistleblower Policy encourages individuals to report possible Wrongful Conduct to an appropriate authority so that prompt, corrective action can be taken by the University. Protects reporting individuals from any Retaliation for reporting Wrongful Conduct.

# SHRA Grievance Policy

The SHRA Grievance Policy provides a formal process by which SHRA employees can seek prompt, orderly, and fair resolution of work-related disputes.

# Violence in the Workplace Policy

The Violence in the Workplace Policy states that the University is committed to providing a workplace free from violence by establishing preventative measures, holding perpetrators of violence accountable, and providing assistance and support to victims. The University's Employee Threat Assessment and Response Team will assess and respond to immediate and potential threats of workplace violence. The University will protect victims of workplace violence by offering security measures and accommodating other requests whenever possible and appropriate.

# Footnotes

1. The complete text of the "University POLICY Statement on Non-Discrimination" is located on the UNC policy website.

2. University employees who are also students are considered students if their employment status requires them to be students (e.g. teaching assistants, resident advisors). An individual who is both a student and an employee whose position does not require them to be a student is considered to be an employee when acting in the course of their employee duties and is considered a student when acting in their role as a student.

3. A University student is a person who is enrolled in or has accepted admission to a full or part-time course of study for academic credit at the University.

4. A University employee is defined as any faculty or staff member, including EHRA non-faculty employees, SHRA employees, and student employees, whether part-time or full-time, permanent or temporary, and includes post-doctoral scholars.

5. A third party is an individual who is not considered a student or an employee of the University. Reports of misconduct by a third party will be addressed by the procedures that correlate to the Responding Party's relationship to the University (e.g., employee, student, third party).

6. These definitions overlap with North Carolina criminal statutes in some cases and provide greater protection in other instances. The North Carolina criminal statutes may be found in Chapter 14 of the North Carolina General Statutes.

7. Campus Security Authorities, as designated by the University, include: members of UNC Police; any individual(s) who have responsibility for campus (e.g., guard, escort); individuals/departments designated as Reporting Options in this Policy; and employees with significant responsibility for student and campus activities, including, but not limited to, student housing, student discipline, and campus judicial proceedings. A Campus Security Authority must share all known details of an incident, consistent with the expectations for Responsible Employees, but no identifying information with respect to a Reporting Party will be entered in the

8. Where the Responding Party is a student, cases involving violence will be immediately referred to the EEAC to determine whether the Responding Party poses a serious threat of disruption to the academic process or a continuing danger to members of the University community or University property. The Title IX Coordinator or another member of the Equal Opportunity and Compliance Office may serve as a member of the Committee for matters involving Sexual or Gender-Based Harassment and Sexual Violence, Interpersonal Violence, Stalking, Complicity, and Retaliation. The EEAC Policy and Procedures are located on the UNC policy website.

9. "Confidential" means that information shared with designated campus or community professionals will only be disclosed with the individual's permission, unless there is a continuing threat of serious harm to the individual or to others or there is a legal obligation to reveal such information (*e.g.,* where there is suspected abuse or neglect of a minor).

10. "Private" generally means that information related to a report under the Policy will only be shared with those individuals who "need to know" in order to assist in the active review, investigation, or resolution of the report. While not bound by confidentiality, these offices and individuals will be discreet and respect the privacy of all individuals involved in the process.

11. Carolina Legal Services is not available for students with legal questions or concerns about the University, its employees, or fellow students who are eligible for services. For other matters, students who have paid the student legal services activity fee are eligible for advice and/or representation in certain areas of law. Continuing education students, postdoctoral scholars, and visiting scholars do not pay the fee and therefore are ineligible.

12. For victims of sexual assault, domestic violence, dating violence and stalking, visa options such as U and T Visas may be available. For specifics, talk to an immigration attorney and/or the organizations listed on this resource chart, and see http://bit.ly/1OKRHIW.

All revision dates: 3/11/2021, 8/13/2020, 4/28/2020, 3/27/2020, 2/24/2020, 1/14/2020, 10/31/2019, 8/28/2014

## Attachments

Resources Chart.pdf
SHRA Grievance Policy

## Approval Signatures

| Step Description | Approver | Date |
|---|---|---|
| Publication by the Office of Ethics and Policy | Matthew Teal: University Program Specialist | 3/11/2021 |
| Interim Associate Vice Chancellor for Equal Opportunity and Compliance | Elizabeth Hall: Assistant Director | 3/11/2021 |
| Associate Director of Title IX Programs and Special Projects | Katie Nolan: Assoc. Director Title IX Programs & Spec | 2/5/2021 |

Case 1:23-cv-00041-WO-JLW   Document 50-4   Filed 05/08/23   Page 29 of 29