**Procedures for Reporting and Responding to Complaints of Discrimination, Harassment, and Related Misconduct Involving a Student₁ as the *Responding Party***

**TABLE OF CONTENTS**

I. OVERVIEW ........................................................................................................................3

II. EMERGENCY LAW ENFORCEMENT, MEDICAL, AND CRISIS RESPONSE
RESOURCES ....................................................................................................................4

III. RESOURCES AND REPORTING OPTIONS ...............................................................5
    A. Definitions of Private, Confidential, and Anonymous .........................................5
    B. Confidential Resources ........................................................................................6
    C. Reporting Options ................................................................................................6
        1. Law Enforcement.......................................................................................6
        2. University....................................................................................................7
        3. Anonymous Reporting................................................................................8
        4. Blind Reports to Law Enforcement ...........................................................8
        5. Reporting Considerations: Timeliness and Location of Incident ...................8
        6. Amnesty.....................................................................................................9
    D. Other Resources...................................................................................................9

IV. PROCEDURAL INFORMATION ...................................................................................9
    A. Initial Assessment ...............................................................................................9
    B. Voluntary Resolution.........................................................................................12
    C. Investigation ......................................................................................................14
        1. Investigators .............................................................................................14
        2. Notice.......................................................................................................14
        3. Time Frame ..............................................................................................15
        4. Resources.................................................................................................15
        5. Intersection with Laws or other Policies..................................................16
        6. Evidence Collection..................................................................................16
        7. Relevance and Special Considerations....................................................17
        8. Review of Draft Investigation Report.......................................................19
        9. Investigative Finding.................................................................................19
    D. Outcome Conference .........................................................................................19
    E. Adjudication Options .........................................................................................20
        1. Imposition of Final Finding, Sanction, and Remedy ......................................20
        2. Administrative Review of an Investigative Finding of No Policy
        Violation ...................................................................................................21

---

₁ Consistent with the Policy on Prohibited Discrimination, Harassment and Related Misconduct, a University student is defined as a person who is enrolled in or has accepted admission to a full or part-time course of study for academic credit at the University.

.

**EXHIBIT**
1

**4**

        3.     Adjudication by a Hearing Panel: Review of an Investigative Finding that the Responding Party Violated the Policy..................................21

        4.     Adjudication by a Hearing Panel: Review of Recommended Sanction Only..........................................................................................................21

F.     Imposition of Sanctions ...........................................................................22

     1.     Sanctions that Impact a Student's Status ....................................23

     2.     Sanctions that Do Not Impact a Student's Status .......................24

G.    Remedies ...................................................................................................24

H.    Hearing Process .......................................................................................25

     1.     Hearing Panel ..............................................................................25

     2.     Pre-Hearing Meeting....................................................................25

     3.     Hearing Procedures......................................................................26

I.     Notice of Hearing Outcome .....................................................................26

J.    Appeal/Review of Hearing Outcome ......................................................27

     1.     Appeal to the University...............................................................27

     2.     Further Review/Appeal in Matters of Suspension or Expulsion ..................28

L.    Post-Resolution Follow Up ......................................................................29

V.    ADDITIONAL CONSIDERATIONS ...................................................................29

A.    Retaliation ................................................................................................29

B.    Role of the Support Person, Attorney, and Non-Attorney Advocate.......................30

C.    External Agreements ..................................................................................2

D.    Records of Student Discipline and Effect of Withdrawal ..........................2

Case 1:23-cv-00041-MR   Document 35-5   Filed 05/08/23   Page 2 of 31

# I. OVERVIEW[2]

This document sets forth procedures for reporting, investigating, and responding to *Discrimination, Harassment* (including *Sexual or Gender-Based Harassment* and *Sexual Violence*), *Interpersonal Violence, Stalking, Complicity,* and *Retaliation* (hereinafter collectively referred to as "Prohibited Conduct") involving a student as the *Responding Party*. Please refer to the Policy for applicable definitions of key terms.

All community members are strongly encouraged to report incidents of *Prohibited Conduct* to the Equal Opportunity and Compliance Office and/or the UNC Police. As an alternative, as outlined below, an individual can also seek confidential assistance that does not involve notice to the University.

Upon receipt of a report, the Response Team,[3] a core group of administrators that includes the Director of Equal Opportunity and Compliance, the Title IX Compliance Coordinator, a Report and Response Coordinator, and/or staff in the Office of the Dean of Students, will offer appropriate resources to support the Reporting Party (*e.g.*, medical care, counseling resources, safe housing) and conduct an *Initial Assessment*. The *Initial Assessment* will consider the nature of the report, the safety of the parties and the campus community, the *Reporting Party*'s expressed preference for resolution, and the necessity for any *Interim Measures. e.g.*, medical care, counseling resources, safe housing) and conduct an *Initial Assessment.* The *Initial Assessment* will consider the nature of the report, the safety of the parties and the campus community, the *Reporting Party*'s expressed preference for resolution, and the necessity for any *Interim Measures.*

Following this *Initial Assessment*, the Director of Equal Opportunity and Compliance or the Title IX Compliance Coordinator may: 1) take no further action (*e.g.,* at the *Reporting Party's* request or where the conduct, on its face, would not rise to the level of a Policy violation); 2) pursue *Voluntary Resolution* that does not involve disciplinary action against the *Responding Party*; or 3) pursue *Investigation* and *Adjudication* to determine if disciplinary action is warranted. Each resolution process is guided by the same principles of fairness and respect for all parties. *Resources* are available for both a *Reporting Party* and a *Responding Party* to provide support and guidance throughout the *Investigation* and resolution of the report.

The University encourages a *Reporting Party* to explore all available options for resolution, including a report under the Policy and a report to law enforcement. The processes are not mutually exclusive; an individual can choose to pursue both a report under the Policy and a criminal investigation at the same time.  If an individual would like assistance contacting a law enforcement agency, either to report an incident or follow-up on a report, a member of the Response Team is available to assist a *Reporting Party* in contacting the appropriate law enforcement agency.

---

[2] Please refer to the Policy on Prohibited Discrimination, Harassment and Related Misconduct for definitions.

[3] The Response Team is responsible for the consistent application of the Policy. Members of the Response Team can help any University community member understand the Policy and the options for resolving concerns raised under this Policy in academic or work settings at the University.  The Response Team will protect and safeguard the privacy of all individuals involved in a manner consistent with the need for a careful assessment of and response to the report.  The Response Team will consist of a small "need to know" number of individuals.

## II.    EMERGENCY LAW ENFORCEMENT, MEDICAL, AND CRISIS RESPONSE RESOURCES

As a first priority, the University strongly encourages all individuals to report potential criminal conduct by calling 911 or by contacting UNC Police. If the incident occurred off-campus, UNC Police will refer the report to the police department or law enforcement agency in the correct jurisdiction.

The University also encourages individuals to seek assistance from a medical provider or crisis response service immediately after an incident of *Sexual Violence* or *Interpersonal Violence*. This provides the opportunity to address physical well-being or health concerns, preserve any available evidence, and begin a timely investigative and remedial response. Emotional care, counseling, and crisis response are also available on and off campus. Financial assistance with related medical expenses is available to students through the University's Survivor's Assistance Fund regardless of where medical services are received; outside financial assistance may also be available for employees.[4]

| Law Enforcement | Medical Providers & Crisis Response |
|---|---|
| **UNC Police**<br>https://police.unc.edu/<br>919-962-8100<br>UNC Police will help any individual get to a safe place and will provide transportation to the hospital, coordination with outside law enforcement, and information about the University's resources and complaint processes. | **UNC Campus Health Services**<br>http://campushealth.unc.edu/urgent-needs/sexual-assault-response<br>919-966-3650 / After hours: 919-966-2281<br>• Confidential care for students<br>• Sexual assault exams/evidence collection<br>• Screening and treatment of sexually transmitted infections (STIs)<br>• Emergency contraceptives<br>• Monies are available to offset medical expenses under the Survivor's Assistance Fund |
| **Carrboro Police Department**<br>http://www.townofcarrboro.org/225/Police<br>919-918-7397 | **UNC Hospital Emergency Room**<br>919-966-4721<br>• Confidential 24/7 medical cares<br>• Sexual assault exams/evidence collection<br>• Screening and treatment of STIs<br>• Emergency contraceptives<br>• Monies are available to offset medical expenses under the Survivor's Assistance Fund |
| **Chapel Hill Police Department**<br>https://www.townofchapelhill.org/government/departments-services/police<br>919-968-2760 | **Counseling & Psychological Services**<br>https://caps.unc.edu/<br>919-966-3658<br>• Confidential care for students<br>• Individual and group counseling and referral |

---

[4] Information regarding the University's Survivor's Assistance Fund and assistance for employees can be accessed online at http://safe.unc.edu/resources/financial-resources/.

4

| Orange County Sheriff's Office | Compass Center for Women and Families |
|---|---|
| http://www.ocsonc.com/ <br> 919-245-2900 | http://compassctr.org <br> 919-929-3872; 919-929-7122 (Hotline) <br> • Confidential care for students <br> • Personal and court advocacy <br> • Emergency shelter placement |
| | Orange County Rape Crisis Center <br> www.ocrcc.org <br> 919-968-4647; 1-866-WE-LISTEN (1-866-935-4783) <br> • Confidential care for students <br> • Personal and court advocacy <br> • Accompaniment to emergency room & police station |

## III.    RESOURCES AND REPORTING OPTIONS

All individuals are encouraged to seek the support of on and off campus resources, regardless of when or where the incident occurred. Trained professionals can provide guidance in making decisions, information about available resources and procedural options, and assistance to either party in the event that a report and/or resolution under the Policy is pursued. In general, the University provides two categories of resources: **Confidential Resources** and **Reporting Options**. Detailed information about each of these categories is provided below.

### A.    Definitions of Private, Confidential, and Anonymous

Reporting options and resources are categorized as *private*, *confidential*, and *anonymous*.

- **"Private"** means that information related to a report under the Policy will only be shared with those individuals who need to know in order to assist in the active review, investigation, or resolution of the report. While not bound by confidentiality, these offices and individuals will be discreet and respect the privacy of all individuals involved in the process. Private options include the Equal Opportunity and Compliance Office, UNC Police, and any other University employee or office that is not designated as a confidential resource.
- **"Confidential"** means that information shared with designated campus or community professionals will only be disclosed with the individual's permission, unless there is a continuing threat of serious harm to the individual or to others or there is a legal obligation to reveal such information (e.g., where there is suspected abuse or neglect of a minor). Confidential resources include the University Ombuds Office, the Gender Violence Services Coordinators, and medical providers in Campus Health Services and Counseling and Psychological Services. Speaking to a Confidential Resource does not constitute making a report to the University.
- **"Anonymous"** means that an individual may share information without disclosing their name and without identifying the other parties involved or requesting any action. Depending on the level of information available about the incident or the individuals involved, the receiving unit's ability to respond to an anonymous report may be limited.

Case 1:23-cv-00041-MR   Document 35-5   Filed 05/08/23   Page 5 of 31

### B.    Confidential Resources

The trained professionals designated below can provide counseling, information, and/or support in a confidential setting. These confidential resources will not share information about a patient/client (including whether that individual has received services) without the individual's permission unless there is a continuing threat of serious harm to the patient/client or to others or there is a legal obligation to reveal such information (*e.g.*, suspected abuse or neglect of a minor).

Confidential resources on campus, including the Gender Violence Service Coordinators and the University Ombuds Office, can provide support and assistance in understanding reporting options and navigating the reporting processes. Individuals may choose to use these resources before deciding whether to report *Prohibited Conduct* to law enforcement or to the University. The Gender Violence Service Coordinators provide support for individuals of all gender identities who have experienced or are experiencing *Sexual Violence, Interpersonal Violence or Sex or Gender-based Harassment*. The University Ombuds Office provides support and advice for anyone affected by an incident or allegation, including *Reporting Parties, Responding Parties*, witnesses, and peers.

Confidential medical services, including counseling and psychological services, are available to students through Campus Health Services. Confidential counseling and psychological services are available to employees through the Employee Assistance Program. Other valuable confidential resources in the community can be found in the *Resources Chart* in section II.E

> **Unsure of what to do? Contact a Confidential Resource:**
>
> - **Gender Violence Services Coordinators**
>   919-962-1343 | gvsc@unc.edu
> - **UNC Ombuds Office**
>   919-843-8204 | dawnoa@unc.edu

### C.    Reporting Options

#### 1.    Law Enforcement

The University strongly encourages all individuals to report potential criminal conduct, including *Sexual Violence, Interpersonal Violence, and Stalking*, to the UNC Police or to another law enforcement agency by calling 911. If the incident occurred off-campus, UNC Police will refer the report to the police department or law enforcement agency in the correct jurisdiction, or individuals may locate the correct police jurisdiction.

A report to law enforcement remains private, but not confidential.  A report to law enforcement does not automatically trigger a criminal investigation. A *Reporting Party* may be able to provide an

"informational report" to law enforcement if they do not wish to pursue a criminal investigation at that time. UNC Police will explain the criminal investigation process and will provide information about the University's resources and complaint process. An individual may choose to pursue both a criminal investigation and a resolution through the University process simultaneously. The processes are not mutually exclusive; an individual may choose to pursue both a report under the Policy and a criminal investigation at the same time. Alternatively, a *Reporting Party* may choose only one of those options or may choose neither option. UNC Police work collaboratively with the Equal Opportunity and Compliance Office and other administrative units to promote campus safety and compliance with state and federal laws.

## 2. University

The University strongly encourages a *Reporting Party* to promptly report *Prohibited Conduct* directly to the Equal Opportunity and Compliance Office so that immediate and corrective action can be taken to eliminate the conduct, prevent its recurrence, and address its effects. Making a report to the University means telling the Equal Opportunity and Compliance Office, or a designated *Responsible Employee*, what happened, in person, by telephone, in writing, by e-mail, electronically, or anonymously. The Report and Response Coordinators in the Equal Opportunity and Compliance Office are trained professionals who are available to receive reports and can provide information to help the Reporting Party make informed decisions about choosing a resolution process, to help make connections to available resources, and to facilitate implementation of interim measures and accommodations. The Report and Response Coordinators can provide assistance and guidance for all affected parties. Individuals may also seek guidance from or report directly to the Title IX Compliance Coordinator or the Director of Equal Opportunity and Compliance. To make a report online, please use the Equal Opportunity and Compliance's online reporting form.

Individuals who share allegations of misconduct with individuals on campus who are designated as *Responsible Employees*, (including staff in the Office of the Dean of Students, the Office of Human Resources, the Academic Personnel Office, and UNC Police), should be aware that those individuals are required by the University to share all details about a report of *Prohibited Conduct* with the Equal Opportunity and Compliance Office. Such reporting enables timely support for all parties and facilitates an effective and consistent institutional response. *Responsible Employees* are employees with administrative or supervisory responsibilities, including but not limited to Deans, Directors, Department Chairs, Coaches, Student Affairs professionals (including Resident Advisors), and faculty who serve as advisors to student groups. Designated Confidential Resources are not *Responsible Employees; Responsible Employees* will safeguard an individual's privacy. For more information about *Responsible Employees*, go Here.

Upon receipt of a report, the Director of Equal Opportunity and Compliance Office or the Title IX Compliance Coordinator, in coordination with the *Response Team*, will make an immediate assessment of the risk of harm to the parties or to the broader campus community and will take steps necessary to address any risks. These steps will include establishing *Interim Measures* to provide for the safety of the parties and the campus community and, where appropriate, referral to the Emergency Evaluation and Action Committee (EEAC) to assess whether any individual poses a serious threat of disruption of the academic process or a danger to themselves, to other members of the University community, or to University property.

Case 1:23-cv-00041-MR   Document 35-5   Filed 05/08/23   Page 7 of 31

The University recognizes that deciding whether to make a report and choosing how to proceed are personal decisions that may evolve over time. At the time a report is made, a *Reporting Party* does not have to decide whether to request any particular course of action. Through a coordinated effort, staff from the appropriate offices provide support to assist each individual in making these important decisions, and consistent with the goal of safety for all community members, these staff will work to respect an individual's preference in determining how to proceed.

### 3. Anonymous Reporting

Any individual may make a report of *Prohibited Conduct* to the University without disclosing one's name (an "anonymous report") and without identifying the *Responding Party* or requesting any action. Depending on the level of information available about the incident or the individuals involved, the University's ability to respond to an anonymous report may be limited or impossible. The Equal Opportunity and Compliance's reporting form can be completed anonymously here.

The Equal Opportunity and Compliance Office will receive the anonymous report and, in consultation with the Response Team and UNC Police, as needed, will determine any appropriate next steps, including individual or community remedies.

A *Reporting Party* can also submit an anonymous report to UNC Police using this link. Other law enforcement agencies may also accept anonymous reports.

### 4. Blind Reports to Law Enforcement

Under North Carolina law enforcement procedures, a *Reporting Party* can submit a "blind report" to UNC Police, which allows a *Reporting Party* to provide information about criminal conduct without having their identity associated with that report for the purposes of law enforcement records. UNC Police can elect to designate a report as a blind report even after a *Reporting Party* has provided their identifying information. Please note that the designation of information as a blind report does not affect UNC Police's obligation to share the information with the Director of Equal Opportunity and Compliance or the Title IX Compliance Coordinator, who will keep the information private. Other law enforcement agencies may also accept blind reports.

### 5. Reporting Considerations: Timeliness and Location of Incident

All individuals, including a *Reporting Party* or witness, are encouraged to report *Prohibited Conduct* regardless of when or where it occurred, as soon as possible to maximize the ability to respond promptly and effectively. The University does not limit the time frame for reporting. If the *Responding Party* is no longer a student at the time of the report, or if the conduct did not occur on campus, in the context of an education program or activity of the University, or have continuing adverse effects on campus or in an off-campus education program or activity, the University may not be able to fully investigate or take disciplinary action against the *Responding Party*. Delay in reporting *Prohibited Conduct* may affect the University's ability to collect relevant evidence or information regarding the alleged conduct. In some cases, the delay may be so significant that the University may not be able to fully investigate or take disciplinary action.

In each instance, the University will still provide any fair and reasonable support and resources to a *Reporting Party* designed to end the *Prohibited Conduct*, prevent its recurrence, and address its effects.

8

The Equal Opportunity and Compliance Office or the Title IX Compliance Coordinator will also help a *Reporting Party* identify external reporting options.

### 6. Amnesty

Any student, including the *Reporting Party* or witness, who voluntarily makes a report or participates in an investigation of *Prohibited Conduct*, and provides full and accurate information relating to the report will not be subject to disciplinary action by the University for their own personal consumption of alcohol or other drugs, or for other behavior that may violate University policies, at or near the time of the incident, provided that any such violations did not harm or place the health or safety of any other person at risk. The Office of the Dean of Students may require a follow-up meeting in which support, resources, and educational counseling options may be mandated for an individual who has engaged in the illegal or prohibited use of alcohol or drugs.

### D.    Other Resources

The University recognizes that *Sexual Violence, Interpersonal Violence,* and other types of *Discrimination* and *Harassment* can have a significant impact on an individual's educational and employment opportunities. Report and Response Coordinators in the Equal Opportunity and Compliance Office can help individuals navigate solutions to the challenges that may arise on campus and in the workplace and connect them to the appropriate assistance. This Comprehensive Resources Chart lists various resources on and off campus to address a variety of needs that may arise, including immigration assistance, financial aid, and legal assistance. Regardless of whether an individual wishes to report to the University or to law enforcement, the University strongly encourages all parties who may be affected by allegations of *Prohibited Conduct,* to contact the Report and Response Coordinators so that they can connect the individuals with resources to support them.  Students may also contact the Office of the Dean of Students for support and connection to resources.

## IV.    PROCEDURAL INFORMATION

### A.    Initial Assessment

When a report is made, the Director of Equal Opportunity and Compliance or the Title IX Compliance Coordinator, with the assistance of the *Response Team*, will conduct an *Initial Assessment*. The assessment will determine whether the alleged conduct would present a potential violation of the Policy and whether further action is warranted based on the alleged conduct.

The first step of the *Initial Assessment* will usually be a preliminary meeting between the *Reporting Party* and the Report and Response Coordinator or designee. In some circumstances, when appropriate, an investigator will meet with the *Reporting Party* and gather information necessary to assist the *Response Team* in conducting a thorough Initial Assessment. The Report and Response Coordinator will first:

- Address any immediate concerns about the physical safety and emotional well-being of the parties;
- Provide the *Reporting Party* with information about:
  - On and off campus resources,

- The available range of *Interim Measures*, and
- The procedural options, including *Voluntary Resolution* and *Investigation*; Notify the *Reporting Party* of the availability of medical services to address any physical and mental health concerns and to preserve evidence;
- If the alleged conduct is criminal in nature, notify the *Reporting Party* of the option to make a report to law enforcement and to be assisted in doing so, as well as the option to decline to report to law enforcement;
- Discuss the *Reporting Party's* expressed preference for manner of resolution and any barriers to proceeding;
- Explain the University's policy prohibiting *Retaliation*; and
- Explain the role of the *Support Person*, *Attorney* and *Non-Attorney Advocate*.

The Report and Response Coordinator or investigator will also gather facts that will enable the Director of Equal Opportunity and Compliance or the Title IX Compliance Coordinator, in consultation with other offices as appropriate, to:

- Assess the nature and circumstances of the allegation;
- Refer the matter to the EEAC for appropriate action;
- Conduct an assessment for potential pattern evidence or other similar conduct;
- Assess the reported conduct for the need to issue a timely warning under federal law; and
- Enter non-identifying information about the report into the University's daily crime log if the conduct is potentially criminal in nature.

In the event the *Responding Party* is notified of the allegations during the *Initial Assessment*, the Report and Response Coordinator, or designee, will provide the *Responding Party* with information about on and off campus resources, the available range of *Interim Measures*, an explanation of the procedural options, including *Voluntary Resolution* and *Investigation*; and the *Policy's* prohibition on *Retaliation*.

Where a *Reporting Party* requests that their name or other identifiable information not be shared with the *Responding Party* or that no formal action be taken, the Director of Equal Opportunity and Compliance or the Title IX Compliance Coordinator will balance this request against the following factors in reaching a determination regarding whether the request can be honored:

- whether the alleged conduct would present a potential violation of the Policy;
- the nature and scope of the alleged conduct, including whether the reported misconduct involves allegations of additional violence and/or the use of a weapon;
- the respective ages and roles of the *Reporting* and *Responding Parties*;
- the power dynamics of the involved parties;
- considerations of fundamental fairness and due process with respect to the *Responding Party* should the course of action include disciplinary action against the *Responding Party*;
- the risk posed to any individual or to the campus community by not proceeding, including the risk of additional violence;
- the risk of retaliation against the *Reporting Party*, witnesses, or other related individuals;
- whether there have been other reports of such misconduct by the *Responding Party*;
- whether the report reveals a pattern of such misconduct at a given location, by a particular group or individual, or through a particular means or method;

- the *Reporting Party's* wish to pursue disciplinary action;
- whether the University possesses other means to obtain relevant evidence; and
- and
- the University's obligation to provide a safe, non-discriminatory, and non-retaliatory environment.

Where possible based on the facts and circumstances, the Director of Equal Opportunity and Compliance or the Title IX Compliance Coordinator will seek action consistent with the *Reporting Party*'s expressed preference for manner of resolution; however, in some circumstances, after considering the factors above, the University may determine that it must move forward to investigate reports in which there appears to be a threat to an individual or to the University as a whole. The University's ability to fully investigate and respond to a report may be limited or impossible if the *Reporting Party* requests that their name not be disclosed to the *Responding Party* or declines to participate in an *Investigation*.

At the conclusion of the *Initial Assessment*, the Director of Equal Opportunity and Compliance or the Title IX Compliance Coordinator will determine the appropriate resolution route. Resolution may include: 1) the initiation of an *Investigation* that may lead to *Adjudication* and disciplinary action, 2) *Voluntary Resolution,* or 3) no further action.

Regardless of the manner of resolution, a *Responding Party* may choose to accept responsibility at any stage in the process.

The Equal Opportunity and Compliance Office has sole authority to conduct investigations and oversee resolutions for reports of *Prohibited Conduct* under the Policy. Any administrator, supervisor, or other individual who is a designated *Responsible Employee* who receives a report, either directly or indirectly, of alleged *Prohibited Conduct* under the Policy, must notify the Equal Opportunity and Compliance Office immediately. An administrator, supervisor, or other individual must not attempt to resolve the report or address the matter without consultation with and assessment by the Director of Equal Opportunity and Compliance or the Title IX Compliance Coordinator. If the report includes allegations that could potentially violate other University policies, the Equal Opportunity and Compliance Office will coordinate with appropriate units to maximize efficiency, minimize disruption, and impart a prompt and appropriate resolution by the University.

The chart below illustrates the procedural options for resolving reports that are brought to the attention of the Equal Opportunity and Compliance Office:



**B.     Voluntary Resolution**

When a *Reporting Party* does not want to move forward with a formal *Investigation*, *Voluntary Resolution* may be an option. *Voluntary Resolution* does not involve an *Investigation* or disciplinary action against a *Responding Party*, and is not appropriate for all forms of conduct under the Policy.

The University retains the discretion to determine when *Voluntary Resolution* is appropriate. If a party requests *Voluntary Resolution*, the Director of Equal Opportunity and Compliance or the Title IX Compliance Coordinator will consider the following factors in assessing that request:

- the nature and scope of the alleged conduct, including whether the reported misconduct involves allegations of violence and/or the use of a weapon;
- the respective ages and roles of the *Reporting* and *Responding Parties*;
- the power dynamics between the involved parties;
- the risk posed to any individual or to the campus community by not pursuing disciplinary action, including the risk of additional violence;
- the risk of retaliation against the parties, witnesses, or other related individuals;
- whether there have been other reports of such misconduct by the *Responding Party*;
- whether the report reveals a pattern of such misconduct at a given location, by a particular group or individual, or through a particular means or method;
- the *Reporting Party's* wish to pursue disciplinary action;
- whether *Voluntary Resolution* would adequately address the *Reporting Party's* concerns and the alleged behavior; and
- the University's obligation to provide a safe, non-discriminatory, and non-retaliatory environment.

The Equal Opportunity and Compliance Office may conduct an initial inquiry to gather sufficient information to assess whether *Voluntary Resolution* is appropriate under these factors. If the Director of Equal Opportunity and Compliance or the Title IX Compliance Coordinator concludes that *Voluntary Resolution* is appropriate, they will work with the *Reporting Party*, sometimes in concert with members of the *Response Team*, to determine a resolution designed to maximize the participating parties' access to all employment, educational, and extracurricular opportunities and benefits at the University and to eliminate a potential hostile environment.

There are two categories of *Informal Resolution*: 1) resolutions that focus on supporting the *Reporting Party* with no participation or involvement by the *Responding Party*, and 2) resolutions that involve a facilitated agreement with the Responding Party.

In resolutions that focus on supporting the *Reporting Party* and do not affect the Responding Party, it may be possible for a *Reporting Party* to maintain anonymity. Such resolutions may include:
- establishing *Interim Measures* that may become permanent, such as changes to work or class schedules or locations;
- conducting targeted or broad-based educational programming or training for relevant groups; and
- providing increased monitoring, supervision, or security at locations or activities where the alleged misconduct occurred.

In resolutions that involve a facilitated agreement with the *Responding Party*, both parties must agree to participate in an *Informal Resolution*. Such resolutions may include:
- facilitating a meeting with the *Responding Party* with the *Reporting Party* present (only when deemed appropriate);
- facilitating a private discussion with the Responding Party about the allegations and discussing solutions for eliminating the alleged behavior and remedying its effects;

- mutually agreed upon parameters of interaction between the parties, including modified housing assignments, agreements for no contact, and/or time or place restrictions to limit interaction; and
- any other remedy that can be tailored to the involved individuals to promote an inclusive and non-discriminatory environment.

The University will not compel either party to participate in any particular form of *Informal Resolution*.

Participation in *Voluntary Resolution* is voluntary, and either party may end this manner of resolution and pursue an *Investigation* and *Adjudication* at any time, including when pursuit of *Voluntary Resolution* is unsuccessful at resolving the report. Similarly, either party may request to end an *Investigation* and pursue *Voluntary Resolution* at any time. In addition, either party may request *Interim Measures* regardless of whether any particular course of action is sought.

As stated above, *Voluntary Resolution* does not result in discipline and is not a disciplinary action. The Equal Opportunity and Compliance Office will maintain records of all reports and conduct addressed through *Voluntary Resolution* to fairly and consistently assess pattern or systemic behavior. The time frame for completion of *Voluntary Resolution* may vary depending on the complexity of the matter, but the University will seek to complete the process within thirty (30) business days of the Equal Opportunity and Compliance Office's determination that *Voluntary Resolution* is appropriate. .

### C. Investigation

Following the *Initial Assessment*, and in consultation with the *Reporting Party*, the University will initiate a prompt, thorough, and impartial *Investigation* of conduct that is a potential violation of the Policy and is not being addressed through *Voluntary Resolution*. The Director of Equal Opportunity and Compliance or the Title IX Compliance Coordinator will oversee the *Investigation*. The *Investigation* is designed to provide a fair and reliable gathering of the facts by a trained and impartial investigator. All individuals, including the *Reporting Party*, the *Responding Party,* and any third party witnesses, will be treated with appropriate sensitivity and respect throughout the *Investigation*. The *Investigation* will safeguard the privacy of the individuals involved in a manner consistent with federal law and University policy.

#### 1. Investigators

The Director of Equal Opportunity and Compliance or the Title IX Compliance Coordinator will assign investigator(s) who have training and experience investigating allegations of *Prohibited Conduct.* The investigator will gather information regarding the alleged conduct. The investigator will then determine if the information gathered establishes that the alleged conduct occurred by a preponderance of the evidence and, if so, whether the conduct constitutes a violation of the *Policy*. A preponderance of the evidence means that it is more likely than not that the conduct occurred.

#### 2. Notice

The Equal Opportunity and Compliance Office will send the *Reporting Party* and the *Responding Party* a written Notice of Investigation, which constitutes the formal charge. This Notice will generally be issued within five (5) business days of receipt of confirmation from the *Reporting Party* of the intent

to proceed with an *Investigation* and/or sufficient information for the University to determine that the report raises a potential issue under Section II (Scope and Applicability) and Section V (Prohibited Conduct) of the Policy. The Notice of Investigation will contain a summary of the allegations or conduct at issue, the range of potential violations under the Policy, the range of potential sanctions, and information about the Policy's prohibition on *Retaliation*. Where appropriate, the Notice of Investigation will also contain notification that expulsion is a potential sanction and that expulsion precludes matriculation at any University of North Carolina constituent institution. Upon receipt of the Notice of Investigation, or at any stage in the process, the *Responding Party* may choose to accept responsibility for the Policy violation.

To the extent permissible and consistent with FERPA and other state and federal law, the parties will receive equitable written, concurrent notice of the completion and/or outcome of all stages of the resolution process, including but not limited to the Investigation, adjudication, and appeal phases.

### 3. Time Frame

Consistent with the goal to provide an inclusive and safe educational and work environment, the Director of Equal Opportunity and Compliance and the Title IX Compliance Coordinator will seek to resolve all reports within one academic semester, depending on when the report is received and will use best efforts to complete an *Investigation* within sixty (60) business days from the issuance of the Notice of Investigation to the *Reporting Party* and *Responding Party.* Business days do not include weekends or University holidays. The time frame for completion of the *Investigation*, *adjudication*, or any designated time frames for required actions under the Policy, may be extended for good cause as necessary to ensure the integrity and completeness of the *Investigation*, to comply with a request from external law enforcement; to accommodate the availability of witnesses; to accommodate legitimate and reasonable delays by the parties; to account for University breaks or vacations; or for other legitimate reasons, including the complexity of the *Investigation*, as evidenced by, for example, the number of witnesses and the volume of information provided by the parties. Should the *Investigation* begin at a time when the sixty (60) day period will extend into official University holidays or academic breaks, the investigator will attempt to proceed as scheduled, but if the *Investigation* cannot proceed due to absences of the parties or material witnesses, the investigation may be stayed until the individuals are available. Any extension of the timeframes, and the reason for the extension, will be shared with the parties in writing. Best efforts will be made to complete the process in a timely manner by balancing principles of thoroughness and fundamental fairness with promptness. The Equal Opportunity and Compliance Office will update the parties periodically on the status of the investigation throughout the investigation process.

### 4. Resources

A Report and Response Coordinator in the Equal Opportunity and Compliance Office will serve as a resource and point of contact for both parties and any witnesses throughout the *Investigation* to answer questions about the process; to connect parties to resources, support, and accommodations; and to monitor and impose *Interim Measures*, as appropriate.

Throughout the process, any participant may have a *Support Person* and one other person, an *Attorney* or *Non-Attorney Advocate*, present at any meeting related to resolution of a report under the Policy.

15

More information about the roles of Support Persons, Attorneys, and Non-Attorney Advocates can be found in § V.B.

### 5. Intersection with Laws or other Policies

If the report includes allegations that could potentially violate other University policies, the Equal Opportunity and Compliance Office may co-investigate with other relevant units to maximize efficiency, minimize disruption, and impart a prompt and appropriate resolution by the University.

Where the University is made aware that there is a concurrent criminal investigation, the Equal Opportunity and Compliance Office will coordinate with law enforcement to prevent any University processes from interfering with the integrity or the timing of the law enforcement investigation. At the request of law enforcement, the University may agree to defer the fact-finding portion of its *Investigation* until after the initial stages of a criminal investigation. The Director of Equal Opportunity and Compliance or the Title IX Compliance Coordinator will nevertheless communicate with the parties regarding resources and accommodations, procedural options, anticipated timing, and the implementation of any necessary *Interim Measures* for the safety and well-being of all affected individuals. The investigator(s) will promptly resume fact-gathering as soon as law enforcement has released the case for review following the initial criminal investigation.

### 6. Evidence Collection

During the *Investigation*, the *Reporting Party* and *Responding Party* will have an equal opportunity to be heard, to submit information, and to identify witnesses who may have relevant information. The investigator(s) will seek to speak separately with the *Reporting Party*, the *Responding Party,* and any other individuals who have information relevant to the determination of responsibility for a Policy violation. As part of the *Investigation*, the investigator(s) may gather or receive information that is relevant to the determination of an appropriate sanction or remedy, including information about the impact of the alleged incident on parties.

The investigator(s) will also gather any available physical or documentary evidence that is relevant to the determination of responsibility under the Policy, including prior statements by the parties or witnesses, any communications between the parties, email messages, social media materials, text messages, and other records as appropriate and available.

All community members, including students, faculty, and other University employees, are expected to cooperate with the Equal Opportunity and Compliance Office in the *Investigation,* as well as the *Adjudication,* of any report to assure fairness and procedural due process. The Equal Opportunity and Compliance Office will request the appearance of persons from the University community who can provide relevant evidence. Both a *Reporting Party* and a *Responding Party* may decline to participate in proceedings under the Policy. In this circumstance, the Director of Equal Opportunity and Compliance or the Title IX Compliance Coordinator will determine whether the *Investigation* and *Hearing* will proceed without the *Reporting Party* pursuant to the factors set out in § IV.B above or without the *Responding Party*. In the absence of the *Reporting Party* or the *Responding Party* participation, the investigator(s) will consider the available evidence in determining whether the preponderance of that evidence establishes a violation of the Policy.

### 7. Relevance and Special Considerations

The investigator(s) has the discretion to determine the relevance of any evidence to the finding of responsibility and may exclude information in preparing the investigation report if the information is irrelevant, immaterial, or more prejudicial than informative.

The investigator(s) may also exclude statements of personal opinion by witnesses and statements as to general reputation for any character trait, including honesty. The investigator(s) will not exclude direct observations or reasonable inferences drawn from the facts.

#### a) Character Evidence

Character evidence is information that does not directly relate to the facts at issue, but instead, reflects upon the reputation, personality, qualities, or habits of an individual. In general, information regarding the character of the *Reporting Party*, the *Responding Party,* or any witness is not relevant to the determination of whether there is a Policy violation.

#### b) Prior Sexual History and/or Pattern Evidence

A party's character or reputation with respect to other sexual activity is not relevant and will not be considered as evidence. Similarly, a party's prior or subsequent sexual activity is typically not relevant and will only be considered as evidence under limited circumstances. Those circumstances include:

##### (1) Pattern Evidence

Evidence of an occurrence or occurrences of sexual or other relevant behavior so distinctive and so closely resembling either party's version of the alleged encounter as to tend to prove a material fact, including whether consent was sought or given, may be admissible. Where there is evidence of a pattern of similar conduct, either before or after the conduct in question and regardless of whether there has been a prior finding of a Policy violation by the *Responding Party*, this information may be deemed relevant to the determination of a Policy violation or assignment of a sanction. The determination of relevance will be based on an assessment of whether the previous or subsequent incident was substantially similar to the conduct cited in the report or indicates a pattern of behavior and substantial conformity with that pattern. Where there is a prior finding of a Policy violation by the *Responding Party* for a similar act of *Prohibited Conduct*, there is a presumption of relevance, and the finding may be considered in making a determination as to responsibility and assignment of a sanction.

##### (2) Prior Sexual History between the Parties

Where there was a prior or ongoing relationship between the *Reporting Party* and the *Responding Party* and the *Responding Party* asserts that *Consent* was sought and given, the prior sexual history between the parties may be relevant to assess the manner and nature of communications between the parties. As noted in other sections of the

Policy, however, the mere fact of a current or previous dating or sexual relationship, by itself, is not sufficient to constitute *Consent*.

### (3)   Prior Sexual History with Other Parties

A party's sexual history with an individual other than the *Reporting Party* or *Responding Party* may be relevant under very limited circumstances to prove intent, motive, absence of mistake, or to explain an injury or physical finding.

### c)   Consolidation of Reports

At the discretion of the University, multiple reports may be consolidated into one *Investigation* or one case before the *Hearing Panel* if the information related to each incident would be relevant and probative in reaching a determination regarding the other incident. This includes matters where the determination has been made that there is relevant *Pattern Evidence* or where the evidence of the other conduct is inextricably intertwined with *Prohibited Conduct* under the Policy. Matters may be consolidated where they involve multiple *Reporting Parties*, multiple *Responding Parties,* or related conduct involving the same parties that would otherwise have been heard under the Honor Code (provided that it does not delay the prompt resolution of conduct under the Policy).

### d)   Impact Statement

The *Reporting Party* and *Responding Party* will be provided the opportunity to submit a written *Impact Statement*. The purpose of the *Impact Statement* is for the parties to provide relevant information about how the alleged conduct has affected their access to educational programs, activities, and opportunities. The *Impact Statement* can also include any mitigating or aggravating factors to be considered for the purposes of determining a sanction as outlined in section IV.F., if applicable.

These written *Impact Statements* will not be considered in the determination of responsibility, and will only be provided to the investigator(s), and at the appropriate stage of the process to the disciplinary authority or *Hearing Panel,* upon a determination that the *Responding Party* violated the Policy for consideration in the determination of the sanction and remedy.

The *Impact Statement* may be submitted to a Report and Response Coordinator or designee at any time in the process, provided that it is received no later than five (5) days after the parties have been given notice of the opportunity to review the *draft Investigative Report.* The parties may submit a supplemental *Impact Statement* to the disciplinary authority or *Hearing Panel* if there is a change in circumstances warranting an updated *Impact Statement*. The *Impact Statements* may be shared with the parties and may be redacted at the discretion of the Director of Equal Opportunity and Compliance, the Title IX Compliance Coordinator, or in accordance with FERPA.

The Director of Equal Opportunity and Compliance or the Title IX Compliance Coordinator may also consider *Impact Statements* from other individuals as appropriate based on the nature and facts of the circumstances and the extent to which the conduct at issue was directed at and created a hostile environment for other community members beyond the

*Reporting Party*.  The Director of Equal Opportunity and Compliance Office or Title IX Compliance Coordinator may limit the submission or use of *Impact Statements*.

### 8.    Review of Draft Investigation Report

At the conclusion of the *Investigation*, the investigator(s) will prepare a written report that summarizes the information gathered, synthesizes the areas of agreement and disagreement between the parties with any supporting information or accounts, and includes an *Investigative Finding* regarding whether the Responding Party violated the Policy.  However, before the report is finalized, the *Reporting Party* and *Responding Party* will be given the opportunity to review a draft *Investigation Report*, which will not include the *Investigative Finding* and may be presented in redacted format.  To safeguard privacy, the parties will not receive an electronic or written copy, nor may they photograph or copy the draft *Investigation Report,* but they will be permitted to take notes on the content.

A *Reporting Party* and *Responding Party* may submit any additional comment or information to the investigator(s) within five (5) business days following the date of the notice of the opportunity to review of the draft *Investigation Report*.  This is the final opportunity for the parties to identify any additional information or witnesses for the investigator(s) to consider.  The investigator(s) may require additional time to incorporate and address any new information provided during this stage. Should the investigator(s) require an extension of time to finalize the investigation report, the parties will be notified in writing simultaneously.

### 9.    Investigative Finding

After incorporating and addressing any additional relevant information from the *Reporting Party* or *Responding Party*, or after the five (5) business day comment period has lapsed without comment, the investigator(s) will make an *Investigative Finding*, by a preponderance of the evidence, regarding whether the *Responding Party* violated the Policy and will recommend a sanction and/or remedy based on the *Investigative Finding*. In reaching these determinations, the investigator(s) will consult with the Director of Equal Opportunity and Compliance, the Title IX Compliance Coordinator, and any other designated administrator who has information relevant to the *Investigation*. The investigator(s) may also seek information from the Office of the Dean of Students regarding prior disciplinary history and UNC Police regarding prior criminal history.  The investigator(s) will use the factors set out in sections IV.F. below to determine a recommended sanction and remedy when applicable.

Both the *Reporting Party* and *Responding Party* will be notified of the *Investigative Finding* and the recommended sanction(s) and/or remedy(ies) in writing at the same time.

### D.    Outcome Conference

Upon issuance of the *Investigative Finding,* and where appropriate, a recommended sanction and/or remedy, each party will have the opportunity to meet, separately, with a Report and Response Coordinator or designee for an outcome conference. The Report and Response Coordinator or designee will review the *Investigative Finding* and, as applicable and permitted by relevant privacy laws, the recommended sanction and/or remedies with the *Reporting Party* and *Responding Party*. During the *Outcome Conference,* the parties will each have an opportunity to review the full *Investigation Report*. The parties will not, however, receive an electronic or written copy, nor may they photograph or copy the *Investigation Report*. The parties will be permitted to take notes on the content.

19

Where there has been an *Investigative Finding* that a Policy violation has occurred, both the *Reporting Party* and *Responding Party* may:

1.     Accept both the *Investigative Finding* and recommended sanction;

2.     Accept the *Investigative Finding*, but request a *Hearing* on the recommended sanction; or,

3.     Request a *Hearing* on the *Investigative Finding* and recommended sanction.

If either party requests a *Hearing*, the matter will be referred to a *Hearing Panel* to determine whether a Policy violation was committed and/or to determine an appropriate sanction.

Where there has been an *Investigative Finding* that there is insufficient evidence to conclude that the *Responding Party* violated the Policy, both the *Reporting Party* and *Responding Party* may:

1.     Accept the *Investigative Finding* (on one or all of the alleged violations); or

2.     Request Administrative Review of the *Investigative Finding* (on one or all of the alleged violations).

The *Reporting Party* and *Responding Party* must communicate their chosen course of action to the Report and Response Coordinator or designee in writing (e.g., email, letter) within five (5) business days of notification of the *Investigative Finding*.

### E.     Adjudication Options

At the conclusion of the *Outcome Conference*, one of the following will occur:

### 1.     Imposition of Final Finding, Sanction, and Remedy

Where both the *Reporting Party* and the *Responding Party* agree to the *Investigative Finding* and any recommended sanction, the outcome will become final. Where there has been an *Investigative Finding* that the *Responding Party* violated the Policy and the *Responding Party* seeks to accept the recommended sanction, the *Responding Party* must indicate in writing[5] the intent to waive the hearing and accept the recommended sanction. The waiver and acceptance must be signed by the student and a designated University official, who must determine that the waiver and acceptance is voluntary and that the charge and sanction have factual support. The Equal Opportunity and Compliance Office will provide a waiver and acceptance form for the *Responding Party's* review and signature. The *Responding Party* may not waive the hearing or accept the recommended sanction by silence or passivity. If the *Responding Party* does not communicate their chosen course of action to the Report and Response Coordinator or designee in writing within five (5) business days of notification of the *Investigation Finding*, the Equal Opportunity and Compliance Office will issue a Notice of Hearing to

---

[5] This requirement is pursuant to the Policy on Minimum Substantive and Procedural Standards for Student Disciplinary Procedures adopted by the Board of Governors, University of North Carolina Policy Manual § 700.4.1.

the *Reporting Party* and the *Responding Party*, and will forward the report for adjudication by the *Hearing Panel*. The finality of the outcome, which is not subject to further appeal or review, will be communicated to the parties, in writing at the same time.

## 2. Administrative Review of an Investigative Finding of No Policy Violation

Where a party requests administrative review of the *Investigative Finding* that there is insufficient evidence to conclude that the *Responding Party* violated the Policy, the *Investigation Report* will be reviewed by a designee of the Vice Chancellor for Human Resources and Equal Opportunity and Compliance. Both the *Responding Party* and the *Reporting Party* will have the opportunity to meet with the reviewer or submit additional information in writing. The designated reviewer will consider all of the information provided and, giving deference to the investigator(s) who interviewed witnesses and reviewed evidence first-hand, will determine whether the outcome of the *Investigation* is clearly erroneous or whether there was material procedural error that affected the outcome of the *Investigation*. The designated reviewer will render a decision in writing to both parties at the same time within ten (10) business days of receipt of the request for review. This timeframe may be extended for good cause provided that both the delay and the reason for the delay are communicated to the parties in writing.

If the designated reviewer finds that the outcome of the investigation is not clearly erroneous or did not result from a material procedural error, the investigator's determination will be final and is not subject to further appeal or review. If the designated reviewer finds that the investigation outcome is clearly erroneous or that there was material procedural error that affected the outcome of the *Investigation*, the reviewer will document the reasons for the decision and will remand the report to the Equal Opportunity and Compliance Office for further review and investigative follow-up.

## 3. Adjudication by a Hearing Panel: Review of an Investigative Finding that the Responding Party Violated the Policy

If the *Responding Party* challenges the *Investigative Finding*, the Director of Equal Opportunity and Compliance or the Title IX Compliance Coordinator will issue a Notice of Hearing to the *Reporting Party* and the *Responding Party* and forward the report for adjudication by the *Hearing Panel*. The *Hearing Panel's* role is twofold: determination that the *Responding Party* violated the Policy by a preponderance of the evidence and, if warranted, imposition of sanctions.

The University is responsible for establishing that the *Responding Party* violated the Policy. At the hearing, the investigator is responsible for and must present sufficient witness and/or documentary evidence to establish the violation. The parties must be given an opportunity to question evidence at the hearing.

## 4. Adjudication by a Hearing Panel: Review of Recommended Sanction Only

Where either the *Reporting Party* or the *Responding Party* requests a hearing only on the recommended sanction, a *Hearing Panel* will be convened for the sole purpose of determining the appropriate sanction.

### F.    Imposition of Sanctions

The Policy prohibits a broad range of behaviors, which are serious in nature. In keeping with the University's commitment to foster an environment that is safe, inclusive, and free of *Prohibited Conduct,* the Policy provides the investigator and *Hearing Panel* with wide latitude in the imposition of sanctions and corrective measures tailored to the facts and circumstances of each report, the impact of the misconduct on the *Reporting Party* and surrounding community, and accountability for the *Responding Party*. The imposition of sanctions and/or corrective measures is designed to eliminate prohibited conduct under the Policy, prevent its recurrence, and remedy its effects, while supporting the University's educational mission and federal obligations. Sanctions and corrective measures may include educational, restorative, rehabilitative, and punitive components.  Some behavior, however, is so egregious in nature, harmful to the individuals involved, or so deleterious to the educational process that it requires severe sanctions, including suspension from the University or expulsion from the UNC System.

In cases that are resolved at the *Outcome Conference* after the *Investigation*, the investigator, in concert with the Response Team, is responsible for determining the appropriate sanction and/or corrective measure(s). In cases that are resolved through a *Hearing Panel*, the *Hearing Panel* is responsible for determining the appropriate sanction and/or corrective measure(s). In reaching this determination, the investigator or *Hearing Panel* may solicit information from the *Reporting Party*, the *Responding Party,* and any other individual who can provide information relevant to a determination regarding potential sanctions. The investigator and *Hearing Panel* may also review any written *Impact Statements* submitted by the *Reporting Party* or the *Responding Party*.

In determining the appropriate sanction and/or corrective measure(s), the investigator and the *Hearing Panel* shall consider the following factors:

- the nature and violence of the conduct at issue;

- the effects of the conduct on the *Reporting Party;*

- the impact or implications of the conduct on the community or the University;

- prior misconduct by the *Responding Party*, including the *Responding Party*'s relevant prior discipline history, both at the University or elsewhere, including criminal convictions;

- whether the *Responding Party* has accepted responsibility for the conduct;

- whether the *Responding Party* demonstrates an understanding of the requirements of the Policy;

- maintenance of a safe and respectful environment conducive to learning;

- protection of the University community; and,

- any other mitigating, aggravating, or compelling circumstances to reach a just and appropriate resolution in each case.

The investigator and the *Hearing Panel* may also consider restorative outcomes that, taking into account the safety of the community as a whole, allow a *Responding Party* to develop insight about their responsibility for the behavior, learn about the impact of the behavior on the *Reporting Party* and the community, and identify how to prevent or change the behavior.

Where the investigator or *Hearing Panel* concludes that a sanction of suspension or expulsion is appropriate, and the *Responding Party* has not already been suspended on an interim basis, the Director of Equal Opportunity and Compliance or the Title IX Compliance Coordinator may submit information to the EEAC to assess whether the *Responding Party* poses a serious threat of disruption of the academic process or a danger to self, to other members of the University community, or to University property. The EEAC may impose an interim suspension or other interim conditions pending the conclusion of any appeal. Where the sanction is something other than suspension or expulsion, the imposition of a sanction will be deferred pending the conclusion of any appeal. If a sanction, including suspension or expulsion, is upheld upon appeal and the decision becomes final, the sanction will be retroactively applied to the date of the Notice of Hearing Outcome. *Interim Measures* in effect for the parties will continue pending the conclusion of any appeal, as appropriate.

## 1. Sanctions that Impact a Student's Status

Sanctions may be imposed individually or in combination. Sanctions that affect a student's status with the University include the following:

**Expulsion**, which must be approved by the Chancellor, means that a student is removed from the University permanently and may not be admitted to any UNC System university unless and until the Chancellor who imposed or approved the sanction (or the Chancellor's successor) concludes on the basis of the former student's petition and any supportive documentation that the individual should be given a new opportunity to pursue higher education within the UNC System.

**Permanent Suspension**, which must be approved by the Chancellor, means that the student is removed from good standing and must leave the University permanently without an expectation that the student may eventually return to the Chapel Hill campus. The student is not barred, however, from seeking admission to another UNC System university, if that university wishes to permit such application following disclosure of the student's disciplinary record at UNC-Chapel Hill. Permanent suspension from the University will remain in effect until the Chancellor who imposed or approved the sanction (or the Chancellor's successor) concludes on the basis of the former student's petition and any supportive documentation that the individual should be given a new opportunity to pursue higher education at the University.

**Suspension for a Definite or Indefinite Period** means that the student is removed from good standing and must leave the University for a definite or indefinite period. This form of suspension anticipates that the student may eventually return if applicable conditions are satisfied. Academic work completed at another institution during a period in which a student is under suspension from the University may not be transferred toward the degree, but applicable health care or insurance benefits may be continued if the health insurance premium has already been paid.

23

**Probation** for a Definite or Indefinite Period, including probation with associated conditions or requirements as set by the investigator or *Hearing Panel*, means that a student may remain at the University but may be required to satisfy specified conditions or requirements, report regularly to a designated administrator, and be barred from holding any office or participating in any activity in which the student represents the University, including athletics or other competitive teams, or from participating in any University-recognized student organizations either within or outside the University community. The sanction of probation prohibits graduation until the period of probation has ended and the student has complied with all requirements.

Expulsion, permanent suspension, suspension for a definite or indefinite period, and probation will be noted on a student's transcript.

### 2.  Corrective Measures

The investigator(s) or Hearing Panel may also consider corrective measures that are not sanctions, but are designed to promote a safe and non-discriminatory educational environment. Such measures may focus on educational and restorative principles that allow a Responding Party or other individuals to develop insight about the relationship between certain behaviors and the prohibitions set out in the Policy, learn about the effects of the behavior on the Reporting Party and the community, and identify how to prevent or change the behavior.

Such corrective measures that may be implemented include, but are not limited to:

**Educational Requirements.** Completion of projects, programs, or requirements designed to help the Responding Party manage behavior and understand why it was inappropriate.

**"No Contact" Orders.** Compliance with orders of no contact that limit access to specific University areas or forms of contact with particular persons.

**Housing Restrictions.** Exclusion from University housing or change in housing arrangements.

In some circumstances, even if the Responding Party is not found responsible for violating the Policy, the EOC may require training or education for the Responding Party, other individuals involved, or for an entire group of students.

### G.  Remedies

When there has been a determination that the *Responding Party* has violated the *Policy*, the University will consider appropriate remedies, considering the findings and unique circumstances of each report. Remedies are measures taken to address the effects of the conduct on the *Reporting Party*, restore the *Reporting Party's* safety and well-being, and maximize the *Reporting Party's* educational and employment opportunities. Such remedies should seek to restore to the *Reporting Party*, to the extent possible, all benefits and opportunities lost as a result of the *Prohibited Conduct*. The Director of Equal Opportunity and Compliance or Title IX Compliance Coordinator will identify long term or permanent remedies for the *Reporting Party* and address any effects of the conduct on the University community.

The Director of Equal Opportunity and Compliance or the Title IX Compliance Coordinator will consider the appropriateness of remedies, including *Interim Measures*, on an ongoing basis to assure the safety and well-being of the parties throughout the process. Long-term remedies may include extending or making permanent any *Interim Measures* or implementing additional measures tailored to achieve the goals of the Policy.  Many of the remedies and supports that a *Reporting Party* might need after a finding of responsibility will have already been provided as *Interim Measures*, including but not limited to academic accommodations, short term counseling, and housing arrangements. The Director of Equal Opportunity and Compliance or the Title IX Compliance Coordinator will, in all cases, consider whether there is a need for additional remedies.

Report and Response Coordinators in the Equal Opportunity and Compliance Office will be available to all parties throughout the resolution process and after its conclusion to connect the parties with on and off campus resources and explore or continue any *Interim Measures* that may be available and appropriate.

### H.    Hearing Process

The *Hearing Process* will generally be completed within twenty-five (25) business days from the date of the request for a *Hearing*. As with all time frames in the *Policy*, this time frame may be extended for good cause with notice to the parties in writing.

#### 1.    Hearing Panel

Upon receipt of a Notice of Hearing, a *Hearing Panel* will be designated to review all relevant information gathered in the *Investigation*. A *Hearing Panel* is comprised of three (3) individuals, selected from a pool of trained individuals. Any individual designated by the University to serve on a *Hearing Panel* must have sufficient training or experience to serve in this capacity. A University student may not serve as a panelist. A *Hearing Panel* member may decline to participate on the basis of an actual conflict of interest, bias, or lack of impartiality. A *Hearing Chair* will conduct and preside over the hearings. The *Hearing Chair* is not a voting member of any *Hearing Panel*, but is available to provide consistency in process, informed understanding of Policy definitions and standards, and guidance as to available sanctions; the *Hearing Chair* will also draft the *Hearing Panel* findings.

#### 2.    Pre-Hearing Meeting

As a first step, the *Hearing Chair* will meet separately with the investigator(s) and each party to resolve pre-hearing concerns. At this pre-hearing meeting, the parties will each have the opportunity to identify the witnesses they wish to call at the hearing; raise any challenge to the composition of the *Hearing Panel* based on bias, conflict of interest, or lack of impartiality; and identify any evolving or new information not previously identified through the *Investigation*. The parties will also have the opportunity to address questions about the process.

Both parties have the ability to challenge a *Hearing Panel* member on the basis of an actual conflict of interest, bias, or lack of impartiality. The request must be submitted in writing or raised no later than the date of the pre-hearing meeting and must clearly state the grounds to support a claim of bias, conflict of interest, or an inability to be fair and impartial. Failure to object prior to the date of the pre-hearing meeting eliminates the possibility of appealing the outcome of the hearing based on the

assertion that a member of the *Hearing Panel* had a conflict of interest, was biased, or lacked impartiality.

Any legal or procedural challenge should be submitted in writing before the hearing.

### 3. Hearing Procedures

The *Hearing* will take place in a closed session. At the *Hearing*, the investigator(s) will be responsible for presenting the evidence supporting the *Investigative Finding* of a Policy violation. However, the *Hearing Panel* will make its own determination by a preponderance of the evidence regarding whether a Policy violation occurred. In reaching a determination, the *Hearing Panel* will solicit information from the investigator(s), the *Reporting Party*, the *Responding Party,* and any witnesses as appropriate to ensure a full assessment of the relevant facts. This information shall be provided in the presence of the parties, unless a party waives their right to participate. If either party or any witness declines to participate, the *Hearing Panel* will consider the available evidence in determining whether the preponderance of that evidence establishes a violation of the Policy. Such evidence may include evidence collected as part of the investigation report, including witness statements, documents, and records, which will be presented by the investigator.

During the hearing, each party may be accompanied by a *Support Person* and one additional person: an *Attorney* or *Non-Attorney Advocate*. Upon request, a party or witness may participate by telephone or videoconference from a different physical location or may request that a visual barrier be placed to limit the individual's exposure to other hearing participants. Questions directed to the parties will be made through the *Hearing Chair*, who will screen them for relevance. Questions may be directed to the investigator. Similarly, the parties have the right to question witnesses; however, the *Hearing Chair* has the discretion to determine that the questions will be made through the *Hearing Chair* in cases where the *Hearing Chair* determines that questioning by the parties will be unduly intimidating or burdensome to a witness. In all such instances, the *Hearing Chair* may require measures to assure the integrity of the process.

The *Hearing Panel* will not review any *Impact Statements* unless a determination of a Policy violation is made. After a consideration of all of the relevant information, the *Hearing Panel* will make a determination by a preponderance of the evidence regarding whether the *Responding Party* violated the Policy. Preponderance of the evidence means that it is more likely than not that the conduct occurred. The *Hearing Panel's* determination must be reached by a majority vote. If so, the *Hearing Panel* will also impose a sanction.

### I. Notice of Hearing Outcome

Within five (5) business days of the conclusion of the Hearing, the University will provide a written Notice of Hearing Outcome to the *Reporting Party* and the *Responding Party* at the same time. The University will also provide written notice, at the same time to both parties, of any change in the Outcome that occurs before the Outcome becomes final.

The Notice of Hearing Outcome will include the finding by the *Hearing Panel* as to whether there is a Policy violation, the rationale for the result, and a brief summary of the evidence on which the decision is based, as appropriate. Where there is a finding of a Policy violation, the *Responding Party* will be informed of any sanctions, the date by which the requirements must be satisfied (if applicable), and the consequences of failure to satisfy the requirements. The *Reporting Party* will be

informed of any sanctions and remedies that directly relate to the *Reporting Party*, including information about the *Responding Party*'s presence on campus (or in a shared class or residence hall), that may help a *Reporting Party* make informed decisions or work with the University to eliminate *Prohibited Conduct* and prevent its recurrence.

The Notice of Hearing Outcome will also include information about the appeal process, including the available grounds for an appeal, the time frame for submitting an appeal, and the name of the Appeals Officer who will be assigned to review any appeal filed. If neither party seeks an appeal within five (5) business days of the Notice of Outcome, any sanction imposed by the *Hearing Panel* will take effect immediately. If a sanction, including suspension or expulsion, is upheld upon appeal and the decision becomes final, the sanction will be retroactively applied to the date of the Notice of Hearing Outcome.

**J.    Appeal/Review of Hearing Outcome**

**1.    Appeal to the University**

The Appeals Officer is an impartial decision-maker who serves as the Chancellor's designee. It is typically a Vice Chancellor. Either party may appeal the Hearing Outcome only on the following grounds:

- A violation of due process;

- Material deviation from the Minimum Substantive and Procedural Standards for Student Disciplinary Procedures adopted by the Board of Governors, University of North Carolina Policy Manual § 700.4.1;

- Newly discovered information has been obtained that was not previously available during the *Investigation* or *Adjudication Processes* through the exercise of due diligence, and this newly discovered information would substantially affect the Outcome.[6]

A party may appeal the portions of the Hearing Outcome that directly relates to that party. Mere dissatisfaction with the Hearing Outcome is not a valid basis for appeal.

The appeal must be submitted in writing to a Report and Response Coordinator or other designated individual in the Equal Opportunity and Compliance Office within five (5) business days of the Notice of Hearing Outcome. The appeal shall consist of a plain, concise, and complete written statement outlining the grounds for appeal and all relevant information to substantiate the basis for the appeal. Receipt of the written appeal will be acknowledged in writing.

The Director of Equal Opportunity and Compliance or Title IX Compliance Coordinator will assess the appeal to determine whether it is timely filed and, if so, whether the appeal is properly framed based on the stated permissible grounds.  If the Director of Equal Opportunity and Compliance

---

[6] The time frame for filing an appeal based on newly discovered information may be extended at the discretion of the Director of Equal Opportunity and Compliance or the Title IX Compliance Coordinator where the evidence could not reasonably have been discovered within the time frame and compelling justification exists for its consideration.

Office or Title IX Compliance Coordinator determines that the appeal does not properly fit within one of the three permitted grounds, the appeal will be denied. The Director of Equal Opportunity and Compliance or Title IX Compliance Coordinator will communicate the decision regarding whether the appeal is properly filed concurrently to both parties within five (5) business days of receiving the appeal.

If the appeal is properly filed, each party will be given the opportunity to review the written appeal and respond to it in writing to the Appeals Officer. Any response by the opposing party must be submitted to the Appeals Officer within five (5) business days from being provided the appeal. If both parties file an appeal, the appeal documents from each party will be considered together in one appeal review process.

In any request for an appeal, the burden of proof lies with the party requesting the appeal, because the Hearing Outcome will be presumed to have been decided reasonably and appropriately. Appeals are not intended to be a rehearing of the matter. The scope of the appeal will be limited only to the stated permissible grounds that have been accepted for review. In most cases, appeals are confined to a review of the written documentation or record of the original hearing and pertinent documentation regarding the grounds for appeal. The Appeals Officer may speak to the investigator(s), the *Hearing Chair*, or the parties, as appropriate. The Appeals Officer will defer to the original *Hearing Panel*, making changes to *Hearing Panel's* findings only where there is clear and material error.

Depending on the basis of the requested appeal, the Appeals Officer may:

- Affirm the Outcome;

- Alter the Outcome;

- Return the matter to the *Hearing Panel* with instructions to reconvene to cure a procedural error or to assess the weight and impact of newly discovered information.

- Where the procedural error cannot be cured by returning the matter to the original *Hearing Panel*, convene a hearing before a newly constituted *Hearing Panel*.

The Appeals Officer will render a written decision on the appeal to both parties within fifteen (15) business days from the date of the submission of all appeal documents. Appeal decisions by the Appeals Officer are final with the exception of cases involving suspension or expulsion that allow for further appeal on specified grounds.

As in all other stages, all designated time frames may be extended for good cause as necessary to ensure the integrity and completeness of the review. Such extension will be communicated concurrently to both parties.

### 2.  Further Review/Appeal in Matters of Suspension or Expulsion

Where the Appeal to the University affirms a Hearing Outcome that includes suspension or expulsion, either party may further appeal the Hearing Outcome to the Board of Trustees on the following grounds:

Case 1:23-cv-00041-MR   Document 35-5   Filed 05/08/23   Page 28 of 31

1) Violation of due process; and,
2) Material deviation from the Minimum Substantive and Procedural Standards for Student Disciplinary Procedures adopted by the Board of Governors, University of North Carolina Policy Manual § 700.4.1.

Appeals to the Board of Trustees must be filed in accordance with The University of North Carolina Board of Trustees Procedures for Appeals.

Where the Board of Trustees affirms the Hearing Outcome, the decision is final and is not subject to further appeal. Consistent with the Code of the Board of Governors of the University of North Carolina system, no appeal to the President or the Board of Governors of the University of North Carolina system is permitted.[7]

### L. Post-Resolution Follow Up

After a sanction or remedy is issued, the Director of Equal Opportunity and Compliance, the Title IX Compliance Coordinator, or a Report and Response Coordinator may periodically contact the parties to ensure the *Prohibited Conduct* has ended, to determine if additional remedies are necessary, and to assure compliance with any sanctions that have been imposed. Any violation by a *Responding Party* of a sanction or *Interim Measure* imposed under the Policy or a failure by a University employee to provide a specified remedy should be reported to the Equal Opportunity and Compliance Office.

The *Reporting Party* and *Responding Party* are encouraged to provide the Equal Opportunity and Compliance Office with feedback about their experience with the process and recommendations regarding ways to improve the effectiveness of the campus' implementation of the Policy.

## V. ADDITIONAL CONSIDERATIONS

### A. Retaliation

*Retaliation* is any adverse action or attempted action that would discourage a reasonable person from engaging in protected activity. Protected activity includes an individual's actual or perceived: (i) participation in the reporting, investigation, or resolution of an alleged violation of this Policy; (ii) opposition to policies, practices, or actions that the individual reasonably believes are in violation of the Policy; or (iii) requests for accommodations on the basis of religion, pregnancy or related medical conditions, or disability. *Retaliation* may include intimidation, threats, coercion, or adverse employment or educational actions. *Retaliation* includes maliciously and purposefully interfering with, threatening, or damaging the academic or professional career of another individual, before, during, or after the resolution of a report of misconduct under this Policy.

---

[7] Chapter V, Section 502 of the Code of the Board of the Governors of the University of North Carolina System.

*Retaliation* may be found even when an investigation determines there is insufficient evidence to substantiate an underlying report. Reports made in good faith, even if the allegations are ultimately determined to be unsubstantiated, are not considered retaliation. Reports found to have been made frivolously or in bad faith may constitute retaliation and/or may be considered in the sanctioning process if an individual is otherwise found responsible for a violation of the *Policy*. *Retaliation* may be committed by the *Responding Party*, the *Reporting Party*, or any other individual or group of individuals.

During the investigation and resolution of alleged violations of this *Policy*, reasonable steps will be taken to protect the *Reporting Party*, the *Responding Party*, and other participants in the reporting, investigation, and resolution process from *Retaliation*. Any individual who engages in *Retaliation* or authorizes, instructs, or permits others to engage in retaliation on their behalf will be subject to prompt and appropriate disciplinary action. Individuals who have a concern about potential or actual *Retaliation* should contact the Director of Equal Opportunity and Compliance or the Title IX Compliance Coordinator for assistance in addressing the concern. If the concern about *Retaliation* involves the Director of Equal Opportunity and Compliance or the Title IX Compliance Coordinator, an individual may contact the Vice Chancellor for Human Resources and Equal Opportunity and Compliance.

### B. Role of the Support Person, Attorney, and Non-Attorney Advocate

At any meeting or hearing related to the resolution of a report under the Policy, the *Reporting Party* or *Responding Party* may have a *Support Person* present. In addition, the parties may have a second person present: an additional *Support Person*, a *Non-Attorney Advocate,* or, at the party's own initiative and expense, an *Attorney*. The parties must provide five (5) business days advance notice to the staff member hosting the meeting (unless the meeting is called on shorter notice) of the name and relationship of any individual who will accompany them to a meeting, so that all parties are aware of who will be present at any meeting. A party's inclusion of a *Support Person*, *Attorney*, or *Non-Attorney Advocate* is at the sole expense of the party.

**Support Person:** A *Reporting Party* and *Responding Party* may choose to be assisted by a *Support Person* of their choice. A *Support Person* is someone who can provide emotional, logistical, or other kinds of assistance. The *Support Person* is a non-participant who is present to assist a *Reporting Party* or *Responding Party* by taking notes, providing emotional support and reassurance, organizing documentation, or consulting directly with the party in a way that does not disrupt or delay the proceeding or meeting. Once chosen by a student to serve as a *Support Person*, the individual may be required to meet with the Hearing Chair in advance of any participation in the proceedings to understand the expectations of the role, privacy considerations, and appropriate decorum. The *Support Person* cannot be a fact witness or provide testimony during any meeting or proceeding.

**Attorney or Non-Attorney Advocate:** A *Reporting Party* and a *Responding Party* may, at their own initiative and expense, be assisted by an *Attorney* or *Non-Attorney Advocate*. The *Attorney* or *Non-Attorney Advocate* may accompany the party to any investigative, administrative, or adjudicative meeting or proceeding under the Policy, including the hearing before the *Hearing Panel*. The *Attorney* or *Non-Attorney Advocate* must meet with the *Hearing Chair* in advance of any participation in the proceedings to understand the expectations of the role, privacy, and appropriate decorum.

In order for an *Attorney* or *Non-Attorney Advocate* to participate in any meeting or proceeding, the *Reporting Party* or *Responding Party* must complete and submit an informational form to the Director of Equal Opportunity and Compliance or the Title IX Compliance Coordinator no later than five (5) business days prior to the meeting or proceeding. The University, its officials, and the members of the *Hearing Panel* will communicate and correspond directly with the party. It is the party's responsibility to communicate and share information with the *Attorney* or *Non-Attorney Advocate*.

The University will prioritize the availability of the parties, witnesses, and *Hearing Panel* members assigned to the matter when determining the date and time for any meeting or proceeding. Throughout the *Investigation* and *Adjudication*, the *Attorney* or *Non-Attorney Advocate* may fully participate in the proceeding to the same extent afforded to the party the *Attorney* or *Non-Attorney Advocate* represents. A party's *Attorney* or *Non-Attorney Advocate* may not delay, disrupt, or otherwise interfere with the Investigation or Adjudication process including the hearing procedures.

### C. External Agreements

The University will not recognize or enforce agreements between the parties outside of these procedures. The University will recognize, however, a lawfully issued protective order under North Carolina law.

### D. Records of Student Discipline and Effect of Withdrawal

The existence of a pending *Investigation* or *Adjudication* under the Policy will be noted as part of a student's transcript. In addition, currently active sanctions of probation, suspension, or expulsion will be noted as part of a student's transcript. In the event that a *Responding Party* chooses to withdraw from the University prior to the resolution of disciplinary charges under the Policy, the *Responding Party*'s transcript will be marked with the notation "Student Withdrew with Disciplinary Charges Pending." In the event of a withdrawal, or where the *Responding Party* declines to participate in proceedings under the *Policy*, the *Investigation* and *Hearing* may proceed without the *Responding Party*. After withdrawing, the *Responding Party* will not be eligible to return to the University until the proceedings under the *Policy* have finally concluded.

Records documenting disciplinary actions brought against students for violation of the *Policy* shall be maintained by appropriate offices, including the Equal Opportunity and Compliance Office and the Division of Student Affairs as part of a student disciplinary record separate from the transcript and will be maintained in accordance with the General Records Retention and Disposition Schedule.

This document was revised April 17, 2020