**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**
**CIVIL ACTION NO: 1:23-CV-00041**

-----------------------------------------------------------------X
JACOB DOE,

                             *Plaintiff*,

        -against-

THE UNIVERSITY OF NORTH CAROLINA
SYSTEM, et al.,


                             *Defendants*.
-----------------------------------------------------------------X


**PLAINTIFF JACOB DOE'S MEMORANDUM OF LAW IN OPPOSITION TO THE**
**<u>UNIVERSITY DEFENDANTS' MOTION TO DISMISS THE COMPLAINT</u>**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ......................................................................................................... 1

STATEMENT OF RELEVANT FACTS ....................................................................... 1

ARGUMENT ................................................................................................................. 1

I.    Legal Standard: Motions to Dismiss ................................................................. 1

II.   Venue is Proper in This District, and Dismissal is Not Warranted ................... 3

     a. Defendant UNC System Resides in This District for Venue Purposes ............... 4

     b. A Substantial Part of the Events or Omissions Giving Rise to the Claim Occurred in This District ........................................................................................... 6

     c. The Remedy for Improper Venue is Transfer, Not Dismissal ............................ 7

III.   Plaintiff Plausibly Alleges a Title IX Claim .................................................... 8

     a. Plaintiff Plausibly Alleges Gender Bias .............................................................. 10

       i. *Pressure from the Federal Government and Student Body*........................... 10

       ii. *Disparate Treatment/Procedural Irregularities All Favoring the Female Complainants and Disfavoring/Prejudicing the Male Respondent*................. 10

       iii. *A Decision Against the Weight of the Evidence* ........................................... 10

       iv. *Patterns of Gender-Biased University Decision-Making*............................ 10

     b. Taken in Their Totality, the Well-Pleaded Fact Allegations Support an Inference of Gender Bias ........................................................................................ 19

     c. Pro-Complainant/Anti-Respondent Bias *Is* Indicative of Gender Bias; and in any Event, Pretext Is Not Appropriate for Determination on the Pleadings ............. 19

       i. *A District Court Should Not Assess Pretext on a Rule 12(b)(6) Motion* ..... 20

       ii. *As the DOE and Title IX Regulations Make Clear, Pro-Complainant/Anti-Respondent Bias Does Indicate Gender Discrimination* ............................... 22

     d. UNC's "Limited Damages" Argument is a Matter for Motions *In Limine*, Not a Rule 12 Motion ................................................................................................. 23

IV.   Plaintiff's State Constitution Claims ................................................................ 24

     a. There Is No Sovereign Immunity for Direct Claims Under the North Carolina State Constitution ................................................................................................ 24

CONCLUSION ............................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ............................................................................................... 2, 9, 20

*Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas,*
134 S. Ct. 568 (2013) ...................................................................................................... 3

*Barajas-Murphy v. Online Learning Consortium, Inc.,*
2019 WL 13044623 (C.D. Cal. Jan. 9, 2019) ............................................................... 5

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) ............................................................................................. 2, 21, 22

*Burger King Corp. v. Rudzewicz,*
471 U.S. 462 (1985) ....................................................................................................... 5

*Cannon v. Charter Commc'ns, LLC,*
No. 3-18-CV-00657 (FDW) (DCK), 2020 WL 3128598 (W.D.N.C. June 12, 2020) (same) .... 3

*Carmona v. Union Cnty. Sheriff's Office,*
No. 3:21-CV-00366-MR, 2022 WL 680218 (W.D.N.C. Mar. 7, 2022) ......................... 25

*Cavallo v. Star Enter.,*
100 F.3d 1150 (4th Cir.1996) ..................................................................................... 8, 10

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,*
467 U.S. 837 (1984) ...................................................................................................... 23

*Corum v. Univ. of N. Carolina Through Bd. of Governors,*
330 N.C. 761 (1992) ..................................................................................................... 25

*Craig ex rel. Craig v. New Hanover Cnty. Bd. of Educ.,*
363 N.C. 334 (2009) ..................................................................................................... 24

*Cunningham v. Daybreak Solar Power, LLC,*
No. 3:22-CV-9-MOC-DCK, 2022 WL 2759074 (W.D.N.C. July 14, 2022) ............... 5, 7

*DeMasters v. Carilion Clinic,*
796 F.3d 409 (4th Cir. 2015) .......................................................................................... 2

*Doe v. Baum,*
903 F.3d 575 (6th Cir. 2018) .............................................................................. 12, 15, 20

*Doe v. Coastal Carolina Univ.,*
359 F. Supp. 3d 367 (D.S.C. 2019) .............................................................................. 11

*Doe v. Columbia Univ.,*
831 F.3d 46 (2d Cir. 2016) .................................................................................. 16, 18, 20

*Doe v. Lynn Univ., Inc.,*
235 F.Supp.3d 1336 (S.D. Fla. 2017) ........................................................................... 12

*Doe v. Marymount Univ.,*
297 F. Supp. 3d 573 (E.D. Va. 2018) ....................................................................... 10, 15

*Doe v. Oberlin Coll.,*
963 F.3d 580 (6th Cir. 2020) .................................................................................... 15, 18

*Doe v. Princeton Univ.,*
30 F.4th 335 (3d Cir. 2022) .......................................................................................... 20

*Doe v. Purdue Univ.,*
928 F.3d 652 (7th Cir. 2019) ............................................................................... 9, 12, 20

Case 1:23-cv-00041-MR   Document 39   Filed 06/22/23   Page 3 of 33

*Doe v. Regents of the Univ. of Cal.,*
   23 F.4th 930 (9th Cir. 2022) ........................................................................... 20

*Doe v. Rollins Coll.,*
   352 F. Supp. 3d 1205 (M.D. Fla. 2019) ......................................................... 12

*Doe v. Univ. of Arkansas - Fayetteville,*
   974 F.3d 858 (8th Cir. 2020) ......................................................................... 12

*Doe v. Univ. of Denver,*
   1 F.4th 822 (10th Cir. 2021) .................................................................... 15, 21

*Doe v. Wake Forest Univ.,*
   No. 1:23-CV-00114, 2023 WL 2239475 (M.D.N.C. Feb. 27, 2023) ............... 19

*Doe v. Washington & Lee Univ.,*
   No. 14-CV-00052, 2015 WL 4647996 (W.D. Va. Aug. 5, 2015) ................... 13

*Does 1-2 v. Regents of the Univ. of Minnesota,*
   999 F.3d 571 (8th Cir. 2021) ......................................................................... 20

*El-Bey v. N. Carolina Dep't of Pub. Safety,*
   No. 5:21-CV-00084-MR, 2021 WL 5056082 (W.D.N.C. Oct. 29, 2021) ........ 25

*Eriline Co. S.A. v. Johnson,*
   440 F.3d 648 n.7 (4th Cir. 2006) ................................................................... 24

*Ford Motor Co. v. Montana Eighth Judicial Dist. Court,*
   141 S. Ct. 1017 (2021) ..................................................................................... 6

*Gebser v. Lago Vista Indep. Sch. Dist.,*
   524 U.S. 274 (1998) ......................................................................................... 8

*Goldberg v. Wharf Constructers,*
   209 F. Supp. 499 (N.D. Ala. 1962) .................................................................. 4

*Goldlawr, Inc. v. Heiman,*
   369 U.S. 463 (1962) ......................................................................................... 7

*Gore ex rel Gore v. Air & Liquid Sys. Corp.,*
   No. 1:15-CV-465, 2016 WL 11680149 (M.D.N.C. June 21, 2016) .................. 8

*Greer Labs., Inc. v. Lincoln Diagnostics, Inc.,*
   No. 5:15-CV-72, 2015 WL 9094844 (W.D.N.C. Dec. 16, 2015) ..................... 3

*Helicopteros Nacionales de Colombia, S.A. v. Hall,*
   466 U.S. 408 (1984) ......................................................................................... 4

*Herrera v. Finan,*
   709 Fed. Appx. 741 (4th Cir. 2017) ............................................................... 24

*Hollander v. American Cyanamid Co.,*
   895 F.2d 80 (2nd Cir.1990) ........................................................................... 22

*In re Bill of Lading Transmission and Processing System Patent Litigation,*
   681 F.3d 1323 (Fed. Cir. 2012) ..................................................................... 21

*Litman v. George Mason Univ.,*
   186 F.3d 544 (4th Cir. 1999) ........................................................................... 9

*McDonnell Douglas Corp. v. Green,*
   411 U.S. 792 (1973) ................................................................................. 21, 22

*Mylan Labs., Inc. v. Matkari,*
   7 F.3d 1130 (4th Cir. 1993) ............................................................................. 3

*Neil v. Wells Fargo Bank, N.A.,*
   596 Fed. Appx. 194 (4th Cir. 2014) ................................................................ 3

*Precept Med. Products, Inc. v. Klus*,
    282 F. Supp. 2d 381 (W.D.N.C. 2003) ............................................................. 4

*Proctor v. Morrissey*,
    97 F.3d 1448 (4th Cir. 1996) ......................................................................... 7

*Republican Party of N. Carolina v. Martin*,
    980 F.2d 943 (4th Cir. 1992) ................................................................... 2, 20

*Rogers v. Jefferson–Pilot Life Ins. Co.*,
    883 F.2d 324 (4th Cir. 1989) ......................................................................... 3

*Rosenberg v. Gould*,
    554 F.3d 962 (11th Cir. 2009) ..................................................................... 22

*Sansotta v. Town of Nags Head*,
    724 F.3d 533 (4th Cir. 2013) ......................................................................... 2

*Schroepfer v. A. S. Abell Co.*,
    138 F.2d 111 (4th Cir. 1943) ....................................................................... 24

*Sheaffer v. Cnty. of Chatham*,
    337 F. Supp. 2d 709 (M.D.N.C. 2004) ........................................................ 25

*Shepard v. Irving*,
    77 F. App'x 615 (4th Cir. 2003) ................................................................... 23

*Sheppard v. Visitors of Va. State Univ.*,
    993 F.3d 230 (4th Cir. 2021) ......................................................................... 9

*Smith v. Healthcare Auth. for Baptist Health*,
    2:20-CV-887-MHT, 2022 WL 857036 (M.D. Ala. Mar. 22, 2022) ...................... 21

*Springs v. Mayer Brown, LLP*,
    No. 3:09CV352, 2011 WL 2004229 (W.D.N.C. May 23, 2011) ......................... 21

*Swierkiewicz v. Sorema N. A.*,
    534 U.S. 506 (2002) ................................................................................ 2, 9

*Torres v. Dye*,
    No. 5:20-CV-00164-MR, 2022 WL 620333 (W.D.N.C. Mar. 2, 2022) ................. 25

*United States v. Diaz*,
    865 F.3d 168 (4th Cir. 2017) ....................................................................... 24

*W. Virginia Chamber of Commerce v. Browner*,
    166 F.3d 336 (4th Cir. 1998) ......................................................................... 7

*Worthy v. City of Phenix, Ala.*,
    930 F.3d 1206 (11th Cir. 2019) ..................................................................... 2

*Wright v. Southland Corp.*,
    187 F.3d 1287, n.5 (11th Cir. 1999) ............................................................. 22

*Xechem, Inc. v. Bristol-Myers Squibb Co.*,
    372 F.3d 899 (7th Cir. 2004) ......................................................................... 2

*Yusuf v. Vassar Coll.*,
    35 F.3d 709 (2d Cir. 1994) ........................................................................... 9

**Rules**

20 U.S.C. § 1681(a) ........................................................................................ 8

28 U.S.C. § 1391(b) .................................................................................... 3, 5

28 U.S.C. § 1391(b)(1) ................................................................................. 6, 8

28 U.S.C. § 1391(b)(2) ..................................................................................... 6

28 U.S.C. § 1391(d) .................................................................................... 4, 5

28 U.S.C. § 1404 ............................................................................................... 8

28 U.S.C. § 1406 ............................................................................................... 7

28 U.S.C. § 1406(a) ........................................................................................... 7

C.F.R. § 106.45(a) ........................................................................................... 23

C.F.R. § 106.45(b)(8) ....................................................................................... 22

Fed. R. Civ. P. 12(b)(3) ..................................................................................... 3

Fed. R. Civ. P. 12(b)(6) ................................................................... 2, 3, 9, 19

Fed. R. of Civ. P. 8(a) ....................................................................................... 1

## INTRODUCTION

Plaintiff respectfully submits this memorandum of law in opposition to the Motion to Dismiss (ECF No. 34, hereinafter the "UNC Motion") filed by Defendants the University of North Carolina System, the Board of Governors of the University of North Carolina, the University of North Carolina at Chapel Hill, and the University of North Carolina at Chapel Hill Board of Trustees (collectively, "UNC" the "UNC Defendants"). Plaintiff properly laid venue in this district, and adequately and plausibly alleges causes of action under Title IX of the Education Amendments of 1972 and the North Carolina State Constitution. The UNC Defendants knowingly engaged in a concerted course of conduct over an extended period of time, which was designed to, and did, deprive Plaintiff of his federal statutory and state constitutional rights and cause maximal damage to his education, reputation, and career prospects. The UNC Defendants were motivated by malice, ill-will, gender bias, and political expedience in presuming Plaintiff guilty as an accused male and relentlessly prosecuting patently fabricated claims against him, in order to counter years of criticism and governmental oversight alleging that UNC did not sufficiently protect women on campus from sexual assault. The UNC Defendants' motion to dismiss should be denied.

## STATEMENT OF RELEVANT FACTS

A detailed statement of facts is set forth in the Complaint (ECF No. 1), which is incorporated herein by reference. Plaintiff provides specific citations to the Complaint as relevant within each argument section *infra*.

## ARGUMENT

### I. Legal Standard: Motions to Dismiss

Under Federal Rule of Civil Procedure 8(a), a complaint need only provide defendants with "fair notice of what [plaintiff]'s claims are and the grounds upon which they rest." *Swierkiewicz*

*v. Sorema N. A.*, 534 U.S. 506, 514–15 (2002).[1] "The Federal Rules of Civil Procedure remain committed to a notice-pleading standard that was adopted when the Rules were first promulgated in 1938." *Sansotta v. Town of Nags Head*, 724 F.3d 533, 548 (4th Cir. 2013). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff does not have to plead evidence or prove his claims, but rather, just allege "enough facts to state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A Rule 12(b)(6) motion "tests the sufficiency of a complaint; importantly, it does *not* resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N. Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (emphasis added). *See also Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004) ("[P]laintiffs need not anticipate and attempt to plead around all potential defenses.").

When reviewing a motion to dismiss, a court does not have to credit "a legal conclusion couched as a factual allegation" (*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); however, it *must* otherwise accept all fact allegations as true and draw all reasonable inferences from the facts in favor of the plaintiff. *DeMasters v. Carilion Clinic*, 796 F.3d 409, 416 (4th Cir. 2015). Accordingly, "when there are [multiple] equally plausible ways to read a complaint, we should adopt the reading that is most favorable to [the plaintiff]." *Worthy v. City of Phenix, Ala.,* 930 F.3d 1206, 1214 (11th Cir. 2019).

The Supreme Court has expressly warned that notice-pleading "does *not* impose a probability requirement at the pleading stage." *Twombly*, 550 U.S. at 556 (emphasis added). To the contrary, a complaint must be allowed to proceed "even if it strikes a savvy judge that actual

---

[1] The Supreme Court expressly reaffirmed *Swierkiewicz* in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

proof of [the alleged] facts is improbable, and that a recovery is very remote and unlikely." *Ibid*.

"Ultimately, a complaint should not be dismissed under Rule 12(b)(6) unless it appears certain that

the plaintiff can prove no set of facts which would support its claim and would entitle it to relief."

*Neil v. Wells Fargo Bank, N.A.*, 596 Fed. Appx. 194, 196 (4th Cir. 2014) (internal quotations

omitted). *See also Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *Rogers v.

Jefferson–Pilot Life Ins. Co.*, 883 F.2d 324, 235 (4th Cir. 1989) ("[A] rule 12(b)(6) motion should

be granted only in very limited circumstances."); *Cannon v. Charter Commc'ns, LLC*, No. 3-18-

CV-00657 (FDW) (DCK), 2020 WL 3128598, at *2 (W.D.N.C. June 12, 2020) (same).

## II.  Venue is Proper in This District, and Dismissal is Not Warranted

On a motion to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3),

district courts "exclusively" examine whether the venue provisions of 28 U.S.C. § 1391(b) are

satisfied. *Greer Labs., Inc. v. Lincoln Diagnostics, Inc.*, No. 5:15-CV-72, 2015 WL 9094844, at

*1 (W.D.N.C. Dec. 16, 2015) (quoting *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of

Texas*, 134 S. Ct. 568, 577 (2013)). If the venue provisions are met, the motion must be denied.

*Greer Labs., Inc*, 2015 WL 9094844, at *1. Pursuant to the federal venue statute,

> A civil action wherein jurisdiction is not founded solely on diversity
> of citizenship may, except as otherwise provided by law, be brought
> only in (1) a judicial district where any defendant resides, if all
> defendants reside in the same State, (2) a judicial district in which a
> substantial part of the events or omissions giving rise to the claim
> occurred, or a substantial part of property that is the subject of the
> action is situated, or (3) a judicial district in which any defendant
> may be found, if there is no district in which the action may
> otherwise be brought."

28 U.S.C. § 1391(b).

In the instant case, venue is proper in this court because at least one defendant (the UNC

System) resides within this district and all defendants reside in this state; additionally, a substantial

part of the acts or omissions giving rise to this action took place within this district. Defendants' motion to dismiss for improper venue should be denied.

a. <u>Defendant UNC System Resides in This District for Venue Purposes</u>

According to 28 U.S.C. § 1391(d), "in a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside *in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction* if that district were a separate State." (emphasis added). As set forth in the Complaint, the UNC System is comprised of, and responsible for the actions of, multiple constituent institutions within this district, including UNC Asheville, Appalachian State University, Western Carolina University, Charlotte University (formerly UNC Charlotte) and all of the community colleges located in this District. (Compl. ¶ 10). The UNC System's numerous ongoing businesses within this district gives rise to personal jurisdiction over the UNC System in this district, which in turn, supports a finding that the UNC System "resides" in this district for venue purposes. 28 U.S.C. § 1391(d).

As this court has noted, "[f]or a court to assert general [personal] jurisdiction, . . . the defendant must have 'systematic and continuous' contacts with the forum." *Precept Med. Products, Inc. v. Klus*, 282 F. Supp. 2d 381, 384 (W.D.N.C. 2003) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984))). The general personal jurisdiction test is manifestly satisfied here; it is hard to conjure up a more "systematic and continuous" relationship than that of multiple university campuses operating within this district during the relevant time period. And the UNC Defendants make no claim that they are *not* engaged in continuous and systematic activity here. *See Goldberg v. Wharf Constructers*, 209 F. Supp. 499, 505 (N.D. Ala. 1962) (denying motion to dismiss for improper venue where defendant "has offered

not even an affidavit to show that it was not doing business in this district"). Thus, Plaintiff satisfies the venue requirements of § 1391(b) because the UNC System resides within this district pursuant to § 1391(d), and all other defendants are residents of North Carolina. (Compl. ¶¶ 10-22).

Defendants' argument that Plaintiff must prove "specific jurisdiction" over a defendant in this district in order to satisfy the venue statute (UNC Mot. at 10) is misplaced. Specific jurisdiction is a test applied only to *out-of-state* defendants for whom general jurisdiction cannot be established; this very point is supported by Defendants' own cited cases. For example, in *Cunningham v. Daybreak Solar Power, LLC*, No. 3:22-CV-9-MOC-DCK, 2022 WL 2759074, at *2 (W.D.N.C. July 14, 2022), the defendants were all out-of-state entities. In *Barajas-Murphy v. Online Learning Consortium, Inc.*, 2019 WL 13044623 (C.D. Cal. Jan. 9, 2019), on which the *Cunningham* decision relied, the defendant was an out-of-state corporation. In *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985), the Court defined the specific jurisdiction analysis as relating to "the requisite level of contact between the *non-resident defendant* and the forum state." *Id.* at 472. Here, all defendants are in-state entities, and general jurisdiction over the UNC System *can* be established, as set forth above. Thus, Plaintiff does not need to establish specific jurisdiction over in-state corporate entities in order to satisfy venue.

In any event, and although not required to do so, Plaintiff does satisfy specific jurisdiction over Defendant UNC System here, because the case "relates to" the UNC System's contacts in this district. Specifically, Plaintiff is challenging his dismissal and preclusion from the entire UNC System and seeking injunctive relief mandating a reversal of this lifetime ban. (Compl. ¶¶ 4, 454, 560, 615, 619, 750). Thus, Plaintiff's claims, pertaining to his status as a student in the UNC System, clearly "relate to" the UNC System's "contacts" of maintaining multiple active universities within this district. This is all that specific jurisdiction requires. *Ford Motor Co. v.*

5

*Montana Eighth Judicial Dist. Court*, 141 S. Ct. 1017, 1026 (2021) (rejecting requirement that cause of action "arose from" defendant's in-forum contacts, noting that jurisdiction may be found as long as the claims "relate to" the contacts). As the Supreme Court has made clear, "we have never framed the specific jurisdiction inquiry as always requiring proof of causation—i.e., proof that the plaintiff's claim came about because of the defendant's in-[forum] conduct." *Ibid.*

      b.  <u>A Substantial Part of the Events or Omissions Giving Rise to the Claim Occurred in This District</u>

In addition to satisfying venue under § 1391(b)(1), Plaintiff can also establish venue here under § 1391(b)(2). Defendants themselves focus heavily on the claims and disciplinary process relating to Jane Roe 4, with the Individual Defendants claiming that *only* the Jane Roe 4 claims are relevant for due process purposes. (UNC Mot. at 6-8; Indiv. Defs.' Mot. at 11-17). As set forth in the Complaint, most of the Jane Roe 4 allegations took place within this district. (Compl. ¶¶ 161–168, 272). Additionally, despite UNC's clear lack of jurisdiction over the Roe 3 and Roe 4 matters, due to the alleged events having occurred off-campus and during school breaks, UNC manufactured evidence that the alleged incidents had "occurred within the context of fraternity-sponsored trips," knowing this information was false and notwithstanding that neither Roe 3 nor Roe 4 had ever claimed this to be the case, in order to improperly extend UNC's jurisdiction to the incidents alleged by Roe 3 and Roe 4, which purportedly occurred in the Western District. (Compl. ¶¶ 278-288).

Furthermore, Plaintiff's enrollment contract with UNC, which essentially gives rise to this entire case, was formed in Burke County, where Plaintiff lived at the time he was offered and accepted admission to UNC (Compl. ¶¶ 27, 214, 752), as was his contract with the Morehead Cain Foundation, which established a contractual relationship between Plaintiff and the Foundation on March 13, 2019, and which was dependent upon his enrollment with UNC. (Comp. ¶ 755).

6

Moreover, the damages Plaintiff has suffered, including his ban from the entire UNC System, reach into this district by virtue of UNC's multiple campuses here. Thus, a substantial portion of the events giving rise to this action occurred within this district.

### c. The Remedy for Improper Venue is Transfer, Not Dismissal

As shown above, Plaintiff meets the venue requirements under multiple provisions of the venue statute; but even if this court finds otherwise, dismissal is still not an appropriate remedy. "Rule 12(b)(3) does not operate as a categorical requirement of dismissal, rather, th[e] court retains broad discretion to transfer the case to a proper venue." *Cunningham*, 2022 WL 2759074, at *3. Transfer, rather than dismissal, is authorized under 28 U.S.C. § 1406(a), "if it be in the interest of justice." *See also Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466–67 (1962) (holding that 28 U.S.C. § 1406 authorizes the transfer of cases where venue is improper, even where the transferor court has no personal jurisdiction over defendant).

When a proper venue can be identified by the transferor court, and in the absence of evidence of deliberate misconduct by Plaintiff in laying venue in the wrong district, courts consistently find that the "interest of justice" is best served by transferring the case so that it can be heard on the merits, rather than dismissing it on a technicality. *Proctor v. Morrissey*, 97 F.3d 1448 (4th Cir. 1996) ("[B]y providing an equitable tool for avoiding, where fairly possible, the procedural impediments of improper venue . . . , § 1406(a) reflects a fundamental policy favoring adjudications on the merits over dismissals on those grounds."). *See also W. Virginia Chamber of Commerce v. Browner*, 166 F.3d 336 (4th Cir. 1998) (where proper venue was identifiable, it was "in the interests of justice and in accord with principles of sound judicial administration to transfer" rather than dismiss); *Cunningham*, 2022 WL 2759074, at *3 ("[W]hen that option [to transfer] is available, courts prefer to transfer cases over dismissing them . . . ."); *Gore ex rel Gore v. Air &*

7

*Liquid Sys. Corp.*, No. 1:15-CV-465, 2016 WL 11680149, at *1 (M.D.N.C. June 21, 2016) (noting "dismissal would serve no real purpose other than to add the additional expense of re-filing the case"); Wright & Miller, *Federal Practice & Procedure* § 3827 (4th ed.) ("In most cases of improper venue, the courts conclude that it is in the interest of justice to transfer to a proper forum rather than to dismiss the litigation.").

In the instant case, Defendants appear to concede that venue would be proper in the Middle District of North Carolina (under § 1391(b)(1), because several defendants reside there), and the Eastern District of North Carolina (under § 1391(b)(1), because defendant Elrod resides there).[2] *See* UNC Mot. at 9–11; Indiv. Defs.' Mot. at 9; ECF No. 32 Exs. 1–7. Thus, in the event this court finds that venue is improper in this district (which it should not), Plaintiff respectfully submits that the interest of justice requires a transfer to a proper venue for adjudication on the merits, rather than a procedural dismissal which will effectuate little more than delay and additional expenses.[3]

### III.    Plaintiff Plausibly Alleges a Title IX Claim

Title IX of the Education Amendments of 1972 states: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Private parties may sue to enforce Title IX. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 281 (1998). A school's acceptance of federal funding constitutes a waiver of Eleventh Amendment immunity for Title IX claims. *Litman v. George Mason Univ.*,

---

[2] Defendants have not made a transfer motion under 28 U.S. Code § 1404 for *forum non conveniens*, and as such, any such argument is prohibited on reply. *Cavallo v. Star Enter.*, 100 F.3d 1150, 1152 n. 2 (4th Cir.1996) (argument raised for first time in reply brief is deemed waived).
[3] Notably, Defendants did not present any evidence, nor raise any argument, pertaining to any kind of deliberate misconduct in laying venue here (UNC Mot. 9-11; Indiv. Defs.' Mot. 9-11). As such, they cannot make such a claim for the first time on reply. *Cavallo v. Star Enter.*, 100 F.3d 1150, 1152 n. 2 (4th Cir.1996) (argument raised for first time in reply brief is deemed waived).

186 F.3d 544, 553–54 (4th Cir. 1999). The UNC Defendants do not deny that they accept federal funds and are therefore subject to suit under Title IX. (Compl. ¶ 14, 699; UNC Mot. 11-23).

While there are many theories under which a plaintiff may plausibly allege a Title IX claim for wrongful discipline—such as the "erroneous outcome" or "selective enforcement" theories espoused in *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994)—the Fourth Circuit has recently adopted a broader approach, finding that erroneous outcome and selective enforcement may be *sufficient* ways to state a Title IX claim, but they are not *necessary*. *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 236 (4th Cir. 2021). Instead, the Fourth Circuit test hews more closely to the text of Title IX: "do the alleged facts, if true, raise a plausible inference that the university discriminated against [plaintiff] on the basis of sex"? *Sheppard*, 993 F.3d at 235 (quoting *Doe v. Purdue Univ.*, 928 F.3d 652, 667–68 (7th Cir. 2019)).

This broad question, requiring only a *plausible inference* of sex discrimination, conforms with the Supreme Court's declaration in *Swierkiewicz* that federal discrimination statutes are *not* subject to a heightened pleading standard: "A requirement of greater specificity for particular claims is a result that must be obtained by the process of amending the Federal Rules, and not by judicial interpretation." 534 U.S. 506, 514–15 (2002) (citation and quotations omitted). *See also Iqbal*, 556 U.S. at 678 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era[.]"). Thus, in order for Plaintiff's Title IX claim to survive a Rule 12(b)(6) motion, he need only present sufficient factual matter to create a *plausible inference* that UNC acted with gender bias when it suspended him pending investigation, found him responsible for sexual misconduct, and sanctioned him. Plaintiff's Complaint manifestly clears this hurdle.

a. <u>Plaintiff Plausibly Alleges Gender Bias</u>

As set forth in the Complaint, Plaintiff plausibly alleges that his sexual interactions with Jane Roes 1-3 were entirely consensual and that he never had any sexual contact with Jane Roe 4 (Compl. ¶¶ 150-218), but that he was wrongfully found responsible for sexual misconduct against Roe 1 and Roe 4 (Compl. ¶¶ 412, 508-09) and such findings were not supportable (Compl. ¶¶ 413-73; 510-20). The UNC Defendants do not challenge, in their moving papers, that Plaintiff plausibly alleges an erroneous outcome. (UNC Mot. 11-20).[4] Thus, the only matter at issue is whether Plaintiff has alleged sufficient facts to create a plausible inference that his mistreatment was caused by gender bias.

Courts in this Circuit have recognized that the following non-exclusive factors, individually or collectively, can plausibly create an inference that an erroneous outcome resulted from gender bias: (i) a school's desire to "demonstrate to the United States Department of Education and/or the general public" that it is aggressively pursuing and punishing sexual assault claims made by women/against men (*Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 768 (D. Md. 2015)); (ii) an investigator or adjudicator's adherence to, or embrace of, gender stereotypes (*Doe v. Marymount Univ.*, 297 F. Supp. 3d 573, 585-86 (E.D. Va. 2018)); (iii) a disciplinary process wherein the complainant was treated better, or given more opportunities/benefits, than respondent (*Marymount Univ.*, 297 F. Supp. 3d at 586); (iv) an investigator/adjudicator's "failure to consider evidence that supported [respondent]'s claims and refuted [complainant']s allegation, including the fact that [complainant] sent friendly text messages to [respondent] shortly after he allegedly assaulted her" (*ibid.*); (v) "The investigative team's refusal to make any effort—despite

---

[4] Having failed to raise the question of erroneous outcome in their moving brief, UNC Defendants have waived any such claim for purposes of this motion. *Cavallo v. Star Enter.*, 100 F.3d 1150, 1152 n. 2 (4th Cir. 1996).

[respondent]'s repeated requests that they do so—to obtain evidence that would refute allegations made by [complainant]" (*ibid.*); (vi) the investigator/adjudicator crediting "implausible" allegations of the complainant over the reasonable claims of the respondent and witnesses to the contrary (*ibid.*); (vii) pro-complainant/anti-respondent bias (*ibid.*); (viii) statements and actions by the college indicating it was aware of, and actively responding to, criticism of its handling of sexual assault claims, including implementing policies to better serve complainants (*ibid.*); (ix) allegations that a school "created an environment in which an accused male student is effectively denied fundamental due process by being prosecuted . . . under . . . a presumption of guilt" (*Doe v. Coastal Carolina Univ.*, 359 F. Supp. 3d 367, 376 (D.S.C. 2019));[5] and (x) patterns of decision-making that favor female complainants or disfavor male respondents (*Coastal Carolina Univ.*, 359 F. Supp. 3d at 376-77).

As set forth below, Plaintiff's Complaint alleges precisely the sort of facts consistently found by courts to create a plausible inference of gender bias for Rule 12 purposes. UNC's motion to dismiss the Title IX claim should be denied.

### i. *Pressure from the Federal Government and Student Body*

Plaintiff's Complaint alleges substantial pressure from the federal government, as well as the UNC student body, to aggressively pursue sexual misconduct claims made by women, against men. This includes multiple, highly publicized cases where female students alleged that UNC responded insufficiently to their reports of sexual misconduct, as well as pressure from the federal

---

[5] As the court in *Coastal Carolina* noted, the precise statistics of university disciplinary outcomes by gender is non-public information within the exclusive control of university defendants, which plaintiffs cannot reasonably be expected to obtain and produce pre-discovery in order to present a plausible claim of gender bias. Rather, an "information and belief" allegation that the university's disciplinary processes largely result in harsher outcomes for male respondents is a sufficient factual allegation to allege gender bias. *Coastal Carolina Univ.*, 359 F. Supp. 3d at 377.

government, at the risk of losing federal funding, to tilt the disciplinary process in favor of complainants, who are mostly women. The Complaint further sets forth UNC's massive, $1.5 million settlement payment to OCR, made just one year prior to the Jane Roes' filing of their complaints, which responded to a report that found UNC failed to properly respond to the female complainants' reports of sexual misconduct (and which settlement included continued monitoring by OCR through the period encompassing the Jane Roes' complaints). Collectively, this provides more than sufficient circumstantial evidence that UNC was motivated, at least temporarily, to favor female accusers over male respondents, in order to avoid further scrutiny and federal fines/settlements. *See* Compl. ¶¶ 622-44 (2011 Dear Colleague Letter and related activity created pressure to tilt scales in favor of complainants/women); Compl. ¶¶ 650-59, 662-671, 682-84 (History of issues at UNC/student protests/media attention specific to UNC); Compl. ¶¶ 660-61, 672-681, 684-696 (OCR investigation, resolution agreement).

In *Doe v. Univ. of Arkansas - Fayetteville*, 974 F.3d 858 (8th Cir. 2020), the Eighth Circuit held that external pressure on the school to better protect female students on campus from sexual assault was one factor plausibly indicating gender bias. *Id.* at 865-66. *See also Doe v. Baum*, 903 F.3d 575, 586 (6th Cir. 2018) (public pressure "provides a backdrop that, when combined with other circumstantial evidence of bias in Doe's specific proceeding, gives rise to a plausible claim."); *Doe v. Purdue Univ.*, 928 F.3d 652, 668 (7th Cir. 2019) (an unsupportable disciplinary decision, combined with allegations about the DCL and two OCR investigations at Purdue, plausibly alleged gender bias); *Doe v. Rollins Coll.*, 352 F. Supp. 3d 1205, 1210-11 (M.D. Fla. 2019) (flawed investigation plus "campus scrutiny over its treatment of sexual assault complaints by female students"); *Doe v. Lynn Univ., Inc.*, 235 F.Supp.3d 1336, 1340–42 (S.D. Fla. 2017) (doubtful outcome plus allegations that university was reacting to "pressure from the public and

the parents of female students" to punish males); *Doe v. Washington & Lee Univ.*, No. 14-CV-00052, 2015 WL 4647996, at *10 (W.D. Va. Aug. 5, 2015) (allegations that university had "a practice of railroading accused students," plus pressure from the OCR).

UNC argues, preposterously, that Plaintiff's well-pleaded factual allegations about extensive federal and student body pressure placed on UNC to aggressively pursue sexual assault claims made by women are irrelevant, because there is no proof that UNC was *aware* of such activities. (UNC Mot. 14). In fact, UNC was not only aware of, but *actively responded to* much of this criticism and increased scrutiny, which included: petitions directed to pertinent UNC officials, news articles quoting UNC officials, a national movement/widely publicized documentary focusing on two female UNC students who claimed their sexual misconduct complaints were mishandled by UNC, statements put out by UNC addressing the criticism, and of course, UNC's participation in, and *payment of over a million dollars* in settlement of, a multi-year OCR investigation in which it was concluded that UNC failed to adequately respond to the female student complainant's claims of sexual misconduct. (Compl. ¶¶ 650-96). UNC's argument about public pressure defies reality as well as ignores the extensive facts alleged in the Complaint, and should be disregarded. Likewise, UNC's claim that the Complaint merely identifies generic pressure applicable to all "all universities" (UNC Mot. 16) is patently wrong. The Complaint alleges extensive UNC-specific criticism, protests, news articles, and OCR scrutiny.

### ii. Disparate Treatment/Procedural Irregularities All Favoring the Female Complainants and Disfavoring/Prejudicing the Male Respondent

Plaintiff's Complaint alleges substantial actions by UNC that inexplicably favored the female students and disfavored Plaintiff. These allegations include: a one-sided investigation, with investigators asking leading questions to the female complainants to induce testimony that would support a violation, while aggressively interrogating Plaintiff to try and create inconsistencies/twist

the facts to their preconceived notion of Plaintiff's guilt (Compl. ¶¶ 442, 490, 715); investigators deliberately *not* seeking out highly relevant and exculpatory evidence from the female complainants, but demanding documents and evidence from plaintiff even before his first interview (Compl. ¶¶ 441, 443, 607, 716); the investigators including highly prejudicial and non-evidentiary material about Plaintiff in investigation reports and permitting same to be presented at Plaintiff's hearings, despite having *expressly agreed* to redact such inflammatory "character evidence" until the sanctioning phase, all while refusing to allow into the record evidence damaging to the Jane Roes' credibility under the guise that it was "character evidence" (Compl. ¶¶ 367-68, 378-82, 502, 517-20, 739-40); UNC employees *fabricating* the number and nature of claims against Plaintiff, inventing new violations out of thin air, and withholding crucial, exculpatory information, in part to ensure that the EEAC would not overturn Plaintiff's interim suspension and that he would not have an adequate opportunity to argue for reinstatement (Compl. ¶¶ 261-65, 311-330, 719); UNC hearing officers stopping Plaintiff's advisor mid-cross-examination so that Jane Roe 1, who had just been caught in numerous demonstrable lies, could leave the hearing, and then permitting a licensed attorney to testify on Jane Roe's behalf, improperly bolstering her claims and utterly defeating the purpose of cross-examination (Compl. ¶¶ 370-72, 401-06, 422, 592-95, 730); UNC permitting Jane Roe 1's attorney to unilaterally and materially change the date of the alleged incident at the hearing, without notice, after months of UNC consistently stating the date of the alleged incident as November 19 and focusing the entire investigation on that date (Compl. ¶¶ 731-34); and in numerous instances, withholding or refusing to seek out exculpatory evidence, in violation of relevant Title IX regulations and UNC's own policies. (Compl. ¶¶ 720-23).

As many courts have acknowledged, procedural irregularities such as those identified above, when combined with other allegations such as federal pressure to aggressively pursue sexual misconduct claims, are sufficient to support a Title IX claim and overcome a motion to dismiss. *See, e.g.*, *Doe v. Oberlin Coll.*, 963 F.3d 580, 586–88 (6th Cir. 2020) ("[Plaintiff had] amply stated a claim for sex discrimination" where there were "clear procedural irregularities," "the Department of Education's Office of Civil Rights was engaged in a systemic investigation of the College's policies," and the "facts of the case cast . . . doubt on the accuracy of the disciplinary proceeding's outcome."); *Doe v. Baum*, 903 F.3d 575, 585-87 (6th Cir. 2018); *Doe v. Marymount Univ.*, 297 F. Supp. 3d 573, 584 (E.D. Va. 2018); *Cf. Doe v. Univ. of Denver*, 1 F.4th 822, 832-34 (10th Cir. 2021) (substantial procedural irregularities plus minimal additional indicia of gender bias sufficient to overcome summary judgment motion).

UNC argues that Plaintiff's factual allegations showing consistent and gratuitous preferential treatment to the female students (going well above and beyond UNC's policies, such as permitting Jane Roe 1's attorney *to testify in her place* at the hearing) do not plausibly indicate gender bias, because Plaintiff and the female complainants were not "similarly situated"—which UNC indicates would require a female respondent accused of the same type and number of misconduct allegations as Plaintiff. (UNC Mot. 13). However, no such precise comparator requirement exists under Title IX; indeed, it would be virtually impossible for any male Title IX plaintiff to make out such facts pre-discovery, because (i) female sexual misconduct respondents are extremely rare in general, and (ii) UNC does not publicly disclose its disciplinary outcomes by gender. UNC's argument confuses the standard for an equal protection claim—which does generally require a similarly situated comparator—with the broader and more lenient standard of alleging circumstantial evidence of bias required under Title IX. Under the indulgent Rule 12

standard, evidence that a female student was consistently treated preferentially to a male student does support an inference of gender bias under Title IX. *Marymount Univ.*, 297 F. Supp. 3d at 586.

UNC also asserts that no adverse inference can be drawn from its preferential treatment of the female complainants versus Plaintiff, because its policies allow for the exercise of discretion on certain matters. (UNC Mot. 18). UNC overlooks the fact that the *manner* in which it exercises discretion can, in fact, imply gender bias. For example, UNC admitted that, after Jane Roe 1 withdrew her complaint, it would be unable to gather sufficient evidence to evaluate two claims of sexual misconduct made by Jane Roe 1; but nonetheless, UNC refused to dismiss all charges and insisted on pushing forward with a third claim that was *materially indistinguishable* from the dismissed claims (in terms of the university's ability to gather relevant evidence, since all three events took place in private, with no witnesses). (Compl. ¶¶ 267-71, 277).

UNC's refusal to dismiss a complaint that the complainant herself had abandoned *and* that the university essentially acknowledged it could not gather sufficient evidence for without her, is not merely a dispassionate exercise of discretion; it is an *abuse* of discretion indicating a presumption of male guilt and a deliberate plan to aggressively pursue all complaints brought by women against men, regardless of the attendant facts and circumstances. UNC's motive in such a discriminatory exercise of discretion, of course, is to counter years of criticism and a massive OCR settlement for UNC's purported failure to pursue such claims in the past, particularly given the ongoing monitoring period that included the Jane Roes' complaints. *Doe v. Columbia Univ.*, 831 F.3d 46, 57 (2d Cir. 2016) ("[I]t is entirely plausible that the University's decision-makers and its investigator were motivated to favor the accusing female over the accused male, so as to protect themselves and the University from accusations that they had failed to protect female students from sexual assault.").

### iii. A Decision Against the Weight of the Evidence

Plaintiff's Complaint alleges the responsibility findings UNC issued in the Roe 1 and Roe 4 cases were substantially against the weight of the evidence and resulted from irrational, indefensible reasoning that point to gender bias. By way of example, the Jane Roe 1 Hearing Panel decided that Plaintiff was responsible for a sexual assault that Jane Roe 1 never actually described or was sure even took place, purportedly because Jane Roe 1 was more credible than Plaintiff. In making these respective credibility determinations, the Hearing Panel incredibly concluded that Jane Roe's admission at the hearing that she fabricated her claims about her first sexual encounter with Plaintiff —which admission only came about because she was *inextricably caught in the lie on cross-examination*, and not remotely because she had some ethical compulsion to come clean— *enhanced* her credibility. The Hearing Panel likewise concluded that Jane Roe 1's "witness" (there were no actual witnesses to the alleged incident) contradicting Jane Roe 1's claims also *enhanced and supported* the girls' credibility. These conclusions are plainly the *opposite* of what the evidence calls for. At the same time, the Hearing Panel drew the reverse conclusions about Plaintiff's credibility, declaring that he *lacked* credibility because of a (fabricated, non-existent) "discrepancy" in when Plaintiff first learned about the notion of sexual breath-play. The Hearing Panel's deliberate refusal to meaningfully examine the female students' credibility, while going out of its way to create fake discrepancies out of thin air for the purpose of discrediting Plaintiff, plausibly indicates a pro-female, anti-male bias. (Compl. ¶¶ 418-33, 467-73).

The Complaint also alleges that the investigators refused to gather relevant, exculpatory evidence, and the decision-makers refused to take into consideration the female students' refusal to produce evidence, their misrepresentations of evidence that Plaintiff submitted, and their motives for bringing the claims together in the first place, as well as documentary evidence

produced by Plaintiff that seriously undercut—if not directly disproved—the female accusers' claims. Additionally, the Jane Roe 4 hearing was overseen by an individual who was admittedly not familiar with or appropriately trained on UNC's sexual misconduct policies, who then proceeded to make baseless admissibility decisions not supported by the relevant policies. (Compl. ¶¶ 412-17, 434-73, 492-520, 727, 735-37, 739-44). Ultimately, Plaintiff was convicted in the Jane Roe 4 case based upon a purported contemporaneous disclosure made by Roe 4 to her friend Sara Poe, a copy of which was never provided to Doe. Further, as neither Roe 4 nor Sara Poe appeared for the hearing, Doe was unable to question either one about this dubious evidence. (Compl. ¶¶ 513-15, 741-43).

"[W]hen the degree of doubt [of the accuracy of the decision] passes from articulable to grave, the merits of the decision itself, as a matter of common sense, can support an inference of sex bias." *Doe v. Oberlin Coll.*, 963 F.3d 580, 588 (6th Cir. 2020); *see also Purdue*, 928 F.3d at 669; *Columbia Univ.*, 831 F.3d at 57 ("When the evidence substantially favors one party's version of a disputed matter, but an evaluator forms a conclusion in favor of the other side (without an apparent reason based in the evidence), it is plausible to infer . . . that the evaluator has been influenced by bias."). Such is the case here.

### iv. Patterns of Gender-Biased University Decision-Making

Last but not least, Plaintiff's Complaint alleges that "UNC has engaged in a pattern of unfair investigations and adjudications resulting in serious sanctions being imposed upon male students, while not making comparable efforts with respect to allegations of sexual violence and abusive conduct made against female/non-male students." (Compl. ¶ 747). UNC counters that Plaintiff's argument is undercut by the not-responsible findings on some of the Jane Roes' claims. (UNC Mot. 20). However, as set forth in the Complaint, Plaintiff was initially found responsible

on all of the Jane Roe 3 claims as well as all of the Jane Roe 4 claims, by the same biased investigators who conducted the Jane Roe 1 investigation. (Compl. ¶¶ 362-64). This conduct ensured that Plaintiff would be ultimately found responsible for at least *some* number of violations and that UNC could then impose the harshest sanction possible. That Plaintiff was ultimately vindicated on a handful of claims does not undermine his argument that UNC deliberately manipulated the process to ensure *at least* one responsibility finding and to impose the harshest sanction possible, a permanent expulsion from the entire UNC System.

      b. <u>Taken in Their Totality, the Well-Pleaded Fact Allegations Support an Inference of Gender Bias</u>

As set forth above, Plaintiff has alleged extensive circumstantial evidence that UNC's erroneous outcomes in the Jane Roe 1 and Jane Roe 4 matters were based on gender, precluding dismissal at this stage. In fact, earlier this year, the Middle District of North Carolina found that the very same type of facts and circumstances would have "**no difficulty**" clearing the Rule 12(b)(6) plausibility hurdle. *Doe v. Wake Forest Univ.*, No. 1:23-CV-00114, 2023 WL 2239475, at *6–7 (M.D.N.C. Feb. 27, 2023) (allegations of federal pressure to support complainants, delayed notice to respondent of the allegations/charges against him, leading questions from the investigator to the female complainant, limitations on respondent's cross-examination of complainant, differential treatment of female complainant and male respondent at the hearing, and weight of the evidence in respondent's favor, collectively plausibly indicate gender bias).

      c. <u>Pro-Complainant/Anti-Respondent Bias *Is* Indicative of Gender Bias; and in any Event, Pretext Is Not Appropriate for Determination on the Pleadings</u>

UNC posits that, if anything, its conduct resulted from pro-complainant/anti-respondent bias or a general desire to support sexual assault survivors/pursue sexual assault claims on campus,

which it asserts is a gender-neutral bias exempt from punishment under Title IX. (UNC Mot. 13-15). However, there are two fatal flaws to this argument. First, the question of alternative explanations is a matter addressed to the burden of proof and the evidence, and is not appropriate for resolution on a Rule 12 motion. Second, even if this court were inclined to weigh and choose among various plausible explanations for UNC's misconduct (which it should not), the Department of Education has unequivocally stated that pro-complainant, anti-respondent bias *is* indicative of gender discrimination in violation of Title IX.

### i. A District Court Should Not Assess Pretext on a Rule 12(b)(6) Motion

As set forth in Section I, *supra*, the court's task on a motion to dismiss is to presume the truth of the factual allegations, draw all reasonable inferences in the plaintiff's favor, and determine only whether such presumed facts and inferences make the claims "plausible"—*not* "convincing", or even "likely." The bar is plausibility and nothing more. The court does not engage in fact-finding. *Republican Party of N. Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

As the Second Circuit has explained, "*Iqbal* does not require that the inference of discriminatory intent supported by the pleaded facts be *the most plausible* explanation of the defendant's conduct. It is sufficient if the inference of discriminatory intent is plausible." *Doe v. Columbia Univ.,* 831 F.3d 46, 57 (2d Cir. 2016). *See also Doe v. Regents of the Univ. of Cal*., 23 F.4th 930, 932 (9th Cir. 2022) ("[D]iscrimination need not be the only plausible explanation or even the most plausible explanation for a Title IX claim to proceed."); *Doe v. Princeton Univ.*, 30 F.4th 335, 344 (3d Cir. 2022) (same); *Does 1-2 v. Regents of the Univ. of Minnesota*, 999 F.3d 571, 579 (8th Cir. 2021) (same); *Doe v. Baum,* 903 F.3d 575, 587 (6th Cir. 2018) ([A]lternative explanations [for the University's conduct] are not fatal to [Plaintiff]'s ability to survive a Rule 12(b)(6) motion."); *Purdue*, 928 F.3d at 670 ("To be sure, [plaintiff] may face problems of proof,

and the factfinder might not buy the inferences that he's selling. But his claim should have made it past the pleading stage."). *See also In re Bill of Lading Transmission and Processing System Patent Litigation*, 681 F.3d 1323, 1340 (Fed. Cir. 2012) ("Nothing in *Twombly* or its progeny allows a court to choose among competing inferences [to dismiss a complaint,] as long as there are sufficient facts alleged to render the non-movant's asserted inferences plausible."); *Smith v. Healthcare Auth. for Baptist Health*, 2:20-CV-887-MHT, 2022 WL 857036, at *3 (M.D. Ala. Mar. 22, 2022) (declining to dismiss discrimination complaint despite defendant's purported non-discriminatory explanation for its conduct). *Cf. Doe v. Univ. of Denver*, 1 F.4th 822, 836 (10th Cir. 2021) (declining to decide whether defendant's conduct was motivated by anti-male bias or merely anti-respondent bias, even at the summary judgment stage, as "it should be up to a jury to determine whether the school's bias was based on a protected trait or merely a non-protected trait that breaks down across gender lines").

Indeed, the Supreme Court long ago recognized the inherent difficulty of proving a defendant's state of mind in discrimination cases, when it created the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). As this court noted over a decade ago:

> Because [discrimination defendant]s rarely leave a paper trail—or "smoking gun"—attesting to a discriminatory intent, disparate treatment plaintiffs often must build their cases from pieces of circumstantial evidence which cumulatively undercut the credibility of the various explanations offered by the [defendant]. **Such determinations are, generally speaking, most competently and appropriately made by the trier of fact**.

*Springs v. Mayer Brown, LLP*, No. 3:09CV352, 2011 WL 2004229, at *2–3 (W.D.N.C. May 23, 2011) (emphasis added) (quoting *Hollander v. American Cyanamid Co*., 895 F.2d 80, 84

–85 (2nd Cir.1990)). *See also*, *Wright v. Southland Corp*., 187 F.3d 1287, 1290–92, n.5 (11th Cir. 1999) (noting difficulty of proving state of mind and discussing *McDonnell Douglas*).

Thus, because discrimination plaintiffs are unlikely to possess direct evidence of defendant's state of mind—particularly *pre-discovery*—a district court may not simply declare that some potential, *unproven* non-discriminatory explanation for the defendant's misconduct is more believable than gender-bias (and that as a result, gender bias is not plausible). A court's weighing of one proffered explanation over another, on a Rule 12 motion, precisely equates to imposing a probability requirement at the pleading stage, which the Supreme Court has expressly prohibited. *Twombly*, 550 U.S. at 556. *See also Rosenberg v. Gould*, 554 F.3d 962, 965 (11th Cir. 2009) (describing the need to allege evidence of unlawful intent that is "at least as compelling as any opposing inference" as a **heightened pleading standard**).

> ii. *As the DOE and Title IX Regulations Make Clear, Pro-Complainant/Anti-Respondent Bias Does Indicate Gender Discrimination*

Even if this court were to accept UNC's invitation to consider its conduct as most likely indicative of "pro-complainant" bias, Plaintiff's Title IX claim should still survive. As the Department of Education expressly declared, specifically in the context of Title IX: "any school that uses a system biased toward finding a student responsible for sexual misconduct also **commits discrimination**." Press Release, Secretary DeVos Prepared Remarks on Title IX Enforcement (Sept. 7, 2017), *available at* https://www.ed.gov/news/speeches/secretary-devos-prepared-remarks-title-ix- enforcement. The 2020 revised Title IX regulations likewise support an inference that anti-respondent bias indicates gender bias. *See* 34 C.F.R. § 106.45(b)(8) (permitting appeals where the "decision-maker had a . . . bias for or against complainants or respondents generally"); *see also* Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 85 Fed. Reg. 30026, 30051 (May 19, 2020)

https://www.govinfo.gov/content/pkg/FR-2020-05-19/pdf/2020- 10512.pdf ("[T]o clarify that §

106.45(a) applies as much to complainants as to respondents, the final regulations . . . retain the

provision's statement that how a recipient treats a complainant, or a respondent, may constitute

sex discrimination under Title IX."). *See also, generally, Chevron U.S.A., Inc. v. Natural

Resources Defense Council, Inc.*, 467 U.S. 837 (1984) (courts should defer to government

agency's interpretation of statutes it administers).

> Thus, UNC's claim that its conduct can be explained by purportedly gender-neutral pro-

complainant bias, and therefore Plaintiff fails to plausibly allege gender bias, must be rejected.

> d. <u>UNC's "Limited Damages" Argument is a Matter for Motions *In Limine*, Not a Rule 12 Motion</u>

> UNC admits in its motion that Plaintiff is entitled to at least some forms of his requested

relief should he succeed on his Title IX claim. (UNC Mot. 22-23) (acknowledging that Plaintiff

may seek injunctive relief under Title IX and specifically in this case).[6] As such, any argument

regarding the potential limitation of damages is premature. UNC admits that Plaintiff has alleged

damages that are remediable under Title IX; as such, by Defendants' own admission, there is no

damages-based reason to dismiss the Complaint under Rule 12. UNC's damages argument should

be denied, or at least, deferred to a later stage of this litigation for briefing at the appropriate time.[7]

---

[6] While admitting that Plaintiff may seek injunctive relief as to Jane Roe 4, UNC incorrectly asserts that Plaintiff's request for injunctive relief as to Jane Roe 1 is moot, because that suspension will expire soon. (UNC Mot. 22). This argument ignores the relief sought in the Complaint. Plaintiff seeks a reversal/expungement of the responsibility findings regarding Jane Roe 1, (Compl. ¶ 750), which relief would not be mooted simply because the related suspension ends while litigation is underway. *Cf., Shepard v. Irving*, 77 F. App'x 615, 620 (4th Cir. 2003) (request to change/expunge a university record constitutes a valid request for injunctive relief).
[7] In the event this court is inclined to address UNC's damages argument at this stage, Plaintiff respectfully requests an opportunity to submit a supplemental brief addressing this issue.

## IV.    Plaintiff's State Constitution Claims

Plaintiff plausibly alleges that the UNC Defendants deprived him of his rights under the North Carolina State Constitution, including due process, equal protection, and the right to education and the fruits of his labor. (Compl. ¶¶ 824-827). UNC's moving brief does not directly or substantively challenge Plaintiff's state constitutional claims. Instead, there is only a single, passing reference, within a parenthetical, to "state constitution claims". (UNC Mot. 25). As such, UNC has failed to adequately present argument regarding this cause of action, and it should be permitted to proceed to litigation. *See United States v. Diaz,* 865 F.3d 168, 179 (4th Cir. 2017) (argument is deemed waived when "the essential argument [was] contained in one sentence"); *Herrera v. Finan*, 709 Fed. Appx. 741, 747 (4th Cir. 2017) ("passing reference" to an argument is insufficient to warrant review); *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 653 n.7 (4th Cir. 2006) (a single "conclusory remark" in a brief is "insufficient" to constitute an argument); *Schroepfer v. A. S. Abell Co.*, 138 F.2d 111, 116 (4th Cir. 1943) ("[A] point not presented by the briefs is abandoned.").

### a.    There Is No Sovereign Immunity for Direct Claims Under the North Carolina State Constitution

Even if this court decides to interpret UNC's half-sentence, parenthetical mention of "state constitution claims" as an actual argument (which it should not), the "argument" should still be resolved in Plaintiff's favor. UNC's only reference to state constitution claims arises in its discussion of governmental immunity. (UNC Mot. 24-25). However, as the North Carolina Supreme Court has made clear, there is no state immunity from state constitution claims. *Craig ex rel. Craig v. New Hanover Cnty. Bd. of Educ.*, 363 N.C. 334, 338 (2009) ("[D]irect

claims . . . under our State Constitution . . . **will not be susceptible to an immunity defense**.");[8] *Sheaffer v. Cnty. of Chatham*, 337 F. Supp. 2d 709, 729 (M.D.N.C. 2004) (denying motion to dismiss plaintiff's state constitution due process claim and accepting jurisdiction thereof); *Torres v. Dye*, No. 5:20-CV-00164-MR, 2022 WL 620333, at *3 (W.D.N.C. Mar. 2, 2022) (denying state employee's motion to dismiss official capacity state constitution claim); *Carmona v. Union Cnty. Sheriff's Office*, No. 3:21-CV-00366-MR, 2022 WL 680218, at *5 (W.D.N.C. Mar. 7, 2022) (same); *El-Bey v. N. Carolina Dep't of Pub. Safety*, No. 5:21-CV-00084-MR, 2021 WL 5056082, at *5 (W.D.N.C. Oct. 29, 2021) (same). *See also Corum v. Univ. of N. Carolina Through Bd. of Governors*, 330 N.C. 761, 782-83 (1992) ("[I]n the absence of an adequate state remedy, one whose state constitutional rights have been abridged has a direct claim against the State under our Constitution.")[9]

Because UNC has presented no ground to dismiss Plaintiff's state constitution claims other than immunity, this cause of action must survive the Rule 12 motion.

## CONCLUSION

In light of the above, the UNC Defendants' Motion to Dismiss for improper venue, and for failure to state a claim under Title IX or the North Carolina State Constitution, should be denied.

DATED: New York, New York
June 22, 2023

Respectfully submitted,

**NESENOFF & MILTENBERG, LLP**
*Attorneys for Plaintiff*

---

[8] The North Carolina Supreme Court's declaration that *no immunity* applies to state constitution claims, was made after the single case cited by UNC asserting immunity, and as such, overrides any contrary conclusions in defendants' case.

[9] As the UNC Defendants argue, their sovereign immunity precludes Plaintiff from having an adequate remedy at state law (UNC Mot. 24-25). As such, this is precisely the situation in which the North Carolina Supreme Court has permitted direct claims against the state under the State Constitution. *Craig*, 363 N.C. 334.

By:  */s/ Andrew Miltenberg*
Andrew T. Miltenberg, Esq.
Stuart Bernstein, Esq.
Tara J. Davis, Esq.
363 Seventh Avenue, Fifth Floor
New York, New York 10001
(212) 736-4500
amiltenberg@nmllplaw.com
sbernstein@nmllplaw.com
tdavis@nmllplaw.com

-and-

**EKSTRAND AND EKSTRAND, LLP**

By: /s/  *Robert Ekstrand*
Robert C. Ekstrand, Esq.
110 Swift Avenue, 2nd Floor
Durham, North Carolina 27705
(919) 416-4590
rce@ninthstreetlaw.com

26

## CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2023, I filed the foregoing using the Clerk's CM/ECF system, which will provide notice to all counsel of record.

By: /s/  *Robert Ekstrand*
Robert C. Ekstrand, Esq.
110 Swift Avenue, 2nd Floor
Durham, North Carolina 27705
(919) 416-4590
rce@ninthstreetlaw.com