**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**
**CIVIL ACTION NO: 1:23-CV-00041**

------------------------------------------------------------------X
JACOB DOE,

                            *Plaintiff*,

        -against-

THE UNIVERSITY OF NORTH CAROLINA
SYSTEM, et al.,

                            *Defendants*.
------------------------------------------------------------------X


**PLAINTIFF JACOB DOE'S MEMORANDUM OF LAW IN OPPOSITION TO THE**
**INDIVIDUAL DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

STATEMENT OF RELEVANT FACTS ............................................................................. 1

ARGUMENT ..................................................................................................................... 1

I.     Legal Standard: Motions to Dismiss ..................................................................... 1

II.    Venue is Proper in This District, and Dismissal is Not Warranted ....................... 2

III.   Plaintiff Plausibly Alleges a 42 U.S.C. § 1983 Due Process Claim ..................... 2

   a.   Eleventh Amendment Immunity is Not Available, As Plaintiff Seeks Prospective Injunctive Relief Against Appropriate Officials ................................ 5

   b.   Plaintiff Plausibly Alleges Protected Constitutional Interests ........................ 8

        i. *Property Interest in Continuing Education* ................................................ 9

        ii. *Liberty Interest in Good Name and Reputation: "Stigma Plus"* ................ 12

   c.   Plaintiff Plausibly Alleges Deprivation by State Action ................................. 14

   d.   Plaintiff Plausibly Alleges Insufficient Process ............................................. 15

        i. *Notice* ........................................................................................................ 17

        ii. *Cross-examination* ................................................................................... 18

        iii. *Neutral Arbiter* ........................................................................................ 20

        iv. *Ability to Present Evidence and Defenses* ............................................. 20

   e.   The Qualified Immunity Question is Premature ............................................. 21

   f.   Defendants Violated Plaintiff's Clearly Established Rights ........................... 21

IV.   Plaintiff's State Law Claims ............................................................................... 23

   a.   Negligent Hiring, Supervision, and Retention – Defendant Hall.................... 23

   b.   Negligent/Intentional Infliction of Emotional Distress .................................. 25

CONCLUSION................................................................................................................. 25

i

# TABLE OF AUTHORITIES

**Cases**

*Alexander v. Cumberland Cnty. Bd. of Educ.*,
171 N.C. App. 649 (2005) ........................................................................ 18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................... 2

*Bd. of Regents of State Colleges v. Roth*,
408 U.S. 564 (1972)................................................................................... 9

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................... 1

*Board of Curators, Univ. of Mo. v. Horowitz*,
435 U.S. 78 (1978)................................................................................. 9, 16

*Braswell v. Braswell*,
330 N.C. 363 (1991) ................................................................................ 24

*Cash v. Lees-McRae College, Inc.*,
No. 1:18-CV-52, 2018 WL 7297876 (W.D.N.C. Aug. 13, 2018), report and recommendation adopted, No. 1:18-CV-00052-MR-WCM, 2019 WL 276842 (W.D.N.C. Jan. 22, 2019), aff'd, 811 Fed. Appx. 190 (4th Cir. 2020)............................................................ 11

*Concrete Pipe & Products of California, Inc. v. Constr. Laborers Pension Tr. for S. California*,
508 U.S. 602 (1993)............................................................................... 3, 20

*Copper ex rel. Copper v. Denlinger*,
363 N.C. 784 (2010) ................................................................................ 19

*DeMasters v. Carilion Clinic*,
796 F.3d 409 (4th Cir. 2015) ..................................................................... 2

*Doe v. Alger*,
175 F. Supp. 3d 646 (W.D. Va. 2016) .................................................... 9, 10

*Doe v. Citadel*,
No. 2:21-CV-04198-DCN, 2022 WL 2806473 (D.S.C. July 18, 2022) .................. 7

*Doe v. DiStefano*,
No. 16-CV-1789 (WJM) (KLM), 2019 WL 2372685 (D. Colo. June 5, 2019) .......... 7

*Doe v. Loh*,
No. CV PX-16-3314, 2018 WL 1535495 (D. Md. Mar. 29, 2018) .......................... 6

*Doe v. Pennsylvania State Univ.*,
336 F. Supp. 3d 441 n.50 (M.D. Pa. 2018) ............................................ 11

*Doe v. Purdue Univ.*,
928 F.3d 652 (7th Cir. 2019) .............................................................. 13, 18

*Doe v. Rector & Visitors of George Mason Univ.*,
132 F. Supp. 3d 712 (E.D. Va. 2015) ........................................ 12, 14, 18, 20

*Doe v. Rector & Visitors of Univ. of Virginia*,
No. 3:19-CV-00038, 2019 WL 2718496 (W.D. Va. June 28, 2019).............. 11, 15

*Doe v. The Citadel*,
No. 22-1843, 2023 WL 3944370 (4th Cir. June 12, 2023)........................... 7, 22

*Doe v. Univ. of Cincinnati*,
872 F.3d 393 (6th Cir. 2017) .............................................................. 11, 18

*Doe v. Univ. of Scis.*,
961 F.3d 203 (3d Cir. 2020)....................................................................... 18

*Doe v. Virginia Polytechnic Inst. & State Univ.*,
   No. 7:19-CV-00249, 2020 WL 1309461 (W.D. Va. Mar. 19, 2020) ........................................ 6
*Evans v. Chalmers*,
   703 F.3d 636 (4th Cir. 2012) ........................................................................................ 10
*Ex Parte Young*,
   209 U.S. 123 (1908) ................................................................................................ 5, 6
*Fauconier v. Clarke*,
   966 F.3d 265 (4th Cir. 2020) ........................................................................................ 5
*Givens v. Poe*,
   346 F. Supp. 202 (W.D.N.C. 1972) ............................................................................ 22, 23
*Goss v. Lopez*,
   419 U.S. 565 (1975) ........................................................................................ 2, 9, 15, 16
*Haidak v. Univ. of Mass.-Amherst*,
   933 F.3d 56 (1st Cir. 2019) ........................................................................................ 18
*Henson v. Honor Comm. of U. Va.*,
   719 F.2d 69 (4th Cir. 1983) ........................................................................................ 16
*Huang v. Bd. of Governors of Univ. of N. Carolina*,
   902 F.2d 1134 (4th Cir. 1990) ...................................................................................... 12
*Hutto v. S.C. Ret. Sys.*,
   773 F.3d 536 (4th Cir. 2014) ........................................................................................ 7
*In re Roberts*,
   150 N.C. App. 86 (2002) ............................................................................................ 19
*Jackson v. Long*,
   102 F.3d 722 (4th Cir. 1996) ........................................................................................ 11
*Keith v. Health-Pro Home Care Servs., Inc.*,
   381 N.C. 442 (2022) ................................................................................................ 24
*Lytle v. Griffith*,
   240 F.3d 404 (4th Cir. 2001) ........................................................................................ 5
*Mathews v. Eldridge*,
   424 U.S. 319 (1976) ........................................................................................ 3, 15, 16
*McBurney v. Cuccinelli*,
   616 F.3d 393 (4th Cir. 2010) ...................................................................................... 7, 8
*McFadyen v. Duke Univ.*,
   786 F. Supp. 2d 887 (M.D.N.C. 2011) .......................................................................... 10
*McNeill v. Butz*,
   480 F.2d 314 (4th Cir. 1973) .................................................................................... 12, 14
*Messeri v. DiStefano*,
   480 F. Supp. 3d 1157 (D. Colo. 2020) ...................................................................... 15, 18
*Mullane v. Cent. Hanover Bank & Tr. Co.*,
   339 U.S. 306 (1950) ........................................................................................ 3, 17
*Mylan Labs., Inc. v. Matkari*,
   7 F.3d 1130 (4th Cir. 1993) ........................................................................................ 2
*N. Carolina Dep't of Env't & Nat. Res. v. Carroll*,
   358 N.C. 649 (2004) ................................................................................................ 19
*Neil v. Wells Fargo Bank, N.A.*,
   596 Fed. Appx. 194 (4th Cir. 2014) .............................................................................. 2

iii

*Painter v. Adams*,
    No. 3-15-CV00369 (MOC) (DCK), 2017 WL 4678231 (W.D.N.C. Oct. 17, 2017) 6, 11, 15, 16
*Regents of Univ. of Michigan v. Ewing*,
    474 U.S. 214 (1985) .......................................................................................... 9
*Ridpath v. Bd. of Governors Marshall Univ.*,
    447 F.3d 292 (4th Cir. 2006) .................................................................... 13, 14
*Rone v. Winston-Salem/Forsyth Cnty. Bd. of Educ.*,
    207 N.C. App. 618 (2010) .............................................................................. 19
*Ross v. Creighton Univ.*,
    957 F.2d 410 (7th Cir.1992) .......................................................................... 10
*Rouse v. Duke Univ.*,
    869 F. Supp. 2d 674 (M.D.N.C. 2012) ..................................................... 10, 25
*Ryan v. Univ. of N. Carolina Hosps.*,
    128 N.C. App. 300 (1998) .............................................................................. 11
*S.C. Wildlife Fed'n v. Limehouse*,
    549 F.3d 324 (4th Cir.2008) ............................................................................ 8
*Sciolino v. City of Newport News, Va.*,
    480 F.3d 642 (4th Cir. 2007) .......................................................................... 14
*Shepard v. Irving*,
    77 Fed. Appx. 615 (4th Cir. 2003) ................................................................... 6
*Shirvinski v. U.S. Coast Guard*,
    673 F.3d 308 (4th Cir. 2012) ............................................................................ 2
*Supinger v. Holcomb*,
    717 Fed. Appx. 194 (4th Cir. 2017) ............................................................... 21
*Supplee v. Miller-Motte Bus. Coll., Inc.*,
    239 N.C. App. 208 (2015) .............................................................................. 10
*Swierkiewicz v. Sorema N. A.*,
    534 U.S. 506 (2002) ......................................................................................... 1
*Tigrett v. Rector & Visitors of Univ. of Virginia*,
    290 F.3d 620 (4th Cir. 2002) ............................................................................ 9
*Vega v. Saleeby*,
    No. C.A. 2:04-0023-18, 2004 WL 3334816 (D.S.C. July 12, 2004) ................ 16
*Ward v. Bd. of Educ. of Warren Cnty. Sch.*,
    No. 5:06-CV-200-F, 2007 WL 9718581 (E.D.N.C. Aug. 9, 2007) ................. 21
*Willner v. Comm. on Character & Fitness*,
    373 U.S. 96 (1963) ......................................................................................... 18

**Rules**
42 U.S.C. § 1983 ................................................................................................. 1
Fed. R. Civ. P. 12(b)(6) .............................................................................. 1, 2, 25
Fed. R. Civ. P. 8(a) ............................................................................................ 1

## INTRODUCTION

Plaintiff respectfully submits this memorandum of law in opposition to the Motion to Dismiss (ECF No. 32, hereinafter the "Individual Defendants' Motion" or "Indiv. Defs.' Mot.") filed by Defendants Kevin Guskiewicz, Elizabeth Hall, Jeremy Enlow, Beth Froehling, Rebecca Gibson, Jaclyn Feeney, David Elrod, and Desiree Rieckenberg (collectively, the "Individual Defendants"). Plaintiff's Complaint adequately and plausibly alleges due process violations under 42 U.S.C. § 1983, and related state law violations. The Individual Defendants knowingly engaged in a course of conduct which was designed to, and did, deprive Plaintiff of his clearly established constitutional rights and cause maximal damage to his education, reputation, career prospects, and mental health. Their motion to dismiss should be denied.

## STATEMENT OF RELEVANT FACTS

A detailed statement of facts is set forth in the Complaint (ECF No. 1), which is incorporated herein by reference.

## ARGUMENT

### I. Legal Standard: Motions to Dismiss

Under Federal Rule of Civil Procedure 8(a), a complaint need only provide defendants with "fair notice of what [plaintiff]'s claims are and the grounds upon which they rest." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514–15 (2002).[1] To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff does not have to plead evidence or prove his claims, but rather, just allege "enough facts to state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When reviewing a motion to dismiss, a court does not have to credit "a legal conclusion couched as a factual allegation" (*Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

[1] The Supreme Court expressly reaffirmed *Swierkiewicz* in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

(2009)); however, it must otherwise accept all fact allegations as true and draw all reasonable inferences from the facts in favor of the plaintiff. *DeMasters v. Carilion Clinic*, 796 F.3d 409, 416 (4th Cir. 2015). "Ultimately, a complaint should not be dismissed under Rule 12(b)(6) unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief." *Neil v. Wells Fargo Bank, N.A.*, 596 Fed. Appx. 194, 196 (4th Cir. 2014) (internal quotations omitted); *see also Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130 (4th Cir. 1993).

## II. Venue is Proper in This District, and Dismissal is Not Warranted

The Individual Defendants' venue argument is identical to that made by the UNC Defendants. (*Compare* Indiv. Defs.' Mot. 9-11, *with* UNC Mot. 9-11). Accordingly, Plaintiff hereby incorporates by reference his arguments concerning venue as set forth in Plaintiff's Brief in Opposition to the UNC Defendants' Motion to Dismiss, ECF No. 39, pages 3-8, filed concurrently with this brief.

## III. Plaintiff Plausibly Alleges a 42 U.S.C. § 1983 Due Process Claim

The Fourteenth Amendment to the Constitution states: "No state shall . . . deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV § 1. To prevail on a procedural due process claim under § 1983, a plaintiff must show "(1) a cognizable liberty or property interest; (2) the deprivation of that interest by some form of state action; and (3) that the procedures employed were constitutionally inadequate." *Shirvinski v. U.S. Coast Guard*, 673 F.3d 308, 314 (4th Cir. 2012).[2] The question of precisely how much process is due in a given scenario is a flexible inquiry dependent on the factual circumstances; however, the essentials are (i) adequate notice and (ii) a meaningful opportunity to be heard. *Goss v. Lopez*, 419 U.S. 565, 579 (1975).

---

[2] While Plaintiff must ultimately prove these elements to prevail on the merits, on a Rule 12(b)(6) motion, Plaintiff need only plausibly allege these elements to avoid dismissal.

For notice to be constitutionally adequate, it must "be of such nature as [to] reasonably convey the required information" and "afford a reasonable time" for a response/defense. *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Regarding the opportunity to be heard, the opportunity must be provided "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Being heard in a "meaningful manner" requires, at a minimum, a "neutral and detached" decision-maker. *Concrete Pipe & Products of California, Inc. v. Constr. Laborers Pension Tr. for S. California*, 508 U.S. 602, 617 (1993).

Plaintiff's Complaint plausibly alleges a § 1983 due process claim. First, Plaintiff alleges a protected property interest in his continued education as well as a liberty interest in his good name and reputation. (Compl. ¶¶ 573-83). Second, Plaintiff alleges he was deprived of these interests when he was wrongfully found responsible for multiple acts of sexual misconduct and suspended, expelled, and permanently banned from UNC and the UNC System in connection therewith. (Compl. ¶¶ 232-36, 412, 509, 522, 526, 534, 541-42, 549-50, 554-61). Third, Plaintiff alleges that he was deprived of his constitutionally protected interests without due process. Specifically, Plaintiff alleges that: (i) he was not given adequate notice of the sexual assault charge in the Jane Roe 1 case, when the allegation was materially altered at the hearing and no adjournment was provided for Plaintiff to gather relevant evidence/witnesses in his defense (Compl. ¶¶ 388-99, 586-90);[3] (ii) Plaintiff was deprived of a meaningful opportunity to be heard because he was precluded from cross-examining Jane Roe 1 and Jane Roe 4 even though the cases turned entirely on credibility, and Defendants permitted Jane Roe 1's attorney to testify on her behalf (Compl. ¶¶ 401-07, 591-95, 597); (iii) Plaintiff was deprived of a meaningful opportunity

---

[3] While Plaintiff spent some of the lunch break attempting to locate relevant records, these few minutes were patently insufficient, given the investigation of the original claim spanned over six months, and Plaintiff's entire prepared defense pertained to a different date. (Compl. ¶¶ 390-400).

3

to be heard before a neutral arbiter, because Defendant Elrod has a history of railroading male respondents in Title IX cases and he precluded Plaintiff from submitting evidence pertaining to Jane Roe 4's credibility despite having no grounds to do so (Compl. ¶¶ 598-99, 611-12); (iv) Plaintiff was denied adequate notice and a meaningful opportunity to be heard because Defendants deliberately withheld information that prevented him from mounting a full and fair defense, including that Jane Roe 4 had filed additional, demonstrably false claims against Plaintiff while the investigation was pending (Compl. ¶¶ 335-44); (v) Plaintiff was denied a meaningful opportunity to be heard because Defendants improperly tainted the investigative records with leading questions, irrelevant yet highly inflammatory character assassination (despite an express agreement to redact said information), and faulty conclusions of responsibility that predisposed the hearing panels to view Plaintiff as guilty before the hearing even started, and falsely portrayed Plaintiff as a *proven* violent, pattern sexual predator (Compl. ¶¶ 442, 490, 501-02, 607); and (vi) Plaintiff was denied notice and a meaningful opportunity to be heard when he was not informed, prior to his EEAC hearings to appeal his interim suspensions, that Jane Roe 1 and Jane Roe 2 had withdrawn their complaints, that Jane Roe 3 had made an entirely fabricated retaliation charge, or that Jane Roe 2 and Jane Roe 4 had made demonstrably false claims against him pertaining to whether he posed a danger to the campus community (Compl. ¶¶ 232-37, 271, 313-30, 607-09).

Defendants' motion to dismiss Plaintiff's due process claim should be denied. Defendants' Eleventh Amendment immunity argument fails because Plaintiff is seeking prospective injunctive relief against appropriate officials in their official capacities. Defendants' qualified immunity argument is premature, and in any case, it fails because the rights to adequate notice and a meaningful opportunity to be heard before being suspended or expelled from an educational institution were clearly established at the time of the deprivations alleged here. Finally,

Defendants' argument that Plaintiff received adequate process is belied by the well-pleaded fact allegations in the Complaint, which must be accepted as true for this Rule 12(b)(6) motion.

    a.   <u>Eleventh Amendment Immunity is Not Available, As Plaintiff Seeks Prospective Injunctive Relief Against Appropriate Officials</u>

The Eleventh Amendment provides immunity against § 1983 claims in federal court for state officials acting in their official capacity. *Fauconier v. Clarke*, 966 F.3d 265, 279-80 (4th Cir. 2020). However, the Supreme Court has established an exemption from such immunity where a plaintiff seeks prospective injunctive relief to remedy an ongoing violation. *Ex Parte Young*, 209 U.S. 123 (1908). Thus, where a § 1983 plaintiff seeks prospective injunctive relief, he is entitled to sue a state official who can remedy the violation, in their official capacity, and the official may not invoke Eleventh Amendment immunity. *Lytle v. Griffith*, 240 F.3d 404, 408 (4th Cir. 2001).

The Individual Defendants assert that Plaintiff's official-capacity due process claim is barred because: (i) he does not seek prospective injunctive relief and (ii) he has not sufficiently alleged personal involvement by Defendant Guskiewicz in committing or enforcing the alleged violations. (Indiv. Defs.' Mot. 11-12). Defendants are mistaken on both the facts and the law.

With respect to the facts, Defendants misconstrue the pleadings, asserting that Plaintiff exclusively seeks relief from the sanctions of suspension (in the Jane Roe 1 case) and expulsion (in the Jane Roe 4 case). However, as set forth in the Complaint, Plaintiff seeks a vacating of the findings of responsibility on both cases, expungement of his disciplinary records, relief from the attendant sanctions, and reinstatement as a student in good standing. (Compl. ¶ 619). Defendants' claim that the Complaint does not sufficiently connect Guskiewicz to the challenged action or requested relief is also incorrect; the Complaint alleges that "[t]he expulsion of a student must be approved by the Chancellor" and an expelled student "may not be readmitted to any UNC System university unless and until the Chancellor concludes. . . that the individual should be given another

opportunity to pursue an education within the UNC System." (Compl. ¶ 86). The Complaint further alleges that under UNC's Code of Conduct, "it shall be the duty of the chancellor to secure to every student the right to due process." (Compl. ¶ 579). The Complaint also alleges that Defendant Hall (UNC's Title IX Coordinator) and Defendant Rieckenberg (UNC's Dean of Students) had significant involvement with, control over, and responsibility for overseeing Plaintiff's Title IX disciplinary process. (Compl. ¶¶ 16, 22, 35, 38, 43-45, 55, 77, 90, 95, 102, 126, 269, 280).

With respect to the law, the Fourth Circuit has expressly held that a student's request to expunge a disciplinary record constitutes a request for prospective injunctive relief sufficient to defeat Eleventh Amendment immunity under *Ex Parte Young*. *See Shepard v. Irving*, 77 Fed. Appx. 615, 620 (4th Cir. 2003) (finding the disciplinary "conviction" to be a "continuing injury to the plaintiff"); *Cf. Doe v. Loh*, No. CV PX-16-3314, 2018 WL 1535495, at *4 (D. Md. Mar. 29, 2018) (expungement of sexual misconduct findings and reinstatement as student in good standing constitute prospective injunctive relief), *aff'd*, 767 Fed. Appx. 489 (4th Cir. 2019).[4] *See also Painter v. Adams*, No. 3-15-CV00369 (MOC) (DCK), 2017 WL 4678231, at *4 (W.D.N.C. Oct. 17, 2017) *Accord*, *Doe v. Virginia Polytechnic Inst. & State Univ.*, No. 7:19-CV-00249, 2020 WL 1309461, at *4 (W.D. Va. Mar. 19, 2020) (listing cases).

Further, it is well-settled that an official-capacity defendant on a § 1983 claim need not have been the official who committed the underlying violation, so long as the official is sufficiently "connected" to the matter to be able to grant the relief sought. *Ex parte Young*, 209 U.S. at 161. By way of example, in *Shepard v. Irving*, the Fourth Circuit held that a student seeking expungement of a disciplinary record could proceed against the university president, in his official

---

[4] While the *Shepard* and *Loh* Fourth Circuit decisions were both unpublished, Defendants' counsel has not identified any published Fourth Circuit decisions to the contrary, and Plaintiff therefore respectfully submits the cases accurately reflect the Fourth Circuit's view on this issue.

capacity, even though the plaintiff never alleged that the president was personally involved in the underlying deprivation. 77 Fed. Appx. at 620. *See also Doe v. Citadel*, No. 2:21-CV-04198-DCN, 2022 WL 2806473, at *4 (D.S.C. July 18, 2022) (university president, Title IX Coordinator, and director of sexual assault resource center were proper defendants for § 1983 action to expunge sexual misconduct disciplinary records and not entitled to Eleventh Amendment immunity), *aff'd sub nom. Doe v. The Citadel*, No. 22-1843, 2023 WL 3944370 (4th Cir. June 12, 2023). *See also Doe v. DiStefano*, No. 16-CV-1789 (WJM) (KLM), 2019 WL 2372685, at *1 (D. Colo. June 5, 2019) (university chancellor was proper defendant for § 1983 claim where plaintiff sought expungement of disciplinary records). Here, Plaintiff adequately alleges a request for prospective injunctive relief (expungement plus reinstatement), and the Complaint names appropriate state officials, in their official capacities, who are connected to the challenged conduct and who have the power to effectuate the relief sought: Defendants Guskiewicz, Hall, and Rieckenberg.[5]

Defendants' cited cases do not call for a different conclusion. In *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 550 (4th Cir. 2014), the plaintiffs sought to enjoin enforcement of a state statute that required them to contribute to the state employee retirement system via deductions from their paychecks. In holding that the named defendants were entitled to a dismissal, the court simply noted that "neither the State Budget and Control Board nor the Public Employee Benefit Authority has responsibility for ensuring that employee contributions to the Retirement System be deducted from the employees' paychecks", and therefore, the defendants were incapable of imposing the relief sought. *Id.* at 550. Likewise, in *McBurney v. Cuccinelli*, 616 F.3d 393 (4th Cir. 2010), the

---

[5] Plaintiff acknowledges the Complaint could be clearer with respect to which Defendants are sued in their official versus individual capacities. Plaintiff hereby clarifies that his Due Process claim is against Defendants Guskiewicz, Hall, and Rieckenberg in their official capacities, and against Defendants Enlow, Elrod, Feeney, Froehling, Gibson, and Hall in their individual capacities.

Fourth Circuit affirmed dismissal of the Attorney General from a lawsuit regarding the state's freedom of information law on the basis that "the Attorney General has no specific statutory enforcement authority under the [challenged law]. In addition, he has not issued any advisory opinions specifically directing state agencies to deny [records] requests by non-citizens, nor has he participated in the decision[-]making process of those agencies." *Id.* at 401. Notably, the *McBurney* court *reinstated* claims brought against the state officials in possession of the records plaintiffs sought—in other words, officials with the power to remedy the violation. *Id.* at 403.

As the Fourth Circuit explained in *McBurney*, "[t]he special-relation requirement . . . ensur[es] that, in the event a plaintiff sues a state official in his individual capacity to enjoin unconstitutional action, any federal injunction will be effective with respect to the underlying claim." *McBurney*, 616 F.3d at 399 (cleaned up) (quoting *S.C. Wildlife Fed'n v. Limehouse*, 549 F.3d 324, 333 (4th Cir.2008)). In other words, the purpose of the rule is simply to ensure that the named official is capable of imposing the relief sought, should the court issue an order in plaintiff's favor. Plaintiff meets this requirement here, and the motion to dismiss Plaintiff's due process claims on the ground of Eleventh Amendment Immunity against Defendants Guskiewicz, Hall, and Rieckenberg should be denied. [6]

> b. Plaintiff Plausibly Alleges Protected Constitutional Interests

Defendants assert that Plaintiff fails to allege constitutionally protected interests. (Indiv. Defs.' Mot. 12-15). Defendants are incorrect. Plaintiff adequately alleges a protected property interest in his continuing education based upon UNC's policies, practices, and contractual

---

[6] In the event that discovery reveals a limitation on the named defendants' power to impose the remedy sought, Plaintiff respectfully submits such issues may be resolved by amending the Complaint to join the official(s) with said power. *See generally*, *Lytle v. Doyle*, 197 F. Supp. 2d 481, 484 n.1 (E.D. Va. 2001) (on remand, plaintiffs properly substituted in state officials tasked with prosecuting the challenged law).

obligations, and he adequately alleges a liberty interest in his good name and reputation in concert with the revocation of state privileges.

i. *Property Interest in Continuing Education*

The Supreme Court and the Fourth Circuit have both assumed, in previous cases, that public university students have a property right in their continued education sufficient to invoke the protections of the Fourteenth Amendment. *Board of Curators, Univ. of Mo. v. Horowitz*, 435 U.S. 78, 91–92 (1978); *Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214, 222 (1985); *Tigrett v. Rector & Visitors of Univ. of Virginia*, 290 F.3d 620, 627 (4th Cir. 2002). As the Supreme Court has explained,

> Protected interests in property are normally not created by the Constitution. Rather, they are created and their dimensions are defined by an independent source such as state statutes or rules entitling the citizen to certain benefits. Accordingly, a state employee who under state law, or rules promulgated by state officials, has a legitimate claim of entitlement to continued employment absent sufficient cause for discharge may demand the procedural protections of due process.

*Goss v. Lopez*, 419 U.S. 565, 572–73 (1975).

Using these guidelines, the Court in *Goss* concluded that public secondary school students had a constitutionally protected property right in their enrollment, where a state statute mandated school attendance. *Id.* at 573-74. Contrary to Defendants' assertions here, however, a formal state statute is not the *only* means by which a plaintiff may allege a property interest; as the Court itself made clear in *Goss*, a state-created "rule" may also give rise to such a right. Additionally, a contractual relationship with the state, or even a course of conduct by the state, may suffice to create such a right. *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).

In *Doe v. Alger*, 175 F. Supp. 3d 646 (W.D. Va. 2016), the district court held that the student plaintiff had adequately alleged a property interest in his continued education because,

"through [defendant university]'s policies and practices, [defendant] has a system of expelling, suspending, or dismissing students only after a finding of cause." *Id.* at 658. In other words, where the university created a policy and expectation that students, once admitted, would not be removed from the institution without cause, an enforceable property right was created. Plaintiff's allegations here match (and even exceed) the allegations found sufficient to create a property interest in *Alger*. Specifically, Plaintiff alleges that UNC's policies provide that accused students are entitled to a presumption of innocence and that they may not be suspended or expelled without certain processes being exhausted and findings being made – in other words, students may not be suspended or expelled without cause. (Compl. ¶¶ 37-40, 51-52, 54, 646). Plaintiff further alleges that UNC's policies expressly provide that students within the UNC System are entitled to "due process" in any disciplinary proceeding, which, by definition, would only apply if UNC students have a constitutionally protected interest in the first place. (Compl. ¶¶ 576-80).

Plaintiff also alleges a contractual relationship between himself and UNC under North Carolina law, governed by UNC's policies, which again provide that students will not be suspended or dismissed without cause. (Compl. ¶¶ 751-54, 761). *See Supplee v. Miller-Motte Bus. Coll., Inc.*, 239 N.C. App. 208, 219 (2015) (finding student had contractual relationship with college, and citing *Ross v. Creighton Univ.*, 957 F.2d 410 (7th Cir.1992) with approval); *Rouse v. Duke Univ.*, 869 F. Supp. 2d 674, 683 (M.D.N.C. 2012) ("A current student in good standing who is paying her tuition and other fees would seem to have a contractual right to return to school, nothing else appearing."); *McFadyen v. Duke Univ.*, 786 F. Supp. 2d 887, 983 (M.D.N.C. 2011) (students plausibly alleged breach of contract claim for failure to abide by published disciplinary procedures), *aff'd in part, rev'd in part on other grounds, dismissed in part sub nom; Evans v. Chalmers*, 703 F.3d 636 (4th Cir. 2012); *Ryan v. Univ. of N. Carolina Hosps.*, 128 N.C. App. 300,

303 (1998) (as a matter of first impression, holding that post-secondary students may allege contractual relationship with school based upon specific policies/promises by the school).

Thus, Plaintiff does not allege a property right based *solely* on Defendants' *violations* of school procedures, as posited by Defendants (Indiv. Defs.' Mot. 13); rather, he alleges a contractual relationship and state-created policies and expectations which created a property interest in his continuing enrollment such that he could not be suspended or dismissed without cause. That is sufficient to withstand a motion to dismiss. *See Doe v. Rector & Visitors of Univ. of Virginia*, No. 3:19-CV-00038, 2019 WL 2718496, at \*5 (W.D. Va. June 28, 2019) (student whose degree was withheld pending sexual misconduct investigation sufficiently alleged protected property interest in his education to withstand even the heightened preliminary injunction standard); *Painter v. Doe*, No. 3:15-CV-369-MOC-DCK, 2016 WL 4650045, at \*9 (W.D.N.C. Aug. 1, 2016) (student accused of sexual misconduct had property/liberty interest in continued enrollment), *report and recommendation approved*, 2016 WL 4644495 (W.D.N.C. Sept. 6, 2016). *See also Doe v. Univ. of Cincinnati*, 872 F.3d 393, 399 (6th Cir. 2017); *Doe v. Pennsylvania State Univ.*, 336 F. Supp. 3d 441, 447 n.50 (M.D. Pa. 2018).

Defendants' cited cases are either inapposite or do not call for a dismissal. For example, in *Cash v. Lees-McRae College, Inc.*,[7] the court denied plaintiffs' contract claims because the relevant policy contained what was effectively an affirmative disclaimer of any contractual obligations. *Id.* at \*12. The policies at issue here contain no such disclaimers. *See* ECF Nos. 35-4, 35-5. Similarly, *Jackson v. Long*, 102 F.3d 722 (4th Cir. 1996), involved state employees in the Sheriff's office, who were held not to have a protected property interest in their employment because a state statute

---

[7] No. 1:18-CV-52, 2018 WL 7297876 (W.D.N.C. Aug. 13, 2018), *report and recommendation adopted*, No. 1:18-CV-00052-MR-WCM, 2019 WL 276842 (W.D.N.C. Jan. 22, 2019), *aff'd*, 811 Fed. Appx. 190 (4th Cir. 2020).

expressly precluded such a relationship. *Id.* at 728. Again, that is not the case here; if anything, the relevant policies confirm and enforce Plaintiff's property interest in his enrollment. (Compl. ¶¶ 574-80). Finally, in *Huang v. Bd. of Governors of Univ. of N. Carolina*, 902 F.2d 1134 (4th Cir. 1990), the Fourth Circuit held that a professor's tenure status "indisputably" created a protected property interest. *Id.* at 1141. Similarly, here, UNC's contractual enrollment agreement with Plaintiff and its disciplinary policies providing for suspension or dismissal only for good cause, created a protected property interest in his continued enrollment.

ii. *Liberty Interest in Good Name and Reputation: "Stigma Plus"*

In addition to plausibly alleging a property interest in his continued enrollment, Plaintiff also sufficiently alleges a protected liberty interest in not being expelled from UNC and barred from the entire UNC System, in connection with UNC's multiple wrongful and false sexual misconduct findings. (Compl. ¶¶ 554-56, 561, 581-84).

In *Doe v. Rector & Visitors of George Mason Univ.*, 132 F. Supp. 3d 712 (E.D. Va. 2015), the plaintiff student alleged he had a protected liberty interest in not being expelled from his university for sexual misconduct. The district court agreed, finding that for the purposes of a Rule 12 motion, Plaintiff had alleged a change in legal status (his expulsion from a state institution) and a concomitant injury to his good name and reputation (the findings of sexual misconduct attached to his record in connection with his expulsion) sufficient to state a protected liberty interest under the "stigma-plus" test. *Id.* at 723. The case at bar contains the same such allegations and even more: in addition to marking Plaintiff's educational files with the false sexual misconduct findings, UNC must *publicly* disclose same. (Compl. ¶ 561).

The Fourth Circuit's decision in *McNeill v. Butz*, 480 F.2d 314 (4th Cir. 1973), is instructive here. In *McNeil*, the Fourth Circuit held that plaintiffs alleged a constitutionally protected liberty interest where they were not only terminated from government employment, but

permanently disqualified therefrom, in connection with allegations of immoral and unlawful conduct. The Fourth Circuit upheld the existence of a constitutionally protected interest, even though the plaintiffs had no contract nor any tenure rights in their employment. *Id.* at 321. As the court explained, "government dismissal may abridge liberty if it imposes a 'stigma or other disability' which forecloses a discharged employee's freedom to take advantage of other employment opportunities." *Id.* at 319 (citation omitted). Thus, plaintiffs had a protected liberty interest where they were precluded from all government employment on the basis of their purported immoral and unlawful conduct.

Similarly, Plaintiff here was not only expelled from UNC, but was also permanently barred from the entire UNC System, preventing him from pursuing a public education in this state. (Compl. ¶ 7). In connection with this permanent bar to public education, Plaintiff's records are marked with false findings of sexual misconduct and further, such records are subject to compulsory disclosure to the public at large. These are precisely the kind of circumstances that give rise to a constitutionally protected liberty interest under the stigma-plus test. *See Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 314 (4th Cir. 2006); *Doe v. Purdue Univ.,* 928 F.3d 652, 661-63 (7th Cir. 2019).

Defendants assert that Plaintiff does not allege a stigma-plus liberty interest because: (i) he has not alleged a "public" disclosure of a damaging statement; (ii) his reputation was already damaged before UNC's disciplinary findings were finalized; and (iii) he has not alleged a concurrent change in status. (Indiv. Defs.' Mot. 13-15). Defendants' arguments are unavailing.

First, Plaintiff has indeed alleged a publication of UNC's false findings of sexual misconduct. He avers that the false findings are published within the UNC System records as well as subject to compulsory public disclosure in accordance with North Carolina law.

(Compl. ¶¶ 555-57, 561). Defendants' assertion that the stigmatizing information "must be made public", is belied by the very case they cite for that proposition. In *Sciolino v. City of Newport News, Va.,* 480 F.3d 642 (4th Cir. 2007), the court actually held that the stigma portion of a stigma-plus claim may be satisfied upon alleging a "*likelihood*" of public disclosure, even if the disclosure hasn't occurred yet. *Id.* at 650 (emphasis added). Plaintiff meets that test here, as his records are subject to compulsory disclosure, rendering it "likely" that they will be made public. Further, Plaintiff alleges the sanctions are noted on his UNC transcript, which would be required to be disclosed in any application to an alternate university or college should he seek to complete his degree elsewhere. (Compl. ¶ 149).

Second, whether Plaintiff suffered *some* reputational harm prior to UNC's findings is irrelevant to the stigma-plus assessment. Defendants cite no authority for the proposition that a plaintiff must have a perfect reputation in order to state a stigma-plus claim. And in any case, the reputational damage made from an accusation alone is qualitatively different from that created by an *adjudicated finding* of sexual misconduct, which is at issue in Plaintiff's stigma-plus claim.

Third and finally, Plaintiff has adequately alleged a change in status: he is no longer a student in good standing in the state university system of North Carolina, and he is ineligible for future enrollment in the entire system. That is a sufficient change in status with the state under the stigma-plus test. *Doe v. Rector & Visitors of George Mason Univ.*, 132 F. Supp. 3d 712; *Cf. McNeill v. Butz*, 480 F.2d at 317 (preclusion from government employment constituted a change in status); *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 311 (4th Cir. 2006) (constructive "discharge" from public university is sufficient change in status for stigma-plus).

    c.   Plaintiff Plausibly Alleges Deprivation by State Action

Plaintiff plausibly alleges he was deprived of his property interest in continued enrollment, and his liberty interest in his good name and reputation, when he was wrongly suspended pending

investigation, found responsible for sexual misconduct, and then suspended, expelled, and permanently barred from UNC and the UNC System, by state employees acting within their official capacities. (Compl. ¶¶ 7, 232-40, 250-55, 313-23, 412, 509, 522, 526). Defendants do not contest the deprivation element of Plaintiff's due process claim.[8]

### d. Plaintiff Plausibly Alleges Insufficient Process

Having sufficiently alleged constitutionally protected interests, and deprivation therefrom by state actors, the last element needed for Plaintiff's due process claim is a *plausible* allegation that the procedures employed were deficient. *Painter v. Doe*, 2016 WL 4650045, at *9. Plaintiff manifestly meets this burden.

As mentioned *supra*, the extent of the process that must be provided under the Fourteenth Amendment is a flexible, fact-dependent standard. *Doe v. Rector & Visitors of Univ. of Virginia*, 2019 WL 2718496, at *5. In making this assessment, courts weigh: (i) "the private interest that will be affected by the official action"; (ii) "the risk of an erroneous deprivation . . . and the probable value, if any, of additional or substitute procedural safeguards"; and (iii) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. at 335. With respect to the first factor, student-plaintiffs have "a strong interest in completing [their] education and avoiding mistaken expulsion from the[ir] University." *Messeri v. DiStefano*, 480 F. Supp. 3d 1157, 1164 (D. Colo. 2020); *Goss v. Lopez*, 419 U.S. at 565, 579 (1975) ("The student's interest is to avoid unfair or mistaken exclusion from the educational process, with all of its unfortunate consequences."). With respect to the second factor, the Supreme Court has held

---

[8] Defendants' only argument concerning deprivation appears to be that there was no protected interest from which Plaintiff could be deprived in the first place. (Indiv. Defs.' Mot. 15). Plaintiff addressed this argument in the previous section.

that "[t]he risk of error is not at all trivial, and it should be guarded against if that may be done without prohibitive cost or interference with the educational process." *Goss*, 419 U.S. at 580.[9] Finally, while schools generally possess an interest in maintaining order, courts regularly find that a school's disciplinary decisions are not subject to the same level of deference as a school's *academic* determinations, as only the latter are within the special purview of their educational expertise. *See Henson v. Honor Comm. of U. Va.*, 719 F.2d 69, 74 (4th Cir. 1983); *Board of Curators v. Horowitz*, 435 U.S. 78, 86 (1978).

In assessing the three *Eldridge* factors and Fourth Circuit precedent, this court has previously held that, before a student may be suspended, he must be provided, at a minimum: "adequate notice of the charges against him; an opportunity to be heard by disinterested parties; confrontation by his accusers; and the right to have a record of the hearing reviewed." *Painter v. Doe*, 2016 WL 4650045, at *11. Similarly, the District of South Carolina has previously held that due process was satisfied where:

> Plaintiff was notified of the charges against him prior to the hearing, he was provided the names of witnesses who were to testify against him and was allowed to confront and cross-examine them, he was allowed to testify and present testimony in his own defense, and [the school]'s ultimate actions against plaintiff were neither arbitrary nor capricious in nature.

*Vega v. Saleeby*, No. C.A. 2:04-0023-18, 2004 WL 3334816, at *7 (D.S.C. July 12, 2004), *aff'd*, 126 Fed. Appx. 626 (4th Cir. 2005).

As set forth in further detail below, Plaintiff adequately alleges that he was denied due process. Plaintiff was suspended and expelled without adequate notice of the charges against him, and without a meaningful opportunity to be heard before a neutral arbiter.

---

[9] The Court in *Goss* was addressing the minimum requisite procedures for a 10-day suspension; it expressly acknowledged that "[l]onger suspensions or expulsions for the remainder of the school term, or permanently, may require more formal procedures." *Goss*, 419 U.S. at 584.

i. *Notice*

"When notice is a person's due, process which is a mere gesture is not due process." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. at 315. In the instant case, Plaintiff was deprived of adequate notice prior to his EEAC suspension hearings, as well as his Jane Roe 1 hearing on the merits. With respect to the EEAC hearings, Plaintiff was given incomplete and inaccurate notice of the charges he faced, with UNC offering little more than vague assertions of "multiple complaints" of "sexual misconduct." (Compl. ¶¶ 234-37, 250-55). Additionally, Defendants failed to provide Plaintiff notice of Jane Roe 3's (fabricated) retaliation claim prior to the August 2021 suspension hearing, even though that accusation was the primary focus of the hearing and formed part of the basis for EEAC's decision to continue Plaintiff's suspension. Plaintiff was also not informed before that hearing that two of the four accusers had actually withdrawn their complaints, even though that would constitute precisely the type of "changed circumstances" that would warrant reconsideration of a suspension. (Compl. ¶¶ 255-65, 313-23).

With respect to the Jane Roe 1 merits hearing, the lack of notice was even more egregious. For the nearly ten months between UNC's issuance of the no-contact order for Jane Roe 1 and the hearing on the merits, UNC's process focused *exclusively* on an allegation of sexual misconduct on the night of November 19, 2020. (Compl. ¶¶ 268, 390-92). Thus, Plaintiff's preparation of his defense, and his search for relevant witnesses and evidence, naturally all focused on that date. (Compl. ¶ 392). Yet, at the start of the hearing, Jane Roe 1's attorney abruptly declared that the alleged incident took place on an entirely different date. (Compl. ¶¶ 393-94). This change in date was highly material. This was not a situation where the two students only ever had one sexual encounter, and thus the precise date would be largely irrelevant; rather, Plaintiff and Jane Roe 1 had an ongoing sexual relationship during the Fall and Winter of 2021, making the precise date of the alleged incident extremely important in locating relevant witnesses and evidence.

(Compl. ¶ 202). Despite Jane Roe 1's attorney blindsiding Plaintiff with a material change in the allegations, UNC pushed forward with the hearing on this essentially new accusation, preventing Plaintiff from being able to gather relevant evidence and mount a full defense. (Compl. ¶¶ 585-90).

Thus, Plaintiff was deprived of constitutionally adequate notice in the Jane Roe 1 hearing. *See Doe v. Rector & Visitors of George Mason Univ.*, 149 F. Supp. 3d 602, 617 (E.D. Va. 2016) ("Simply put, plaintiff was not fairly on notice that events other than those of October 27, 2013, were at issue in his disciplinary hearing. . . . [S]uch a lack of notice cannot be divorced from the adequacy of plaintiff's opportunity to be heard.").

### ii. *Cross-examination*

As the Supreme Court has noted, "procedural due process often requires confrontation and cross-examination of those whose word deprives a person of his livelihood. . . . We think the need for confrontation is a necessary conclusion from the requirements of procedural due process in a situation such as this." *Willner v. Comm. on Character & Fitness*, 373 U.S. 96, 103-04 (1963). While the Supreme Court and Fourth Circuit have thus far declined to rule that students in school disciplinary proceedings *always* have a right to cross-examination, federal courts across the country have held that cross-examination *is* constitutionally required when a student faces serious discipline such as suspension or expulsion, and credibility is critical to the determination of the charges. *See, e.g.*, *Doe v. Univ. of Scis.*, 961 F.3d 203, 215 (3d Cir. 2020); *Doe v. Purdue Univ.*, 928 F.3d at 663–64; *Haidak v. Univ. of Mass.-Amherst*, 933 F.3d 56, 69 (1st Cir. 2019); *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 401-02 (6th Cir. 2017); *Messeri v. DiStefano*, 480 F. Supp. 3d 1157, 1165–66 (D. Colo. 2020).

Moreover, the North Carolina state courts have repeatedly held that serious suspensions or expulsions require an opportunity for cross-examination of witnesses/accusers. *Alexander v. Cumberland Cnty. Bd. of Educ.*, 171 N.C. App. 649, 657 (2005) ("[W]hen a school board seeks to

impose a long-term suspension, a student not only has the right to notice and an opportunity to be heard, the student also has the right to a full hearing, an opportunity to have counsel present at the hearing, to examine evidence and to present evidence, **to confront and cross-examine witnesses supporting the charge**, and to call his own witnesses to verify his version of the incident.") (emphasis added); *In re Roberts*, 150 N.C. App. 86, 93 (2002), ("[W]here [defendant] sought to impose a long-term suspension and the Board Policy specifically provided for a factual hearing before the Hearing Board, we construe the Due Process Clause of the United States Constitution . . . to require that petitioner have the opportunity to . . . confront and cross-examine witnesses supporting the charge"), *overruled on other grounds, by N. Carolina Dep't of Env't & Nat. Res. v. Carroll*, 358 N.C. 649 (2004). *See also Rone v. Winston-Salem/Forsyth Cnty. Bd. of Educ.*, 207 N.C. App. 618, 628 (2010) (due process rights were violated when student was not given full opportunity to cross-examine witnesses); *Copper ex rel. Copper v. Denlinger*, 363 N.C. 784, 791 (2010) (discussing, with approval, the North Carolina Court of Appeals' requirement for cross-examination at live hearing when student faces long suspensions/expulsions).

In this case, there is no question that Plaintiff was deprived of a right to cross-examine Jane Roe 4, even though the fact-finding centered on credibility, as there were no witnesses present for the Roe 4 hearing.[10] It also cannot be seriously maintained that Plaintiff was given an adequate opportunity to cross-examine Jane Roe 1. Instead, in the middle of a line of questioning in which Jane Roe 1's credibility was being seriously damaged, the hearing panel halted the questioning and permitted Jane Roe 1 to leave. Notably, there was no finding that the questioning was improper

---

[10] Defendants claimed in their statement of facts that Sara Poe "witnessed" the assault. (Indiv. Defs.' Mot. 2). This is false. Poe expressly stated that despite looking right at Jane Roe 4 at the time, she did *not* see any kind of unwanted sexual touching; rather, she only purportedly noticed a "change" in Jane Roe 4's "facial expression." (Compl. ¶¶ 510-12). In any case, Poe also did not appear for the hearing, precluding cross-examination of what exactly she saw.

or irrelevant; rather, the panel permitted Roe to abandon the hearing at this crucial moment simply because "it was her birthday." (Compl. ¶¶ 403-07).

Because the Jane Roe 1 and Jane Roe 4 hearings both centered on questions of credibility, and because Plaintiff was barred from cross-examining the witnesses against him, he has adequately alleged a due process violation.

### iii. *Neutral Arbiter*

As the Supreme Court has made clear, the "opportunity to be heard" for due process purposes requires "a neutral and detached" decision-maker. *Concrete Pipe & Products of California, Inc. v. Constr. Laborers Pension Tr. for S. California*, 508 U.S. 602, 617 (1993). Plaintiff adequately alleges that he was deprived the opportunity to appear before a neutral arbiter, because: (i) Defendants were biased against male respondents in sexual misconduct proceedings,[11] and (ii) Defendant Elrod, who has a history of railroading male respondents in sexual misconduct proceedings, prevented Plaintiff from presenting exculpatory and relevant evidence in his defense despite having no such authority under the relevant policies. (Compl. ¶¶ 492-95, 503-04).

### iv. *Ability to Present Evidence and Defenses*

As one district court has noted, "an accused student must be afforded an opportunity to present a defense, and a necessary corollary to this requirement is that the opportunity must be meaningful." *Doe v. Rector & Visitors of George Mason Univ.*, 149 F. Supp. 3d at 619. In the instant case, Plaintiff was deprived of a meaningful opportunity to present a defense because Defendants withheld critical information pertaining to additional false charges that Jane Roe 4 made against him, and they precluded him from presenting evidence calling Roe 4's credibility into serious doubt—yet at the same time, Defendants presented and permitted extensive "character

---

[11] This argument is fleshed out in full in Plaintiff's Brief in Opposition to the UNC Defendants' Motion to Dismiss, ECF No. 39, pages 10-23, filed concurrently with this brief.

evidence" testimony about Plaintiff at the Roe 4 hearing, and even permitted the investigators to testify, falsely, that Plaintiff was responsible for sexually assaulting Jane Roe 3. (Compl. ¶¶ 342-43, 501-02, 517-18). Defendants permitted similar tainted testimony in the Jane Roe 1 hearing, where Jane Roe 1's attorney repeatedly opined that Plaintiff had attempted to "rape" Jane Roe 4—a claim that was ultimately found to be untrue. (Compl. ¶ 407). Defendants Enlow and Froehling also prevented Plaintiff from mounting a fair defense when they refused to even *ask* Jane Roe 1 for relevant evidence and communications, despite her references to same and promises to produce them (which never materialized), and when they included erroneous transcriptions in the report, which they refused to correct. (Compl. ¶¶ 208 n.9, 426 n.18, 468).

Thus, Defendants violated Plaintiff's right to prepare and present a meaningful defense.

### e. The Qualified Immunity Question is Premature

Defendants argue that even if Plaintiff does allege a due process violation, the claims against them in their personal capacities for money damages should be dismissed on the grounds of qualified immunity. (Indiv. Defs.' Mot. 18-20). Plaintiff respectfully submits this question is premature and the matter should be deferred to a later stage in the proceedings. *See Supinger v. Holcomb*, 717 Fed. Appx. 194, 201 (4th Cir. 2017) (recognizing that qualified immunity should generally be resolved "sooner than later", but holding that further development of the fact record was necessary); *Ward v. Bd. of Educ. of Warren Cnty. Sch.*, No. 5:06-CV-200-F, 2007 WL 9718581, at *4 (E.D.N.C. Aug. 9, 2007) ("[A] determination of whether [school employee defendant] is entitled to qualified immunity would be premature at this juncture.").

### f. Defendants Violated Plaintiff's Clearly Established Rights

In the event this court is inclined to address the qualified immunity question at this stage of the litigation, it should deny qualified immunity here. The rights of which Plaintiff was deprived

were "clearly established" at the relevant time, defeating qualified immunity. As this court explained *over fifty years ago*:

> [W]here exclusion or suspension for any considerable period of time is a possible consequence of proceedings, modern courts have held that due process requires a number of procedural safeguards such as: (1) notice to parents and student in the form of a written and specific statement of the charges which, if proved, would justify the punishment sought; (2) a full hearing after adequate notice and (3) conducted by an impartial tribunal; (4) the right to examine exhibits and other evidence against the student; (5) the right to be represented by counsel (though not at public expense); (6) the right to confront and examine adverse witnesses; (7) the right to present evidence on behalf of the student; (8) the right to make a record of the proceedings; and (9) the requirement that the decision of the authorities be based upon substantial evidence.

*Givens v. Poe*, 346 F. Supp. 202, 209 (W.D.N.C. 1972).

Thus, Plaintiff was denied the clearly established right to adequate notice when Defendant Hall failed to provide notice of any purported incident on November 12-13, 2020, prior to the Jane Roe 1 hearing, and Defendant Feeney permitted the Jane Roe 1 hearing to move forward on essentially a brand-new charge without any prior notice (Compl. ¶¶ 605, 610). Defendants Hall, Gibson, Enlow, and Froehling further violated Plaintiff's clearly established right to adequate notice when he was not informed of the charges against him prior to his EEAC suspension hearings, nor was he informed about the withdrawal of two of the complaints, nor was he informed of new and falsified charges made by Jane Roes 2, 3, and 4, despite those accusations/charges forming the basis for the decisions to continue Plaintiff's interim suspension (Compl. ¶¶ 607-09).

Plaintiff was also denied his clearly established right to "confront and examine adverse witnesses"[12] when Defendants Hall and Feeney precluded Plaintiff's advisor from completing his

---

[12] Plaintiff acknowledges that the Fourth Circuit has recently stated, in an unpublished opinion, that the right to cross-examination in school disciplinary proceedings has not yet been clearly established (*Doe v. The Citadel*, No. 22-1843, 2023 WL 3944370 (4th Cir. June 12, 2023)); however, Plaintiff respectfully submits the Fourth Circuit's statement is incorrect in light of the

cross-examination of Jane Roe 1 and instead permitted her *attorney* to present Jane Roe 1's testimony. (Compl. ¶ 610). Plaintiff was further deprived of this right when Defendants Hall and Elrod permitted Jane Roe 4 to not participate in the hearing, and then ultimately found her to be more credible, despite the hearing panel having no ability to make any such determination without Jane Roe 4's presence. (Compl. ¶ 597). Plaintiff was further deprived of his right to present evidence and witnesses in his defense, when Defendant Elrod prohibited Plaintiff from submitting exculpatory evidence pertaining to Jane Roe 4's credibility. (Compl. ¶¶ 598-99). Finally, Plaintiff was denied his clearly established right to an impartial tribunal, because Defendants were biased against male respondents in sexual misconduct proceedings, and further, because Defendants Enlow and Froehling tainted the investigative record with leading questions and false conclusions of sexual misconduct, predisposing the hearing panel to view Plaintiff as guilty from the start, and Defendant Elrod refused to correct the record regarding same. (Compl. ¶¶ 442, 490, 501-02).

In light of the Individual Defendants' violations of Plaintiff's clearly established rights, qualified immunity does not apply, and their motion to dismiss should be denied.

### IV. Plaintiff's State Law Claims

a. <u>Negligent Hiring, Supervision, and Retention – Defendant Hall</u>

Defendants argue that Plaintiff's negligent hiring/supervision/retention claim must fail because: (i) he has not identified an independent duty of care, (ii) negligent hiring claims can only be made against employers, not supervisors, and (iii) he has not alleged that Defendant Enlow[13] was incompetent. (Indiv. Defs.' Mot. 21-23). Defendants are wrong on all three counts.

---

North Carolina state court decisions cited above, as well as this court's published decision over fifty years ago in *Givens v. Poe*, 346 F. Supp. at 209.

[13] Defendants' motion only addresses the negligent hiring claim as to Defendant Enlow and does not reference Defendant Elrod at all. Plaintiff respectfully submits Defendants have therefore waived their opportunity to move to dismiss the negligent hiring claim with respect to Elrod.

First, *neither* of the two cases cited by Defendants for the proposition that a supervisor cannot be personally sued for negligent hiring/supervision, actually addresses that issue, let alone resolves it conclusively. Both *Braswell v. Braswell*, 330 N.C. 363 (1991), and *Keith v. Health-Pro Home Care Servs., Inc.*, 381 N.C. 442 (2022), merely address the general requirements for a negligent hiring claim. Moreover, North Carolina law defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." N.C.G.S. § 95-25.2. Thus, according to the definition of "employer" under North Carolina law, Defendant Hall can indeed be considered Defendant Enlow's (and Elrod's) "employer": Hall, in her capacity as Title IX Coordinator, acting in the interest of UNC, assigned and supervised Defendant Enlow to serve as investigator on all four cases against Plaintiff (and Hall hired and retained Defendant Elrod to serve as a hearing chair in the Jane Roe 4 case). (Compl. ¶¶ 16, 790-97). Thus, Plaintiff adequately identifies an "employer" subject to liability under a negligent hiring claim.

Second, as Defendants' own cited case explains, a claim for negligent hiring does *not* require an allegation of a stand-alone duty of care owed by the employer to the third party plaintiff, as is required for an ordinary negligence claim; rather, the cause of action itself is premised on the existence of such a duty already, as long as there is a sufficient "nexus" between the employment and the tortious act. *Keith*, 381 N.C. at 451-55.

Third and finally, Plaintiff sufficiently alleges that Hall knew or should have known that Enlow and Elrod were incompetent to perform their duties as a thorough, neutral and detached Title IX investigator and adjudicator, respectively. Hall oversaw the entire investigative process and was aware that Defendant Enlow had improperly tainted the investigative record and made responsibility findings unsupported by the evidence. With respect to Defendant Elrod, a simple google search of his name with "Title IX" quickly reveals the *Gulyas* lawsuit in which Elrod is

accused of deliberately railroading a male respondent. Further, Defendant Hall was present for the Jane Roe 4 hearing and witnessed Elrod admitting his lack of familiarity with UNC's policies and his decision to preclude evidence without an actual basis for such in the policy. (Compl. ¶¶ 375-82, 407, 490, 494-500). Thus, Hall was certainly on notice, both actual and constructive, that Defendants Enlow and Elrod were incompetent to serve as neutral, knowledgeable, diligent participants in Plaintiff's Title IX cases. *See Keith*, 381 N.C. at 463 (incompetence is not merely lack of skill, but may include untrustworthiness or bad temper). Defendant Hall's motion to dismiss Plaintiff's negligent hiring/retention claim should be denied.

### b. Negligent/Intentional Infliction of Emotional Distress

Defendants argue for dismissal of Plaintiff's emotional distress claims because he has not alleged *proof* of his emotional distress, nor ruled out alternative causes for such distress. (Indiv. Defs.' Mot. 23-25). These are substantive issues that are inappropriate for determination on a Rule 12(b)(6) motion. Plaintiff alleges he suffered severe emotional distress which resulted from Defendants' extensive misconduct in branding him a rapist and precluding him from the state public education system, after taking consistent steps to tip the scales against him and ensure he would be found responsible and expelled. (Compl. ¶¶ 802-04, 810-12). North Carolina courts have previously held that, given the high stakes and emotional component in sexual misconduct matters, school employees' mishandling of a sexual misconduct *case* can suffice to make out an intentional infliction of emotional distress claim; as such, it can certainly meet the lesser standard for negligent infliction of emotional distress as well. *Rouse v. Duke Univ.*, 869 F. Supp. 2d at 681–82 (M.D.N.C. 2012). Defendants' motion to dismiss Plaintiff's emotional distress claims should be denied.

## CONCLUSION

In light of the above, the Individual Defendants' Motion to Dismiss for improper venue, failure to state a claim, and Eleventh Amendment/qualified immunity, should be denied.

DATED: New York, New York
June 22, 2023

Respectfully submitted,

**NESENOFF & MILTENBERG, LLP**
*Attorneys for Plaintiff*

By: _/s/ Andrew Miltenberg_
Andrew T. Miltenberg, Esq.
Stuart Bernstein, Esq.
Tara J. Davis, Esq.
363 Seventh Avenue, Fifth Floor
New York, New York 10001
(212) 736-4500
amiltenberg@nmllplaw.com
sbernstein@nmllplaw.com
tdavis@nmllplaw.com

-and-

**EKSTRAND AND EKSTRAND, LLP**

By: /s/_ Robert Ekstrand_
Robert C. Ekstrand, Esq.
110 Swift Avenue, 2nd Floor
Durham, North Carolina 27705
(919) 416-4590
rce@ninthstreetlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on June 22, 2023, I filed the foregoing using the Clerk's CM/ECF system, which will provide notice to all counsel of record.

By: /s/  *Robert Ekstrand*
Robert C. Ekstrand, Esq.
110 Swift Avenue, 2nd Floor
Durham, North Carolina 27705
(919) 416-4590
rce@ninthstreetlaw.com