IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL ACTION NO: 1:23-CV-00041

JACOB DOE,

    Plaintiff,

v.

THE UNIVERSITY OF NORTH
CAROLINA SYSTEM, et al.

    Defendants.

UNC DEFENDANTS'
REPLY BRIEF IN SUPPORT OF
MOTION TO DISMISS

i

# TABLE OF CONTENTS

ARGUMENT ........................................................................................................................ 1

    I.    Venue Is Improper in the Western District. ........................................................ 1

        A.    The UNC System Does Not Reside in This District. ..................................... 2

        B.    The Substantial Events of This Case Did Not Occur in This District. ............ 4

    II.    Plaintiff's Title IX Claim Should Be Dismissed. ................................................ 5

        A.    Plaintiff Misstates the Fourth Circuit Standard for Discrimination Claims. ................................................................................................................ 6

        B.    Plaintiff's Made-Up, Multi-Factor Test Ignores *Sheppard* and His Own Facts. ............................................................................................................ 7

        C.    Under *Sheppard*, Plaintiff Has Failed to State a Title IX Claim. .................... 9

    III.    Plaintiff's State Constitution Claim Is Barred by the Eleventh Amendment. .................................................................................................... 10

CONCLUSION ................................................................................................................ 10

In response to the UNC Defendants' Motion to Dismiss, Plaintiff disregards the Fourth Circuit's standard for stating discrimination claims and ignores recent Fourth Circuit precedent dismissing Title IX claims based on the very arguments he makes here.

In place of that precedent, Plaintiff proposes a ten-part, multi-factor test for showing gender bias. ECF 39 at 16-17. Plaintiff invents this test from cases arising outside of North Carolina *before* the Fourth Circuit's *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230 (4th Cir. 2021) decision that controls his Title IX claim.

Plaintiff's difficulty in supporting his Title IX claim based on *Sheppard* and cases arising *after* it is revealing, and the takeaway is simple: Plaintiff has not alleged sufficient facts to show that gender discrimination was the *but-for cause* of his injury.

Before further discussing Plaintiff's Title IX claim, the UNC Defendants first address venue, which is improper, thus supporting dismissal or transfer. This Reply concludes by showing that Plaintiff's state constitution claim is barred by UNC-CH's Eleventh Amendment immunity, which Plaintiff conflates with sovereign immunity.[1]

## ARGUMENT

### I. Venue Is Improper in the Western District.

Plaintiff argues that venue is proper in this District because (1) the UNC System resides here and (2) the substantial events giving rise to his claim occurred here. ECF 39 at 9-13. As an initial mater, the Complaint only alleges that venue is proper under 28 U.S.C. §1391(b)(2), ECF 1 ¶26, which concerns the substantial events giving rise to a

---

[1] The UNC Defendants' opening brief complied with this Court's default Pretrial Order by using 14-point font. Had Plaintiff's Response also used 14-point font, rather than 12-point font, it would have been at least 10 pages over the 25-page limit.

claim, and the Complaint makes no mention of §1391(b)(1) concerning residency. Assuming (without conceding) that both §§1391(b)(1) and (b)(2) can be considered, Plaintiff has not sufficiently alleged proper venue under either provision.

### A. The UNC System Does Not Reside in This District.

Plaintiff mistakenly assumes that the UNC System is a corporation for venue purposes and that §1391(d)'s residency definition applies. The UNC System is a "body politic and corporate," meaning it "may do all such things as are usually done by bodies corporate and politic," N.C. Gen. Stat. §116-3, but it is not, in fact, a registered corporation. *See also O'Neal v. Wake Cnty.*, 196 N.C. 184, 145 S.E. 28, 29 (1928).

Accordingly, §1391(c)'s residency definition for entities "whether or not incorporated" applies. Though Plaintiff ignores this provision, it explicitly states that an entity resides in a judicial district if it "is subject to the court's personal jurisdiction *with respect to the civil action in question*." 28 U.S.C. §1391(c)(2) (emphasis added). This shows that residency under §1391(c) is a question of specific jurisdiction. ECF 35 at 12.

Even if that distinction were set aside, Plaintiff cannot establish the UNC System's residency in this District because there is neither (1) specific nor (2) general jurisdiction.

**First,** Plaintiff contends there is specific jurisdiction because he has been expelled from all UNC System schools, and some of those schools are located in this District. ECF 39 at 11. Specific jurisdiction requires "an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum." *Bristol-Myers Squibb Co. v. Superior Ct. of Ca.*, 582 U.S. 255, 262 (2017) (cleaned up). There is no such connection between Plaintiff's claims and this District.

Indeed, Plaintiff concedes that his claims do not *arise from* the UNC System's contacts with this District but asserts that his claims sufficiently *relate to* its contacts

2

with this District. ECF 39 at 11-12 (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021)). While *Ford* states "some relationships will support jurisdiction without a causal showing," it also states "[t]hat does not mean anything goes. . . the phrase 'relate to' incorporates real limits." 141 S. Ct. at 1026. This meant Ford was subject to products liability claims in states where its cars' alleged defects had caused injuries, even if those cars were not manufactured or sold there. *Id.* at 1028-29.

Here, while Plaintiff has been expelled from all UNC System schools, including those in this District, nothing about his claims relates to those schools, nor has he alleged any interest in attending those schools. Analogizing this case to *Ford*, it is as if Plaintiff crashed his car in the Middle District but is suing in the Western District because he cannot drive his damaged car here, though he has never driven here and has no plans to do so. This defies the limits of relate-to specific jurisdiction recognized in *Ford*.

**Second,** Plaintiff's reliance on the presence of UNC System schools in this District is insufficient to show general personal jurisdiction. Plaintiff cites outdated law to argue that there is general jurisdiction because the UNC System has systematic, continuous contact with the forum. ECF 39 at 10-11. The paradigmatic forums for general jurisdiction, however—where an entity is "at home"—are its place of incorporation and principal place of business. *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413-14 (2017).

Here, the UNC System was created in Raleigh, 1971 N.C. Sess. Laws Ch. 1244, and its principal place of business is in Raleigh, 2021 N.C. Sess. Laws §40.1.(h1).

A defendant is not subject to general jurisdiction merely because it has locations or offices in a forum. For example, even when Marriott had 90 hotels in South Carolina, it was not subject to jurisdiction there when it was sued by a South Carolinian injured at a Marriott in Italy. *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 134 (4th Cir. 2020).

3

Likewise, the UNC System is not subject to jurisdiction just because it has schools in this District. Those schools do not make the UNC System "at home" in the Western District.

Accordingly, venue is improper under §1391(b)(1).

### B. The Substantial Events of This Case Did Not Occur in This District.

Plaintiff also argues that venue is proper under §1391(b)(2) because the substantial events "giving rise" to his claims occurred in this District. ECF 39 at 12-13. Plaintiff relies on three "events" to support this argument. But one of those events did not occur, one involves a non-party to this case, and none *gave rise* to his claims.

**First,** Plaintiff argues that he entered his enrollment contract with UNC-CH in this District. *Id.* at 12. But there are no fact allegations showing the creation of a contract. Instead, Plaintiff alleges that he enrolled at UNC-CH and his family owns a home in Morganton. *Id.* (citing ECF 1 ¶¶27, 214). He then conclusorily alleges that UNC-CH's policies created a contractual relationship,[2] without alleging facts showing any contract was entered. *Id.* (citing ECF 1 ¶752). For example, he fails to identify any contract with UNC-CH that he signed or executed in this District.

**Second,** Plaintiff argues that his MCF scholarship supports venue. ECF 39 at 12. Here, he alleges that he "entered into a signed written contract with the Morehead-Cain Foundation on March 13, 2019." ECF 1 ¶755. But he also alleges that MCF is "a third-party entity that is distinct and separate from the University." *Id.* ¶817. So while this contract seemingly exists, it cannot support venue against non-parties to the contract.

---

[2] University policies do not create contracts with students. *Cash v. Lees-McRae Coll., Inc.*, No. 1:18CV52, 2018 WL 7297876, at *12 (W.D.N.C. Aug. 13, 2018), *report and recommendation adopted,* No. 1:18-CV-00052-MR-WCM, 2019 WL 276842 (W.D.N.C. Jan. 22, 2019), *aff'd,* 811 F. App'x 190 (4th Cir. 2020).

4

**Third,** Plaintiff argues that venue is proper because one of his alleged assaults of Jane Roe 4 occurred in this District. ECF 39 at 12. But like his contract arguments, this occurrence in and of itself did not *give rise* to his claims. The events giving rise to his claims all occurred at UNC-CH in the Middle District. That is where Plaintiff's misconduct was reported and investigated, and where the subsequent hearings, appeals, and discipline took place. Without these events, Plaintiff would have no claims.

Moreover, the one event involving Jane Roe 4 can hardly surpass the substantiality threshold when nearly every other material event occurred in the Middle District. *See Oldham v. Pa. State Univ.*, 507 F. Supp. 3d 637, 645-46 (M.D.N.C. 2020) (transferring case under Rule 12(b)(3) where "the vast majority of underlying events did not occur" in the district where the case was filed); *Taylor v. City & Cnty. of Honolulu*, No. 7:16-CV-410-D, 2017 WL 3526660, at *3 (E.D.N.C. Aug. 16, 2017) (same).

Accordingly, venue is also improper under §1391(b)(2).[3]

## II. Plaintiff's Title IX Claim Should Be Dismissed.

Plaintiff's misstatements and avoidance of Fourth Circuit law readily show the deficiency of his Title IX claim. **First,** Plaintiff relies on Second Circuit law for stating a discrimination claim. But his own case, *Doe v. Marymount Univ.*, 297 F. Supp. 3d 573, 581 & n.9 (E.D. Va. 2018), shows how that standard differs from the Fourth Circuit's in meaningful ways. **Second,** Plaintiff proposes a multi-factor test for showing gender discrimination based on cases like *Marymount*. But these cases were decided without *Sheppard*'s clear guidance for stating a Title IX claim, and they are factually distinct from

---

[3] Though the UNC Defendants have asked for the Complaint to be dismissed for improper venue, they agree that a transfer to the Middle District would also be proper.

Plaintiff's case. **Third,** Plaintiff ignores the Fourth Circuit's most recent cases applying *Sheppard*. Those cases show that Plaintiff's conclusory allegations of discrimination are insufficient to plausibly establish that gender was the *but-for* cause of his injury.

### A. Plaintiff Misstates the Fourth Circuit Standard for Discrimination Claims.

Plaintiff relies on *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002) to argue that he is not required to plead a prima facie discrimination claim under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). ECF 39 at 8-9, 26-28.[4] But Plaintiff misstates how *Swierkiewicz* interacts with the *Iqbal/Twombly* plausibility pleading standard. In lieu of controlling Fourth Circuit law, Plaintiff relies on the more lenient standard from *Doe v. Columbia Univ.*, 831 F.3d 46 (2d Cir. 2016). There, the Second Circuit determined that fact allegations are sufficient if they support a "*minimal* plausible inference" of discrimination. *Id.* at 56 (emphasis added).

In contrast, the Fourth Circuit has held that fact allegations must support a "*reasonable* inference" of bias to state a plausible claim. *McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 585 (4th Cir. 2015) (emphasis added). In *McCleary-Evans*, it was not reasonable to infer that "non-Black decisionmakers" were motivated to hire "non-Black candidates," even if that notion was consistent with discrimination, because there were only conclusory allegations of discriminatory motives. *Id.* at 585-86.

Similarly, in *Bing v. Brivo Sys., LLC*, 959 F.3d 605 (4th Cir. 2020), that the plaintiff was "aware of no alternative explanation" for his discharge and "gues[ed]" that his employer "[wa]s racially motivated d[id] not amount to pleading actual facts to

---

[4] Both parties cite "case law interpreting Title VII . . . for guidance in evaluating a claim brought under Title IX." *Jennings v. Univ. of N.C.*, 482 F.3d 686, 695 (4th Cir. 2007).

6

support a claim of racial discrimination." *Id.* at 617-18; *cf. Woods v. City of Greensboro*, 855 F.3d 639, 647-50 (4th Cir. 2017) (examples of white businesses being treated differently than minority-owned businesses allowed for reasonable inference of bias).

Plaintiff seemingly relies on Second Circuit law because his claim fails under Fourth Circuit law. Here, Plaintiff presents a laundry list of UNC-CH decisions he disagrees with and posits that the only possible explanation for those decisions is gender bias. But the quantity of Plaintiff's complaints cannot make up for the absence of actual facts showing bias. Simultaneously, Plaintiff casts aside the fact that UNC-CH twice found in his favor, treating those decisions as flukes in a process he argues is otherwise driven by bias. This logic defies the limits of a "reasonable inference" and lands squarely in the territory of speculation that cannot support a plausible claim.

### B. Plaintiff's Made-Up, Multi-Factor Test Ignores *Sheppard* and His Own Facts.

Further departing from Fourth Circuit law, Plaintiff proposes a lengthy, multi-factor test for showing gender bias. In support of this test, Plaintiff relies on cases decided *before Sheppard* established that to state a Title IX claim "the alleged facts, if true, [must] raise a plausible inference that the university discriminated against the student on the basis of sex." 993 F.3d at 235. *See* ECF 39 at 16-17 (citing *Salisbury*, *Marymount*, and *Coastal Carolina*). Plaintiff's made-up test should be rejected for several reasons.

**First,** not only do his cases lack precedential value but, rather than *Sheppard*, they applied the Second Circuit's erroneous outcome test from *Yusuf v. Vassar College*, 35 F.3d 709 (2d Cir. 1994).[5] As a result, in *Doe v. Coastal Carolina Univ.*, 359 F. Supp. 3d

---

[5] Plaintiff notes that the UNC Defendants did not contest the first two prongs of *Yusuf's*

7

367 (D.S.C. 2019), the court appeared to lower the pleading standard in response to arguments that the plaintiff could not support his claim without discovery. *Id.* at 377.

Such an argument would not pass *Sheppard*'s plausibility standard. *See McCleary-Evans*, 780 F.3d at 587. Yet Plaintiff makes the same type of argument contending he could show gender bias if only he had data about the outcomes of UNC-CH's Title IX hearings. ECF 39 at 17 & n.5, 21-22.

**Second,** Plaintiff's cases are factually distinct from his own case. Common facts across these cases are students who were denied counsel, denied access to the evidence against them, and denied hearings, often in violation of their universities policies. *See Coastal Carolina Univ.*, 359 F. Supp. at 371-72; *Marymount Univ.*, 297 F. Supp. 3d at 577-80; *Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 754-56 (D. Md. 2015). These cases also arose under different Title IX regulations and before the DCL was rescinded.

Here, Plaintiff had counsel and access to the evidence against him. His cases were investigated under more respondent-friendly Title IX regulations, and though he disagrees with many of UNC-CH's decisions, he does not claim policies were not followed. Instead, he claims the policies should give him more than Title IX requires.

**Third,** the factors Plaintiff relies on from these cases are not even the determinative ones that led those courts to conclude there were sufficient allegations of gender discrimination. For example, the decisive fact in *Marymount* was an adjudicator with a history of gender bias, having previously disbelieved that it was possible for a male

---

erroneous outcome test. ECF 39 at 16 & n.4; *see Kashdan v. George Mason Univ.*, 70 F.4th 694, 701 (4th Cir. 2023) (stating the three-pronged erroneous outcome test). But the first two prongs concern fact allegations the UNC Defendants cannot contest at this stage and, under *Sheppard*, everything essentially collapses into the third prong, though *Sheppard* makes clear that plausible, *but-for* causation is required. 993 F.3d at 235-37.

student to be sexually assaulted by a female student. 297 F. Supp. 3d at 585-86.

Here, there are no allegations showing that UNC-CH's hearing chairs or panelists engaged in gender-biased conduct. And there is no good reason to adopt a multi-factor test comprised of factors that were not dispositive to the courts' decision-making.

In sum, the Court should reject Plaintiff's test and look to *Sheppard* and cases applying its Title IX test. *See* ECF 35 at 14-15, 18 (citing *Dillow*, *Carter*, and *Citadel*).

### C. Under *Sheppard*, Plaintiff Has Failed to State a Title IX Claim.

Since the UNC Defendants filed their initial brief, the Fourth Circuit has decided two instructive Title IX cases. Plaintiff ignores both. Indeed, neither supports his claim.

In *Doe v. The Citadel*, the student plaintiff argued that procedural irregularities showed gender bias. No. 22-1843, 2023 WL 3944370, at *3 (4th Cir. June 12, 2023). The Court rejected this argument, concluding there were "ample procedural safeguards" in place because the student "received notice of the complaint and of the hearing" and was permitted "to present a statement and testimony, call witnesses, be accompanied by a representative, and appeal to a separate tribunal." *Id.* at *3. The Court also reasoned that "statistics alone," showing "women comprise the majority of complainants in university Title IX proceedings" did "not indicate discrimination or bias against men, *as other reasons unrelated to bias may explain the disparity.*" *Id.* at *4 (emphasis added).

Despite this, Plaintiff makes the same arguments about irregularities, ECF 39 at 19-21, though he received the procedural safeguards noted in *Citadel*. He also contends that "the question of alternative explanations . . . is not appropriate for . . . a Rule 12 motion," *id.* at 25-26, disregarding that *Citadel* was decided on a motion to dismiss.

In *Kashdan v. George Mason Univ.*, the Court rejected arguments that "pressure from the Department of Education and the general climate at GMU to find sexual

9

harassment accusations substantiated . . . create[d] a reasonable inference that anti-male bias motivated GMU's finding." 70 F.4th 694, 701 (4th Cir. 2023). Yet Plaintiff makes the same arguments, insisting that pressure to pursue sexual harassment automatically amounts to being pro-female and anti-male. ECF 39 at 17-19.

That *Citadel* and *Kashdan* undermine so many of Plaintiff's arguments and he otherwise misstates Fourth Circuit law shows there is no basis for his Title IX claim.

### III. Plaintiff's State Constitution Claim Is Barred by the Eleventh Amendment.[6]

Plaintiff conflates Eleventh Amendment immunity and sovereign immunity in opposing dismissal of his state constitution claim.[7] The two immunities are distinct. *Alden v. Maine*, 527 U.S. 706, 713 (1999). While *Corum* may have waived the State's sovereign immunity from certain claims under North Carolina's Constitution, the State maintains its immunity from suit in federal court under the Eleventh Amendment.

Plaintiff's confusion about this distinction is shown by his reliance on cases involving: counties, which lack Eleventh Amendment immunity; removal, which waives Eleventh Amendment immunity; and *pro se* prisoners, whose claims were reviewed solely for frivolity. ECF 39 at 31 (citing *Sheaffer*, *Torres*, *Carmona*, *El-Bey*).

Here, UNC-CH's Eleventh Amendment immunity is a full and complete defense to Plaintiff's state constitution claim. On those grounds, the claim is subject to dismissal.

### CONCLUSION

Accordingly, the Court should grant the UNC Defendants' Motion to Dismiss.

---

[6] Plaintiff concedes that the Eleventh Amendment bars his §1983 claim and other state law claims as he did not oppose dismissal in his Response. *See* ECF 39 at 30-31.
[7] Plaintiff also argues that UNC-CH only opposes his state constitution claim in passing in a parenthetical. ECF 39 at 30-31. This is incorrect. *See* ECF 35 at 26-27.

This 31st day of July, 2023.

JOSHUA H. STEIN
Attorney General

/s/ Kimberly D. Potter
Kimberly D. Potter
Special Deputy Attorney General
NC State Bar No. 24314
kpotter@ncdoj.gov

/s/ Jeremy D. Lindsley
Jeremy D. Lindsley
Assistant Attorney General
NC State Bar No. 26235
jlindsley@ncdoj.gov

/s/ Adrina G. Bass
Adrina G. Bass
Special Deputy Attorney General
NC State Bar No. 39521
abass@ncdoj.gov

North Carolina Department of Justice
PO Box 629
Raleigh, NC 27602
Tel: 919-716-6920
Fax: 919-716-6764

*Attorneys for Defendants*

/s/ Marla S. Bowman
Marla S. Bowman
N.C. Bar No. 49097
marla_bowman@unc.edu
Office of University Counsel
University of North Carolina
at Chapel Hill
123 W. Franklin St., Suite 600A
Chapel Hill, NC 27599-9105
Tel: (919) 962-1219

*Attorney for Defendant the University
of North Carolina at Chapel Hill*

11

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **UNC DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all registered CM/ECF users.

This 31st day of July, 2023.

/s/ Jeremy D. Lindsley
Jeremy D. Lindsley
Assistant Attorney General
NC State Bar No. 26235
jlindsley@ncdoj.gov
North Carolina Department of Justice
PO Box 629
Raleigh, NC 27602
Tel: 919-716-6920
Fax: 919-716-6764

*Attorneys for Defendants*