IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL ACTION NO: 1:23-CV-00041

| | |
|---|---|
| JACOB DOE,<br><br>    Plaintiff,<br><br>  v.<br><br>THE UNIVERSITY OF NORTH CAROLINA SYSTEM, et al.<br><br>    Defendants. | DEFENDANTS' BRIEF<br>IN SUPPORT OF<br>MOTION FOR CHANGE OF VENUE |

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 2

    I.    The Residency of the Parties. ............................................................................ 2

    II.    The Events Giving Rise to Plaintiff's Alleged Claims. ...................................... 4

LEGAL STANDARD ..................................................................................................... 6

ARGUMENT ................................................................................................................... 6

    I.    Venue is Proper in the Middle District. ............................................................ 7

    II.    The Weight of Relevant Factors Heavily Favors Transfer to the
        Middle District. ................................................................................................. 9

        A.    Plaintiff's Choice of Venue Merits Little Weight (Factor 1). ......................... 10

        B.    All Defendants Reside in or Near the Middle District (Factor 2). ................. 12

        C.    All of the Documentary Evidence is in Chapel Hill (Factor 3). ..................... 12

        D.    The Western District Lacks Compulsory Process Over Potential
            Witnesses Who Work or Live Near Chapel Hill (Factor 4). ........................ 13

        E.    Moving the case to the Middle District Will Make the Trial Easy,
            Expeditious, and Inexpensive (Factor 8). ................................................... 14

        F.    Defendants Have a Significant Interest in Having This Case Heard in the
            Middle District (Factor 10). ........................................................................ 14

CONCLUSION .............................................................................................................. 15

# INTRODUCTION[1]

In Spring 2021, Jacob Doe was expelled from the University of North Carolina at Chapel Hill ("UNC-CH") following several allegations of sexual misconduct. In his 192-page Complaint, Plaintiff complains that the process set by federal law and implemented in Chapel Hill through UNC-CH's policies was biased against him.

Despite the length of his Complaint, Plaintiff only alleges that he resides in North Carolina without specifying where within the State he resides. ECF 1 ¶9. As shown below, all Defendants reside in the Middle or Eastern District of North Carolina, and all substantial events giving rise to Plaintiff's claims occurred in the Middle District.

By filing this case in the Western District, Plaintiff has disregarded the convenience of witnesses and the parties and compelling interests of justice. For example, Plaintiff ignores the likelihood that most witnesses—including the Individual Defendants and other UNC-CH employees—reside in or near Chapel Hill. He likewise ignores that most documentary evidence is located and maintained in Chapel Hill.

Moving this case closer to the witnesses, the parties, and the documentary evidence would substantially promote the convenience of the parties and witnesses. Additionally, it would serve the interests of justice by decreasing the need for travel and potential delays in the proceedings. Therefore, this case should be transferred to the U.S. District Court for the Middle District of North Carolina for further disposition.

---

[1] Defendants have separately moved to dismiss this matter under Rule 12(b)(3), maintaining that the Western District is an improper venue for this case. ECF 32-35. Here, Defendants alternatively ask that the Court transfer this case to the Middle District pursuant to 28 U.S.C. §1404.

1

# BACKGROUND[2]

## I. The Residency of the Parties.

Plaintiff "resides in the State of North Carolina." ECF 1 ¶9. His family owns a home in Morganton. *Id.* ¶214. When UNC-CH closed its campus during the COVID-19 pandemic, Plaintiff briefly lived in a condominium in Charlotte and then returned to Chapel Hill and lived in his fraternity house. *See id.* ¶¶161, 171-72.

Plaintiff has sued UNC-CH, UNC-CH's Board of Trustees ("BOT"), the University of North Carolina System ("UNC System"), the Board of Governors of the University of North Carolina ("BOG") (collectively, the "UNC Defendants"), and eight Individual Defendants.

UNC-CH, as its name indicates, is located in Chapel Hill in Orange County. ECF 1 ¶11; *see also Semelka v. Univ. of N.C.*, 275 N.C. App. 683, 687-88, 854 S.E.2d 47, 50-51 (2020). UNC-CH's BOT also resides in Chapel Hill.[3]

The UNC System was created in Raleigh in Wake County, 1971 N.C. Sess. Laws Ch. 1244, and its principal place of business is in Raleigh, 2021 N.C. Sess.

---

[2] More complete recitations of the facts appear in the Briefs supporting the Defendants' Motions to Dismiss. ECF 33, 35. For this Motion, Defendants rely on the affidavits, ECF 32-2–32-8, and exhibits, ECF 35-2–32-5, that accompanied Defendants' Motions to Dismiss.

[3] *UNC Board of Trustees*, Archives, https://bot.unc.edu/minutes/ (showing minutes of the BOT's meetings at the Carolina Inn in Chapel Hill).

Laws§40.1.(h1).[4] The BOG of the UNC Systems likewise resides in Raleigh.[5]

Defendant Kevin Guskiewicz is UNC-CH's Chancellor. ECF 1 ¶15. He was sued only in his official capacity, ECF 1 at 1, and resides in Chapel Hill in Orange County.[6]

Defendant Elizabeth Hall is the Associate Vice Chancellor of UNC-CH's Equal Opportunity and Compliance Office ("EOC") and Title IX Coordinator. *Id.* ¶16. She resides in Durham in Durham County and is employed by UNC-CH. ECF 32-2.

Defendant Jeremy Enlow is an EOC investigator. ECF 1 ¶17. He resides in Burlington in Alamance County and is employed by UNC-CH. ECF 32-3.

Defendant Beth Froehling is an EOC investigator. ECF 1 ¶18. She resides in Hillsborough in Orange County and is employed by UNC-CH. ECF 32-4.

Defendant Rebecca Gibson is EOC's Director of Report and Response. ECF 1 ¶19. She resides in Durham in Durham County and is employed by UNC-CH. ECF 32--5.

---

[4] Before moving to Raleigh, the UNC System's principal place of business was in Orange County. *Semelka*, 275 N.C. App. at 687-88, 854 S.E.2d at 50-51 & n.4 (rejecting argument that "an action against any institution under the 'UNC umbrella' may be filed in any county in which one of its sixteen constituents" has a presence, and also rejecting argument that the UNC System is a corporation).

[5] *The University of North Carolina System*, Board Meetings and Materials, https://www.northcarolina.edu/apps//bog/index.php?code=bog&mode=all

[6] For venue purposes, Guskiewicz is considered to "reside in the judicial district where he maintains his official residence, that is, where he performs his official duties." *Oates v. N.C. State Treasurer*, No. 3:15-CV-541-GCM, 2016 WL 3226012, at *2 (W.D.N.C. June 7, 2016) (citing *Republican Party of N.C. v. Martin*, 682 F. Supp. 834, 836 (M.D.N.C. 1988)). As Chancellor of UNC-CH, Guskiewicz, performs his official duties in Chapel Hill and therefore resides for the purposes of venue in the Middle District.

3

Defendant Jaclyn Feeney is a Title IX Investigator at UNC-CH. ECF 1 ¶20. She resides in Southern Pines in Moore County and is employed by UNC-CH. ECF 32-6.

Defendant David Elrod is the Associate Vice Provost of Equal Opportunity and Equity of the Office for Institutional Equity and Diversity at North Carolina State University ("NCSU"). ECF 1 ¶21. He resides in Willow Spring in Wake County and is employed by NCSU. ECF 32-7.

Defendant Desirée Rieckenberg is the Dean of Students at UNC-CH. ECF 1 ¶22. She resides in Hillsborough in Orange County and is employed by UNC-CH. ECF 32-8.

In sum, all parties reside in North Carolina, nearly all Defendants reside within the Middle District, and no party resides in the Western District.

## II. The Events Giving Rise to Plaintiff's Alleged Claims.

In Fall 2019, Plaintiff enrolled at UNC-CH. ECF 1 ¶27. On March 29, 2021, four UNC-CH students—Jane Roes 1, 2, 3, and 4—reported that Plaintiff had engaged in sexual misconduct with each of them. *Id.* ¶¶226-27. At this point, Plaintiff was already being kicked out of his fraternity based on similar allegations. *Id.* ¶¶219-21, 227. On April 1, 2021, this information was submitted to UNC-CH's EOC. *Id.* ¶¶229-39.

On May 4, 2021, UNC-CH's Emergency Evaluation and Action Committee ("EEAC") placed Plaintiff on interim suspension. *Id.* ¶¶232-33. On May 11, 2021, Plaintiff requested a hearing on his interim suspension and submitted a memorandum supporting his position. *Id.* ¶¶243-44. On June 7, 2021, EEAC notified Plaintiff that it denied his appeal. *Id.* ¶254.

On June 30, 2021, EOC notified Plaintiff of the four student complaints against him. *Id.* ¶266. As part of the investigations, EOC interviewed Plaintiff, Roes 1, 2, 3, and 4, and several other students. *Id.* ¶¶281, 346-48.

When the investigations were complete, EOC prepared draft reports and submitted them for Plaintiff's review. *Id.* ¶¶358-61. After Plaintiff responded to the draft reports, EOC issued final reports. *Id.* ¶¶362, 364, 373, 408.

Hearings were held on all four matters between January and April 2022. *Id.* ¶¶385, 474, 484, 491. Each hearing was led by a Hearing Chair who oversaw a three-person panel. *See, e.g., id.* ¶¶20-21, 386, 492, 502, 507-08; ECF 35-3 at 8, 35-5 at 25. The hearing panels found Plaintiff not responsible in the Roe 2 and Roe 3 matters. *Id.* ¶¶475, 486, 527. But the hearing panels found Plaintiff responsible in the Roe 1 and 4 matters. *Id.* ¶¶509, 524, 527, 542. Thus, Plaintiff was suspended for one academic year in the Roe 1 matter and was expelled in the Roe 4 matter. *Id.* ¶¶522, 523, 526.

On June 26, 2022, Plaintiff appealed the outcome of the Roe 1 and Roe 4 hearings. *Id.* ¶¶528, 530. On August 3, 2022, an Appeals Officer affirmed the decision of the Roe 4 hearing panel. *Id.* ¶533. On August 17, 2022, an Appeal Officer affirmed the decision of the Roe 1 hearing panel. *Id.* ¶535.

Plaintiff appealed both decisions to UNC-CH's BOT. *Id.* ¶542. On February 14, 2023, the BOT likewise affirmed the Roe 1 and Roe 4 decisions, finding no clear and material error. *Id.* ¶¶549-52. Plaintiff filed this Complaint in the Western District of North Carolina the next day.

5

## LEGAL STANDARD

Section 1404(a) states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. . . ." 28 U.S.C. §1404(a).

Before considering whether to transfer a case under §1404(a), the court must determine if the case could have been brought in the transferee district originally; if the answer is "yes," courts apply a balancing test to weigh various factors to determine if a transfer is appropriate. *Caturano v. Armchem Int'l Corp.*, No. 1:20-cv-00173-MOC-DCK, 2020 WL 6065303, at *3 (W.D.N.C. Oct. 14, 2020).

Courts enjoy broad discretion to transfer matters when the proposed transferee court is also a proper forum under 28 U.S.C. §1391.

> If venue is proper in the transferor forum, and if the proposed transferee forum is one where the action might have been brought, then the district courts have substantial discretion to decide Section 1404(a) transfer motions by weighing various judge-made factors, all of which have been developed to take account of the "convenience of the parties and witnesses" or "the interests of justice" or both.

*Datasouth Computer Corp v. Three Dimensional Techns., Inc.*, 719 F. Supp. 446, 450 (W.D.N.C. 1989). And motions to transfer venue under §1404(a) may be brought at any time. *Newman v. Direct Energy, L.P.*, No. CV SAG-21-02446, 2023 WL 2914788, at *2 (D. Md. Apr. 12, 2023).

## ARGUMENT

The Court should transfer this case to the Middle District. **First,** the Middle District is a proper venue for this case under 28 U.S.C. §1391(b). **Second,** the convenience and justice factors considered under 28 U.S.C. §1404(a) heavily weigh in favor of a transfer.

6

## I. Venue is Proper in the Middle District.

Under 28 U.S.C. §1391(b):

> a civil action may be brought in—
>
> (1) A judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . .

Here, all Defendants reside in North Carolina. Thus, venue is proper in any judicial district where one Defendant resides. Though no Defendant resides in the Western District, seven Individual Defendants, UNC-CH, and its BOT reside in the Middle District. *See supra* at 2-4. Thus, under §1391(b)(1), the Middle District is a proper venue.

The Middle District is also a proper venue under §1391(b)(2) because the substantial events or omissions giving rise to Plaintiff's claims occurred in the Middle District. Indeed, each of Plaintiff's eight counts arise solely from Defendants' alleged conduct in the Middle District.

Plaintiff's claim for procedural due process violations under 42 U.S.C. §1983 (Count I) arises from allegations about Defendants' investigations of Plaintiff's misconduct and subsequent hearings, appeals, and discipline—all of which occurred at UNC-CH in the Middle District. ECF 1 at 120-33; ECF 32-2–32-8.

Plaintiff's Title IX claim (Count II) concerns UNC-CH's alleged gendered-biased conduct during the same process of investigations, hearings, appeals, and discipline that, again, occurred at UNC-CH in the Middle District. ECF 1 at 134-70.

7

Plaintiff's breach of contract claim (Count III) against UNC-CH arises from the same process, with Plaintiff contending that UNC-CH's policies created a contract that it breached in the Middle District. ECF 1 at 70-77.

Plaintiff's negligent hiring, supervision and retention claim against UNC-CH and Defendant Hall (Count IV) stems from their alleged failure to adequately supervise, train, and retain Defendant Enlow at UNC-CH in the Middle District. ECF 1 at 171-80.

Plaintiff's claim for negligent infliction of emotional distress against the Individual Defendants (Count V) stems from allegations that certain Defendants negligently carried out their duties at UNC-CH in the Middle District. ECF 1 at 181-82.

Similarly, Plaintiff's intentional infliction of emotional distress and conspiracy claim against the Individual Defendants (Count VI) arises from allegations that their actions amounted to extreme and outrageous conduct, which occurred at UNC-CH in the Middle District. ECF 1 at 183-84.

Plaintiff's claim for tortious interference with contract (Count VII) arises from allegations that Defendants' conduct in the Middle District caused the Morehead-Cain Foundation to suspend Plaintiff's scholarship to UNC-CH. ECF 1 at 184-86.

Finally, Plaintiff's claim that UNC-CH violated the North Carolina Constitution (Count VIII) arises from the same allegations giving rise to all his other claims—all of which occurred at UNC-CH in the Middle District. ECF 1 ¶826a-e.

Thus, the substantial events giving rise to Plaintiffs' claims against Defendants occurred in the Middle District, making it a proper venue under §1391(b)(2).

Accordingly, the Court can transfer this matter to the Middle District under either or both §§1391(b)(1) and (2).

## II. The Weight of Relevant Factors Heavily Favors Transfer to the Middle District.

The Fourth Circuit has established four factors for determining whether a §1404(a) transfer is appropriate: "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interests of justice." *Tr.s of the Plumbers and Pipefitters Nat'l Pension Fund v. Plumbing Services, Inc.*, 791 F.3d 436, 444 (4th Cir. 2015). The convenience and justice factors are further analyzed by considering additional factors. *Silva v. Pavlak*, No. 5:18CV97, 2018 WL 4775510, at *6 (W.D.N.C. Oct. 3, 2018) (citing *Scholl v. Sagon RV Supercenter, LLC*, 249 F.R.D. 230, 239 (W.D.N.C. 2008)). Those factors are:

1. The plaintiff's initial choice of forum;
2. The residence of the parties;
3. The relative ease of access of proof;
4. The availability of compulsory process for attendance of witnesses and the costs of obtaining attendance of willing witnesses;
5. The possibility of a view;
6. The enforceability of a judgment, if obtained;
7. The relative advantages and obstacles to a fair trial;
8. Other practical problems that make a trial easy, expeditious, and inexpensive;
9. The administrative difficulties of court congestion;
10. The interest in having localized controversies settled at home and the appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the action; and
11. The avoidance of unnecessary problems with conflict of laws.

9

*Scholl*, 249 F.R.D. at 239, 242-43 (transferring case under §1404(a) when the defendant's operations, documents, and witnesses were in the transferor forum, among other reasons).

A court should base its decision of a §1404(a) transfer motion on an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). A transfer is proper when the weight of the enumerated factors, considered together, substantially favors the transfer. *Collins v. Straight*, 748 F.2d 916, 921 (4th Cir. 1984).

Here, transferring this case to the Middle District represents more than merely shifting inconvenience from one party to the other. Weighing the factors identified by the Fourth Circuit in *Plumbing Services,* 791 F.3d at 444, as further articulated in *Scholl*, 249 F.R.D. at 239, heavily favors transfer to the Middle District. Indeed, of the eleven factors identified in *Scholl*, six heavily support transfer, five are neutral,[7] and none oppose transfer.

### A. Plaintiff's choice of venue merits little weight (Factor 1).

Generally, courts afford substantial weight to a plaintiff's choice of venue when determining whether a transfer is appropriate. *Plumbing Services,* 791 F.3d at 444. However, the weight of a plaintiff's choice "varies with the significance of the contacts between the venue chosen by plaintiff and the underlying contacts." *Sandvik Intellectual Prop. A.B. v. Kennametal, Inc.,* No. 1:09-cv-1693-MR, 2010 WL 1924504 at * 6

---

[7] Specifically, factors 5-7, 9, and 11 are neutral.

10

Case 1:23-cv-00041-MR   Document 45   Filed 07/31/23   Page 12 of 19

(W.D.N.C. May 12, 2010) (quoting *Koh v. Microtek Int'l, Inc.,* 250 F. Supp. 2d 672, 635 (E.D.Va. 2003)). "Thus, if there is little connection between the claims and [the chosen] judicial district, that would mitigate against a plaintiff's chosen forum and weigh in favor of transfer to a venue with more substantial contacts." *Id.* (quoting *Koh,* 250 F. Supp. 2d. at 635).

Here, as shown above, the substantial events giving rise to Plaintiff's claims occurred in Chapel Hill in the Middle District. *See supra* at 7-8. In addition, there is no indication that Plaintiff has any current connection with the Western District. Plaintiff's Complaint does not identify his place of domicile. Instead, he merely alleges that he "resides in the State of North Carolina." ECF 1 ¶9.

In the absence of allegations establishing that Plaintiff has a significant connection to the Western District, the Court should give little weight to Plaintiff's choice to locate his case here. *See Stevens v. Atricure Inc.,* No. 3:17-CV-10-MOC-DSC, 2021 WL 4785503, at *2 (W.D.N.C. Oct. 12), *appeal denied,* No. 3:17-CV-10, 2021 WL 9848141 (W.D.N.C. Dec. 7, 2021); (transfer will generally be granted "where this district 'is neither the plaintiff's residence, nor the place where the operative events occurred.'" (quoting *Husqvarna AB v. Toro Co.,* No. 3:14-CV-103-RJC-DCK, 2015 WL 3908403, at *2 (W.D.N.C. June 25, 2015))). See *also Windy City Innovations, LLC v. Microsoft Corp.,* No. 1:15-CV-00103-GCM, 2016 WL 1048069, at *4 (W.D.N.C. Mar. 16, 2016).

Thus, despite the deference usually given to a plaintiff's choice of forum, this factor weighs heavily in favor of transfer.

### B. All Defendants reside in or near the Middle District (Factor 2).

This factor weighs heavily in Defendants' favor. As discussed above, seven Individual Defendants, UNC-CH, and its BOT reside in the Middle District. One Individual Defendant, the UNC System, and the BOG reside in the Eastern District. *Supra* at 2-4. No Defendant resides in the Western District.

The current forum lies approximately 230 miles from Chapel Hill. In contrast, the Middle District's facilities are only 77 miles (Winston-Salem), 47 miles (Greensboro), and 12 miles (Durham) from Chapel Hill. Moving this case to the Middle District would relieve all Defendants of burdensome and expensive long-distance travel and avoid possible delays that too often accompany long-distance travel.

In contrast, Plaintiff has not identified his residence. Thus, the Court has no information to conclude that a transfer to the Middle District would work any inconvenience upon him.

### C. Most documentary evidence is in Chapel Hill (Factor 3).

This factor further tips the scale toward transfer. Since all of the actions giving rise to Plaintiff's claims occurred in Chapel Hill, and all but one Individual Defendant are employees of UNC-CH, it is reasonable to conclude that most of the documentary evidence, including documents relating to the processes and procedures provided to Plaintiff following the complaints of sexual misconduct against Plaintiff is located in Chapel Hill. Regardless of the effects of modern technology on the storage, retrieval, and transmission of documents, holding proceedings nearer the place where these documents are kept undoubtedly promotes even greater efficiencies. *See Carstar Franchisor SPV LLC v. David M. Roberts, Focus Advisors, Inc.*, 3:23-cv-234-FDW-

12

SCR, 2023 WL 4604591, *4 (W.D.N.C. Jul. 18, 2023) (considering the residence of employees maintaining business records in venue analysis even though key evidence is entirely electronic).

### D. The Western District Lacks Compulsory Process Over Potential Witnesses Who Work or Live Near Chapel Hill (Factor 4).

Under Rule 45, a subpoena "may command a person to attend a trial, hearing, or deposition . . . within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(A). Because Chapel Hill is more than 200 miles from this Court's location in Asheville, any potential fact witnesses employed by UNC-CH, who also live near UNC-CH in Chapel Hill, are unlikely to be subject to this Court's subpoena power. Several such potential witnesses are referenced in the Complaint.

For example, Plaintiff complains of the actions or omissions of EEAC. ECF 1 ¶6. EEAC is a committee comprised of several individuals, including UNC-CH's Vice Chancellor for Student Affairs, UNC-CH's Director of Counseling and Wellness Services, a faculty or professional staff member from UNC-CH's Committee on Student Conduct, a representative of UNC-CH's Department of Housing and Residential Education, UNC-CH's Chief of Police, and other UNC-CH employees depending on the nature of the matter pending before EEAC.[8] Except for Defendant Desiree Rieckenberg, no other EEAC member is a named defendant.

---

[8] *See* Emergency Evaluation and Action Committee Policy and Procedures at https://policies.unc.edu/TDClient/2833/Portal/KB/ArticleDet?ID=132459

Additionally, each of the four EOC hearing panels consisted of three members. *Supra* at 5. These non-party individuals may have necessary and important information about the evidence they received and considered when they made their decisions.

Finally, Plaintiff references several other individuals, including the Roes and his former fraternity brothers who, as students, seemingly resided in Chapel Hill and may still reside in or near Chapel Hill. These individuals also may have information related to Plaintiff's claims and purported injuries, including his alleged reputational injury. While the exact location of these witnesses is unknown at this early stage, their connection with Chapel Hill cannot be ignored.

### E. Moving the Case to the Middle District Will Make the Trial Easy, Expeditious, and Inexpensive (Factor 8).

Moving this matter to the Middle District, where most parties and witnesses live and where documentary evidence and records custodians are located, will expedite the proceedings, lower the costs of obtaining discovery, and reduce travel expenses and delays inherent in long-distance travel.

### F. Defendants Have a Significant Interest in Having This Case Heard in the Middle District (Factor 10).

Courts recognize a significant interest in having local matters decided at home. *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (4th Cir. 2008). Most Defendants reside and work in the Middle District. Plaintiff asserts claims against all eight Individual Defendants in their official and individual capacities. Plaintiff seeks recovery not only from the State but also from the Individual Defendants personally. These factors create a significant local connection to the Middle District. In contrast, Plaintiff has not shown a significant connection to the current District. Accordingly, Defendants should be

14

allowed to defend against Plaintiff's claims in their "home forum," especially considering that most, if not all, of the substantial acts giving rise to Plaintiff's claims occurred in Chapel Hill.

\* \* \*

In sum, the weight of relevant factors substantially favors moving this case to the Middle District.

## CONCLUSION

For the reasons set forth above, the Court should transfer the case to the United States District Court for the Middle District of North Carolina for all further proceedings.

This 31st day of July, 2023.

JOSH STEIN
Attorney General

/s/ Kimberly D. Potter
Kimberly D. Potter
Special Deputy Attorney General
NC State Bar No. 24314
kpotter@ncdoj.gov

/s/ Adrina G. Bass
Adrina G. Bass
Special Deputy Attorney General
NC State Bar No. 39521
abass@ncdoj.gov

/s/ Jeremy D. Lindsley
Jeremy D. Lindsley
Assistant Attorney General
NC State Bar No. 26235
jlindsley@ncdoj.gov

North Carolina Department of Justice
PO Box 629
Raleigh, NC 27602
Tel: 919-716-6920

15

Fax: 919-716-6764

*Attorney for Defendants*

/s/ Marla S. Bowman
Marla S. Bowman
N.C. Bar No. 49097
marla_bowman@unc.edu
Office of University Counsel
University of North Carolina
at Chapel Hill
123 W. Franklin St., Suite 600A
Chapel Hill, NC 27599-9105
Tel: (919) 962-1219

*Attorney for Defendant the University of North Carolina at Chapel Hill*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR CHANGE OF VENUE** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all registered CM/ECF users.

This 31st day of July, 2023.

/s/ Jeremy D. Lindsley

Jeremy D. Lindsley

Assistant Attorney General