## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## CIVIL ACTION NO: 1:23-CV-00041

-------------------------------------------------------------X

**JACOB DOE,**

                     *Plaintiff*,

       -against-

**THE UNIVERSITY OF NORTH CAROLINA
SYSTEM, et al.,**

                   *Defendants*.

-------------------------------------------------------------X


## PLAINTIFF JACOB DOE'S MEMORANDUM OF LAW IN OPPOSITION
## TO THE DEFENDANTS' MOTION FOR CHANGE OF VENUE

# **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................1

STATEMENT OF RELEVANT FACTS .................................................1

ARGUMENT .......................................................................................4

   I.  Legal Standard:  Motions to Transfer. ..........................................4

   II. Venue is Proper in This District. ...................................................7

        a. Defendant UNC System Resides in This District for Venue Purposes. 7

        b. A Substantial Part of the Events or Omissions Giving Rise to the Claim Occurred in This District.........................................................8

   III. The Weight of Relevant Factors Does Not Heavily Favor Transfer to the Middle District.....................................................................................................................................................................................10

        a. Plaintiff's Choice of Forum is a "Paramount Consideration" (Factor 1). ..............................................................................................10

        b. Not All Defendants Reside in or near the Middle District (Factor 2). 11

        c. Most Documentary Evidence is Equally Accessible in the Western and Middle Districts (Factor 3).........................................................12

        d. The Western District Does Not Lack Compulsory Process Over Potential Witnesses Who Work or Live Near Chapel Hill (Factor 4). 13

        e. Moving the Case to the Middle District Will Not Make the Trial Easier, More Expeditious or Inexpensive (Factor 8). ........................15

        f. The Middle District's Interest in Hearing This Case Is No Greater Than the Western District's (Factor 10). ...........................................16

CONCLUSION ...................................................................................17

Case 1:23-cv-00041-MR   Document 47   Filed 08/28/23   Page 2 of 23

# TABLE OF AUTHORITIES

**Cases**

*Advanced Pain Remedies, Inc. v. Advanced Targeting Sys., Inc.,*
No. 1:12CV1375, 2013 WL 4039395 (M.D.N.C. Aug. 7, 2013) ......................13

*Amirotech, Inc. v. Srg. Tech., LLC,*
No. 3:15-CV-636-GCM, 2016 WL 3219880 (W.D.N.C. June 7, 2016)...............6

*Borgwarner, Inc. v. Honeywell Int'l, Inc.,*
No. CIV. 1:07CV184, 2008 WL 394991 (W.D.N.C. Feb. 11, 2008) .................10

*Carstar Franchisor SPV LLC v. Roberts,*
2023 WL 4604591 (W.D.N.C. July 18, 2023) ...................................... 13, 15, 16

*Caturano v. Armchem Int'l Corp.,*
No. 1:20-cv-00173-MOC-DCK, 2020 WL 6065303 (W.D.N.C. Oct. 14, 2020) ..5

*DMP Corp. v. Fruehauf Corp.,*
617 F. Supp. 76 (W.D.N.C. 1985).........................................................................6

*In re Volkswagen of Am., Inc.,*
545 F.3d 304 (5th Cir. 2008)...............................................................................16

*Koh v. Microtek Int'l, Inc.,*
250 F. Supp. 2d 627 (E.D. Va. 2003)..................................................................14

*McDevitt & Street Co. v. Fidelity and Deposit Co.,*
737 F. Supp. 351 (W.D.N.C. 1990)......................................................................6

*Phillips v. S. Gumpert Co., Inc.,*
627 F.Supp. 725 (W.D.N.C.1986)......................................................................10

*Sandvik Intell. Prop. AB v. Kennametal Inc.,*
No. CIV.1:09CV163, 2010 WL 1924504 (W.D.N.C. May 12, 2010).......... 11, 14

*Scholl v. Sagon RV Supercenter, LLC,*
249 F.R.D. 230 (W.D.N.C. 2008) ........................................................................6

*Silva v. Pavlak,*
No. 5:18CV97, 2018 WL 4775510 (W.D.N.C. Oct. 3, 2018) ..............................6

*St. Paul Fire & Marine Ins. Co. v. Renne Acquisitions Corp.,*
No. 3:09CV476-RJC-DSC, 2010 WL 2465543 (W.D.N.C. June 14, 2010) .......14

*Stevens v. Atricure Inc.,*
No. 317CV00010MOCDSC, 2021 WL 4785503 (W.D.N.C. Oct. 12, 2021) .....11

*Trustees of the Plumbers & Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc.,*
791 F.3d 436 (4th Cir. 2015)................................................................................5

*W. Steer-Mom "N' Pop's, Inc. v. FMT Invs., Inc.,*
578 F. Supp. 260 (W.D.N.C. 1984)....................................................................10

*Windy City Innovations, LLC v. Microsoft Corp.,*
No. 1:15-CV-00103-GCM, 2016 WL 1048069 (W.D.N.C. Mar. 16, 2016) .......11

**Rules**

28 U.S.C. § 1391(b)(1)..................................................................................8

28 U.S.C. § 1391(b)(2)..................................................................................8

28 U.S.C. § 1391(c)......................................................................................8

28 U.S.C. § 1391(c)(2)..................................................................................8

28 U.S.C. § 1391(d)....................................................................................7, 8

28 U.S.C. §1404(a)......................................................................................5

42 U.S.C. §1983..........................................................................................1

Fed. R. Civ. P. 45(c)(1)................................................................................13

# INTRODUCTION

Plaintiff respectfully submits this memorandum of law in opposition to the Defendants' Motion for Change of Venue (ECF No. 44, hereinafter the "UNC Transfer Motion") filed by Defendants the University of North Carolina System, the Board of Governors of the University of North Carolina, the University of North Carolina at Chapel Hill, the University of North Carolina at Chapel Hill Board of Trustees (the "UNC Defendants"), and Kevin Guskiewicz, Elizabeth Hall, Jeremy Enlow, Beth Froehling, Rebecca Gibson, Jaclyn Feeney, David Elrod, and Desirée Rieckenberg (the "Individual Defendants") (collectively, "UNC" or the "Defendants"). Plaintiff properly laid venue in the Western District of North Carolina, and adequately and plausibly alleges causes of action under Title IX of the Education Amendments of 1972, due process violations under 42 U.S.C. §1983, and state law. Accordingly, and for the reasons described below, Defendants' motion should be denied.

# STATEMENT OF RELEVANT FACTS

A detailed statement of facts is set forth in the Verified Complaint (ECF No. 1), which is incorporated herein by reference. For purposes of this motion, a brief overview of the relevant facts follows.

1

***Plaintiff Jacob Doe's Residence***

Plaintiff is a resident of Burke County, which is within the Western District of North Carolina and is within this Court's division. (*See* Jacob Doe Declaration, ¶ 3). Defendant the University of North Carolina System (the "UNC System") is comprised of, and responsible for the actions of, multiple constituent institutions within this district, including UNC Asheville, Appalachian State University, Western Carolina University, Charlotte University (formerly UNC Charlotte) and all of the community colleges located in this District. (ECF No. 1, ¶ 10). The UNC System is therefore conducting business within the State of North Carolina, including in this judicial district. (ECF No. 1, ¶ 24). At all relevant times identified in the Complaint, the Individual Defendants were employed by the University of North Carolina at Chapel Hill,[1] resided in the State of North Carolina and/or their wrongful and unlawful actions took place in the State of North Carolina. (ECF No. 1, ¶¶ 15-22, 25).

Plaintiff matriculated at UNC in August of 2019 and enrolled in the Honors College. (ECF No. 1, ¶ 27). He chose to attend UNC in large part because he was awarded the prestigious Morehead-Cain Scholarship, a contract that he entered into

---

[1] Defendant Elrod held the position of Associate Vice Provost, Equal Opportunity and Equity, of the Office for Institutional Equity and Diversity at North Carolina State University, however he was retained by UNC to serve as the Hearing Officer for the Roe 4 hearing. (ECF No. 1, ¶ 21).

on March 13, 2019 at his residence, located in Burke County in the Western District of North Carolina. (ECF No. 1, ¶ 29; Jacob Doe Declaration, ¶ 5).

## *Claims Occurring Within the Western District*

In March of 2020, Plaintiff and Roe 4 were on Spring Break in Gulf Shores, Alabama, when they learned that UNC would be closing its campus due to the Covid-19 pandemic. (ECF No. 1, ¶ 155). During the trip, Plaintiff and Roe 4 hugged regularly, just as they always did. However, Roe 4 claimed to take issue with one hug in particular, which ultimately formed the basis of her later sexual misconduct complaint against him. (ECF No. 1, ¶ 157). While UNC remained closed due to the pandemic, Plaintiff resided at his condominium in Charlotte. (ECF No. 1, ¶ 161). On or about June 15, 2020, Roe 4 visited Plaintiff in Charlotte, during which they watched a movie, talked, and got food. (ECF No. 1, ¶ 162). The following day, Plaintiff learned that Roe 4 was alleging Plaintiff had made Roe 4 feel uncomfortable. (ECF No. 1, ¶ 163). This interaction later formed the basis of her additional allegations of sexual misconduct against Plaintiff. (ECF No. 1, ¶ 272).

In January of 2021, Plaintiff invited Roe 3 to attend a ski trip with a group of friends. (ECF No. 1, ¶ 213). Plaintiff and Roe 3 arranged to begin the drive the day before and spend the night together at his family home in Burke County. (ECF No. 1, ¶ 214). While there, they engaged in consensual sexual intercourse. (ECF No. 1,

¶ 215). This interaction later formed the basis of Roe 3's allegations of sexual misconduct against Plaintiff. (ECF No. 1, ¶ 273).

### *The University and University System's Wrongful Prosecution of Jacob Doe*

Despite its knowledge that the University lacked jurisdiction over the Roe 3 and Roe 4 matters, because the events occurred off campus, did not occur in the context of any education program or activity, took place during school breaks, and did not result in any continuing adverse effects on campus, UNC's Equal Opportunity and Compliance Office nonetheless moved forward with the Roe 3 and Roe 4 investigations against Plaintiff. (ECF No. 1, ¶¶ 278-287). To justify these improper actions, Defendants falsely characterized the incidents reported by Roe 3 and Roe 4 as having "occurred within the context of fraternity-sponsored trips," notwithstanding that not only was this information false, but neither Roe 3 nor Roe 4 ever claimed that the trips were fraternity-sponsored events. (ECF No. 1, ¶ 287). Plaintiff was ultimately found responsible in the Roe 1 and Roe 4 cases and was sanctioned with a permanent expulsion from the entire UNC System. (ECF No. 1, ¶¶ 412, 509, 522).

## ARGUMENT

### I.     Legal Standard:  Motions to Transfer.

Section 1404(a) states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other

district or division where it might have been brought. . . ." 28 U.S.C. §1404(a).

Before considering whether to transfer a case under §1404(a), the court must

determine if the case could have been brought in the transferee district originally; if

the answer is "yes," courts apply a balancing test to weigh various factors to

determine if a transfer is appropriate. *Caturano v. Armchem Int'l Corp.*, No. 1:20-

cv-00173-MOC-DCK, 2020 WL 6065303, at *3 (W.D.N.C. Oct. 14, 2020).

The Fourth Circuit has established four factors for determining whether a §

1404(a) transfer is appropriate: "(1) the weight accorded to plaintiff's choice of

venue; (2) witness convenience and access; (3) convenience of the parties; and (4)

the interests of justice." *Trustees of the Plumbers & Pipefitters Nat. Pension Fund v.*

*Plumbing Servs., Inc.,* 791 F.3d 436, 444 (4th Cir. 2015). The foregoing convenience

and justice factors are further analyzed by considering the following additional

factors:

1) The plaintiff's initial choice of forum;
2) The residence of the parties;
3) The relative ease of access to sources of proof;
4) The availability of compulsory process for attendance of unwilling witnesses and the cost of obtaining attendance of willing and unwilling witnesses;
5) The possibility of a view of the premises, if appropriate;
6) The enforceability of a judgment, if obtained;
7) The relative advantages and obstacles to a fair trial;
8) Other practical problems that make a trial easy, expeditious, and inexpensive;
9) The administrative difficulties of court congestion;
10) The interest in having localized controversies settled at home;

11) The appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the action; and

12) The avoidance of unnecessary problems with conflict of laws.

*See Silva v. Pavlak*, No. 5:18CV97, 2018 WL 4775510, at \*6 (W.D.N.C. Oct. 3, 2018); *citing Scholl v. Sagon RV Supercenter, LLC*, 249 F.R.D. 230, 239 (W.D.N.C. 2008). When assessing these factors, "the plaintiff's choice of forum is of utmost importance." *Amirotech, Inc. v. Srg. Tech., LLC*, No. 3:15-CV-636-GCM, 2016 WL 3219880, at \*4 (W.D.N.C. June 7, 2016). Further, the burden is on the movant to make out "a clear or strong case by showing more than a bare balance of convenience in his favor and that a transfer does more than merely shift the inconvenience." *DMP Corp. v. Fruehauf Corp.*, 617 F. Supp. 76, 77 (W.D.N.C. 1985). Finally, "[c]ourts should make both a quantitative and qualitative analysis of the factors." *McDevitt & Street Co. v. Fidelity and Deposit Co.,* 737 F. Supp. 351, 354 (W.D.N.C. 1990).

Defendants' contention that six of the *Scholl* factors heavily support transfer is both mistaken and, moreover, a transparent attempt to have the court engage in a quantitative rather than a qualitative analysis. Even if taken as true, the collective effect of these factors merely shifts inconvenience and does not meet the heavy burden of disrupting Plaintiff's chosen forum.[2]

---

[2] Plaintiff is in agreement that factors 5-7, 9, and 11 are neutral; as such, these factors should be weighed in Plaintiff's favor, as the non-movant.

## II.    Venue is Proper in This District.

Pursuant to the federal venue statute,

"A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought."

28 U.S.C. § 1391(b).

In the instant case, venue is proper in this court because at least one defendant (the UNC System) resides within this district and all defendants reside in this state. Additionally, a substantial part of the acts or omissions giving rise to this action took place within this district. Defendants, by mistakenly asserting that no Defendant resides in the Western District and by overlooking key substantial events that occurred there, have understated the venue propriety of the Western District.

   a.  <u>Defendant UNC System Resides in This District for Venue Purposes.</u>

According to 28 U.S.C. § 1391(d), "in a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside *in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction* if that district were a separate State." (emphasis

added). Further, under § 1391(c)(2), "an entity with the capacity to sue and be sued in its common name under applicable law, *whether or not incorporated*, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." (emphasis added).

As set forth in the Complaint, the UNC System is comprised of, and responsible for the actions of, multiple constituent institutions within this district, including UNC Asheville, Appalachian State University, Western Carolina University, Charlotte University (formerly UNC Charlotte) and all of the community colleges located in this District. (ECF No. 1, ¶ 10). The UNC System's numerous ongoing businesses within this district gives rise to personal jurisdiction over the UNC System in this district, which in turn, supports a finding that the UNC System "resides" in this district for venue purposes. 28 U.S.C. § 1391(d). The UNC System's status as a public institution is irrelevant for the purposes of this statute. 28 U.S.C. § 1391(c).

b.  <u>A Substantial Part of the Events or Omissions Giving Rise to the Claim Occurred in This District.</u>

In addition to satisfying venue under § 1391(b)(1), Plaintiff can also establish venue here under § 1391(b)(2). Defendants themselves focus heavily on the claims and disciplinary process relating to Jane Roe 4, with the Individual Defendants claiming that *only* the Jane Roe 4 claims are relevant for due process purposes. (ECF

No. 45 at 6-8; ECF No. at 33 11-17). As set forth in the Complaint, the conduct alleged by Jane Roe 4 primarily took place within this district. (ECF No. 1, ¶¶ 161–168, 272). Additionally, despite UNC's clear lack of jurisdiction over the Roe 3 and Roe 4 matters, due to the alleged events having occurred off-campus and during school breaks, UNC manufactured evidence that the alleged incidents had "occurred within the context of fraternity-sponsored trips," knowing this information was false and notwithstanding that neither Roe 3 nor Roe 4 had ever claimed this to be the case, for purposes of investigating the Roe 3 and Roe 4 matters. (ECF No. 1, ¶¶ 278-288). UNC cannot now genuinely claim that this venue is improper, when it unilaterally extended its jurisdiction, in order to investigate and discipline Doe for conduct purportedly occurring in this District.

Furthermore, Plaintiff's enrollment contract with UNC, which essentially gives rise to this entire case, was formed in Burke County which lies within the Western District of North Carolina, where Plaintiff lived at the time he was offered and accepted admission to UNC (ECF No. 1, ¶¶ 27, 214, 752), as was his contract with the Morehead Cain Foundation, which established a contractual relationship between Plaintiff and the Foundation on March 13, 2019, and which was dependent upon his enrollment with UNC. (ECF No. 1, ¶ 755). Moreover, the damages Plaintiff has suffered, including his ban from the *entire* UNC System, reach into this district

by virtue of UNC's multiple campuses here. Thus, a substantial portion of the events giving rise to this action occurred within this district.

### III. The Weight of Relevant Factors Does Not Heavily Favor Transfer to the Middle District.

#### a. Plaintiff's Choice of Forum is a "Paramount Consideration" (Factor 1).

The Fourth Circuit has repeatedly held that "[a] defendant carries a particularly heavy burden when it moves pursuant to [Section] 1404(a) to transfer an action from a district where venue is proper. As this court has noted previously, it is 'black letter law,' that 'plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice ... should not be lightly disturbed.'" *Borgwarner, Inc. v. Honeywell Int'l, Inc*., No. CIV. 1:07CV184, 2008 WL 394991, at *3 (W.D.N.C. Feb. 11, 2008) (quoting *Phillips v. S. Gumpert Co., Inc.,* 627 F.Supp. 725, 726-27 (W.D.N.C.1986) (citations omitted) (quoting *Western Steer Mom 'N' Pop's v. FMT Invs., Inc., supra,* at 265).

Defendants' contention that "Plaintiff's choice of venue merits little weight" ignores the well settled law, and hinges on the mistaken assumption that Plaintiff is not a resident of the Western District. Plaintiff is a resident of Burke County within the Western District of North Carolina. To that end, all the cases Defendants rely upon in support of this position are distinguishable; in each of the cases cited, transfer was granted when the plaintiffs had no connection whatsoever to the chosen

venue. *See Sandvik Intell. Prop. AB v. Kennametal Inc.*, No. CIV.1:09CV163, 2010 WL 1924504 (W.D.N.C. May 12, 2010) (plaintiff's manufacturing plant was located in a neighboring state); *Stevens v. Atricure Inc.*, No. 317CV00010MOCDSC, 2021 WL 4785503 (W.D.N.C. Oct. 12, 2021), *appeal denied*, No. 3:17-CV-10, 2021 WL 9848141 (W.D.N.C. Dec. 7, 2021) (plaintiff's only connection to chosen forum was its counsel being located there); *Windy City Innovations, LLC v. Microsoft Corp.*, No. 1:15-CV-00103-GCM, 2016 WL 1048069 (W.D.N.C. Mar. 16, 2016) (plaintiff could not identify any substantial events or its own residency in chosen forum).

Further, Defendants assert that "the substantial events giving rise to Plaintiff's claims occurred in Chapel Hill in the Middle District" without acknowledging the incidents alleged by Roe 3 and Roe 4 having purportedly occurred in the Western District, or Plaintiff's enrollment contract with UNC and Plaintiff's contract with the Morehead Cain Foundation having both been formed in the Western District. Given the clear connection between Plaintiff, substantial events at issue, and the chosen forum, the "deference usually given to a plaintiff's choice of forum" (in the words of Defendants) remains intact, and the pendulum of the first factor swings from weighing "heavily in favor of transfer" to weighing heavily against it.

   b. <u>Not All Defendants Reside in or near the Middle District (Factor 2).</u>

Defendants have vastly overstated the weight of this factor in the case at hand. The residency of the UNC System in the Western District renders the statement that

"[n]o defendant resides in the Western District" untrue. Defendants also list all the parties that reside in the Middle District. As a matter of public policy, the number of defendants in a particular district should not be given greater consideration just because of the sheer volume of total defendants. Doing so would discourage plaintiffs from seeking relief from all parties they have been damaged by, for fear of being robbed of their right to choose a forum.

Finally, Defendants once again mistakenly assert that Plaintiff does not reside in the Western District. Plaintiff resides in Burke County which is within the Western District of North Carolina and moreover, within this Court's Division in the Western District. Transfer would subject him to the very "burdensome and expensive long-distance travel" that Defendants have detailed at length here. In other words, transfer would merely shift the inconvenience to Plaintiff.

c. Most Documentary Evidence is Equally Accessible in the Western and Middle Districts (Factor 3).

Defendants rely on a bare legal conclusion that "it is reasonable to conclude that most of the documentary evidence" is located in Chapel Hill. In the absence of any showing that a significant portion (or any portion whatsoever) of the evidence is not digitally accessible and is located exclusively in the Middle District, it is more "reasonable to conclude" that the advent of cloud storage and digital file sharing render geography a non-factor in the accessibility of documentary evidence. *See, e.g. Advanced Pain Remedies, Inc. v. Advanced Targeting Sys., Inc.,* No. 1:12CV1375,

2013 WL 4039395 (M.D.N.C. Aug. 7, 2013) (electronic availability of evidence of both venues rendered factor 3 neutral).

Defendants also dramatically exaggerate the scope of the holding and applicability of the sole case they rely on to downplay the mitigating effect that modern technology has on this factor. In *Carstar Franchisor SPV LLC v. Roberts*, the record custodians in question all resided in California and would have had to be transported and housed in North Carolina, and called as witnesses no less. *Carstar Franchisor SPV LLC v. Roberts*, No. 323CV00234FDWSCR, 2023 WL 4604591 (W.D.N.C. July 18, 2023). Defendants have made no showing that any such expenses would have to be made here, where all parties reside in the same state. Nor have any parties indicated that any record custodians would be called as witnesses. This factor is neutral.

    d. <u>The Western District Does Not Lack Compulsory Process Over Potential Witnesses Who Work or Live Near Chapel Hill (Factor 4).</u>

Under Rule 45, a subpoena "may command a person to attend a trial, hearing, or deposition . . . (A) within 100 miles of where the person resides . . . *or* (B) within the state where the person resides . . . if the person (i) is a party or a party's officer; or (ii) is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1) (emphasis added). Further, "[t]he party asserting witness inconvenience has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony in order to enable the court to

assess the materiality of evidence and the degree of inconvenience." *Sandvik*, 2010 WL 1924504, at *7 (quoting *Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627 (E.D. Va. 2003)).

Defendants, by only acknowledging part (c)(1)(A) of the statute, have grossly understated the compulsory process of the Western District. The non-party members of the EEAC committee and EOC panels that Defendants reference are, by Defendants' own definition, representatives of UNC-CH. As officers of a named party, these potential witnesses are within the Western District's compulsory process. So long as these non-parties reside in the state of North Carolina (Defendants have not indicated that any of them do not), they fall within the umbrella of Rule 45(c)(1)(B)(i).

The other individuals that Defendants assert "may" be called as witnesses (the Roes, former fraternity brothers, etc.) are also within the Western District's compulsory process. Notwithstanding that such "witnesses" likely hold minimal, if any, relevant information concerning the disciplinary processes at issue in this case, the advent of remote depositions would surely allow these non-parties to present themselves without "incur[ring] substantial expense." *See St. Paul Fire & Marine Ins. Co. v. Renne Acquisitions Corp.*, No. 3:09CV476-RJC-DSC, 2010 WL 2465543, at *4 (W.D.N.C. June 14, 2010) (recognizing the validity of video depositions as an alternative to live testimony for witnesses who are outside the

compulsory power of Rule 45 and weighing factor 4 against movant because it failed to show "why an alternative to live testimony, such as video deposition, would be insufficient"). If, as Defendants adamantly suggest, these non-parties reside in North Carolina, they would fall under the umbrella of Rule 45(c)(1)(B)(ii).

e. <u>Moving the Case to the Middle District Will Not Make the Trial Easier, More Expeditious or Inexpensive (Factor 8).</u>

As recently described by the Western District in *Carstar*, "[w]hen the moving party fails to provide sufficient evidence that most of the evidence is in another jurisdiction, or that transporting witnesses to the jurisdiction would be costly, transfer is not appropriate." *Carstar*, 2023 WL 4604591, at *4.

Defendants have only offered one sentence of bare legal conclusions that transfer to the Middle District "will expedite proceedings, lower the costs of obtaining discovery, and reduce travel expenses and delays inherent in long-distance travel." Regarding expedited proceedings, Defendants have already acknowledged that Factor 9 (court congestion) is neutral. Regarding discovery costs, given the aforementioned ease of electronic discovery and the lack of a need to transport record custodians, there is nothing to indicate that transfer will lower the costs of obtaining discovery. Similarly, remote depositions will relieve witnesses residing in the Middle District of any additional time and travel expenses. The "travel expenses" that Defendants would incur from a few extra hours of intrastate travel amount to gas money. As inconvenient as this may be for Defendants, it would be equally

inconvenient for Plaintiff were transfer granted. It would merely shift inconvenience from Defendants to Plaintiff, warranting denial of the motion. *See Carstar*, 2023 WL 4604591, at *2 ("the motion will not be granted if a transfer would merely shift the inconvenience from the defendant to the plaintiff, or if the equities lean but slightly in favor of the movant after all factors are considered.").

      f.  <u>The Middle District's Interest in Hearing This Case Is No Greater Than the Western District's (Factor 10).</u>

The tenth factor is intended not only to promote localized controversies being settled at home, but also to ensure the chosen forum has the most "familiarity with state law." *Amirotech*, 2016 WL 3219880, at *6. In addition to mistakenly citing *In re Volkswagen* as a Fourth Circuit case, Defendants have misinterpreted the "significant interest in having local matters decided at home" the court described. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008). The "significant interest" is that of the forum, not the parties. *Amirotech*, 2016 WL 3219880, at *6. One need look no further than the title of the relevant section in the UNC Transfer Motion: "*Defendants* Have a Significant Interest in Having This Case Heard in the Middle District" (emphasis added) (ECF No. 45). Plaintiff has an equal (if not greater) interest in having this case heard in the Western District. As does the Western District. Among other events, the Roe 3 and majority of the Roe 4 allegations took place within this district. (ECF No. 1, ¶¶ 161-169, 172). Further, Plaintiff's enrollment contract with UNC was formed in Burke County in which he

resides, which is located within the Western District of North Carolina (ECF No. 1, ¶¶ 27, 214, 752), as was his contract with the Morehead Cain Foundation (ECF No. 1, ¶ 755). The fact that the same state law would apply in the Middle District only reinforces the neutrality of this factor, warranting denial of the motion.

## <u>CONCLUSION</u>

In light of the above, the Defendants' Motion for Change of Venue should be denied.

DATED: New York, New York
           August 28, 2023

Respectfully submitted,

**NESENOFF & MILTENBERG, LLP**
***Attorneys for Plaintiff Jacob Doe***

By:  */s/ Andrew Miltenberg*
Andrew T. Miltenberg, Esq.
Stuart Bernstein, Esq.
Tara J. Davis, Esq.
363 Seventh Avenue, Fifth Floor
New York, New York 10001
(212) 736-4500
amiltenberg@nmllplaw.com
sbernstein@nmllplaw.com
tdavis@nmllplaw.com

-and-

**EKSTRAND AND EKSTRAND, LLP**

By: /s/   *Robert Ekstrand*
Robert C. Ekstrand, Esq.
110 Swift Avenue, 2nd Floor
Durham, North Carolina 27705
(919) 416-4590
rce@ninthstreetlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of August 2023, I filed the foregoing Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Change of Venue using the Clerk's CM/ECF system, which will provide notice to all counsel of record.

By: /s/  *Tara J. Davis*
Tara J. Davis