UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | |
|---|---|
| JACOB DOE<br><br>Plaintiff,<br><br>v.<br><br>THE UNIVERSITY OF NORTH CAROLINA SYSTEM, et al.<br><br>Defendants. | No. 1:23-cv-00041 |

### *AMICI CURIAE* BRIEF OF ACLU OF NORTH CAROLINA LEGAL FOUNDATION AND FREEDOM OF THE PRESS FOUNDATION OPPOSING PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

For the second time in this litigation, Plaintiff asks this Court to enter a sweeping temporary restraining order and preliminary injunction that would infringe on the First Amendment rights of non-parties and the media. *Amici* ACLU of North Carolina Legal Foundation (ACLU-NCLF) and Freedom of the Press Foundation (FPF) submit this brief to argue that Plaintiff's proposed order is an unconstitutional prior restraint and is inconsistent with Fed. R. Civ. P.

1

65(d). The relief sought by Plaintiff contravenes the public interest and should be rejected by this Court.

## STATEMENT OF FACTS

Plaintiff filed his verified complaint commencing this action on February 15, 2023. (ECF 1). Plaintiff's complaint encompasses nearly 200 pages, in which he details the allegedly flawed procedures of the University of North Carolina's (UNC) disciplinary process and contends that his accusers fabricated allegations of sexual misconduct against him. In support of Plaintiff's claims, the fact section of the Complaint describes his interactions with his accusers and their alleged sexual conduct in explicit detail. *See generally id.* ¶¶150–218. Citing the sensitive nature of his claims, Plaintiff successfully moved to proceed in the litigation with his name and the names of his accusers under pseudonym. (ECF 2, 41). Concurrent with filing his Complaint, Plaintiff moved for a temporary restraining order (TRO) and preliminary injunction (PI):

(i) Prohibiting Defendants from releasing or disclosing any information concerning the disciplinary proceedings that are the subject of this lawsuit;
(ii) Requiring Defendants to direct all individuals, including but not limited to employees and students, over whom they exercise control to refrain from publishing or disclosing any

2

> information concerning Plaintiff, the disciplinary proceedings, or the outcomes of such proceedings; and
>
> (iii) Requiring UNC to inform any media outlet, or any other third party, that receives information concerning Plaintiff's disciplinary outcome about the filing of this motion for a temporary restraining order and preliminary injunction, and notifying such media outlets or other third party, that they are prohibited from publishing any information concerning Plaintiff, the disciplinary proceedings, or the outcomes of such proceedings.

(ECF 4 at 1-2).

Although there was no indication on the docket that Plaintiff had followed this Court's procedures on sealing, his first TRO/PI Motion and supporting materials were initially sealed from public access. (ECF 4, 5, 19). The Court entered Plaintiff's proposed TRO pending its hearing and decision on the request for a PI. (ECF 14). By agreement of the parties, Plaintiff withdrew his first TRO/PI motion, requesting dissolution of the TRO and cancellation of the PI hearing. (ECF 15).

Shortly thereafter, *amicus* ACLU-NCLF, joined by *amicus* Freedom of the Press Foundation (FPF) and law professor Eugene Volokh (collectively, Proposed Intervenors), moved to intervene for the

purposes of moving to unseal the sealed portions of the docket and to dissolve the TRO entered by the Court. (ECF 16, 17).[1]

Soon thereafter, the Court dissolved the TRO, unsealed the docket, and denied Proposed Intervenors' motion to intervene as moot. (ECF 19, Text Order of 3/3/23). On October 6, 2023, Plaintiff moved this court once again for entry of a temporary restraining order and preliminary injunction containing identical language as the first. As the reason for renewing his TRO/PI Motion, Plaintiff pointed to UNC's receipt of a recent public records request "seeking the disclosure of Doe's true name[.]" (ECF 52).

---

[1] ACLU-NCLF is a non-profit organization dedicated to advancing the civil rights of all North Carolinians. (ECF 16-2 ¶ 2). ACLU-NCLF regularly engages in advocacy and litigation relating to governmental transparency, and to protect the First Amendment rights of North Carolinians. *Id.* ¶¶ 2-3. FPF is a non-profit organization dedicated to protecting and empowering public-interest journalism. (ECF 16-3 ¶ 2). FPF regularly writes about and participates in legal proceedings to oppose legislation and judicial orders that violate the First Amendment and undermine press freedoms, including gag orders, court sealings and prior restraints. *Id.* ¶¶ 3-5.

## ARGUMENT

A decision to enter the "extraordinary remedy" of preliminary injunctive relief rests within the discretion of the district court. *Leaders of a Beautiful Struggle v. Baltimore Police Dep't*, 2 F.4th 330, 339 (4th Cir. 2021) (en banc). Regardless of the legal merits of a movant's claims, a temporary restraining order or preliminary injunction cannot be entered unless the relief sought is in the public interest. *See Real Truth About Obama, Inc. v. F.E.C.*, 575 F.3d 342, 346 (4th Cir. 2009) (all four requirements for a preliminary injunction "must be satisfied" to obtain injunctive relief). "The public interest favors protecting constitutional rights." *Leaders of a Beautiful Struggle*, 2 F.4th at 346. The sweeping TRO/PI proposed by Plaintiff is not in the public interest because it would infringe on the constitutional rights of non-parties to this case, and because it reaches beyond the scope of individuals who may be bound by an order under Fed. R. Civ. P. 65.

Plaintiff's proposed TRO/PI would, among other things, "require[]" UNC to: "direct *all individuals, including but not limited to employees and students, over whom they exercise control* to refrain from publishing or disclosing any information concerning Plaintiff, the disciplinary

5

proceedings, or the outcomes of such proceedings;" and "inform any media outlet, or any other third party, that receives information concerning Plaintiff's disciplinary outcome about the filing of this motion for a temporary restraining order and preliminary injunction, and *notifying such media outlets or other third party, that they are prohibited from publishing* any information concerning Plaintiff, the disciplinary proceedings, or the outcomes of such proceedings." ECF 49 at 2 (emphasis added).

If adopted, such language would not only limit Defendants' speech but would purport to prohibit a limitless range of third parties ("all individuals" over whom Defendants "exercise control"), and specifically members of the press, from speaking about this case. Such an order would violate the First Amendment rights of others and run afoul of Fed. R. Civ. P. 65(d)'s limits on who may be bound by a preliminary injunction. The relief sought by Plaintiff is not in the public interest and should be denied.

### I. The proposed TRO/PI is an unconstitutional prior restraint and therefore not in the public interest.

The TRO/PI language urged by Plaintiff would serve as a prior restraint on the speech of countless unnamed UNC employees,

6

students, members of the media, as well as anyone else "over whom [Defendants] exercise control." Under the First Amendment, content-based prior restraints like those proposed by Plaintiff "warrant[s] a most rigorous form of review because [it] rest[s] at the intersection of two disfavored forms of expressive limitations: prior restraints and content-based restrictions." *In re Murphy-Brown, LLC*, 907 F.3d 788, 796–97 (4th Cir. 2018). Such restrictions cannot be imposed absent compelling government interests and must be narrowly tailored to serve those interests. *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015) ("Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests."); *see also New York Times Co. v. United States*, 403 U.S. 713, 714 (1971) ("Any system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity." (internal quotations omitted); *Carroll v. President and Com'rs of Princess Anne*, 393 U.S. 175, 183 (1968) (requiring an order restraining speech to "be couched in the narrowest terms that will accomplish the pin-pointed objective

7

permitted by constitutional mandate and the essential needs of the public order").

At minimum, Plaintiff fails to demonstrate that the sweeping relief he seeks is narrowly tailored. Plaintiff asserts that "the publication of any information concerning the findings and sanction of the biased and flawed [UNC disciplinary] proceedings will unquestionably cause extreme irreparable harm to Plaintiff's reputation, education and employment opportunities." ECF 51 at 21. Even assuming arguendo that Plaintiff's interests in his reputation and employment are compelling government interests, the relief requested is not narrowly tailored in the least.

Plaintiff's proposed TRO/PI language is broad and vague in the extreme, sweeping in any media who "receive information" about the outcome of Plaintiff's disciplinary proceedings, as well as "all individuals, including but not limited to employees and students, over whom [Defendants] exercise control." Defendants include UNC, its Board of Governors, and other highly placed UNC officials. All UNC employees are "controlled" by UNC to the extent that, in most cases, they may be disciplined or fired for violating their employer's directives.

8

Similarly, UNC arguably "exercises control" over all of its students; it controls their continued enrollment and eventual graduation, as well as many other aspects of their education and daily lives.

It is doubtful that the myriad unnamed employees, students, and media entities encompassed by Plaintiff's proposed order could be considered legally bound by it. *See infra* Section II; Fed. R. Civ. P. 65 (d)(2) (listing categories of individuals who may be bound by preliminary injunctive orders). But, under Plaintiff's proposed order, UNC would be "required" to inform these third parties that, pursuant to a court order, they must "refrain" and are "prohibited" from disclosure and publication of "*any information* concerning Plaintiff, the disciplinary proceedings, or the outcomes of such proceedings." (ECF 49 2) (emphasis added).

Such an order would impermissibly chill the First Amendment rights of the media, as well as the rights of employees and students of a public university to speak and publish on this case— even though UNC's handling of sexual assault allegations is a matter of significant public concern. This chilling effect would fall most heavily on rank-and-file students and employees who may be easily intimidated by the

9

specter of a court order and who cannot afford to hire counsel to defend their rights. The Court should reject preliminary injunctive relief that would infringe on the First Amendment rights of countless third parties.

## II. The proposed TRO/PI is inconsistent with the text and reach of Fed. R. Civ. P. 65(d) and therefore not in the public interest.

Plaintiff's proposed TRO/PI is also inconsistent with the language of Fed. R. Civ. P. 65(d)(2), which states that preliminary injunctive relief "binds only the following who receive actual notice of it by personal service or otherwise: (A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B)."

While UNC employees could fall within the ambit of the TRO/PI if they received actual notice, students and other individuals over whom Defendants "exercise control" and the media cannot be bound unless Plaintiff can show they are in "active concert or participation" with others encompassed by the order. Plaintiff does not identify any specific individuals or members of the media who are working in active concert

10

or participation with Defendants. As discussed above, a court order widely disseminated and purporting to extend to broad groups of employees, students, and members of the media would impermissibly chill the constitutional rights of individuals and organizations who have no direct involvement in this case. Plaintiff's proposed order is not in the public interest because it would extend the scope of preliminary injunctive relief far beyond what is contemplated by Rule 65.

## **CONCLUSION**

For the reasons stated above, *Amici* respectfully request that this Court deny Plaintiff's motion for a temporary restraining order and preliminary injunction. Alternatively, if the Court enters any order or injunction, it should ensure that it is narrowly tailored and does not restrict the rights of third parties, especially members of the press, to discuss and publish on matters related to Plaintiff's claims.

Respectfully submitted this 9th day of October 2023 by:

**ACLU OF NORTH CAROLINA LEGAL FOUNDATION**

/s/ Kristi L. Graunke*
Kristi L. Graunke
N.C. State Bar No. 51216
Ivy Johnson
N.C. State Bar. No. 52228
P.O. Box 28004
Raleigh, NC 27611
Tel.: (919) 354-5066
kgraunke@acluofnc.org
ijohnson@acluofnc.org

*Counsel for Amici Curiae ACLU-NCLF and Freedom of the Press Foundation*

**Counsel of record*

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was on this day filed in in the Western District of North Carolina using the Clerk's CM/ECF system, which will send notification of this filing to counsel for the parties.

Signed this 9th day of October, 2023

/s/ Kristi Graunke