UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | |
|---|---|
| JACOB DOE<br><br>Plaintiff,<br><br>v.<br><br>THE UNIVERSITY OF NORTH CAROLINA SYSTEM, et al.<br><br>Defendants. | No. 1:23-cv-00041 |

## AMENDED *AMICI CURIAE* BRIEF OF ACLU OF NORTH CAROLINA LEGAL FOUNDATION AND FREEDOM OF THE PRESS FOUNDATION OPPOSING PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

For the second time in this litigation, Plaintiff has asked this Court to enter a sweeping preliminary injunction that infringes on the First Amendment rights of non-parties and the media. *Amici* ACLU of North Carolina Legal Foundation (ACLU-NCLF) and Freedom of the Press Foundation (FPF) submit this brief to argue that Plaintiff's requested preliminary injunction, as well as the TRO currently in effect, are unconstitutional prior restraints and are inconsistent with the

1

public's right to access information. The relief requested by Plaintiff contravenes the public interest and should be rejected by this Court.

## STATEMENT OF FACTS

Plaintiff filed his verified complaint commencing this action on February 15, 2023. (ECF 1). Plaintiff's complaint encompasses nearly 200 pages, in which he recounts personally identifying facts about himself, details the allegedly flawed procedures of the University of North Carolina's (UNC) disciplinary process, and contends that his accusers fabricated allegations of sexual misconduct against him. In support of Plaintiff's claims, the fact section of the Complaint describes his interactions with his accusers and their alleged sexual conduct in explicit detail. *See generally id.* ¶¶150–218. Citing the sensitive nature of his claims, Plaintiff successfully moved to proceed in the litigation with his name and the names of his accusers under pseudonym. (ECF 2, 41). Concurrent with filing his Complaint, Plaintiff moved for a temporary restraining order:

(i) Prohibiting Defendants from releasing or disclosing any information concerning the disciplinary proceedings that are the subject of this lawsuit;
(ii) Requiring Defendants to direct all individuals, including but not limited to employees and students, over whom they exercise control to refrain from publishing or disclosing any

> information concerning Plaintiff, the disciplinary proceedings, or the outcomes of such proceedings; and
>
> (iii) Requiring UNC to inform any media outlet, or any other third party, that receives information concerning Plaintiff's disciplinary outcome about the filing of this motion for a temporary restraining order and preliminary injunction, and notifying such media outlets or other third party, that they are prohibited from publishing any information concerning Plaintiff, the disciplinary proceedings, or the outcomes of such proceedings.

(ECF 4 at 1-2). Although there was no indication on the docket that Plaintiff had followed this Court's procedures on sealing, his Motion for a TRO/PI and supporting materials were initially sealed from public access. (ECF 4, 5, 19). The Court entered Plaintiff's proposed TRO pending its hearing and decision on the request for a PI. (ECF 14). By agreement of the parties, Plaintiff withdrew his first TRO/PI motion, requesting dissolution of the TRO and cancellation of the PI hearing. (ECF 15).

Shortly thereafter, *amicus* ACLU-NCLF, joined by *amicus* Freedom of the Press Foundation (FPF) and law professor Eugene Volokh (collectively, Proposed Intervenors), moved to intervene for the

purposes of moving to unseal the sealed portions of the docket and to dissolve the TRO entered by the Court. (ECF 16, 17).[1]

The Court subsequently dissolved the TRO, unsealed the docket, and denied Proposed Intervenors' motion to intervene as moot. (ECF 19, Text Order of 3/3/23). On October 6, 2023, Plaintiff moved this court once again for entry of a temporary restraining order and preliminary injunction containing identical language as the first. As the reason for renewing his Motion, Plaintiff pointed to UNC's receipt of a recent public records request "seeking the disclosure of Doe's true name[.]" (ECF 52). An emergency hearing was set for October 10, 2023 before Judge Cogburn, and Defendant filed a response in opposition on October 9. (ECF 53).

---

[1] ACLU-NCLF is a non-profit organization dedicated to advancing the civil rights of all North Carolinians. (ECF 16-2 ¶ 2). ACLU-NCLF regularly engages in advocacy and litigation relating to governmental transparency, and to protect the First Amendment rights of North Carolinians. *Id.* ¶¶ 2-3. FPF is a non-profit organization dedicated to protecting and empowering public-interest journalism. (ECF 16-3 ¶ 2). FPF regularly writes about and participates in legal proceedings to oppose legislation and judicial orders that violate the First Amendment and undermine press freedoms, including gag orders, court sealings and prior restraints. *Id.* ¶¶ 3-5.

*Amici* filed a motion for leave to file a brief urging denial of Plaintiff's TRO/PI Motion. (ECF 54 & 55). On October 10, the Court, via Judge Cogburn, granted *Amici*'s motion. (Text Order). On October 11, the Court entered a TRO. (ECF 57). Although the Court's TRO did not order Defendant UNC to "direct all individuals, including but not limited to employees and students, over whom they exercise control to refrain from publishing or disclosing any information concerning Plaintiff," (ECF 52), it did order Defendant UNC "be restrained and enjoined from releasing or disclosing any information concerning the disciplinary proceedings that are the subject of this lawsuit." (ECF 57).

As his reasoning, Judge Cogburn relied on this Court's prior decision to grant a TRO, namely:

> [T]here is no substantial potential prejudice to the Defendants in maintaining the status quo during that short period of time until a hearing can be held on the Plaintiff's request for preliminary injunctive relief. Further, there is a probability of irreparable harm to the Plaintiff should the requested relief not be granted. the balance of hardships and equities as to this discreet point of the disclosure of information over this short period of time tips decidedly in the Plaintiff's favor, the Plaintiff's request for a temporary restraining order is granted.

*Id.* at 3 (quoting ECF 14).

5

## ARGUMENT

A decision to enter the "extraordinary remedy" of preliminary injunctive relief rests within the discretion of the district court. *Leaders of a Beautiful Struggle v. Baltimore Police Dep't*, 2 F.4th 330, 339 (4th Cir. 2021) (en banc). Regardless of the legal merits of a movant's claims, a temporary restraining order or preliminary injunction cannot be entered unless the relief sought is in the public interest. *See Real Truth About Obama, Inc. v. F.E.C.*, 575 F.3d 342, 346 (4th Cir. 2009) (all four requirements for a preliminary injunction "must be satisfied" to obtain injunctive relief). "The public interest favors protecting constitutional rights." *Leaders of a Beautiful Struggle*, 2 F.4th at 346.

The TRO entered by the Court appears narrower than that sought by Plaintiff. Among other things, the Court correctly declined to prohibit media outlets from publishing information about the proceedings or to require UNC to inform them they are so restrained. *See, e.g.*, *New York Times Co. v. United States*, 403 U.S. 713 (1971) (prior restraints on the press are unconstitutional except in dire emergencies); *see also Florida Star v. B.J.F.*, 491 U.S. 524 (1989) (press

is entitled to publish information it obtains even if the government released it unlawfully).

Nonetheless, the TRO is still against the public interest. Named Defendants are UNC, its Board of Governors, and other highly-placed UNC officials. Without defining who falls under "Defendant UNC," the Court prohibited it from disclosing *any* information regarding the disciplinary proceedings related to this suit. The broad PI sought by Plaintiff not only limits Defendants' speech but also prohibits numerous third parties, specifically members of the press, from obtaining information about this case. It requires Defendant to violate North Carolina's Public Records Act, N.C. Gen. Stat. § 132-1, *et seq.*, by prohibiting UNC from releasing records otherwise subject to disclosure under state law.

Additionally, Plaintiff's proposed PI exceeds Fed. R. Civ. P. 65(d)'s limits on who may be bound by a preliminary injunction. And it is inconsistent with a recent Fourth Circuit decision recognizing that a plaintiff undermines his asserted reputational and privacy interests in anonymity where, as here, he voluntarily discloses self-identifying details. *See Doe v. Doe*, 85 F.4th 206, 214 n. 7 (4th Cir. 2023).

For these reasons, the relief sought by Plaintiff is not in the public interest and should be denied.

## I. The proposed PI is an unconstitutional prior restraint and inconsistent with state public records law.

The PI language urged by Plaintiff would serve as a prior restraint on the speech of countless members of the public and members of the media. Under the First Amendment, content-based prior restraints like those proposed by Plaintiff "warrant a most rigorous form of review because they rest at the intersection of two disfavored forms of expressive limitations: prior restraints and content-based restrictions." *In re Murphy-Brown, LLC*, 907 F.3d 788, 796–97 (4th Cir. 2018). Such restrictions cannot be imposed absent compelling government interests and must be narrowly tailored to serve those interests. *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015) ("Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests."); *see also New York Times Co.*, 403 U.S. at 714 ("Any system of prior restraints of expression comes to this Court bearing a heavy presumption against its

8

constitutional validity." (internal quotations omitted); *Carroll v. President and Com'rs of Princess Anne*, 393 U.S. 175, 183 (1968) (requiring an order restraining speech to "be couched in the narrowest terms that will accomplish the pin-pointed objective permitted by constitutional mandate and the essential needs of the public order").

At minimum, Plaintiff fails to demonstrate that the sweeping relief he seeks is narrowly tailored. Plaintiff asserts that "the publication of any information concerning the findings and sanction of the biased and flawed [UNC disciplinary] proceedings will unquestionably cause extreme irreparable harm to Plaintiff's reputation, education and employment opportunities." ECF 51 at 21. Even assuming arguendo that Plaintiff's interests in his reputation and employment are compelling *government*—as opposed to purely private— interests under First Amendment jurisprudence, the relief requested is not narrowly tailored.

Plaintiff's proposed PI language is broad and vague in the extreme, sweeping in all media everywhere. And under the Court's existing order, UNC is "restrained and enjoined" from disclosing Plaintiff's name and disciplinary records to the press and the public and

9

"from releasing or disclosing *any information* concerning the disciplinary proceedings[.] (ECF 57 at 2) (emphasis added).

The PI proposed by Plaintiff would impermissibly chill the First Amendment rights of the media to speak and publish on this case — even though UNC's handling of sexual assault allegations is a matter of significant public concern. The more limited TRO entered by the Court also sweeps too broadly, preventing "UNC" (which could presumably include countless employees or other agents and representatives) from disclosure of "any information" regarding Plaintiff's disciplinary proceedings, even though the North Carolina Supreme Court has explicitly declared that some of these materials are subject to disclosure as public records under state law. *DTH Media Corp. v. Folt*, 374 N.C. 292, 302 (2020). The Court should reject preliminary injunctive relief that would infringe on the First Amendment and Public Records Act rights of countless others.

## II. The proposed PI is inconsistent with Fed. R. Civ. P. 65(d).

Plaintiff's proposed PI is also inconsistent with the language of Fed. R. Civ. P. 65(d), which states that preliminary injunctive relief "binds only the following who receive actual notice of it by personal

10

service or otherwise: (A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B)."

While UNC employees would fall within the ambit of the PI if they received actual notice, students over whom UNC "exercises control" and the media cannot be bound unless Plaintiff can show they are in "active concert or participation" with others encompassed by the order. Plaintiff does not identify any specific students or members of the media who are working in active concert or participation with Defendants. As discussed above, a court order widely disseminated and purporting to extend to these broader groups would impermissibly chill the constitutional rights of individuals with no direct involvement in this case. This Court should reject Plaintiff's efforts to stretch preliminary injunctive relief far beyond what is permissible under Rule 65(d).

### III. The TRO and proposed PI are inconsistent with the public's right of access to information and therefore are not in the public interest.

This Court has already permitted Plaintiff the "exceptional" circumstance of litigating pseudonymously. *Doe v. Public Citizen*, 749

11

F.3d 246, 273 (4th Cir. 2014). Pseudonymous litigation is allowed in the court's discretion where "privacy or confidentiality concerns are sometimes sufficiently critical that parties or witnesses should be allowed this rare dispensation." *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993). Though Plaintiff has already been granted this "rare dispensation," Plaintiff seeks to enjoin Defendant from disclosing *any* information related to this case to the press or the public, even if such information is requested via a legally sanctioned public records request.

The Fourth Circuit recently re-examined the applicable criteria for permitting pseudonymous litigation in *Doe v. Doe*, 85 F.4th 206 (4th Cir. 2023). In that case, the plaintiff (represented by the same law firm that is counsel for Plaintiff here) filed a civil action against a woman who made sexual assault allegations against the plaintiff while both were students at Tulane University. *Id* at 209. The district court denied the plaintiff's motion to proceed under pseudonym. Affirming, the Fourth Circuit held that it was appropriate to deny the plaintiff Doe status where he failed to allege more than a conclusory fear of retaliation or reputational damage and had failed to muster "evidence of a risk beyond [his] bare assertion that he *could be* targeted for

12

retaliation if his name were public." *Id.* at 213 (emphasis in original). The Court also noted that the plaintiff's complaint undermined his claimed interest in anonymity, given that he "included so many details about his identity in his Complaint that, arguably, he could be readily identified in any event, especially by those in the Tulane community." *Id.* at 214 n.7.

The Fourth Circuit's decision in *Doe* demonstrates that parties must show credible evidence of threatened reputational harm or retaliation before courts can take the extraordinary measure of keeping information from third parties and the public.[2] Although requests to proceed pseudonymously are distinct from preliminary injunctions restricting speech and information sharing, the Court must still balance the party's interest in anonymity against the public's right of access to information regarding a matter of public interest. *See id.* at 218. As discussed *supra*, how a public university handles allegations of sexual assault is a matter of profound public interest. Here, Plaintiff has

---

[2] If the circumstances warrant, courts have more narrowly tailored means to protect against the disclosure of sensitive information, such as sealing of discrete documents in accordance with this Court's rules.

13

shared copious personal identifying information in his Complaint, including his status as a recipient of a named, prestigious scholarship awarded annually to handful of UNC students, his advisor, the name of his fraternity, relatively precise dates on which various incidents and disciplinary proceedings occurred, and the location of his condominium and hometown residence.

Despite Plaintiff's own detailed disclosures, he seeks to prohibit the press and members of the public from obtaining other information related to his identity and this case. The identifying information shared by Plaintiff in his complaint is more than sufficient to enable third parties to identify him. Counsel for *amici*, through simple Google searches, was able to find the 2019-2020 year-in-review magazine for Plaintiff's academic scholarship (which is identified by name in his Complaint) and was then able to identify Plaintiff by the name of his fraternity (also specified in the Complaint). Counsel was further able to identify Plaintiff by cross-referencing the location of Plaintiff's family home (provided in the Complaint) with the information about Plaintiff included on the scholarship's website.

14

Plaintiff, like the appellant in *Doe*, "wants to have his cake and eat it too. [Plaintiff] wants the option to hide behind the shield of anonymity in the event he is unsuccessful in proving his claim, but he would surely identify himself if he were to prove his claim." *Id.* at 217–18. Especially where, as here, entering a PI would restrict the rights of third parties to seek public records regarding this case, the Court should reject Plaintiff's one-sided efforts to prevent the disclosure of information that might conflict with his preferred version of the facts.

## **CONCLUSION**

For the reasons stated above, *amici* respectfully request that this Court vacate the existing TRO and deny Plaintiff's motion for a preliminary injunction.

Respectfully submitted this 15th day of November by:

**ACLU OF NORTH CAROLINA LEGAL FOUNDATION**

/s/ Kristi L. Graunke*
Kristi L. Graunke
N.C. State Bar No. 51216
Ivy Johnson
N.C. State Bar. No. 52228
P.O. Box 28004
Raleigh, NC 27611
Tel.: (919) 354-5066
kgraunke@acluofnc.org
ijohnson@acluofnc.org

*Counsel for Amici Curiae ACLU-NCLF and Freedom of the Press Foundation*

*Counsel of record

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was on this day filed in in the Western District of North Carolina using the Clerk's CM/ECF system, which will send notification of this filing to counsel for the parties.

Signed this 15th day of November, 2023

/s/ Kristi Graunke