# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### CIVIL CASE NO. 1:23-cv-00041-MR

JACOB DOE,                                    )
                                              )
                  Plaintiff,              )
                                              )
                  vs.                     )
                                              )
THE UNIVERSITY OF NORTH                       )
CAROLINA SYSTEM; THE                          )
UNIVERSITY OF NORTH CAROLINA                  )
AT CHAPEL HILL; THE UNIVERSITY                )
OF NORTH CAROLINA AT CHAPEL                   )
HILL BOARD OF TRUSTEES;                       )
BOARD OF GOVERNORS OF THE                     )
UNIVERSITY OF NORTH CAROLINA;                 )
KEVIN GUSKIEWICZ, in his official             )
capacity; ELIZABETH HALL,                     )
individually and in her official              )
capacity; JEREMY ENLOW,                       )
individually and in his official              )
capacity; BETH FROEHLING,                     )
individually and in her official              )
capacity; REBECCA GIBSON,                     )
individually and in her official              )
capacity; JACLYN FEENEY,                      )
individually and in her official              )
capacity; DAVID ELROD, individually           )
and in his official capacity; and             )
DESIREE RIECKENBERG,                          )
individually and in her official              )
capacity,                                     )
                                              )
                  Defendants.             )
_____ )

**MEMORANDUM OF DECISION AND ORDER**

**THIS MATTER** is before this Court on the Plaintiff's Motion for a Preliminary Injunction [Doc. 49].

## I.    PROCEDURAL AND FACTUAL BACKGROUND

In the spring of 2021, Jacob Doe ("Plaintiff") was suspended from the University of North Carolina at Chapel Hill ("UNC-CH"), on an interim basis, after UNC-CH received complaints accusing him of sexual misconduct. [Doc. 1 at 1-4]. After an investigation into the complaints determined that he was "responsible" for multiple acts of sexual misconduct, the Plaintiff was permanently expelled from the affiliate universities of the University of North Carolina System. [Id.]. The Plaintiff contends, however, that he did not commit the misconduct alleged, and that the process that found him responsible was "unfair[,]" "prejudicial[,]" and "replete with gender bias." [See id. at 3]. After exhausting his administrative appeals, on February 15, 2023, the Plaintiff commenced this action against the University of North Carolina System, UNC-CH, the University of North Carolina at Chapel Hill Board of Trustees, the Board of Governors of the University of North Carolina, Kevin Guskiewicz, Elizabeth Hall, Jeremy Enlow, Beth Froehling, Rebecca Gibson, Jaclyn Feeney, David Elrod, and Desiree Rieckenberg (collectively "Defendants"). [See id. at 1-2]. The Plaintiff alleges denial of procedural due

2

process, violations of Title IX of the Education Amendments of 1972 ("Title IX"), and a number of state law claims. [Id. at 4].

On February 15, 2023, the Plaintiff filed a Motion for a Temporary Restraining Order ("TRO"), seeking to prevent the Defendants "from releasing or disclosing any information concerning the disciplinary proceedings that are the subject of this lawsuit[.]" [Doc. 5]. This Court granted the Plaintiff's motion and entered a TRO on February 22, 2023. [Doc. 14]. However, that same day, the Plaintiff withdrew his Motion for a TRO and notified this Court that the Defendants had not yet received any requests to release the Plaintiff's information. [Doc. 15]. Accordingly, this Court dissolved the TRO on March 1, 2023. [Doc. 19]. On July 13, 2023, this Court entered an Order allowing the Plaintiff to proceed pseudonymously, given the sensitive subject matter of this action. [See Doc. 41].

On October 3, 2023, UNC-CH notified the Plaintiff that it had received a public records request seeking disclosure of his name and disciplinary record. [See Doc. 52 at 2]. As such, on October 6, 2023, the Plaintiff filed a new Motion for a TRO and Motion for a Preliminary Injunction. [Doc. 49]. In his Motion, Plaintiff seeks an order:

> (i)     Prohibiting Defendants from releasing or disclosing any information concerning the

3

disciplinary proceedings that are the subject of this lawsuit;

(ii)     Requiring Defendants to direct all individuals, including but not limited to employees and students, over whom they exercise control to refrain from publishing or disclosing any information concerning Plaintiff, the disciplinary proceedings, or the outcomes of such proceedings; and

(iii)     Requiring UNC to inform any media outlet, or any other third party, that receives information concerning Plaintiff's disciplinary outcome about the filing of this motion for a temporary restraining order and preliminary injunction, and notifying such media outlets or other third party, that they are prohibited from publishing any information concerning Plaintiff, the disciplinary proceedings, or the outcomes of such proceedings.

[Id. at 1-2].   On October 9, 2023, the Defendants filed a Response in Opposition to the Plaintiff's Motion.  [Doc. 53].  On October 10, 2023, the Honorable Judge Max O. Cogburn, Jr., United States District Judge,[1] held a hearing on the Plaintiff's Motion.  [Doc. 49].  The next day, on October 11, 2023, Judge Cogburn entered a TRO through October 25, 2023.  [Doc. 57]. On October 25, 2023, Judge Cogburn extended the TRO an additional fourteen (14) days, through November 8, 2023.  [Doc. 58].  On October 30, 2023, the undersigned scheduled a hearing on the Plaintiff's Motion for

---

[1] Judge Cogburn heard the Plaintiff's motion for a TRO due to the temporary unavailability of the undersigned.

Preliminary Injunction to be held on November 8, 2023. Thereafter, the Plaintiff filed an unopposed motion to continue the preliminary injunction hearing due to a scheduling conflict. [Doc. 59]. The Court granted the Plaintiff's unopposed motion to continue the hearing and extended the TRO until the date of the rescheduled hearing, November 21, 2023. [Doc. 60].

Prior to that hearing, Amici Curiae ACLU of North Carolina Legal Foundation and Freedom of the Press Foundation sought leave to file an amended amici brief, which the Court granted. [See Doc. 61 and Text-Only Order entered Nov. 17, 2023].

The Court held the preliminary injunction hearing on November 21, 2023. At the conclusion of the hearing, and with the consent of the parties, the Court extended the TRO to November 29, 2023, so that this written order could be entered.

## II. STANDARD OF REVIEW

A plaintiff's entitlement to injunctive relief is a matter of discretion with the Court. See Metro. Regul. Info. Sys., Inc. v. Am. Home Realty Network, Inc., 722 F.3d 591, 595 (4th Cir. 2013). "When considering a motion for preliminary injunction, a district court may assess the relative strength and persuasiveness of the evidence presented by the parties, and is not required to resolve factual disputes in favor of the non-moving party." Microban Int'l,

Ltd. v. Kennedy, No. 3:22-CV-00620-KDB-DSC, 2023 WL 2533085, at *3 (W.D.N.C. Mar. 15, 2023) (quoting Queen Virgin Remy, Co. v. Thomason, No. 1:15-cv-1638-SCJ, 2015 WL 11422300, at *2 (N.D. Ga. June 10, 2015)). While the plaintiff is responsible for making a sufficient showing to justify the entry of a preliminary injunction, "the burdens at the preliminary injunction stage track the burdens at trial." Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. 418, 429 (2006); see also In re Microsoft Corp. Antitrust Litig., 333 F.3d 517, 526 (4th Cir. 2003).

Here, the parties have not offered any affidavits or declarations in support of or in opposition to the Motion for Preliminary Injunction. As evidence, the Plaintiff relies only on the allegations as set forth in his Verified Complaint. When presented with a motion for preliminary injunction, courts "may consider a verified complaint as the equivalent of an affidavit[.]" Parson v. Alcorn, 157 F. Supp. 3d 479, 489 n.13 (E.D. Va. 2016).

## III. DISCUSSION

A plaintiff seeking a preliminary injunction must demonstrate that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm absent injunctive relief, (3) the balance of the equities tips in his favor, and (4) the injunction would be in the public interest. Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). "A preliminary injunction is an

6

extraordinary remedy never awarded as of right." Id. at 24. A plaintiff seeking a preliminary injunction "need not establish a certainty of success, but must make a clear showing that he is likely to succeed at trial." Di Biase v. SPX Corp., 872 F.3d 224, 230 (4th Cir. 2017) (internal quotation marks omitted).

Here, the Defendants do not contest that the Plaintiff has made a sufficient showing with respect to three of the Winter factors, namely, the likelihood of irreparable harm, the balance of equities, and the public interest. [See Doc. 53 at 7 n.2]. As addressed in more detail infra, the Plaintiff has shown the likelihood of irreparable injury if the preliminary injunction is not granted, while the Defendants have not shown any potential harm to them if it is granted. On this factor alone the equities tip heavily in the Plaintiff's favor, and public interest would be served by preserving the status quo as the Plaintiff seeks.

The sole focus of the Defendants' argument is that the Plaintiff is not entitled to the requested relief because he has failed to show that he is likely to succeed on the merits of his Title IX claim. Therefore, the propriety of the Plaintiff's Motion for Preliminary Injunction rests solely on the determination of the Plaintiff's likelihood of success on the merits on his primary federal claim.

The "likelihood of success" factor, however, must be analyzed in the context of the unique circumstances presented by the Plaintiff's request for injunctive relief. The Plaintiff is not seeking a preliminary grant of the relief that would flow from a successful prosecution of his Title IX claim, such as temporary reinstatement to the University during the pendency of this litigation. Rather, he is only seeking to maintain the status quo and to prevent the disclosure of his identity and details regarding the University's allegedly flawed investigation into his conduct until the underlying claims can be fully litigated.

The Fourth Circuit formerly held in <u>Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Manufacturing Co.</u>, 550 F.2d 189, 195 (4th Cir. 1977), <u>overruled by</u> <u>Real Truth About Obama, Inc. v. Fed. Election Comm'n</u>, 575 F.3d 342 (4th Cir. 2009), that if the potential harm to the plaintiff significantly outweighed the potential harm to the defendant in granting the preliminary injunction, then the plaintiff only needed to show that he "raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation." <u>Id.</u> at 346-47 (citation omitted). Such showing supposedly sufficed for demonstrating "a likelihood of success on the merits." If this "sliding scale" analysis were still the law, the Defendants' concessions would

end the discussion here and the injunction would issue.  If <u>Blackwelder</u> were still good law, this decision would be easy.

The Supreme Court in <u>Winter</u>, however, made clear that a party seeking a preliminary injunction must fulfill each of the required elements. The strength of one does not forgive the absence of another.  At least that is how the Fourth Circuit interpreted <u>Winter</u> in <u>Real Truth About Obama, Inc. v. Federal Election Commission</u>, 575 F.3d 342 (4th Cir. 2009).  In that case, the failure of the plaintiff to demonstrate a likelihood of prevailing on the merits doomed its request for a preliminary injunction.  <u>Id.</u> at 351.  Relying on <u>Obama</u>, the Defendants argue that because the Plaintiff here has failed to show a likelihood of success, the injunction must be denied.   The Defendants, however,  do not attempt to define the showing that the Plaintiff must make.   For instance, if a plaintiff brings five claims and seeks a preliminary injunction that would pertain to all five, but only shows a likelihood of prevailing on one, does this still support the issuance of a preliminary injunction?  The Defendants here seem to concede that it does, by focusing their argument exclusively on whether the Plaintiff is likely to prevail on his Title IX claim.

As to that claim, Title IX provides that "[n]o person . . . shall, on the basis of sex, be excluded from participation in . . . or be subjected to

discrimination under any education program or activity receiving Federal Financial assistance." 20 U.S.C. § 1681(a). Title IX's guarantees are enforceable through private causes of action. See Feminist Majority Found. v. Hurley, 911 F.3d 674, 686 (4th Cir. 2018). To prevail under Title IX, a plaintiff must adequately establish "causation—that is, a causal link between the student's sex and the university's challenged disciplinary proceeding. Not just any causal link will suffice . . . [the] language [of Title IX] requires 'but-for' causation." Sheppard v. Visitors & Rectors of Va. State Univ., 993 F.3d 230, 236 (4th Cir. 2021).

Here, the Plaintiff bases his Title IX claim on the theory that UNC-CH's disciplinary proceedings resulted in an "erroneous outcome," a theory of recovery espoused by the Court of Appeals for the Second Circuit in Yusuf v. Vassar College, 35 F.3d 709, 715 (2d Cir. 1994)).[2] To succeed on an erroneous outcome theory of sex discrimination, a plaintiff must demonstrate "(1) 'particular facts sufficient to cast some articulable doubt on the accuracy

_____

[2] In Yusuf, the Second Circuit held that a plaintiff could state a Title IX claim either by alleging that disciplinary proceedings resulted in an erroneous outcome because of gender bias, or by alleging that a university selectively enforced its disciplinary regulations because of gender bias. 35 F.3d at 715. However, the Fourth Circuit has rejected this "all-inclusive doctrinal framework," and instead held that "Title IX prohibits all discrimination on the basis of sex." Sheppard, 993 F.3d at 236. However, in so holding, the Fourth Circuit stated, "we find no inherent problems with the erroneous outcome and selective enforcement theories identified in [Yusuf]. In fact, either theory, with sufficient facts, may suffice to state a plausible claim." Id. As such, plaintiffs in the Fourth Circuit are not limited to the two theories adopted by Yusuf.

10

of the outcome of the disciplinary proceeding' and (2) 'particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding.'" Doe v. Maryland, No. ELH-20-1227, 2021 WL 1174707, at *22 (D. Md. Mar. 29, 2021) (quoting Yusuf, 35 F.3d at 715); see also Brzonkala v. Va. Polytechnic Inst. & State Univ., 132 F.3d 949, 961-62 (4th Cir. 1997), rev'd on other grounds, 169 F.3d 820 (4th Cir. 1999) (en banc); Doe v. Salisbury Univ., 123 F. Supp. 3d 748, 768 (D. Md. 2015); Doe v. Wash. & Lee Univ., No. 6:14-CV-00052, 2015 WL 4647996, at *9-*10 (W.D. Va. Aug. 5, 2015). "The first element can be satisfied by (1) pointing to procedural flaws in the investigatory and adjudicative process, (2) identifying inconsistencies or errors in the findings, or (3) challenging the overall sufficiency and reliability of the evidence." Doe 2 ex rel. Doe 1 v. Fairfax Cnty. Sch. Bd., 384 F. Supp. 3d 598, 607 (E.D. Va. 2019), aff'd, 832 F. App'x 802 (4th Cir. 2020). "[S]tatistical evidence of gender bias in the University's decision making, policies and procedures that are designed to reach gender-specific outcomes, and/or statements by university officials evidencing gender bias" can satisfy the second element. Doe v. Marymount Univ., 297 F. Supp. 3d 573, 586 (E.D. Va. 2018).

As to the first element, the Plaintiff has presented evidence in the form of his Verified Complaint that UNC-CH's investigatory and adjudicatory

processes were procedurally flawed, and that he was found responsible for sexual misconduct based on insufficient and unreliable evidence. [Doc. 1 at 3]. Moreover, the Plaintiff has presented evidence suggesting that the investigation involved significant procedural irregularities, some of which violated UNC-CH's own Title IX policy. [See id. at 44-118]. While these procedural deficiencies "may appear insignificant in isolation, taken together they warrant concern that Doe was denied a full and fair hearing." Marymount, 297 F. Supp. 3d at 584. The Plaintiff further has presented evidence that UNC-CH lacked sufficient evidence to find him responsible for sexual misconduct, and that the evidence that UNC-CH did have was unreliable. [See Doc. 1 at 44-118; Doc. 51 at 17-18]. This evidence, when coupled with procedural irregularities, cast significant doubt on the accuracy of UNC-CH's determination that the Plaintiff engaged in sexual misconduct. The Defendants have not produced any evidence at this stage to the contrary.

As to the second element—namely, circumstances suggesting gender bias motivated the erroneous outcome—the Plaintiff's Verified Complaint establishes that UNC-CH has faced significant public pressure over its handling of sexual misconduct complaints, has been found to have violated Title IX by the Department of Education, and has responded by changing its

policies and creating new staff positions. [Doc. 1 at 141-57]. This evidence tends to show that UNC-CH was aware of, and responding to, public pressure regarding its handling of sexual misconduct. Additionally, the Plaintiff has presented evidence that the actions of Defendants Enlow and Hall, in investigating and adjudicating the complaints, evidenced gender bias. This evidence is sufficient for a factfinder to determine that UNC-CH reached an erroneous outcome in the Plaintiff's matter because of gender bias. Accordingly, this Court concludes that the Plaintiff's evidence is sufficient to show a likelihood of success on the merits of at least a portion of his Title IX claim.

Having determined that the Plaintiff has met each of the <u>Winter</u> elements, the next step is to analyze whether the preliminary injunction should issue. It should be noted that the very limited relief the Plaintiff seeks by this motion plays a significant role in this analysis. In balancing the equities, the Court must weigh the limited nature of the relief sought, along with the Plaintiff's strong proof regarding the severity of the irreparable harm in denying the motion, against the total absence of harm to the Defendants in granting it. Even though the Plaintiff's showing of the likelihood of success is somewhat narrow in scope, he has nonetheless fulfilled that element. This is the point in the analysis where the "sliding scale" of <u>Blackwelder</u> has not

13

been totally eviscerated by <u>Winter</u> and <u>Obama</u>.[3]  Quite the contrary, these later cases merely require at least a minimal showing as to each element (including success on the merits) before engaging in this balancing and weighing of the elements, along with all the other equitable considerations at issue.[4]

With that in mind, the Court turns to the other <u>Winter</u> factors: irreparable harm, balance of the equities, and the public interest.  As previously noted, the Defendants take no specific position regarding these factors.  [<u>See</u> Doc. 53 at 7 n.2].

Regarding irreparable harm, "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of an injunction are not enough."  <u>Roe v. Dep't of Def.</u>, 947 F.3d 207, 228 (4th Cir. 2020) (quoting <u>Di Biase</u>, 872 F.3d at 230) (internal quotation marks and alteration omitted).  Generally, harm is irreparable where it cannot later be cured by a monetary award.  <u>See</u> <u>Hughes Network Sys., Inc. v. InterDigital Comm. Corp.</u>, 17 F.3d 691, 694 (4th Cir. 1994).  Here, the Plaintiff contends

---

[3] <u>Obama</u> overruled <u>Blackwelder</u> on the question of whether a preliminary injunction can issue if one element is missing.  It did not overrule <u>Blackwelder</u> as to how to proceed if each <u>Winter</u> element is shown.

[4] Of course, injunctive relief is equitable in nature.  Thus, fitting such legal "elements" into an equitable analysis is something of a contradiction.  While <u>Blackwelder</u> may fit more neatly into a traditional equitable analysis, <u>Winter</u> and <u>Obama</u> merely interpose a threshold showing before that traditional equitable analysis is to be exercised.

that the premature disclosure of his name and disciplinary record would be "devastating and incurable[,]" as it would forever link him to acts of sexual misconduct that he claims he did not commit. [Doc. 51 at 22]. This association would undoubtedly damage the Plaintiff's reputation in the community and hamper his job prospects. Indeed, as this Court noted in its order allowing the Plaintiff to proceed pseudonymously, "the mere accusation of [sexual misconduct], if disclosed, can invite harassment and ridicule."[5] [Doc. 41 at 5 (quoting Doe v. Rectors & Visitors of George Mason Univ., 179 F. Supp. 3d 583, 593 (E.D. Va. 2016))]. This Court cannot remedy these harms after litigation with a monetary award. As such, Plaintiff has established that he is likely to suffer irreparable harm absent injunctive relief.

A plaintiff seeking a preliminary injunction must also establish that the balance of equities tips in his favor. Winter, 555 U.S. at 20. "[I]n each case the Court 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested

_____

[5] While the Defendants oppose the Plaintiff's request for limited injunctive relief here, they appear to do so primarily out of their concern of their potential liability for failing to comply with the North Carolina Public Records Act. [See Doc. 53 at 4 (citing DTH Media Corp. v. Folt, 374 N.C. 292, 841 S.E.2d 251 (2020))]. The Defendants, however, offer no explanation as to how their position is consistent with this Court's prior Order allowing the Plaintiff to proceed under a pseudonym, an Order which the Defendants have not sought reconsideration of or otherwise challenged. If the Court were to deny the Plaintiff's request to prevent the disclosure of his name and his disciplinary record, the Order allowing the Plaintiff to proceed pseudonymously would be effectively nullified.

relief.'" <u>Armento v. Asheville Buncombe Cmty. Christian Ministry, Inc.</u>, No. 17-cv-00150-MR-DLH, 2017 WL 3838638, at *1 (W.D.N.C. Sept. 1, 2017) (Reidinger, J.) (quoting <u>Amoco Prod. Co. v. Vill. of Gambell</u>, 480 U.S. 531, 542 (1987)).

Here, the Plaintiff merely seeks to prevent the disclosure of his identity and the contents and substance of his disciplinary file. He is not seeking, on an interim basis, the relief that would flow from a successful prosecution of his Title IX claim, such as interim reinstatement or restoration of his position at the University. He merely seeks to preserve the status quo as of the filing of this action, and he has demonstrated that the failure to maintain such status quo would result in irreparable harm to him. By contrast, the Defendants do not contend that they will suffer *any* harm if this Court enjoins them from disclosing the Plaintiff's name and disciplinary record during the pendency of this matter. Where the Plaintiff seeks such meager interim relief, and the potential harm to the Plaintiff by denying such relief is so much greater than any potential harm to the Defendants (if any) in granting the relief, the balancing of the equities tips strongly in the Plaintiff's favor.

Finally, to obtain injunctive relief, a plaintiff must establish that the granting of an injunction is in the public interest. <u>Winter</u>, 555 U.S. at 20. The "public interest is certainly served by promoting compliance with Title IX."

16

<u>Doe v. Wood Cnty. Bd. of Educ.</u>, 888 F. Supp. 2d 771, 778 (S.D. W. Va. 2012); <u>see also</u> <u>Roberts v. U.S. Jaycees</u>, 468 U.S. 609, 624 (1984) (antidiscrimination laws serve "compelling state interests of the highest order").  As such, both the Plaintiff and the public are served by ensuring that the Plaintiff's Title IX rights are protected.

Considering the <u>Winter</u> factors, they all weigh in the Plaintiff's favor, with the irreparable harm and balancing of the equities weighing heavily in the Plaintiff's favor.  Therefore, the motion will be granted and the preliminary injunction will issue.

The Plaintiff's requested injunction, however, seeks relief broader than what Rule 65 allows, as the Plaintiff seeks to enjoin students at UNC-CH, third parties, and media outlets from disclosing information pertaining to the Plaintiff's disciplinary proceedings.  [<u>See</u> Doc. 49 at 1-2].  These individuals and entities cannot be classified as parties; the officers, agents, servants, employees, or attorneys of parties; or as other persons who are in active concert or participation with the parties.  <u>See</u> Fed. R. Civ. P. 65.  Additionally, by its terms, North Carolina's Public Records Act applies only to "agencies of North Carolina government or its subdivisions[.]"  <u>See</u> N.C. Gen. Stat. § 132-1.  As such, this Court will limit its injunction to the University of North Carolina System, UNC-CH, the UNC-CH Board of Trustees, the Board of

Governors of the University of North Carolina, including their agents, servants, employees, attorneys, and other persons who are in active concert with those aforementioned, which would include all of the Defendants named herein.

## IV.    CONCLUSION

In sum, for the reasons stated above, the Plaintiff has demonstrated a likelihood of success on the merits of his Title IX claim and has further demonstrated that he is likely to suffer irreparable harm in the absence of injunctive relief, that the balance of equities tips in his favor, and that the imposition of a preliminary injunction would be in the public interest. However, the Plaintiff's requested injunction is too broad and fails to comply with Rule 65 of the Federal Rules of Civil Procedure.   Therefore, in its discretion, this Court will enter a narrower preliminary injunction than the one requested.  See Metro. Regul. Info. Sys., Inc., 722 F.3d at 595.

<u>**O R D E R**</u>

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for a Preliminary Injunction [Doc. 49] is **GRANTED** to the extent that the University of North Carolina System, the University of North Carolina at Chapel Hill, the University of North Carolina at Chapel Hill Board of Trustees, and the Board of Governors of the University of North Carolina, including their agents,

18

servants, employees, attorneys, and other persons who are in active concert with those aforementioned, including all the Defendants named herein, are hereby **RESTRAINED** and **ENJOINED** from releasing or disclosing any information pertaining to the disciplinary proceedings that are the subject of this lawsuit, and particularly including the identity of the Plaintiff, during the pendency of this lawsuit or until further Order of this Court.

**IT IS SO ORDERED.**

Signed: November 28, 2023

Martin Reidinger
Chief United States District Judge