## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## CIVIL CASE NO. 1:23-cv-00041-MR

| | |
|---|---|
| JACOB DOE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| THE UNIVERSITY OF NORTH CAROLINA | ) |
| SYSTEM; THE UNIVERSITY OF NORTH | ) |
| CAROLINA AT CHAPEL HILL; THE | ) |
| UNIVERSITY OF NORTH CAROLINA AT | ) |
| CHAPEL HILL BOARD OF TRUSTEES, | ) |
| formerly known as The University of North | ) |
| Carolina Board of Trustees; BOARD OF | ) |
| GOVERNORS OF THE UNIVERSITY OF | ) |
| NORTH CAROLINA; KEVIN GUSKIEWICZ, | ) |
| in his official capacity; ELIZABETH HALL, | ) |
| individually and in her official capacity; | ) |
| JEREMY ENLOW, individually and in his | ) |
| official capacity; Beth Froehling, | ) |
| individually and in her official capacity; | ) |
| REBECCA GIBSON, individually and in | ) |
| her official capacity; JACLYN FEENEY, | ) |
| individually and in her official capacity; | ) |
| DAVID ELROD, individually and in his | ) |
| official capacity; and DESIREE | ) |
| RIECKENBERG, individually and in her | ) |
| official capacity, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| _____ | ) |

## MEMORANDUM OF DECISION AND ORDER

**THIS MATTER** is before this Court on Defendants' Motions to Dismiss [Docs. 32, 34] and Defendants' Motion for Change of Venue [Doc. 44].

## I.  BACKGROUND

Jacob Doe[1] ("Plaintiff"), a former student of the University of North Carolina at Chapel Hill, brings this action asserting federal claims under 42 U.S.C. § 1983 and Title IX of the Education Amendments of 1972 ("Title IX"), as well as various state law claims, challenging the handling of the disciplinary proceedings brought against him after four female classmates, Jane Roes 1-4 (hereinafter "Roe 1" through "Roe 4"), accused him of sexual misconduct.  [See Doc. 1].  These proceedings resulted in Plaintiff losing his Morehead-Cain scholarship and being permanently expelled from the University of North Carolina System.  [See, e.g., id. at ¶ 560].

In his Verified Complaint, Plaintiff names the following Defendants: the University of North Carolina System (the "UNC System"); the University of North Carolina at Chapel Hill ("UNC-CH" or "the University"); the University of North Carolina at Chapel Hill Board of Trustees f/k/a the University of North Carolina Board of Trustees ("Board of Trustees"); the

---

[1] This Court previously granted Plaintiff's motion to proceed anonymously in this action. [See Doc. 41].

Board of Governors of the University of North Carolina ("Board of Governors"); Kevin Guskiewicz, the Chancellor of UNC-CH ("Chancellor Guskiewicz"); Elizabeth Hall, the Interim Head of UNC-CH's Equal Opportunity and Compliance Office ("Hall"); Jeremy Enlow, a Title IX investigator for UNC-CH ("Enlow"); Beth Froehling, a Title IX investigator for UNC-CH ("Froehling"); Rebecca Gibson, the Director of Report and Response in UNC-CH's Equal Opportunity and Compliance Office ("Gibson"); Jaclyn Feeney, a Title IX investigator for UNC-CH ("Feeney"); David Elrod, a hearing officer for one of Plaintiff's hearings ("Elrod"); and Desiree Rieckenberg, the UNC-CH Dean of Students ("Rieckenberg"). This Court will refer to the UNC System, UNC-CH, the Board of Trustees, and the Board of Governors as the "UNC Entity Defendants"; to Chancellor Guskiewicz, Hall, Enlow, Froehling, Gibson, Feeney, Elrod, and Rieckenberg as the "UNC Employee Defendants"; and to the collective as "Defendants." [See generally id.]. Except for Chancellor Guskiewicz, who is sued in his official capacity only, the UNC Employee Defendants are sued in their respective official and individual capacities.[2]

---

[2] Chancellor Guskiewicz resigned the Chancellorship of UNC-CH effective January 12, 2024. See David N. Bass, UNC-Chapel Hill chancellor announces resignation, move to Michigan State, Carolina Journal (Dec. 8, 2023), https://www.carolinajournal.com/unc-chapel-hill-chancellor-announces-resignation-move-to-michigan-state/. However, under

3

In his Verified Complaint, Plaintiff asserts claims for: (1) denial of his Fourteenth Amendment due process rights under 42 U.S.C. § 1983 against all Defendants (Count I); (2) violation of Title IX, 20 U.S.C. § 1681, *et seq.*, for erroneous outcome against UNC-CH (Count II); (3) breach of contract against UNC-CH (Count III); (4) negligent hiring, supervision, and retention against UNC-CH and Hall (Count IV); (5) negligent infliction of emotional distress ("NIED") against the UNC Employee Defendants (Count V); (6) intentional infliction of emotional distress ("IIED") against the UNC Employee Defendants (Count VI); (7) tortious interference with contract against UNC-CH and the UNC Employee Defendants (Count VII); and (8) violations of the North Carolina Constitution against UNC-CH (Count VIII).

Defendants now move to dismiss Plaintiff's claims pursuant to Rules 12(b)(1), 12(b)(3), and 12(b)(6) of the Federal Rules of Civil Procedure, arguing that venue is improper in the Western District of North Carolina, that some of Plaintiff's claims cannot be brought in federal court under the Eleventh Amendment, that some of Plaintiff's claims are precluded by

---

Rule 25(d) of the Federal Rules of Civil Procedure, "[a]n action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party." Fed. R. Civ. P. 25(d). Thus, this Court notes that UNC-CH's Interim Chancellor, Lee H. Roberts, has been "automatically substituted as a party" in this matter.

4

either sovereign or qualified immunity, and that Plaintiff has failed to state claims upon which relief can be granted.  [See Docs. 32-35].  By way of a separate motion, Defendants further argue that this matter should be transferred to the District Court for the Middle District of North Carolina, pursuant to 28 U.S.C. § 1404(a).  [Doc. 44].  Plaintiff has responded to Defendants' Motions [Docs. 39, 40, 47], and Defendants have replied [Docs. 42, 43, 48].  Thus, these motions are ripe for disposition.

## II.     STANDARDS OF REVIEW

### A.     Rule 12(b)(1) Standard

Where a defendant raises either Eleventh Amendment or sovereign immunity in seeking dismissal of a claim, that motion is properly considered pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, as the defendant is contending that the court lacks subject matter jurisdiction over the plaintiff's claim.  Dickinson v. Univ. of N.C., 91 F. Supp. 3d 755, 761 (M.D.N.C. 2015); Johnson v. North Carolina, 905 F. Supp. 2d 712, 719 (W.D.N.C. 2012) (citing Abril v. Virginia, 145 F.3d 182, 184 (4th Cir. 1998)); Beckham v. Nat'l R.R. Passenger Corp., 569 F. Supp. 2d 542, 547 (D. Md. 2008).  At the pleading stage, when a defendant raises immunity as grounds for a 12(b)(1) motion, "all the facts alleged in the complaint are

assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." <u>Adams v. Bain</u>, 697 F.2d 1213, 1219 (4th Cir. 1982). Additionally, a dismissal for lack of subject matter jurisdiction "must be one without prejudice, because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits." <u>S. Walk at Broadlands Homeowner's Ass'n, Inc. v. Openband at Broadlands, LLC</u>, 713 F.3d 175, 185 (4th Cir. 2013).

### B. Rule 12(b)(3) Standard

A court may dismiss an action that is filed in an improper venue. Fed. R. Civ. P. 12(b)(3). "When considering a motion to dismiss for improper venue, a court must accept the facts alleged in the complaint as true and must draw all reasonable inferences in the plaintiff's favor." <u>Moseley v. Fillmore Co., Ltd.</u>, 725 F. Supp. 2d 549, 558 (W.D.N.C. 2010) (Reidinger, J.); <u>see</u> <u>also</u> <u>Aggarao v. MOL Ship Mgmt. Co., Ltd.</u>, 675 F.3d 355, 366 (4th Cir. 2012).

### C. Rule 12(b)(6) Standard

The central issue for resolving a Rule 12(b)(6) motion is whether the claims state a plausible claim for relief. <u>See</u> <u>Francis v. Giacomelli</u>, 588

F.3d 186, 189 (4th Cir. 2009). In considering a Rule 12(b)(6) motion, the plaintiff's allegations are accepted as true and construed in the light most favorable to him. Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009); Francis, 588 F.3d at 190-92. Although well-pled facts are accepted as true, "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement" are not. Consumeraffairs.com, 591 F.3d at 255; Francis, 588 F.3d at 189.

The claims need not contain "detailed factual allegations," but must contain sufficient factual allegations to suggest the required elements of the cause of action. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Consumeraffairs.com, 591 F.3d at 256. "[A] formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Nor will labels and legal conclusions suffice. Id. Rather, the Complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570; see also Consumeraffairs.com, 591 F.3d at 255. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The mere possibility that a defendant acted unlawfully is not sufficient for a

7

claim to survive a motion to dismiss.  <u>Consumeraffairs.com</u>, 591 F.3d at 256; <u>Francis</u>, 588 F.3d at 193.  Ultimately, the well-pled factual allegations must move a plaintiff's claim from possible to plausible.  <u>Twombly</u>, 550 U.S. at 570; <u>Consumeraffairs.com</u>, 591 F.3d at 256.

## III.  DISCUSSION

### A.  Venue

Defendants contend that this case should be dismissed for improper venue under Rule 12(b)(3), or in the alternative that it should be transferred, in the interest of justice, to the Middle District of North Carolina pursuant to 28 U.S.C. § 1404.  These two motions will be addressed first, as they are applicable to the action as a whole.

### 1.  Motion to Dismiss for Improper Venue

A civil action may be brought in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located[,]" or in "a judicial district in which a substantial part of the events or omissions giving rise to a claim occurred[.]"  28 U.S.C. §§ 1391(b)(1)-(2).

Taking the allegations in Plaintiff's complaint as true, a number of the interactions between himself and Roes 3 and 4 that were reported as

alleged sexual misconduct occurred "at his family home in Morganton[,]" North Carolina, and "at his condominium in Charlotte[,]" North Carolina, both of which are located within the Western District. [Doc. 1 at ¶ 161-63, 214-17]. Also, the bulk of Plaintiff's claims allege that UNC-CH and its employees committed serious omissions in failing to properly investigate the allegations of sexual misconduct against him, *including* those relating to the misconduct that allegedly occurred within the Western District. [See, e.g., id. at ¶ 762]. If Roes 3 and 4 had not reported that Plaintiff committed sexual misconduct against them within the Western District, Plaintiff would not have been subjected to UNC-CH's flawed investigatory process regarding their allegations.

Additionally, UNC-CH relied on the fact that they received "multiple complaints of sexual misconduct[,]" some of which allegedly occurred within this District, in suspending Plaintiff on an interim basis, and it informed each of the hearing panels that found him responsible that allegations were made by multiple women. [Id. at ¶¶ 234, 376, 607, 718]. Indeed, the Roe 1 panel specifically "relied upon a purported pattern of sexual misconduct when forming its conclusions regarding Roe 1's claims[.]" [Id. at ¶ 527]. Moreover, the Roe 4 panel was told that "Plaintiff

9

had been found responsible for sexual assault and retaliation" in the Roe 3 matter, which exclusively involved alleged sexual misconduct occurring within this District, even though the Roe 3 panel actually found Plaintiff *not* responsible. [Id. at ¶¶ 486, 501].

Ultimately, Plaintiff was expelled from *each* of the constituent universities of the UNC System after being found responsible in the Roe 4 matter. [Id. at ¶¶ 4, 596]. This includes Appalachian State University, UNC Asheville, UNC Charlotte, and Western Carolina University, which are all located within the Western District. Thus, a substantial part of the sanction Plaintiff received as a result of UNC-CH's allegedly flawed investigations, which he now seeks to have set aside, has effect in this District. Taken together, these allegations demonstrate that a substantial portion of the alleged events and omissions giving rise to Plaintiff's claims occurred within the Western District. As a result, venue is proper here pursuant to 28 U.S.C. § 1391(b)(2).

Further, as the parties agree that all Defendants reside in North Carolina, venue is also proper in the Western District if *any* Defendant resides here. See 28 U.S.C. § 1391(b)(1); [see also Docs. 33 at 9; 39 at 4]. The venue statute defines residency differently depending on an

organization's form. For instance, if a corporation resides in a state with "more than one judicial district . . . , such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State[.]" 28 U.S.C. § 1391(d). However, more generally, "an entity with the capacity to sue and be sued in its common name . . . , whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which [it] is subject to the court's personal jurisdiction with respect to the civil action in question." Id. at § 1391(c)(2).

The UNC System[3] was created by state statute "as a body politic and corporate," and the General Assembly specifically referred to the System as a "corporation." See N.C. Gen. Stat. § 116-3; see also Farmer v. Troy Univ., 382 N.C. 366, 374 n.4, 879 S.E.2d 124, 130 n.4 (2022). Moreover, the Supreme Court has recognized that the term "bod[y] politic and

---

[3] Even though the parties treat the UNC System, UNC-Chapel Hill, the Board of Governors, and the Board of Trustees as separate entities, the Court notes that the General Assembly created the UNC System as a single agency, which is "composed of" sixteen "constituent institutions." N.C. Gen. Stat § 116-2(4); § 116-4. See also, Board of Governors v. U.S. Dept of Labor, 917 F.2d 812, 815 (4th Cir. 1990) cert. denied 500 U.S. 916 (1991). Therefore, at this early stage, without any further elaboration by the parties, the Court will treat any claim against one of these four Defendants as a claim against a single entity consisting of all four. See also, McAdoo v. University of North Carolina at Chapel Hill, 248 F.Supp.3d 705, 718 (M.D.N.C. 2017) (The question of the relationship of UNC-Chapel Hill to the State is a question of Federal Law, but "the manner in which state law addresses the entity remains important and potentially controlling.") (cleaned up).

Case 1:23-cv-00041-MR   Document 65   Filed 03/04/24   Page 11 of 47

corporate" encompasses "corporations, both private and public . . . ." Will v. Mich. Dep't of State Police, 491 U.S. 58, 69 (1989). Therefore, the UNC System is considered a corporation for purposes of venue. Thus, to determine if venue is proper under § 1391(b)(1), this Court must decide whether the UNC System is subject to its personal jurisdiction.

To establish personal jurisdiction over the UNC System, Plaintiff must allege jurisdictional facts sufficient to demonstrate "that exercising jurisdiction will (1) comply with the forum state's long-arm statute and (2) comport with the due process requirements of the Fourteenth Amendment." Oppenheimer v. Griffin, No. 1:18-cv-00272-MR-WCM, 2019 WL 7373784, at *3 (W.D.N.C. Dec. 31, 2019) (Reidinger, J.) (citing Carefirst of Md., Inc., v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003)). North Carolina's long-arm statute has been construed as extending as far as due process allows, see Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001); thus, this two-pronged test collapses into the single inquiry of whether the exercise of personal jurisdiction over the UNC System comports with due process. Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 559 (4th Cir. 2014).

12

Exercising jurisdiction over the UNC System comports with due process so long as it has sufficient "minimum contacts" with the Western District, such that to require it to defend its interests here "does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). The sufficiency of the contacts depends on the circumstances of the case. "General jurisdiction" exists over all Plaintiff's claims against the UNC System if its affiliations with the Western District "are so constant and pervasive as to render [it] essentially at home [here]." Daimler AG v. Bauman, 571 U.S. 117, 122 (2014) (internal quotation marks omitted).

However, more limited contacts may confer "specific jurisdiction," if they relate to the substance of Plaintiff's claim. See, e.g., Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-16 (1984). In determining whether specific jurisdiction exists over the UNC System, consideration is given to (1) the extent to which it purposefully availed itself of the privilege of conducting activities within the Western District; (2) whether Plaintiff's claims arise out of those activities; and (3) whether the exercise of personal jurisdiction would be constitutionally "reasonable." ALS Scan, Inc. v. Digit. Serv. Consultants, Inc., 293 F.3d 707, 711-12 (4th

13

Cir. 2002), cert. denied, 537 U.S. 1105 (2003).  The ultimate test is whether "the defendant's conduct and connection with the [Western District is] . . . such that he should reasonably anticipate being haled into court []here." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

The UNC System was specifically created by the North Carolina General Assembly as a "public multicampus university *dedicated to the service of North Carolina and its people.*"  See N.C. Gen. Stat. § 116-1 (emphasis added).  Thus, from UNC's inception, the General Assembly envisioned that the UNC System would provide educational services to *all* North Carolinians, including those residing in Western North Carolina. Indeed, since the UNC System was established, it has been composed of "16 diverse constituent institutions[,]" including four located within the Western District, Appalachian State University, UNC Asheville, UNC Charlotte, and Western Carolina University.  Id. at §§ 116-1, 116-4.  The UNC System is "responsible for the general determination, control, supervision, management and governance of all affairs of [its] constituent institutions."  See id. at § 116-11.  Therefore, from the time of its creation in its current form in 1971, the UNC System has been continuously responsible for managing and governing "all affairs" of four universities

14

within this District.  See id.  Accordingly, the UNC System's affiliations are so continuous and pervasive with this District that it can properly be considered at home here.

Moreover, the UNC System has been treated as "an agency of the State" in some situations.  Lannan v. Bd. of Governors of Univ. of N.C., 285 N.C. App. 574, 583, 879 S.E.2d 290, 298 (2022).  This status has allowed it to take advantage of both North Carolina's sovereign and Eleventh Amendment immunities to avoid certain suits.  See id. (concluding that the UNC System can claim North Carolina's sovereign immunity); Brown v. Univ. of N.C. at Chapel Hill, No. 1:22-cv-717, 2023 WL 6958987, at *16 (M.D.N.C. Oct. 20, 2023) (dismissing claims against the UNC System based on Eleventh Amendment immunity).  "It would be an absurd result" to conclude that a state agency—indeed, one that has at times enjoyed the same immunities as the state—"is [not] necessarily at home everywhere in [the state]."  Doe v. Univ. of Tenn., No. 3:16-cv-199, 2016 WL 1253004, at *6 (M.D. Tenn. Mar. 29, 2016) (citing Daimler AG, 571 U.S. at 122).  Thus, this Court has general personal jurisdiction over the UNC System.

Turning to specific jurisdiction, the UNC System has continuously and purposefully availed itself of the privilege of conducting activities within the

Western District since 1971. Indeed, as noted above, it has been responsible for managing *all* the affairs of four constituent universities within this District for over fifty years. Additionally, Plaintiff's claims, at least in part, arise out of the UNC System's activities in this District, as he was permanently expelled from *all* of the System's constituent universities, including the four located within the Western District. Moreover, given the continuous nature of the System's activities within this District, and its status as an agency of the state of North Carolina, this Court's exercise of personal jurisdiction is *eminently* reasonable. Therefore, this Court also has specific personal jurisdiction over the UNC System.

In sum, the UNC System resides within the Western District because it is subject to both general and specific personal jurisdiction here.[4] 28 U.S.C. § 1391(d). As a result, venue is also proper in this District because all Defendants reside in North Carolina, and because the UNC System resides here. Id. at § 1391(b)(1). The Defendants' motion to dismiss for improper venue under Rule 12(b)(3) is therefore denied.

---

[4] Defendants contend that the UNC System's residency should be determined for purposes of venue under 28 U.S.C. § 1391(c)(2) because it is an "entity," rather than a "corporation." [See Doc. 35 at 9-10]. However, because this Court has both general and specific personal jurisdiction over the UNC System, the System can be "deemed to reside" in this District under both § 1391(c)(2) and § 1391(d).

16

## 2.     Motion to Transfer Venue

As noted above, Defendants also contend that this matter should be transferred to the Middle District of North Carolina for the convenience of the parties and in the interest of justice.  [See Doc. 44].  A district court may transfer any civil action "to any other district . . . where it might have been brought" "[f]or the convenience of parties and witnesses, in the interest of justice[.]"  28 U.S.C. § 1404(a).  The decision to transfer a cause of action pursuant to § 1404 is "committed to the discretion of the transferring judge[.]"  See Brock v. Entre Comput. Ctrs., Inc., 933 F.2d 1253, 1257 (4th Cir. 1991) (citing Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988)).

In considering a motion to transfer venue, the following factors must be accounted for: "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice."  Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc., 791 F.3d 436, 444 (4th Cir. 2015).  In balancing the relevant factors, "the plaintiff's choice of forum is of utmost importance."  Amirotech, Inc. v. Srg. Tech., LLC, No. 3:15-cv-00636-GCM, 2016 WL 3219880, at *4 (W.D.N.C. June 7, 2016).  Indeed, "unless the balance is *strongly* in favor of the defendant, the plaintiff's choice of forum

should *rarely* be disturbed." Collins v. Straight, Inc., 748 F.2d 916, 921 (4th Cir. 1984) (emphasis added). Moreover, a motion to transfer venue "will not be granted if a transfer would merely shift the inconvenience from the defendant to the plaintiff, or if the equities lean but slightly in favor of the movant . . . ." Carstar Franchisor SPV LLC v. Roberts, No. 3:23-cv-00234-FDW-SCR, 2023 WL 4604591, at *2 (W.D.N.C. July 18, 2023).

Here, Plaintiff chose to file this action in the Western District, which is the place of his permanent residence, as well as the site where some of the alleged actions giving rise to this claim occurred. Plaintiff's choice to file suit in his home forum is entitled to *substantial* weight. Additionally, to the extent that litigating in this District creates travel expenses or other burdens for Defendants, these are minimal, particularly considering that the Winston-Salem and Greensboro divisions of the Middle District are both located over an hour from Chapel Hill. Moreover, transferring this case to the Middle District would merely shift these burdens, particularly the burden of travelling, to Plaintiff. Therefore, having considered the factors cited by Defendants in their motion, this Court concludes that they do not outweigh Plaintiff's choice of forum. Accordingly, Defendants' motion to transfer pursuant to § 1404(a) is denied.

**B. Motion to Dismiss Title IX Claim**

Title IX states that "[n]o person . . . shall, on the basis of sex, be excluded from participation in . . . or be subjected to discrimination under any education program or activity receiving Federal Financial assistance." 20 U.S.C. § 1681(a). Title IX's guarantees are enforceable through private causes of action. See Feminist Majority Found. v. Hurley, 911 F.3d 674, 686 (4th Cir. 2018). To state a claim under Title IX, a plaintiff must "adequately plead causation—that is, a causal link between the student's sex and the university's challenged disciplinary proceeding. Not just any causal link will suffice . . . [the] language [of Title IX] requires 'but-for' causation." Sheppard v. Visitors & Rectors of Va. State Univ., 993 F.3d 230, 236 (4th Cir. 2021).

Plaintiff alleges that UNC-CH "erroneously" found him responsible for sexual misconduct because of his sex, and that as a result, he suffered substantial damages, including loss of future educational and career opportunities, emotional distress, reputational damage, and economic injuries. [Doc. 1 at ¶¶ 706-07, 749]. Plaintiff seeks compensatory damages exceeding $75,000, interest, attorneys' fees, expenses, and costs, as well as an injunction vacating the disciplinary findings and

decisions reached in the Roe 1 and Roe 4 matters, an expungement of his disciplinary record, and readmission to UNC-CH. [Id. at ¶ 750]. UNC-CH seeks dismissal of Plaintiff's Title IX claim in its entirety, arguing that "Plaintiff has not plausibly alleged that gender discrimination was the *but-for* cause of his claimed injury[.]" [Doc. 34 at 2].

A plaintiff can state a claim for sex discrimination under Title IX by alleging that a university's disciplinary process reached an "erroneous outcome" as a result of sex discrimination. See Sheppard, 993 F.3d at 236 (citing Yusuf v. Vassar Coll., 35 F.3d 709, 715 (2d Cir. 1994)). To plead an erroneous outcome theory, "a plaintiff must allege (1) 'particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding' and (2) 'particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding.'" Doe v. Maryland, No. ELH-20-1227, 2021 WL 1174707, at *22 (D. Md. Mar. 29, 2021) (quoting Yusuf, 35 F.3d at 715); see also Brzonkala v. Va. Polytechnic Inst. & State Univ., 132 F.3d 949, 961-62 (4th Cir. 1997), rev'd on other grounds, 169 F.3d 820 (4th Cir. 1999) (en banc); Doe v. Salisbury Univ., 123 F. Supp. 3d 748, 768 (D. Md. 2015); Doe v. Wash. & Lee Univ., No. 6:14-CV-00052, 2015 WL 4647996, at *9-*10 (W.D. Va. Aug. 5, 2015).

20

"The first element [of an erroneous outcome theory] can be satisfied by (1) pointing to procedural flaws in the investigatory and adjudicative process, (2) identifying inconsistencies or errors in the findings, or (3) challenging the overall sufficiency and reliability of the evidence." Doe 2 _ex rel._ Doe 1 v. Fairfax Cnty. Sch. Bd., 384 F. Supp. 3d 598, 607 (E.D. Va. 2019), aff'd, 832 F. App'x 802 (4th Cir. 2020). The second element can be satisfied by "statistical evidence of gender bias in the University's decision making, policies and procedures that are designed to reach gender-specific outcomes, and/or statements by university officials evidencing gender bias." Doe v. Marymount Univ., 297 F. Supp. 3d 573, 586 (E.D. Va. 2018).

As to the first element, Plaintiff makes numerous factual allegations in his Verified Complaint that suggest UNC-CH's investigatory and adjudicatory processes were procedurally flawed. [See Doc. 1 at ¶¶ 706-45]. Plaintiff further alleges that many of these flaws violate UNC-CH's own Title IX policy. [See id. at ¶¶ 761-63, 776, 778]. While these deficiencies "may appear insignificant in isolation, taken together they warrant concern that [Plaintiff] was denied a full and fair hearing." Doe, 297 F. Supp. 3d at 584. Plaintiff also contends that UNC-CH lacked sufficient evidence to find him responsible for sexual misconduct, and his Verified Complaint contains

detailed allegations suggesting that UNC-CH's evidence was unreliable. [See Doc. 1 at ¶¶ 706-45]. When coupled with the procedural irregularities, these allegations cast significant doubt on the accuracy of UNC-CH's determination that Plaintiff is responsible for sexual misconduct.

As to the second element, Plaintiff alleges that UNC-CH has faced significant public pressure over its handling of sexual misconduct complaints, has recently been found to have violated Title IX by the Department of Education, and has responded by changing its policies and creating new staff positions to address reports of sexual misconduct. [Id. at ¶¶ 622-96]. Plaintiff's allegations tend to show that UNC-CH is aware of, and responding to, public pressure regarding its handling of allegations of sexual misconduct. Additionally, Plaintiff's allegations regarding the actions of Defendants Enlow, Froehling, and Hall, while investigating and adjudicating the reports made against him, tend to suggest gender bias. [Id. at ¶¶ 712-44, 762, 770-72]. At this stage, Plaintiff's allegations are sufficient to plausibly allege sex discrimination under Title IX. Therefore, UNC-CH's motion to dismiss Plaintiff's Title IX claim is denied.[5]

---

[5] UNC-CH also argues that this Court should dismiss Plaintiff's Title IX claim to the extent that he seeks monetary damages. However, for purposes of deciding its motion to dismiss, it is sufficient that UNC-CH has conceded that injunctive relief would be available to Plaintiff if he ultimately prevails. [See Doc. 35 at 22-25].

## C.  Motions to Dismiss § 1983 Claims

The Federal Civil Rights Act, 42 U.S.C. § 1983, imposes civil liability upon every person who, under color of law, deprives another of rights secured by the Constitution and laws of the United States.  To assert a § 1983 claim, a plaintiff must allege (1) the deprivation of a right secured by the Constitution or laws of the United States, and (2) that the alleged deprivation was committed under color of state law.  Austin v. Paramount Parks, Inc., 195 F.3d 715, 727 (4th Cir. 1999).  By its terms, § 1983 "creates no substantive rights; it merely provides remedies for deprivation of rights established elsewhere."  City of Okla. City v. Tuttle, 471 U.S. 808, 816 (1985) (internal citation omitted).

With respect to his § 1983 claims, Plaintiff alleges that Defendants violated his Fourteenth Amendment procedural due process rights, and that as a result, he suffered substantial damages, including loss of future educational and career opportunities, reputational damage, and economic injuries.  [Doc. 1 at ¶ 618].  He seeks an injunction vacating the disciplinary findings and decisions reached in the Roe 1 and Roe 4 matters, an expungement of his disciplinary record, and readmission to UNC-CH as a student in good standing.  [Id. at ¶ 619].  In addition to injunctive relief,

Plaintiff seeks compensatory and punitive damages. [Id. at ¶ 620]. Defendants move to dismiss Plaintiff's § 1983 claims in their entirety.

### 1. Eleventh Amendment Immunity / Rule 12(b)(1)

The UNC Entity Defendants and the UNC Employee Defendants sued in their official capacities first contend that Plaintiff's § 1983 claims against them should be dismissed pursuant to Rule 12(b)(1), based on Eleventh Amendment immunity. [Docs. 33 at 10; 35 at 25]. The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." Additionally, while the amendment does not explicitly state as much, its protections have been extended, based on principles of sovereign immunity, to prevent a state's own citizens from suing it in federal court. Port Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 304 (1990); Lee-Thomas v. Prince George's Cnty. Pub. Sch., 666 F.3d 244, 248 (4th Cir. 2012). This immunity extends to state agencies and departments. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101-02 (1984). However, it does *not* extend to "bodies politic and corporate[,]" such as "municipalities and other local government units[,]" in certain cases. See

Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 688-90 (1978). Where a defendant raises the Eleventh Amendment in seeking dismissal, it bears the burden of establishing the existence of immunity. See Hutto v. S.C. Ret. Sys., 773 F.3d 536, 543 (4th Cir. 2014).

Here, the UNC Entity Defendants are state agencies. See Lannan, 285 N.C. App. at 583, 879 S.E.2d at 298; Kawai Am. Corp. v. Univ. of N.C. at Chapel Hill, 152 N.C. App. 163, 165, 567 S.E.2d 215, 217 (2002); Wood v. N.C. State Univ., 147 N.C. App. 336, 338, 556 S.E.2d 38, 40 (2001); MacDonald v. Univ. of N.C. at Chapel Hill, 299 N.C. 457, 462-65, 263 S.E.2d 578, 581-83 (1980). However, they were also specifically created by the General Assembly "as a body politic and corporate . . ." See N.C. Gen. Stat. § 116-3. As noted above, state agencies generally receive the protections of Eleventh Amendment immunity, but this is not always so for bodies politic and corporate. The parties' filings do not address this distinction. Thus, at this early stage, the UNC Entity Defendants, and thereby the UNC Employee Defendants sued in their official capacities, have not met their burden of establishing that the Eleventh Amendment bars Plaintiff's claims against them from being brought in federal court.

Therefore, their 12(b)(1) motions based on Eleventh Amendment immunity seeking dismissal of Plaintiff's § 1983 claims are denied.[6]

### 2. Rule 12(b)(6)

Defendants also contend that Plaintiff has failed to state due process claims under § 1983 and thus, that his claims should be dismissed pursuant to Rule 12(b)(6). [See Doc. 33 at 12]. The Fourteenth Amendment states that no state "shall . . . deprive any person of life, liberty, or property, without due process of law." To state a due process claim, the plaintiff must allege that the state deprived him of a protectable interest to which due process rights attach. Shirvinski v. U.S. Coast Guard, 673 F.3d 308, 314 (4th Cir. 2012). "Procedural due process rights attach where state action condemns a person to 'suffer grievous loss of **any** kind.'" McNeill v. Butz, 480 F.2d 314, 318 (4th Cir. 1973) (emphasis added) (quoting Joint Anti-Fascist Refugee Comm. v. McGrath, 341 U.S. 123, 168 (1951) (Frankfurter, J., concurring)); see also Goldberg v. Kelly, 397 U.S. 254, 262-63 (1970). In addition to alleging he was deprived of a

---

[6] Relatedly, the UNC Entity Defendants and the UNC Employee Defendants sued in their official capacities also contend that they are not properly considered "persons" subject to suit under § 1983. [Docs. 33 at 10; 35 at 26]. However, while "neither a State nor its officials acting in their official capacities are 'persons' under § 1983[,]" see Will, 491 U.S. at 71, "bodies politic and corporate[,]" such as "municipalities and other local government units[,]" are "persons to whom § 1983 applies." Monell, 436 U.S. at 688-90. Thus, this question, too, turns on whether the UNC Entity Defendants should be treated as state agencies or as a body politic and corporate.

protectable interest, the plaintiff must allege that the process he received prior to deprivation was "constitutionally inadequate." <u>Shirvinski</u>, 673 F.3d at 314.  The requirements of procedural due process are flexible.  <u>McNeill</u>, 480 F.2d at 321.  However, generally, as the interest at issue becomes of more importance to the party at risk of deprivation, the procedural protections required become increasingly robust.  <u>See</u> <u>Cafeteria & Rest. Workers Union, Local 473, AFL-CIO v. McElroy</u>, 367 U.S. 886, 895 (1961); <u>Goldberg</u>, 397 U.S. at 264.

Here, Plaintiff alleges that as a result of Defendants' actions he has been permanently expelled from every state-funded public university that is a constituent of the UNC System, and that the Morehead-Cain Foundation (the "MCF") revoked his prestigious Morehead scholarship, along with all of the related benefits.  [Doc. 1 at ¶¶ 4, 820-21].  Additionally, Plaintiff alleges that "his educational goals and career aspirations" have been entirely derailed, and that his name and reputation have been "permanently tarnish[ed] . . . ."  [<u>Id.</u> at ¶ 7].  Taken together, particularly at this stage, Plaintiff has alleged that he has suffered a grievous loss sufficient to trigger

due process protections at the hands of state actors.[7]  Thus, this Court must analyze whether Plaintiff has plausibly alleged that he was not afforded sufficient procedural rights.

"It is well established that '[a] fair trial in a fair tribunal is a basic requirement of due process.'"  See Strickland v. United States, 32 F.4th 311, 343 (4th Cir. 2022) (citing In re Murchison, 349 U.S. 133, 136 (1955)).  "Fairness . . . requires [both] an absence of actual bias . . . and an effort to prevent even the probability of unfairness."  Id. (internal citations and quotation marks omitted).  Additionally, "[i]n almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses."  Goldberg, 397 U.S. at 269.  Moreover, "[c]ertain principles have remained relatively immutable . . . .  One of these is that where governmental action seriously injures an individual . . . the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue."  McNeill, 480 F.2d at 322.

Here, Plaintiff has made numerous allegations regarding serious procedural flaws that occurred at his disciplinary hearings.  These include

_____

[7] In arguing that they are entitled to Eleventh Amendment and sovereign immunity, the UNC Entity Defendants and the UNC Employee Defendants sued in their official capacities have conceded that they are state actors.

allegations that Plaintiff did not receive proper notification of the accusations against him, that he was not allowed to cross-examine his accusers, that the hearing panels failed to consider relevant exculpatory evidence, that relevant evidence was withheld from him, and that the investigators and members of the hearing panels demonstrated gender bias while investigating and adjudicating the allegations made against Plaintiff. [Doc. 1 at ¶¶ 586-88, 592, 597-98, 605, 607-13, 706-48]. As a particularly stark example, Plaintiff alleges that one of his accuser was allowed by the hearing officer to leave the proceeding in order to avoid being cross-examined, and that the *accuser's attorney* was permitted to "answer questions on her behalf." [Id. at ¶ 404].

Moreover, Plaintiff alleges that UNC-CH violated its own policies, which guaranteed him a "prompt, thorough, and *impartial* resolution process[,]" guaranteed he would be provided with sufficient notice of the charges against him such that he would have time to prepare, guaranteed he would have an "opportunity to inspect and review *any* evidence obtained as part of the investigation[,]" guaranteed he would be "permitted to ask the other party . . . *all* relevant questions . . . , including those challenging credibility[,]" and guaranteed him that "*any* individual designated . . . as a

decision-maker . . . *must not have a conflict of interest or bias* for or against Reporting Parties or Responding Parties generally or an individual Reporting Party or Responding Party; *must not rely on sex stereotypes; and must promote impartial investigations and adjudications . . . .*"  [See Doc. 35-3 at 5-17 (emphasis added)].

In sum, Plaintiff has alleged that he was found responsible for sexual misconduct by biased hearing panels and investigators, after a seriously flawed process, in which he was not allowed to confront his accusers or the evidence against him, and which violated UNC-CH's policies.  Drawing all reasonable inferences in his favor, Plaintiff has sufficiently alleged that he was deprived of his protectable interest without receiving sufficient procedural protections.  Accordingly, Defendants' motions to dismiss Plaintiff's § 1983 claims pursuant to Rule 12(b)(6) are denied.

### 3.    Qualified Immunity / Rule 12(b)(1)

The UNC Employee Defendants sued in their individual capacities also contend that Plaintiff's § 1983 claims against them should be dismissed based on qualified immunity.  [See Doc. 33 at 18].  Qualified immunity "takes cognizance of human imperfections," West v. Murphy, 771 F.3d 209, 213 (4th Cir. 2014), by protecting government officials from

30

liability with respect to "bad guesses in gray areas." Braun v. Maynard, 652 F.3d 557, 560 (4th Cir. 2011) (internal citation and quotation marks omitted). "Government officials are entitled to the defense of qualified immunity unless a § 1983 claim satisfies the following two-prong test . . . : (1) the allegations underlying the claim, if true, substantiate the violation of a federal statutory or constitutional right; and (2) this violation was of a 'clearly established' right 'of which a reasonable person would have known.'" Ridpath v. Bd. of Governors of Marshall Univ., 447 F.3d 292, 306 (4th Cir. 2006). The burden of establishing the defense of qualified immunity "rests with the defendant." Id. at 305. A claim should only be dismissed at the 12(b) stage based on qualified immunity if the Court is "unable to say that [Plaintiff] cannot build a factual record to demonstrate that his clearly established . . . rights were contravened." Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 315n.23 (4th Cir. 2006); see also, McVey v. Stacy, 157 F.3d 271, 279 (4th Cir. 1998) (affirming district court's deferral of the qualified immunity issue until factual record was more developed); Basilica v. Harris, 658 F. Supp 3d 285, 297-98 (E.D. Va. 2023) ("Because further factual development will assist the Court in deciding

31

whether to grant qualified immunity at summary judgment, the Court will not consider the affirmative defense at [the 12(b) stage].").

As noted above, Plaintiff has sufficiently alleged that his due process rights have been violated. Moreover, a reasonable person would be aware that investigators and adjudicators should be unbiased, and that an accused has a right to confront his accusers and the evidence against him. Thus, if Plaintiff's allegations that he was denied an opportunity to cross examine his accusers, that he was prevented from reviewing the evidence used to find him responsible, and that the reports against him were investigated and adjudicated by biased parties prove true, Defendants will have violated Plaintiff's clearly established due process rights. Qualified immunity generally exists to protect those who must make "split-second decisions" from the realities of "hindsight bias . . . ." Stanton v. Elliott, 25 F.4th 227, 233 (4th Cir. 2022). Though qualified immunity might extend to the decision makers involved here in some sense, this is not a case where a state actor was forced to make a split-second decision without having access to, or time to consider, all the relevant factual circumstances. Such officials may have the authority to make discretionary decisions within "gray areas". Braun, 652 F.3d at 560. The Plaintiff, however, has plausibly

32

alleged that the Defendants actions in this case fall outside such gray areas.  As such, the UNC Employee Defendants' 12(b)(1) motions to dismiss based on qualified immunity are denied.

### D.    State Law Claims

As discussed above, the Defendants have not established that they are entitled to Eleventh Amendment immunity at this stage.  Thus, their 12(b)(1) motions to dismiss Plaintiff's state law claims based on the Eleventh Amendment are denied.

#### 1.    Claims Against UNC-CH

Plaintiff alleges claims against UNC-CH for negligent hiring, supervision, and retention; for breach of contract; and for violations of the North Carolina Constitution.  UNC-CH moves to dismiss these claims under Rules 12(b)(1), arguing that they are entitled to sovereign immunity, and 12(b)(6), arguing that Plaintiff has failed to state claims upon which relief can be granted.

##### a.    Sovereign Immunity / 12(b)(1)

"Sovereign immunity protects the State and its agencies from suit absent waiver or consent."  Carl v. State, 192 N.C. App. 544, 550, 665 S.E.2d 787, 793 (2008).  "The protection of sovereign immunity extends

beyond just a mere 'defense in a lawsuit'; a 'valid claim . . . is in essence immunity from suit.'" Lannan, 285 N.C. App. at 583, 879 S.E.2d at 298 (quoting RPR & Assocs., Inc. v. State, 139 N.C. App. 525, 527, 534 S.E.2d 247, 250 (2000)). This is because "[i]f the case is 'erroneously permitted to proceed to trial, immunity would be effectively lost.'" Id. at 583, 879 S.E.2d at 299 (quoting Doe v. Charlotte-Mecklenburg Bd. of Educ., 222 N.C. App. 359, 364, 731 S.E.2d 245, 248 (2012)).

UNC-CH "is an agency of the State. As a result, it can claim the protection of sovereign immunity." Id. at 853, 879 S.E.2d at 298 (internal citation omitted). Thus, unless North Carolina has waived its immunity regarding Plaintiff's claims, they must be dismissed. North Carolina has waived its sovereign immunity with regard to breach of contract claims, see MacDonald, 299 N.C. at 462, 263 S.E.2d at 581 (citing Smith v. State, 289 N.C. 303, 222 S.E.2d 412 (1976)), and with regard to direct claims brought pursuant to the state constitution. See Corum v. Univ. of N.C., 330 N.C. 761, 785-86, 413 S.E.2d 276, 291-92 (1992). However, the North Carolina Tort Claims Act, N.C. Gen. Stat. § 143-291, et seq., works only a limited waiver of North Carolina's sovereign immunity with regard to certain tort claims. As relevant here, "all tort claims against UNC and its constituent

34

institutions for money damages [must] be brought before the North Carolina Industrial Commission." Jones v. Pitt Cnty. Mem'l Hosp., Inc., 104 N.C. App. 613, 617, 410 S.E.2d 513, 516 (1991). As this Court has previously held, where a "Plaintiff was unable to litigate his claim regarding [a state actor]'s conduct in federal court because [the state actor]'s conduct was negligent and there is no subject matter jurisdiction in federal court to litigate against a state employee for negligent conduct . . . [thus] Plaintiff was required to split up his claim." Wilkins v. Gaddy, 2012 WL 2917887 at *2, 3:08 CV 138 (W.D.N.C. 2012); See also, Foushee v. RT Vanderbilt Holding Co., Inc., 2020 WL 917250 at *2, 5:17 CV 071 (E.D.N.C. 2020).

Accordingly, because Plaintiff seeks only money damages with regard to his negligent hiring, supervision, and retention claims, [see Doc. 1 at 188], UNC-CH's motion to dismiss pursuant to Rule 12(b)(1) based on sovereign immunity is granted as to those claims. Such dismissal is without prejudice. However, their motions are denied with respect to Plaintiff's breach of contract and state constitutional claims.

### b. Breach of Contract / Rule 12(b)(6)

To state a claim for breach of contract in North Carolina, a party must allege "(1) the existence of a valid contract and (2) breach of the terms of

that contract." <u>Poor v. Hill</u>, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000). Here, Plaintiff alleges that "UNC[-CH] created express and implied contracts when it offered, and [he] accepted, admission to UNC[-CH], and when [he] paid the required tuition and fees." [<u>See</u> Doc. 1 at ¶ 759]. He also alleges that the contractual relationship between himself and UNC-CH was supplemented by its "policies and procedures[,]" which contain certain commitments that UNC-CH makes to its enrolled students.[8] [<u>Id.</u> at ¶¶ 752-53]. Plaintiff generally alleges that UNC-CH breached its contract with him by failing to provide him with fair disciplinary hearings that complied with the commitments it makes to its enrolled students, and in ultimately permanently terminating his enrollment at UNC-CH and expelling him from the UNC System. [<u>Id.</u> at ¶¶ 761-84]. These allegations, when taken together, are sufficient to plausibly allege breach of contract. Therefore, UNC-CH's 12(b)(6) motion to dismiss Plaintiff's breach of contract claim is denied.

---

[8] Plaintiff alleges the terms of such contract both specifically [¶¶ 752-779] and broadly [¶ 752]. What is recounted here is not exhaustive of Plaintiff's allegations. It is unclear wither Plaintiff is asserting a contractual right to continued enrollment if conditions are met. Without further evidence, the Court will defer addressing any issue regarding the terms of any such contract.

### c.     State Constitutional Claims / Rule 12(b)(6)

Plaintiff alleges state constitutional claims under Article I Section 1, Article I Section 15, and Article I Section 19 of the North Carolina Constitution.  [Doc. 1 at ¶ 826].  "[T]o allege a cause of action under the North Carolina Constitution, a state actor must have [(1)] violated an individual's constitutional rights[;]" "[(2)] the claim must present facts sufficient to support an alleged violation of a right protected by the State Constitution[;]" and "[(3)] there must be no adequate state remedy."  Deminski *ex rel.* C.E.D. v. State Bd. of Educ., 377 N.C. 406, 413, 858 S.E.2d 788, 793 (2021).  A plaintiff need not ultimately prevail on his other state law claims to have an adequate state remedy, however, he "must have at least the opportunity to enter the courthouse door and present his claim."  Craig v. New Hanover Cnty. Bd. of Educ., 363 N.C. 334, 340-41, 678 S.E.2d 351, 355 (2009).  Put differently, a plaintiff only lacks an adequate state remedy if "state law [does] not provide for the type of remedy sought by the plaintiff[,]" or if his "claim . . . is barred by sovereign or governmental immunity . . . ."  First quoting Id. at 340, 678 S.E.2d at 356; then quoting Deminski, 377 N.C. at 413, 858 S.E.2d at 794.

37

Here, Plaintiff alleges direct claims under the North Carolina Constitution "in the alternative" to his other state law claims against UNC-CH—breach of contract and negligent hiring, supervision, and retention. [See Doc. 1 at ¶ 828]. Even though the Court holds herein that Plaintiff's breach of contract claim may proceed, and that his negligent supervision claim may be cognizable before the Industrial Commission, the Defendants maintain that all of Plaintiff's state claims are bared by sovereign immunity. To the extent that such claims do not otherwise survive Defendant's sovereign immunity defense, such claims present a cognizable state constitutional claim. Therefore, at this stage Plaintiff's claim on this basis survives the Defendants' motion to dismiss.

### 2. Negligent Hiring, Supervision, and Retention Against Hall / Rule 12(b)(6)

Under North Carolina law, a plaintiff may sue an employer for negligent hiring, supervision, and retention. See Keith, 381 N.C. at 462, 873 S.E.2d at 582; Smith, 128 N.C. App. at 494, 495 S.E.2d at 398. However, these claims are *not* actionable against co-employees. See Foster v. Crandell, 181 N.C. App. 152, 171, 638 S.E.2d 526, 539 (2007) ("At most, Crandell was … a co-employee of Rivest. Consequently, there can be no argument that Crandell negligently employed or retained

Rivest."); <u>McFadyen v. Duke Univ.</u>, 786 F. Supp. 2d 887, 1002 (M.D.N.C. 2011) ("[A] claim for negligent hiring, retention, and supervision would be actionable only against the employer, not the individual supervisors."), <u>aff'd in part, rev'd in part on other grounds sub nom.</u>, <u>Evans v. Chalmers</u>, 703 F.3d 636 (4th Cir. 2012); <u>Ostwalt v. Charlotte-Mecklenburg Bd. of Educ.</u>, 614 F. Supp. 2d 603, 609 (W.D.N.C. 2008) ("no claim for negligent supervision lies when the Defendant is not the employer of the individual who commits the tortious act.").

This distinction exists because North Carolina's Workers' Compensation Act "provides [the] exclusive remedy for unintentional work-related injuries." <u>Gregory v. Pearson</u>, 224 N.C. App. 580, 583, 736 S.E.2d 577, 580 (2012) (citing N.C. Gen. Stat. § 97-10.1); <u>see</u> <u>also</u> <u>Pleasant v. Johnson</u>, 312 N.C. 710, 713, 239 S.E.2d 244, 247 (1985) ("an employee who recovers under the Workers' Compensation Act cannot raise a negligence claim against a co-employee . . . ."). "The social policy behind workers' compensation is that injured workers should be provided with dignified, efficient and certain benefits for work-related injuries[.]" <u>Pleasant</u>, 312 N.C. at 712, 325 S.E.2d at 246. However, "in exchange for [these] limited but assured benefits[,]" "the employee and his dependents give up

39

their common law right to sue the employer [and co-employees] for negligence . . . ." Id. at 712, 325 S.E.2d at 246-47. This limitation on the liability of supervisors and co-employees extends to claims by plaintiffs who were not injured in the course and scope of their employment. See, e.g., Keller ex rel. Keller v. Deerfield Episcopal Ret. Cmty., Inc., 271 N.C. App. 618, 628, 845 S.E.2d 156, 163 (2020).

Here, Plaintiff alleges that Hall and Enlow were co-employees of UNC-CH. Specifically, he alleges that Hall was and is "the Associate Vice Chancellor of the EOC and the Title IX Coordinator for UNC[-CH,]" and that Enlow "was and is a Title IX investigator for the University[.]" [Doc. 1 at ¶¶ 16-17 (emphasis added)]. At most, Plaintiff's allegations support an inference that Hall was Enlow's supervisor. However, Plaintiff's claims of negligent hiring, supervision, and retention are not actionable against co-employees, including supervisory co-employees, such as Hall. See Trivette v. Yount, 366 N.C. 303, 309, 735 S.E.2d 306, 310-11 (2012) (a school principal, despite his supervisory role, was the co-employee of a part time office assistant); Regan v. Amerimark Bldg. Prods., Inc., 118 N.C. App. 328, 332, 454 S.E.2d 849, 852 (1995) (a plaintiff's supervisors were his co-employees); McCorkle v. Aeroglide Corp., 115 N.C. App. 651, 653,

446 S.E.2d 145, 147 (1994) ("[P]laintiff's immediate supervisor . . . qualifies as a 'co-employee[.]'"). Accordingly, Hall's 12(b)(6) motion to dismiss Plaintiff's claims of negligent hiring, supervision, and retention is granted and these claims are dismissed.

### 3. Negligent Infliction of Emotional Distress Against the UNC Employee Defendants in their Individual Capacities / Rule 12(b)(6)

To assert a claims for NIED, a plaintiff must allege (1) the defendant engaged in negligent conduct, (2) reasonably foreseeable to cause the plaintiff severe emotional stress, (3) which, in fact, caused plaintiff severe emotional distress. Sorrells v. M.Y.B. Hosp. Ventures, 334 N.C. 669, 672, 435 S.E.2d 320, 321-22 (1993).

As discussed at length above, Plaintiff alleges that the UNC Employee Defendants who investigated and adjudicated the reports of sexual misconduct made against him subjected him to a seriously flawed process that at times violated UNC-CH's own policies. For instance, Plaintiff alleges that evidence was withheld from him, that he was denied an opportunity to confront his accusers and the evidence against him, and that the investigators and adjudicators that handled the accusations made against him were biased. [See Doc. 1 at ¶ 801]. He also alleges that as a

result of being subjected to this flawed process, over the course of nearly a year, that he was expelled from the entire UNC System, that he lost a prestigious scholarship, that his reputation has been irreparably tarnished, and that his future educational and career prospects have been seriously hampered. [Id. at ¶¶ 749, 804]. Drawing all reasonable inferences in Plaintiff's favor, these allegations are sufficient to plausibly allege NIED. Thus, the UNC Employee Defendants' 12(b)(6) motions are denied.

### 4. Intentional Infliction of Emotional Distress Against the UNC Employee Defendants in their Individual Capacities / Rule 12(b)(6)

To assert a claim for IIED, a plaintiff must plausibly allege "(1) extreme and outrageous conduct by the defendant (2) which is intended to and does in fact cause (3) severe emotional distress." Waddle v. Sparks, 331 N.C. 73, 82, 414 S.E.2d 22, 27 (1992). "Conduct is extreme and outrageous only when it is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" McClean v. Duke Univ., 376 F. Supp. 3d 585, 612 (M.D.N.C. 2019) (quoting Briggs v. Rosenthal, 73 N.C. App. 672, 677, 327 S.E.2d 308, 311 (1985)). Outrageous conduct by itself is insufficient to state a claim for

IIED, however.  See Hensley v. Suttles, 167 F. Supp. 3d 753, 768 (W.D.N.C. 2016) (Reidinger, J.) (citing Dickens v. Puryear, 302 N.C. 437, 276 S.E.2d 325 (1981)).  "This Court must also assess the severity of the distress the defendant *intended* to instill in the [plaintiff] by way of [its] actions."  Id. (emphasis added).

Here, Plaintiff alleges that the UNC Employee Defendants who investigated and adjudicated the allegations of sexual misconduct against him provided him with a seriously flawed process, which at times violated UNC-CH's policies.  The Plaintiff has alleged actions that are biased, and arguably willful, wanton and even malicious.  However, they do not rise to the level of the extreme and outrageous conduct necessary to state a claim for IIED.  See Doe v. Liberty Univ., 635 F. Supp. 3d 447, 453-54 (W.D. Va. 2022) (allegation of failure to comply with Title IX policy did not amount to extreme and outrageous conduct); Doe v. Bd. of Trs. of St. Mary's Coll. of Md., No. CBD-19-1760, 2019 WL 6215543, at *5 (D. Md. Nov. 20, 2019) (allegation of failure to comply with disciplinary procedure manual during sexual misconduct investigation did not amount to extreme and outrageous conduct); Cash v. Lees-McRae Coll., Inc., No. 1:18-CV-00052, 2018 WL 7297876, at *16 (W.D.N.C. Aug. 13, 2018) (allegation of failure to conduct

sufficient investigation into sexual harassment or to conduct a suitable Title IX hearing did not amount to extreme and outrageous conduct). While Plaintiff has alleged that he was severely distressed by the flawed and unfair handling of the sexual misconduct allegations, Plaintiff does not plausibly claim that any of the UNC Employee Defendants *intended* to cause him severe emotional distress. For these reasons, the UNC Employee Defendants' 12(b)(6) motions to dismiss Plaintiff's IIED claims are granted, and these claims are dismissed.

### 5. Tortious Interference Against the UNC Employee Defendants in their Individual Capacities / Rule 12(b)(6)

Under North Carolina law, the elements of a tortious interference with contract claim are: (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) in doing so the defendant acts without justification; and (5) this causes actual damage to the plaintiff. See United Labs, Inc. v. Kuykendall, 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988); Warrender v. Gull Harbor Yacht Club, Inc., 228 N.C. App. 520, 536, 747 S.E.2d 592, 603 (2013).

Plaintiff alleges that he entered a contractual relationship with the Morehead-Cain Foundation (MCF) when he accepted its prestigious scholarship and enrolled at UNC-CH. [Doc. 1 at ¶ 817]. He also alleges that the UNC Employee Defendants were aware of this contract, as "his status as a Morehead scholar was discussed . . . throughout the disciplinary proceedings[.]" [Id. at ¶ 818]. Moreover, Plaintiff alleges that as a result of the information that UNC-CH provided to the MCF regarding the allegations made against him, his scholarship was suspended and subsequently revoked.[9] [Id. at ¶ 821-23]. Taken together, these allegations are sufficient to state a claim for tortious interference with a contract. Therefore, the UNC Employee Defendants' motion to dismiss pursuant to Rule 12(b)(6) is denied.

## IV. CONCLUSION

For the reasons stated above, the UNC Entity Defendants' Motion to Dismiss is granted in part and denied in part; the UNC Employee

---

[9] The UNC Employee Defendants contend that they could not have induced the MCF to revoke Plaintiff's scholarship because Plaintiff's accusers first reported their allegations to the MCF directly, which in turn reported the allegations to UNC-CH. [See Doc. 33 at 20-21]. However, Plaintiff alleges that the MCF informed him that his scholarship was being suspended "based on the information [UNC-CH's EOC] provided." [Doc. 1 at ¶ 822]. Moreover, drawing all reasonable inferences in Plaintiff's favor, it is plausible that the scholarship may have been suspended on a temporary basis, while UNC-CH investigated the allegations against Plaintiff, before it was revoked, after he was found responsible by UNC-CH.

Defendants' Motion to Dismiss is granted in part and denied in part; and the Defendants' Motion for Change of Venue is denied.

<u>**O R D E R**</u>

**IT IS, THEREFORE, ORDERED** that the UNC Entity Defendants' Motion to Dismiss [Doc. 34] is **GRANTED IN PART** and **DENIED IN PART** as follows:

> (1) Plaintiff's claims against UNC-CH for negligent hiring, supervision, and retention are **DISMISSED WITHOUT PREJUDICE.**
>
> (2) In all other respects, the UNC Entity Defendants' Motion to Dismiss [Doc. 34] is **DENIED.**

**IT IS FURTHER ORDERED** that the UNC Employee Defendants' Motion to Dismiss [Doc. 32] is **GRANTED IN PART** and **DENIED IN PART** as follows:

> (1) Plaintiff's claims against Defendant Hall for negligent hiring, supervision, and retention are **DISMISSED WITH PREJUDICE.**

46

(2) Plaintiff's claims for Intentional Infliction of Emotional Distress against the UNC Employee Defendants are **DISMISSED WITH PREJUDICE.**

(3) In all other respects, the UNC Employee Defendants' Motion to Dismiss [Doc. 32] is **DENIED.**

**IT IS FURTHER ORDERED** that Defendants' Motion for Change of Venue [Doc. 44] is **DENIED**.

The Clerk is Directed to substitute Lee H. Roberts, in his official capacity, for Defendant Kevin Guskiewicz, in his official capacity.

**IT IS SO ORDERED**.

Signed: March 4, 2024

Martin Reidinger
Chief United States District Judge