**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**
**Case No. 1:23-cv-00041-MR**

JACOB DOE,

      Plaintiff,

v.

THE UNIVERSITY OF NORTH
CAROLINA SYSTEM, et al.,

      Defendants.

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE THE TESTIMONY AND OPINIONS OF JACQUELINE WERNZ AND TO STRIKE HER SUPPLEMENTAL REPORT**

# TABLE OF CONTENTS

TABLE OF CASES AND AUTHORITIES ..................................................... ii

FACTUAL BACKGROUND ........................................................................ 1

ARGUMENT ............................................................................................... 8

I.    Wernz's Proffered Expert Testimony Will Not Aid the Jury ................ 9

      a.    Wernz's narrative summary usurps the jury's role in
            assembling facts from the evidence ........................................ 10

      b.    Wernz usurps the jury's role in drawing legal conclusions ...... 12

      c.    Wernz usurps the role of the Court to instruct the jury on
            the law ..................................................................................... 15

      d.    Ms. Wernz usurps the jury's role in assessing witness
            credibility ................................................................................. 19

II.   Ms. Wernz's Opinion is not Reliable .................................................. 21

III.  Neither Ms. Wernz's Designation, nor her Tardy
      Supplementation, Complied with Rule 26 ......................................... 23

CONCLUSION ........................................................................................ 25

CERTIFICATION ON USE OF ARTIFICIAL INTELLIGENCE ................... 28

i

# TABLE OF CASES AND AUTHORITIES

**Cases**

B.R. v. F.C.S.B.,
   No. 19-CV-917, 2024 WL 6043984 (E.D. Va. Mar. 8, 2024) ......14, 20

Campbell v. United States,
   70 F. App'x 153 (4th Cir. 2012)...................................................23, 24

Daubert v. Merrell Dow Pharmaceuticals, Inc.,
   509 U.S. 579 (1993) ...........................................................................9

Doe 2 by & through Doe 1 v. Fairfax Cnty. Sch. Bd.,
   832 F. App'x 802 (4th Cir. 2020) ......................................................16

Doe v. Colgate Univ.,
   No. 15CV1069, 2017 WL 4990629 (N.D.N.Y. Oct. 31, 2017),
   aff'd, 760 F. App'x 22 (2d Cir. 2019) .........................................14, 16

Doe v. Rollins Coll.,
   No. 18CV1069, 2020 WL 8408417 (M.D. Fla. Jan. 7, 2020) ............17

Eghnayem v. Bos. Sci. Corp.,
   57 F. Supp. 3d 658 (S.D.W. Va. 2014)..............................................11

Humphreys v. Regents of Univ. of California,
   No. 04-03808, 2006 WL 1867713 (N.D. Cal. July 6, 2006) ..............12

In re Coll. Athlete NIL Litig.,
   No. 20-CV-03919, 2023 WL 8372773 (N.D. Cal. Nov. 3, 2023) .......16

Jackson v. United States,
   No. 00CR74, 2010 WL 2775402 (W.D.N.C. July 13, 2010)..10, 13, 20

Johnson v. DePuy Syntheses Prods., Inc.,
   No. 21-CV-00025, 2022 WL 1598797 (W.D.N.C. May 19, 2022)21, 22

Jones v. Varsity Brands, LLC,
No. 20CV02892, 2024 WL 102611 (W.D. Tenn. Jan. 9, 2024)......... 12

Keystone Transportation Sols., LLC v. Nw. Hardwoods, Inc.,
No. 18-CV00039, 2019 WL 1756292 (W.D. Va. Apr. 19, 2019) ....... 11

Kingsley v. Brenda and Gene Lummus, Inc.,
No. 11CV32, 2012 WL 727091 (W.D.N.C. March, 6,2012) ............. 23

Knox v. PPG Indus., Inc.,
No. CV 15-1434, 2018 WL 11423313, at *1 (W.D. Pa. Mar. 15,
2018) ............................................................................................. 15

Kumho Tire Co., Ltd. v. Carmichael,
526 U.S. 137 (1999) ............................................................................ 9

Loecker v. Bd. of Trs. for Colorado Mesa Univ.,
671 F. Supp. 3d 1217 (D. Colo. 2023) ............................................ 17

McGowan v. S. Methodist Univ.,
No. 18-CV-00141, 2024 WL 946954 (N.D. Tex. Mar. 4, 2024)......... 16

Miller v. United States,
78 U.S. 268 (1870) .......................................................................... 11

Morgan v. City of Charlotte,
No. 22CV00003, 2023 WL 4002524 (W.D.N.C. June 14, 2023)....... 25

Nease v. Ford Motor Co.,
848 F.3d 219 (4th Cir. 2017)....................................................... 9, 21

Pogorzelska v. VanderCook Coll. of Music,
No. 19-CV-05683, 2023 WL 3819025 (N.D. Ill. June 5, 2023) ......... 16

Portz v. St. Cloud State Univ.,
297 F. Supp. 3d 929 (D. Minn. 2018)............................................... 17

Pulzone v. Kaleyra, Inc.,
No. 22CV1363, 2024 WL 3207291 (E.D. Va. June 27, 2024) .... 11, 12

Roohbakhsh v. Bd. of Trs. of Nebraska State Colleges,
No. 17CV31, 2019 WL 5653448 (D. Neb. Oct. 31, 2019)...........15, 16

Rowe Entm't v. William Morris Agency,
No. 98Civ.8272, 2003 WL 22272587 (S.D.N.Y. Oct. 2, 2003)..........12

Salem v. U.S. Lines Co.,
370 U.S. 31 (1962) ..........................................................................10

Scott v. Sears, Roebuck & Co.,
789 F.2d 1052 (4th Cir. 1986).........................................................15

Sheppard v. Visitors of Virginia State Univ.,
993 F.3d 230 (4th Cir. 2021).............................................................13

Snoznik v. Jeld-Wen, Inc.,
No. 09CV42, 2010 WL 1924483 (W.D.N.C. May 12, 2010) .............21

Synopsys, Inc v. Risk Based Sec., Inc.,
70 F.4th 759 (4th Cir. 2023).............................................................11

Torres v. Cnty. of Oakland,
758 F.2d 147 (6th Cir. 1985).............................................................13

United States v. Caputo,
517 F.3d 935 (7th Cir. 2008).............................................................19

United States v. Chapman,
209 F. App'x 253 (4th Cir. 2006)................................................10, 14

United States v. Cortez,
205 F. Supp. 3d 768 (E.D. Va. 2016).........................................16, 19

United States v. Lespier,
725 F.3d 437 (4th Cir. 2013).......................................................19, 20

United States v. McIver,
470 F.3d 550 (4th Cir.2006),
certiorari denied 550 U.S. 936 (2007) ...................................10, 18, 19

United States v. Offill,
    666 F.3d 168 (4th Cir. 2011) ............................................................ 19

United States v. Perkins,
    470 F.3d 150 (4th Cir. 2006) ............................................................ 13

Westberry v. Gislaved Gummi AB,
    178 F.3d 257 (4th Cir. 1999) ........................................................ 9, 22

WPS Inc. v. Am. Honda Motor Co.,
    No. 16-CV-2525, 2017 WL 4216159 (D.S.C. Sept. 22, 2017) .......... 25

Ziegler v. Polaris Indus., Inc.,
    No. 23-CV-00112, 2024 WL 482212 (W.D.N.C. Feb. 7, 2024) ......... 24

**Rules**

Fed. R. Civ. P. 26 ................................................................ passim

Fed. R. Evid. 702 ............................................................... passim

Title IX of the Education Amendments of 1972, 20 U.S.C. §§1681-1688
    ..................................................................................... passim

Expert opinions must be helpful. Jaqueline Wernz's proffered opinions are not. Offering an editorialized narrative of Plaintiff's disciplinary proceedings, she misstates key facts, fails to identify evidence supporting her opinions, and usurps the role of judge and jury by declaring what the law is and that Defendants violated it. With a greater potential to mislead than to enlighten—and lacking any specialized insight beyond the grasp of an average juror—her opinion should be excluded.

## FACTUAL BACKGROUND

Plaintiff was investigated by the University of North Carolina at Chapel Hill ("UNC-CH") after four women ("Roes 1-4") accused him of sexual misconduct. (ECF No. 1 ¶¶ 268, 271-273.) The same investigators handled all four cases, and the same hearing chair presided over three of the four proceedings. Plaintiff was found not responsible in two cases, partially responsible in one, and fully responsible in another. (Roes 1-4 Notice of Hearing Outcomes, ("exs. 1-4," respectively).) Jacqueline Wernz interprets this outcome as demonstrating that UNC-CH's adjudication process was riddled with so many "systemic, pervasive, and legally significant" errors that "they did everything incorrectly." (Wernz Expert Report ("Ex. 5") at 41; Wernz Dep. ("Ex. 6") 46:5-7.)

1

Ms. Wernz is an attorney designated by Plaintiff to opine as to Defendants' compliance with the standard of care in the context of student disciplinary proceedings arising from sex-based misconduct. (Ex. 5 at 2; Wernz Rebuttal Report ("Ex. 7") at 7.) Ms. Wernz explains this standard of care is "grounded primarily in federal courts' interpretations of institutional obligations under Title IX," "regulatory guidance," "OCR enforcement actions," and "constitutional due process principles." (Ex. 5 at 8-10.) Ms. Wernz thus opines as to what the law is, what it required of Defendants, and that Defendants violated it. (Id. at 8-10, 36-41; Ex. 6 36:20-25, 37:1-14, 61:5-9, 63:15-25, 64:1-1-7, 66:7-22, 83:4-9, 90:2-5, 84:8-20, 100:8-25, 105:21-25, 106:1-8, 120:2-25, 121:5-19, 145:3-20, 148:13-19, 150:12-20, 168:3-8, 173:7-17, 190:1-4; Ex. 7 at 4, 6, 9-10, 12, 13, 18.) At deposition, however, Ms. Wernz could not identify the caselaw purportedly governing the standard of care. (Ex. 6 68:15-19, 105:21-25, 106:1-8,114:3-25, 115:1, 122:25, 123:1-11.)

Providing a 25-page narrative summary of the "facts" of the underlying disciplinary proceedings, but without citing documents from those proceedings, Ms. Wernz identifies purported deficiencies that never occurred. For example:

- ██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████ (Roe 1 Email ("Ex. 8"), ██████████████████████████████████ (Roe 1 Comments ("Ex. 9")), ████████████████████████████████ Roe 1 Testimony ("Ex.10").) Roe 2 stated she declined to ████████████████ (Roe 2 Email ("Ex. 11")), ████████████████████████ (Roe 2 Comments ("Ex. 12")), ██████████████████ (Roe 2 Transcript ("Ex. 13").)

- Ms. Wernz states that Plaintiff was not informed "that the complaints had [been] withdrawn" until "after all four disciplinary hearings had concluded." (Ex. 5 at 16.) In reality, ████████████████████████████████████████████████ ████████████████████████████████ (Doe Dep. ("Ex. 14") at 138:8-19; 275:5-9.)

- Ms. Wernz asserts Plaintiff had no notice prior to his hearing that the alleged date of the Roe 1 sexual assault was November 12, 2020. (Ex. 5 at 30.) On the contrary, ████ ████████████████████████████████████████████████ ████████████████████████████████████████ (Doe Roe 1 Testimony ("Ex. 15"), ██████████████████████████████████████████████████ ████████████████ (Doe Counsel Roe 1 Statement ("Ex. 16")).)

- Ms. Wernz claims that Plaintiff had no notice ██████████ ████████████████████████████████████████████████ In fact, ██████████████████████████████████████████████

 Roe 1 Opportunity to Inspect Evidence ("Ex. 17").)

(Roe 1 Investigation Report ("Ex. 19") at 6.)

- Ms. Wernz asserts that, on July 22, 2021, Roe 4 sent an email alleging that Plaintiff " █████████████████████████████ █████████ " and that Emergency Evaluation and Action Committee ("EEAC") "referenced [those] allegations" during its August 2021 hearing. (Ex. 5 at 18.) In fact, the email in question indicated only that ███████████████████████████ ████████████████████████████████████████ ███████████ (Roe 2 Email ("Ex. 20")) (emphasis added). ████████████████████████████████ (EEAC Transcript ("Ex. 21").)

- Ms. Wernz claims that Plaintiff was not informed that Roe 4 had purportedly accused him ██████████████████████ ██████ ) On the contrary, ████████████ ████████████████████████████████████████ ██████████████████████ (Roe 4 Interview Transcript ("Ex. 22").) ████████████████████ (Ex. 14 217:19-25, 218:1-11.)

- Ms. Wernz claims that Plaintiff was prohibited from discussing evidence relating to Roe 4's credibility during the hearing. (Ex.

4

5 at 22.) Not so. During that hearing, Plaintiff discussed the very evidence Ms. Wernz claims he was precluded from discussing.

████████████████████████████████████████████

████████████ (Ex. 14 204:3-23.)[1]

- Ms. Wernz claims that evidence was omitted from the Roe 2 investigative report because ████████████████

████████████████████████████████████

██ (Draft Roe 2 Investigation Report ("Ex. 23") at 11),
████████████████ (Roe 2 Investigation Report ("Ex. 24") at 11.)

- Ms. Wernz claims that Plaintiff "was told to raise objections on appeal" during the Roe 1 hearing instead of asserting them on-the-record during the hearing. (Ex. 5 at 35.) On the contrary,

████████████████████████████████████████

██ (Roe 1 Panel Instructions ("Ex. 25").)
████████████████████████████████ (Roe 1 Transcript Excerpt ("Ex. 26")),
████████████████████████████ (Doe Counsel Objection ("Ex. 27").)

- Ms. Wernz asserts that ████████████████████

████████ Not so. ████████████████████████

████████████████████████████ (Ex. 10.)

████████████████████████████████████████████

████████████████████████████ (Roe 1 Transcript Excerpt ("Ex. 28").)

---

[1] Plaintiff identified an email from Roe 4 purportedly saying "got to dip," (Ex. 14 201:17-18), but Defendants are not in custody or control of any such document and Plaintiff has not been able to provide it upon request.

5

- Ms. Wernz claims that the Roe 1 investigative report contained ██████████████████████████████████████████████ ███████████████████████████████████████ (Ex. 5 at 29.) ██████████ ███████ ex. 19), ████████████████████████████████████████ ████████████ (Hall Correspondence ("Ex. 29").)

- Ms. Wernz alleges that ████████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████ ████████████████████ (Ex. 5 at 23.) In fact, ██████████████████████████████████ (Exs. 19, 24.) ██████████████████████████████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████ (Roe 3 and 4 Investigation Reports ("Ex. 30 and 31," respectively) at 23 and 13, respectively.) ████████ ██████████████████████████████████████████████ ████████████████████████████████ (Id. at 49 and 45, respectively.)

- Ms. Wernz claims that "UNC withheld exculpatory evidence until after the hearings[, including] emails disproving false claims, polygraph results[,] and notices that some complainants had withdrawn their complaints." (Ex. 5 at 40.) On the contrary ████████████████████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████

- Ms. Wernz claims that Plaintiff was erroneously charged with retaliation in connection with the Roe 3 proceeding ███████ ███████████████████████████████████ In reality, ██████████████████████████████████████ ██████████████ (Barefoot Interview Transcript ("Ex. 32").) ██████████████████████ ███████████████████ (Ex. 30 at 47.) ████████████ ████████████ (Ex. 6 214:10-12.)

Ms. Wernz declined to cite any of the documents and caselaw forming the basis of her opinions because she "did not have six months to work on [her] report" and she was "very confident that people . . . would know what [she] was referring to." (Ex. 6 24:22, 25:14-19, 123:5-11.) Unable to identify key documents when asked, Ms. Wertz testified she instead would "expect that the attorneys in the case would . . . be able to present [her with] the documents [she] needed to be able to testify[.]" (<u>Id.</u> 38:19-25; 39:1.) If attorneys did not supply her with those materials during questioning, Ms. Wernz testified that she would have to "run a search in Relativity"[2] to identify them. (<u>Id.</u> 17:2-9; 38:19-25; 39:1.)

---

[2] Relativity is an eDiscovery platform that allows users to host and review documents exchanged in discovery. In this case, Relativity is used to

Approximately one month after her deposition, Ms. Wernz produced a document identifying the caselaw she was unable to identify at deposition, and 18 pages of documents—of the more than 75,100 produced by Defendants—providing the factual basis for her opinions. (Wernz Appendix ("Ex. 33").) For each newly cited document, Ms. Wernz provided a supplemental opinion articulating her view as to each document's meaning and significance. (Id. at 3-4.)

## ARGUMENT

Ms. Wernz's opinions and testimony should be excluded for three independent reasons. First, she usurps the role of judge and jury by finding facts, drawing legal conclusions, and evaluating witness credibility. Second, Ms. Wernz's opinion, failing to distinguish fact from fiction and based on documents she cannot identify, is not reliable. Third, she failed to comply with Rule 26's disclosure requirements.

Under Rule 702, an expert witness may offer opinion testimony if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and

host and search the more than 75,100 pages of documents produced by Defendants in discovery.

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Rule 702 imposes a special obligation on the trial court to "ensure that any and all [expert] testimony . . . is not only relevant, but reliable." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993); see also Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 146–47 (1999). This is because expert testimony has greater "potential persuasiveness," and therefore a "greater potential to mislead[.]" Westberry v. Gislaved Gummi AB, 178 F.3d 257, 261 (4th Cir. 1999). Although trial courts have discretion to allow expert testimony, it "'is not discretion to abandon the gatekeeping function . . . [or] to perform the function inadequately.'" Nease v. Ford Motor Co., 848 F.3d 219, 231 (4th Cir. 2017) (quoting Kumho, 526 U.S. at 158–59 (Scalia, J. concurring)).

## I. Wernz's Proffered Expert Testimony Will Not Aid the Jury.

Wernz's opinions will not aid the jury in finding the facts and drawing conclusions. Her "opinion" merely articulates a factual narrative, applies law to that narrative, and draws factual and legal conclusions. Her opinion should be excluded.

Expert opinion on an issue of law, or that draws conclusions from facts, is subject to exclusion. <u>Jackson v. United States</u>, No. 00CR74, 2010 WL 2775402, at *3 (W.D.N.C. July 13, 2010) (Reidinger, J.); <u>United States v. McIver</u>, 470 F.3d 550, 562 (4th Cir.2006), <u>certiorari denied</u> 550 U.S. 936 (2007). "'When an expert undertakes to tell the jury what result to reach, this does not <u>aid</u> the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's.'" <u>United States v. Chapman</u>, 209 F. App'x 253, 269 (4th Cir. 2006) (emphasis in original) (citations omitted).

Expert testimony is also properly excluded if the facts "can be accurately and intelligibly described to the jury" through lay witnesses, and the jurors are "as capable of comprehending the primary facts and of drawing correct conclusions from them as [ ] witnesses possessed of special or peculiar training . . . in respect of the subject under investigation." <u>Salem v. U.S. Lines Co.</u>, 370 U.S. 31, 35 (1962) (citations omitted).

### a. Wernz's narrative summary usurps the jury's role in assembling facts from the evidence.

In the guise of articulating the factual basis for her opinions, Ms. Wernz presents an editorialized summary of select events purportedly occurring during the underlying disciplinary proceedings. (Ex. 5 at 10-35; Ex. 7 at 5-

25.) Expert testimony is neither required nor permitted to construct a factual narrative for the jury in this case.

"The province of a jury . . . is to decide issues of fact." <u>Miller v. United States</u>, 78 U.S. 268, 304 (1870). Thus, "[a]n expert cannot be presented to the jury solely for the purpose of constructing a factual narrative based on the record of evidence.'" <u>Eghnayem v. Bos. Sci. Corp.</u>, 57 F. Supp. 3d 658, 699 (S.D.W. Va. 2014) (citations omitted); <u>Synopsys, Inc v. Risk Based Sec., Inc.</u>, 70 F.4th 759, 763 (4th Cir. 2023) (affirming exclusion of expert opinion that provided a "factual narrative."); <u>Keystone Transportation Sols., LLC v. Nw. Hardwoods, Inc.</u>, No. 18-CV00039, 2019 WL 1756292, at *7 (W.D. Va. Apr. 19, 2019) (excluding opinion that was "narrative of the events at issue offered in the guise of expert testimony").

In this case, Ms. Wernz's initial and rebuttal reports primarily consist of "superficial characterizations, summarizations and reproductions of documents to which the jury will presumably have access." <u>Pulzone v. Kaleyra, Inc.</u>, No. 22CV1363, 2024 WL 3207291, at *2 (E.D. Va. June 27, 2024). Indeed, those reports "consist[] of little more than a recitation of [P]laintiff's evidence, combined with her conclusion . . . that the plaintiff was discriminated against." <u>Humphreys v. Regents of Univ. of California</u>, No. 04-03808, 2006 WL 1867713, at *4 (N.D. Cal. July 6, 2006) (excluding Title IX

expert on this basis because "[a]llowing this form of testimony would greatly infringe upon the role of the jury."). Her proffered testimony "does no more than [P]laintiff's counsel will do in arguing their case to the jury." <u>Rowe Entm't v. William Morris Agency</u>, No. 98Civ.8272, 2003 WL 22272587, at *11 (S.D.N.Y. Oct. 2, 2003).

To the extent the documents, testimony, and other materials forming the basis of Ms. Wernz's opinion are available and admissible, the facts contained therein are "'properly presented through percipient witnesses and documentary evidence.'" <u>Jones v. Varsity Brands, LLC</u>, No. 20CV02892, 2024 WL 102611, at *3 (W.D. Tenn. Jan. 9, 2024) (citations omitted); <u>see</u> <u>Pulzone</u>, 2024 WL 3207291 at *2. Her narrative testimony should be excluded.

### b. Wernz usurps the jury's role in drawing legal conclusions.

After providing a narrative summary of the factual basis for her opinion, Wernz concludes that, in her view, the evidence "leads inescapably to [her] expert opinion that [Defendants'] actions were tainted by gender bias." (Ex. 7 at 17.) This opinion constitutes an impermissible legal conclusion and an inference that the jury could reach without expert assistance.

Title IX provides that "no person . . . shall, on the basis of sex . . . be subjected to discrimination under any education program or activity receiving

Federal financial assistance[.]" 20 U.S.C. § 1681(a). An expert's opinion on an issue of law, [in this case whether Defendants 'subjected [Plaintiff] to discrimination,'] may be excluded from consideration of the merits of an issue. Jackson, 2010 WL 2775402, at *3. Indeed, as the Fourth Circuit has observed, the use of the term "discrimination . . . nearly always invades the province of the jury." United States v. Perkins, 470 F.3d 150, 158 (4th Cir. 2006) (citing Torres v. Cnty. of Oakland, 758 F.2d 147, 151 (6th Cir. 1985)).

In this case, Plaintiff must prove that Defendants discriminated on the basis of his sex. Sheppard v. Visitors of Virginia State Univ., 993 F.3d 230, 236 (4th Cir. 2021). Wernz opines that they did. She concludes:

(1)     "[The] intense public scrutiny [and] procedural deficiencies] support an inference of gender bias."
(2)     "Both cases were marred by procedural misconduct and bias."
(3)     "This asymmetrical treatment of credibility evidence reflects a clear bias."
(4)     "Doe was . . . subjected to biased investigations[.]"
(5)     "Doe encountered [gender bias] in his interactions with the EOC."
(6)     "[T]he irregularities surrounding the decision to sign the formal complaints . . . strongly suggest the influence of gender bias."
(7)     "[Defendants'] repeated failure to meet [the] standard . . . in my professional opinion, constitutes significant evidence of gender bias."
(8)     "[Defendants' failure address Roe 1's purported contradictions] leads inescapably to my expert opinion that its actions were tainted by gender bias."

13

(9)   "[T]he totality of the evidence in this case[] shows gender bias."

(10)  "Jacob Doe was consistently treated less favorably that his female accusers . . . suggesting gender bias[.]"

(Ex. 5 at 35, 38, 40-41; Ex. 7 at 8, 16, 17, 23, 24.)

The foregoing statements will not help the jury determine a "fact." Fed. R. Evid. 702(a). They instead "tell the jury what result to reach." Chapman, 209 F. App'x at 269 (citations omitted); see, e.g., B.R. v. F.C.S.B., No. 19-CV-917, 2024 WL 6043984, at *6 (E.D. Va. Mar. 8, 2024) (whether defendants engaged in "discriminatory bias" invaded the "province of the jury"); Doe v. Colgate Univ., No. 15CV1069, 2017 WL 4990629, at *10 (N.D.N.Y. Oct. 31, 2017), aff'd, 760 F. App'x 22 (2d Cir. 2019) (Title IX expert's opinion that the underlying investigation was "biased . . . [was an] improper legal conclusion[.]"). Such testimony is inappropriate because it "would give the jury the appearance that the Court is shifting responsibility to decide the case to the expert." Roohbakhsh v. Bd. of Trs. of Nebraska State Colleges, No. 17CV31, 2019 WL 5653448, at *2 (D. Neb. Oct. 31, 2019) (citations omitted).

Nor would the foregoing opinions help the jury "understand the evidence." Fed. R. Evid. 702(a.) They instead merely articulate inferences of sex discrimination drawn from the evidence—inferences that concern

14

"matter[s] which obviously [are] within the common knowledge of jurors." <u>See</u> <u>Scott v. Sears, Roebuck & Co.</u>, 789 F.2d 1052, 1055 (4th Cir. 1986); <u>see, e.g.</u>, <u>Knox v. PPG Indus., Inc.</u>, No. CV 15-1434, 2018 WL 11423313, at *1 (W.D. Pa. Mar. 15, 2018) ("The juror's common knowledge and qualifications prepare them to make a determination here as to whether [d]efendant conducted a flawed investigation and whether such flaws support an inference of discrimination.").

Accordingly, Wernz's opinions on the existence of sex discrimination—a legal conclusion—should be excluded.

### c. Wernz usurps the role of the Court to instruct the jury on the law.

Wernz opines that federal statutes, regulations, and decisional caselaw provide the standard of care applicable to Defendants, and that because Defendants contravened that authority, they violated the standard of care. Her opinion thus infringes upon the Court's role to explain what the law is and the jury's role to draw conclusions, and it risks confusing the jury because a violation of the standard of care does not equate to liability for erroneous outcome. <u>See, e.g.</u>, <u>Doe 2 by & through Doe 1 v. Fairfax Cnty. Sch. Bd.</u>, 832 F. App'x 802, 804 (4th Cir. 2020) (articulating elements of an erroneous outcome claim).

15

"'The only legal expert in a federal courtroom is the judge.'" <u>United States v. Cortez</u>, 205 F. Supp. 3d 768, 776 (E.D. Va. 2016) (citations omitted). For this reason, in the Title IX context, "courts routinely exclude testimony on the legal requirements if Title IX or conclusions as to whether a university violated Title IX." <u>McGowan v. S. Methodist Univ.</u>, No. 18-CV-00141, 2024 WL 946954, at *6 (N.D. Tex. Mar. 4, 2024) (excluding Title IX expert who "explain[ed] the legal requirements of Title IX, appl[ied] law to facts, [and] provide[d] legal conclusions regarding whether the statute was violated").[3]

---

[3] <u>See, e.g.,</u> <u>Doe v. Colgate Univ.</u>, 2017 WL 4990629 at *10 (excluding Title IX's opinions on procedural irregularities because "the question of whether there were defects in the [Title IX] proceedings against Plaintiff that impacted the outcomes of his hearings is . . . a legal conclusion."); <u>Pogorzelska v. VanderCook Coll. of Music</u>, No. 19-CV-05683, 2023 WL 3819025, at *8 (N.D. Ill. June 5, 2023) (excluding "statements of law" that infringe "on the role of the court to instruct the jury on what the law is."); <u>Roohbakhsh</u>, 2019 WL 5653448 at *5 and *2 (excluding opinions of two Title IX experts that "supplant[ed] the jury's role in evaluating and determining facts" and infringed on the court's role in "instruct[ing] the jury."); <u>In re Coll. Athlete NIL Litig.</u>, No. 20-CV-03919, 2023 WL 8372773, at *7 (N.D. Cal. Nov. 3, 2023) ("Osborne's opinions about what Title IX requires or does not require, . . . also are impermissible legal conclusions."); <u>Portz v. St. Cloud State Univ.</u>, 297 F. Supp. 3d 929, 952 (D. Minn. 2018) (excluding expert's testimony "about the legal requirements of Title IX or about [the expert's] conclusions as to whether [defendant] complies with Title IX"); <u>Doe v. Rollins Coll.</u>, No. 18CV1069, 2020 WL 8408417, at *5 (M.D. Fla. Jan. 7, 2020) (excluding opinion that institution complied with the law, regulations, or guidance); <u>Loecker v. Bd. of Trs. for Colorado Mesa Univ.</u>, 671 F. Supp.

In this case, Ms. Wernz opines that the "standard of care applicable to university disciplinary proceedings involving allegations of Title IX sexual misconduct is grounded primarily in federal courts' interpretations of institutional obligations under Title IX." (Ex. 5 at 8.) She explains that her opinions are "shaped by the synthesis of legal authority, regulatory guidance, [her] analys[is] of federal case law[,] OCR enforcement actions[,and her experience] developing policies aligned with federal regulations[.]" (Id. at 10.)

For non-Title IX cases, Wernz opines that "federal case law and constitutional due process principles continue to influence the standard of care . . . . [Federal] cases . . . impact the standard of care in both Title IX and non-Title IX cases." (Ex. 5 at 9.) She explains that "federal courts have provided a significant body of information of which a reasonable postsecondary administrator is aware. Such cases . . . impact the standard of care in both Title IX and non-Title IX cases." (Id.) At deposition, Ms. Wernz identified "Title VI, ADA, Title VII[, Title IX,] . . . [and] case law" as sources for the applicable standard of care. (Wernz Dep. 100:8-25.) But she could

---

3d 1217, 1222 (D. Colo. 2023) (excluding opinion that sex-discrimination occurred because it "will not assist the trier of fact").

not identify any relevant federal caselaw at deposition. (Ex. 6 68:15-19, 105:21-25, 106:1-8,114:3-25, 115:1, 122:25, 123:1-11.)

After "stat[ing these] legal standard[s]," Ms. Wernz "draws [ ] legal conclusion[s] by applying law to the facts" of this case. McIver, 470 F.3d at 562. Specifically, Ms. Wernz concludes that Defendants violated the standard of care because they purportedly failed to:

(1) conduct an individualized risk assessment that could "meet the standards required under 34 C.F.R. § 106.44(c);"
(2) obey the "legal standards under 34 C.F.R. § 106.45;"
(3) abide by "Title IX regulations [that] expressly permit parties to present expert witnesses;"
(4) comply with 34 C.F.R. § 106.45(b)(6)(i);
(5) provide the timely notice "[explicitly required] by the Title IX regulations;"
(6) provide the notice required by 34 C.F.R. § 106.45(b)(2)(ii);
(7) collect the information required by 34 C.F.R. § 106.45(b)(5)(i);
(8) consider the factors laid out in the "preamble to the 2020 [Title IX] rule" before proceeding despite alleged requests to "withdraw" formal complaints;
(9) comply with Title IX's requirement that an "investigation cannot begin until after a notice of allegations has been shared with the parties;"
(10) recognize that federal case law did not support Defendants' decision to "pursue Roe 3's and Roe 4's complaints."
(11) "satisfy the obligations of due process [and] regulatory compliance[.]"

(Ex. 5 at 36-41; Ex. 7 at 4, 6, 9-10, 12, 13, 18.)

Ms. Wernz's statement of legal standards and application of law to the facts is inadmissible. McIver, 470 F.3d at 562. Her interpretation of the legal requirements is also inadmissible because "'[t]he meaning of [a] statute and regulations [is] a subject for the court, not for testimonial experts.'" Cortez, 205 F. Supp. 3d at 776 (quoting United States v. Caputo, 517 F.3d 935, 942 (7th Cir. 2008)). In sum, her opinion "'supplies the jury with no information other than the witness's view of how the verdict should read[.]'" United States v. Offill, 666 F.3d 168, 175 (4th Cir. 2011) (citations omitted). Accordingly, Ms. Wernz's opinions about legal requirements, and Defendants' compliance with those requirements, should be excluded.

### d. Ms. Wernz usurps the jury's role in assessing witness credibility.

Throughout her reports, Wernz opines as to the credibility of the four women who accused Plaintiff of sexual misconduct, and the credibility of other witnesses who testified during the underlying proceedings. This testimony intrudes upon the role of the jury and should be excluded.

"Rule 702 renders inadmissible expert testimony on issues of witness credibility." United States v. Lespier, 725 F.3d 437, 449 (4th Cir. 2013). That assessment belongs to the jury. Id.; see, e.g., B.R. v. F.C.S.B., 2024 WL

6043984 at *5 (excluding Title IX expert testimony on the issue of witness credibility).

Despite never meeting Plaintiff or Roes 1-4, or any of the witnesses who testified during the underlying proceedings, (Ex. 6 15:16), and although she did not attend the hearings, Ms. Wernz opines that Defendants erroneously found Roe 1, Roe 2, Roe 4, and several third-party fact witnesses, to be credible. (Ex.1 at 24-26, 30-34; Ex. 7 at 21-24.) She opines that the Roes' stories "changed dramatically" over time, that they endeavored to "align their narratives," "lie[d]," made "demonstratable inaccurate" claims, and engaged in conduct that "called their credibility into serious question." (Ex. 5 at 24; Ex. 7 at 11, 13-15, 17, 22, 24, 33-34.) She also opines that Plaintiff testified "consistently." (Ex. 5 at 34.)

Basing her opinion on documents that will be available to the jury, Ms. Wernz "is not in a better position than the fact finder to render an opinion" on witness credibility, the consistency of testimony, or whether a witness lied. See Jackson, 2010 WL 2775402, at *3 (citations omitted.) She is not, nor can she be, an expert on witness credibility. Lespier, 725 F.3d at. Her testimony on this issue should therefore be excluded.

## II. Ms. Wernz's Opinion is not Reliable.

Ms. Wernz admitted that if the facts she articulates are "[not] correct . . . it puts [her] opinions in jeopardy." (Ex. 6 216:13-17.) And indeed, her opinion rests on documents she cannot identify, and "facts" that are not true. This unreliability requires exclusion.

In fulfilling its gatekeeping function, a trial court must "ensure that an expert's testimony . . . rests on a reliable foundation[.]" <u>Nease</u>, 848 F.3d at 229. "'[A]n opinion based on an inadequate or inaccurate factual foundation cannot be a reliable opinion, no matter how valid the principles and methods applied or how well-qualified the expert.'" <u>Snoznik v. Jeld-Wen, Inc.</u>, No. 09CV42, 2010 WL 1924483, at *10 (W.D.N.C. May 12, 2010) (citations omitted) (Reidinger, J.). Similarly, an expert opinion must be based on "<u>knowledge</u>[,] and not on belief or speculation." <u>Johnson v. DePuy Syntheses Prods., Inc.</u>, No. 21-CV-00025, 2022 WL 1598797, at *2 (W.D.N.C. May 19, 2022) (Reidinger, M.) (emphasis in original). Ms. Wernz's opinion is unreliable for two key reasons.

First, although she conceded that she is a lawyer, and that lawyers provide citations in their practice, (Ex. 6 218:7-15), Ms. Wernz failed to employ that same practice here. In the 68 total pages of her initial and rebuttal reports, Ms. Wernz cited only one of the more than 75,100 pages of

21

documents exchanged in this case. (See, generally, ex. 5, ex. 7.) While Ms. Wernz excuses the omission of citations because she is not "acting as a lawyer in this case," (ex. 6 at 14:14-15), she could not identify key documents at deposition, explained that she would have to "run a search in Relativity" before identifying those materials, and testified that she "would expect that the attorneys in [this] case [would] present [her with] the documents [she] needed in order to testify." (See, e.g., Ex. 6 at 16:11-20, 17:2-9, 37:7-20, 38:19-25, 39:1-13, 87:9-15, 103:17-25, 104:1-13, 123:1-11, 210:11-12, 214:13-25, 215:16-25, 216:1-12, 217:17-25, 218:1-25, 219:1-11, 230:13-25.)

Rule 702 requires Ms. Wernz's opinion to be based on "knowledge." Johnson, 2022 WL 1598797 at *2. Searching an eDiscovery database in response to questions, or relying on attorneys to supply her with pertinent materials to facilitate her testimony, does not satisfy that requirement.

Second, compounding the unreliability presented by Ms. Wernz's lack of citations, many of the fundamental "facts" underlying her opinion are fictional. See Factual Background at 3-7, supra. "Given the potential persuasiveness of expert testimony, [allowing Ms. Wernz to render an opinion based on inaccurate facts] has a greater potential to mislead than to enlighten[, and] should be excluded." Westberry, 178 F.3d at 261; see

<u>Kingsley v. Brenda and Gene Lummus, Inc.</u>, No. 11CV32, 2012 WL 727091, at *5-6 (W.D.N.C. March 6, 2012).

## III. Neither Ms. Wernz's Designation, nor her Tardy Supplementation, Complied with Rule 26.

Declining to cite the documents substantiating her opinions, Ms. Wernz failed to provide a complete explanation for the basis and reasons for her opinions, and elucidate the facts or data supporting those opinions. In recognition of this deficiency, Ms. Wernz provided a belated and improper supplemental "appendix" that provided citations that could have been included with her initial or rebuttal reports. Her initial, rebuttal, and supplemental reports should be excluded because they violate Rule 26.

Rule 26(a)(2) requires that a proposed expert witness's written report contain "a <u>complete statement</u> of all opinions the witness will express and the <u>basis and reasons for them</u> . . . [and] the facts or data <u>considered by the witness in forming them</u>." Fed. R. Civ. P. 26(a)(2)(B)(i)–(ii) (emphasis added). "'[T]he expert report should be written in a manner that reflects the testimony the expert witness is expected to give at trial.'" <u>Campbell v. United States</u>, 470 F. App'x 153, 156 (4th Cir. 2012) (citations omitted). To satisfy this requirement, "'[e]xpert reports must not be sketchy, vague or preliminary in nature and must include how and why the expert reached a particular

result, not merely the expert's conclusory opinions.'" <u>Ziegler v. Polaris Indus., Inc.</u>, No. 23-CV-00112, 2024 WL 482212, at *9 (W.D.N.C. Feb. 7, 2024) (citations omitted) (Reidinger, M.).

Unable to identify the evidentiary basis for her opinions without referring to Relativity, (ex. 6 17:2-9; 38:19-25; 39:1), Ms. Wernz's expert report is not "written in a manner that reflects the testimony the expert witness is expected to give at trial." <u>See</u> <u>Campbell</u>, 470 F. App'x at 156. Beyond stating that she reviewed "[d]ocuments in UNC's document production"—a universe of materials exceeding 75,100 pages—Ms. Wernz does not articulate "how" or "why" she made her conclusions, nor does she identify the "complete . . . facts [and] data" supporting those conclusions. Ms. Wernz agreed that there "nothing in [her] report to allow [Defendants] to know what [documents]" support the "facts" identified in her reports. (Ex. 6 215:1-25, 216:1-12.) Ms. Wernz justified her omission of citations because she "did not have six months to work on [her] report," (<u>id.</u> 24:22). but insufficient time does not excuse noncompliance with Rule 26(a)(2).

Recognizing this deficiency, Ms. Wernz provided an "appendix" to her reports on August 14, 2025—after the deadline for expert disclosures and after her deposition. (Ex. 33.) This tardy supplementation should be stricken because it did not supply "relevant information that <u>was previously</u>

24

unavailable." <u>Morgan v. City of Charlotte</u>, No. 22CV00003, 2023 WL 4002524, at *4 (W.D.N.C. June 14, 2023); <u>see, e.g.,</u> <u>WPS Inc. v. Am. Honda Motor Co.</u>, No. 16-CV-2525, 2017 WL 4216159, at *4 (D.S.C. Sept. 22, 2017) ("Rule 26(e) permits supplemental reports only for the narrow purpose of correcting inaccuracies or adding information that was not available at the time of the initial report."). Everything in Ms. Wernz's appendix could have been cited in her initial or rebuttal reports.

Because Ms. Wernz's initial, rebuttal, and supplemental reports fail to comply with the requirements of Rule 26, the opinions they contain should be excluded.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the opinions and testimony of Jacqueline Wernz be excluded.

This the 12th day of September, 2025.

**ELLIS & WINTERS LLP**

/s/Dixie T. Wells_____
Alex J. Hagan
N.C. State Bar No. 19037
P.O. Box 33550
Raleigh, NC 27636
Telephone: (919) 865-7000
Facsimile: (919) 865-7010
alex.hagan@elliswinters.com

Dixie T. Wells
N.C. State Bar No. 26816
P.O. Box 2752
Greensboro, North Carolina 27402
Telephone: (336) 217-4197
Facsimile: (336) 217-4198
dixie.wells@elliswinters.com

**JEFF JACKSON**
**ATTORNEY GENERAL**
Lindsay Vance Smith
N.C. State Bar No. 48085
North Carolina Department of Justice
P.O. Box 629
Raleigh, NC 27602
Telephone: (919) 716-6920
Facsimile: (919) 716-6764
lsmith@ncdoj.gov

Counsel for All Defendants

**UNIVERSITY OF NORTH CAROLINA**
**AT CHAPEL HILL**

Marla Spector Bowman
N.C. State Bar No. 49097

123 W. Franklin Street, Suite 600
Chapel Hill, NC 27516
Telephone: (919) 962-1219
marla_bowman@unc.edu

Counsel for Defendant University of
North Carolina at Chapel Hill

**CERTIFICATION ON USE OF ARTIFICIAL INTELLIGENCE**

Undersigned counsel hereby certifies, in accordance with the Court's Standing Order on the Use of Artificial Intelligence, No 3:24-mc-00104-MR, that no artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 12th day of September, 2025.

/s/Dixie T. Wells _____
Dixie T. Wells