**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
Case No. 1:23-cv-00041-MR**

JACOB DOE,

      Plaintiff,

v.

THE UNIVERSITY OF NORTH
CAROLINA SYSTEM, et al.,

      Defendants.

**MEMORANDUM IN RESPONSE
TO PLAINTIFF'S MOTION TO
EXCLUDE OR LIMIT THE
TESTIMONY OF DEFENDANTS'
EXPERT COURTNEY BULLARD
[ECF 115]**

# TABLE OF CONTENTS

TABLE OF CASES AND AUTHORITIES .................................................... ii

FACTUAL BACKGROUND ......................................................... 1

PLAINTIFF'S BRIEF ................................................................ 4

ARGUMENT ........................................................................ 7

    I.    Ms. Bullard's Testimony is Based on Reliable and
        Specialized Knowledge ................................................. 8

    II.   Ms. Bullard's Opinions are Relevant and Will Help the Jury
        Resolve Facts at Issue ............................................... 11

    III.  Ms. Bullard Does Not Function as an Advocate ........................ 15

    IV.  Ms. Bullard Does Not Opine on Witness Credibility or
        Prejudice ................................................................. 18

CONCLUSION ....................................................................... 20

CERTIFICATION ON USE OF ARTIFICIAL INTELLIGENCE ................... 22

# TABLE OF CASES AND AUTHORITIES

**Cases**

Adalman v. Baker, Watts & Co.,
 807 F.2d 359 (4th Cir. 1986)..........................................................4, 5

Cooper v. Smith & Nephew, Inc.,
 259 F.3d 194 (4th Cir. 2001)..............................................................5

Daubert v. Merrell Dow Pharms., Inc.,
 509 U.S. 579 (1993) ..........................................................................7

Doe 2 by & through Doe 1 v. Fairfax Cnty. Sch. Bd.,
 832 F. App'x 802 (4th Cir. 2020).......................................................2

Doe v. Baum,
 903 F.3d 575 (6th Cir. 2018)..............................................................6

Doe v. Coastal Carolina Univ.,
 No. 18-CV-268, 2021 WL 1651057, at *4, 5 (D.S.C. Mar. 8,
 2021) .......................................................................................passim

Doe v. Fairfax Cnty. Sch. Bd.,
 1 F.4th 257 (4th Cir. 2021)................................................................2

Doe v. Regents of Univ. of Cal.,
 23 F.4th 930 (9th Cir. 2022)............................................................12

Doe v. Univ. of Ark.-Fayetteville,
 974 F.3d 858 (8th Cir. 2020)..............................................................6

Doe v. Univ. of N. Carolina Sys.,
 133 F.4th 305 (4th Cir. 2025).................................................6, 14, 17

Doe v. Virginia Polytechnic Inst. & State Univ.,
 77 F.4th 231 (4th Cir. 2023).......................................................4, 5, 6

Haidak v. Univ. of Mass.-Amherst,
    933 F.3d 56 (1st Cir. 2019) ................................................................6

Humphreys v. Regents of Univ. of California, .
    No. 04-03808, 2006 WL 1867713 (N.D. Cal. July 6, 2006) ...............9

In re Ethicon, Inc., Pelvic Repair Sys. Prods. Liab. Litig.,
    No. 12-CV-4301, 2014 WL 186872 (S.D.W. Va. Jan. 15,
    2014) .........................................................................................18, 19

Kopf v. Skyrm,
    993 F.2d 374 (4th Cir. 1993) .........................................................8, 11

Kumho Tire Co. v. Carmichael,
    526 U.S. 137 (1999) .......................................................................7, 8

McCoy v. Isidore Newman Sch.,
    No. CV 19-1810, 2022 WL 4533773 (E.D. La. Sept. 28,
    2022) .................................................................................. 12, 15, 17

McGowan v. S. Methodist Univ.,
    No. 18-CV-00141, 2024 WL 946954 (N.D. Tex. Mar. 4, 2024)...........9

Montgomery v. Aetna Cas. & Sur. Co.,
    898 F.2d 1537 (11th Cir. 1990).........................................................5

Overdam v. Tex. A&M Univ.,
    43 F.4th 522 (5th Cir. 2022)...............................................................6

Pogorzelska v. VanderCook Coll. of Music,
    No. 19-CV-05683, 2023 WL 3819025 (N.D. Ill. June 5,
    2023) ...................................................................................9, 13, 14

Roohbakhsh v. Bd. of Trs. Of Nebraska State Colleges,
    No. 17CV31, 2019 WL 5653448 (D. Neb. Oct. 31, 2019).............9, 16

Rowe Entm't v. William Morris Agency,
    No. 98Civ.8272, 2003 WL 22272587 (S.D.N.Y. Oct. 2, 2003)..........16

Specht v. Jensen,
    853 F.2d 805 (10th Cir. 1988) ............................................................5

United States v. Azure,
    801 F.2d 336 (8th Cir. 1986) ..............................................................5

United States v. Barile,
    286 F.3d 749 (4th Cir. 2002) .........................................................5, 13

United States v. Binder,
    769 F.2d 595 (9th Cir. 1985) ..............................................................5

United States v. Lespier,
    725 F.3d 437 (4th Cir. 2013) ............................................................19

United States v. McIver,
    470 F.3d 550 (4th Cir. 2006) ............................................................13

United States v. Wilson,
    484 F.3d 267 (4th Cir. 2007) ..............................................................8

Unknown Party v. Arizona Bd. of Regents,
    No. CV-18-01623, 2022 WL 4481519 (D. Ariz. Sept. 27, 2022) .......12

Walsh v. Hodge,
    975 F.3d 475 (5th Cir. 2020) ..............................................................6

Westberry v. Gislaved Gummi AB,
    178 F.3d 257 (4th Cir. 1999) ..............................................................7

**Statutes**

20 U.S.C.A. Ch. 38, § 1681 (1972) .....................................................passim

**Rules**

Fed. R. Evid. 702, 28 U.S.C.A. ..........................................................7, 8

**Regulations**

34 C.F.R. § 106 ...............................................................................14

No expert should be permitted to say what the law is. No expert should be permitted to opine whether a party followed the law. No expert should be permitted to opine on witness credibility. While Plaintiff's expert, Jaqueline Wernz, does all of these things, Courtney Bullard does none of them.

## FACTUAL BACKGROUND

Defendants designated Courtney Bullard as an expert to opine on the "appropriateness and sufficiency of UNC[-CH's] response to reports of alleged sexual assault . . . against Plaintiff[, the] determinations and discipline administered, and on UNC[-CH's] policies, procedures, and training" concerning prevention and response to sexual misconduct on campus. (Bullard Expert Report at 5, Ex. 1 hereto.) Ms. Bullard is the Founder and Chief Executive Officer of Institutional Compliance Solutions, LLC, which provides legal consulting services to colleges, universities, and school districts in their compliance with Title IX. (Id. at 4.) Prior to founding ICS, she served as campus counsel for the University of Tennessee, Chattanooga, where she assisted in the investigation and adjudication of sexual misconduct complaints, developed Title IX policies and procedures for the entire University of Tennessee college system, and trained Title IX coordinators and investigators. (Id.) Ms. Bullard regularly presents on the topic of student disciplinary proceedings and is the creator of Title IX

1

University. (Id. at 5.)

In evaluating UNC-CH's treatment of Plaintiff, Ms. Bullard analyzed whether UNC-CH complied with "industry standards,"[1] which "are established through applicable statutes and regulations, state and federal case law, and the customs and practices commonly adopted with the field or profession." (Id. at 39.)

Relying on her education, training, and experience in the student disciplinary context, Ms. Bullard explains that satisfaction of industry standards requires more than mechanical adherence to the law and best practices. (Id. at 41.) It requires a "careful, well-reasoned balance" between two obligations: safeguarding the parties' rights to a fair and impartial process and protecting the broader campus community from the foreseeable

---

[1] Unlike professional malpractice claims that turn on negligence, an "industry standard" is not itself a standard of care that establishes liability under Title IX. Cf. Doe v. Fairfax Cnty. Sch. Bd., 1 F.4th 257, 271 (4th Cir. 2021) (deliberate indifference under Title IX requires "more than a showing of mere negligence"). Thus, violation of the "industry standard" alone would not equate to liability. See, e.g., Doe 2 by & through Doe 1 v. Fairfax Cnty. Sch. Bd., 832 F. App'x 802, 804-05 (4th Cir. 2020) (citations omitted) (explaining that, to prevail on an erroneous outcome theory, "a plaintiff must (1) assert that he 'was innocent and wrongly found to have committed an offense,' (2) establish 'facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding,' and (3) demonstrate 'particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding.'"). However, as explained later in this brief, understanding the "industry standard" can be helpful to the jury in matters concerning liability under Title IX.

risk of ongoing harm if misconduct is left unaddressed. (Id. at 41, 51.) To achieve that balance, Ms. Bullard opines that universities must take deliberate steps to stop harassment, remedy its effects, and prevent its recurrence; implement procedural safeguards that ensure fairness and impartiality; and identify patterns of misconduct that, if ignored, could result in continued discrimination or harm. (Id. at 41.)

Ms. Bullard opines that UNC-CH's policies and procedures satisfied industry standards. Specifically, Ms. Bullard opines that UNC-CH's Title IX procedures "exceeded industry standards" both by including features mandated by Title IX, and by allowing for "advocates to participate beyond what is typically allowed or required," and for "double-appeals." (Id. at 42, 43-46, 47-51.) She further opines that UNC's Policy on Prohibited Discrimination, Harassment, and Related Misconduct ("PPDHRM") complied with industry standards reflected in guidance from the Association for Student Conduct Administration, the National Association of Student Personnel Administrators, and the College and University Professional Association for Human Resources. (Id. at 42-43, 50.)

Ms. Bullard further opines that UNC-CH's application of its Title IX and PPDHRM policies to Plaintiff complied with, and in some instances exceeded, industry standards. Ms. Bullard explains that UNC-CH conducted

an individualized assessment of each complaint, balanced the competing interests of campus safety at large with Plaintiff's interest in his academic rights, applied appropriate factors in determining to exercise jurisdiction over off-campus conduct and in deciding to move forward with formal inquiries, conducted diligent investigations, and offered procedural protections beyond the minimum requirements of applicable law. (Id. at 43-51.)

In sum, Ms. Bullard opines that UNC-CH's compliance with industry standards throughout the underlying disciplinary proceedings reflects that UNC-CH acted "with fidelity to the published policies and procedures" and not "in response to any external pressures or internal biases." (Id. at 51.)

## PLAINTIFF'S BRIEF

Before addressing the substance of Plaintiff's arguments, the legal bases for those arguments warrant further scrutiny.

Plaintiff's brief purports to quote seven cases that do not contain the quoted language attributed to them—although some of the cases support the general proposition for which they are cited. [See ECF 116 at 3 (Adalman v. Baker, Watts & Co., 807 F.2d 359 (4th Cir. 1986) (does not contain the quoted language "usurp the function of the jury")); id. at 11 (Doe v. Virginia Polytechnic Inst. & State Univ., 77 F.4th 231 (4th Cir. 2023) (does not contain the quoted language "had access to the evidence against him and the

opportunity to respond.")); (<u>id.</u> at 13 (<u>United States v. Azure</u>, 801 F.2d 336, 340–41 (8th Cir. 1986) (does not contain the quoted language "expert testimony that a child is believable is an opinion on credibility and is for the jury alone") and <u>United States v. Binder</u>, 769 F.2d 595, 602 (9th Cir. 1985) (does not contain the quoted language "[c]redibility, however, is for the jury— the jury is the lie detector in the courtroom") and <u>Cooper v. Smith & Nephew, Inc.</u>, 259 F.3d 194, 200 (4th Cir. 2001) (does not contain the quoted language "subjective belief or unsupported speculation")); <u>id.</u> at 15 (<u>Specht v. Jensen</u>, 853 F.2d 805, 808–09 (10th Cir. 1988) (en banc) (does not contain the quoted language "amounted to little more than legal advocacy") and <u>Montgomery v. Aetna Cas. & Sur. Co.</u>, 898 F.2d 1537, 1541 (11th Cir. 1990) (does not contain the quoted language "nothing more than legal conclusions")).]

Plaintiff cites <u>United States v. Barile</u>, 286 F.3d 749 (4th Cir. 2002) and <u>Adalman v. Baker, Watts & Co.</u>, 807 F.2d 359 (4th Cir. 1986) for the proposition that "Courts in this Circuit and elsewhere have repeatedly limited Title IX 'consultant' experts to narrow background testimony and excluded attempts to instruct the jury on what the law requires." [ECF No. 116 at 3.] While both cases discuss excluding expert legal conclusions, neither case mentions Title IX or concerns experts in Title IX cases.

Plaintiff argues, "In <u>Doe v. University of North Carolina</u> (4th Cir. 2025), the Fourth Circuit clarified that where credibility is pivotal, due process requires adversarial cross-examination before the factfinder. In doing so, the court harmonized Fourth Circuit law with the Sixth and Seventh Circuits and narrowed <u>Virginia Tech</u>." [ECF No. 116 at 11.] While the Sixth Circuit has held that "accused student[s] or [their] agent[s]" be afforded an "opportunity to cross-examine [their] accuser[s] and adverse witnesses in the presence of a neutral factfinder," <u>Doe v. Baum</u>, 903 F.3d 575, 578 (6th Cir. 2018), undersigned counsel has found no case from the Seventh Circuit requiring adversarial cross examination in the Title IX context.

Further, the Fourth Circuit did not reference the Sixth or Seventh Circuits in its opinion, and appears to have instead aligned itself with the First, Fifth, and Eighth Circuits in allowing questioning by a neutral party:

> For example, we agree with several of our sister circuits that, while "due process in the university disciplinary setting requires 'some opportunity for real-time cross-examination, even if only through a hearing panel,'" "we have no reason to believe that questioning of a complaining witness by a neutral party is so fundamentally flawed as to create a categorically unacceptable risk of erroneous deprivation." <u>Haidak v. Univ. of Mass.-Amherst</u>, 933 F.3d 56, 69 (1st Cir. 2019); <u>see also</u> <u>Walsh</u>, 975 F.3d at 485; <u>Overdam v. Tex. A&M Univ.</u>, 43 F.4th 522, 529–30 (5th Cir. 2022) (per curiam); <u>Doe v. Univ. of Ark.-Fayetteville</u>, 974 F.3d 858, 867–68 (8th Cir. 2020).

<u>Doe v. Univ. of N. Carolina Sys.</u>, 133 F.4th 305, 317 (4th Cir. 2025).

**ARGUMENT**

Basing her opinion on reliable and specialized knowledge, training, and experience—none of which Plaintiff challenges—Ms. Bullard is qualified to provide an opinion to the jury on industry standards applicable to universities in the Title IX setting, including whether UNC-CH complied with those standards. Because these standards are a complex amalgamation of laws, regulations, and customary practices in higher education, they fall outside the knowledge of an average juror, making Ms. Bullard's opinion appropriate and helpful. Basing her opinions on her education and experience, Ms. Bullard does not function as an advocate or opine on witness credibility.

Under Rule 702, expert testimony is admissible if "it concerns (1) scientific, technical, or other specialized knowledge that (2) will aid the jury or other trier of fact to understand or resolve a fact at issue." Westberry v. Gislaved Gummi AB, 178 F.3d 257, 260 (4th Cir. 1999) (citing Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 592 (1993)). The first prong inquires whether the reasoning or methodology of the expert's proffered opinion is reliable—"that is, whether it is supported by adequate validation to render it trustworthy." Id. The second prong asks whether the "opinion is relevant to the facts at issue." Id. Thus, expert testimony is admissible if it "'rests on a reliable foundation and is relevant to the task at hand.'" Kumho

7

<u>Tire Co. v. Carmichael</u>, 526 U.S. 137, 141 (1999) (citation omitted).

**I.    Ms. Bullard's Testimony is Based on Reliable and Specialized Knowledge.**

Ms. Bullard's testimony concerns compliance with industry standards applicable to universities in Title IX and related disciplinary proceedings arising from allegations of sexual misconduct—matters outside the common experience of a lay juror. Her knowledge, derived from 18 years working in the university discipline setting, is specialized and reliable.

Admissible expert opinions must "have a reliable basis in the knowledge and experience of the discipline." <u>Kumho Tire</u>, 526 U.S. at 148 (internal quotation marks omitted). Those opinions may be based on experience alone. <u>See</u> <u>United States v. Wilson</u>, 484 F.3d 267, 274 (4th Cir.2007). An expert's qualifications to render an expert opinion are "liberally judged by Rule 702," and "'[w]here [those] qualifications are challenged, the test for exclusion is a strict one[.]'" <u>Kopf v. Skyrm</u>, 993 F.2d 374, 377 (4th Cir. 1993) (internal citations omitted).

In this case, Plaintiff makes no argument that Ms. Bullard is not qualified, has insufficient knowledge or experience, did not rely on sufficient facts or data, or that she cannot "reliably apply her expertise to this case." <u>Doe v. Coastal Carolina Univ.</u>, No. 18-CV-268, 2021 WL 1651057, at *4 (D.S.C. Mar. 8, 2021) (allowing Ms. Bullard to testify "about best practices or

standards for educational institutions fulfilling their obligations under Title IX."). Thus, to the extent her opinions are "based on [her] experience in consulting and training on Title IX issues, [her] testimony may be reliable." Roohbakhsh v. Bd. of Trs. Of Nebraska State Colleges, No. 17CV31, 2019 WL 5653448, at *5 (D. Neb. Oct. 31, 2019).

As her report reflects, Ms. Bullard's opinions are in fact reliable. She "bases her opinions on . . . evidence and documents produced in this case, including evidence provided by [UNC-CH], explains the methodology of her qualitative assessment in her report, and has extensive experience . . . in assessing Title IX compliance[.]" McGowan v. S. Methodist Univ., No. 18-CV-00141, 2024 WL 946954, at *4 (N.D. Tex. Mar. 4, 2024); (see generally Ex. 1). Her opinions regarding the "reasonableness of [UNC-CH's] conduct [are] drawn from [her] experience and thus cannot be characterized as mere ipse dixit." Pogorzelska v. VanderCook Coll. of Music, No. 19-CV-05683, 2023 WL 3819025, at *12 (N.D. Ill. June 5, 2023). Ms. Bullard's undisputed "education and qualifications easily satisfy the threshold reliability requirement." Humphreys v. Regents of Univ. of California, No. 04-03808, 2006 WL 1867713, at *5 (N.D. Cal. July 6, 2006).

Pointing to one example, Plaintiff argues that Ms. Bullard improperly based part of her opinion on her "subjective preferences" by testifying that

9

cross examination "'just doesn't feel right.'" [ECF No. 116 at 13.] Although Ms. Bullard testified that cross-examination "does not feel right," the full context of her testimony shows that, based on her knowledge and experience, cross-examination is permissible:

> A: Listen. These processes at universities, if you sit in them and you watch a student being cross-examined, it definitely does not feel right. I understand what cross-examination means in our profession. I understand that there's a lot of opinions out there as to the importance of cross-examination in cases. But when it comes to Title IX matters, the regulations allow an advisor to ask questions of the other party and other witnesses. That's what complies with Title IX.
>
> . . . .
>
> Q: Earlier you said something about – does cross-examination in Title IX cases, did you say something to the effect it doesn't feel right?
>
> A: When you sit in a hearing and you watch it, [cross-examination] can be difficult to watch. These are university proceedings with students and employees. There's a reason why the Department of Education put the parameters it did with advisors asking the questions versus a party asking a question to another party directly . . . . And let me be clear. The regulations allow for it in a certain manner . . . . [C]ross-examination in a Title IX setting is not a true cross-examination like we're used to in a court of law, except for at UNC, where attorneys are allowed to fully participate . . . .

(Bullard Deposition, Ex. 2 hereto, 103:12-23, 105:25-107:1.)

Ms. Bullard's full testimony reveals that she opined that cross-examination of students in the Title IX setting "can be difficult to watch," and,

in that respect, does not "feel right." But her testimony demonstrates that Ms. Bullard opined that cross-examination is both permitted by, and compliant with, industry standards. She based her opinion on what she sees across university campuses, and not on a "subjective preference." Plaintiff's effort to exclude this testimony should be rejected.

## II. Ms. Bullard's Opinions are Relevant and Will Help the Jury Resolve Facts at Issue.

At issue in this case is whether Defendants' response to allegations of sexual assault made by four separate women against Plaintiff was appropriate. Ms. Bullard's opinions, which discuss whether UNC-CH complied with industry standards in the setting of Title IX, are relevant to that question and will aid the jury in its effort to find the facts.

"Testimony from an expert is presumed to be helpful unless it concerns matters within the everyday knowledge and experience of a lay juror." Kopf, 993 F.2d at 377. The industry standards applicable in this context are not within the "everyday knowledge and experience" of lay jurors. Instead, these industry standards—distinct from a mere standard of care—are a complicated mixture of "statutes and regulations, state and federal case law, and the customs and practices commonly adopted with the field or profession." (Ex. 1 at 39.) Compliance with the foregoing requires more than a mechanical application of the law. (Id. at 41.)

Because these industry standards and the appropriate method for their application fall outside the knowledge of lay jurors, Ms. Bullard's testimony about "standards and best practices for educational institutions fulfilling their obligations" is appropriate. Doe v. Coastal Carolina Univ., 2021 WL 1651057 at *3 (permitting Ms. Bullard to testify as to the "industry standards" applicable in the Title IX setting); see also McCoy v. Isidore Newman Sch., No. CV 19-1810, 2022 WL 4533773, at *6 (E.D. La. Sept. 28, 2022) ("to the extent Bullard . . . [ explains] industry compliance standards and practices under Title IX, and what is generally expected within the industry under those standards, [her testimony] may be admitted.").

Furthermore, because procedural irregularities, including departures from university policy, do not alone equate to liability for an erroneous outcome, see, e.g., Doe v. Regents of Univ. of Cal., 23 F.4th 930, 940 (9th Cir. 2022), Ms. Bullard's testimony about industry standards in the Title IX context will assist jurors in assessing whether "[a] departure from typical adjudicatory or procedural norms [was] so perplexing [as to] support[ ] an inference of gender bias." Doe v. Coastal Carolina Univ., 2021 WL 1651057 at *3; see, e.g., Unknown Party v. Arizona Bd. of Regents, No. CV-18-01623, 2022 WL 4481519, at *11, *14 (D. Ariz. Sept. 27, 2022) (allowing expert testimony on "investigative standards during a Title IX investigation" because

that testimony would assist the jury in understanding whether alleged irregularities "support an inference of gender bias.").

Ms. Bullard's testimony should not be "strictly limited" to a "background description of Title IX office structure and administrative procedures in higher education." [ECF No. 116 at 15.] Plaintiff's reliance on Doe v. Coastal Carolina Univ., 2021 WL 1651057 for this proposition is misplaced. There, the defendant moved to exclude Ms. Bullard's testimony in full. Id. at *2. Far from limiting her to "background" testimony, the court expressly rejected the argument that her discussion of industry standards was impermissible, holding instead that such testimony "can be helpful to the jury." Id. at *3.

Nevertheless, Plaintiff argues that, in three instances, Ms. Bullard offers impermissible legal conclusions. [ECF No. 116 at 6-9.] Legal conclusions are statements that "apply[ ] law to the facts[.]" United States v. McIver, 470 F.3d 550, 562 (4th Cir. 2006). But, "in certain circumstances, such as cases involving specialized industries, 'opinion testimony that arguably states a legal conclusion is helpful to the jury, and thus, admissible.'" Id. at n.13 (quoting United States v. Barile, 286 F.3d 749, 760 n.7 (4th Cir.2002)). In the Title IX context, "testimony about industry standards or policies adopted by other institutions to comply with applicable regulations generally does not constitute a legal opinion or conclusion."

Pogorzelska, 2023 WL 3819025 at *7; see Doe v. Coastal Carolina Univ., 2021 WL 1651057 at *3 (permitting Ms. Bullard to testify about "industry standards" in the Title IX setting).

First, Ms. Bullard did not render a legal conclusion in opining that UNC-CH's use of "on or about November 19" to notify Plaintiff of the date of Roe 1's assault satisfied industry standards. See Pogorzelska, 2023 WL 3819025 at *7. She instead explained that such language is permissible when a university lacks precise information. [ECF No. 120-3 at 1-2 (51:8-24, 52:11-13).] In any event, the Fourth Circuit already held that it was "not persuaded that the notice [in the Roe 1 proceeding] . . . deprived Doe of an adequate opportunity to prepare his defense." Doe v. Univ. of N. Carolina Sys., 133 F.4th at 318.

Second, Ms. Bullard did not "apply law to facts" when she explained that the Title IX regulations do not prohibit reliance on hearsay evidence or testimony offered through an attorney. (Ex. 2 90:22–23, 157:9) [ECF No. 116 at 8-9.] Those regulations contain no such prohibition and identifying that absence is not an application of law to facts. See generally 34 C.F.R. § 106, et. seq.

Lastly, Plaintiff criticizes Ms. Bullard for purportedly opining that universities may "categorically exclude polygraph results," [ECF No. 116 at

14

9], even though she clarified that universities may not categorically exclude "<u>relevant</u> evidence," including polygraph results, (Ex. 2 112:4-15). In any event, ████████████████████████████████████████████

████████████████████████████████████████████

████████████ [ECF No. 122-18 at 5; ECF No. 122-23 at 4; ECF No. 122-29 at 7; ECF No. 122-30 at 6; ECF No. 125-5 at 82; ECF No. 125-6 at 8; ECF No. 125-8 at 85-86, 95-96; ECF No. 125-9 at 57-63, 78-80.]

Ms. Bullard has no intention of citing and interpreting caselaw or opining whether Defendants complied with law. (<u>See generally</u> Ex. 1) [<u>compare</u> ECF No. 122; <u>see also, e.g.</u>, ECF No. 122-5 at 22, 26, 40.] Ms. Bullard's testimony is properly confined to industry standards and whether Defendants complied with them—the type of specialized knowledge courts have found admissible and helpful. <u>See</u> <u>Doe v. Coastal Carolina Univ.</u>, 2021 WL 1651057 at *2; <u>McCoy</u>, 2022 WL 4533773 at *6.

Ms. Bullard's opinions about industry standards, based on her specialized knowledge, will be helpful to the jury and should be admitted.

## III. Ms. Bullard Does Not Function as an Advocate.

Removing Ms. Bullard's testimony from its context, Plaintiff argues that Ms. Bullard impermissibly "rationalized obvious procedural flaws" to such an extent that her entire opinion is transformed from helpful testimony into legal

advocacy. [ECF No. 116 at 14.] Although Plaintiff may disagree with Ms. Bullard's opinions, this disagreement is not grounds for exclusion.

Experts must do more than a party's attorney "will do in arguing [a] case to the jury." Rowe Entm't v. William Morris Agency, No. 98Civ.8272, 2003 WL 22272587, at *11 (S.D.N.Y. Oct. 2, 2003). And, indeed, Ms. Bullard articulates the complex statutory, regulatory, and industry-based standards governing the conduct of universities in the Title IX setting and applies those standards to UNC-CH. Because those standards are beyond the knowledge of the average juror, Ms. Bullard's testimony will "help the jury determine whether a school's response is ineffective or inadequate under the circumstances." Roohbakhsh, 2019 WL 5653448 at *3-*4 (admitting expert testimony "on industry standards for Title IX training, compliance, investigations, and responses . . . [because that testimony] will help the trier of fact determine if the [c]ollege's responses and investigation comported with industry standards[.]").

In Doe v. Coastal Carolina Univ., the defendant similarly moved to exclude Ms. Bullard's opinion for several reasons, including because she allegedly offered legal conclusions and her opinions were unreliable and unhelpful. 2021 WL 1651057 at *2. The court permitted Ms. Bullard to testify about industry standards in the Title IX setting and explained that her

testimony would be "helpful to the jury." Id. The court also determined that the defendant's criticism of the substance of Ms. Bullard's opinion went to the "weight of her testimony, not its admissibility." Id. at *4.

Plaintiff raises several disagreements with Ms. Bullard's opinions, including that UNC-CH allegedly failed to provide adequate notice, improperly allowed an attorney to answer questions on Roe 1's behalf, and that "fundamental fairness" purportedly required cross-examination in the setting of university disciplinary proceedings. [ECF No. 116 at 6-11]; but see Doe v. Univ. of N. Carolina Sys., 133 F.4th at 316 ("[we] acknowledge that we have 'never held that cross-examination is required' in this setting."). But as in Doe v. Coastal Carolina Univ., Ms. Bullard explains UNC-CH's obligations in investigating and responding to sexual misconduct allegations, sets out the bases for her opinions, and concludes that UNC-CH met applicable industry standards. (See generally Ex. 1 at 40-51.) Although Plaintiff disagrees with Ms. Bullard's assessment, his remedy is "'[v]igorous cross-examination [and] presentation of contrary evidence'" rather than complete exclusion of her opinion. McCoy, 2022 WL 4533773 at *1 (internal citations omitted) (allowing Ms. Bullard to testify about "compliance standards and practices under Title IX, and what is generally expected within the industry under those standards," id. at *6).

Ms. Bullard testified in the role of an experienced Title IX administrator—one who trains and oversees investigators and hearing officers, and who advises decisionmakers on sexual misconduct adjudications. (Ex. 1 at 4–5.) Ms. Bullard's opinions are helpful, reflect specialized knowledge of industry practice, and should be admitted.

## IV. Ms. Bullard Does Not Opine on Witness Credibility or Prejudice.

Plaintiff contends that Ms. Bullard dismissed purported "false statements" by a complainant as "'not relevant,'" and further opined that the alleged exclusion of exculpatory evidence and the admission of allegations from unrelated matters were "'not prejudicial.'" [ECF No. 116 at 12.] On the contrary, Ms. Bullard did not opine on witness credibility or the prejudicial effect of UNC-CH's alleged conduct.

Ms. Bullard never characterized particular testimony or evidence from the underlying disciplinary proceedings as credible, incredible, false, or prejudicial, and has no intention of presenting such an opinion to a jury. (See generally Ex. 1.) She merely discussed the hearing panels' credibility findings as part of the factual basis for her opinions, (see Ex. 1 at 28-24, 36-37), and deferred to decision-makers when asked about the credibility of particular evidence or testimony, (Ex. 2 84:11-25, 85:1-21, 86:18-25, 138:6-25, 139:1-25, 140:1-25, 148:7-25, 149:1-15, 151:9-25, 152:1-5, 154:20-25,

155:1-21, 197:5-15). Such testimony is proper because experts may explain the factual bases for their opinions. See, e.g., In re Ethicon, Inc., Pelvic Repair Sys. Prods. Liab. Litig., No. 12-CV-4301, 2014 WL 186872, at *16 (S.D.W. Va. Jan. 15, 2014) (statements that "provide the factual basis for [an expert's] opinions [are] helpful for the jury to understand [the] opinions.").

Experts cannot, however, absent "unusual circumstances" not present here, opine on witness credibility because that assessment belongs to the jury. United States v. Lespier, 725 F.3d 437, 449 (4th Cir. 2013). But Ms. Bullard never claimed that Roes 1–4 or Plaintiff made "false" statements or "lied." (See generally Ex. 1) [compare ECF No. 122-5 at 21, 34-35; ECF No. 122-6 at 15-16, 18, 24.] Ms. Bullard has no personal knowledge as to the truth or falsity of the underlying allegations, and emphasized that credibility determinations are "within the decision-makers' discretion[.]" [ECF No. 120-7 at 2-3 (84:18-25, 85:19-21).]

Plaintiff's challenges to Ms. Bullard's purported opinions about prejudice also misstate her testimony. Plaintiff claims Ms. Bullard testified that "excluding exculpatory evidence 'was not prejudicial,'" [ECF No. 116 at 12], but she actually testified only that the nondisclosure of an email from Roe 4 was not "an issue" for her because it had "nothing to do with . . . whether [Plaintiff] engaged in [sexual misconduct] against [Roe 4]," [ECF No.

120-8 at 3 (150:12–15).] Plaintiff also claims that Ms. Bullard opined that allowing allegations from other cases "'was not prejudicial,'" [ECF No. 116 at 12], but she testified only that a party's subjective belief of prejudice "doesn't necessarily make it so," and that admissibility rests with decision-makers, [ECF No. 120-9 at 2-3 (134:13–17, 135:20–21).] She added that such allegations may be considered if raised by the respondent—as occurred here, when Plaintiff claimed Roes 1-4 conspired against him.[2] [Id. at 2 (134:14).]

In short, Ms. Bullard did not opine on credibility or prejudice. Plaintiff's effort to exclude her testimony on this basis should be rejected.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that Plaintiff's Motion to Exclude or Limit the Testimony of Ms. Bullard be denied.

This the 10th day of October, 2025.

**ELLIS & WINTERS LLP**

/s/Dixie T. Wells_____
Alex J. Hagan
N.C. State Bar No. 19037
P.O. Box 33550
Raleigh, NC 27636
Telephone: (919) 865-7000
Facsimile: (919) 865-7010

---

[2] The Roe 3 and 4 investigative reports are filed at ECF No. 122-29 and 122-30, respectively.

alex.hagan@elliswinters.com

Dixie T. Wells
N.C. State Bar No. 26816
P.O. Box 2752
Greensboro, North Carolina 27402
Telephone: (336) 217-4197
Facsimile: (336) 217-4198
dixie.wells@elliswinters.com

**JEFF JACKSON**
**ATTORNEY GENERAL**
Lindsay Vance Smith
N.C. State Bar No. 48085
North Carolina Department of Justice
P.O. Box 629
Raleigh, NC 27602
Telephone: (919) 716-6920
Facsimile: (919) 716-6764
lsmith@ncdoj.gov

Counsel for All Defendants

**UNIVERSITY OF NORTH CAROLINA**
**AT CHAPEL HILL**

Marla Spector Bowman
N.C. State Bar No. 49097
123 W. Franklin Street, Suite 600
Chapel Hill, NC 27516
Telephone: (919) 962-1219
marla_bowman@unc.edu

Counsel for Defendant University of
North Carolina at Chapel Hill

21

## CERTIFICATION ON USE OF ARTIFICIAL INTELLIGENCE

Undersigned counsel hereby certifies, in accordance with the Court's Standing Order on the Use of Artificial Intelligence, No 3:24-mc-00104-MR, that no artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 10th day of October, 2025.

/s/Dixie T. Wells _____
Dixie T. Wells

## **CERTIFICATE OF SERVICE**

In compliance with the Standing Order in RE: Procedures for Access and Management of Sealed Documents entered by the Court on September 24, 2025 and in accordance with Rule 5 of the Federal Rules of Civil Procedure, the undersigned hereby certifies that the foregoing was served upon the parties as listed below by electronic mail, addressed as follows:

Fred W. Devore, III
DAS Law Group, PA
438 Queens Road
Charlotte, North Carolina 28207
fdevore@daslawgroup.com
sbaker@devact.com

Counsel for Plaintiff

Raboteau T. Wilder, Jr.
Wilder Pantazis Law PLLC
3501 Monroe Road
Charlotte, North Carolina 28205
rob@wilderlawgroup.com

Counsel for Plaintiff

This the 10th day of October, 2025.

/s/Dixie T. Wells
Dixie T. Wells
N.C. State Bar No. 26816