UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:23-CV-0041

JACOB DOE,
    Plaintiff,

v.

THE UNIVERSITY OF NORTH CAROLINA SYSTEM, et al.,

    Defendants.

**MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE OPINIONS OF JACQUELINE WERNZ**

NOW COMES THE PLAINTIFF, responding to the Defendants' Motion to Exclude Opinions of Plaintiff's Expert, Jacqueline Wernz.

## LEGAL DISCUSSION

The defendants have moved to exclude the testimony of plaintiff's Title IX liability expert, Jacqueline Wernz, on a variety of grounds. Their arguments must fail, and the proper remedy for their complaints is vigorous cross-examination at trial instead of disqualification of the witness. Ms. Wernz is an expert in Title IX whose Report, Rebuttal Report, and Appendix have been filed with the Court by the Defendants as Doc. 122-5, 122-6, and 122-31, respectively.

"Although expert testimony should be excluded if it is speculative or conjectural, (internal citations omitted) or if it is based on assumptions that are 'so unrealistic and contradictory as to suggest bad faith'… other contentions that the

assumptions are unfounded 'go to the weight, not the admissibility, of the testimony.'" Tyler v. Bethlehem Steel Corp., 958 F.2d 1176, 1188 (2d Cir.), *cert. denied*, 506 U.S. 826, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). Boucher v. U.S. Suzuki Motor Corp., 73 F.3d 18, 21 (2d Cir. 1996).

The test is whether Ms. Wernz meets the criteria found in Rule 702 of the Federal Rules of Civil Procedure.

## I. JACQUELINE WERNZ MEETS THE ELEMENTS OF RULE 702 AND THE DAUBERT STANDARD.

Rule 702 reads:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> **(b)** the testimony is based on sufficient facts or data;
> **(c)** the testimony is the product of reliable principles and methods; and
> **(d)** the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

**(a) Ms. Wernz's specialized knowledge will aid the jury.**

Ms. Wernz is an accomplished lawyer whose personal experience in Title IX cases and administration distinguishes her from other experts. After graduating from the University of Virginia Law School, where she was on the editorial board of the law review, Ms. Wernz worked for Hogan Lovells and Winston & Strawn in their educational law sections. While at those firms, she served educational institutions in

many matters, including student conduct/student affairs, threat assessment, behavioral intervention, negligence and breach of contract in the education context, First and Fourth Amendment concerns, and compliance with laws and regulations such as Title IX, Title VI, Title VII, Section 504, the ADA, VAWA, and related state laws. After leaving those two large firms, she became a partner in two education law boutiques and continued her legal career in the same vein as described above.

In 2016, she joined the Office of Civil Rights of the Department of Education, where she handled a large number of Title IX cases in every regard, from intake to interviewing witnesses to writing opinions and resolving cases. Her work there gave her a perspective on the regulatory landscape in both the Obama and Trump administrations. Thereafter, she started a private practice wherein she continues to represent educational institutions and serves as a consultant, too. She has served as the Title IX counsel for the University of Idaho and knows from experience all the regulatory travails that face college administrators. She is also an author, teaches at seminars, has a podcast, and participates in legal organizations, all in the field of Title IX. See Wernz Report, Doc. 122-5, pp 1-6.

The ultimate question is whether the testimony of an expert will aid the jury. Without the testimony of a Title IX expert, the jury may have difficulty understanding the complex landscape of compliance with regulations that are hundreds of pages long and outside the knowledge of lay people who comprise the

normal jury. Experts can explain, for example, industry customs/standards and common practices for Title IX compliance and investigations, describe specialized campus procedures and training in lay terms relevant to "clearly unreasonable" responses and standard-of-care issues, and provide context on how schools typically implement Title IX in college settings.

In <u>Kopf v. Skyrm, 993 F.2d 374</u>, 993 F.2d 374 (4th Cir. 1993), the Fourth Circuit emphasized the broad interpretive scope of Federal Rule of Evidence 702, which governs the admissibility of expert testimony. Rule 702 allows expert testimony if the expert's specialized knowledge will assist the trier of fact in understanding the evidence or determining a fact in issue. The court in *Kopf* underscored that the "touchstone" of Rule 702 is whether the testimony is helpful to the jury, and it is presumed to be helpful unless it concerns matters within the everyday knowledge and experience of a lay juror <u>Kopf v. Skyrm, 993 F.2d 374</u>, USCS Fed Rules Evid R 702.

Applying the principles from <u>Kopf</u> to the context of Title IX, the specialized knowledge of a Title IX expert would help the jury understand complex issues related to compliance, grievance procedures, and the implementation of Title IX regulations. Title IX involves nuanced legal and procedural standards, such as the obligations of Title IX Coordinators under § 106.44 Recipient's response to sex discrimination and § 106.45 Grievance procedures for the prompt and equitable

resolution of complaints of sex discrimination, which require recipients to take specific actions to address and remedy sex discrimination in educational programs § 106.44 Recipient's response to sex discrimination, § 106.45 Grievance procedures for the prompt and equitable resolution of complaints of sex discrimination. These standards are not within the everyday knowledge of lay jurors, and expert testimony could clarify how these obligations are typically fulfilled or whether they were met in a particular case.

The Fourth Circuit has consistently held that the qualifications of an expert should be liberally judged under Rule 702, and exclusion is justified only if the expert lacks satisfactory knowledge, skill, experience, training, or education on the issue for which the opinion is proffered Wiener v. AXA Equitable Life Ins. Co., 481 F. Supp. 3d 551 (2020), United States v. Johnson, 122 F. Supp. 3d 272 (2015). The court in *Kopf* also noted that even if expert testimony touches on matters that may seem understandable to jurors, its admission is generally harmless unless it supplants the jury's independent exercise of common-sense Kopf v. Skyrm, 993 F.2d 374. This principle supports a presumption in favor of admitting expert testimony when it is likely to aid the jury in navigating specialized or technical issues.

In Ohlensehlen v. Univ. of Iowa, 509 F.Supp.3d 1085, the Southern District of Iowa found the testimony of Dr. Lopiano, a Title IX expert, to be highly credible and reliable. Her expertise in gender equity and Title IX compliance was

instrumental in showing that the university was not providing female athletes with athletic participation opportunities substantially proportionate to their representation in the student body. The court noted that her testimony was based on enough facts and reliable principles, meeting the requirements of Rule 702, and aiding the court in understanding the evidence.

In <u>Portz v. St. Cloud State Univ</u>., 297 F.Supp. 3d 929 (2018), the District of Minnesota addressed the admissibility of expert testimony regarding Title IX compliance. The court excluded parts of Dr. Lopiano's testimony that sought to explain the legal requirements of Title IX, as explaining the law is the judge's role. The court allowed her to testify about disparities in athletic-based financial aid, finding her qualified to analyze such issues. The court emphasized that expert testimony must assist the jury without encroaching on the court's role to interpret the law.

**(b) The testimony of Ms. Wernz is based on sufficient facts or data.**

Despite the large volume of documents produced in this case, it appears that everyone involved is aware of what happened. What is in dispute is whether the hearings were properly conducted under Title IX and the UNC policies against sexual misconduct. In essence, Doe contends that the Roe 1 and 4 hearings were mishandled, as were the actions of the EEAC. There are other issues, but they are of less moment. Wernz spends pages 10 through 35 of her report discussing the facts

that she considered. One purpose of the expert report is to advise the opposing party what the expert will say and why, so there is no surprise at trial. If one reads the factual summary in her report, it is hard to believe that experienced defense counsel cannot understand what she is talking about, what her criticisms of the defendants are, and how she reached her conclusion. The same is true of the rebuttal report (except that it is shorter). Defense counsel spent substantial time during the deposition of Ms. Wernz critiquing her practice of not using citations. To address defense counsel's concerns, Ms. Wernz provided a brief appendix to her reports. There was no gamesmanship or effort to insert some new theory into the appendix. Defense counsel would concede that they received the appendix on August 14, long before trial and before the discovery deadline, so they were not disadvantaged.

In her reports, Wernz often quotes specific documents she considered. The criticisms she has are direct and a reasonable person can tell precisely what she is describing. She explains in detail why she finds fault whenever she does so. The length of the report, the frequent use of scholarly footnotes to explicate Wernz's understanding of the judicial and regulatory landscape, and her discussion of why she finds fault comply with Rule 26 and the relevant case law.

**(c) Ms. Wernz' testimony is the product of reliable principles and methods.**

Federal courts, including those in the Fourth Circuit, determine whether an expert's methodology is sufficiently reliable under the <u>Daubert</u> standard by

evaluating several non-exclusive factors. These factors include: (1) whether the expert's theory or technique can be and has been tested; (2) whether it has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence of standards controlling the technique's operation; and (5) whether the methodology is generally accepted in the relevant scientific community. These factors are not definitive or exhaustive, and their applicability depends on the issue, the expert's knowledge, and the subject of the testimony. <u>Cooper v. Smith & Nephew, Inc.</u>, 259 F.3d 194 (2001), <u>Hickerson v. Yamaha Motor Corp., USA</u>, 882 F.3d 476 (2018).

    The <u>Daubert</u> analysis is inherently flexible, focusing on the principles and methodology used by the expert rather than the conclusions they reach. Courts must ensure that the expert's testimony is based on scientific, technical, or specialized knowledge and not on speculation or subjective belief. The trial court acts as a gatekeeper, making sure the expert uses the same level of intellectual rigor in the courtroom as in their professional field. This includes assessing whether the expert's inferences are derived using valid scientific methods <u>McKiver v. Murphy-Brown, LLC</u>, 980 F.3d 937 (2020), <u>Lipitor (Atorvastatin Calcium) Mktg. v. Pfizer, Inc.</u>, 892 F.3d 624 (2018).

    In <u>Doe v. Erskine Coll., 2006 U.S. Dist. LEXIS 35780</u>, the court noted that Title IX experts are not scientific and their methods are subject to review in the

Court's discretion. In Title IX cases, most experts are lawyers, administrators, and/or consultants, as with both proffered experts in this matter. There are a few scientific guidelines, such as peer-reviewed articles or protocols, setting forth how a Title IX expert should present an expert opinion. As noted above, the Daubert standards are flexible. The expert should not rely on speculation, nor should an opinion be accepted *ipse dixit*. Applying specialized knowledge would be the most rigorous use of an expert's skill and most helpful to the jury. See Kopf, supra.

Ms. Wernz devotes three pages of her report to discussing how she formed her opinions in this case. She stated that she mainly relies on federal court interpretations of the Title IX statute and regulations. She considers how universities have responded to the 2020 regulations and whether they have widely adopted effective methodologies. In her report, she said:

> In addition to this practical experience, my understanding is shaped by the synthesis of legal authority, regulatory guidance, and observable institutional norms. I routinely analyze federal case law and OCR enforcement actions to identify patterns in how courts and regulators define institutional responsibilities. I also draw on structured professional activities, including developing policies aligned with federal regulations, providing compliance training to institutional actors, and consulting with administrators responsible for implementing Title IX and related mandates. This combination of legal analysis and empirical observation allows me to identify standards that are not only taught in theory but widely implemented and sustained in actual practice. [Doc. 122-5, pp. 9-10.]

Also, under the Daubert standard, the court's role is to ensure that the expert's testimony is both relevant and reliable, not to determine the ultimate correctness of

the expert's conclusions. Courts have consistently held that weaknesses in an expert's methodology or report go to the weight of the evidence, not its admissibility, and can be addressed through cross-examination and the presentation of contrary evidence Electrolysis, Smith v. Wyeth-Ayerst Labs. Co., 278 F. Supp. 2d 684 (2003), Reetz v. Lowe's Cos., 2021 U.S. Dist. LEXIS 31822 (N.C.W.D. 2019). Ms. Wernz' qualifications and extensive experience in Title IX matters further bolster the argument that her testimony is reliable and will assist the trier of fact USCS, Viva Healthcare Packaging USA Inc. v. CTL Packaging USA Inc., 197 F. Supp. 3d 837 (2016).

**(d) Ms. Wernz' opinions reflect a reliable application of the principles and methods to the facts of the case.**

Under Rule 702 of the Federal Rules of Evidence, expert testimony must reflect a reliable application of principles and methods to the facts of the case. The Daubert factors set forth for scientific inquiry, including testability, peer review, error rate, standards and controls, and general acceptance in the scientific community, are virtually inapplicable in a non-scientific area such as Title IX. Further, the field of serving as an expert in Title IX cases is relatively new with few genuine experts available to the trial bar.

The Rule 702 inquiry is inherently flexible. Courts are not bound to apply all the Daubert factors in every case but may tailor the analysis to the specific context. For example, in McKiver v. Murphy-Brown, LLC, 980 F.3d 937 (2020), the Fourth

Case 1:23-cv-00041-MR   Document 144   Filed 10/10/25   Page 10 of 17

Plaintiff Memo. Opposing Exclusion of Title IX Expert, Wernz, p. 10

Circuit reiterated that the focus should be on the principles and methodology employed by the expert, not the conclusions reached. In this case, Ms. Wernz analyzed the factual background and applied her training, her experience in administering and consulting about Title IX for education institutions, and her knowledge of Title IX law to the facts to reach opinions. Her opinions were not based on speculation, her personal belief system, or simply because she said something, and it was therefore right. Analysis of the facts as presented in written discovery documents in the light of specialized knowledge that Ms. Wernz possesses seems as reliable as a report could be under the Title IX framework.

## II. COMPLIANCE WITH RULE 26(a)(2)(B):

Rule 26(a)(2)(B) requires that an expert report include "a complete statement of all opinions the witness will express and the basis and reasons for them," as well as "the facts or data considered by the witness in forming them" Engilis v. Monsanto Co., 2025 U.S. App. LEXIS 20377 (9th Cir. Aug. 2025), Heller v. Dist. of Columbia, 801 F.3d 264 (2015). The expert in this case provided a detailed 40-page report and a 25-page rebuttal report, which included her credentials, a summary of the evidence reviewed, and the basis for her opinions. Courts have emphasized that the purpose of Rule 26 is to avoid "unfair surprise" and to allow the opposing party to prepare an effective response. Muldrow v. Re-Direct, Inc., 493 F.3d 160 (2007). Here, the expert's report has sufficiently disclosed the

substance of her opinions and the evidence she relied on, even if specific page citations were initially omitted. The clarity of her discussion and the context provided in the report mitigate any potential ambiguity.

**Harmlessness of the Alleged Deficiency:**

Under Rule 37(c)(1), the exclusion of expert testimony is not warranted if the failure to comply with Rule 26(a) is "substantially justified or harmless" <u>Engilis v. Monsanto Co., 2025 U.S. App. LEXIS 20377</u> (2025), <u>Heller v. Dist. of Columbia</u>, 801 F.3d 264 (2015), <u>Muldrow v. Re-Direct, Inc</u>., 493 F.3d 160 (2007). Courts have held that a failure is harmless if it does not result in prejudice or surprise to the opposing party, or if any surprise can be cured <u>Landivar v. Celebrity Cruises, Inc</u>., 340 F.R.D. 192 (2022). Here, the expert supplemented her report with an appendix containing the requested page citations after defense counsel raised the issue during her deposition. This supplemental disclosure cured any potential deficiency and provided the defendants with the specific information they sought. Courts have recognized that supplementation under Rule 26(e) is permissible and consistent with the rule's purpose of avoiding "trial by ambush." <u>Curet-Velàzquez v. ACEMLA De P.R., Inc</u>., 656 F.3d 47(2011), <u>Bresler v. Wilmington Tr. Co.</u>, 855 F.3d 178 (2017), <u>Taylor v. Mentor Worldwide LLC</u>, 940 F.3d 582 (2019).

**Precedent Allowing Testimony Despite Minor Omissions:**

Courts have declined to exclude expert testimony where omissions in the report were minor, justified, or harmless. For example, in Heller, the court allowed expert testimony where the expert's report provided enough detail about the basis for the opinions, and the opposing party had the opportunity to depose the expert and challenge the conclusions. Similarly, in Doe v. Pike, 405 F.Supp. 3d. 243 (2019), the court emphasized that the intent of Rule 26 is to help with a fair contest and that testimony should be excluded only if the omissions caused significant prejudice. Here, the defendants had the opportunity to depose the expert, and the supplemental appendix further clarified the basis for her opinions, satisfying the goals of Rule 26.

**The Severity of Exclusion as a Sanction:**

Exclusion of expert testimony is considered a severe sanction and is generally reserved for cases where the violation of Rule 26 is egregious and results in significant prejudice. Ciomber v. Coop. Plus, Inc., 527 F.3d 635 (2008). Courts have repeatedly emphasized that exclusion is not appropriate where the opposing party is not prejudiced or where the deficiency can be remedied Muldrow v. Re-Direct, Inc., 493 F.3d. 160, Landivar v. Celebrity Cruises, Inc., 340 F.R.D. 192. Here, the defendants' ability to prepare for trial was not materially impaired, as they received the supplemental appendix well before

Case 1:23-cv-00041-MR    Document 144    Filed 10/10/25    Page 13 of 17

Plaintiff Memo. Opposing Exclusion of Title IX Expert, Wernz, p. 13

trial.

**The Purpose of Expert Reports:**

The purpose of an expert report is to provide the opposing party with enough information to understand and respond to the expert's opinions, not to serve as a rigid checklist of formalities. Courts have recognized that experts may elaborate on and explain their reports during testimony, and minor deviations from the formal requirements of Rule 26 do not automatically justify exclusion <u>Id.</u> The expert's willingness to supplement her report shows good faith and a commitment to transparency, further undermining the defendants' argument for exclusion.

In conclusion, the expert's testimony should not be excluded because her initial omission of page citations was harmless, cured by the supplemental appendix, and did not prejudice the defendants. The detailed nature of her report, the clarity of her discussion, and the opportunity for the defendants to depose her all support the argument that the requirements of Rule 26 were substantially satisfied, and exclusion would be an overly harsh and unwarranted remedy.

## **CONCLUSION**

For these reasons, Plaintiff respectfully requests that the Court deny the Defendants' motion to exclude or limit the testimony of Plaintiff's expert, Jacqueline Wernz.

Case 1:23-cv-00041-MR  Document 144  Filed 10/10/25  Page 14 of 17

Plaintiff Memo. Opposing Exclusion of Title IX Expert, Wernz, p. 14

Respectfully, this is the 10th day of October 2025.

/s/ Fred W. DeVore, III
Fred W. DeVore, III
DAS Law Group, PA
438 Queens Road
Charlotte, NC 28207
(704) 377-5242
(704) 332-2825 *facsimile*
NC State Bar #10308
*Attorney for Plaintiff*
fdevore@daslawgroup.com


/s/ Raboteau T. Wilder, Jr.
Raboteau T. Wilder, Jr.
Wilder Law, PLLC
3501 Monroe Road
Charlotte, NC 28205
(704) 342-2243 telephone
NC State Bar #5891
*Attorneys for Plaintiff*
rob@wilderlawgroup.com

Case 1:23-cv-00041-MR   Document 144   Filed 10/10/25   Page 15 of 17

Plaintiff Memo. Opposing Exclusion of Title IX Expert, Wernz, p. 15

# CERTIFICATION REGARDING AI PLATFORMS

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg;

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction (or the party making the filing if acting pro se) as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

Respectfully, this is the 10th day of October 2025.

/s/ Fred W. DeVore, III
Fred W. DeVore, III
DAS Law Group, PA
438 Queens Road
Charlotte, NC 28207
(704) 377-5242
(704) 332-2825 *facsimile*
NC State Bar #10308
*Attorney for Plaintiff*
fdevore@daslawgroup.com

/s/ Raboteau T. Wilder, Jr.
Raboteau T. Wilder, Jr.
Wilder Law, PLLC
3501 Monroe Road
Charlotte, NC 28205
(704) 342-2243 telephone
NC State Bar #5891
*Attorneys for Plaintiff*
rob@wilderlawgroup.com

Case 1:23-cv-00041-MR    Document 144    Filed 10/10/25    Page 16 of 17

Plaintiff Memo. Opposing Exclusion of Title IX Expert, Wernz, p. 16

CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing pleading was served upon all other parties to this action or their attorneys of record by using the ECF filing system and/or email and addressed as follows:

Dixie Thomas Wells Dixie.wells@elliswinters.com
Alex John Hagan Alex.hagan@elliswinters.com
Kimberly D. Potter kpotter@ncdoj.gov
Jeremy David Lindsley jlindsley@ncdoj.gov
Lindsey Vance Smith lsmith@ncdoj.gov
Marla Spector Bowman marla_bowman@unc.edu

This the 10th day of October, 2025.

/s/ Fred W. DeVore, III
Fred W. DeVore, III
DAS Law Group, PA
438 Queens Road
Charlotte, NC 28207
(704) 377-5242
(704) 332-2825 *facsimile*
NC State Bar #10308
*Attorney for Plaintiff*
fdevore@daslawgroup.com

/s/ Raboteau T. Wilder, Jr.
Raboteau T. Wilder, Jr.
Wilder Law, PLLC
3501 Monroe Road
Charlotte, NC 28205
(704) 342-2243 telephone
NC State Bar #5891
*Attorneys for Plaintiff*
rob@wilderlawgroup.com