# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## CIVIL ACTION NO: 1:23-CV-00041

JACOB DOE,

        Plaintiff,

    v.

THE UNIVERSITY OF NORTH
CAROLINA SYSTEM, et al.,

        Defendants.

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

TABLE OF CASES AND AUTHORITIES ................................................ iii

STATEMENT OF UNDISPUTED FACTS ...........................................2

I.      Four Reports of Sexual Assault ....................................2

II.     EEAC Interim Measures ..........................................2

III.    EOC Investigations ...............................................3

IV.     EOC Evidentiary Hearings ........................................3

        Roe 1 Hearing and Outcome ......................................4

        Roes 2 and 3 Hearings and Outcomes .............................6

        Roe 4 Hearing and Outcome ......................................6

V.      Plaintiff's Appeals of Hearing Outcomes ...........................8

LEGAL STANDARD...................................................8

ARGUMENT .......................................................9

I.      SUMMARY JUDGMENT IS PROPER ON THE SECTION 1983
        CLAIM BECAUSE PLAINTIFF WAS PROVIDED DUE
        PROCESS ....................................................9

II.     UNC-CH IS ENTITLED TO SUMMARY JUDGMENT ON
        PLAINTIFF'S TITLE IX CLAIM.....................................12

        A.      Plaintiff's Proceedings Were Not Flawed .............................14

        B.      Plaintiff Cannot Prove an Erroneous Outcome .....................14

        C.      Plaintiff Cannot Prove Gender Bias Caused the Outcomes
                ..................................................15

III.    SUMMARY JUDGMENT IS PROPER ON PLAINTIFF'S STATE-
        LAW CLAIMS BECAUSE UNC-CH IS THE REAL PARTY IN
        INTEREST ...................................................19

IV.     THE INDIVIDUAL DEFENDANTS ARE OTHERWISE
        ENTITLED TO SUMMARY JUDGMENT PLAINTIFF'S STATE-
        LAW CLAIMS ................................................22

        A.      Plaintiff Has No Tortious Interference with Contract Claim....23

        B.      Plaintiff Has No NIED Claim ...............................25

i

CONCLUSION...............................................................................25

CERTIFICATION ON USE OF ARTIFICIAL INTELLIGENCE .................28

# TABLE OF CASES AND AUTHORITIES

**Cases**

Alaei v. State Univ. of N.Y. at Albany,
    No. 21-CV-00377, 2025 WL 1549050 (N.D.N.Y. May 30, 2025)....13

Booth v. Maryland,
    112 F.3d 139 (4th Cir. 1997)........................................................19

Chevron Oil Co. v. Huson,
    404 U.S. 97 (1971) ....................................................................10

Dalton v. Camp,
    353 N.C. 647 (2001) ..................................................................24

Doe v. Samford Univ.,
    29 F.4th 675 (11th Cir. 2022)........................................... 13, 16, 18

Doe v. Stonehill Coll., Inc.,
    55 F.4th 302 (1st Cir. 2022)...................................................12, 18

Doe v. Univ. of Denver,
    1 F.4th 822 (10th Cir. 2021)........................................................18

Doe v. Univ. of N.C. Sys.,
    133 F.4th 305 (4th Cir. 2025)........................................9, 10, 11, 22

Doe v. Univ. of S. Ind.,
    43 F.4th 784 (7th Cir. 2022).................................................... 16, 19

Doe v. Va. Poly. Inst.,
    No. 19-cv-00249, 2022 WL 3334501 (W.D. Va. Aug. 11, 2022).....14

Doe v. Va. Polytechnic Instit. and State Univ.,
    77 F.4th 231 (4th Cir. 2023)........................................................10

Doe v. Wake Forest Univ.,
    No. 23-CV-00114, slip. op. (M.D.N.C. Sept. 6, 2023)....................15

Case 1:23-cv-00041-MR    Document 173-1    Filed 12/17/25    Page 4 of 34

Fairfax Covenant Church v. Fairfax Cnty. Sch. Bd.,
17 F.3d 703 (4th Cir. 1994)...................................................................11

Gash v. Rosalind Franklin Univ.,
117 F.4th 957 (7th Cir. 2024).........................................................18

Hawkins v. Leggett,
955 F. Supp. 2d 474 (D. Md. 2013)...............................................13

Hooven-Lewis v. Caldera,
249 F.3d 259 (4th Cir. 2001)............................................................8

In re Twin Parks Ltd. P'ship,
720 F.2d 1374 (4th Cir. 1983).......................................................10

ITW Charlotte, LLC v. ITW Com. Constr., N. Am.,
No. 17-cv-00473, 2017 WL 4768219 (W.D.N.C. Oct. 20, 2017).....24

Kashdan v. George Mason Univ.,
70 F.4th 694 (4th Cir. 2023).....................................................12, 17

Keith-Foust v. N.C. Cent. Univ.,
No. 15CV470, 2016 WL 4256952 (M.D.N.C. Aug. 11, 2016) .........22

Longo v Aspinwall,
No. 19-cv-58, 2019 WL 3226431 (W.D.N.C. July 17, 2019)...........22

Martin v. Wood,
772 F.3d 192 (4th Cir. 2014)....................................................20, 22

Morris Int'l, Inc. v. Packer,
No. 20 CVS 2156, 2020 WL 6117736 (N.C. Super. Ct. Oct. 15,
2020) ..........................................................................................24

Roe v. Marshall Univ. Bd. of Governors,
145 F.4th 561 (4th Cir. 2025).........................................................18

Rullo v. Univ. of Pittsburgh - of Commonwealth Sys. of Higher Educ.,
No. CV 17-1380, 2021 WL 640255 (W.D. Pa. Feb. 18, 2021)........13

Case 1:23-cv-00041-MR    Document 173-1    Filed 12/17/25    Page 5 of 34

Se. Anesthesiology Consultants, PLLC v. Rose,
    No. 17 CVS 9002, 2019 WL 3948935 (N.C. Super. Ct. Aug. 20,
    2019) ...................................................................................23

Sheaffer v. Cnty. of Chatham,
    337 F. Supp. 2d 709 (M.D.N.C. 2004) .........................................25

Stewart v. Univ. of N.C. Sys.,
    No. 15-cv-1487, 2016 WL 7325510 (E.D. Va. Apr. 7, 2016), aff'd
    in part, vacated in part, 673 F. App'x 269, 270 (4th Cir. 2016) .......22

Thomas v. N. Telecom, Inc.,
    157 F. Supp. 2d 627 (M.D.N.C. 2000) .........................................25

United Labs., Inc. v. Kuykendall,
    322 N.C. 643 (1988) ...............................................................23

United States v. Johnson,
    457 U.S. 537 (1982) ...............................................................11

Youse v. Duke Energy Corp.,
    No. 02CV00808, 2003 WL 27356582 (M.D.N.C. Dec. 15, 2003) ...13

**Statutes, Rules, Regulations, and Other Authorities**

42 U.S.C. § 1983 .............................................................................9

Fed. R. Civ. P. 56 ......................................................................8, 11

Title IX of the Education Amendments of 1972,
    20 U.S.C. §§1681-1688 ....................................................... passim

U.S. Const. amend. XII .................................................................22

Defendants investigated, adjudicated, and expelled Plaintiff, a former student at the University of North Carolina at Chapel Hill ("UNC-CH"), in response to complaints of sexual assault from four other students. After his expulsion, Plaintiff sued Defendants for deprivation of due process in violation of 42 U.S.C. § 1983, an erroneous outcome due to gender bias in violation of Title IX, negligent infliction of emotional distress, and tortious interference with an academic scholarship. As detailed below, however, Defendants provided ample due process in proceedings free from an erroneous outcome caused by gender bias. For example:

- Defendants provided Plaintiff notice of the four complaints against him, investigated each complaint, and held four separate hearings, with four separate hearing panels, where Plaintiff was represented by counsel at every stage;

- UNC-CH found in Plaintiff's favor in two hearings that turned primarily on the relative credibility of Plaintiff and his accuser;

- Where UNC-CH found in one accuser's favor and partially in another accuser's favor, contemporaneous corroborating evidence supported the allegations; and

- Plaintiff was afforded two appeal opportunities in each instance where a hearing panel found against him.

For these reasons and those outlined below, Plaintiff cannot prove his Section 1983 and Title IX claims. Moreover, Plaintiff's state-law claims fail as a matter of law on immunity and other grounds. Defendants therefore are entitled to summary judgment.

1

# STATEMENT OF UNDISPUTED FACTS

## I.    Four Reports of Sexual Assault

On Apr. 1, 2021, four female students reported to UNC-CH's Equal Opportunity and Compliance office ("EOC") that Plaintiff had sexually assaulted them. (Enlow Decl. ("Ex. 1") ¶ 1; Hall Decl. ("Ex. 3") ¶ 1.) Roe 1 reported times in late 2020 when Plaintiff had sex with her without consent, leaving bruising on her neck, wrists, and arms. (Ex. 2.)[1] Roe 2 reported times when Plaintiff pressured her to have sex, despite verbal protests. (Id.) Roe 3 reported that, during a mountain trip, Plaintiff engaged in non-consensual sex with her, leaving bruises from being held down. (Id.) And Roe 4 reported that Plaintiff touched and attempted to penetrate her vagina without consent during a March 2020 trip and touched her breasts and attempted to coerce sex during a separate incident in June 2020. (Id.)

## II.    EEAC Interim Measures

UNC-CH's Emergency Evaluation and Action Committee ("EEAC") determined that the threat from Plaintiff's alleged conduct required interim measures. (Ex. 4.) EEAC suspended Plaintiff, beginning with the summer 2021 term, and imposed no-contact orders for Roe 1, Roe 2, and Roe 4. (Id.)

---

[1] In the initial reports, Account 1 is Roe 1, Account 2 is Roe 3, Account 3 is Roe 2, and Account 4 is Roe 4.

## III. EOC Investigations

EOC began investigations in June 2021. Roes 1 and 2's reports fell under the Policy on Prohibited Sexual Harassment Under Title IX ("Title IX Policy") for on-campus incidents. (Ex. 1 ¶ 7.) Although Roes 1 and 2 initially declined to participate, EOC determined the reported conduct raised sufficient risk that UNC-CH should move forward with investigations. (Id. ¶¶ 8-10.) EOC investigated Roes 3 and 4's reports under the Policy on Prohibited Discrimination, Harassment and Related Misconduct ("PPDHRM") for off-campus incidents. (Id. ¶ 14.) Plaintiff received written notice of the investigations, which involved interviews of and evidence collection from more than a dozen witnesses. (Id. ¶¶ 12-13, 15-22.) [2]

EOC issued final investigative reports in Roes 1 and 2. (Id. ¶ 26.) As these investigations were under the Title IX Policy—mandating hearings in all cases—EOC did not make findings on responsibility or sanctions. (Id.) EOC also issued final investigative reports in Roes 3 and 4, finding Plaintiff had violated the PPDHRM and recommending sanctions. (Id. ¶ 25.)

## IV. EOC Evidentiary Hearings

EOC held separate evidentiary hearings on each matter with different

---

[2] For a more complete description of the four investigation processes, see the Declarations of Jeremy Enlow and Elizabeth Hall. (Exs. 1 & 3.)

3

panels. Plaintiff and his attorney participated in each. (<u>See</u> Ex. 3 ¶ 6.)

**<u>Roe 1 Hearing and Outcome.</u>** The Roe 1 hearing occurred Jan. 27-28, 2022. (<u>Id.</u> ¶ 18.) Roe 1 testified. (<u>Id.</u> ¶ 20.) The panel cross-examined Roe 1 for about 35 minutes. (<u>Id.</u> ¶ 23.) Plaintiff's attorney cross-examined Roe 1 for an additional 45 minutes, probing her credibility in statements made to investigators and texts with Plaintiff regarding sexual encounters. (<u>Id.</u> ¶ 24.) After participating for about two hours, Roe 1 did not return after a break. (<u>Id.</u> ¶¶ 25-26.) Plaintiff's attorney then asked Roe 1's attorney to read transcribed responses she provided in her investigative interview. (<u>Id.</u> ¶ 27.)

Plaintiff also provided testimony to the panel. He testified that Roe 1 could not have spent the relevant night in his room because women were not allowed in the fraternity house due to an "illegal" hazing event that evening. (<u>Id.</u> ¶ 29.) Two other witnesses testified. Roe 1's friend testified Roe 1 "definitely" spent the night at Plaintiff's fraternity house after the party because she saw her there the next morning. (<u>Id.</u> ¶ 30.) Plaintiff's former fraternity brother testified hazing had ended two weeks before the decorating party, and there was no hazing event on the evening in question. (<u>Id.</u> ¶ 31.)

On Feb. 16, 2022, the Roe 1 panel determined Plaintiff had violated the Title IX Policy by having sex with Roe 1 when she was incapacitated. (Ex 5.) The panel found credible Roe 1's account that sexual intercourse

4

occurred, because bruises she saw the next morning (corroborated by another witness) were consistent with testimony by Roe 1 and Plaintiff about bruising that had occurred during prior intercourse between them. (Id. at 4-7.) The panel also found text messages consistent with Roe 1's account that Plaintiff was awake in the night, and photos confirmed Roe 1 was at Plaintiff's fraternity the morning after the party. (Id.) Thus, the panel relied on Roe 1's testimony about bruising around her neck and "burning, raw" pain in her vaginal area to conclude intercourse had occurred. (Id. at 7.) The panel relied on her testimony about the amount of alcohol she consumed, the assistance she needed to climb the ladder to Plaintiff's bed, and her lack of recollection thereafter to conclude Roe 1 was unconscious during intercourse. (Id.)

The panel did not find Plaintiff's testimony credible, rejecting his claim Roe 1 did not spend the night in his room due to a hazing event. (Id. at 4.) The panel relied on two witnesses who testified the hazing had ended earlier in November. (Id.) Thus, Plaintiff's testimony he awoke early the next morning to clean from the hazing event "was untrue." (Id. at 6.) Further, documentary and witness testimony showed Roe 1 spent the night at Plaintiff's fraternity house, which "contradicted" Plaintiff's contention no women were permitted in the house after the party. (Id.)

Thus, the panel determined Plaintiff "engaged in sexual intercourse

with [Roe 1] without her consent." (Id. at 7.) On May 16, 2022, the panel issued an Amended Notice of Hearing Outcome, recommending, among other things, that Plaintiff be suspended from UNC-CH for one academic year and placed on probation for two years thereafter. (Ex. 6 at 8-9.)

**Roes 2 and 3 Hearings and Outcomes.** Hearings on the Roes 2 and 3 matters were held in February and March of 2022. (Ex. 3 ¶¶ 46, 55.) Roe 2 testified regarding her allegations, but Roe 3 did not appear. Plaintiff submitted evidence and testimony, and his attorney cross-examined witnesses participating in both hearings, including Roe 2. (Id. ¶¶ 46, 56.)

On Mar. 18, 2022, the Roe 2 panel issued a decision finding insufficient evidence that Plaintiff engaged in intercourse with Roe 2 without consent. (Id. ¶ 47.) On Apr. 12, 2022, the Roe 3 panel issued a decision finding insufficient evidence that Roe 3 did not consent to intercourse that occurred at Plaintiff's mountain residence in January 2021. (Id. ¶ 57.)

**Roe 4 Hearing and Outcome.** The hearing in Roe 4 was held Apr. 8, 2022. (Roe 4 Hr'g Tr., Ex 7.) No witnesses other than Plaintiff and the EOC investigator testified. (See id.) The investigator credited Roe 4's account of the first incident because of consistent eyewitness and other corroborating testimony, including evidence contradicting Plaintiff's denial of being intoxicated. (Id. at 24.) He credited Roe 4's account of the second incident

6

because of her contemporaneous disclosure to a witness that Plaintiff had grabbed her breasts. (Id. at 32:2-11.) The investigator found Plaintiff's account less credible, in part, because of "significant inconsistencies" with documentary evidence and witness statements about his intoxication during the first incident. (Id. at 23:11.)

Plaintiff's attorney cross-examined the investigator, including about Roe 4's "veracity." (Id. at 69-72.) Plaintiff testified about Roe 4's "unreliability" and propensity to "make up stories," (id. at 102, 103:1-6, 116:2-15, 132:4-10), and statements made by other female students regarding their reports against him, (id. at 157-64).

On Apr. 14, 2022, the Roe 4 panel decided Plaintiff had engaged in sexual assault or sexual violence prohibited by the PPDHRM. (Ex. 8 at 1.) It found Plaintiff touched Roe 4's vaginal area without consent during the March 2020 incident, as corroborated by eyewitnesses and recipients of contemporaneous reports, (id. at 1-2), but found insufficient evidence to conclude Plaintiff attempted to penetrate Roe 4's vagina, (id. at 2). The panel determined Plaintiff touched Roe 4's breasts without consent during the June 2020 incident—as corroborated by text messages following the incident[3] and

---

[3] Plaintiff texted Roe 4 to apologize that he "had made [her] uncomfortable;" she responded, "yes totally i [sic] just a little uncomfortable w some of the touchiness and i felt like it was a lot more than usual." (Ex. 9 at 19.)

her contemporaneous report to a witness that evening. (Id. at 2.) The panel found insufficient evidence to determine if Plaintiff "pressed his penis" into Roe 4's back or attempted intercourse without consent. (Id. at 2-3.)

On May 11, 2022, the panel issued an Amended Notice of Hearing Outcome, concluding the findings as to Roes 1 and 4 "demonstrated a pattern of behavior where [Plaintiff] engaged in behaviors of a sexual nature, including contact and penetration, with another individual without their consent." (Ex. 3 ¶ 70.) The panel recommended permanent expulsion from UNC-CH and a bar from other universities in the UNC system. (Id.)

## V. Plaintiff's Appeals of Hearing Outcomes

Plaintiff appealed the Roes 1 and 4 outcomes, which both the appellate officer and the UNC-CH Board of Trustees affirmed. (Id. ¶¶ 39-40, 71-72.)

## LEGAL STANDARD

A district court must enter summary judgment in a moving party's favor if the party demonstrates there is no genuine dispute of material fact and the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Summary judgment is properly granted against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001).

**ARGUMENT**

After remand, the following claims remain: (1) violation of due process under 42 U.S.C. § 1983 against the Individual Defendants in their official capacities for prospective injunctive relief under Ex parte Young; (2) violation of Title IX against UNC-CH; (3) tortious interference with contract against the Individual Defendants in their personal capacities; and (4) negligent infliction of emotional distress ("NIED") against the Individual Defendants in their personal capacities. Summary judgment is proper on all of these claims.

## I.  SUMMARY JUDGMENT IS PROPER ON THE SECTION 1983 CLAIM BECAUSE PLAINTIFF WAS PROVIDED DUE PROCESS.

As the Fourth Circuit stated in this case, "Doe points to several aspects of his disciplinary hearings that he believes violated his right to procedural due process, including a lack of adequate notice, the inability to introduce certain evidence, and biased hearing panels." Doe v. Univ. of N.C. Sys., 133 F.4th 305, 316 (4th Cir. 2025). The Fourth Circuit was "not persuaded" these procedural defects, even as alleged in the Complaint, "rose to the level of constitutional violations." Id. at 317-18. Supporting declarations confirm this conclusion. See generally Exs. 1, 3.

By contrast, the Fourth Circuit deemed more "serious" for a Rule 12(b)(6) pleading analysis the "foremost deficiency Doe identifies: the denial of his right to cross-examine his accusers." Id. at 316. The Fourth Circuit

noted, however, that its prior opinions did not "clearly establish a due process right to cross-examination in the particular context of university disciplinary proceedings." Id.; see also Doe v. Va. Polytechnic Instit. and State Univ., 77 F.4th 231, 239 (4th Cir. 2023) ("[W]e've never held that cross-examination is required" in university disciplinary proceedings). The Fourth Circuit therefore found the Individual Defendants entitled to qualified immunity for the alleged denial of cross-examination. Doe, 133 F.4th at 317.

The Fourth Circuit then announced that "[g]oing forward, cross-examination will materially assist in ensuring a meaningful hearing in higher-education disciplinary proceedings," particularly when resolution "turns on credibility determinations." Id. (emphasis added). But it declined to apply that new rule to the Individual Defendants, granting them qualified immunity based on their reasonable reliance on previously existing law. Id. at 316-17.

In so holding, the Fourth Circuit created a rule of purely prospective application. See Chevron Oil Co. v. Huson, 404 U.S. 97, 106 (1971) (noting potential for nonretroactivity of civil decisions "in both constitutional and nonconstitutional cases" where court expressly applies its new principle of law only prospectively); In re Twin Parks Ltd. P'ship, 720 F.2d 1374, 1376-77 (4th Cir. 1983) ("[T]he prospective or retroactive effects of a new rule depend upon the enunciating court's intention," and "a court may make its

10

decision purely prospective, 'denying the benefit of the new rule even to the parties before the court'" (quoting United States v. Johnson, 457 U.S. 537, 544 (1982)). Although courts disfavor applying a new rule to the parties in the case in which the rule is announced while applying it only selectively to other pending cases involving antecedent conduct, "pure prospectivity" remains available in civil cases. See Fairfax Covenant Church v. Fairfax Cnty. Sch. Bd., 17 F.3d 703, 710 (4th Cir. 1994) (noting Chevron had not been overruled in civil cases involving a question of "pure" prospectivity).

Where the Fourth Circuit held in 2025 that its new rule regarding cross-examination would apply only "[g]oing forward," Doe, 133 F.4th at 317, Plaintiff cannot prove a procedural due process violation occurred during the 2022 hearings. Thus, summary judgment is appropriate on Plaintiff's Section 1983 claim against the Individual Defendants.

Even if the Fourth Circuit's new rule requiring cross-examination applies retroactively to the 2022 EOC hearings, Plaintiff cannot create an issue of material fact under Rule 56 that he was denied the right to cross-examine Roe 1. As the Fourth Circuit recognized, while

> due process in the university disciplinary setting requires 'some opportunity for real-time cross-examination, even if only through a hearing panel,' . . we have no reason to believe that questioning of a complaining witness by a neutral party is so fundamentally flawed as to create a categorically unacceptable risk of erroneous deprivation.

11

<u>Doe</u>, 133 F.4th at 317 (emphasis added) (citation omitted). In the Roe 1 hearing, the neutral panel cross-examined Roe 1 for about 35 minutes, after which Plaintiff's own counsel cross-examined her for 45 minutes. (Ex. 3 ¶¶ 23-24.) These examinations, testing Roe 1's credibility using contemporaneous documentation, satisfied any alleged due process right.[4]

## II. UNC-CH IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S TITLE IX CLAIM.

For his Title IX erroneous outcome claim, Plaintiff must prove he (1) was subjected to a procedurally or otherwise flawed proceeding (2) which led to an adverse and erroneous outcome and (3) involved particular facts suggesting gender bias was a motivating factor behind the erroneous finding. <u>Kashdan v. George Mason Univ.</u>, 70 F.4th 694, 701 (4th Cir. 2023). Gender bias must be a but-for cause of the erroneous outcome. <u>Id.</u> It is not sufficient that reporting parties were treated differently than responding parties. <u>See, e.g.</u>, <u>Doe v. Stonehill Coll., Inc.</u>, 55 F.4th 302, 334 (1st Cir. 2022) ("[D]eference to Roe, without more, does not show that her treatment—or Doe's—is attributable to sex rather than to some other reason."); <u>Doe v.</u>

---

[4] Although Roe 4 did not appear at the hearing regarding her complaint, the hearing panel based its decision not just on a credibility assessment but on contemporaneous documentation, including text messages between Plaintiff and Roe 4 and reports made by Roe 4 to third parties. (Ex. 8.)

Samford Univ., 29 F.4th 675, 690 (11th Cir. 2022) ("[D]iscrimination against respondents is not discrimination 'on the basis of sex.'").

To determine whether UNC-CH made a factually supported outcome or instead discriminated against Plaintiff based on gender, the fact finder "need[s] to consider the information relied upon by the decision-makers [in the Title IX office], and what led them to make the decision they made." Alaei v. State Univ. of N.Y. at Albany, No. 21-CV-00377, 2025 WL 1549050, at *3 (N.D.N.Y. May 30, 2025); see also Rullo v. Univ. of Pittsburgh - of Commonwealth Sys. of Higher Educ., No. CV 17-1380, 2021 WL 640255, at *2 (W.D. Pa. Feb. 18, 2021) (letter provided by reporting party was "clearly relevant as to the information that the University had before it and/or considered as part of the Title IX investigation" and therefore admissible if authenticated). Investigative records containing out-of-court witness statements are admissible not for the truth of the matters stated therein, but to explain the course of the investigation or to show a non-discriminatory motive for taking disciplinary action. See Hawkins v. Leggett, 955 F. Supp. 2d 474, 504 (D. Md. 2013); see also Youse v. Duke Energy Corp., No. 1:02CV00808, 2003 WL 27356582, at *2 (M.D.N.C. Dec. 15, 2003) (statements made to employer by other employees were not inadmissible hearsay where offered not for truth of matter asserted but to show employer's

state of mind in deciding to terminate plaintiff, the reasons for actions taken in investigation of plaintiff, and the reasonableness of employer's belief that plaintiff engaged in serious misconduct). Such undisputed evidence here confirms that Plaintiff cannot show the three elements of an erroneous outcome claim under Title IX.

**A.    Plaintiff's Proceedings Were Not Flawed.**

Defendants provided extensive procedures to Plaintiff, including notice, access to investigative materials, four hearings with separate panels, an opportunity to be heard and represented by counsel at the hearings, and appeal rights. As discussed above, these procedures comported with due process under prevailing standards at the time.  See supra at 9-12. Thus, Plaintiff cannot show that the proceedings were flawed.

**B.    Plaintiff Cannot Prove an Erroneous Outcome.**

The Roes 1 and 4 hearing outcomes were factually supported by the records before the hearing panels. See supra at 4-8. In fact, the panels credited an accuser's account over Plaintiff's only when corroborated by contemporaneous documents and/or third-party witness statements. Given that the outcomes had factual support, Plaintiff cannot prove they were erroneous. See Doe v. Va. Poly. Inst., No. 19-cv-00249, 2022 WL 3334501, at *10 (W.D. Va. Aug. 11, 2022) (holding an erroneous outcome claim does

14

not require a court to "step into the shoes of the university's decision-makers and evaluate the weight and credibility of the evidence") (quotation omitted), aff'd, 77 F.4th 231 (4th Cir. 2023); see also Doe v. Wake Forest Univ., No. 23-CV-00114, slip. op. at 8-9 (M.D.N.C. Sept. 6, 2023) (a court "does not sit as a super-school discipline appeal board" or decide whether disciplinary decision was "correct," only whether university violated law).

### C. Plaintiff Cannot Prove Gender Bias Caused the Outcomes.

Plaintiff alleges he was treated unfairly in the disciplinary process, and that this unfairness supports an inference of gender bias. [See generally ECF No. 1.] Plaintiff asserts his inability to fully cross-examine Roes 1 and 4 demonstrates bias against him. [Id. ¶¶ 730-31, 742.] Plaintiff also claims the hearing panels' crediting of Roes 1 and 4's versions of events over his own is evidence of bias. [Id. ¶¶ 727, 735-36, 738.] These contentions fail.

First, the cross-examination opportunities provided to Plaintiff are not evidence of gender bias. As discussed above, no Fourth Circuit precedent required cross-examination in university disciplinary hearings in 2022. See supra at 9-10. Before the hearings, EOC informed Plaintiff's counsel that under applicable procedures and regulatory standards at the time, "an attorney may fully participate in the hearing to the same extent afforded to the party the attorney represents" and the other party "would have the

15

opportunity to cross-examine the attorney." (Ex. 11.) UNC-CH did not exhibit gender bias by using this procedure, which applied to both sides. See, e.g., Doe v. Univ. of S. Ind., 43 F.4th 784, 797 (7th Cir. 2022) (university did not act with "anti-male bias" by adhering to "generally applicable" policy applying equally to female students). Moreover, this procedure led to findings that Plaintiff was not responsible in Roe 2 and 3 and partially not responsible in Roe 4. These results undercut any claim of gender bias.

Second, the panels' decisions to credit allegations by Roes 1 and 4 do not show gender bias. Courts "regularly permit factfinders to make unstated but implicit credibility determinations in more formal settings than school disciplinary hearings, such as in criminal proceedings" and "give substantial deference to the factfinder's credibility determinations." Doe, 29 F.4th at 691 (quotations omitted). It is improper to "hold [a student-disciplinary] hearing panel to a higher standard than we hold district courts." Id.

Here, the hearing panels found Plaintiff responsible only for assault allegations in Roe 1 and Roe 4 that were corroborated by contemporaneous documents and/or third-party witness testimony. (Ex. 3 ¶ 75.) Conversely, the panels found Plaintiff not responsible for every claim of assault where no witness statements or evidence providing contemporaneous corroboration of the alleged assault were presented to the hearing panel, and the hearing

16

primarily boiled down to a "he said/she said" credibility dispute. See id. These outcomes undermine any allegation that the panel's credibility determinations resulted from gender bias against Plaintiff.

Unable to prove gender bias in his proceedings, Plaintiff alleges that several general types of "public pressure" on UNC-CH resulted in disciplinary processes "tilt[ed]" "in favor of complainants, who are mostly women." [ECF No. 1 ¶ 745.] To rely on UNC-CH's past actions in Title IX matters, Plaintiff must show the matters specifically impacted him. See Kashdan, 70 F.4th at 701. Plaintiff cannot do so.

First, Plaintiff contends the United States Department of Education's ("ED") 2011 "Dear Colleague Letter"("DCL")—which provided guidance to colleges and universities in complying with Title IX—"pressured colleges and universities to aggressively pursue investigations of sexual assault on campus." [ECF No. 1 ¶ 628.] Second, Plaintiff points to student protests and media attention. [Id. ¶¶ 651-59.] Third, Plaintiff relies on an ED review of UNC-CH, an investigation by ED's Office for Civil Rights ("OCR"), and a subsequent resolution agreement. [Id. ¶¶ 672-81.] Allegations like this have been rejected by courts across the country, including the Fourth Circuit, as not supporting inferences of gender bias, absent a specific connection to the plaintiff's disciplinary proceeding. See, e.g., Roe v. Marshall Univ. Bd. of

<u>Governors</u>, 145 F.4th 561, 571 (4th Cir. 2025); <u>Gash v. Rosalind Franklin Univ.</u>, 117 F.4th 957, 961-63 (7th Cir. 2024); <u>Doe v. Univ. of Denver</u>, 1 F.4th 822, 830-31 (10th Cir. 2021). No such connection exists here.

Plaintiff acknowledges the 2011 DCL was rescinded years before the events here and replaced by a policy that provided him significantly more procedural protections. [ECF No. 1 ¶ 639.] A plaintiff's "allegations about a government policy that has been rescinded and replaced" cannot be used to show gender bias in a subsequent proceeding. <u>Doe</u>, 29 F.4th at 692. Likewise, federal investigations and community pressure years before the disciplinary process at issue cannot support an inference of gender bias. <u>See Stonehill Coll.,</u> 55 F.4th at 335-36 (finding the link between OCR investigation and disciplinary proceedings years later "too weak to create a plausible inference that sex bias played a role in how the process unfolded").

Moreover, the regulatory and public pressures that Plaintiff cites occurred at least two years before his proceedings. And the federal investigations of UNC-CH concluded at least a year before the reports here. Indeed, UNC-CH modified its policies in response to a changing regulatory landscape, meaning Plaintiff was subject to a different process than the one subject to the government and public scrutiny he alleges. [ECF No. 1 ¶¶ 647, 694-695.] Thus, Plaintiff cannot link his experience to those who came before

18

him. His assertion that these pressures impacted the process he received or resulted in gender bias are too attenuated to support his Title IX claim.

In short, even if Plaintiff's allegations had merit, which they do not, "a plaintiff cannot prove gender discrimination by merely identifying mistakes or imperfections in the process." Doe v. Univ. of S. Ind., 43 F.4th at 793. Plaintiff cannot forecast evidence that gender bias caused his alleged injuries. Accordingly, his Title IX claim fails as a matter of law.

## III. SUMMARY JUDGMENT IS PROPER ON PLAINTIFF'S STATE-LAW CLAIMS BECAUSE UNC-CH IS THE REAL PARTY IN INTEREST.

Two state-law claims—NIED and tortious interference with contract— remain after the Fourth Circuit's opinion, but only to the extent those claims are against the Individual Defendants in their personal capacities. Because these state-law claims are based solely on the Individual Defendants' alleged actions within the scope of their job duties as UNC-CH employees and in pursuit of UNC-CH's interests, the real party in interest is UNC-CH.

"Eleventh Amendment immunity also extends to state officials when they are merely the nominal defendants and 'the state is the real, substantial party in interest.'" Booth v. Maryland, 112 F.3d 139, 142 (4th Cir. 1997) (citation omitted). When a plaintiff asserts claims against state employees,

> [t]he Supreme Court has cautioned that allowing an action to proceed simply because the complaint names a state official in his or her individual capacity "would be to adhere to an empty

formalism and to undermine the principle . . . that Eleventh Amendment immunity represents a real limitation on a federal court's federal-question jurisdiction."

Martin v. Wood, 772 F.3d 192, 195 (4th Cir. 2014) (citation omitted). To determine "the real, substantial party in interest," courts "look beyond the form of the complaint and the conclusory allegations" to "the substance of the claims" pleaded based on the following factors:

> (1) were the allegedly unlawful actions of the state officials tied inextricably to their official duties; (2) if the state officials had authorized the desired relief at the outset, would the burden have been borne by the State; (3) would a judgment against the state officials be institutional and official in character, such that it would operate against the State; (4) were the actions of the state officials taken to further personal interests distinct from the State's interests; and (5) were the state officials' actions ultra vires.

Id. at 195-96 (internal citations and quotations omitted). The Martin factors show that UNC-CH is the real, substantial party in interest here.

For the first factor, the Complaint makes only conclusory allegations about "individual capacities." [ECF No. 1 ¶ 604.] The specific allegations in the NIED and tortious interference claims (Counts V and VII) relate only to actions taken by Individual Defendants in their official capacities. For example, Count V alleges the Individual Defendants "each carried out their duties," which were to implement UNC-CH's Title IX Policy and PPDHRM as university employees. [ECF No. 1 ¶ 800.] All examples of alleged negligence relate to specific steps Individual Defendants took in furtherance of their

official duties. [Id. ¶ 801.] Likewise, Count VII alleges key elements against UNC-CH rather than the Individual Defendants. See, e.g., id. ¶ 818 ("Defendant UNC was indisputably aware . . . ." and the Morehead-Cain Foundation ("Foundation") "corresponded with the EOC to inquire about the status of the cases against Plaintiff"); ¶ 819 ("UNC intentionally induced . . . ."). Count VII also references Individual Defendants not by name but as "Individual Defendants from the EOC" [id. ¶ 821], and "information [the EOC] provided" to the Foundation [id. ¶ 822.][5] This confirms the alleged actions were inextricably tied to Individual Defendants' duties at EOC.

For the second and third factors, if the relief sought (reinstatement and expungement) had been provided at the outset, UNC-CH would have borne the burden of providing the relief through authorized officials, not the personal capacity Individual Defendants. Moreover, a judgment requiring such relief would be institutional and official, operating against UNC-CH.

And for the fourth and fifth factors, absent from the Complaint, and from the facts adduced in discovery, is any evidence that Individual Defendants took actions relative to Plaintiff in pursuit of their own personal interests, distinct from UNC-CH's interest, or that their actions were ultra vires.

---

[5] Although Count VII specifically references Defendant Hall, it does not allege any specific actions taken by her to induce the Foundation not to perform.

Accordingly, the <u>Martin</u> factors show that the real party in interest in Counts V and VII is UNC-CH. These state-law claims are thus subject to Eleventh Amendment immunity and should be dismissed to the same extent already dismissed against UNC-CH itself. <u>See</u> <u>Doe</u>, 133 F.4th at 313-15. Other courts have reached the same conclusion when addressing claims against state university employees. <u>See, e.g.</u>, <u>Keith-Foust v. N.C. Cent. Univ.</u>, No. 15CV470, 2016 WL 4256952, at *15-19 (M.D.N.C. Aug. 11, 2016) (dismissing tortious interference, negligence, and other claims against individual defendants where university was real party in interest); <u>Stewart v. Univ. of N.C. Sys.</u>, No. 15-cv-1487, 2016 WL 7325510, at *5 (E.D. Va. Apr. 7, 2016) (applying <u>Martin</u> to dismiss claims, including for tortious interference, against individual capacity professors), <u>aff'd in part, vacated in part</u>, 673 F. App'x 269, 270 (4th Cir. 2016) (affirming dismissal).[6]

## IV. THE INDIVIDUAL DEFENDANTS ARE OTHERWISE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S STATE-LAW CLAIMS.

As noted above, Eleventh Amendment immunity bars Plaintiff's state-law claims. But even if it did not, those claims fail on their merits.

---

[6] One case in which a court declined to dismiss under <u>Martin</u> is illustrative for its distinguishable facts. <u>See</u> <u>Longo v Aspinwall</u>, No. 19-cv-58, 2019 WL 3226431, at *5 & n.6 (W.D.N.C. July 17, 2019) (holding university employee took actions against student "only after [student] was dismissed from WCU" and thus "was not acting within the scope of her duties" at the time).

### A. Plaintiff Has No Tortious Interference with Contract Claim.

In Count VII, Plaintiff claims the Individual Defendants tortiously interfered with his contract with the Foundation for a scholarship. [ECF No. 1 ¶¶ 815-23.] To prevail on such a claim, a plaintiff must prove:

> (1) a valid contract [exists] between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damages to plaintiff.

United Labs., Inc. v. Kuykendall, 322 N.C. 643, 661 (1988). Here, Plaintiff can offer no evidence supporting the third and fourth elements of this claim.

First, no evidence shows Individual Defendants intentionally induced the Foundation not to perform under a contract. "[I]nduce" means "purposeful conduct" involving "active persuasion, request, or petition" for a third party not to perform. Se. Anesthesiology Consultants, PLLC v. Rose, No. 17 CVS 9002, 2019 WL 3948935, at *9 (N.C. Super. Ct. Aug. 20, 2019) (internal quotation omitted). Plaintiff neither pleads nor can prove Individual Defendants actively persuaded the Foundation not to perform. Indeed, the Foundation learned of the allegations against Plaintiff directly from Roes 1-4's representative—not from Individual Defendants. [ECF No. 1 ¶¶ 226-27.] The Foundation then "reported the allegations against [Plaintiff] to the EOC," [id. ¶ 229], and later reached out to UNC-CH "to inquire about the status of

the cases against Plaintiff," [id. ¶ 818]. EOC personnel responded truthfully to the Foundation's inquiries. (See Ex. 10.) Doing so did not constitute active persuasion. See Dalton v. Camp, 353 N.C. 647, 654-55 (2001) (affirming summary judgment on tortious interference claim where plaintiff's customer approached defendant about proposed contract, not vice versa).

Second, UNC-CH was justified in implementing its Title IX Policy and PPDHRM. If a party's interference is "for a legitimate business purpose, his actions are privileged." Morris Int'l, Inc. v. Packer, No. 20 CVS 2156, 2020 WL 6117736, at *6 (N.C. Super. Ct. Oct. 15, 2020). To be without justification, an action "must admit of no motive for interference other than malice." ITW Charlotte, LLC v. ITW Com. Constr., N. Am., No. 17-cv-00473, 2017 WL 4768219, at *2 (W.D.N.C. Oct. 20, 2017). "[A] wrong purpose exists where the act is done other than as a reasonable and bona fide attempt to protect the interest of the defendant which is involved." Morris, 2020 WL 6117736, at *6 (quotation omitted).

The evidence shows Individual Defendants made a bona fide attempt to implement UNC-CH's procedures by according rights to both sides in an adversarial process with the legal justification of protecting the campus community. (See Exs. 1 & 3.) Accordingly, summary judgment is proper on the merits of Plaintiff's claim for tortious interference.

## B. Plaintiff Has No NIED Claim.

For NIED, Plaintiff must show, among other things, that the Individual Defendants "committed negligence, including the failure to exercise due care in the performance of some legal duty owed to plaintiff." Sheaffer v. Cnty. of Chatham, 337 F. Supp. 2d 709, 733-34 (M.D.N.C. 2004) (citation and quotation marks omitted). As discussed above, see supra at 9-12, the Individual Defendants provided Plaintiff due process, thus showing the absence of negligence to support Plaintiff's NIED claim.

Further, the Court already dismissed Plaintiff's claim for intentional infliction of emotional distress (Count VI). [ECF No. 65 at 42-44.] To the extent Plaintiff purports to rely upon the same alleged intentional conduct by the Individual Defendants to support his NIED claim, that effort fails. See Thomas v. N. Telecom, Inc., 157 F. Supp. 2d 627, 637 (M.D.N.C. 2000) (underlying intentional tortious conduct cannot support NIED claim). Thus, summary judgment is also proper on the merits of the NIED claim.

## CONCLUSION

Defendants respectfully request this Court grant their Motion for Summary Judgment on all remaining claims pleaded in Plaintiff's Complaint.

Respectfully submitted, this the 17th day of December, 2025.

**ELLIS & WINTERS LLP**


/s/ Dixie T. Wells
Alex J. Hagan
N.C. State Bar No. 19037
P.O. Box 33550
Raleigh, NC 27636
Telephone: (919) 865-7000
Facsimile: (919) 865-7010
alex.hagan@elliswinters.com

Dixie T. Wells
N.C. State Bar No. 26816
P.O. Box 2752
Greensboro, North Carolina 27402
Telephone: (336) 217-4197
Facsimile: (336) 217-4198
dixie.wells@elliswinters.com

**JEFF JACKSON**
**ATTORNEY GENERAL**

Lindsay Vance Smith
N.C. State Bar No. 48085
North Carolina Department of Justice
P.O. Box 629
Raleigh, NC 27602
Telephone: (919) 716-6920
Facsimile: (919) 716-6764
lsmith@ncdoj.gov

Counsel for All Defendants

26

**UNIVERSITY OF NORTH CAROLINA AT CHAPEL HILL**

Marla Spector Bowman
N.C. State Bar No. 49097
123 W. Franklin Street
Suite 600
Chapel Hill, NC 27516
Telephone: (919) 962-1219
marla_bowman@unc.edu

Counsel for Defendant University of North Carolina at Chapel Hill

27

## CERTIFICATION ON USE OF ARTIFICIAL INTELLIGENCE

Undersigned counsel hereby certifies, in accordance with the Court's Standing Order on the Use of Artificial Intelligence, No 3:24-mc-00104-MR, that no artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 17th day of December, 2025.

/s/ Dixie T. Wells
Dixie T. Wells