UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:23-CV-0041

| | |
|---|---|
| JACOB DOE,<br><br>        Plaintiff,<br>v.<br><br>THE UNIVERSITY OF NORTH CAROLINA SYSTEM, et al.,<br><br>        Defendants. | **PLAINTIFF'S REPLY MEMORANDUM TO DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br>**[ECF NO. 170]** |

NOW COMES THE PLAINTIFF, tendering to the Court this Reply Memorandum to Defendants' Response to Plaintiffs' Motion for Partial Summary Judgment.

## I. ROE 1[1] PROCEEDING.

### A. Cross-Examination

Defendants contend that even though Doe's counsel had only completed one-fourth of his intended cross-examination, such questioning was sufficient. The effectiveness of cross-examination is not measured in minutes, but in the substance of the questions asked and answered. Furthermore, the Defendants failed to address that the lack of cross-examination violated their own policy. *See* discussion in Plaintiff's Response to Defendants' Memorandum in Support of Summary

---

[1] *See* pseudonym key filed under seal. [ECF No. 176]

Judgment. [ECF No. 182, pp. 3-7] and (UNC Procedures [ECF. No. 177-5, p. 6]). The importance of cross-examination is heightened when "the potential sanctions are severe." *Id*. In Doe's case, the penalty was the educational "death sentence."

**B. Testimony of Roe 1's Attorney.**

The Defendants first contend that Roe 1's attorney, Andy Fitzgerald, only read into the record "certain portions of Roe 1's investigative interview transcript." [ECF No. 180, p. 15]. Setting aside for the moment that this constitutes triple hearsay (Roe 1 to investigator, investigator report to panel, Fitzgerald testimony), the actual transcript reveals what the attorney was asked to do. The chairperson was Jacklyn Sweeny, who said:

> Bob will have the opportunity to ask Andy any questions that he may answer on [Roe 1's] behalf, as well as the hearing panel might have any last questions for Andy. . . . So Bob, I'll turn it over to you if you have any questions you want to address with Andy directly.

(Appx. 1, page 68 of Roe 1 Hearing Transcript).

Here are but a few of the questions asked Andy Firzgerald:

> Now, you told investigators that Liam Torres was at another party that night and that you and [Roe 2] were in your dorm room until he came and picked you up and brought you to his apartment that he shared with Doe, is that right? (*Id*. p. 69).
>
> And you told the investigators that you, [Roe 2], and Liam all fell asleep in the living room on a big couch in Doe's apartment, correct? *Id*.
>
> You told the investigators that Doe came into his apartment early in the morning, grabbed your shoulder, and told you to come and sleep in his room; is that what you told the investigators? *Id*. at 70

And while it is true that Fitzgerald attempted to answer questions based on interviews Roe 1 had given, there was no opportunity for Doe's counsel to challenge the credibility of the declarant, Roe 1. This was the Fourth Circuit's paramount concern in its decision.

The Defendants next contend, without any legal authority whatsoever, that Rule 3.7 of the Rules of Professional Conduct, which forbids an attorney from testifying on behalf of his client, is "inapplicable outside of a trial." [ECF No. 180, p. 15].

Again, without any legal authority, the Defendants contend that N.C. Gen. Stat. § 116-40.11(a) overrules Rule 3.7 because it allows a lawyer to "fully participate" in the hearing. [ECF. No. 180, p. 15]. Such an argument is disingenuous. The term "fully participate" does not imply the right to testify in violation of Rule 3.7. Statutory terms are subject to the "Plain Meaning Rule." The general rule is that, unless there is ambiguity in a statute's language, a court's analysis must end with the statute's plain language (the Plain Meaning Rule). *Caminetti v. United States,* 242 U.S. 470, 485, (1917).

### C. Date Change Prejudice.

The fact that the alleged offense date of November 19, 2020, was changed at the hearing without notice to Doe has been repeatedly briefed and conceded. However, the Defendants now take the position that the Plaintiff has failed to show

that an erroneous outcome could have been caused by the date change. [ECF No. 180, pp. 23-24]. The Defendants attempt to illustrate this point by pointing out that Doe had said Roe 1 could not have been present at the alleged incident because hazing was occurring and women were not allowed in the fraternity house at that time. *Id.*

However, in his deposition, Doe explained that after focusing on the November 19th date for seven months, he was confused in trying to recall events of two other possible dates suggested by Roe 1's attorney. (*See*, Appx. 2, Doe depo. p. 112). Had the incident date not changed, Doe could have researched the events of the night of the alleged misconduct and been prepared to respond, rather than relying on a memory of events that supposedly occurred more than a year earlier.[2]

## II. PLAINTIFF HAS ESTABLISHED A DUE PROCESS VIOLATION.

The Defendants contend that the Plaintiff has not proven a due process violation. [ECF No. 180, pp. 21-22]. The Fourth Circuit's opinion in this case was prompted by an appeal of a denial of a motion to dismiss. *Doe v. University of North Carolina System,* 133 F.4th 305 (2025). In deciding the appeal, the Court reviewed the allegations as pled by the Plaintiff and determined that, if true, Doe had a liberty interest protected by due process. *Id.* at 319.

---

[2] The alleged misconduct allegedly occurred sometime in November 2020 and the Roe 1 hearing was fourteen months later in January, 2022.

So, at the summary judgment stage, the question is whether Doe has proved the allegations he made regarding violations of his due process rights. What seems undisputed is that (1) in Roe 1, the cross-examination was one-sided because Roe 1 left while Doe's attorney had only gone through approximately one-fourth of his examination (2) Roe 1's attorney was allowed to testify in violation of Rule 3.7 of the Rules of Professional Conduct; (3) the date of Roe 1's alleged incident was wrong in the complaint against Doe, the notice of investigation, and the investigatory interviews with Roe 1; (4) as to Roe 4, there was no specific date given as to any of her allegations; (5) the entire Roe 4 hearing was conducted through hearsay; and (6) Doe's challenges to Roe 4's credibility were either thwarted by the hearing coordinator, and/or by the non-disclosure of a critical email sent by Roe 4.

In reviewing the record, if the Court indeed finds these assertions to be true, then the protected liberty interest described by the Fourth Circuit has been violated by a lack of due process.

## III. PLAINTIFF HAS ESTABLISHED THERE WAS AN ERRONEOUS OUTCOME IN THE ROE 1 AND ROE 4 HEARINGS.

There are two steps in establishing an "erroneous outcome" case. "[The] Plaintiff must 'demonstrate (1) articulable doubt [as to] the accuracy of the outcome of the disciplinary proceeding, and (2) that gender bias was a motivating factor behind the erroneous finding.' " *Doe v. Syracuse Univ.*, 457 F. Supp. 3d 178, 200 (N.D.N.Y. 2020) (citing *Doe v. Colgate Univ. Bd. of Trs.*, 760 F. App'x 22, 30 (2d

Cir. 2019)).

The first element in the erroneous outcome analysis can be satisfied by "(1) pointing to procedural flaws in the investigatory and adjudicative process, (2) identifying inconsistencies or errors in the findings, or (3) challenging the overall sufficiency and reliability of the evidence." *Doe v. Fairfax Cnty. Sch. Bd.,* 403 F. Supp. 3d 508, 517 (E.D. Va. 2019). Plaintiff directs the Court to both his Memorandum in Support of Partial Summary Judgment [ECF. No. 171, pp. 4-16] and to Plaintiff's Memorandum Opposing Defendant's Motion for Summary Judgment, [ECF. No. 182, pp. 2-10] as to this first element.

As to this second element, the record is replete with examples of direct gender bias. Here are but a few examples:

**A. In Roe 1, Doe's Objection to Panelist, Maxine Eichner, was overruled.**

Ekstrand's request to replace Panelist Maxine Eichner was denied. [*See* discussion [ECF No. 171, p. 5][3] and [ECF No. 171-11 (Ekstrand's objection)].

**B. Investigator Enlow Targeted Doe.**

Jeremy Enlow was the lead investigator in all four of the Doe cases. Enlow's bias against Doe surfaced in several instances during the investigation.

    **1.    Enlow drafted Roe 1's complaint.**

---

[3] According to the UNC faculty website, Dr. Eichner's areas of expertise include Feminist Legal Theory, Gender and the Law, Sexuality and the Law, and Women and the Law.

Under Title IX, an investigation can proceed only upon the filing of a formal complaint. Roe 1 had filed an anonymous complaint. Even though Doe is shrouded with a presumption of non-responsibility, Enlow actually drafted the complaint for Roe 1 to sign. (*See* Roe 1 complaint, [ECF. No. 177-7]).

When asked about his role in writing the complaint for Roe 1, Enlow admitted that the words in Roe 1's complaint were his words.

> Q.· ·So you drafted -- you drafted the formal complaint that shows 1 and 2 and then the subpoints beneath, is that right?
> A.· ·I drafted the draft allegations.  (Appx. 3, Enlow depo., pp. 127-130).[4]

### 2. Enlow only required Doe to produce documentation.

Roe 1 told Enlow that she had "photographs of bruises." But Enlow never required her to produce them. (Appx. 4, Enlow depo. at 136, 159). Enlow had Roe 1 read texts to and from Doe, but not produce them. Only when Doe produced them was it discovered that Roe had omitted parts of the text. (Appx. 5, Enlow depo., pp. 142-143). Roe never produced any of the requested documentation (*See*, e.g. Appx. 6, Enlow depo. pp. 157-158). Enlow did not inquire about physical evidence of the incident. (Appx. 8, Enlow depo., p. 148).

Doe's attorney requested texts between and among the four Roes. (Appx. 9,

---

[4] And later, when Roe 1 indicated that she did not desire to proceed, Elizabeth Hall drafted a formal complaint on behalf of UNC. [ECF No. 177-9], According to Enlow, Hall drafted the formal complaint because "[Roe 1] refused to participate in the process moving forward." (Appx. 7, Enlow depo. p. 132).

Ekstrand Letter to Investigators). Enlow admitted that these texts could be potentially exculpatory. (Appx. 10., Enlow depo., pp. 161-164). But Enlow stated there was "limited response to those requests." *Id*. at 164.

In Roe 1, Doe produced twenty separate documents, while Roe 1 produced none. (Appx. 11, Exhibits in Roe 1).

### 3. Doe was suspended without being interviewed.

Roe 1 was interviewed on May 7 and 14, 2021. Doe was not interviewed until September 13 and 17, 2021. (Appx. 12, excerpt for Investigation Report on Roe 1). The University suspended Doe on April 1, 2021, *but was not interviewed for his side of the incident until six months later.* [ECF No. 177-2, Notice of Suspension].

### 4. Enlow proposed a deletion of negative exculpatory comments about Roe 2 because it didn't "fit the narrative."

Before the submission of the final Investigation Report in Roe 2, a draft was submitted for review. Enlow's attempt to modify the report to exclude exculpatory evidence demonstrates gender bias. Here is an example. In the draft report, there was this language regarding Roe 2: (Appx. 13, Excerpt from Roe 2 Investigation Report).

> The Responding Party stated that the Reporting Party had planned to "ostracize" him from his friends. The Responding Party pointed to January 27, 2021, snapchats, in which the Reporting Party stated, "At the end of the day, though, I knew you didn't do it to be harmful and I know you didn't even know it was wrong to do. So that's why I think instead of ostracizing you or ignoring you, it's best to talk to you and let you know."

Enlow's comment to this paragraph reads, "Propose deletion, don't know what to do with this. Goes toward her motive to lie, so I feel it is relevant but doesn't fit the narrative." *Id.*[5] There can be no other explanation for this proposed deletion than an attempt to hamper Doe's defense of the allegations.

### 5. In Roe 3, Enlow's use of leading questions prejudiced Doe.

Even though the Hearing Panel in Roe 3 found Doe not responsible, the panelists believed it was necessary in their Findings to criticize Enlow's use of leading questions. [ECF No. 177-30, decision in Roe 3].

### 6. In Roe 4, Enlow omitted exculpatory evidence.

At the hearing, Enlow testified that he found Roe 4's account credible. (Appx. 14, Roe 4 Hearing Tr., p. 15). As an objective investigator, both inculpatory and exculpatory evidence should be brought to the hearing panel. In the Investigation Report, Enlow omitted a witness's statement that refuted Roe 4's account of what occurred. [*See* discussion, ECF No. 171, p. 16 and ECF No. 177-45].

### 7. The investigation report on Roe 1, given to the Panel, contained references to other alleged misconduct.

As argued in Plaintiff's Memorandum in Support of Partial Summary Judgment, Doe's attorney refused to allow the four Roe cases to be consolidated for the risk of prejudice. [ECF No. 171, p. 6]. Yet, when Enlow submitted the

---
[5] The initials in the comment, "EJV," refer to Enlow, Jeremy Vernon.

Pltff Reply to Def Resp to Motion for SJ, p. 9

Case 1:23-cv-00041-MR    Document 190    Filed 01/21/26    Page 9 of 13

investigatory report on Roe 1, references to the other matters were not redacted. For example, one witness—Roe 2's boyfriend and Doe's former roommate—who had no direct knowledge of the incident at issue, was quoted as saying he had heard that "multiple women… accused [Doe] of multiple sexual violence allegations." (Appx. 15, Roe 1 Investigation Report, p. 11).

### 8. **The Investigators essentially ignored the polygraph results**.

Polygraph results are admissible in Title IX hearings, and a university cannot adopt a policy that excludes polygraph results, [ECF No. 177-21, p. 6]. Doe's results were of no consequence to Enlow. (Appx. 16, Enlow depo, pp. 111-112).

. . . .

Plaintiff Doe has satisfied both of the elements of erroneous outcome by showing articulable doubt in the accuracy of the outcome, pointing out the procedural flaws and inconsistencies in the investigation and adjudicative process, and providing the Court with concrete, demonstrable examples of gender bias.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court: (1) Grant summary judgment on liability; (2) order expungement of Doe's disciplinary record, allowing him to re-enroll at the University; and (3) allow the matter to proceed on damages as to the remaining claims.

Respectfully, this is the 21st day of January, 2026.

/s/ Fred W. DeVore, III
Fred W. DeVore, III
DAS Law Group
438 Queens Road
Charlotte, NC 28207
(704) 377-5242
(704) 332-2825 *facsimile*
NC State Bar #10308
*Attorney for Plaintiff*
fdevore@daslawgroup.com

/s/ Raboteau T. Wilder, Jr.
Raboteau T. Wilder, Jr.
Wilder Law, PLLC
3501 Monroe Road
Charlotte, NC 28205
(704) 342-2243 telephone
NC State Bar #5891
*Attorney for Plaintiff*
rob@wilderlawgroup.com

CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing pleading was served upon all other parties to this action or their attorneys of record by using the ECF filing system and/or email and addressed as follows:

Alex J. Hagan
P.O. Box 33550
Raleigh, NC 27636
alex.hagan@elliswinters.com

Dixie T. Wells
P.O. Box 2752
Greensboro, North Carolina 27402
dixie.wells@elliswinters.com

Lindsay Vance Smith
North Carolina Department of Justice
P.O. Box 629
Raleigh, NC 27602
lsmith@ncdoj.gov

Marla Spector Bowman
123 W. Franklin Street, Suite 600
Chapel Hill, NC 27516
marla_bowman@unc.edu

Respectfully, this is the 21st day of January, 2026.

/s/ Fred W. DeVore, III
Fred W. DeVore, III
DAS Law Group
438 Queens Road
Charlotte, NC 28207
(704) 377-5242
(704) 332-2825 *facsimile*
NC State Bar #10308
*Attorney for Plaintiff*
fdevore@daslawgroup.com

/s/ Raboteau T. Wilder, Jr.
Raboteau T. Wilder, Jr.
Wilder Law, PLLC
3501 Monroe Road
Charlotte, NC 28205
(704) 342-2243 telephone
NC State Bar #5891
*Attorney for Plaintiff*
rob@wilderlawgroup.com

## CERTIFICATION REGARDING AI PLATFORMS

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg;

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction ( or the party making the filing if acting pro se) as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

Respectfully, this is the 21st day of January, 2026.

/s/ Fred W. DeVore, III
Fred W. DeVore, III
DAS Law Group
438 Queens Road
Charlotte, NC 28207
(704) 377-5242
(704) 332-2825 *facsimile*
NC State Bar #10308
*Attorney for Plaintiff*
fdevore@daslawgroup.com