| | |
|---|---|
| JACOB DOE,<br><br>      Plaintiff,<br><br>v.<br><br>THE UNIVERSITY OF NORTH<br>CAROLINA SYSTEM, et al.<br><br>      Defendants. | **PLAINTIFF'S TRIAL BRIEF** |

NOW COMES THE PLAINTIFF, by and through undersigned counsel, who submits the following trial brief:

## I. INTRODUCTION

This case arises out of two student disciplinary proceedings at the University of North Carolina at Chapel Hill ("UNC-CH") that terminated Plaintiff Jacob Doe's undergraduate career and his standing within the University of North Carolina System ("UNC System"). The Roe 1 proceeding resulted in a one-academic-year suspension, probation, and related restrictions. The Roe 4 proceeding resulted in permanent expulsion from the entire UNC System. Following this Court's Order on the parties' cross-motions for summary judgment dated March 17, 2026 (Doc. 191), and the Fourth Circuit's decision in *Doe v. University of North Carolina Sys.*, 133 F.4th 305 (4th Cir. 2025), three claims will proceed to trial: Count I (§ 1983 due

1

process, prospective injunctive relief under *Ex parte Young*, 209 U.S. 123 (1908), against the individual Defendants in their official capacities); Count II (Title IX, against UNC-CH); and Count V (NIED, against the individual Defendants).

## II. BACKGROUND

### A. The Consolidated Submission

Plaintiff was an undergraduate student at UNC-CH and was awarded the Morehead Cain Scholarship; continued enrollment at UNC-CH was a condition of the Scholarship. In spring 2021, four anonymous complaints reached UNC-CH's Equal Opportunity and Compliance Office ("EOC"). The EOC opened four proceedings (Roe 1 through Roe 4) under UNC's Policy on Prohibited Discrimination, Harassment, and Related Misconduct ("PPDHRM") and the 2020 Title IX Regulations then in force. The EOC assigned all four matters to Investigators Jeremy Enlow and Beth Froehling.

### B. Four Proceedings, Sequencing, and Record

Each of the four Investigators' reports ran between approximately 800 and 1,000 pages. Doe's counsel was restricted to read-only online review of the 800-to-1,000-page record during UNC business hours, with no copying permitted, notwithstanding that 34 C.F.R. § 106.45(b)(5)(vi) (2020) required an "equal" opportunity to inspect and review evidence and directed the provision of evidence to each party in electronic or hard copy.

The report track and the hearing track ran in different orders. Enlow issued final reports and pre-hearing sanction recommendations of permanent expulsion in Roe 3 and Roe 4 before any hearings occurred. The hearings then proceeded with Roe 1 and Roe 2 under Title IX, followed by Roe 3 and Roe 4 under the PPDHRM. Each report and each prior hearing outcome was cross-referenced into every subsequent case file as it became available.[1] By Roe 4, every prior report and outcome was in the file. Plaintiff was found responsible in Roe 1 and Roe 4, and not responsible in Roe 2 and Roe 3.

### C. The April 1, 2021 Transmission and Charging Document

On April 1, 2021, Rebecca Gibson, who handled logistics for the Title IX department, emailed Elizabeth Hall a document that selected excerpts from each of the four full complaints and condensed each account into a single paragraph each on 3/4s of one sheet of paper, introduced with the sentence, "Behavior of particular concern includes the following." Hall approved the selection. The EOC then used that four-paragraph selection, not the four-page single spaced full complaints the EOC possessed, to generate the Notice of Allegations and the Charging Documents that framed Roe 1 through Roe 4 claims.

---

[1] The EOC via Defendant Elizabeth Hall, the Title IX coordinator, had offered to Doe to consolidate the hearings, but Doe declined to do so preferring that each matter rise or fall on its individual merits. Nevertheless, the cross-referencing of findings and allegation continued at the direction of Hall and over the objection of Doe.

3

The selection omitted exculpatory content that was in the full accounts. The full complaints were ignored and kept secret by the EOC until the investigations were completed. Thus, the EOC prevented Doe access to the full complaints, which prevented him from fully preparing his defense despite numerous requests that the full complaints be provided to Doe by his lawyer.

Under the 2020 Title IX Regulations, the written notice of the allegations is the charging document of a Title IX proceeding and the foundation of the respondent's rights to notice, to respond, and to prepare a defense. 34 C.F.R. § 106.45(b)(2)(i)(B) (2020). The regulation requires notice to accused students of "sufficient details known at the time and with sufficient time to prepare a response." *Id*. It is a functional standard, and its sufficiency is measured by reference to what the institution knew. Where the institution possesses the full accounts and elects to charge from a curated selection from which exculpatory content has been removed, the charging document does not discharge the function the regulation assigns it. The deficiency is in the institution's charging act, not in the respondent's response to it.

The EOC kept the full complaints hidden from and not disclosed ever to the Emergency Evaluation and Action Committee ("EEAC") which was responsible for determining whether an emergency suspension should issue. Thus, the EOC not only withheld crucial information from Doe, but it also withheld it from the EEAC, evidently in fear that if the EEAC knew the contents of the full complaints, the

4

EEAC might not grant the EOC's request for an emergency suspension of Doe from campus.

### D. The Roe 1 Hearing

Plaintiff had prepared to defend himself from the charge that on November 19, 2021, he had committed sexual misconduct. That date was used in the complaint Roe 1 emailed, is in the formal complaint signed by Hall, and in the NOI. The hearing officer indicated that only events which took place on November 19 would be discussed. However at the hearing, Roe 1's counsel announced that the misconduct did not take place on November 19, but on either November 5 or 12. The hearing was allowed to proceed despite the change of date. Plaintiff's counsel cross-examined Roe 1. Roe 1 admitted during cross-examination that she had been untruthful in her accounts to the investigators. As counsel was preparing to expose further falsehoods, the Roe 1 Hearing Officer stopped the hearing at Roe 1's counsel's request, recessed for an unrecorded *ex parte* break, and upon resuming the hearing, announced that Roe 1 had left the hearing. Roe 1's attorney, Andy Fitzgerald ("Fitzgerald"), was then permitted to step into her shoes and submit to "cross-examination" in her place. Working from the Investigators' pre-hearing recommendation of responsibility under Title IX, the Roe 1 Panel imposed a one-academic-year suspension, two years of probation, reporting obligations, a bar on

5

holding student office or leadership positions, mandatory educational programming, no-contact orders, and exclusion from university housing.

### E. The Roe 2 Hearing

The Roe 2 complainant appeared and was subject to full cross-examination. Despite inappropriate antics during the hearing, the Roe 2 Panel found Plaintiff not responsible, in part, because it did not find Roe 2 claims of sexual assault credible.

### F. The Roe 3 Hearing

Plaintiff's private investigator interviewed the Roe 3 complainant, the only one of the Roes for whom there was not a no contact order. The complainant thereafter asserted that the interview constituted witness intimidation. The EOC added parenthetical language recharacterizing the interview as retaliation and issued a new charge against Plaintiff on that basis. Enlow and Froehling then interviewed Plaintiff's private investigator on video, and in that video the private investigator denied the complainant's characterizations of the interview between them. The Roe 3 complainant did not appear at the Roe 3 hearing and was not subject to cross-examination. The video interview of Plaintiff's private investigator conducted by Enlow and Froehling was played before the Roe 3 Panel. That video allowed the panel to test the Roe 3 complainant's account against an external source. The Roe 3 Panel found Plaintiff not responsible and criticized perceived bias on the part of the investigators.

6

### G. The Roe 4 Hearing

The Roe 4 Charging Document tied Plaintiff to two separate dates and places: a March 2020 gathering of friends at an Airbnb in Alabama over spring break and a June 2020 visit to a condominium in Charlotte. Roe 4 never appeared at the Roe 4 hearing so that she could be examined by Doe's attorney. Credibility evidence Plaintiff offered concerning Roe 4 was barred on the stated ground of an announced but nonexistent section of the governing policy. The Hearing Officer, David Elrod, from NCSU did not know that no such section exists in the PPDHRM Policy. Roe 4 did not appear, and no non-hearsay evidence was presented against Doe. Still, the Roe 4 Panel found Plaintiff responsible and adopted the Investigators' pre-hearing sanction of permanent expulsion from the UNC System.

### H. The No-Pattern Admission, the Voluntary-Consolidation Request, and the De Facto Consolidation

Well before any of the four hearings began, Hall wrote to Plaintiff asking him to consent to voluntary consolidation of the Roe 1 through Roe 4 proceedings and enclosing a waiver to UNC-CH of any resulting prejudice. Plaintiff replied in writing that he would not agree to consolidated hearings. The exchange is documented in Hall's July 19, 2021 letter in which she purported to quote the governing regulation that authorized her to "consolidat[e]...formal complaints when [the] allegations of sexual harassment arise out of the same facts or circumstances."

In the same letter, Hall admitted the regulatory predicate was not met. She wrote that the "EOC has determined that the complaints in the four Notices do not arise out of the same facts and circumstances." She nevertheless asked Plaintiff to consent to consolidation "to adjudicate these reports more quickly" and told Plaintiff in advance that "any relevant, permissible pattern evidence will be considered in the resolution of the individual reports." The letter thus conceded the absence of the only regulatory basis for consolidation and, in the same breath, foretold the pattern-style materials would travel among the four proceedings regardless of Plaintiff's answer.

Plaintiff's counsel responded and asked the EOC to toll the response deadline because Plaintiff could not meaningfully consent without the underlying full complaints. The EOC did not produce the underlying complaints. Plaintiff did not consent, and the EOC knew that consolidation would cause prejudice. Hall's written request was itself an institutional admission.

The EOC did the opposite. Having been told no in writing, the EOC ran four *de facto* consolidated proceedings: the Investigators' canvass worked all four complaints in a single investigative enterprise; the Charging Document cross-referenced the matters on their face; Fitzgerald cross-referenced every complaint during the Roe 1 hearing; and in July 2021, Roe 2 and Roe 4 made their "gun" assertions to EOC that then followed Plaintiff into the later proceedings.

8

### III. QUESTIONS OF LAW

#### A. Count I: Procedural Due Process Under 42 U.S.C. § 1983

Plaintiff's due process claim proceeds against the individual Defendants in their official capacities and seeks prospective injunctive relief under *Ex parte Young*, 209 U.S. 123 (1908). The Fourth Circuit held in this case that the district court did not err in permitting Plaintiff's claims for injunctive relief against the university employees in their official capacities to survive the motion to dismiss. *Doe*, at 319. Plaintiff seeks three forms of injunctive relief on Count I: (i) vacating of the disciplinary findings and decisions; (ii) expungement of his academic record; and (iii) reinstatement at UNC-CH as a student in good standing.

Plaintiff's protected interests are three. First, a property interest in continued enrollment at UNC-CH. Second, a property interest in the Morehead-Cain Scholarship, which was conditioned on that enrollment. Third, a liberty interest in reputation under the stigma-plus doctrine. The Fourth Circuit held in this case that "a notation of expulsion, contained in a student's educational record, implies a 'serious character defect[] such as dishonesty or immorality,'" and that "[g]iven the pejorative nature of the alleged misconduct and the severity of the actual sanction imposed, . . . a sufficient liberty interest has been alleged." Id. at 319.

Where credibility is the central issue and the sanctions are severe, the Fourth Circuit has now made clear that a meaningful opportunity to test credibility,

including through cross-examination, is required. As the Fourth Circuit held in this case:

"[A]s a matter of procedural due process, an accused student must be 'afforded the meaningful hearing to which they [are] entitled.' . . . Going forward, cross-examination will materially assist in ensuring a meaningful hearing in higher-education disciplinary proceedings. This is particularly true where, as here, (1) the resolution of a disciplinary charge turns on credibility determinations, and (2) the potential sanctions are severe. *Doe* at 317.

[T]he underlying question, of course, is whether the hearing as a whole was meaningful in substance and not just in form." *Id*. at 317.

Plaintiff will show substantial procedural deprivations that violated the legal standard. Several examples include, in Roe 1, cross-examination was terminated at the point Roe 1 had admitted lying and counsel was preparing to expose further falsehoods. The Hearing Officer Jackie Feeney of the EOC called a recess. After an hour-long break that did not include Doe or his counsel, Feeney announced that Roe 1 had left the hearing and Fitzgerald would be permitted to step into Roe 1's shoes for the remainder of her cross-examination.[2] Second, in Roe 4, the charging document tied Plaintiff to two separate dates and locations off campus, the

---

[2] One of the members of the Roe 1 Hearing Panel is a lawyer who took no action to stop this outrageous substitution by the EOC and its Hearing Officer.

10

complainant never appeared at the hearing, and credibility evidence was barred on a nonexistent section of the university procedure, denying process on a record where credibility was dispositive. Third, the Investigators' pre-hearing imposition of permanent expulsion in every one of the four matters meant that the Roe 1 and Roe 4 Panels convened from a predetermined sanction, inconsistent with a neutral decision maker and Title IX's presumption of innocence. There are many other examples of deviation from the legal standards that will be presented. The relief sought against each individual Defendant is prospective and official-capacity only: vacatur of the Roe 1 and Roe 4 findings, expungement of the related records, and reinstatement as a student in good standing, as well as damages.

## B. Count II: Sex Discrimination Under Title IX

A Plaintiff bringing a Title IX claim in the Western District of North Carolina must ultimately prove that the Defendant, a federally funded educational institution, discriminated against the Plaintiff on the basis of sex. The Fourth Circuit's controlling standard, established in *Sheppard v. Visitors of Virginia State University*, 993 F.3d 230 (4th Cir. 2021) requires a Plaintiff to allege facts that, if true, raise a plausible inference of sex-based discrimination, with sex being a but-for cause of the challenged action.

In *Sheppard*, while reviewing a motion to dismiss, the Fourth Circuit acknowledged that the circuits are split on how to approach Title IX claims. *Id*. at

11

235. The Fourth Circuit more closely aligned its approach to Title IX claims with the Seventh Circuit, but added:

> We agree with the Seventh Circuit's approach and see no need to deviate from the text of Title IX. In adopting this approach, however, we find no inherent problems with the erroneous outcome and selective enforcement theories identified in Yusuf. In fact, either theory, with sufficient facts, may suffice to state a plausible claim. We merely emphasize that the text of Title IX prohibits all discrimination on the basis of sex. See 20 U.S.C. § 1681(a). *Sheppard* at 236.

The Seventh Circuit approach referenced by the Fourth Circuit is, "Do the alleged facts, if true, raise a plausible inference that the university discriminated against [the student] on the basis of sex?" *Doe v. Purdue University*, 928 F.3d 652, 667-668 (7th Cir. 2019)

Given the Fourth Circuit's decision to be text driven, i.e., bound by the literal text of Title IX, it appears that so long as the Plaintiff can produce evidence that demonstrates that but for his sex, the discrimination against him would not have taken place, he is entitled to go to the jury on the cause of action.

The erroneous outcome theory, acknowledged (but not mandated) by *Sheppard*, applies when a Plaintiff claims that he or she was innocent and wrongly found to have committed an offense due to gender bias. While *Sheppard* found "no inherent problems" with this theory, the Fourth Circuit adopted a text-based approach and does not require Plaintiffs to proceed under this framework. *Sheppard*

*v. Visitors of Virginia State University*, 993 F.3d 230 (4th Cir. 2021) *Kashdan v. George Mason University*, 70 F.4th 694 (4th Cir. 2023)

Under Title IX erroneous outcome claims, Plaintiffs can establish articulable doubt about disciplinary proceeding accuracy through three methods: (1) pointing to procedural flaws in the investigatory and adjudicative process; (2) identifying inconsistencies or errors in the findings; or (3) challenging the overall sufficiency and reliability of the evidence *Doe v. Fairfax County School Board*, 403 F.Supp.3d 508 (2019). The pleading burden for this element is not heavy, requiring only particular evidentiary weaknesses such as motive to lie by complainants or witnesses, particularized strengths of the defense, other reasons to doubt the charge's veracity, or particular procedural flaws affecting the proof. *Doe v. Coastal Carolina University*, 359 F.Supp.3d 367 (D. S.C. 2019).

The most directly relevant precedent within the Fourth Circuit comes from *Doe v. Marymount University*, 297 F.Supp.3d 573 (E. D. Va. 2018). The court denied the university's motion to dismiss where the Plaintiff alleged that his adjudicator—responsible for his guilt finding—had demonstrated gender bias in a subsequent case by asking a male complainant "were you aroused" and, upon the student's denial, asking again "not at all?" The court held that this evidence of the adjudicator's gendered beliefs was "sufficient to satisfy Doe's burden to plead a fact that creates an inference of gender discrimination" and that, when viewed

13

collectively with additional evidence (including an asymmetric university review policy favoring complainants, and an official's statement that Title IX proceedings were "increasingly politicized"), the claim was viable *Id*. at 587.

UNC-CH has characterized the split outcomes as proof that the process worked. The Sixth Circuit has held that "patterns of decision-making" across a university's cases can show the requisite connection between outcome and sex. *Doe v. Oberlin*, 963 F.3d 580 (6th Cir. 2020), at 587. The outcomes here did not track the strength of the evidence; they tracked whether each complainant's account could be tested against any source external to the complainant. Where testing was available (Roe 2 cross-examination; Roe 3 video recording of the Investigators' interview of Plaintiff's private investigator), Plaintiff was found not responsible. Where testing was not available (Roe 1 cross terminated after harmful admissions; Roe 4 no appearance, no cross-examination and no external source), Plaintiff was found responsible.

### C. Count V: Negligent Infliction of Emotional Distress

Plaintiff's NIED claim proceeds against the individual Defendants under North Carolina law. The elements are: (1) negligent conduct; (2) reasonable foreseeability that the conduct would cause severe emotional distress; and (3) severe emotional distress in fact. *Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A.*, 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990). Plaintiff will prove negligent conduct

14

through the individual Defendants' departures from the PPDHRM Policy and the 2020 Title IX Regulations, including the curated April 1, 2021 transmission of the Roes full complaints; Hall's approval and operationalization of that transmission as the charging document; the nondisclosure of the full complaints; the Investigators' pre-hearing imposition of permanent expulsion in every one of the four matters; and the procedural rulings that terminated cross-examination; permitted Fitzgerald's substitution; and barred credibility evidence on a nonexistent section of UNC0-CH's policies. Foreseeability is established by the governing rules under which the individual Defendants operated and by UNC-CH's own prior representations about the consequences of erroneous outcomes in Title IX proceedings; the particulars will be developed at trial. Severe emotional distress is established through Plaintiff's treatment history, expert witness testimony, and lay testimony as to the changes in Plaintiff following the proceedings.

### D. Burdens and Standards

Plaintiff bears the burden of proof by a preponderance of the evidence on Counts I, II, and V. The jury is the factfinder on credibility and on contested fact questions. Administrative findings from the Roe 1 and Roe 4 proceedings are not binding on the jury, and Plaintiff will ask the Court to so instruct. Plaintiff does not seek punitive damages.

## IV. ANTICIPATED EVIDENTIARY ISSUES

Plaintiff is certain he cannot identify all the evidentiary issues that will arise at trial but identifies the following likely evidentiary issues for resolution.

## A. EOC Reports and Administrative Findings

Issue: Admissibility of the EOC final investigative reports and the administrative findings in the Roe 1 and Roe 4 proceedings. Position: The hearing transcripts, investigator reports, and transcripts of interviews are fraught with hearsay unless offered for some other purpose. Plaintiff seeks exclusion under Federal Rule of Evidence 803(8)(B). Rule 803(8)(A)(iii) admits factual findings from a legally authorized investigation, but Rule 803(8)(B) excludes the record if "the opponent shows that the source of information or other circumstances indicate a lack of trustworthiness." That safeguard bars the admission of biased adjudicative records. *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 167-68 (1988); *Palmer v. Hoffman*, 318 U.S. 109, 113-14 (1943); *Ellis v. Int'l Playtex, Inc.*, 745 F.2d 292, 300-01 (4th Cir. 1984).

The trustworthiness showing is on the face of the record developed in Parts II and III (*supra.*): the curated April 1, 2021, transmission from which exculpatory content was removed; the nondisclosure of the full complaints to the panels, the EEAC, and Plaintiff; the Investigators' pre-hearing imposition of permanent expulsion in every matter. A record prepared in those circumstances does not fit inside Rule 803(8)'s presumption.

16

Rule 803(6) is not an alternative pathway. Records prepared in anticipation of adversarial proceedings do not satisfy Rule 803(6)'s regular-course-of-business requirement, and Rule 803(8)(B)'s trustworthiness inquiry controls where both potentially apply. Rule 403 is an independent ground: the risk that the jury will treat UNC-CH's adjudicative conclusions as a substitute for its own fact-finding substantially outweighs any probative value, particularly where the Investigators Enlow and Hall will appear as live witnesses and the underlying evidence can be presented through testimony subject to cross-examination.

Request: Exclusion of the final investigative reports and the Roe 1 and Roe 4 administrative findings under Rule 803(8)(B), or in the alternative under Rules 803(6) and 403. If any portion is admitted, Plaintiff requests redaction of the Investigators' pre-hearing sanction recommendations, redaction of cross-references to the other three proceedings, and a limiting instruction that the administrative findings are not binding on the jury and are received only to show what UNC-CH did, not for the truth of what UNC-CH concluded. Plaintiff will file a separate Rule 104(a) motion developing the full record if the Court prefers to resolve the question on that motion. Plaintiff raises the issue here to preserve it under § V.D.(2)(c).

**B. Charging Document, Gibson-to-Hall Email, and Symplicity Intake**

Issue: Admissibility of the April 1, 2021 email from Gibson to Hall; the Symplicity intake record reflecting March 31, 2021 intake at 11:11 AM and the

transmission approximately thirty-three hours later; and the Charging Document built from the April 1 transmission. Grounds: Business and public records under Federal Rules of Evidence 803(6) and 803(8) and party-opponent statements under Rule 801(d)(2), authenticated through Gibson and Hall as custodians and participants. Request: Admission over Defendants' anticipated hearsay and foundation objections.

## C.  The Four Unaltered Complaints Received by EOC on April 1, 2021

Issue: Admissibility of the four full, unaltered complaints received by EOC on April 1, 2021. Grounds: Offered for the non-hearsay purpose of showing the content EOC possessed at the time of charging, including the exculpatory content that did not appear in the Charging Document.  Plaintiff does not offer the complaints for the truth of their accusations. The exculpatory statement "I was also so under his influence that I did not realize I was being sexually assaulted" is offered to show what EOC knew, not to prove the fact asserted. Request: Admission with a limiting instruction.

## D.  Roe 2 Hearing Transcript and Cross-Proceeding Transcripts

Issue: Plaintiff intends to show gender bias with examples of where exculpatory was omitted in the final reports given to the hearing panels. Pages of the interview transcript and/or the investigators' report might be offered to show bias. This is not hearsay because it is not offered to show the truth asserted, and it is an

18

action/statement of a party Defendant. Authenticated as UNC-CH records under Rules 803(6) and 803(8), with party-opponent status under Rule 801(d)(2). Request. Admission with a limiting instruction.

### E. Rule 412

Issue: Scope of Rule 412. Position: Plaintiff does not seek to offer other sexual behavior of any complainant as substantive evidence. Plaintiff's credibility evidence consists of Roe 1's own admissions during the proceeding and prior inconsistent statements, and inconsistencies between the Charging Document, the two alleged incident dates, and Roe 4's statements to EOC. Request: Confirmation that Plaintiff's proffered evidence is outside Rule 412 and admission with a limiting instruction as appropriate.

### F. Rule 404(b) and the No-Pattern Representation

Issue: Treatment of cross-proceeding material under Rule 404(b). Position: The Title IX Coordinator admitted in writing on July 19, 2021, that "EOC has determined that the complaints in the four Notices do not arise out of the same facts and circumstances," and EOC represented to Plaintiff that the four proceeding would not be consolidated or treated as a pattern. Plaintiff relied on that representation in declining to seek consolidation. If Defendants seek to introduce pattern-style material from the Roe 2 and Roe 3 proceedings for any propensity purpose, Plaintiff will object on Rule 404(b) grounds and on the ground that Defendants are bound by

their administrative no-pattern representation. Plaintiff reserves the right to offer cross-proceeding material for the non-propensity purposes. Request: A pretrial ruling limiting Defendants to the administrative no-pattern representation and permitting Plaintiff's non-propensity uses.

### G. Plaintiff's Mother as a Lay Witness

The Plaintiff may call his mother as a witness to describe his medical condition as a lay witness. The Defendants may object to his witness because she was not in the initial pre-trial disclosures under Rule 26. However, as the Official Commentary to Rule 37 states, an exception to the exclusion of an unidentified witness may be excused where there was an "inadvertent omission from a Rule 26(a)(1)(A) [and] disclosure of the name of a potential witness known to all parties. . ."

At Doe's deposition on July 22, 2025, Doe disclosed that he was living with his parents. Doe dep. P. 52, lines 5-15. He further testified that his parents and siblings had observed his panic attacks. Doe depo. p. 70, lines 17-21.

Additionally, a subpoena for medical records of Jacob Doe was served on Doe's mother by the Defendants, and Plaintiff provided a response to the subpoena on August 18, 2025.

Therefore, the Defendants cannot claim surprise if the mother is called as one of Plaintiff's witnesses. Lack of surprise, and the importance of the testimony are

factors to be considered in determining admissibility of the testimony of a witness not initially disclosed. *See Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592 (4th Cir. 2003).

Setting aside the Rule 26/37 issues, Federal courts have allowed such evidence under Rule 701, which permits lay opinions that are "(a) rationally based on the perception of the witness; (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

The Defendants cannot claim surprise and the failure to disclose the mother as a damages witness was inadvertent and not in bad faith.

## H. Additional Issues

Firearm statements (July 2021): From Roe 2 and Roe 4 who told EOC in July 2021 that Plaintiff had a gun, was seen on campus with same and was seen attempting to break into a building. Plaintiff will object on hearsay, relevance, and Rule 403 grounds if the assertion is offered for its truth and will seek a limiting instruction if any portion is admitted for a non-hearsay purpose. However, the failure of the Defendants to disclose the existence of the email prior to the Roe 4 hearing deprived the Plaintiff of the ability to attack the credibility of Roe 4, because the allegations in the email were demonstrably false. The email may be entered for the limited purpose of further establishing gender bias.

21

Polygraph examinations. Plaintiff does not offer polygraph results for their truth; Plaintiff will establish only that such examinations were among the exculpatory materials UNC-CH declined to consider. Expert testimony. Plaintiff anticipates offering expert testimony consistent with a forthcoming Rule 702 disclosure. Administrative vocabulary. The underlying proceedings did not use courtroom formalities; Plaintiff will not refer to any participant as having been under oath.

## V. DAMAGES, RELIEF, AND CONCLUSION

### A. Damages

On Count V, Plaintiff seeks compensatory damages against the individual Defendants, including emotional-distress damages supported by treatment records and expert and lay testimony. On Count II, Plaintiff seeks compensatory damages against UNC-CH for lost educational opportunity, loss of the Morehead-Cain Scholarship (conditioned on continued enrollment at UNC-CH and rendered impossible by permanent expulsion from the UNC System), lost earnings and diminished earning capacity, and reputational harm. On Count I, Plaintiff seeks prospective injunctive relief under *Ex parte Young*.

### B. Injunctive Relief (Count I)

Plaintiff respectfully requests that the Court, upon a verdict for Plaintiff on Count I, enter prospective injunctive relief against the individual Defendants in their

official capacities, including (i) vacatur of the disciplinary findings and decisions entered in the Roe 1 and Roe 4 proceedings; (ii) expungement of Plaintiff's academic and disciplinary records at UNC-CH and throughout the UNC System of all references to the Roe 1 and Roe 4 findings and sanctions; and (iii) reinstatement as a student in good standing within the UNC System.

## C. Relief Requested

Plaintiff respectfully requests verdicts for Plaintiff on Counts I, II, and V; entry of judgment accordingly; compensatory damages on Counts I, II, and V in amounts the jury determines; the prospective injunctive relief described in Part V. B on Count I; and attorney's fees and costs available under applicable law.

Respectfully submitted, this the 21st day of April, 2026.

/s/ Fred W. DeVore, III

Fred W. DeVore, III
DAS Law Group
438 Queens Road
Charlotte, NC 28207
(704) 377-5242
(704) 332-2825 *facsimile*
NC State Bar #10308
*Attorney for Plaintiff*
*fdevore@daslawgroup.com*

/s/Raboteau T. Wilder, Jr.

Raboteau T. Wilder, Jr.
Wilder Law, PLLC
3501 Monroe Road
Charlotte, NC 28205
(704) 342-2243 telephone
NC State Bar #5891
*Attorneys for Plaintiff*
*rob@wilderlawgroup.com*

## CERTIFICATION REGARDING AI PLATFORMS

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg;

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction ( or the party making the filing if acting pro se) as

24

to the accuracy of the proposition for which it is offered, and the citation to authority provided.

Respectfully submitted, this the 21st day of April, 2026.

/s/ Fred W. DeVore, III
Fred W. DeVore, III
DAS Law Group
438 Queens Road
Charlotte, NC 28207
(704) 377-5242
(704) 332-2825 *facsimile*
NC State Bar #10308
*Attorney for Plaintiff*
*fdevore@daslawgroup.com*

/s/Raboteau T. Wilder, Jr.
Raboteau T. Wilder, Jr.
Wilder Law, PLLC
3501 Monroe Road
Charlotte, NC 28205
(704) 342-2243 telephone
NC State Bar #5891
*Attorneys for Plaintiff*
*rob@wilderlawgroup.com*

<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing pleading was served upon all other parties to this action or their attorneys of record pursuant to Fed. R. Civ. P. 5 and/or by US Postal Service and email as follows:

Alex J. Hagan
P.O. Box 33550
Raleigh, NC 27636
alex.hagan@elliswinters.com

Dixie T. Wells
P.O. Box 2752
Greensboro, North Carolina 27402
dixie.wells@elliswinters.com

Lindsay Vance Smith
North Carolina Department of Justice
P.O. Box 629
Raleigh, NC 27602
lsmith@ncdoj.gov

Marla Spector Bowman
123 W. Franklin Street, Suite 600
Chapel Hill, NC 27516
marla_bowman@unc.edu

Respectfully submitted, this the 21st day of April, 2026.

/s/ Fred W. DeVore, III
Fred W. DeVore, III
DAS Law Group
438 Queens Road
Charlotte, NC 28207
(704) 377-5242
(704) 332-2825 *facsimile*
NC State Bar #10308
*Attorney for Plaintiff*
*fdevore@daslawgroup.com*

/s/Raboteau T. Wilder, Jr.
Raboteau T. Wilder, Jr.
Wilder Law, PLLC
3501 Monroe Road
Charlotte, NC 28205
(704) 342-2243 telephone
NC State Bar #5891
*Attorneys for Plaintiff*
*rob@wilderlawgroup.com*

26