| | |
|---|---|
| JACOB DOE,<br><br>      Plaintiff,<br><br>v.<br><br>THE UNIVERSITY OF NORTH CAROLINA SYSTEM, et al,<br><br>      Defendants. | **PLAINTIFF'S MEMORANDUM AND DOCUMENTATION SUPPORTING MRS. DOE'S TRIAL TESTIMONY** |

NOW COMES THE PLAINTIFF, responding to Defendant's oral motion to exclude the trial testimony of Mrs. Doe, the mother of Jacob Doe. In support of the motion, the Plaintiff advises the Court that Plaintiff's previous counsel did not identify Mrs. Doe in Plaintiff's initial Rule 26 disclosures, and therefore the Defendant seeks to prevent Mrs. Doe's testimony at trial. Plaintiff contends that the non-disclosure of Mrs. Doe was an inadvertence and does not constitute a surprise to the Defendants, and that the exclusion of this evidence will prejudice the Plaintiff.

At the April 24, 2026, the Court allowed the Plaintiff time to review documentation supporting his request to allow Mrs. Doe to testify, notwithstanding her non-disclosure under the initial Rule 26 disclosures.

Fed. R. Civ. P. 37(c)(1), mandates exclusion of undisclosed witnesses unless the nondisclosure was substantially justified or harmless—assessed under a five-

1

factor test established by the Fourth Circuit. Courts in this circuit must weigh five factors when determining whether a nondisclosure is substantially justified or harmless: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose. *Southern States Rack And Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592 (2003). The Fourth Circuit has recognized the district court's broad discretion to determine whether a nondisclosure of evidence is substantially justified or harmless for purposes of a Rule 37(c)(1) exclusion analysis. *Bresler v. Wilmington Trust Company*, 855 F.3d 178, 190 (4th Cir. 2017). Both FRE 602 and 701 would permit lay testimony to describe observable medical conditions.

Counsel concedes that previous counsel did not disclose Mrs. Doe in their Rule 26 disclosures after the suit was filed over three years ago. If the Court excuses this inadvertence, the focus of the inquiry shifts to surprise and prejudice. To illustrate the lack of surprise or prejudice to the Defendants, the Plaintiff has included excerpts from Doe's deposition and Defendant's subpoena on Mrs. Doe, both of which are explained below:

2

**Jacob Doe Deposition (Appx. 001)**

Jacob Doe's deposition was taken on July 22, 2025. He described his mother's involvement in his journey after the disciplinary hearings

> Pages 29-30 – Doe disclosed that his mother was assisting him in his scholastic path to become an attorney by selecting a private advisor, and further, she discussed with him the impact of an expulsion for sexual misconduct.
> Page 70 – Doe testified that his parents and siblings have observed his panic attacks.
> Page 101 – Doe testified that he had told his parents that he would like to kill himself.
> Pages 234-236 – Doe describes becoming extremely intoxicated (a video of which Defendants have identified as a trial exhibit) after learning of the death of a close aunt.  He drafted a correspondence about her death and sent it to his mother.

While Doe's deposition should have put the Defendants on notice of the importance of Doe's mother as a witness, even more compelling were the results of Doe's psychiatric evaluation.

**Dr. Gaskins Report (Appx. 002)**

On April 14, 2025, Plaintiff served his expert witness disclosure.  As part of the disclosure, the Defendants were provided with a copy of the Independent Psychiatric Evaluation.  The report disclosed that two witnesses were interviewed – Jacob Doe and his mother. The following excerpt is taken from Dr. Gaskins' report and his interview with Doe's mother.

3

The family have always been close and try to celebrate each other as individuals while keeping other holidays relatively small. For example, Christmas is a muted affair whereas birthdays are much celebrated so that each member has a day to stand out. This has been one of the biggest challenges after his expulsion. The family had been planning a trip to Utah for his brother's birthday. However, he told the family he was worried about going into the local airport due to fear of being recognized. He told his mom about his fear of being called "the Moorehead rapist" in front of his family. He told her that he was worried he would "have a panic attack" and "be so embarrassed" if he came on the trip. She has witnessed these attacks wherein he will appear "frozen and shaken." During these episodes he is "absolutely incapable" of moving. She has tried to help him use logic during these episodes, but he is not able to explain what is making him fearful. She remembers the incident when he was driving back from camp and had multiple attacks. The drive home "took 8 days" because of his having to stop so frequently. He kept telling her, "I'm just scared I'm gonna kill someone or I'm gonna get killed" (internal quotation marks omitted). She remembers that each day he would call her to say "he was gonna try." He attempted to drive "at odd times" such as at night or very early in the morning to avoid traffic. He has not been able to drive long distances since that time which is why she brought him to his interview with the undersigned the day prior. He "can't drive for more than 15 or 20 minutes" before his hands start sweating and "his body stops working." He has now "been planning his life, so he doesn't have to drive." . . . Since Mr. Doe has been prescribed Lexaproâ (escitalopram), he has improved. He is "not utterly hopeless" as he had been. He continues to have difficulty with anxiety. She is hopeful that he would be willing to find a therapist. His inability to handle being out of his house for extended periods of time is an ongoing concern. His and his sister's birthdays are in January. As described above, the family "do a big birthday" celebration. He has told his mother that he did not want to celebrate his birthday and "want[s] to pretend that it's not happening" but still wanted to celebrate his sister's. The night of the celebration, they arranged for the dinner to take place at 4:00 PM about an hour out of town to provide him with comfort and reduce the likelihood that he

would be recognized. He was able to make it through the dinner but was noted to be "sweating and uncomfortable."

## Excerpt from Dr. Gaskins Deposition (Appx. 003)

The Defendants deposed Dr. Gaskins on July 18, 2025, four days before Doe's deposition. In the deposition, Dr. Gaskins was asked why he interviewed Doe's mother (and only Doe's mother). Dr. Gaskins said,

> I normally like to speak to a second source of information just to kind of get some more background on you and get their observations of what they've seen from prior to and after the index event, whatever that is, in the case. And I will say, well, who is the best person to speak to? And it typically is a spouse or a parent. So when I asked Mr. Doe that, he said that his mother would know him best. So that was why I chose her.

## Mrs. Doe Subpoena (Appx. 004)

Twelve days after Dr. Gaskins' deposition, on July 30, 2025, the Defendants issued a subpoena to Mrs. Doe. No other family member received a subpoena

There were eleven areas requested:

1 -2 Communications with Doe's advisor

3.   Billing records regarding advisor.

4.  Lodging records of a camp where Doe taught

5. Billing records for mental health treatment

6. Mental health records for Doe

7. Billing records of other health care providers

8. Medical records of other providers

9. Aunt's death certificate

10. Communications from Mrs. Doe to Doe regarding the aunt's death

5

11. Communications from Doe to Mrs. Doe regarding the aunt's death.

## CONCLUSION

These documents illustrate that the Defendants were aware of the involvement of Doe's mother as the foremost lay witness to describe Doe's emotional injuries, and this information was known at least by the Plaintiff's expert disclosure on April 14, 2025, months before the closure of the discovery period.  The Defendant cannot claim surprise. Furthermore, the Plaintiff would be substantially prejudiced if Mrs. Doe is excluded from testifying. The Plaintiff respectfully requests that the Court permit her trial testimony.

Respectfully, this is the 27th day of April 2026.

| | |
|---|---|
| /s/ Fred W. DeVore, III | /s/ Raboteau T. Wilder, Jr. |
| Fred W. DeVore, III | Raboteau T. Wilder, Jr. |
| DAS Law Group | Wilder Law, PLLC |
| 438 Queens Road | 3501 Monroe Road |
| Charlotte, NC 28207 | Charlotte, NC 28205 |
| (704) 377-5242 | (704) 342-2243 telephone |
| (704) 332-2825 *facsimile* | NC State Bar #5891 |
| NC State Bar #10308 | *Attorneys for Plaintiff* |
| *Attorney for Plaintiff* | *rob@wilderlawgroup.com* |
| *fdevore@daslawgroup.com* | |

6

## CERTIFICATION REGARDING AI PLATFORMS

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg;

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction (or the party making the filing if acting pro se) as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

Respectfully, this is the 27th day of April 2026.

| | |
|---|---|
| /s/ Fred W. DeVore, III | /s/ Raboteau T. Wilder, Jr. |
| Fred W. DeVore, III | Raboteau T. Wilder, Jr. |
| DAS Law Group | Wilder Law, PLLC |
| 438 Queens Road | 3501 Monroe Road |
| Charlotte, NC 28207 | Charlotte, NC 28205 |
| (704) 377-5242 | (704) 342-2243 telephone |
| (704) 332-2825 *facsimile* | NC State Bar #5891 |
| NC State Bar #10308 | *Attorneys for Plaintiff* |
| *Attorney for Plaintiff* | *rob@wilderlawgroup.com* |
| *fdevore@daslawgroup.com* | |

<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing pleading was served upon all other parties to this action or their attorneys of record pursuant to Fed. R. Civ. P. 5 and/or by US Postal Service and email as follows:

Alex J. Hagan
P.O. Box 33550
Raleigh, NC 27636
alex.hagan@elliswinters.com

Dixie T. Wells
P.O. Box 2752
Greensboro, North Carolina 27402
dixie.wells@elliswinters.com

Lindsay Vance Smith
North Carolina Department of Justice
P.O. Box 629
Raleigh, NC 27602
lsmith@ncdoj.gov

Marla Spector Bowman
123 W. Franklin Street, Suite 600
Chapel Hill, NC 27516
marla_bowman@unc.edu

Respectfully submitted, this the 27th day of April, 2026.

/s/ Fred W. DeVore, III
Fred W. DeVore, III
DAS Law Group
438 Queens Road
Charlotte, NC 28207
(704) 377-5242
(704) 332-2825 *facsimile*
NC State Bar #10308
*Attorney for Plaintiff*
fdevore@daslawgroup.com

/s/Raboteau T. Wilder, Jr.
Raboteau T. Wilder, Jr.
Wilder Law, PLLC
3501 Monroe Road
Charlotte, NC 28205
(704) 342-2243 telephone
NC State Bar #5891
*Attorneys for Plaintiff*
rob@wilderlawgroup.com

8