JACOB DOE,

          Plaintiff,

   v.

THE UNIVERSITY OF NORTH CAROLINA SYSTEM, THE UNIVERSITY OF NORTH CAROLINA AT CHAPEL HILL, THE UNIVERSITY OF NORTH CAROLINA BOARD OF TRUSTEES, BOARD OF GOVERNORS OF THE UNIVERSITY OF NORTH CAROLINA AT CHAPEL HILL, KEVIN GUSKIEWICZ, in his official capacity, ELIZABETH HALL, individually and in her official capacity, JEREMY ENLOW, individually and in his official capacity, BETH FROEHLING, individually and in her official capacity, REBECCA GIBSON, individually and in her official capacity, JACLYN FEENEY, individually and in her official capacity, DAVID ELROD, individually and in his official capacity, and DESIREE RIECKENBERG, individually and in her official capacity,

          Defendants.

**MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO INTERVENE FOR THE LIMITED PURPOSE OF SEEKING THE COURT'S MODIFICATION OF THE CONSENT DECREE AND SEALING ORDERS AND TO PARTIALLY UNSEAL THE PARTIES' SETTLEMENT AGREEMENT**

Movants DTH Media Corp. d/b/a *The Daily Tar Heel*, Mecia Communications LLC d/b/a *The Carolina Ledger*, and the John Locke Foundation d/b/a *The Carolina Journal,* through their undersigned counsel and pursuant to Rule 24 of the Federal Rules of Civil Procedure, respectfully provide the Court with this memorandum in support of their motions for leave to intervene in this cause and for the Court, in the exercise of its discretion, the public interest, and pursuant to N.C. GEN. STAT. § 132-1.3, to modify the Consent Decree and related orders sealing the parties' Settlement Agreement in order to disclose all conditions, payments, concessions, or other considerations agreed to by the University of North Carolina System and the other public entity Defendants (collectively, "UNC") in connection with the settlement of the Plaintiff's claims. As explained below, the North Carolina Public Records Law prohibits UNC from approving or agreeing to a confidential, sealed settlement; moreover, unlike the Plaintiff and his accusers, UNC cannot assert any privacy or reputational interest in support of the sealing. Both the claims asserted by the Plaintiff in this proceeding, and its sealed settlement, raise important legal and public policy issues with respect to UNC's practice of confidentially investigating and adjudicating allegations of sexual assault and other serious sexual misconduct lodged by and against UNC students. For the reasons set forth below, Movants urge this Court to shed public light on these issues by allowing Movants' Motions to intervene and to modify its sealing orders.

## BACKGROUND AND PROCEEDINGS TO DATE

A full summary of the salient facts underlying the Movants' Motions is set out in detail in the Fourth Circuit's interlocutory ruling in *Doe v. University of North Carolina System*, 133 F.4th 305, 311-13 (4th Cir. 2025) and need not be fully repeated here.

Plaintiff, "Jacob Doe," is a former Morehead-Cain scholar at the University of North Carolina at Chapel Hill ("the University").[1] (ECF No. 1, ¶¶ 29-30). In 2021, via a joint complaint lodged with UNC-CH's Equal Opportunity and Compliance Office, the Plaintiff was accused of sexual misconduct by four female students. (ECF No. 1, ¶¶ 232-234, 266-273). The alleged misconduct was alleged to have occurred both on and off campus. (ECF No. 1, ¶ 274). Because some of the asserted misconduct was alleged to have occurred on campus, the University investigated it pursuant to the school's Title IX policy. (ECF No. 1, ¶ 274). The hearing panel that adjudicated those allegations ultimately found the Plaintiff responsible for non-consensual sexual intercourse while the complaining female student was incapacitated and suspended him for an academic year. (ECF No. 1, ¶¶ 412, 526).

---

[1]Although this Court has permitted the Plaintiff to proceed under the pseudonym "Jacob Doe," Movants and their counsel quickly and easily identified him early in the pendency of this action by reviewing the allegations in his Complaint in the light of publicly available information. Movants are informed and believe that many others likewise are aware of the Plaintiff's identity. Nevertheless, Movants have honored this Court's rulings to date by declining to identify him publicly in the course of reporting on this action.

The misconduct alleged to have occurred off campus was investigated by a second hearing panel pursuant to the University's general sexual harassment policy. (ECF No. 1, ¶ 274). That panel found the Plaintiff responsible for "engaging in sexual assault or sexual violence" against the complaining female student and permanently expelled him from the UNC system. (ECF No. 1, ¶¶ 509, 522). Plaintiff appealed the findings of both hearing panels to University appeal officers, both of whom affirmed the panels' findings and sanctions. (ECF No. 1, ¶¶ 528-541). Plaintiff then appealed both appeal officers' decisions to the University's Board of Trustees, which affirmed both decisions in February 2023. (ECF No. 1, ¶¶ 542-551).

Having exhausted his potential administrative remedies with the University, the Plaintiff filed this action in February 2023, asserting that the disciplinary proceedings against him were unfair and inadequate, leading to erroneous outcomes that damaged his education, reputation, and career prospects. (ECF No. 1). He asserted claims for deprivation of due process under 42 U.S.C. § 1983, a Title IX claim for erroneous disciplinary outcomes, and a series of claims under North Carolina law. (ECF No. 1, ¶¶ 562-828). His Complaint sought compensatory and punitive damages, an injunction vacating the hearing panels' disciplinary findings, expunction of his disciplinary record, and readmission to the University.[2] (ECF No.

---

[2] The Plaintiff's 190-page, 828-paragraph Complaint was filed by New York attorneys Andrew T. Miltenberg, Stuart Berstein, and Tara J. Davis of Nesenoff & Miltenberg, LLP and by North Carolina attorney Robert C. Ekstrand of Ekstrand and

1). The Defendants moved to dismiss for lack of subject matter jurisdiction and for failure to state claims upon which relief could be granted. (ECF No. 32, ECF No. 34). This Court denied the motion to dismiss regarding Plaintiff's federal claims and state law claims for breach of contract negligent infliction of emotional distress, tortious interference, and state constitutional violations. (ECF No. 65). This Court dismissed Plaintiff's state law claims for intentional infliction of emotional distress and negligent hiring, supervision, and retention. (ECF No. 65). In 2024, the Defendants instituted an interlocutory appeal to the U.S. Court of Appeals for the Fourth Circuit. (ECF No. 68). The Fourth Circuit ruled, among other things, that the Plaintiff could pursue injunctive relief but was not entitled to seek money damages from the Defendants. *See Doe*, 133 F.4th at 310.

Trial of this matter was scheduled to commence before a jury on May 11, 2026. However, this matter was, instead, settled pursuant to the Consent Decree, Settlement Agreement, and other sealed filings that are the subjects of the Movants' Motions. On May 11, 2026, the Court directed counsel for the parties to file the Settlement Agreement with Certificate of Approval under seal by May 28, 2026. (*See* May 11 2026 Docket Entry). On May 27, 2026, the parties filed the Settlement

---

Ekstrand. (ECF No. 1). In June 2025, Plaintiff's initial counsel sued Plaintiff and his father in New York County Supreme Court for their alleged failure to pay more than $77,000 in legal fees.

Agreement with Certificate of Approval under seal. (ECF No. 223). On May 29, 2026, the Court entered a Consent Decree ordering that the Settlement Agreement remain under seal and finding that "the presumption of openness to the Settlement Agreement is overcome by the overriding privacy and reputational interests of Plaintiff and Roes 1-4, and that this overriding interest cannot be protected by any measure short of sealing the Settlement Agreement." (ECF No. 224). On 3 June 2026, the Court entered a Corrected Consent Decree. (ECF No. 225). On 16 June 2026, Plaintiff filed a Stipulation of Dismissal. (ECF No. 226).

## ARGUMENT

**I.    The Court Should Allow the Movants to Intervene for the Limited Purpose of Seeking to Modify the Orders Sealing the Settlement.**

Rule 24 of the Federal Rules of Civil Procedure provides two avenues for intervention: intervention as of right pursuant to Rule 24(a)(2), and permissive intervention pursuant to Rule 24(b). Fed R. Civ. P. 24(a)(2), (b). If intervention as of right is not warranted, a court nevertheless may allow an applicant to intervene permissively under Rule 24(b). *Id.* Both avenues of intervention are reviewed by appellate courts for abuse of discretion. *See Stuart v. Huff*, 706 F.3d 345, 349 (4th Cir. 2013). The Fourth Circuit has long held that "liberal intervention is desirable to dispose of as much of a controversy involving as many apparently concerned persons as is compatible with efficiency and due process." *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986) (internal quotation marks omitted); *see also Friend v. REMAC*

*Am., Inc.*, No. 3:12-CV-17, 2014 U.S. Dist. LEXIS 73704, 2014 WL 2440438, at *1 (N.D. W. Va. May 30, 2014) (analyzing motion to intervene "in the context of the Fourth Circuit's policy favoring 'liberal intervention' and preventing the 'problem of absent interested parties'" (quoting *Feller*, 802 F.2d at 729)).

A movant seeking to intervene as a matter of right under Rule 24(a) must show that (1) the application to intervene is timely; (2) the proposed intervenors have an interest in the subject matter of the underlying action; (3) denial of the motion to intervene would "impair or impede" the applicants' ability to protect their interests; and (4) the applicants' interests are not adequately represented by the existing parties to the litigation. *Students for Fair Admissions v. Univ. of N.C.*, 319 F.R.D. 490, 493-94 (M.D.N.C. 2017) (citing *Houston Gen. Ins. Co. v. Moore,* 193 F.3d 838, 839 (4th Cir. 1999)).

Here the Movants qualify for intervention under Rule 24(a). Movants' intervention Motion is timely because, under the Consent Decree, this Court has retained continuing jurisdiction over the subject matter of this action and because it is being filed promptly following the entry of the Court's entry of the Consent Decree (Corrected) and the Stipulation of Dismissal on June 3, 2026 and June 16, 2026, respectively. Further, by following and reporting on this case, Movants have demonstrated their continuing interest in the subject matter of this action, which involves serious and important public issues related to UNC's handling and

7

disposition of sexual misconduct charges lodged by and against UNC students. Denial of their motion to intervene would effectively prevent Movants from exercising their Constitutional rights to cover and report on the resolution and potential consequences of this judicial proceeding, as well as their right of access to public records of settlements made by or on behalf of public agencies as conferred by N.C. GEN. STAT. § 132-1.3. Finally, Movants' constitutional and legal rights not only are inadequately protected by the existing parties but in fact have been and are being actively thwarted by UNC's unauthorized consent to the secret settlement of this case.

As noted above, if this Court should determine that intervention as of right by Movants is not warranted pursuant to Rule 24(a), it nevertheless may, and should, exercise its discretion to permit their intervention for the limited purpose requested in keeping with the Fourth Circuit's policy of allowing liberal intervention in the interest of justice.

II. **The Court Should Modify the Settlement Agreement and Sealing Orders to Disclose What UNC Agreed to Do or Pay to Settle with the Plaintiff.**

A. **UNC's Consent to Sealing the Settlement Agreement Violates the North Carolina Public Records Law and Public Policy.**

North Carolina law, both as enacted by the General Assembly and as interpreted and applied by North Carolina courts, mandates openness and transparency on the part of public officials and institutions. Over many decades,

North Carolina's appellate courts have consistently and repeatedly ruled that the Public Records Law, Chapter 132 of the General Statutes, must be construed broadly and liberally in order to effectuate the public policy that underlies it, and that exemptions and exceptions to the public's right of access must be strictly construed. *See, e.g.*, *DTH Media Corp. v. Folt*, 374 N.C. 292, 300, 841 S.E.2d 251, 257, ("[T]he state's legislative body—the North Carolina General Assembly—has clearly expressed its intent through the Public Records Act to make public records readily accessible as 'the property of the people,' as described in N.C. GEN. STAT. § 132-1(b)."); *News and Observer Pub. Co. v. State ex rel. Starling*, 312 N.C. 276, 281, 322 S.E.2d 133, 137 (1984) ("[I]t is clear that the legislature intended to provide that, as a general rule, the public would have liberal access to public records."); *News and Observer Pub. Co. v. Poole*, 330 N.C. 465, 475, 412 S.E.2d 7, 13 (1992) ("[T]he legislature intended to provide that, as a general rule, the public would have liberal access to public records.") (internal quotation marks omitted); *Maready v. City of Winston-Salem*, 342 N.C. 708, 730, 467 S.E.2d 615, 629 (1996) (explaining that under North Carolina's Open Meetings Law, "[t]hose seeking exemption have the burden of establishing that an exception embraces their action. Such exceptions should be strictly construed") (internal citation omitted).

The North Carolina Court of Appeals has often applied the same rules of construction. *See, e.g., Times News Pub. Co. v. Alamance-Burlington Bd. of Educ.,*

242 N.C. App. 375, 376, 774 S.E.2d 922, 924 (N.C. Ct. App. 2015) ("'[C]ourts should ensure that the exception to the disclosure requirement should extend no further than necessary to protect ongoing efforts of a public body, respecting the policy against secrecy in government that underlies both the Public Records Act and the Open Meetings Law.'") (internal citation omitted); *Jackson v. Charlotte Mecklenburg Hosp. Auth*., 238 N.C. App. 351, 353, 768 S.E.2d 23, 25 (N.C. Ct. App. 2014) ("Consistent with that purpose [of providing liberal access to public records], 'in the absence of clear statutory exemption or exception, documents falling within the definition of "public records" in the Public Records Law must be made available for public inspection.'") (internal citation omitted); *Carter-Hubbard Pub. Co. v. WRMC Hosp. Operating Corp*., 178 N.C. App. 621, 624, 633 S.E.2d 682, 684 (N.C. Ct. App. 2006) *writ allowed*, 361 N.C. 218, 642 S.E.2d 246 (2007) *and aff'd sub nom. Carter-Hubbard Pub. Co., Inc. v. WRMC Hosp. Operating Corp*., 361 N.C. 233, 641 S.E.2d 301 (2007) ("Exceptions and exemptions to the Public Records Act must be construed narrowly."); *City of Burlington v. Boney Publishers, Inc*., 166 N.C. App. 186, 191-92, 600 S.E.2d 872, 876 (N.C. Ct. App. 2004) ("'The Public Records Act permits public access to all public records in an agency's possession "unless either the agency or the record is specifically exempted from the statute's mandate."'") (internal citation omitted); *Advance Publications, Inc. v. City of Elizabeth City*, 53 N.C. App. 504, 506-07, 281 S.E.2d 69, 70-71 (N.C. Ct. App.

10

1981) ("[G]ood public policy is said to require liberality in the right to examine public records.") (internal citation omitted).

Movants respectfully urge this Court to honor the well-established rules of construction applied by North Carolina's appellate courts by partially unsealing the Settlement Agreement and ancillary documents in this case to the extent required to disclose what UNC agreed to on behalf of North Carolina's citizens and taxpayers in order to settle with the Plaintiff. Unlike the Plaintiff and his accusers, who are referred to in the Consent Decrees as "Roes 1-4," UNC cannot assert any privacy interest in support of sealing the Settlement Agreement.[3] To the contrary, N.C. GEN. STAT. § 132-1.3(a) specifically prohibits public governmental entities such as UNC from joining in any secret or confidential agreement, except in an action for medical malpractice against a hospital facility, thereby embodying and mandating their compliance with North Carolina's well-established public policy favoring transparency and openness of settlements entered into by North Carolina governmental institutions. Although the Settlement Agreement and related filings in this case are sealed, UNC necessarily must have disregarded and violated this prohibition by voluntarily agreeing to the sealing of those filings.

**B.    N.C. GEN. STAT. § 132-1.3(b) Does Not Justify the Sealing of the Entire Settlement.**

---

[3] "Roes 1-4," are not parties to this proceeding, and Movants do not seek to modify the Settlement Agreement so as to cause them to be identified, either directly or indirectly.

N.C. Gen. Stat. § 132-1.3(b) permits North Carolina judges to override N.C. Gen. Stat. § 132-1.3(a) by entering "a written order concluding that (1) the presumption of openness is overcome by an overriding interest and (2) that such overriding interest cannot be protected by any measure short of sealing the settlement." N.C. Gen. Stat. § 132-1.3(b). The same statute further provides that any "[s]uch order shall articulate the overriding interest and shall include findings of fact that are sufficiently specific to permit a reviewing court to determine whether the order was proper." *Id.* Here the only "overriding interests" cited by this Court as justifying the sealing are "the privacy and reputational interests of Plaintiff and Roes 1-4" which, the Consent Decree and Corrected Consent Decree provide, "cannot be protected by any measure short of sealing the Settlement Agreement." (ECF No. 224, ECF No. 225). Neither Order includes any supporting findings of fact or explains why the reputational interests of the Plaintiff and his accusers requires or justifies the sealing of every provision of the Settlement Agreement.

Movants take no issue with this Court's determination that the reputational and privacy interests of the Plaintiff and of Roes 1-4 justify the sealing of the Settlement Agreement to the extent required to shield their identities, but Movants respectfully submit that those interests do not justify sealing the Settlement Agreement in its entirety. As explained above, UNC not only possesses no such interests, but is expressly prohibited by N.C. Gen. Stat. § 132-1.3(a) from agreeing

to a confidential settlement agreement in any litigation other than medical malpractice actions against a hospital facility. Movants respectfully urge this Court to cure this defect by entering a redacted Settlement Agreement or other order disclosing the terms and agreements provided by UNC in consideration for the Plaintiff's executing the Settlement Agreement. By doing so, this Court can and will bring the settlement into compliance with the Public Records Law and provide the Movants and their readers with the answers to important questions raised by this case, including the following:

(1)     Does the Settlement Agreement obligate UNC to make any financial payment to or for the benefit of the Plaintiff notwithstanding the Fourth Circuit's interlocutory rejection of the Plaintiff's claim for money damages? For example, did UNC agree to pay all or part of the Plaintiff's attorney fees, including the more than $77,000 in fees for which the Plaintiff's former attorneys have sued him and his father in New York County Supreme Court? Did UNC agree to compensate the Plaintiff or his parents for the value of his revoked Morehead-Cain scholarship?

(2)     Does the Settlement Agreement reverse, override, modify, or void any of the hearing panels' findings of sexual misconduct by the Plaintiff?

(3)     Does the Settlement Agreement reverse, override, modify or void any of the punishment administered to the Plaintiff by the hearing panels,

including Plaintiff's permanent expulsion from every UNC constituent institution?

(4)    Did UNC agree to seal, expunge, or modify the Plaintiff's academic or disciplinary records, in whole or in part?

(5)    Did UNC agree to modify or discontinue any of its rules or procedures with respect to the investigation, adjudication, or punishment of sexual misconduct charges lodged against students?

(6)    Did UNC and the Plaintiff agree with respect to the contents of any public statement concerning the settlement or disposition of this case?

The Movants respectfully submit that the Court can and should modify the Consent Decree and Settlement Agreement to answer these and similar questions of significant public interest without identifying the Plaintiff or his accusers and without providing information that is likely to lead to their identification.

Respectfully submitted, this the 16th day of July 2026.

STEVENS MARTIN VAUGHN & TADYCH, PLLC

/s/ Hugh Stevens
Hugh Stevens
N.C. State Bar No. 4158
hugh@smvt.com

/s/ Michael J. Tadych
Michael J. Tadych
N.C. State Bar No. 24556
mike@smvt.com

/s/ Ashley N. Fox
Ashley N. Fox
N.C. State Bar No. 57896
ashley@smvt.com
2225 W. Millbrook Road
Raleigh, NC 27612
Telephone: (919) 582-2300
Facsimile: (866) 593-7695

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was served upon all parties to this action or their attorneys of record pursuant to Fed. R. Civ. P. 5 and/or by US Postal Service, postage prepaid, and email as follows:

Fred W. DeVore, III
DAS Law Group
438 Queens Road
Charlotte, NC 28207
fdevore@daslawgroup.com

Raboteau T. Wilder, Jr.
Wilder Law, PLLC
3501 Monroe Road
Charlotte, NC 28205
rob@wilderlawgroup.com

Alex J. Hagan
P.O. Box 33550
Ellis & Winters, LLP
Raleigh, NC 27636
alex.hagan@elliswinters.com

Dixie T. Wells
P.O. Box 33550
Ellis & Winters, LLP
Greensboro, NC 27636
dixie.wells@elliswinters.com

Lindsay Vance Smith
North Carolina Department of Justice
P.O. Box 629
Raleigh, NC 27602
lsmith@ncdoj.gov

Marla Spector Bowman
123 W. Franklin Street, suite 600
Chapel Hill, NC 27516
Marla_bowman@unc.edu

Jeremy David Lindsley
North Carolina Department of Justice
P.O. Box 629
Raleigh, NC 27602
jlindsley@ncdoj.com

This the 16th day of July 2026.

/s/ Michael J. Tadych
Michael J. Tadych

# CERTIFICATE OF COMPLIANCE ON USE OF
## ARTIFICAL INTELLIGENCE

The undersigned hereby certifies that, in accordance with the Court's Standing Order on the Use of Artificial Intelligence, No. 3:24-mc-104, that no artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard online legal research sources Westlaw, Lexis, FastCase, and Bloomberg. The undersigned hereby further certifies that every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 16th day of July 2026.

/s/ Michael J. Tadych
Michael J. Tadych