| | |
|---|---|
| JACOB DOE,<br><br>Plaintiff,<br><br>v.<br><br>THE UNIVERSITY OF NORTH CAROLINA SYSTEM, et al.<br><br>Defendants. | **PLAINTIFF'S MEMORANDUM IN RESPONSE TO MOVANTS' MOTION TO INTERVENE** |

## Preliminary Statement

This Court has already decided the central question Movants ask it to reopen. On June 3, 2026, after independently reviewing the Confidential Settlement Agreement and Release of Claims between Plaintiff and Defendants, this Court entered a Corrected Consent Decree making three findings under N.C. Gen. Stat. § 132-1.3: first, that the Settlement Agreement's terms, if disclosed, "are reasonably likely to lead to the identification of Plaintiff and Roes 1-4, potentially causing emotional damage to the Plaintiff"; second, that "there has been no determination or finding of violation of UNC-CH's policies as defined by *DTH Media Corp. v. Folt*, 374 N.C. 292 (2020)"; and third, that "the presumption of openness to the Settlement Agreement is overcome by the overriding privacy and

1

reputational interests of Plaintiff and Roes 1-4, and that this overriding interest cannot be protected by any measure short of sealing the Settlement Agreement." Corrected Consent Decree, *Doe v. Univ. of N.C. Sys.*, NO 1:23-CV-00041-MR, ECF No. 225 at 2 (W.D.N.C. June 3, 2026). No party moved for reconsideration. No party appealed. The action was dismissed by stipulation on June 16, 2026.

Consistent with the position reported in Movants' Motion, Plaintiff does not oppose intervention, Plaintiff respectfully submits, however, that any order granting intervention should be entered on terms that respect the findings and orders already entered in this case, and should not permit intervention to be used as a vehicle to reopen, modify, or re-litigate the Corrected Consent Decree itself, for the reasons set forth in Part I below. As set forth below, the relief Movants ultimately seek, partial unsealing of the Settlement Agreement's terms, is independently foreclosed on the merits for reasons wholly apart from the threshold question of intervention itself.

Section I of Plaintiff's Response explains why this Court retains discretion to shape any grant of intervention around the findings it has already made. Section II of Plaintiff's Response shows that even unconditional intervention would not entitle Movants to the relief they seek, which fails independently under Rule 24(a)(2), N.C. Gen. Stat. § 132-1.3,

*DTH Media Corp. v. Folt* and the General Assembly's subsequent statutory action, and the federal common-law and First Amendment access standard. Section III of Plaintiff's Response confirms that Movants' own supporting papers confirm that the safeguards proposed in Section I are necessary.

## I. This Court Retains Discretion To Shape Any Grant Of Intervention Around The Findings It Has Already Made.

Rule 24 does not present this Court with a binary choice between excluding Movants altogether and admitting them to re-litigate issues this Court has already resolved. Movants invoke the four-part standard for intervention as of right under Rule 24(a)(2): timeliness; an interest in the subject matter; potential impairment of that interest absent intervention; and inadequate representation of that interest by the existing parties. Mem. at 7, ECF No. 230 (citing *Students for Fair Admissions v. Univ. of N.C.*, 319 F.R.D. 490, 493-94 (M.D.N.C. 2017), which in turn cites *Houston Gen. Ins. Co. v. Moore*, 193 F.3d 838, 839 (4th Cir. 1999)). All four requirements of that standard must be satisfied before intervention as of right may be granted; failure on any one defeats it. *Houston Gen. Ins. Co.*, 193 F.3d at 839.

Separate from the threshold question of whether intervention should be granted at all, a district court retains its own case-management discretion to shape the terms on which intervention proceeds. Courts have recognized that a district court may impose conditions on permissive intervention,

3

including limiting the scope of discovery or access afforded to an intervenor. *See Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co.*, 974 F.2d 450, 469 (4th Cir. 1992) (recognizing that, when granting an application for permissive intervention, a federal district court is able to impose almost any condition). *See Also* Fed. R. Civ. P. 24 Advisory Committee's note to 1966 Amendment (stating that an intervention of right under the amended rule may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings.") Courts likewise retain discretion to tailor the scope of an intervenor's access to an existing case to the specific interest the intervenor has identified, rather than opening the entire proceeding to re-litigation. Cf. *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992) (recognizing a district court's continuing authority to manage the scope of relief afforded to a party seeking access to matters in a closed case, an authority it may exercise even after the underlying action has been resolved). Should this Court conclude that intervention as of right is warranted under Rule 24(a)(2), the same case-management discretion is available to it in shaping how that intervention proceeds. An intervenor enters an action already shaped by the record and rulings the court has developed to that point; it may contest what remains open, not what has already been decided. Asking this Court to exercise its

4

own discretion to reflect that reality is a routine request, not an extraordinary one.

Movants' own motion supplies the terms on which this Court can exercise that discretion without prejudice to any interest Movants claim. Movants describe their request as intervention "for the limited purpose of asserting and protecting their and the public's presumptive right of access to judicial documents and proceedings," Motion for Leave to Intervene ("Mot.") at 2, ECF No. 229, and they expressly disclaim any interest in identifying Plaintiff or Roes 1-4 or in disturbing this Court's existing pseudonym orders, Mot. ¶ 6 ("Movants neither seek to modify this Court's orders that have allowed the Plaintiff to pursue his claims under the pseudonym 'Jacob Doe,' nor to learn the identities of his accusers, who are referred to as 'Roes 1-4.'"). Taking that representation at face value, any order granting intervention should be entered on terms that respect the Corrected Consent Decree's findings, including the finding that no violation of UNC-CH's policies as defined by *DTH Media Corp. v. Folt* was ever determined, and the finding that the Settlement Agreement's terms are reasonably likely to lead to identification of Plaintiff and Roes 1-4. The reputational and identification interests this Court found sufficient to overcome the presumption of openness are not abstract. In its published opinion resolving Defendants'

interlocutory appeal in this same case, the Fourth Circuit described Plaintiff's complaint as alleging that UNC "the university and its employees denied [Doe] fair and adequate disciplinary proceedings, leading to erroneous outcomes in the Roe 1 and Roe 4 matters and causing serious damage to his education, reputation, and career prospects." *Doe v. Univ. of N.C. Sys., et al.*, 133 F.4th 305, 312. The Fourth Circuit held that Plaintiff had adequately alleged a liberty interest sufficient to trigger procedural due process protections, based on his complaint's claim to a "good name, reputation, honor, and integrity," *id.* at 318; and held that an erroneous university record of a student's permanent expulsion for sexual misconduct inflicts an ongoing injury for which the student can seek equitable relief. *Id.* at 319. Those holdings issued on the same disciplinary proceedings, involving the same parties, whose settlement this Court later sealed, confirm at the appellate level that the reputational harm at issue is not speculative but the kind of injury the Fourth Circuit has already recognized as serious and ongoing. *See*, Corrected Consent Decree, ECF No. 225, at 2. Nothing in Plaintiff's Response asks this Court to revisit the underlying disciplinary findings themselves; the point is narrower, that the Fourth Circuit's own characterization of the stakes independently corroborates the interest this Court already found and the protection it already ordered.

Where a party seeks post-judgment intervention to contest an issue this Court has already resolved, the timing and posture of the motion bear directly on how this Court exercises the case-management discretion discussed above. The Corrected Consent Decree was entered after extensive negotiation and independent judicial review, was not appealed by any party, and became final when the case was dismissed by stipulation. Movants filed their motion approximately a month after that dismissal. Granting unconditional intervention at this stage, untethered to the findings this Court has already made, would permit Movants to use Rule 24 as a substitute for a motion for reconsideration or an appeal neither Movants nor any party ever filed. This Court's exercise of its own discretion to respect its existing findings as part of any grant of intervention avoids that result.

For these reasons, Plaintiff respectfully requests that, if this Court grants intervention, any such order include the following terms: (1) Movants remain subject to the findings in the Corrected Consent Decree, including the finding that there has been no determination or finding of a violation of UNC-CH's policies as defined by *DTH Media Corp. v. Folt*, and the finding that the Settlement Agreement's terms are reasonably likely to lead to the identification of Plaintiff and Roes 1-4; (2) intervention shall not be used to seek reconsideration, modification, or reopening of the Corrected Consent

7

Decree's entry or its findings; (3) any relief ultimately granted to Movants shall remain subject to the identical protections already in place for the identities of Plaintiff and Roes 1-4; and (4) no order will permit disclosure of any term of the Settlement Agreement itself. This Court has already found that the Agreement's terms and conditions, if disclosed, are reasonably likely to lead to the identification of Plaintiff and Roes 1-4, and that finding forecloses disclosure of the Agreement as a whole, not merely particular provisions within it. As demonstrated herein, the relief Movants seek fails on the merits, regardless of whether intervention is granted, so the practical effect of these terms is limited to ensuring that Movants' participation in this action does not disturb what this Court has already, and correctly, decided. Whether Movants ultimately consider intervention on these terms worth pursuing is a matter for their own judgment; it has no bearing on whether intervention should be granted since Rule 24 asks only whether the four elements of intervention are satisfied, not whether the intervenor will find the result satisfying.

## II. Even Unconditional Intervention Would Not Entitle Movants To The Relief They Seek.

Even if this Court does not adopt the terms proposed in Section I above, Movants' request for partial unsealing independently fails on the merits.

Movants read section 132-1.3(a) to require disclosure of the settlement terms absent the findings required by subsection (b), and read the Corrected Consent Decree's findings under subsection (b) to support redaction of the identities of Plaintiff and Roes 1-4 but not sealing of the terms UNC negotiated. Mot. ¶¶ 7-9, ECF No. 229. That reading does not fit the statute's structure or the basis on which this Court in fact acted. Subsection (a) establishes the default rule that settlement documents involving a public entity are public records and that the entity may not unilaterally agree to confidentiality. N.C. Gen. Stat. § 132-1.3(a). Subsection (b) supplies the exception invoked here: it authorizes a court, not the settling parties, to order sealing upon "a written order concluding that (1) the presumption of openness is overcome by an overriding interest and (2) that such overriding interest cannot be protected by any measure short of sealing the settlement," supported by findings "sufficiently specific to permit a reviewing court to determine whether the order was proper." N.C. Gen. Stat. § 132-1.3(b). Sealing here rests not on any private agreement among the parties, but on this Court's own written order, entered after independent judicial review, containing precisely the findings subsection (b) requires. Corrected Consent Decree, ECF No. 225, at 2. Movants' subsection (a) argument is directed at a theory of sealing this Court did not employ.

Movants' alternative position, that this Court's findings support redaction rather than full sealing, is equally unavailing against what this Court actually found. This Court did not find that only the names of Plaintiff and Roes 1-4 required protection. It found that the Settlement Agreement's terms and conditions themselves, if disclosed, "are reasonably likely to lead to the identification of Plaintiff and Roes 1-4, potentially causing emotional damage to the Plaintiff." Corrected Consent Decree, ECF No. 225, at 2. That finding is not abstract. Movant Mecia Communications LLC's own supporting declaration confirms the mechanism directly: by "reviewing the Plaintiff's Complaint in the light of publicly available information," its principal was able to "quickly and easily identify 'Jacob Doe' and members of his family." Decl. of J. Antonio Mecia ¶ 5, ECF No. 229-1. That same declaration identifies illustrative examples of information that disclosures would reveal. *Id.* ¶ 6. Movants' memorandum separately sets out six enumerated categories of settlement-specific detail. *Id.* ¶ 6, Mem. at 12-13, ECF No. 230. Each of those categories is the kind of settlement-specific detail tied to a single set of events at a single institution that this Court already found "are reasonably likely to lead to the identification of Plaintiff and Roes 1-4." Corrected Consent Decree, ECF No. 225, at 2. This Court did not need to see this exact list in advance to have already foreclosed it; a finding that the settlement

10

terms generally carry that identifying risk covers the specific categories Movants now itemize.

Movants cite *DTH Media Corp. v. Folt*, 374 N.C. 292, 841 S.E.2d 251 (2020) twice: once in the motion, as background describing Movant DTH Media Corp.'s institutional history of reporting on university disciplinary matters, Mot. ¶ 1, ECF No. 229; and once in the memorandum, for the general proposition that North Carolina's Public Records Act must be construed broadly and its exemptions narrowly. Mem. at 9, ECF No. 230. Neither citation offers *DTH Media Corp. v. Folt* as legal authority for the specific relief Movants request here, partial unsealing of this settlement, which rests instead on N.C. Gen. Stat. § 132-1.3(a) and (b) directly. *See* Mem. §§ II.A-B, ECF No. 230. To the extent *DTH Media Corp. v. Folt* has any bearing on this motion, however, it forecloses rather than supports the relief Movants seek. *DTH Media Corp. v. Folt* compelled disclosure of a university disciplinary record because the student there had been found responsible for the underlying conduct, and the North Carolina Supreme Court held that FERPA did not preempt the Public Records Act's disclosure requirement as to that limited category of adjudicated record. *DTH Media Corp. v. Folt,* 374 N.C. 292, 305-06, 841 S.E.2d 251, 261 (2020). The Corrected Consent Decree states: "there has been no determination or

11

finding of violation of UNC-CH's policies as defined by *DTH v. Folt*."
Corrected Consent Decree, ECF No. 225, at 2. That finding is specific,
unappealed, and entered after this Court's independent review of the record;
it establishes that the circumstance *DTH Media Corp. v. Folt* addressed is
simply not presented by this case.

This Court need not resolve any question about the new statute
discussed below to deny this motion: the Corrected Consent Decree's
findings under N.C. Gen. Stat. § 132-1.3(b), standing alone and already final
and unappealed, are a sufficient and independent basis for denying
intervention on the merits. That conclusion does not depend on any
subsequent change in the law, but it is independently reinforced by one. The
General Assembly enacted N.C. Gen. Stat. § 132-1.3B, providing that a
"public record" under Chapter 132 does not include certain records of a
disciplinary proceeding that reveal personally identifiable information about
a student enrolled in a public institution of higher education. S.L. 2026-41, §
8.14(a)-(d) (2026) (enacting N.C. Gen. Stat. § 132-1.3B). Section 8.14(d) of
the enacting legislation provides that the section is effective when it becomes
law. *Id.* § 8.14(d). Movants filed their motion after this statute was already in
force. Plaintiff does not ask this Court to apply § 132-1.3B retroactively to the
Settlement Agreement or the Corrected Consent Decree, both of which

12

predate the statute's effective date, and no retroactive application is necessary to any argument made here. The point is narrower: as of the date Movants filed the motion asking this Court to unseal records of a university disciplinary matter involving identifiable students, the General Assembly had already declared, as a matter of current public policy, that such records fall outside the public-records presumption Movants invoke.

Because the Settlement Agreement was filed with and sealed by a federal court, the controlling access standard is not confined to North Carolina's Public Records Law. The presumptive right of public access to documents filed in a federal district court "derives from two independent sources: the common law and the First Amendment." *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 575 (4th Cir. 2004). Under the common law, the presumption may be overcome where "countervailing interests heavily outweigh the public interests in access." *Id.* Under the First Amendment, the presumption may be overcome "only on the basis of a compelling governmental interest, and only if the denial is tailored to serve that interest." *Id.* Here, the interests that overcome the presumption are the privacy interests of Plaintiff and Roes 1-4 that this Court has already found controlling. Corrected Consent Decree, ECF No. 225, at 2. Before sealing judicial records, a district court must provide interested parties notice and an

opportunity to object, consider less drastic alternatives to sealing, and state findings specific enough to permit appellate review. *In re Knight Publ'g Co.*, 743 F.2d 231, 234-35 (4th Cir. 1984). Sealing orders that omit that process have been vacated and remanded for that reason. *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 180-82 (4th Cir. 1988).

The Corrected Consent Decree satisfies the substantive requirements that *Knight* and *Stone* impose. It issued after the parties' negotiated presentation of the Settlement Agreement for this Court's independent review; it identified the specific overriding interest at stake, the privacy and reputational interests of Plaintiff and Roes 1-4, and it made the express finding that no measure short of full sealing could protect that interest, which is the finding the federal standard requires before a less-restrictive alternative such as redaction may be rejected. Corrected Consent Decree, ECF No. 225, at 2. The Corrected Consent Decree expressly identifies the overriding privacy and reputational interests, the risk of identification and the resulting harm, and the Court's determination that no measure short of sealing can protect those interests. That specificity is not a formality; it is precisely what separates an order that stands on appeal from one that does not. In *Stone*, the sealing order was vacated and remanded because the district court had not followed the required notice and specific-findings

14

procedure at all. *Stone*, 855 F.2d at 180-82. The Corrected Consent Decree took the opposite course and does not present the defect that produced *vacatur* in *Stone*. Because the Corrected Consent Decree independently satisfies each of the federal standards above, in addition to the state-law standard under N.C. Gen. Stat. § 132-1.3, it rests on grounds sufficient to sustain it under the legal standards that could govern it.

### III. Movants' Own Supporting Papers Confirm Why The Safeguards Proposed In Section I. Are Necessary.

Movants represent to this Court that they seek only disclosure of "the terms and conditions to which UNC agreed," and that they "neither seek to modify this Court's orders that have allowed the Plaintiff to pursue his claims under the pseudonym 'Jacob Doe,' nor to learn the identities of his accusers, who are referred to as 'Roes 1-4.'" Mot. ¶ 6, ECF No. 229. Plaintiff takes Movants at their word on these representations, and nothing in this Section asks this Court to conclude otherwise as to Movants' present intent. Plaintiff notes, for the record and without further elaboration, one respect in which Movants' own supporting papers illustrate why the terms proposed in Section I matter in practice and not merely in the abstract.

This Court's orders protect against public identification; they do not purport to police what a litigant already privately knows. Movant Mecia Communications LLC's own supporting declaration confirms that its principal

was able to identify Plaintiff and his family simply "by reviewing the Plaintiff's Complaint in the light of publicly available information." Decl. of J. Antonio Mecia ¶ 5, ECF No. 229-1. Movants represent that they have "honored this Court's rulings to date by declining to identify [Plaintiff] publicly . . . in the course of reporting on this action." Mem. at 3 n.1, ECF No. 230. Plaintiff does not dispute that representation as a general matter. But private knowledge held in confidence and new identifying detail placed into the public docket are not the same thing, and only the latter implicates the interests this Court's orders protect. That distinction, not any assessment of Movants' overall intentions, is the basis for the terms proposed in Section I *supra*: an intervenor's stated purpose is not self-enforcing, and a docket that is opened to intervention should remain subject to the same safeguards that governed it before intervention was sought.

Movants likewise represent that they "do not seek to modify the Settlement Agreement so as to cause [Roes 1-4] to be identified, either directly or indirectly," and that they "take no issue with this Court's determination that the reputational and privacy interests of the Plaintiff and of Roes 1-4 justify the sealing of the Settlement Agreement to the extent required to shield their identities." Mem. at 11 n.3, 12, ECF No. 230. Plaintiff takes Movants at their word on these representations as well. But Mecia's

own declaration already demonstrates that a stated intent not to identify someone does not control whether disclosure in fact makes that person identifiable. Roes 1-4 are in the same small set of disciplinary proceedings as Plaintiff; several of the settlement details Movants seek, including whether UNC agreed to reverse specific disciplinary findings or modify the process by which UNC adjudicates claims of serious sexual misconduct, are tied directly to the factual particulars of those proceedings. Mem. at 13-14, ECF No. 230. If disclosure of those details, layered onto information already publicly available, is enough to let a member of the public identify Plaintiff quickly and easily by reviewing the Complaint in the light of publicly available information, this Court is entitled to weigh whether the same disclosure risks identifying Roes 1-4 by the same mechanism, regardless of what Movants presently intend. Roes 1-4 are not before this Court on this motion and have had no opportunity to be heard on a request that places their own confidentiality at risk based on Movants' assurances alone. That risk, and Roes 1-4's absence from this proceeding, is another independent reason for the terms proposed in Section I of Plaintiff's Response.

## Conclusion

This Court has already decided the question at the heart of this dispute and nothing the Movants have shown warrants reopening it. Plaintiff does

not oppose Movants' intervention under Rule 24, provided any order granting it reflects the terms set forth in Section I. On the merits, partial unsealing should be denied for two independent reasons: (1) it rests on a misreading of N.C. Gen. Stat. § 132-1.3 and *DTH Media Corp. v. Folt*, a misreading the General Assembly's subsequent enactment now corroborates; and (2) it fails under the federal common-law and First Amendment standard governing access to judicial records. Roes 1-4 are not before this Court and have had no opportunity to be heard on a request that would put their own confidentiality at risk. Whatever view this Court takes, Movants' request should not be granted, in whole or in part, without the Section I safeguards. Those safeguards ensure that intervention does not become a vehicle to undo what this Court has already, and correctly, decided. For these reasons, and for the reasons set forth herein, Plaintiff submits that Movants' motion should be resolved on the terms set forth in Section I.

Respectfully submitted, this the 30th day of July 2026.

/s/Raboteau T. Wilder, Jr.
Raboteau T. Wilder, Jr.
Wilder Law, PLLC
3501 Monroe Road
Charlotte, NC 28205
(704) 342-2243 telephone
NC State Bar #5891
*Attorneys for Plaintiff*
*rob@wilderlawgroup.com*

18

/s/ Fred W. DeVore, III
Fred W. DeVore, III
DAS Law Group
438 Queens Road
Charlotte, NC 28207
(704) 377-5242
(704) 332-2825 facsimile
NC State Bar #10308
*Attorneys for Plaintiff*
*fdevore@daslawgroup.com*

19

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing pleading was served upon all other parties to this action or their attorneys of record by using the ECF filing system and/or email and addressed as follows:

Dixie Thomas Wells Dixie.wells@elliswinters.com
Alex John Hagan Alex.hagan@elliswinters.com
Kimberly D. Potter kpotter@ncdoj.gov
Jeremy David Lindsley jlindsley@ncdoj.gov
Lindsey Vance Smith lsmith@ncdoj.gov
Marla Spector Bowman marla_bowman@unc.edu
Rob Wilder rob@wilderlawgroup.com
Hugh Stevens hugh@smvt.com
Michael J. Tadych mike@smvt.com
Ashley Fox ashley@smvt.com

Respectfully submitted, this the 30th day of July 2026.

/s/Raboteau T. Wilder, Jr.
Raboteau T. Wilder, Jr.
Wilder Law, PLLC
3501 Monroe Road
Charlotte, NC 28205
(704) 342-2243 telephone
NC State Bar #5891
*Attorneys for Plaintiff*
rob@wilderlawgroup.com

/s/ Fred W. DeVore, III
Fred W. DeVore, III
DAS Law Group
438 Queens Road
Charlotte, NC 28207
(704) 377-5242
(704) 332-2825 facsimile
NC State Bar #10308
*Attorneys for Plaintiff*

20